Hon. Marshall Ferguson

**FILED**

2024 JAN 31 04:06 PM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 22-2-15958-8 SEA

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

|  |  |
|---|---|
| KURT A. BENSHOOF , | Case No. |
| Plaintiff, | PLAINTIFF'S SUMMARY RE: PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| NATHAN CLIBER, *et al.*, | |
| Defendants. | WHC - 2 |

## I.     INTRODUCTION

COMES NOW Plaintiff Kurt Benshoof ("Benshoof"), in accordance with this Court's Order Restricting Abusive Litigation of Kurt Benshoof ("Order"), summarizing Benshoof's Petition for Writ of Habeas Corpus.

## II.     SUMMARY

The Petition for Writ of Habeas Corpus evidences that Defendants Jessica R. Owen ("Owen"), Magalie E. Lerman ("Lerman"), and their co-conspirator, Nathan L. Cliber ("Cliber"), have unlawfully restrained Benshoof and Benshoof's minor son, A.R.W. under color of law through perjury, subornation of perjury, and extrinsic fraud.

SUMMARY OF PETITION
FOR WRIT OF HABEAS CORPUS
Page 1 of 3

Kurt Benshoof, Plaintiff
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

**0001**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

The ongoing restraint upon Benshoof and A.R.W. constitute kidnapping by Owen and Lerman in violation of RCW 9A.40.020, unlawful imprisonment of Benshoof in violation of RCW 9A.40.040, and Cliber has acted to aid and abet Owen and Lerman by lending them criminal assistance in violation of RCW 9A.76.070.

The violations of the First Amendment by Owen, Lerman, and Cliber have caused, and are causing, irreparable harm to A.R.W. and Benshoof. Attempts by A.R.W. to run away from Owen's and Lerman's home failed. A.R.W. was forced to return to Owen's and Lerman's home where he has been subjected to further mental and emotional abuse, pushing A.R.W. to consider suicide.

Attached to the Petition for Writ of Habeas Corpus as Appendix G is the witnessed affidavit and power-of-attorney signed by A.R.W.

## VERIFICATION

I, Affiant Kurt Benshoof, do hereby declare that the foregoing is true and correct to the best of my knowledge under penalty of perjury in the State of Washington, and am competent to testify to the matters stated herein. Executed this 31st day of January in the year 2024, in the City of Seattle, in the county of King, in the state of Washington.

By: _____/s/ Kurt Benshoof_____
       Kurt Benshoof *Pro Se*

       1716 N 128th Street
       Seattle, WA 98133
       Phone: (206) 460-4202
       Email: kurtbenshoof@gmail.com

SUMMARY OF PETITION
FOR WRIT OF HABEAS CORPUS
Page 2 of 3

Kurt Benshoof, Plaintiff
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

# CERTIFICATION OF SERVICE

Petitioner hereby certifies that on January 31, 2024, he did electronically file the

foregoing motion with the Clerk of Court by using the e-filing system, which will send a notice

of electronic filing to all counsel of record, and by email to the addresses listed below.

**Attorney For Defendant Jessica Owen:**
Blair M. Russ, WSBA #40374
1000 Second Avenue
Suite 3660
Seattle, WA 98104
Email: bmr@tbr-law.com
Phone: (206) 621-1871

**Attorneys for Defendant Nathan Cliber:**
Sarah N. Turner, WSBA #37748
Michael C. Tracy, WSBA #51226
701 Fifth Avenue
Suite 2100
Seattle, WA 98104
Phone: (206) 695-5178
Email: sturner@grsm.com
Email: mtracy@grsm.com

**Attorney for Defendants**
**Magalie Lerman and Owen Hermsen:**
Moshe Y. Admon, WSBA #50325
300 Lenora Street
Suite 4008
Seattle, WA 98121
Email: jeff@admonlaw.com
Phone: (206) 739-8383

DATED:  January 31, 2024

Signed:  ___/s/ Kurt Benshoof_____

Kurt Benshof, *pro se*

SUMMARY OF PETITION
FOR WRIT OF HABEAS CORPUS
Page 3 of 3

Kurt Benshoof, Plaintiff
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

**0003**

Hon. Marshal Ferguson

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

KURT A. BENSHOOF,

                              Plaintiff,

            v.

NATHAN CLIBER, *et al.,*

                            Defendants.

Case No.  22-2-15958-8

PETITION FOR
WRIT OF HABEAS CORPUS

## I.    RELIEF REQUESTED

Kurt Benshoof ("Petitioner") petitions for a writ of habeas corpus to inquire into the cause of the unlawful restraints upon the liberty of himself and his minor son, A.R.W., so that they shall be delivered therefrom when the Honorable Court determines their restraints illegal.

This sworn petition is brought pursuant to Wash. Const. Art I § 13; Art IV § 6; and RCW 7.36, under which writs of habeas corpus shall be granted in favor of parents, to enforce their rights, and the protection of their minor children.

Because Petitioner does not know which court will hear this petition, Petitioner will hereinafter attempt to strike a balance between redundantly presenting evidence

PLAINTIFF'S PETITION FOR
WRIT OF HABEAS CORPUS
Page 1 of 16

Kurt Benshoof, Plaintiff
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

the Court has already considered versus not providing enough evidence in the event this petition is assigned to another court.

## II. INTRODUCTION

The great and central office of the writ of habeas corpus is to test the legality of unlawful restraint. The function of a writ of habeas corpus is to inquire into jurisdictional defects amounting to a want of legal authority for one restrained, on whose behalf it is asked, and the court in which a writ is sought examines only the power and authority of the court to act, not the correctness of its conclusions. A writ of habeas corpus is available when his imprisonment is contrary to federal constitutional or statutory law and tests whether he has been accorded due process, not whether he is guilty. The purpose of a petition for writ of habeas corpus is not to correct errors of fact, but to determine whether his constitutional rights have been violated. "The basic principle of the Great Writ of habeas corpus is that, in a civilized society, government must always be accountable to the judiciary for a man's imprisonment: if the imprisonment cannot be shown to conform with the fundamental requirements of law, the individual is entitled to his immediate release."[1] Habeas corpus is, above all, an adaptable remedy, and "is not now and never has been a static, narrow, formalistic remedy."[2] Federal courts may adjust the scope of the writ of habeas corpus in accordance with equitable and prudential considerations.

---

[1] *Fay v. Noia,* 372 U.S. 391, 399-402 (1963)
[2] *Lehman v. Lycoming Cty. Ch. Svcs. Agcy.,* 458 U.S. 502 (1982) quoting J. Black, *Jones v. Cunningham,* 371 U.S. 236, 371 U.S. 243 (1963)

PLAINTIFF'S PETITION FOR
WRIT OF HABEAS CORPUS
Page 2 of 16

Kurt Benshoof, Plaintiff
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

# III.   SWORN STATEMENT OF FACTS

Petitioner avers the following upon his information and belief, but has not been able to verify the current locations of Jessica Owen, Magalie Lerman, nor Petitioner's fourteen-year-old son, A.R.W.

## A. RESTRAINING PARTIES

### 1) Jessica R. Owen

1.      Jessica R. Owen ("Owen") is the mother of A.R.W., Petitioner's son.

2.      Owen's home is located at 849 NE 130th Street, Seattle, WA 98125.

### 2) Magalie E. Lerman

3.      Magalie E. Lerman ("Lerman") is the girlfriend of Owen.

4.      Lerman resides with Owen at 849 NE 130th Street, Seattle, WA 98125.

### 4) Nathan L. Cliber

5.      Nathan Cliber ("Cliber") is Owen's former family law attorney in King County Case No. 21-5-00680-6 SEA, and an accessory to Owen's and Lerman's kidnapping of A.R.W..

## B. LOCATION OF RESTRAINT

### 1) A.R.W.

6.      Owen and Lerman imprisoned A.R.W. in their home, located at 849 NE 130th Street, Seattle, WA 98125.

### 2) Petitioner

7.      Petitioner has been effectively imprisoned within his home, located at 1716 N 128th Street, Seattle, WA 98133 for the previous ten months.

PLAINTIFF'S PETITION FOR
WRIT OF HABEAS CORPUS
Page 3 of 16

Kurt Benshoof, Plaintiff
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

0006

## C. PRETENSE OF RESTRAINTS

### 1) Imprisonment of A.R.W.

8.     The false narrative promulgated by Owen, Lerman, and Cliber since August 2021 is that Petitioner is crazy, dangerous, and that A.R.W. is afraid of his father.

9.     Cliber and Owen obtained a restraining order against Petitioner on October 21, 2022, in King County Superior Court Case No. 21-5-00680-6 SEA.

10.     Cliber, Owen, and Lerman continue to assert that the restraining order was: (1) not obtained through Owen's perjury and extrinsic fraud; and (2) that the restraining order—even if it were not fraudulently obtained—would not have expired on October 21, 2023, as required by RCW 7.105.315(2).

### 2) Restraint of Petitioner

11.     Petitioner is restrained from any contact with A.R.W., and effectively imprisoned in his own home, under threat of immediate arrest as the intended, direct, and proximate result of Owen's perjury and Cliber's subornation of Owen's perjury.

12.     Cliber cunningly obtained a restraining order with *two* expiration dates, knowing that the Seattle Police Department would believe the expiration date of the restraining order to be September 28, 2027, instead of October 21, 2023.

13.     In 2022 and January 2023, Petitioner and A.R.W. texted each other funny memes and strategized how to end their unlawful restraint; in retaliation, the City of Seattle filed ninety-one (91) "domestic violence" charges against Petitioner, including a $250,000 arrest warrant, and a $50,000 bench warrant.

PLAINTIFF'S PETITION FOR
WRIT OF HABEAS CORPUS
Page 4 of 16

Kurt Benshoof, Plaintiff
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

**0007**

## D.  UNLAWFULNESS OF RESTRAINT

### 1)  First Amendment Violations - Part 1

14.     Owen and Lerman retaliated against Petitioner for the free exercise of his religious beliefs.  Because of Owen's and Lerman's invidious discriminatory animus toward Petitioner's beliefs, Owen and Lerman felt justified in violating Petitioner's and A.R.W.'s right of association.

15.     Owen and Lerman retaliated against Petitioner for exercising his right to free speech and expression.  Because of Owen's and Lerman's invidious discriminatory animus toward Petitioner's beliefs, Owen and Lerman felt justified in violating Petitioner's right to free speech and expression so that Petitioner wouldn't be able to share his spiritual beliefs with A.R.W., and so that Petitioner wouldn't be able to expose Owen's and Lerman's lies to A.R.W.

16.     No one is more venomously hated by liars than an honest person.

17.     Owen and Lerman retaliated against Petitioner for exercising his right to petition for redress of his grievances.  Because Petitioner is absolutely honest, and because Owen and Lerman had lied to violate Petitioner's First Amendment rights, Owen and Lerman retaliated against Petitioner for exposing the perjury of Owen and Lerman in judicial proceedings.

### 2) Fraudulent Petition to Decide Parentage

18.     Petitioner and Owen discovered she was pregnant with Petitioner's child, A.R.W., in August 2008; thereupon, Petitioner and Owen entered into a verbal

PLAINTIFF'S PETITION FOR
WRIT OF HABEAS CORPUS
Page 5 of 16

Kurt Benshoof, Plaintiff
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

**0008**

parenting contract at common law ("Covenant") after notice, consideration, and accord; thereby exercising their unlimited right to contract as private individuals.

19.   Under their Covenant as father and mother, they would henceforth have full, equal and inalienable rights as parents of their son-to-be, sharing all significant decisions regarding A.R.W.'s care and upbringing, such as education, family scheduling, medical and dental care, and nutrition.

20.   Though Petitioner and Owen never married, they raised A.R.W. amicably for the following twelve years, prioritizing their son's well-being and sharing equally in all significant decisions regarding their son's education, medical care, dental care, and living arrangements.

21.   Petitioner had good cause to believe that Owen would never violate their Covenant; doing so would harm A.R.W., and Petitioner did not believe Owen would ever be so selfish as to harm knowingly harm their son: one of the gravest miscalculations of Petitioner's life.

22.   Benshoof and Owen have never been parties to a marriage, domestic partnership, legal separation, or a declaration of invalidity.

23.   Benshoof has never yelled at A.R.W., nor threatened corporal punishment, let alone spanked his son.

24.   Cliber suborned Owen's perjury with extrinsic fraud to aid Owen to: (1) violate the existing twelve-year parenting Covenant at Common Law between Owen and Petitioner; (2) abet the kidnapping A.R.W. by Owen and Lerman; (3) extort

PLAINTIFF'S PETITION FOR
WRIT OF HABEAS CORPUS
Page 6 of 16

Kurt Benshoof, Plaintiff
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

**0009**

Petitioner for money; and (4) fraudulently obtain an Order Restricting Abuse Litigation to prevent exposure of their fraud and deny Petitioner redress.

25.     Under color of law, Cliber, Owen, and Lerman conspired to violate the First Amendment by: (1) retaliating against Petitioner's religious beliefs, (2) denying Petitioner's freedom of speech; (3) denying Petitioner's right of association with A.R.W.; and (4) denying Petitioner redress.

26.     On September 3, 2021, Lerman kidnapped A.R.W. and stole Petitioner's 2011 Toyota FJ Cruiser #BGF 9753.

27.     On September 28, 2021, Owen and her newly hired family law attorney, Defendant Nathan L. Cliber ("Cliber"), filed a Petition to Decide Parentage as the ruse by which to seek a restraining order to abrogate Petitioner's familial right of association with A.R.W. by making inconsistent material statements of fact under oath.

28.     Cliber and Owen did not, and could not, provide family court evidence of "domestic relations" between Benshoof and Owen to establish family court jurisdiction under RCW Title 26.

29.     Owen's parentage petition averred three elements essential to providing family court jurisdiction for her parentage action, that Benshoof: (1) was ***not*** the biological father of A.R.W.; (2) had ***never*** lived with A.R.W., and (3) had ***never*** held out A.R.W. as his son. As such, all three avowed statements evidenced Owen's inconsistent material statements of fact under penalty of perjury in King County Superior Court within the span of one month.

PLAINTIFF'S PETITION FOR
WRIT OF HABEAS CORPUS
Page 7 of 16

Kurt Benshoof, Plaintiff
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

30.     All three avowed statements evidenced Owen's inconsistent material statements of fact under penalty of in King County Superior Court less than a month apart by contradicting that Owen had declared under penalty of perjury on August 21, 2021, that A.R.W. is the son of Owen and Lerman.  (Appendix A: WAWD No. 2:23-cv-1392-JNW, Dkt. #13-1 pg. 72, 73)

31.     Among Owen's exhibits she included three Seattle Police Department incident reports spanning November 2015 to September 14, 2020, which all affirmed that A.R.W. is Benshoof's son." (Appendix B: *Id.*, Dkt. #13-1 pg. 84, 89, 225)

32.     On September 22, 2021, Owen again reversed course, contradicting herself by declaring under penalty of perjury, "[Benshoof]…acted as [A.R.W.'s] father for [A.R.W.'s] entire life." (Appendix C: *Id.* pg. 229) Owen also stated, "We moved in together in July 2008.  [A.R.W.] was born nine months later…" (Appendix C: *Id.* pg. 230) "[Benshoof] always insisted on being treated as A.R.W.'s father and that A.R.W. was his." (Appendix: C *Id.* pg. 230)  "[September of 2020] I finally moved out of our shared residence…" (Appendix C*: Id.* pg. 231)

33.     Under RCW Title 26, family court lacked statutory authority to obtain jurisdiction for such a parentage action without Benshoof's consent after A.R.W. reached four years of age unless: (1) Benshoof was not the genetic father of A.R.W.; 92) Benshoof had never lived with A.R.W.; and (3) Benshoof had never held A.R.W. out as his son. *See* Rcw 26.26A.435(2)

PLAINTIFF'S PETITION FOR
WRIT OF HABEAS CORPUS
Page 8 of 16

Kurt Benshoof, Plaintiff
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

34. Nathan Cliber, Owen's family law attorney, suborned Owen's perjury in Owen's sworn Declaration, Petition to Decide Parentage, (Appendix D: *Id.* pg. 257) and Motion for Immediate Restraining Order. (Appendix E: *Id.* pg. 250)

35. Owen's perjury was extrinsic and collateral fraud perpetrated by Owen and Cliber to violate the Covenant between Benshoof and Owen, so that Owen could obtain a restraining order to abduct A.R.W. by falsely alleging that Benshoof was violent and that A.R.W. was scared of his own father.

### 3) No Valid Restraining Order

36. Even *if* the family court case initiated by Owen and Cliber was not barratrous, perjurious, and fraudulent, the restraining order that Owen and Cliber now claim is valid would have expired on October 21, 2023, pursuant to law.

37. On October 21, 2022, Owen and Cliber obtained a Final Restraining Order ("Order") to deny Petitioner any contact with A.R.W. in King County Superior Court Case No. 21-5-00680-6 SEA.

38. The Order presented by Cliber listed *two* expiration dates: October 21, 2023, and September 28, 2027. (Appendix F: *Id.* Dkt. #13-2 pg. 2)

39. RCW 7.105.310(5) states, "the order shall specify *the date* the order expires."

40. RCW 7.105.315(2), states, ""If a protection order restrains the respondent from contacting the respondent's minor children, the *restraint must be for a fixed period not to exceed one year*."

PLAINTIFF'S PETITION FOR
WRIT OF HABEAS CORPUS
Page 9 of 16

Kurt Benshoof, Plaintiff
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

0012

41.     Cliber knew that pursuant to RCW 7.105.325(2), the Clerk would forward the Order "by electronic means if possible, to the law enforcement agency specified in the order."

42.     Cliber knew the Seattle Police Department would enforce the Order as expiring on September 28, 2027, thereby subjecting Petitioner to immediate arrest if Petitioner had any contact with A.R.W. until his son turned the age of eighteen years and five months.

### 4)  First Amendment Violations - Part 2

43.     On January 23, 2024, Petitioner filed his First Amended Complaint in WAWD No. 2:23-cv-1829-JNW (Dkt. #32), which exposed: (1) the kidnapping of A.R.W. by Owen and Lerman; (2) Lerman's auto theft; (3) the attempted extortion of Petitioner by Owen, Lerman and their friend Owen Hermsen; and (4) that Cliber has lended criminal assistance to Owen and Lerman.

44.     Through his attorneys, Cliber retaliated against Petitioner, seeking to imprison and silence Petitioner because Petitioner exercised his right to seek redress of his grievances against Cliber, Owen, Lerman, and Hermsen. (Docket 267)

## IV.  AUTHORITY

## A. AUTHORITY OF THE COURT

### 1)  Duty

45.     As Petitioner has presented several federal questions by the petition, *supra* at #14-17, #43-44, it ***shall*** be the duty of the Court to determine whether

PLAINTIFF'S PETITION FOR
WRIT OF HABEAS CORPUS
Page 10 of 16

Kurt Benshoof, Plaintiff
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

Petitioner has been denied a right guaranteed by the Constitution of the United States. RCW 7.36.140.

46.     Upon application, a writ of habeas corpus "**shall** be granted without delay." RCW 7.36.040.

### 2) Temporary Order Necessary

47.     RCW 7.36.220 authorizes the Court to "make any temporary orders during the progress of the proceedings that justice may require" and "the custody of any party restrained may be changed from one person to another, by order of the court or judge."

48.     On July 6, 2022, A.R.W. tried running away from Owen's and Lerman's to come home to Petitioner, but police forced A.R.W. to return to Owen's.

49.     Within weeks, A.R.W. considered jumping from a summer camp balcony to kill himself.

50.     On October 24, 2022, A.R.W. texted Petitioner, "What would happen if I killed mom."

51.     On January 23, 2023, A.R.W. again tried running away from Owen's, and again forced A.R.W. to return to Owen's.

52.     One does not need a PhD in psychology to apprehend that when a child is subjected to prolonged and severe mental and emotional abuse, and they cannot escape their abuser, that the only remaining options to stop their abuse it to: (1) kill themselves; or (2) kill the abuser.

PLAINTIFF'S PETITION FOR
WRIT OF HABEAS CORPUS
Page 11 of 16

Kurt Benshoof, Plaintiff
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

53.     As of the filing of this petition, A.R.W. has been separated from his father for eight hundred and eighty days.  There is no right more sacred, more primeval, than the right of parent and child to associate.  "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373 (1976)

54.     Upon the foregoing, and pursuant to the Court's authority under RCW 7.36.220, "justice [*does*] require" that "[t]he custody of [A.R.W.] be changed from [Owen] to [Petitioner], by order of the court or judge."

### 3) Arrest Warrants

55.     Owen, Lerman, and Cliber are pathological liars and unrepentant criminals who will continue to perpetrate crimes perpetuating the abuse of A.R.W. until they are stopped by court order, or their arrest.

56.     Owen and Lerman are high end escorts who regularly travel interstate, and internationally, in their work.  They have wealthy clients who pay to believe the lies of Owen and Lerman.  Owen and Lerman pose a flight risk for themselves, as well as the risk they will flee Washington with A.R.W. to escape accountability.

57.     Therefore, Petitioner requests that the Court weigh the merits of issuing warrants for the apprehension of Owen and Lerman.

## B. Res Judicata INAPPLICABLE

58.     The Court has authority to investigate whether family court had jurisdiction to abrogate Petitioner's right of association with A.R.W.

PLAINTIFF'S PETITION FOR
WRIT OF HABEAS CORPUS
Page 12 of 16

Kurt Benshoof, Plaintiff
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

0015

59.     A habeas petition is an inquiry of the trial court's **jurisdiction**, not a petition for a trial *de novo*, nor an appeal.

60.     "All the authorities agree that *res judicata* does not apply to applications for habeas corpus.  The courts must be kept open to guard against injustice through judicial error."[3]

### 2) Extrinsic Fraud

61.     Because Petitioner's right of association with A.R.W. has been violated by the acts of Owen and Cliber, the Court has authority to examine the perjury and extrinsic fraud perpetrated by Owen and Cliber to barratrously initiate Case No. 21-5-00680-6 without evidence of "domestic relations" between Petitioner and Owen.

62.     Owen's perjury, and Cliber's subornation of Owen's perjury, were integral to the extrinsic fraud of their Petition to Decide Parentage, which was the fraudulent basis of their obtaining restraining orders against Petitioner.

63.     The "extrinsic or collateral fraud" included Cliber "purposely keeping [Plaintiff] in ignorance of the [action]." *Burke v. Bladine,* 99 Wash. 383, 394 (1918) "Adopting the language of *Pico v. Cohn*, 91 Cal. 129, 25 Pac. 970, 27 Pac. 537, 13 L.R.A. 336, 25 Am. St. Rep. 159.***In all such instances, the unsuccessful party is really prevented, by the fraudulent contrivances of his adversary, from having a trial[.]"

---

[3] *Darr v. Burford*, 339 U.S. 200, 214-215 (1950)

PLAINTIFF'S PETITION FOR
WRIT OF HABEAS CORPUS
Page 13 of 16

Kurt Benshoof, Plaintiff
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

64.     Because Petitioner's right to redress is being infringed upon as a result of Defendants' actions, the Court has authority to examine the perjury and extrinsic fraud perpetrated by Owen and Lerman, and suborned by their attorneys, which was then used by Defendants' attorneys to obtain an Order Restricting Abusive Litigation ("ORAL") without the required element that a court had ever found Petitioner to be a domestic violence perpetrator.

65.     The Court has authority to examine the perjury and extrinsic fraud perpetrated by Owen and Lerman, and suborned by their attorneys, which was recently used by Cliber's attorneys to seek the arrest and imprisonment of Petitioner under the ORAL.  (Docket 267)

66.     Cliber and his counsel concealed from Petitioner that an ORAL is granted under RCW 26.51, which prevented Petitioner from knowing the controlling statutory requirements.  This prevented Petitioner "from presenting all of his case to the court." *United States v. Throckmorton*, 98 U.S. 61, 66 (1878)

## D. CHILD IMPRISONMENT

67.     In an early test of the Habeas Corpus Act, a 12-year-old child petitioned for a writ of habeas corpus to free herself from her unlawful imprisonment.  Having been unlawfully restrained under indentured servitude by her mother's former slave owner, the young girl's freedom was restored in only a matter of days under habeas corpus.[4]

---

[4] *In re Turner*, 24 Fed. Cas. 337 (No. 14247) C.C.D. Md. (1867)

PLAINTIFF'S PETITION FOR
WRIT OF HABEAS CORPUS
Page 14 of 16

Kurt Benshoof, Plaintiff
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

68.     Before three witnesses, including the college professor who tutored A.R.W. during the 2020-2021 school year, A.R.W. affirmed much of the foregoing, as well as, of sound mind, granting Petitioner power-of-attorney to effectuate the release of A.R.W. from his imprisonment by Owen and Lerman. (Appendix G)

### VERIFICATION

I, Kurt Benshoof, do hereby declare that the foregoing is true and correct to the best of my knowledge under penalty of perjury in the State of Washington.  Executed this 31st day of January in the year 2024, in the city of Seattle, in the county of King, in the state of Washington.

Petitioner certifies that this petition contains less than 3,100 words in compliance with LCR.

By:    /s/ Kurt A. Benshoof
        Kurt A. Benshoof *Pro Se*


1716 N 128th Street
Seattle, WA 98133
Phone: (206) 460-4202
Email: kurtbenshoof@gmail.com

PLAINTIFF'S PETITION FOR
WRIT OF HABEAS CORPUS
Page 15 of 16

Kurt Benshoof, Plaintiff
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

0018

# CERTIFICATION OF SERVICE

Petitioner hereby certifies that on January 31, 2024, he did electronically file the foregoing motion with the Clerk of Court by using the e-filing system, which will send a notice of electronic filing to all counsel of record, and by email to the addresses listed below.

**Attorney For Defendant Jessica Owen:**
Blair M. Russ, WSBA #40374
1000 Second Avenue
Suite 3660
Seattle, WA 98104
Email: bmr@tbr-law.com
Phone: (206) 621-1871

**Attorneys for Defendant Nathan Cliber:**
Sarah N. Turner, WSBA #37748
Michael C. Tracy, WSBA #51226
701 Fifth Avenue
Suite 2100
Seattle, WA 98104
Phone: (206) 695-5178
Email: sturner@grsm.com
Email: mtracy@grsm.com

**Attorney for Defendants**
**Magalie Lerman and Owen Hermsen:**
Moshe Y. Admon, WSBA #50325
300 Lenora Street
Suite 4008
Seattle, WA 98121
Email: jeff@admonlaw.com
Phone: (206) 739-8383

DATED:  January 31, 2024

Signed:   /s/ Kurt A. Benshoof

Kurt A. Benshoof, *Pro Se*

Kurt Benshoof, Plaintiff
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

# Appendix  **A**

FILED
2021 AUG 23
KING COUNTY
SUPERIOR COURT CLERK

CASE #: 21-2-11149-8 SEA

**Superior Court of Washington
For King County**

Jessica Rae Owen    11/23/1975
Petitioner
vs.
Kurt   Alden   Benshoof    07/18/1969
Respondent

**No.** 21-2-11149-8 SEA

**Petition for Order for Protection
(PTORPRT)**

---

1. ☒ I am a victim of domestic violence committed by the respondent.
   ☐ A member of my family or household is a victim of domestic violence committed by the respondent.
   ☐ I am a ☐ guardian ☐ guardian ad litem ☐ next friend of a minor who is 13 to 15 years of age and is a victim of domestic violence in a dating relationship with a person age 16 or older.  The name of the minor victim is _____.  This person's identifying information is provided in paragraph 5 below.

2. ☒ The victim lives in this county.
   ☐ The victim left their residence because of abuse and this is the county of their new or former residence.

3. The victim's age is:                    Respondent's age is:
   ☐ Under 16  ☐ 16 or 17  ☒18 or over    ☐Under 16  ☐ 16 or 17  ☒ 18 or over

4. The victim and the respondent are:
   ☒ Intimate Partners because they are:
      ☒ current or former spouses or domestic partners  ☒ parents of a child-in-common
      ☐ age 16 or older and are/were in a dating relationship, and are currently residing together or resided together in the past  ☐ age 16 or older and are/were in a dating relationship, but have *never* resided together.
   ☐ Family or household members because they are:
      ☐ current or former adult cohabitants as roommates  ☐ adult in-laws  ☐ adults related by blood ☐ parent and child ☐ stepparent and stepchild ☐ grandparent and grandchild.

5. Identification of Minors (if applicable) ☐ No Minors involved.

| Name (First, Middle Initial, Last) | Age | Race | Sex | How Related to Petitioner | How Related to Respondent | Resides with |
|---|---|---|---|---|---|---|
| A_____ R___ W_____ | 12 yrs | White | M | Child | Child | Petitioner |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

6. Other court cases or other restraining, protection or no-contact orders involving me, the minors and the respondent:

| Case Name | | | |
|---|---|---|---|
| Case Number | 15-424720 | 15-393274 | 15-393274 |
| Court/County | King | King | |

**I Request an Order for Protection** following a hearing that will:

[1] ☒ **Restrain** respondent from causing any physical harm, bodily injury, assault, including sexual assault, and from molesting, harassing, threatening, or stalking ☒ me ☒ the minors named in paragraph 5 above ☐ these minors only:

(If the court orders this relief, and you and the respondent are current or former spouses or domestic partners, parents of a child-in-common, age 16 or older and are/were in a dating relationship, are currently residing together or resided together in the past, age 16 or older and are/were in a dating relationship, but have *never* resided together, the respondent will not be able to obtain or possess a firearm, other dangerous weapon, ammunition, or concealed pistol license for the duration of the order.)

[2] ☒ **Restrain** respondent from harassing, following, keeping under physical or electronic surveillance, cyberstalking as defined in RCW 9.61.260, and using telephonic, audiovisual, or other electronic means to monitor the actions, locations, or wire or electronic communication of ☒ me ☒ the minors named in paragraph 5 above ☐ only the minors listed below; ☒ members of the victim's household listed below ☐ the victim's adult children listed below:   Magalie Lerman

[3] ☒ **Restrain** respondent from coming near and from having any contact whatsoever, in person or through others, by phone, mail, or any means, directly or indirectly, except for mailing of court documents, with ☒ me ☒ the minors named in paragraph 5 above, subject to any court-ordered visitation ☐ these minors only, subject to any court-ordered visitation:

[4] ☒ **Exclude** respondent from ☐ our shared residence ☒ my residence ☒ my workplace ☐ my school ☐ the residence, day care, or school of ☒ the minors named in paragraph 5 above ☐ these minors only:
        ☐ other:

You have a right to keep your residential address confidential.

| | |
|---|---|
| 5 | ☐ **Direct** respondent to vacate our shared residence and restore it to me. |
| 6 | ☒ **Prohibit** respondent from knowingly coming within, or knowingly remaining within **500 feet**_____ (distance) of ☐ our shared residence ☒ my residence ☒ my workplace ☐ my school ☒ the day care or school of ☒ the minors named in paragraph 5 above. ☐ these minors only:<br>    ☐ other: |
| 7 | ☐ **Grant** me possession of essential personal belongings, including the following: |
| 8 | ☒ **Grant** me use of the following vehicle:<br>    Year, Make & Model <u>2014 Toyota FJ Cruiser</u>   License No. <u>BGF9753</u> |
| 9 | ☒ **Other**: *No contact with my son, Azhrael R Walker, my partner, Magalie Lerman, or me in person or through any form of communication.* |

**Protection involving a minor:**

| | |
|---|---|
| 10 | ☒ Subject to any court-ordered visitation, **Grant** me the care, custody and control of ☒ the minors named in paragraph 5 above ☐ these minors only: |
| 11 | ☒ **Restrain** respondent from interfering with my physical or legal custody of ☒ the minors named in paragraph 5 above ☐ these minors only: |
| 12 | ☒ **Restrain** the respondent from removing from the state: ☒ the minors named in paragraph 5 above ☐ these minors only: |

**Additional Requests:**

| | |
|---|---|
| 13 | ☒ **Direct** the respondent to participate in appropriate treatment or counseling services. |
| 14 | ☒ **Require** the respondent to pay the fees and costs of this action. |
| 15 | ☒ **Remain Effective** longer than one year because respondent is likely to resume acts of domestic violence against me if the order expires in a year. |

**Protection involving pets.**

| | |
|---|---|
| 16 | ☐ **Grant** me exclusive custody and control of the following pet(s) owned, possessed, leased, kept, or held by me, respondent, or a minor child residing with either me or the respondent.   (Specify name of pet and type of animal.): |
| 17 | ☐ **Prohibit** respondent from interfering with my efforts to remove the pet(s) named above. |

18 ☐ **Prohibit** respondent from knowingly coming within, or knowingly remaining within
_____(distance) of the following locations where the pet(s) are regularly found:
☐ petitioner's residence (You have a right to keep your residential address confidential.)
☐ _____ Park
☐ other: _____

Protection from Firearms and Other Dangerous Weapons

19☒ **Require** the respondent to surrender all firearms, or other dangerous weapons, and any
concealed pistol licenses, and prohibit the respondent from accessing, obtaining or
possessing firearms, other dangerous weapons, or concealed pistol licenses.

Notice: If you **are** the respondent's intimate partner, after actual notice and an opportunity to
be heard at the hearing, the court may be required to order the respondent to surrender
firearms, other dangerous weapons, or concealed pistol license.

---

**I want emergency temporary protection effective immediately, that lasts
(up to 14 days) until the court hearing:**

☒ An emergency exists as described below. I request that a **Temporary Order for
Protection** granting the relief requested above in 1) through 12) be issued immediately,
without prior notice to the respondent, to be effective until the hearing.

☒ I also request temporary surrender all firearms, other dangerous weapons, and any
concealed pistol licenses without notice to the other party because irreparable injury
could result if an order is not issued until the hearing.

What irreparable harm would result if an order is not issued immediately without prior notice
to the respondent?
He is currently preventing my son from talking to me or coming home. I have had a verbal agreement
with Kurt that we split time with my son 50/50 and it is now seven days into my week with my son and I
still have not gotten him back. I am afraid he will continue to keep him from me.

---

Request for Special Assistance from Law Enforcement Agencies:
I request the court order the appropriate law enforcement agency to assist me in obtaining:
☐ Possession of my residence. ☒ Possession of the vehicle designated above.
☐ Possession of my essential personal belongings at ☐ the shared residence ☐
respondent's residence
☐ other location _____
☒ Custody of ☒the minors named in paragraph 5 above ☐these minors only (if applicable):
_____.
☐ Other: _____

"Domestic violence" means physical harm, bodily injury, assault, including sexual assault,
stalking, _Or_ inflicting fear of imminent physical harm, bodily injury or assault between
family or household members.

**Statement:** The respondent has committed acts of domestic violence as follows. (Describe
specific acts of domestic violence and their approximate dates, beginning with the most recent
act. You may want to include police responses.)

Describe the most recent violent act, fear or threat of violence, and why the temporary order should be entered today without notice to the respondent:
*Kurt has repeatedly texted me multiple times a day through his phone and now my son's. He will not let my son come home and won't let him speak to me. It has been a week and my son has not come home. Please refer to exhibits (5).*

Describe the past incidents where you experienced violence, where you were afraid of injury or where the respondent threatened to harm or kill you:
*He shattered my truck window after an argument (see Broken Truck Window 1-5). We had an argument that escalated to pushing and hitting (see Incident # 15-393274). Please refer to exhibits (2), (3).*

Describe any violence or threats towards children:
*We had an argument that escalated to him leaving a bruise on my arm and hitting our child's head on the wall. Please refer to exhibits (1), (4).*

Describe any stalking behavior by respondent, including use of telephonic, audiovisual or electronic means to harass or monitor:
*He has repeatedly texted me more than 10 times in a day, often more thank 20 despite a complete lack of response from me. Now that I have blocked his number he is now using my son's phone to text me. He is also emailing me repeatedly also without a response from me.*

Describe medical treatment you received and for what:

Describe any threats of suicide or suicidal behavior by the respondent:

Does the respondent own or possess firearms? ☐Yes ☐ No I'm not sure.

Does the respondent use firearms, weapons or objects to threaten or harm you? Please describe:

Has the respondent used, displayed, or threatened to use a firearm or other dangerous weapon in a felony? Please describe:

Is the respondent ineligible to possess a firearm under the provisions of RCW 9.41.040? Please describe:

Does possession of a firearm or other dangerous weapon by the respondent present a serious and imminent threat to public health or safety, or to the health or safety of any individual? Please describe:

If you are requesting that the protection order lasts longer than one year, describe the reasons why:

Given the duration and insidiousness I have already experienced his abuse I think one year will not be sufficient protection. I would like for my son, partner and myself to finally have peace without his constant texts, emails, and general harassment.

Other: _____

_____

_____

_____

_____.

(Continue on separate page if necessary.)

Check box if substance abuse is involved: ☐ alcohol ☐ drugs ☐ other: _____

☐ Personal service cannot be made upon respondent within the state of Washington.

I declare under penalty of perjury under the laws of the state of Washington that the foregoing is true and correct.

Dated: 08/21/2021 _____ at Seattle, WA_____.

J.R.Owen

_____

Signature of Petitioner

**IMPORTANT:** You have a right to keep your residential address confidential. If you have one, please provide an address, other than your residence, where you may receive legal documents:

82

*WPF DV-1.015 Mandatory (07/2019) - RCW 26.50.030*          - Page 6 of 6

Kurt Benshoof is not the legal guardian of my son. I am the sole legal guardian, and he has been acting in the role of father for 12 years. However, my name is the only name listed as the parent on A▮▮▮▮ R▮▮ W▮▮▮▮'s birth certificate. Kurt and I had a tumultuous relationship for 13 years, in which he was emotionally abusive and sometimes violent. I describe some of the worst of these incidents in the pages and pictures that follow but they are a small part of the extensive intimidation, lying, gaslighting and emotional abuse I endured from him. Through all of it, I wanted A▮▮ to have a father and I wanted a co-parent who I could trust and who was respectful.  Kurt has been neither trustworthy nor respectful.  And, while I know that Kurt loves A▮▮ I believe that things have escalated to a place that compromises A▮▮'s well-being, both mentally and physically, and I am asking the courts to intervene on his behalf.

I moved out of the house that I own where I was cohabitating with Kurt in September of 2020 and moved into a new house with my current partner. I wanted Kurt to be the one to leave but he wouldn't, so I became his landlord instead as I own the house he lives in. The verbal agreement when I moved out was that we would have 50/50 parental custody but the first week I moved out, A▮▮ asked to stay with us. Over the next nine months, A▮▮ begged us not to have to go over to his father's. Part of the reason why is because his father is a fervent anti-masker and anti-vaxxer. He took A▮▮ to an anti-mask rally and tried to get him to go into stores with him unmasked where Kurt would proceed to have conflicts with staff that asked him to mask up. It embarrassed A▮▮.

In April 2021, after we took A▮▮ away for a 3 weeklong road trip, Kurt demanded that Azh come over. My response was that we weren't keeping A▮▮ from him - A▮▮ didn't want to go to his house because Kurt would fall asleep during the day and A▮▮ was bored and disliked feeling alone while Kurt was asleep.  I said that he would need to clean his place up and stay awake when A▮▮ was around to engage him. My partner and I talked with A▮▮ about it, and he agreed to start spending one week with us and one week with Kurt, but even then, he asked to come over one to several nights during Kurt's week. Every time he would come back to our house, Kurt had undone the parenting work we had done to get A▮▮ to be more independent including sleeping on his own, using silverware, and helping with chores around the house. He also was confused by the things his father told him about the pandemic: conspiracy theory after conspiracy theory about how the pandemic wasn't real and vaccines are harmful. We presented A▮▮ with evidence to the contrary and my partner even got COVID. On top of that, A▮▮ never got to have a pod with his friends because his father presented a significant risk to other family's health leaving him isolated and depressed...which Kurt rarely had to see or deal with.

After A▮▮ turned 12 last April and one of the vaccines was approved for children 12 and over, we started to discuss A▮▮'s options with him. He chose not to for a while but told me in July that he wanted to get vaccinated so he could play with his friends. I asked him if he was going to tell Kurt, to which he replied that he didn't think that was a good idea. Then, last Saturday, August 14th, Kurt wanted to go dancing with friends and A▮▮ asked if he could stay with us. We were excited to have him over because our friends were getting married and some of A▮▮'s friends would be at the party. We had a great night together.

**67**

The next morning, we woke up and my partner made us breakfast. While we were sitting at the table eating together, I mentioned to A⬤ that the next day we were going to get his second vaccine dose, as well as go to the doctor for a Wellness Check and to discuss a new vaccine schedule to catch up on his childhood vaccines he would need to go to school. He started shaking his head adamantly which was really startling. I asked him what was wrong, and he completely shut down. It took my partner and I ten minutes to get him to tell us what was up, and when he did, he said that his father found out about his first vaccine and was angry about it – he said that Kurt always knew when he was lying. Kurt didn't want him to get the second dose and he wasn't supposed to tell us that. We tried to talk with him about the implications of this choice, but he completely shut down again and asked to go to his room. Thirty minutes later he said he was going to play pickle ball with Kurt who came to pick him up. I asked A⬤ later that night over text if he wanted to come back and he said he wanted to, but a few hours later he'd changed his mind and said he wanted to stay. It was the last day of Kurt's parenting night per our verbal agreement.

Monday morning, I sent him a text to check in with him and to let him know that I would be picking him about 12pm for his Lego summer camp and for his doctor's appointment. He texted back that he would be staying with his dad that day. At that point, I told him to call me. He didn't answer, so I texted him a reminder that we had arranged a sleepover for him and a friend the following day. I tried calling him again and he said he was "talking with dad still". My partner and I became concerned that he had shut down and wasn't answering us. I texted to ask if he felt safe. His answer cut me to the core: he said that he didn't feel safe that I wouldn't make him get the second vaccine shot. I explained that we would never force him to do that – he has been able to make his own decisions regarding vaccinations in the past few years because his father adamantly opposed him from receiving any, including the normal series of vaccines recommended for all babies and children. I have been afraid of fighting with Kurt about vaccinating A⬤, so I have had to present reasoned arguments to my son about their value.

I have had to convince my own son, a minor, about the merits of receiving lifesaving medical protection to avoid the very thing we are dealing with now – Kurt taking him from me and isolating him and escalating the harassment that has existed between us for years.

I told my son that the most I was going to do was to have a doctor, a trained medical professional, explain COVID and the COVID vaccine to him. I asked him to please think about all the adults and young friends who were vaccinated and to ask them about why they got it. A⬤ texted that he wanted to come over the next day to have a sleepover with his friend. I decided to back off, not wanting to escalate an already tense situation. The next day, Tuesday, I texted him that I would pick him up for Lego camp that has been scheduled for the whole week (8/16-8/20) and he didn't respond. I texted him about coming back for the sleepover and he didn't respond.

Also, beginning Sunday night, Kurt was sending me continuous threatening texts and emails telling me that I am an unfit mother because I was harming our son and that "any further

**68**

stonewalling will be considered willful neglect, negligence, and/or reckless endangerment of our child". Tuesday morning, I woke up to 17 text messages that Kurt had sent in the previous two hours. After blocking his number, he took Azh's phone and started texting me from it. He said,

"This is Kurt. He does not want to talk to you. He knows you're lying. He is not interested in you coming to get him. Your lies are obvious. He is not a fool, and what you are doing is now clear to him. Respect his wishes. He's smart enough to see the most basic of sales and coercion techniques – fear and social conformity."

Kurt continued at length and then told me that I could "go ahead and cancel whatever [I] had planned for now, we've made other plans with families that aren't engaging in medical apartheid, discrimination and segregation". There are more texts calling me "irrational and unhinged". (It is important to note that Kurt has two phone numbers and that I had to block the other one on August 2nd after he sent me text after text, harassing me about Azh wearing masks while in stores and at summer camp. He said they were "experimental devices" and presented the argument that if he, Kurt, "mandated that A██ wear a ball gag or a butt plug during [his] week with him, would [I] raise an objection that such mandating would be without [my] consent? Legally speaking. Same legal principle.", and then further equated wearing a mask with wearing a ball gag and that I needed to respect A██'s body, or the law would force me to comply. The texts went on and on until finally he called me a "Child abuser" and "One step up from a pedophile in [his] book" at which point I said he was crazy and offensive and blocked him.) (See photos Kurt to me 1 and 2.)

Since then, Kurt has emotionally isolated and turned A██ against me even more. A██ won't talk to me and is clearly afraid of upsetting his dad. I don't know to what extent Kurt has brainwashed him and to what extent he is afraid of Kurt and appeasing him. My partner has tried to reach out to A██ via text, and so has his grandmother – both adults who he has a very close relationship with - and the mother of the friend who was coming for the sleepover also tried to reach to him. Kurt has responded with his phone for A██ until they all blocked him, harassing them about asking me for vaccination information.

Next, Kurt started harassing this same young friend of A██'s, another 12-year-old, through A██'s number asking him to find out what vaccine A██ received (which shows the extent of his scientific misinformation because there is only one approved for minors – he just wants to harass people). I have pleaded with Kurt to let me talk with my son and to let me have my son. I am afraid to go over there and try and get him because I am afraid of Kurt and afraid of what Kurt might do that my son will have to see. However, this was the last straw, and I am begging for the court's help.

In addition to keeping my son on my parenting week, Kurt has prevented A██ from going to a doctor's Wellness Check appointment on Monday and an orthodontist appointment on Wednesday. A██ has also missed out on an entire week's worth of Lego summer camp and three play dates with different friends. You will see in the rest of this document that Kurt has

**69**

hurt me and my son too many times. He is actively harming my family now and I want him out of my son's and my life. He has no legal right to be there. I want my son back. I want my house back. I want my car back. I know Kurt will retaliate. The last time Kurt felt slighted, he brought a gun to intimidate the person he felt slighted by. But the system has not charged him with that even though he is a felon and is not legally allowed to have a gun. He is free to terrorize my family and the Seattle community. I submit this case to ask for the highest level possible of protection from him.

On June 24th, 2021, Kurt contacted A⬤ and me irate because A⬤ plagiarized one of his final papers for school this past year. After a laborious and extremely boring year online, I am not surprised that A⬤ resorted to this. This was discovered by Kurt during a trip my partner and I had taken A⬤ on to see her family in Annapolis, MD. First, I received a text from Kurt talking about how A⬤ had lied and was going to be failed on his homework and would have to redo the entire year as punishment. I immediately responded, asking him to explain what he was talking about, but he didn't text me back. I texted A⬤'s tutor and begged him not to fail Azh for the entire year because I thought that it would have very negative repercussions on A⬤'s mental wellbeing if he had to repeat a grade after everything he had already missed out on this past year. I didn't hear back from his tutor for several hours. Kurt would also not respond to my repeated texts asking him to explain what had happened.

In the meantime, Kurt began to send A⬤ texts, one after another. Kurt told him exactly how he would be punished and that he was "a lying little cheater" and that he didn't "want see your boo hoo fake ass tears or hear your fake ass "I'm sorry I won't do it again" Your ass is grass." Kurt threatened to take away all his electronics and that A⬤ was "going to learn the consequences of lying". I walked into his room at the Airbnb and found A⬤ crying on the bed. After A⬤ explained what had happened and showed us the texts his dad was sending him, we had a talk with him about why plagiarism is not okay and how he would need to correct his homework. And, also, that the way Kurt was talking to him was unacceptable. I asked him if he wanted to block Kurt's number and told him that he could unblock it at any time. I said that the way Kurt was talking to him was abusive and that Kurt could have made his point about the severity of cheating without belittling him. I said that I thought that there were more constructive ways to deal with what happened. A⬤ decided to block his number and when I asked him every day afterwards, he said he didn't want to talk to his dad. I reminded A⬤ during one of these days that it was Father's Day, but he still did not want to talk to him. Eventually Kurt used a different phone number to contact A⬤ and, when he did, he said that he found out that I had told Azh to block him. He asked A⬤ leading questions about how that had come to pass and then Kurt told him that he had texted those things out of love and because he wanted A⬤ to do better. And, to never EVER block him again. EVER. After that Kurt began to send me vague and threatening texts. Eventually I blocked him myself on that number. (See photos 1.PNG and 2.PNG)

On the night of December 17th, 2020, when Azh was with Kurt, I received a phone call around 11:30pm. My ringer was off and by the time I noticed that A⬤ had called, I had missed 6 calls from him. Azh said that they had been pulled over and the police were attacking his dad. He

**70**

handed the phone over to a police officer who said that Mr. Benshoof was probably going to spend the night in jail and was I able to come pick up my son? My partner and I immediately went to where Kurt had been pulled over. He was being loaded into the back of a police car with his hands handcuffed. A⬤ got out of the car and ran to us. He was visibly shaken up and upset. He immediately began to cry once he was inside our car. The officer asked to talk to me, so A⬤ stayed in the car with my partner while I stepped outside to talk with her. She told me that Kurt was pulled over for erratic driving – he disobeys traffic laws all the time and then contests traffic violations where they consistently get dismissed. She said once pulled over, Kurt refused to stay in his car even after verbal commands to get back in his vehicle. They tackled him to the ground and A⬤ saw all of it. One of the officers said he seemed like he was intoxicated and asked if he had a history of drug or alcohol abuse, or mental illness. I said he has not been diagnosed with any mental illness that I know of but that I thought that might be the case. The car that Kurt drives is in my name and insured by me. Therefore, when they saw my name on the registration, I was able to drive it away while my partner drove my son home (Incident # 20-346226).

The next day, a CPS investigator contacted me because one of the officers had called them. She came and interviewed my son and myself and said we have a lovely home. I informed the investigator that, at the time, my son refused to spend the night at Kurt's house more than once every other week and was seeing a tutor there three days a week for two hours a day. I never heard any more about the CPS investigation. It was Kurt's actions which prompted the CPS investigation. But that did not prevent Kurt from using this as another opportunity to begin to harass me repeatedly via text about how I was going to get our son taken away from us and that I should never have accepted the interview. There was no accountability about how it was his arrest for driving erratically that triggered the investigation. This went on for days. Eventually I reached out to Kurt's other child, an adult named Samara Lane and asked her to talk to him. She responded via text and said that she felt that she had reached him and calmed him down. His texts subsided after that.

On September 11, 2020, Kurt was arrested for refusing to put on a mask at Sprouts and getting into an altercation with the security guard and got arrested for Assault, and Criminal Trespass – 1st degree, and Resisting Arrest (Incident # 20-264905). One week later, on September 18th, 2020, I went over to the house that Kurt is renting from me and that I had just moved out of. I was in the process of packing up the remaining things I had left at the house when I noticed that he had a shotgun on the dining room table in front of our son. I asked him, "Why do you have a gun?!" He asked me in return, "Why do you lock your doors?" I said, "So you're planning on protecting your house by shooting someone? Not to mention that I don't want a gun in the house around A⬤! And how did you get one? You're a felon!" He said that he had read the RCW 9.91.040 and that it didn't say he couldn't. Shortly thereafter he said he was off to Sprouts to get some answers and I told him not to get shot or arrested. He was later arrested and charged with Criminal Trespassing, Assault, and Unlawful Use of a Weapon to Intimidate Another (Incident #20-268834) for standing menacingly in the parking lot with the shotgun. This was after he had already spent one night in jail the previous week for the initial charge. The initial charges were dropped for the first incident at Sprouts, but he is facing trial next month

**71**

on September 21st, 2021, for the subsequent charges when he brought the rifle to Sprouts. In addition to these charges, he has a warrant for his arrest for failure to appear at a prior trial. On November 13th, 2020, he was arrested for Criminal Trespass – 1st degree and Theft (Incident# 20-304716) after refusing to wear a mask at PCC on Aurora. He failed to appear in court for that trial because he refused to wear a mask in the courthouse or provide medical proof that he did not need to wear one. I took a photo of Kurt with his rifle on the dining table in front of our son from that afternoon.

When I lived at my house with Kurt, it had two parking spots next to the house. One day in fall of 2019 he ordered a large load of lumber and had it unloaded into my parking spot after which I had to park on the street. The lumber stayed in my spot for over six months and eventually, in January 2020, I got into an argument about how he should be the one to park on the street not me. He told me that I should move the lumber if I wanted my space back. I told him that he should do that since it was him that had them drop it in my spot. Later that day, he borrowed my truck and shattered the rear window in my truck. Then he parked it on the street and didn't tell me about it. I discovered it the next day when I was leaving to visit my best friend. It had rained overnight, and rain and glass covered the boxes of children's books I had back there to give to my best friend's son. I went to her house and arrived there incredibly upset and crying. The next day, I went to the police station to file a report against him. I ended up not filing, though, because the officer that I spoke to told me that Kurt would be notified that I had made the report. I was afraid of what would happen if he found out while I was still living there. I decided to just document the incident with photographs. Several people witnessed the damage and how upset I was.

On September 10th, 2019, Kurt taped Cosmos, my cat, in a box. He said it was in retaliation for Cosmos killing a bird and left him on the porch alone. He was in the box with no one at the house for over two hours until I got home. There were no holes punched in the box for air. He did this instead of just leaving him in the house with the cat door closed.

On December 12th of 2018, after arguing about my acceptance of an invitation for our family to attend a Christmas party without consulting him first, Kurt slammed the front door hard enough to brake three glass panes in the door and began shouting at me. When I said that if he didn't stop, I would call the police he broke ¾" wood cutting board, shattered dishes in the sink and continued shouting at me. At this time, I walked to my bedroom and closed the door and called the police. I opened my door to look for my son, who was nine at the time, but couldn't find him. Instead, I saw Kurt ripping a door off the door jamb. I closed the door and a moment later I found my son hiding under my bed. He refused to come out because Kurt was shouting so loudly. A● was terrified.

Eventually Kurt quieted down, and I could hear some indiscernible noises from my bedroom. I stayed on the phone with the operator until a police officer arrived and came into the house. That's when I discovered what the noises had been: Kurt had cleaned up all the broken glass and swept up all the shattered dishes and then taped plastic over the broken windowpanes. He had also leaned the door back into the doorjamb and draped a towel over it to cover up the damage to the jamb. This was the most unnerving part of this experience. He had the

**72**

wherewithal to clean up his mess and make it look better before the police arrived.  As though he could have gotten himself under control at any time but chose not to.

He was outside of the house when the two officers arrived and, according to the officer who came in, was very confrontational with them.  Kurt was also very insistent that it was me who was in the wrong, not him.  The officer asked me if I felt I was in physical danger.  I told him I did not which was not true, but I was afraid of what would happen if I did.  They told Kurt to leave me alone and he came back inside.  He said a few sarcastic things to me and went to his bedroom upstairs (we were living together at the time but no longer romantically involved). My son did not want to see him, and I regret to this day that I did not have Kurt taken away that evening for my son's sake.  I wish that I had shown my son that I would protect him and keep him safe from anyone who scared him and made him feel unsafe.  Two days later, Kurt bought him an extravagant Lego gift and A⬛ forgave him.  (I took pictures of the damage to the house and the **incident # is missing but I am waiting for report to be emailed to me**.)

One morning in fall of 2016 Kurt and I got into an argument that escalated and led to my son hiding under my bed.  On this day had Kurt slept in.  He had recently moved into my house, and we had established a routine of waking up together and getting our son on his way to school.  When I realized that he was not going to get up and help me with Azh I said something in a sarcastic tone to him about, "at least letting me know the night before" that he wasn't planning on helping me the next day.  In response to this he jumped out of bed and started shouting about how he was "awake now" and, "how dare [he] sleep in", and that I had told him he should "rest more but [i] was lying".  He began to bang pots and pans around in the kitchen while still shouting at me.  I think he was dramatically trying to make me tea as this was something he often did when we would wake up together.

A⬛, meanwhile, had crawled under my bed to hide.  I shut the bedroom door to block out Kurt's shouting and told A⬛ to come out and sit with me.  He came and sat on my lap.  I told him that his dad was being really awful and that it was wrong to act like that.  I said that Kurt was scary and that no one who loves you should make you feel scared.  But that it wasn't our problem and that we would just walk out of the front door and go straight to my truck.  We would stop and get breakfast on the way to school, and I would buy him lunch instead of going into the kitchen to grab his lunchbox and that we didn't need to pay any more attention to his dad.  I asked if he was ready to go and we walked as quickly as possible out the front door.  Kurt was still ranting and throwing things around the kitchen. I did not file a police report for this incident.  A⬛, however, remembers this morning.  We have talked about it in recent months in response to his questions about his dad getting arrested several times in 2020.  I used it as another example of Kurt's bad decision-making ability and Azh agreed that his dad had badly overreacted.

In the afternoon of December 7th, 2015, Kurt stopped by my house to pick up some things from our basement and my son was with him.  I had recently started dating someone and there was a series of photos of us kissing in a photobooth I had put up with a magnet on the fridge.  I include this detail because I have no other explanation for why the following conflict happened.

**73**

I took my son into my bedroom while Kurt was busy, and my son said he wanted some candy. I told him that that was okay and gave him a piece. He said that his dad had told him he couldn't have any. I said that he could just finish it in my room and his dad would not know the difference. His father yelled for him a few minutes later, saying that they were leaving and to come to the front door. I said A⬤ would be there in a minute. Kurt came into my room and angrily said that they were leaving now.

A⬤ and I walked to the front door together and I put my shoes on so I could carry A⬤ him down to Kurt's car. I picked A⬤ up and Kurt told me to stay inside and to leave them alone. I said, "Why? I am just going to carry him down to the car." He insisted that I couldn't come to the car and grabbed A⬤ out of my arms. We began to argue, and he called me a "lying cunt", a "slut", and "bitch". I tried reaching for A⬤ to get him back. I said, "I just wanted to walk him down to the car. Why can't I just carry him out to the car?" Kurt just kept walking away from me with A⬤ in his arms, holding him away from me. Then Kurt grabbed my arm to hold me back. Things escalated and we were arguing and A⬤ started crying. Suddenly Kurt lifted A⬤ up away from me so that I couldn't reach him, and he bumped A⬤'s head on the wall which made A⬤ cry even harder and shout at us to, "Just stop it!" At this point I backed up and let them leave without protest. I called Kurt's girlfriend, who had not come with them, and begged her to please take care of A⬤ who was really upset. I was devastated. I later realized that Kurt had grabbed my arm hard enough to leave a bruise. He said that this all happened because I gave A⬤ a piece of candy after he explicitly told him he couldn't have one. But the amount of anger was so disproportionate to what I had done that I suspect that it was because of the evidence of my new relationship. I filed a report against him the next day (**Incident #15-424720**).

On November 10th, 2015, after Kurt had begun seeing each other again I let him stay over. That evening he told me that his girlfriend was coming to stay with him at his house on a one-way ticket from Ohio. I was deeply hurt by this new rejection and betrayal of our relationship. At the time, I was working and going to school so was overwhelmed by caring for A⬤ who was six. I asked Kurt if he would now take our son a few days a week at his place and he said no. He demanded that everything would still need to be done at my house and he would be staying there half time. I told him that was unacceptable. Our conversation escalated to a screaming match, and he pushed me. I retaliated by slapping him repeatedly on the arm. Kurt is 6 feet, 175 pounds. I was 5'8, 135 pounds. He angrily told me that I'd crossed a line and went downstairs to sleep in my bed instead of going to his home. I told him to leave, and he said, "Make me." He refused to leave until the morning. The fight really scared me, and I didn't want him in my house anymore, so I filed a police report two days later (**Incident# 15-393274**).

In the spring of 2014 A⬤ was attending pre-K at Phinney Ridge Co-op. To join this Co-op everyone had to have a background check. Kurt, however, had managed to avoid this for the first year and a half and this was because he was a felon: we possibly would be asked to leave the co-op if they found this out. Eventually, however, the mother in charge of overseeing the paperwork for all the parents involved in the co-op asked him to fill out the background check form. Kurt had recently been asked to stop riling the kids up too much after school by playing

**74**

with them.  And he felt that he was being singled out for that.  In response to her request, rather than simply filling out the background check, he began to incessantly email this mother at the co-op with veiled threatening letters.  Very quickly she began to feel threatened by him and we were kicked out of the co-op because of him.  I had to petition separately to bring A⬤ back into the co-op to finish out the last two months of pre-K without Kurt which was only possible because we had broken up shortly before this and I was living separately from him. The co-op accepted my petition with the explicit boundary that Kurt was not to go into the co-op any more or have any more contact with any of the parents.  Later, the teacher, Francine, told me that they would not have kicked us out since the felony was not for harming a minor or an incapacitated adult. It was for growing marijuana. I would not have had to go through all the stress and embarrassment of being kicked out and then asking to come back into the co-op for my son's sake if Kurt had simply filled out the form.  A⬤ loved going to pre-K.  He had many friends and was very popular with the other parents.  He didn't understand why he wasn't allowed to go back and play with his friends while I was petitioning to get him back into school. It didn't need to be so hard.  Kurt made it difficult and scared people outside of our relationship.

I ask the courts to please think about Kurt's history within our family and to consider how it has escalated in the past week and what that means going forward.  I am scared for my son and for myself.  I beg the courts to please help me get my son back and prevent any further harm to us. Thank you.

Sincerely,
Jessica Rae Owen

**75**

# Appendix  **B**

Report Number 2015-393274 - Incident / Offense Report Report (Seattle Police Department)

# Report Number 2015-393274 - Incident / Offense Report Report

| REPORT DATE / TIME | PRECINCT / SECTOR / BEAT / RA / SUBDIVISION 5 | CAD EVENT START DATE / TIME - CAD EVENT END DATE / TIME |
|---|---|---|
| Nov 10, 2015 13:15 | N / N / N2 / 2337 | Nov 9, 2015 22:30 |

REPORT WRITER

JACOB MASTERSON #8350

ASSISTING PERSONNEL / TYPE(S)

TAMMY FRAME #7474 (Partner)

REPORT TAKEN LOCATION

1716 N 128 ST, SEATTLE 98133

LEGACY DATA

GO_DISTRICT: N

REPORT_NOTIFICATION_GROUP: V/C CLEARANCE NOTIFICATION -
NOTIFIED: N ; DATE: ; NOTIFIED BY: ; HOW NOTIFIED:
DRUG_INFO: N

GO_ZONE: N2
PROPERTY_INFO: N
GO_LOCATION: 1716 N 128 ST
GO_MUNICIPALITY: SEATTLE

GO_X_COORDINATE: 1270460

ENTRY_DATE: 10-NOV-15
CLEARANCE_INFO: Y
OP_STATUS: REFERRED -CITY ATTNY LAW DEPT BY FOLLOW-UP UNIT,
Cleared By: 5912
GO_GRID: 2337
GO_Y_COORDINATE: 267166

## NARRATIVE

Document No: GO0016286530001
Subject: GO NARRATIVE
Author: JACOB MASTERSON (8350)
Date:2015-11-10 14:49:00

[TT_VERSION 1.0] [GENERAL OFFENSE INITIAL INVESTIGATION NARRATIVE]1 BACK-UP OFFICERS(S): (NAMES, SERIAL #'s, AND ROLES ININCIDENT)[Frame #7474-FTO ]2 CHARGES: [ ] CHARGE DESCRIPTION:[]3 ARREST SCREENED BY: (SUPERVISOR'S NAME AND SERIAL)[ ]4 PHOTO(S) TAKEN? [N] IF SO, [ ]UPLOADED TO DEMS, OR [ ]ICV USED5 RECORDED STATEMENT(S) TAKEN? [N] IF SO, [ ]UPLOADED TO DEMS, OR [ ]ICV USED6 DIGITAL IN-CAR VIDEO(S) UPLOADED? [Y] FLAGGED? [Y] IF NO, [ ] PROVIDE REASON: RECORDING OFFICER(S): [Frame #7474, Masterson #8350 ] NAME(S), SERIAL #'(S) 7DNA / FORENSIC EVIDENCE SUBMITTED? [N ]8 FINGERPRINTS: FINGERPRINTS SEARCH MADE? [N] FINGERPRINT EVIDENCE OR CARDS SUBMITTED? [N ] ANALYSIS REQUEST SUBMITTED?[N ] COMPARISON REQUEST SUBMITTED? [N ]9 FELONY ALERT PACKET SUBMITTED? [N ] OFFICER SUBMITTING: [ ] USE OF FORCE UNITDESTINATION: [ ]10 USE OF FORCE REPORT SUBMITTED? [N] USE OF FORCE SCREENED BY (SUPERVISOR'S NAME AND SERIAL): [ ]11 LIST ALL HARDCOPY PAPERWORK SUBMITTED:[ ] ARREST REFERRAL TRACKING SHEET (Crisis Solution Center)[ ]CRIMINAL TRESPASS WARNING 5.34.1[ ]DUI PACKET[ ]DV SUPPLEMENTALS[ ] IDENTITY and MAIL THEFT (Photocopy of Recovered ID or Mail)[ ]INVENTORY SEARCH FORM[ ]MENTAL HEALTH CONTACT REPORT[ ]PARK EXCLUSION[ ]TOW IMPOUND RECORD[ ]VEHICLE REPORT[ ]WRITTEN STATEMENTS (Required on Felony Arr, Juvenile Crime, DV Incident)[ ] OTHER (Describe in Box Below)[ ]12 VICTIM(S) INJURIES: SFD Responded? [N][scratch on right index finger ]13 INCIDENTAL PROPERTY DAMAGE: (DESCRIPTION AND VALUE)[]14 VEHICLE IMPOUNDED? [N] STORAGE LOCATION: [ ]15 INITIAL INCIDENT DESCRIPTION / NARRATIVE:[On 11/10/15 at approximately 1356 hours while working as 2E11 I was dispatchedto 411 E Loretta Pl in reference a domestic violence assault that had occurredon 11/09/15 at 1716 N 128th St. The suspect was not currently on scene at 411E Loretta Pl. Upon arriving on scene I made contact with the victim, V/JessicaOwen 11/23/75.V/Owen wanted to report the incident that happened the other night at her placeof residence (1716 N 128th Pl). She stated that the suspect was herex-boyfriend of six years with whom she has a child in common with, S/KurtBenshoof 07/18/69, and he was still at her house. This is why she is reportingthis incident from her friend's house (411 E Loretta Pl).V/Owen said that she and S/Benshoof broke up approximately two years ago butthey have continued what she described as an "on-again-off-again" relationshipfor the past two years. V/Owen said that during that time S/Benshoof has alsobeen seeing another woman. It was last night at approximately 2230 hours ather residencewhen S/Benshoof had told V/Owen that he would be flying hisgirlfriend in for an unspecified amount of time to live in Seattle. V/Owenresponded by saying that she wanted S/Benshoof to leave her house. Sheexplained to me that S/Benshoof had been staying with her for the past threemonths and just prior to that approximately six months in what she alsodescribed as "on-again-off-again." Both V/Owen and S/Benshoof had agreed thatresiding together would be best for their child. When V/Owen told S/Benshoofthat she wanted him to leave and go back to his own residence at 4241 NGreenwood Av he became upset.This led to an argument that lasted approximately one hour according to V/Owen.The argument occurred upstairs in her "sewing room." At one point in theargument, while V/Owen was sitting down in a chair, she said that S /Benshoofstood over her and was yelling at her. He was yelling that V/Owen was justlike his mother and implying that V/Owen was drunk. V/Owen did say that shedid have a glass of wine that night but was not intoxicated. Because ofS/Benshoof's posture and him standing

| REPORTING OFFICER SIGNATURE / DATE | SUPERVISOR SIGNATURE / DATE |
|---|---|
| JACOB MASTERSON #8350   Nov 10, 2015 13:15 (e-signature) | SETH DIETRICH #4901   Nov 10, 2015 23:59 (e-signature) |
| PRINT NAME | PRINT NAME |
| JACOB MASTERSON #8350 | SETH DIETRICH #4901 |

**89**

Pg 1 of 3

**Seattle Police Department**
Mark43 RMS Form v2.0 generated by A. STREB #7140 on Aug 20, 2021 13:12.
Imported Report.

**0037**

## Report Number 2015-424720 - Incident / Offense Report Report

| REPORT DATE / TIME | PRECINCT / SECTOR / BEAT / RA / SUBDIVISION S | CAD EVENT START DATE / TIME - CAD EVENT END DATE / TIME |
|---|---|---|
| Dec 7, 2015 15:51 | N / N / N2 / 2337 | Dec 6, 2015 13:21 |

REPORT WRITER

RYAN KENNARD #7555

REPORT TAKEN LOCATION

1716 N 128 ST, SEATTLE 98133

LEGACY DATA

GO_GRID: 2337
GO_MUNICIPALITY: SEATTLE

PROPERTY_INFO: N
OP_STATUS: REFERRED -CITY ATTNY LAW DEPT BY FOLLOW-UP UNIT,
Cleared By: 6057
GO_LOCATION: 1716 N 128 ST
CLEARANCE_INFO: Y
GO_Y_COORDINATE: 267166

GO_X_COORDINATE: 1270460
DRUG_INFO: N
REPORT_NOTIFICATION_GROUP: V/C CLEARANCE NOTIFICATION -
NOTIFIED: N ; DATE: ; NOTIFIED BY: ; HOW NOTIFIED:

GO_DISTRICT: N
GO_ZONE: N2
ENTRY_DATE: 07-DEC-15

## NARRATIVE

Document No: GO0016373650001
Subject: NARRATIVE
Author: RYAN KENNARD (7555)
Date:2015-12-07 17:37:00

[TT_VERSION 1.0] [GENERAL OFFENSE INITIAL INVESTIGATION NARRATIVE]1 BACK-UP OFFICERS(S): (NAMES, SERIAL #'s, AND ROLES ININCIDENT)[None] 2 CHARGES: [ ] CHARGE DESCRIPTION:[]3 ARREST SCREENED BY: (SUPERVISOR'S NAME AND SERIAL)[ ] [4 PHOTO(S) TAKEN? [Y] IF SO, [X] UPLOADED TO DEMS, OR [ ]CV USED5 RECORDED STATEMENT(S) TAKEN? [N] IF SO, [ ]UPLOADED TO DEMS, OR [ ]ICV USED6 DIGITAL IN-CAR VIDEO(S) UPLOADED? [Y] FLAGGED? [Y] IF NO, [ ] PROVIDE REASON: RECORDING OFFICER(S): [Kennard #7555 ] NAME (S), SERIAL #'(S) 7DNA / FORENSIC EVIDENCE SUBMITTED? [N] 8 FINGERPRINTS: FINGERPRINTS SEARCH MADE? [N] FINGERPRINT EVIDENCE OR CARDS SUBMITTED? [N ] ANALYSIS REQUEST SUBMITTED?[N] COMPARISON REQUEST SUBMITTED? [N ]9 FELONY ALERT PACKET SUBMITTED? [N ] OFFICER SUBMITTING: [ ] FOLLOW-UP UNITDESTINATION: [ ]10 USE OF FORCE REPORT SUBMITTED? [N] USE OF FORCE SCREENED BY (SUPERVISOR'S NAME AND SERIAL): [ ]11 LIST ALL HARDCOPY PAPERWORK SUBMITTED: ]ARREST REFERRAL TRACKING SHEET (Crisis Solution Center)[ ]CRIMINAL TRESPASS WARNING 5.34.1[ ]DUI PACKET[ ]DV SUPPLEMENTALS[ ]IDENTITY and MAIL THEFT (Photocopy of Recovered ID or Mail)[ ]INVENTORY SEARCH FORM[ ]MENTAL HEALTH CONTACT REPORT[ ]PARK EXCLUSION[ ]TOW IMPOUND RECORD[ ]VEHICLE REPORT[ ]WRITTEN STATEMENTS (Required on Felony Arr, Juvenile Crime, DV Incident)[ ]OTHER (Describe in Box Below)[ ]12 VICTIM(S) INJURIES: SFD Responded? [N][small bruise to right bicep ]13 INCIDENTAL PROPERTY DAMAGE: (DESCRIPTION AND VALUE)[none]14 VEHICLE IMPOUNDED? [N] STORAGE LOCATION: [ ]15 INITIAL INCIDENT DESCRIPTION / NARRATIVE:[On 12-7-15 I was working as a fully uniformed Police Officer for the City ofSeattle as unit 2-Nora-22. I responded to the lobby of the North Precinct whereJessica R. Owen WF 11-23-75 was waiting to report "INV ASLT. OCC'D YESTERDAY.EX-GRABBED THEIR SON OUT OF HER ARMS YESTERDAY AND BRUISED HER ARM. MEDICSDECLINED. SUSP NOT HERE NOW OR EXPECTED. SUSPECT LIVES IN THE FREMONT AREA. SEECOMP WAITING IN THE PCT LOBBY."I arrived and contacted V / Owen who stated that she and her ex-husband Kurt A.Benshoof WM 7-18-69 both own the house that she lives in at 1716 N 128 St. S /Benshoof works in the basement.Yesterday they got into an argument over giving their child A████ R. W███ UM ██-09 candy. V / Owen and W / W████ went to the kitchen and were sittingthere talking. S / Benshoof decided to leave and take W / W████ with him (theyhave a rotating 3 day informal parenting plan). V / Owen stated she would walkW / W████ out to S / Benshoof's vehicle. S / Benshoof was upset bythis andtook W / W████ out of V / Owens arms. She tried to grab W / W████ back andthey got into a "shoving" match during which he pushed her in the bicep causingthe bruise. At one point he also "bumped" W / W████ into a wall.V / Owen allowed me to take a couple of photographs of her bruise using mydepartment issued digital camera.I offered V / Owen an SPD DV Pamphlet which she refused. She then told me shedid not want to get S / Benshoof into any legal trouble and stated she wouldnot assist with prosecution or seek any orders against him. She told me shejust wanted a report written.I provided her with an SPD business card with my information and the casenumber on it.]

WITNESS-1

| WITNESS-1 (PERSON) | | DOB / ESTIMATED AGE RANGE |
|---|---|---|
| W-1 W████, A█████ R | | 2009-██-██ |
| SEX | RACE / ETHNICITY | |
| Male | Unknown | |

| REPORTING OFFICER SIGNATURE / DATE | SUPERVISOR SIGNATURE / DATE |
|---|---|
| RYAN KENNARD #7555    Dec 7, 2015 15:51 (e-signature) | THERESE BEEMSTER #6354    Dec 7, 2015 23:59 (e-signature) |
| PRINT NAME | PRINT NAME |
| RYAN KENNARD #7555 | THERESE BEEMSTER #6354 |

**94**

Seattle Police Department
Mark43 RMS Form v2.0 generated by A. STREB #7140 on Aug 20, 2021 12:58.
Imported Report.

Pg 1 of 3

Report Number 2021-241501 - Incident / Offense Report Report (Seattle Police Department)

# Report Number 2021-241501 - Incident / Offense Report Report

| REPORT DATE / TIME | PRECINCT / SECTOR / BEAT / RA / SUBDIVISION 5 | CAD EVENT START DATE / TIME - CAD EVENT END DATE / TIME |
|---|---|---|
| Sep 14, 2021 10:34 | N / L / L1 / 3539 | Sep 14, 2021 08:41 - 08:41 |

REPORT WRITER
**ROBERT STEVENSON #5859**

ASSISTING PERSONNEL / TYPE(S)
**RYAN BECK #6898 (Backing Officer)**

REPORT TAKEN LOCATION
████████ **SEATTLE, WA 98125**

EMS / FIRE / OTHER LE AGENCIES ON SCENE
☐ YES ☑ NO

EVENT STATISTICS

☐ Event Contains Bias Elements
☐ AED Used
☐ Hate Graffiti
☐ Event is DV Related
☐ Shooting (Non-Fatal Injury)
☑ Body Worn Video
☐ Shots Fired (Eyewitness/Casings/Property Damage)

☐ Homelessness
☐ Naloxone Administered
☐ Cybercrime
☑ ICV Exists
☐ Shooting (Fatal Injury)
☐ DEMS

## NARRATIVE

Owen and Benshoof were in a dating relationship for approximately six years. They lived together and share custody of W████, there six 10 year old son. Benshoof has a history of emotional and physical abuse against Owen. Owen is now in a relationship with Lerman and they reside together at ████████ with W███. There are no current court orders in place and there is no parenting plan either.

On 09-14-2021 at approximately 0830 hours Owen was driving W████ to school and getting ready to exit the long shared driveway onto 10th Av Ne. Owen stated that Benshoof appeared out of nowhere and blocked the driveway so she couldn't leave. Owen backed up towards her home and Benshoof stayed directly in front of her. Owen backed into her driveway and went into the house with W███. Owen stated that they were both afraid of Benshoof and what he might do. W███ is especially afraid of Benshoof and does not want to split time with him.

Benshoof never crossed onto their property, but did stand in the street and yelled for W███. Benshoof did no threaten anyone and alleged that he just wanted to see and talk with his son W███.

Benshoof left prior to our arrival. Owen and Lerman believe that Benshoof is mentally ill and de-compensating. They afraid of what he might do in the future. I gave Owen a business card and case number for her records.

## OFFENSE-1

OFFENSE CODE
**RCW 9A.46.020.2A I HARASSMENT - MISDEMEANOR**

| OFFENSE START DATE | OFFENSE END DATE | OFFENSE COMPLETION | DOES EVENT CONTAIN BIAS ELEMENTS? |
|---|---|---|---|
| Sep 14, 2021 08:45 | Sep 14, 2021 08:45 | ☑ COMPLETED ☐ ATTEMPTED | ☐ YES ☑ NO |

| DOMESTIC VIOLENCE | GANG INFORMATION |
|---|---|
| ☑ YES ☐ NO | No Gang Involvement/Unknown |

*OFFENSE LOCATION*
LOCATION NAME / STREET ADDRESS/LOCATION NAME / APT, UNIT, STE / DESCRIPTION
████████

| REPORTING OFFICER SIGNATURE / DATE | SUPERVISOR SIGNATURE / DATE |
|---|---|
| ROBERT STEVENSON #5859   Sep 14, 2021 12:06 (e-signature) | PATRICK MOORE #7808   Sep 16, 2021 10:36 (e-signature) |
| PRINT NAME | PRINT NAME |
| ROBERT STEVENSON #5859 | PATRICK MOORE #7808 |

Seattle Police Department
Mark LEADS Form v2 Generated by E. PICKERING #6245 on Sep 17, 2021 07:01.

**0039**

225

# Appendix  **C**

### Superior Court of Washington, County of King

In re:

Petitioner/s *(person/s who started this case)*:

JESSICA R. OWEN,

And Respondent/s *(other party/parties)*:

KURT A. BENSHOOF.

No. 21-5-00680-6 SEA

Declaration of Jessica R. Owen
(DCLR)

## Declaration of JESSICA R. OWEN

I am over the age of 18 and am the Petitioner in this case.  I hereby declare as follows:

My former romantic partner, Kurt Benshoof, has always refused to be legally recognized or acknowledged as a parent to my son, A̶s̶h̶r̶a̶l̶ W̶e̶i̶s̶s̶ (Azh).  This despite Kurt having acted as A̶z̶h̶'̶s̶ father for Azh's whole life, and a near certainty that he is, in fact, the biological father.  Over the last 13 years, I endured Kurt's abuse, threats, and violence towards me because I desperately wanted A̶z̶h̶ to have a father in his life.  Since I finally ended my relationship with Kurt in September 2020 and moved in with my new partner, the harm caused to A̶z̶h̶ by Kurt's actions has become much clearer.

Kurt's behavior has worsened in the year since I moved out, culminating in him withholding A̶z̶h̶ from me for nearly three weeks in late August of 2021, in defiance of a temporary DVPO.  It was only by luck, community support, and police intervention that A̶z̶h̶ was returned to my care.  Since then, Kurt has continued to harass me, and come to my house to make threats.  I am terrified that he will hurt me, or my new partner, or, worse, take A̶z̶h̶ from me again.



Optional Form *(05/2016)*
Family 135

Declaration
p. 1 of 15



2317 NW Market St.
Seattle, WA 98107
phone: (206) 784-3049
fax: (206) 784-2681

When my petition for a full DVPO was denied, the Court said that I should file a Parentage action instead. **Exhibit A** at 2. I have filed this Parentage action as instructed, and I need the Court's protection to keep Azh and me safe while the matter is resolved. To that end, I'm asking that:

- The Court issue an Immediate Restraining Order, without notice to Kurt, preventing Kurt from any contact with me, and allowing him only video calls with A██.

- The Court issue a subsequent Temporary Restraining Order under the same terms.

- If Kurt is determined to be A██'s other legal parent, and *if* Kurt wishes to pursue a Parenting Plan, that the Court issue a Temporary Parenting Plan limiting Kurt's time with A██ to professionally supervised visits, granting me sole decision making authority, and requiring Kurt to participate in domestic violence treatment.

- That, if Kurt wants more residential time than I propose, the Court appoint a Guardian ad Litem to investigate our case.

## BACKGROUND

Kurt and I started dating in July 2007. We moved in together in July of 2008. A██ was born nine months later on April 22, 2009. When A██ was born, and many times since, Kurt refused my requests that he sign an Acknowledgment of Parentage, but he always insisted on being treated as A██'s father and that A██ was "his."

While I was always the one who did most of the work of childcare and parenting (day-to-day care, doctor's appointments, school, food, clothing), I must acknowledge that Kurt seemed invested in A██ from the beginning. It's only been in the last few months that I've realized how much of his attachment to A██ is about Kurt's ego, sense of ownership, and need to control both A██ and me. Kurt sees A██ as his property. **Exhibit B** at 7. More, Kurt has shown himself increasingly willing to use A██ as a pawn in his efforts to hurt and control me.

Throughout our relationship, Kurt was violent, threatening, and verbally/emotionally abusive towards me, as well as anyone else who disagrees with him or pushes back against him. I've included an extensive, but not exhaustive list of specific incidents below. His physical

**230** Form (05/2016)
Family 135

Declaration
p. 2 of 15

SDS
SEATTLE
DIVORCE
SERVICES

2317 NW Market St.
Seattle, WA 98107
phone: (206) 784-3049
fax: (206) 784-2681

0042

threats and violence have never been aimed at A⬤, but his emotional abuse and manipulation of A⬤ are getting worse as time goes by.

For much of the last 8 years, Kurt's and my dating relationship has been on-again-off-again. Nonetheless, except for one period around 2015, I continued to live with Kurt until about a year ago. I kept thinking he would change, or that if I could do the right things I could make it work. I desperately wanted A⬤ to have a father in his life and, frankly, I was afraid of what Kurt would do if I actually got him out of my life. When COVID hit in March of 2020, Kurt got caught up in the wildly unscientific conspiracy theories about the pandemic, and masks, and, eventually, the vaccines. His opinions are so severe that he equates getting a child vaccinated with child sexual abuse. **Exhibit B**. This led to some increasingly frightening behavior including him threatening the employees of the Sprouts Farmer's Market with a shotgun in September of 2020 (see below).

It was around the time of his arrest for the incidents at Sprouts in September of 2020 that I finally moved out of our shared residence and into a new home with my new partner. Despite moving out, I remained in frequent contact with Kurt because I still wanted A⬤ to have contact with the man he'd known as his father for the past 11+ years.

A⬤'s time with Kurt has varied a lot in the last year. For the first seven months, through April 2021, A⬤ was almost solely with me. Starting around April of this year, until recent events showed how unsafe it really was, A⬤ has lived close to equally between Kurt and I, though still more with me. I've also continued to be the parent who takes care of A⬤'s general needs for medical care, extracurricular activities, education, and clothing; but, after a few months of getting used to it, Kurt did seem to be figuring out how to show up and care for A⬤ when A⬤ was with him. I mistakenly thought that Kurt's violent and abusive behavior wasn't aimed at A⬤, and that A⬤ was safe in Kurt's care. Recent events have shown me how wrong I was, and have precipitated this Petition and Motion.

231  al Form *(05/2016)*
All Family 135

Declaration
p. 3 of 15

SDS
SEATTLE
DIVORCE
SERVICES

2317 NW Market St.
Seattle, WA 98107
phone: (206) 784-3049
fax: (206) 784-2681

0043

## HISTORY OF ABUSE, VIOLENCE, AND THREATS

Kurt has always been violent and abusive. As is often the case, the severity and scope of harm he's caused wasn't clear to me until I got some space from him. Below I include an extensive, but non-exhaustive list of specific incidents that exemplify his harmful and abusive behavior. I list the incidents from most recent to oldest, starting with the current situation and going back to 2014. Throughout the following, I ask that the Court keep in mind that, though Kurt has been acting as A⬤'s father since A⬤'s birth, he has always refused to be legally recognized as such, and has no standing to assert any parenting rights at all.

### The Current Situation: August 2021 through Today

The events that finally brought home to me the extent of the risk Kurt poses to A⬤ started on Sunday, August 15, 2021. A⬤, who turned 12 in April, received his first vaccine dose (without Kurt's knowledge) in July 2021. A⬤ had requested the vaccine because he wanted to be able to play with his friends whose parents were hesitant while A⬤ remained unvaccinated. On August 15, we learned that Kurt, who has no right to a say in A⬤'s medical care, had bullied A⬤ into disclosing his vaccination status, and was angry. A⬤ asked if he could go play pickle ball with Kurt that afternoon, which I hoped might mean that Kurt had calmed down about the vaccination. I was terribly mistaken. A⬤ did not come home again until Kurt was arrested on September 3rd.

It started with A⬤, on the 15th, texting to ask if he could stay at Kurt's that night. I now doubt that the texts came from A⬤ at all, as, in the following days, it became clear that Kurt was using A⬤'s phone to threaten and berate me.

Monday morning, the 16th, I texted A⬤ to let him know that I would be picking him about 12pm for his Lego summer camp and for a doctor's appointment. I got a text back saying he would be staying with his dad that day. As the day went on, my efforts to contact A⬤ went

23 ⬤ Form *(05/2016)*
WPF Family 135

Declaration
p. 4 of 15


SDS
SEATTLE
DIVORCE
SERVICES

2317 NW Market St.
Seattle, WA 98107
phone: (206) 784-3049
fax: (206) 784-2681

**0044**

largely unanswered.  My efforts to communicate with Kurt directly on the previous day had been

futile.  *See,* **Exhibit C**.

A● missed a doctor's appointment, and Lego camp that day and in the days that followed.

He did not answer his phone, did not call me, and the few responses I received by text sounded

more and more like Kurt.  Suddenly A● was supposedly afraid that we would "make him" get

the second Covid vaccine dose.  **Exhibit D** at 14.  Eventually, on Tuesday the 17th, Kurt openly

used A●'s phone to claim that A● didn't want to talk to me and would not be coming home.

*Id* at 14 & 15.  He compared vaccinations with Nazi eugenics.  *Id.*  Kurt was not only keeping me

from communicating with my son, and keeping A● from coming home, he was deliberately

trying to convince A● of the Q-Anon style conspiracy theories Kurt has come to believe, and

was actively trying to turn A● against me.

Kurt kept A● from me for nearly three weeks after that.  Given Kurt's past behavior,

threats, and violence towards me and others, I am horrified to think of what kind of fear and

emotional abuse he was inflicting on A● during that time.

When Kurt didn't bring A● back that week, and I stopped hearing from Azh, I became

truly terrified of what was happening, and what Kurt might do.  On Monday the 23rd, I obtained a

Temporary DVPO protecting me and A● from Kurt, and placing A● in my care.  **Exhibit E**.

Kurt was served with the Temporary DVPO by a police officer on Thursday, August 26th.

Shortly thereafter, Kurt showed up at the police precinct without A● and instead with a

handwritten note—supposedly written by A●—saying that he (A●) was running away because

he was afraid that I would make him get his second shot.  Kurt also said that his vehicle had

been stolen in the night and that was why he was driving a rental car.  He indicated that I may

have stolen the vehicle (the vehicle is mine, not his, and he still had it, see below).  He chose not

to file either a missing person's report or a stolen vehicle report.  I was told by police that since

Kurt said A● wasn't in his care, they couldn't do anything to retrieve A● under the DVPO.  On

233 Form *(05/2016)*
Family 135

Declaration
p. 5 of 15

SDS
SEATTLE
DIVORCE
SERVICES

2317 NW Market St.
Seattle, WA 98107
phone: (206) 784-3049
fax: (206) 784-2681

0045

advice from the police, I filed a missing person's report in the hopes that, one way or another, it

would result in A● being returned home safe. **Exhibit F**.

Over the following two weeks, I heard nothing from Azh, and nothing but abuse from

Kurt. I tried to convince the police that A● was still at Kurt's house (I could see that A●'s IPad

was active at Kurt's address), but they said they were waiting to see what the Prosecutor's

Office would do and whether a Judge would grant a Warrant.

On September 3, 2021, over two weeks since I'd heard from A● at all, my full DVPO

was denied because the Court thought the issue belonged in a Parentage case. **Exhibit A** at 2.

Nonetheless, later that afternoon, Kurt was arrested with A● (whom he'd said had run away),

driving the car that Kurt had claimed was stolen. Both A● and the car (which, again, is mine by

title and registration) were returned to me that evening.

A● has not been himself since his return, though he's getting better. He hasn't wanted

to talk much about what happened during the weeks Kurt had him, but I can tell he is afraid of

how angry Kurt is and has been. I am devastated at the thought of what it must have been like

for him.

Since A● has been back in my care, Kurt has twice come to my home to harass us. He

came by on Monday, August 13 as I was trying to take A● to school. He refused to leave when

I asked, and I didn't feel able to safely prevent A● from talking with him. Kurt spent that time

telling A● what a terrible person I am.

Later that same morning, I wrote Kurt to tell him he was not to come to my home again.

**Exhibit G** at 28. He showed up again the next day, on August 14, when we were leaving for

school. He pulled up in a red rental car and blocked me in my driveway. A● ran inside and

locked himself in the bathroom to avoid Kurt. I had my partner call the police. *Id* at 29-31. Kurt

left before the police showed up. The police told me to call again if Kurt shows up again. He

showed up again today, Sept. 24, 2021. He left after I called the police.

Declaration
p. 6 of 15

SDS
SEATTLE
DIVORCE
SERVICES

2317 NW Market St.
Seattle, WA 98107
phone: (206) 784-3049
fax: (206) 784-2681

I realize now that I will never have peace, and A⬤ will not be safe until I can get a restraining order to keep Kurt away.  I also realize that I need to force Kurt to acknowledge his legal parentage and the responsibilities that come with it if he wants to spend time with A⬤. Having that legal parent status will allow us to get a proper Parenting Plan and set limits on Kurt's access to A⬤.  I hate what that will do to A⬤, who loves Kurt tremendously.  But I am terrified if I let A⬤ spend time with Kurt unsupervised, Kurt will disappear with him and I'll never see my son again.

**Emotional Abuse of Azh Over Homework: June 2021**

On June 24th, 2021, Kurt contacted A⬤ and me irate because A⬤ plagiarized one of his final papers for school this past year.  First, I received a text from Kurt talking about how A⬤ had lied and was going to be failed on his homework and would have to redo the entire year as punishment.  I immediately responded, asking him to explain what he was talking about, but he didn't text me back.  In the meantime, Kurt began to send A⬤ repeated texts, calling A⬤ "a lying little cheater" and that he didn't "want see your boo hoo fake ass tears or hear your fake ass "I'm sorry I won't do it again".  And "Your ass is grass." **Exhibit H.**

I walked into his room at the Airbnb (we were on vacation at the time) and found A⬤ crying on the bed.  After A⬤ explained what had happened and showed me the texts his dad was sending him, I had a talk with him about why plagiarism is not okay and how he would need to correct his homework.  And, also, that the way Kurt was talking to him was unacceptable.  I asked him if he wanted to block Kurt's number and told him that he could unblock it at any time. I said that I thought that there were more constructive ways to deal with what happened than the way Kurt was acting.  A⬤ decided to block Kurt's number and when I asked him every day afterwards, he said he didn't want to talk to his dad.  I reminded A⬤ during one of these days that it was Father's Day, but he still declined to talk to Kurt.  Eventually Kurt used a different phone number to contact A⬤, and demanded that A⬤ never block him again.  After that Kurt

**235** Form (05/2016)
Family 135

Declaration
p. 7 of 15


SDS
SEATTLE
DIVORCE
SERVICES

2317 NW Market St.
Seattle, WA 98107
phone: (206) 784-3049
fax: (206) 784-2681

**0047**

began to send me vague and threatening texts.  Eventually I blocked him myself on that number.

### Kurt Arrested: December 17, 2020

On the night of December 17th, 2020, when A⬤ was with Kurt, I received a phone call around 11:30pm. My ringer was off and by the time I noticed that A⬤ had called, I had missed 6 calls from him. A⬤ said that they had been pulled over and the police were attacking his dad. He handed the phone over to a police officer who said that Mr. Benshoof was probably going to spend the night in jail and was I able to come pick up my son? My partner and I immediately went to where Kurt had been pulled over. He was being loaded into the back of a police car with his hands handcuffed. A⬤ got out of the car and ran to us. He was visibly shaken up and upset. He immediately began to cry once he was inside our car.

It is my understanding that Kurt was pulled over for erratic driving.  Kurt refused to stay in his car even after verbal commands to get back in his vehicle so he was tackled and arrested. *See,* **Exhibit I**.

The next day, a CPS investigator contacted me because one of the officers had called them. She came and interviewed my son and myself and said we have a lovely home. I informed the investigator that A⬤ refused to spend the night at Kurt's house more than once every other week, which was the case at the time. I never heard any more about the CPS investigation.

It was Kurt's actions which prompted the CPS investigation.  But that did not prevent Kurt from using this as another excuse to harass me repeatedly via text. **Exhibit J**.  This went on for days.

### A Shotgun at Sprouts Market: September 11 & 18, 2020

On September 11, 2020, Kurt refused to put on a mask at Sprouts Farmer's Market on Aurora Ave, and got into an altercation with the security guard.  He was arrested for Assault,

2 3 6  Form (05/2016)
Family 135

Declaration
p. 8 of 15


2317 NW Market St.
Seattle, WA 98107
phone: (206) 784-3049
fax: (206) 784-2681

**0048**

and Criminal Trespass – 1st degree, and Resisting Arrest.  **Exhibit K**.  A week later, around September 18th, 2020, Kurt was arrested for threatening people with a Shotgun in the Sprouts parking lot.  He'd told me he was going to take the shotgun to Sprouts to "get some answers."  I wish I'd taken him more seriously at the time.  He was arrested and charged with Criminal Trespassing, Assault, and Unlawful Use of a Weapon to Intimidate Another.  **Exhibit L**. This was after he had already spent one night in jail the previous week for the initial charge.

The initial charges were dropped for the first incident at Sprouts, but he is facing trial on September 21st, 2021, for the subsequent charges when he brought the shotgun to Sprouts.

In addition to these charges, he has a warrant for his arrest for failure to appear at a prior trial.  **Exhibit M** at 53.  On November 13th, 2020, he was arrested for Criminal Trespass – 1st degree and Theft after refusing to wear a mask at PCC on Aurora and stealing some groceries about it.  *See* **Exhibit N**  He failed to appear in court for that trial because he refused to wear a mask in the courthouse or provide medical proof that he did not need to wear one.

**Destruction of Property: January 2020**

In January of 2020, when I still lived at my house with Kurt, we got into an argument about him storing a bunch of lumber where I usually parked my truck. Later that day, he borrowed my truck and, in retaliation, shattered the rear window.  *See*, **Exhibit O**.  Then he parked it on the street and didn't tell me about it. I discovered it the next day when I was leaving to visit a friend.  It had rained overnight, and rain and glass covered the boxes of children's books I had in there, intended for my friend's child.

I ended up not filing a police report for this incident because the officer that I spoke to told me that Kurt would be notified that I had made the report.  I was afraid of what would happen if he found out I had contacted police.

WPF DRPSCU Form *(05/2016)*
Family 135

Declaration
p. 9 of 15

SDS
SEATTLE
DIVORCE
SERVICES

2317 NW Market St.
Seattle, WA 98107
phone: (206) 784-3049
fax: (206) 784-2681

0049

### Cruelty to My Cat: September 10, 2019

On September 10th, 2019, Kurt taped Cosmos, my cat, in a box. He said it was in retaliation for Cosmos killing a bird and left him on the porch alone. He was in the box with no one at the house for over two hours until I got home. There were no holes punched in the box for air.

### Domestic Violence Incident: December 12, 2018.

On December 12th of 2018, we argued about my acceptance of an invitation for our family to attend a Christmas party without consulting him first. Kurt began berating me then slammed the front door hard enough to brake three glass panes. When I said that if he didn't stop I would call the police he broke a thick wooden cutting board, shattered dishes in the sink, and continued shouting at me. I went into bedroom and closed the door and called the police. *See,* **Exhibit P**. I opened my door to look for my son, who was nine at the time, but couldn't find him. Instead, I saw Kurt ripping a door off the door jamb. I closed the door and a moment later I found my son hiding under my bed, not for the first time (see below). A● refused to come out because Kurt was shouting so loudly.

I stayed on the phone with the operator until a police officer arrived and came into the house. While I waited, Kurt had cleaned up all the broken glass and swept up all the shattered dishes and then taped plastic over the broken windowpanes. He had also leaned the door back into the doorjamb and draped a towel over it to cover up the damage to the jamb. This was the most unnerving part of this experience. He had the wherewithal to clean up his mess and make it look better before the police arrived. As though he could have gotten himself under control at any time but chose not to.

Kurt was outside of the house when the two officers arrived, and was very confrontational with them, insisting that *I* was the one in the wrong. The officer asked me if I felt I was in physical danger. I told him 'no,' which was not true, but I was afraid of what would

Form (05/2016)
Family 135

Declaration
p. 10 of 15


2317 NW Market St.
Seattle, WA 98107
phone: (206) 784-3049
fax: (206) 784-2681

0050

happen if I said I was. They told Kurt to leave me alone and he came back inside. He said a few sarcastic things to me and went to his bedroom upstairs (we were living together at the time but not romantically involved). My son did not want to see him, and I regret to this day that I did not have Kurt taken away that evening for my son's sake. I wish that I had shown my son that I would protect him and keep him safe from anyone who scared him and made him feel unsafe.

**Domestic Violence Incident: Autumn 2016.**

One morning in fall of 2016 Kurt and I got into an argument about household responsibilities that escalated to shouting and Kurt banging things in the Kitchen. Azh was scared of Kurt and crawled under my bed to hide. I shut the bedroom door to block out Kurt's shouting and told Azh to come out and sit with me. He came and sat on my lap. I told him that his dad was being really awful and that it was wrong to act like that. I said that no one who loves you should make you feel scared, but that it wasn't our problem and that we would just walk out of the front door and go straight to my truck. We would stop and get breakfast on the way to school, and I would buy him lunch instead of going into the kitchen to grab his lunchbox and that we didn't need to pay any more attention to Kurt.

That's just what we did. I didn't file a police report about this incident.

**Domestic Violence Incident: December 6, 2015**

In the afternoon of December 6th, 2015, During a time when Kurt and I were not living together and between instances of us dating, Kurt came by my home, with A⬤ (8yo at the time), to get some things from the house. I hung out with A⬤ while Kurt gathered things to put in the car. When they were ready to leave, I put on my shoes and picked up A⬤ to carry him out to Kurt's car.

Kurt told me to stay inside and to leave them alone. I said, "Why? I am just going to carry him down to the car." He insisted that I couldn't come to the car and grabbed A⬤ out of my arms. We began to argue, and he called me a "lying cunt", a "slut", and "bitch". I tried

**239** SDS Form (05/2016)
Family 135

Declaration
p. 11 of 15

SDS
SEATTLE
DIVORCE
SERVICES

2317 NW Market St.
Seattle, WA 98107
phone: (206) 784-3049
fax: (206) 784-2681

**0051**

reaching for A⬤ to get him back.  I said, "I just wanted to walk him down to the car.  Why can't I just carry him out to the car?"  Kurt just kept walking away from me with A⬤ in his arms, holding him away from me.  Then Kurt grabbed my arm to hold me back.  Things escalated and we were arguing and A⬤ started crying.  Suddenly Kurt lifted A⬤ up away from me so that I couldn't reach him, and he bumped A⬤'s head on the wall which made A⬤ cry even harder and shout at us to, "Just stop it!"  At this point I backed up and let them leave without protest.

I later realized that Kurt had left bruises on my arm.  **Exhibit Q**.  I filed a report against him the next day **Exhibit R**.  Kurt's explanation for this was that I'd given A⬤ a piece of candy when Kurt didn't want him to have one.

**Domestic Violence Incident: November 9, 2015**

On November 9th, 2015, Kurt and I got into an argument about parenting and our respective living situations (we weren't living together at the time).  It escalated to a screaming match, and Kurt pushed me.  I retaliated by slapping him repeatedly on the arm.  Kurt is 6 feet, 175 pounds. I was 5'8, 135 pounds. He angrily told me that I'd crossed a line and went downstairs to sleep in my bed instead of going to his home. I told him to leave, and he said, "Make me." He refused to leave until the morning.  The fight really scared me, and I didn't want him in my house anymore, so I filed a police report the next day.  **Exhibit S**.

**Intimidation and Threats at Preschool: Spring 2014**

In the spring of 2014 A⬤ was attending pre-K at Phinney Ridge Co-op.  To join this Co-op everyone had to have a background check.  Kurt, a convicted felon (albeit only for cannabis violations so far), had managed to avoid this for the first year and a half.  Eventually, however, the mother in charge of overseeing the paperwork for all the parents involved in the co-op asked him to fill out the background check form.  Kurt had recently been asked to stop riling the kids up too much after school by playing with them, and he felt that he was being singled out for that.  In response to her request, rather than simply filling out the background check, he began to

Form (05/2016)
Family 135

Declaration
p. 12 of 15

SDS
SEATTLE
DIVORCE
SERVICES
2317 NW Market St.
Seattle, WA 98107
phone: (206) 784-3049
fax: (206) 784-2681

incessantly email this mother at the co-op with veiled threatening letters.  Soon we were kicked out of the preschool because of his threats.

I had to petition separately to bring Azh back into the co-op to finish out the last two months of pre-K without Kurt which was only possible because we had broken up shortly before this and were living separately for a while.  The co-op accepted my petition with the explicit boundary that Kurt was not to go into the co-op any more or have any more contact with any of the parents.

**Generally**

The eleven incidents and situations described above are only the ones for which I have clear records and memories.  Kurt has been threatening, abusive, and violent towards me almost since we met.  I have spent more than a decade frightened for my own safety around Kurt Benshoof, and trying to adjust my behavior to avoid conflict with him.  For years I told myself that having a father, even one who refused to be legally recognized as such, was important enough to A⬤ to be worth the fear and abuse I suffered.  It took Kurt kidnapping my son and keeping him away from me for three weeks for me to realize that Kurt will never change and that so long as he feels like he can use A⬤ to hurt and control me, A⬤ cannot be safe with Kurt.  I now also realize that watching Kurt's treatment of me over the years has, itself, been harmful to A⬤.

Honestly, I am still torn.  What I really want is to never have to deal with Kurt again, and I desperately want to protect A⬤ from Kurt's threats, abuse, and manipulation.  On the other hand, I know that A⬤ loves his dad and that he'll be devastated if he never sees Kurt again.  Yet still, given Kurt's latest episode of abuse, and his chronic, utter disregard for the law, I worry that if A⬤ spends any unsupervised time with Kurt at all, Kurt will simply refuse to let A⬤ come back home.  I need ways to address this and keep A⬤ and myself safe.

2441
Optional Form (05/2016)
All Family 135

Declaration
p. 13 of 15



2317 NW Market St.
Seattle, WA 98107
phone: (206) 784-3049
fax: (206) 784-2681

0053

I'm asking the Court to enter an initial Immediate Restraining Order, without notice to Kurt, to help protect A⬤ and me from Kurt, especially his reaction to this filing once he is served. With that in place, if Kurt continues to refuse to be legally acknowledged as A⬤'s father, then I ask that only a Temporary Restraining Order be put in place while I figure out what to do.

If Kurt wants to acknowledge his status as a legal parent, I cannot deny that he is the biological father and will agree to it. If that's the case, and if Kurt wants to seek actual in-person time with A⬤, I ask that the Court enter my proposed Temporary Parenting Plan in addition to the TRO. Under my proposed Temporary Parenting Plan, Kurt can see A⬤ only every other weekend and only under professional supervision at the At Indaba facility. I wish I didn't feel it necessary to restrict their contact so severely, but I can't think of another way to protect A⬤ from Kurt simply taking him away.

I also ask that, as a minimum prerequisite to seeking more or unsupervised time with A⬤, Kurt be ordered to undergo a domestic violence assessment and cooperate with any recommended treatment.

If Kurt wants more time with A⬤ than supervised visits every other week, I ask that the Court appoint a Guardian ad Litem to investigate Kurt and I, and advocate for what is in A⬤'s best interest.

## CONCLUSION

For all the reasons set out above, I ask that the Court enter an Immediate Restraining Order protecting me and my son from Kurt Benshoof, and then a Temporary Restraining Order doing the same. I also ask that if Kurt acknowledges his parentage to the Court, that the Court enter my proposed Temporary Parenting Plan which gives me sole decision making authority for and primary residential care of A⬤, and which limits Kurt's time with my son to occasional, supervised visits at least until Kurt completes domestic violence treatment.

Clients Form (05/2016)
WA Family 135

Declaration
p. 14 of 15

SDS
SEATTLE
DIVORCE
SERVICES

2317 NW Market St.
Seattle, WA 98107
phone: (206) 784-3049
fax: (206) 784-2681

0054

I declare under penalty of perjury under the laws of the state of Washington that the facts I have provided on this form (and any attachments) are true.

Signed at *(city and state):* _____Seattle, WA_____        Date: _9/22/21_

JESSICA OWEN

*Warning!* Documents filed with the court are available for anyone to see unless they are sealed.  Financial, medical, and confidential reports, as described in General Rule 22, **must** be sealed so they can only be seen by the court, the other party, and the lawyers in your case.  Seal those documents by filing them separately, using a *Sealed* cover sheet (form FL All Family 011, 012, or 013).  You may ask for an order to seal other documents

Optional Form *(05/2016)*
FL Family 135

243

Declaration
p. 15 of 15

SDS
SEATTLE
DIVORCE
SERVICES

2317 NW Market St.
Seattle, WA 98107
phone: (206) 784-3049
fax: (206) 784-2681

# Appendix  **D**

**Superior Court of Washington, County of King**

In re parentage:

Petitioner *(person who started this case)*:

    JESSICA R. OWEN,

And Respondent/s *(parent / presumed parent / possible genetic parent)*:

    KURT A. BENSHOOF,

No. 21-5-00680-6 SEA

Petition to Decide Parentage (PTDTP)

# Petition to Decide Parentage

*Use this form to ask the court to decide if a possible genetic parent is a legal parent*

## Parentage

**1.**    Petitioner asks the court to decide who are the legal parent/s of the child listed below.

**2.**    **Child**

| Child's name *(first, middle, last)* | Born *(month/day/year)* | Lives in *(county and state)* |
|---|---|---|
| ~~Azuraea~~ R. ~~Walker~~ | April 22, 2009 | King County, WA |
| | | |

*Important! Don't list more than one child unless they have all the same parents or possible parents. If they have (or may) have different parents, fill out a separate Petition for each child. If multiple children are listed, change "child" to "children" in this form as needed.*

**3.**    **Petitioner**

| Petitioner's Name *(first, middle, last)* | Lives in *(county and state)* |
|---|---|
| Jessica R. Owen | King County, WA |

**Petitioner's relationship to child**

     **Birth Parent –** I am this child's parent because I gave birth to the child.

**252**

RCW 26.26A.430 - .460
(07/2019)
FL Parentage 301

Petition to Decide Parentage

 SDS
SEATTLE
DIVORCE
SERVICES

2317 NW Market St.
Seattle, WA 98107
phone: (206) 784-3049
fax: (206) 784-2681

p. 1 of 6

0057

## 4. Respondent/s

> **Important! You must** name anyone who is already a parent and anyone whose parentage you're asking the court to decide. This includes a person who:
> - gave birth to the child (except as a surrogate).
> - is a possible genetic parent (if you are asking the court to make a decision about this person).
> - is a parent by court order (from a parentage, divorce, or adoption case).
> - is presumed to be a parent because the child was born during a marriage or state registered domestic partnership or within 300 days after the marriage or domestic partnership ended.
> - is presumed to be a parent because s/he lived in the same household with the child for the first four years of the child's life, including any period of temporary absence, and openly held out the child as his/her child. (See RCW 26.26A.204(b).)
> - signed an Acknowledgment of Parentage.
> - signed a Denial of Parentage (if you are challenging the Denial or related Acknowledgment).
> - consented to assisted reproduction with the intent to be a parent.
>
> Parents do **not** include any person who a court has ordered is not a parent.

| Respondent's Name (first, middle, last) | Lives in (county and state) |
|---|---|
| Kurt A. Benshoof | King County, WA |

**Respondent's relationship to child** (for each Respondent, write their name in the category below that applies):

**Possible Genetic Parent/s** –

*KURT A. BENSHOOF*
may be a parent because the birth parent had sex with this person throughout 2008 when this child was conceived.

## 5. Personal Jurisdiction

*Fill out below to say if a Washington state court has personal jurisdiction (authority to make decisions) over each Respondent. (Add columns if needed for more Respondents.)*

| Basis for Personal Jurisdiction (check all that apply) | Respondent's Name: **KURT A. BENSHOOF** |
|---|:---:|
| Will be served in Washington | ☒ |
| Lives in Washington now | ☒ |
| Lived in Washington with child | ☒ |
| Lived in Washington and paid pregnancy costs or support for child | ☐ |
| Caused child to live in Washington | ☐ |
| Had sex in Washington that may have produced the child | ☒ |
| Agrees to Washington deciding | ☐ |
| None of the above | ☐ |

**253**

RCW 26.26A.430 - .460 (07/2019)
FL Parentage 301

Petition to Decide Parentage

SDS
SEATTLE DIVORCE SERVICES
2317 NW Market St.
Seattle, WA 98107
phone: (206) 784-3049
fax: (206) 784-2681

p. 2 of 6

0058

### 6. Correct County (Venue)

This is the correct county for this case to be heard because this is where:

The child lives or is located.

The Respondent lives or is located.

### 7. Genetic Testing

I do **not** want the court to use genetic testing to decide parentage unless requested by the Respondent.

### 8. Presumed Parent, if any *(by marriage, domestic partnership, or holding out)*

**Does not apply** – To my knowledge, no one is already presumed to be a parent by marriage, domestic partnership, or holding out.

### 9. Challenge to Acknowledgment or Denial of Parentage by person who signed

Does not apply. The Respondent has, at all times, refused to sign an Acknowledgment of Parentage or otherwise agree to legal recognition as a parent of the child.

### 10. Challenge by Person <u>not included</u> in Acknowledgment or Court Decision

Does not apply.

### 11. Assisted Reproduction (not surrogacy)

**Does not apply** –The child was not conceived by assisted reproduction.

### 12. Birth Record

If appropriate, I ask the court to change the parents listed on the child's birth record based on the decision in this case.

### 13. Other children together

Does not apply.

## *Child Support*

### 14. Child Support

The Petitioner is not seeking child support at this time.

The child has a right to child support (including medical support) from the legal parents according to state law. The court will order child support unless all parents are living together with the child or there is already an administrative order set by the Division of Child Support.

### 15. Past support and repayment of specific expenses

No request.

**254**

RCW 26.26A.430 - .460
(07/2019)
FL Parentage 301

Petition to Decide Parentage

p. 3 of 6

SDS
SEATTLE
DIVORCE
SERVICES

2317 NW Market St.
Seattle, WA 98107
phone: (206) 784-3049
fax: (206) 784-2681

0059

### *Parenting Plan / Residential Schedule*

I am asking the court to make orders about parenting or residential time.

**16.** **Child's Home/s**

During the past 5 years has the child lived:
- on an Indian reservation,
- outside Washington state,
- in a foreign country, or
- with anyone who is not a party to this case?

No. *(Skip to 17.)*

**17.** **Other people with a legal right to spend time with the child**

Do you know of anyone besides yourself and Respondent/s who has or claims to have a legal right to spend time with the child?

No.

**18.** **Other court cases involving the child**

Do you know of any court cases involving the child?

Yes.

| Kind of case (Family Law, Criminal, Protection Order, Juvenile, Dependency, Other) | County and State | Case number and year |
|---|---|---|
| DVPO | King County, WA | 21-2-11149-8 SEA |

**19.** **Jurisdiction over the child** (RCW 26.27.201 – .221, .231, .261, .271)

The court **can** decide a *Parenting Plan* or *Residential Schedule* for the child and decide who the child should live with most of the time because:

**Home state jurisdiction** – Washington is the child's home state because

The child lived in Washington with a parent or someone acting as a parent for at least the 6 months just before this case was filed, or if the child is less than 6 months old, the child has lived in Washington with a parent or someone acting as a parent since birth and the child does not have another home state.

**20.** **Parenting Plan or Residential Schedule**

The child currently lives with *Petitioner, JESSICA R. OWEN.*

I am not asking the court for a Permanent *Parenting Plan* or *Residential Schedule* at this time. I am asking that the Court enter a final order naming me the sole residential parent **and decision maker for A**▓▓▓ **W**▓▓▓ If the Respondent chooses to be acknowledged as a legal parent to my son, and if he wants to seek residential time with my son, then I will submit a proposed Permanent Parenting Plan.

**255**

RCW 26.26A.430 - .460 (07/2019) FL Parentage 301          Petition to Decide Parentage          p. 4 of 6          SDS SEATTLE DIVORCE SERVICES          2317 NW Market St. Seattle, WA 98107 phone: (206) 784-3049 fax: (206) 784-2681

0060

> *Warning!* If the parents are not living together, the court may decide who the child will live with most of the time even if no parent requests a Parenting Plan or Residential Schedule. That decision will affect all parents' rights.

## Other Requests

### 21. Protection Order

*Do you want the court to issue an Order for Protection as part of the final orders in this case?*

**Not at this time.** I am not seeking an *Order for Protection* at this time.

### 22. Restraining Order

*Do you want the court to issue a Restraining Order as part of the final orders in this case?*

**Yes.** *Check the type of orders you want:*

**Do not disturb** – Order KURT A. BENSHOOF not to disturb my peace or the peace of the child.

**Stay away** – Order KURT A. BENSHOOF not to go onto the grounds of or enter my home, workplace, or school, and the child's daycare or school.

> Also, not knowingly to go or stay within <u>1,000</u> feet of my home, workplace, or school, or the child's daycare or school.

**Do not hurt or threaten** – Order KURT A. BENSHOOF:

- Not to assault, harass, stalk or molest me or the child; and
- Not to use, try to use, or threaten to use physical force against me or the child that would reasonably be expected to cause bodily injury.

> *Warning!* If the court makes this order, the court must consider if weapons restrictions are required by state law; federal law may also prohibit the Restrained Person from possessing firearms or ammunition.

**Prohibit weapons and order surrender** – Order KURT A. BENSHOOF:

- Not to access, possess, or obtain any firearms, other dangerous weapons, or concealed pistol licenses until the Order ends, and
- To immediately surrender any firearms, other dangerous weapons, and any concealed pistol licenses that he/she possesses to *(check one):* ☒ the police chief or sheriff. ☐ his/her lawyer. ☐ other person *(name):* _____.

**No Contact** – Order KURT A. BENSHOOF to have no contact whatsoever with the protected person or the child, including, but not limited to, in-person, telephone, text, email, or through third parties.

> *Important!* If you want a restraining order *now*, you must file a Motion for Temporary Family Law Order and Restraining Order (form FL Parentage 323) or a Motion for Immediate Restraining Order (Ex Parte) (FL Parentage 321).

### 23. Fees and Costs

Does not apply.

**256**

RCW 26.26A.430 - .460
(07/2019)
FL Parentage 301

Petition to Decide Parentage

p. 5 of 6

SDS
SEATTLE
DIVORCE
SERVICES

2317 NW Market St.
Seattle, WA 98107
phone: (206) 784-3049
fax: (206) 784-2681

**24. Other (if any)**

None at this time.

**Petitioner fills out below:**

I declare under penalty of perjury under the laws of the state of Washington that the facts I have provided on this form are true.

Signed at (city and state): _____ Seattle, WA _____   Date: 9/20/21 _____

▶ _~J.R. Owen~_

JESSICA R. OWEN.

**Petitioner's lawyer (if any) fills out below:**

▶ _Nathan Cliber (Sep 21, 2021 09:15 PDT)_ _____   Sep 21, 2021 _____

NATHAN CLIBER, WSBA #41787   Date

Attorney for Petitioner

**257**

RCW 26.26A.430 - .460
(07/2019)
FL Parentage 301

Petition to Decide Parentage

p. 6 of 6
0062

SDS
SEATTLE DIVORCE SERVICES

2317 NW Market St.
Seattle, WA 98107
phone: (206) 784-3049
fax: (206) 784-2681

Appendix  **E**

## Superior Court of Washington, County of King

In re parentage:

Petitioner *(person/s who started this case):*

JESSICA R. OWEN,

And Respondent/s *(other party/parties):*

KURT A. BENSHOOF,

No. 21-5-00680-6 SEA

Motion for Immediate Restraining Order
(Ex Parte)
(MTSC)

# Motion for Immediate Restraining Order (Ex Parte)

*Use this form for unmarried parents (parentage) cases only. For other cases, use FL Divorce 221, FL Non-Parent 421, or FL Modify 621, depending on the type of case.*

**To both parties:**

***Deadline!*** Your papers must be filed and served by the deadline in your county's Local Court Rules, or by the State Court Rules if there is no local rule. Court Rules and forms are online at www.courts.wa.gov.

If you want the court to consider your side, you **must:**

- File your original documents with the Superior Court Clerk; AND
- Give the Judge/Commissioner a copy of your papers (if required by your county's Local Court Rules); AND
- Have a copy of your papers served on all other parties or their lawyers; AND
- Go to the hearing.

Read your county's Local Court Rules, if any.

Bring proposed orders to the hearing.

**To the person filing this motion:**

You must ask the court to sign the *Immediate Restraining Order (Ex Parte) and Hearing Notice* (FL Parentage 322). This Order may be signed "ex parte" (without the other party there). Contact the Superior Court Clerk's office for the procedure in your county. You must have this *Motion* and the *Immediate Restraining Order* personally served (by someone else) on the restrained person.

**To the person receiving this motion:**

If you do not agree with the requests in this motion, file a statement (using form FL All Family 135, *Declaration*) explaining why the court should not approve those requests. You may file other written proof supporting your side, and propose your own *Parenting Plan, Residential Schedule,* or *Child Support Worksheets*.

If the court grants an *Immediate Restraining Order* without notice to you, you can file a motion to change or terminate it before the hearing date. (Civil Rule 65(b).) There is no pattern form for that motion.

# 245

RCW 26.26A.470, .465, CR 65(b)
*(07/2019)*
FL Parentage 321

Motion for Immediate
Restraining Order (Ex Parte)

**0064**



2317 NW Market St.
Seattle, WA 98107
phone: (206) 784-3049
fax: (206) 784-2681

1. My name is JESSICA OWEN. I am asking the court for an *Immediate Restraining Order* against KURT BENSHOOF.

I want these children under 18 to be protected by the order:

| Child's name | Age |
|---|---|
| 1. A▓▓ W▓▓ | 12 |

2. I ask the court to approve an *Immediate Restraining Order* to protect me and/or any child listed in 1. Without this Order, the children or I could be hurt or suffer damage or loss immediately. This harm could be irreparable. *(Explain how you or the children could be harmed beyond repair):*

If I do not have an Immediate Restraining Order to protect A▓▓ and myself from KURT BENSHOOF between the day he is served with my Petition and Motion for Temporary Orders and the day of our hearing, I fear that KURT will continue to harass and threaten me, to harass A▓▓, and possibly escalate into physical violence as he has in the past. Most importantly, I fear that KURT will take A▓▓, either from my home by force or from school, and withhold him again or, worse, flee with him to another state.

3. **Notice** *(check one):*

I should **not** have to notify the other parties in advance that I am filing this *Motion* because any child listed in **1** or I could be harmed beyond repair if I gave any advance notice. *(Explain why you or the children could be harmed by providing advance notice.)*

I believe that if KURT has notice that I am seeking an Immediate Restraining Order, there is a very real risk that he will come to my home and violently kidnap A▓▓ from me.

KURT has a violent history generally, and a history of violence and threats against me. He owns firearms and has used them to threaten people in the past. In August of this year KURT withheld A▓▓ from me for nearly three weeks without my permission or any legal authority.

More, KURT currently has no legal right to any time with A▓▓ whatsoever as he is not A▓▓'s legal parent and has not, at this time, sought to be recognized as one. His parenting rights do not exist and cannot be affected by a Restraining Order.

4. **Court hearing request**

I ask the court to approve an *Immediate Restraining Order* now, and hold a hearing within at the next available court date to consider my requests for temporary orders listed below. I will have the other parties served with notice of the hearing so the court can hear their sides.

5. **Active duty military**

*(The **federal** Servicemembers Civil Relief Act covers:*
- Army, Navy, Air Force, Marine Corps, and Coast Guard members on active duty;
- National Guard or Reserve members under a call to active service for more than 30 days in a row; and
- commissioned corps of the Public Health Service and NOAA.

**246**

RCW 26.26A.470, .465, CR 65(b)
(07/2019)
FL Parentage 321

Motion for Immediate
Restraining Order (Ex Parte)
p. 2 of 8

**0065**

SDS
SEATTLE DIVORCE SERVICES

2317 NW Market St.
Seattle, WA 98107
phone: (206) 784-3049
fax: (206) 784-2681

*The* **state** *Service Members' Civil Relief Act covers those service members listed above who are either stationed in or residents of Washington state, and their dependents, except for the commissioned corps of the Public Health Service and NOAA.)*

None of the other parties are covered by the state or federal Service Members' Civil Relief Acts.

## I ask the Court to approve these orders _immediately_ (check all that apply):

### 6. Do not disturb

Order *KURT BENSHOOF* not to disturb my peace or the peace of any child listed in **1**.

### 7. Stay away

Order *KURT BENSHOOF* not to go onto the grounds of or enter my home, workplace, or school, and the daycare or school of any child listed in **1**.

Also, not knowingly to go or stay within 1,000 feet of my home, workplace or school, or the daycare or school of any child listed in **1**.

### 8. Do not hurt or threaten

Order *KURT BENSHOOF* not to:

- Assault, harass, stalk or molest me or any child listed in **1**; or
- Use, try to use, or threaten to use physical force against me or the children that would reasonably be expected to cause bodily injury.

> **Warning!** *If the court extends this order after a full hearing and the parties are intimate partners, the court must consider if weapons restrictions are required by state law; federal law may also prohibit the Restrained Person from possessing firearms or ammunition.*

Intimate Partner: The Restrained Person and the Protected Person were intimate partners because they are former cohabitants in a dating relationship, and KURT BENSHOOF is the alleged biological father of JESSICA OWEN'S child, listed in **1**.

### 9. Surrender weapons

Order *KURT BENSHOOF* to immediately surrender any firearms and other dangerous weapons that he/she possesses to *(check one)*:
☒ the police chief or sheriff.  ☐ his/her lawyer.  ☐ other person:

### 10. Care and safety of children until the hearing

Order that the children listed in **1** will live with me until the hearing and that KURT BENSHOOF shall have no contact with the child other than weekly video calls on Wednesday evenings, coordinated over email with me, and which I may record.

### 11. Other _immediate_ orders

**Do not contact.** KURT BENSHOOF shall make no attempts whatsoever to contact the protected person or the child listed in **1**, including but not limited to contact in-person, by phone, by text, by email, by written letter, or through third parties except that KURT

247

RCW 26.26A.470, .465, CR 65(b)
(07/2019)
FL Parentage 321

Motion for Immediate
Restraining Order (Ex Parte)
p. 3 of 6
0066

SDS
SEATTLE
DIVORCE
SERVICES

2317 NW Market St.
Seattle, WA 98107
phone: (206) 784-3049
fax: (206) 784-2681

BENSHOOF may email the protected person solely for the purpose of arranging weekly video calls with the child.

*I ask the court to approve these temporary orders <u>at the hearing</u> to stay in effect until the case is done (check all that apply):*

**12. Extend immediate orders**

Extend the immediate orders I asked for above to stay in effect until the case is done.

**13. Prohibit weapons and order surrender**

Order *KURT BENSHOOF*

Not to access, possess, or obtain any firearms, other dangerous weapons, or concealed pistol licenses until the Order ends, and to

- Immediately surrender any firearms, other dangerous weapons, or concealed pistol licenses that he/she possesses or controls to *(check one):* ☒ the police chief or county sheriff. ☐ his/her lawyer. ☐ other person *(name):* _____.

**14. Care and safety of children** *(Check all that apply.)*

IF *KURT BENSHOOF* agrees, prior to or at the HEARING, that he is and should be recognized as a legal parent of A███████ then I ask that the Court approve my proposed Temporary Parenting Plan (submitted herewith), which allows him limited, supervised visits with A███████ grants me sole decision making; and requires KURT to engage in Domestic Violence treatment.

IF *KURT BENSHOOF* agrees, prior to or at the HEARING, that he is and should be recognized as a legal parent of A███████, *and* if he is seeking more residential time than I propose or that he not have to engage in domestic violence treatment, then I ask that the Court Appoint a person to investigate and report to the court about what is in the children's best interest, and order who will pay this person's fees. This person should be a Guardian ad Litem (GAL).

**15. Provide support**

No request.

**16. Pay fees and costs**

No request.

**17. Other temporary orders**

No request.

**248**

RCW 26.26A.470, .465, CR 65(b)
(07/2019)
FL Parentage 321

Motion for Immediate
Restraining Order (Ex Parte)
p. 4 of 6
**0067**

SDS
SEATTLE
DIVORCE
SERVICES

2317 NW Market St.
Seattle, WA 98107
phone: (206) 784-3049
fax: (206) 784-2681

*Reasons for my requests*

**18.  Why are you asking the court for the orders you checked above?** *(Explain)*:

My former romantic partner, KURT BENSHOOF, who is not at this time A_____'s legal parent, has recently shown himself increasingly willing to use A_____ as leverage in his efforts to control me and my behavior. He has also grown increasingly irrational and frightening around his beliefs about COVID-19 and the vaccines for it. His responses to my behaving in ways he does not like (e.g., having my son vaccinated) have escalated since I moved out of our shared residence in September 2020.

In August 2021, he took A_____ and kept him from me for nearly *three weeks* (August 15 through September 3) without my permission. He not let me see or speak to A_____, and refused to return him to my care. When I obtained a Temporary DVPO requiring that A_____ be returned to my care, KURT, upon being served, refused to return A_____, and instead told police that A_____ had run away. Over a week later, after I filed a missing person's report, KURT was found by police with A_____ in the car. KURT was arrested and A_____ was returned to me.

KURT was released a day or two later and, since that day, has ignored my request that he not come to my home. At the time of this writing, he has come to my door and refused to leave until he could speak to A_____, and has come to my house and blocked my car in with his car, again demanding to speak to A_____, and then come by again on the day this Motion is being filed.

My efforts to secure an ongoing full DVPO were denied at our return hearing, with the Court saying that I needed to seek remedy and protection through a Parentage action, which was filed along with this request for an Immediate Restraining Order.

KURT has a long history of violent and threatening behavior both in general and towards me specifically. He has now proven himself willing and able to kidnap my son and keep him from my care, going so far as lying to the police about A_____ running away. I need a Restraining Order to keep me and my son safe while the larger issues of Parentage and a Parenting Plan are being decided.

See Also the *Declaration of Jessica R. Owen*, filed herewith.

**Reasons for "Prohibit weapons and order surrender" request** *(check all that apply)*:

KURT BENSHOOF has used, displayed, or threatened to use a firearm or other dangerous weapon in a felony when he intentionally intimidated the employees of Sprouts Farmer's Market with a Shotgun. See, *Declaration of Jessica Owen*, filed herewith, at page 9.

KURT BENSHOOF previously committed an offense making him ineligible to possess a firearm under RCW 9.41.040. *(Describe)*:

Kurt was convicted of a cannabis-related felony in 2009 or 2010.

KURT BENSHOOF'S possession of firearm presents a serious and imminent threat (harm that may happen immediately) to public health or safety, or to the health or safety of the protected persons herein. They are former intimate partners and KURT BENSHOOF has a history of violent behavior and threats, including threats with a firearm.

**249**

RCW 26.26A.470, .465, CR 65(b)
(07/2019)
FL Parentage 321

Motion for Immediate
Restraining Order (Ex Parte)
p. 5 of 6
**0068**

SDS
SEATTLE
DIVORCE
SERVICES

2317 NW Market St.
Seattle, WA 98107
phone: (206) 784-3049
fax: (206) 784-2681

**Person asking for this order fills out below:**

I declare under penalty of perjury under the laws of the state of Washington that the facts I have provided on this form are true.

Signed at *(city and state)*: _____ Seattle, WA _____     Date: 9/22/21 _____

*(signature)*

JESSICA OWEN

I agree to accept legal papers for this case at my lawyer's address, listed below.

> Note: You and the other party/ies may agree to accept legal papers by email under Civil Rule 5 and local court rules.

*(If this address changes before the case ends, you **must** notify all parties and the court clerk in writing. You may use the Notice of Address Change form (FL All Family 120). You must also update your Confidential Information form (FL All Family 001) if this case involves parentage or child support.)*

**Lawyer (if any) fills out below:**

*(signature)*

NATHAN CLIBER, WSBA #41787
*Attorney for Petitioner*
*Date:*

Seattle Divorce Services
2317 NW Market St
Seattle, WA 98178
nathan@seattledivorceservices.com

> *Warning!* Documents filed with the court are available for anyone to see unless they are sealed. Financial, medical, and confidential reports, as described in General Rule 22, **must** be sealed so they can only be seen by the court, the other party, and the lawyers in your case. Seal those documents by filing them separately, using a *Sealed* cover sheet (form FL All Family 011, 012, or 013). You may ask for an order to seal other documents.

**250**

RCW 26.26A.470, .465, CR 65(b)
(07/2019)
FL Parentage 321

Motion for Immediate
Restraining Order (Ex Parte)
p. 6 of 6

SDS
SEATTLE DIVORCE SERVICES

2317 NW Market St.
Seattle, WA 98107
phone: (206) 784-3049
fax: (206) 784-2681

# Appendix  **F**

**FILED**
2022 OCT 21 10:59 AM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 21-5-00680-6 SEA

## Superior Court of Washington, County of King

| In re: | No. **21-5-00680-6 SEA** |
|---|---|
| Petitioner/s *(person/s who started this case)*: | **Restraining Order**<br>Final (RSTO) |
| JESSICA R. OWEN, | Clerk's action required: **6, 7** |
| And Respondent/s *(other party/parties)*: | |
| KURT A. BENSHOOF. | Surrender Weapons Ordered: ☒ yes ☐ no |

# Restraining Order

*This order replaces all earlier Restraining Orders with the same Restrained Person, issued under this case number.*

**1.** **This Order restrains** *(name)*:
Kurt A. Benshoof
Restrained Party's distinguishing features:

**Restrained Party's Identifiers**

| Sex | Race | Hair |
|---|---|---|
| Male | White | Grey/Bald |
| Height | Weight | Eyes |
| 6'0" | 175 | Blue |

**Caution:** Access to weapons: ☒ yes ☐ no ☐ unknown

**2.** **This Order protects** *JESSICA OWEN,*
**and the following children, who are under 18 (if any)**

| Child's name | Age |
|---|---|
| 1. A█████ R. W█████ | 13 |

**3.** **To the Restrained Person listed in 1:**

> This Order starts immediately, and ends in 12 months or on *September 28, 2027*

> *Warning!* **You** must **obey this order.** Violation of this order with actual notice of its terms is a **criminal offense** under Chapter 7.105 RCW and will subject the violator to arrest *(RCW 7.105.450).* This order is enforceable in all 50 U.S. states, the District of Columbia, and U.S. territories and tribal lands *(18 U.S.C. § 2265).*

**448**

RCW 26.09.060, .110, .120, .194, .300
Mandatory Form *(07/2022)*
**FL All Family 150**

Restraining Order

p. 1 of 4

SDS
SEATTLE
DIVORCE
SERVICES
2317 NW Market St.
Seattle, WA 98107
phone: (206) 784-3049
fax: (206) 784-2681

## 4. Findings

**Authority:** The court has jurisdiction over the parties, the children listed in **2**, and the subject matter.

**Notice:** The Restrained Person had reasonable notice and an opportunity to be heard. This Final Restraining Order was entered pursuant to an Order for Default.

**Credible Threat:** The Restrained Person represents a credible threat to the physical safety of the Protected Person.

**Intimate Partner:** The Restrained Person and the Protected Person are/were intimate partners because they are parents of a child-in-common, and formerly in a dating relationship (age 13 or older) and have lived together.

## 5. Court Orders to the Restrained Person listed in **1**:

***Warning!*** You **must** obey this order until it ends. If you know about this order but do not obey, you may be arrested and charged with a crime.

**Do not disturb**

Do not disturb the peace of the Protected Person or of any child listed in **2**.

**Stay away**

Do not go onto the grounds of or enter the Protected Person's home, workplace, vehicle, or school, or the daycare or school of any child listed in **2**.

Do not knowingly go or stay within **500 feet** of the Protected Person's home, vehicle, workplace, school, or the daycare or school of any child listed in **2**.

**Do not hurt or threaten**

> *Warning!* If the court checks this box, the court must consider if weapons restrictions are required by state law; federal law may also prohibit the Restrained Person from possessing firearms or ammunition.

Do not:

- Assault, harass, stalk or molest the Protected Person or any child listed in **2**; or
- Use, try to use, or threaten to use physical force against the Protected Person or children that would reasonably be expected to cause bodily injury.

**Prohibit weapons and order surrender (separate order required)**

The Restrained Person must:

- Immediately surrender to law enforcement and not access, possess, have in their custody or control, purchase, receive, or attempt to purchase or receive firearms, other dangerous weapons, or concealed pistol licenses; and
- Comply with the ***Order to Surrender and Prohibit Weapons*** (form WS 001) filed separately.

**Findings** – The court **must** issue the orders referred to above because the court ordered the **do not hurt or threaten** restraints above and the court finds that the restrained person had **actual notice** and an **opportunity to participate**. AND:

**449**

RCW 26.09.060, .110, .120, .194, .300
Mandatory Form *(07/2022)*
FL All Family 150

Restraining Order

p. 2 of 4

SDS
SEATTLE
DIVORCE
SERVICES

2317 NW Market St.
Seattle, WA 98107
phone: (206) 784-3049
fax: (206) 784-2681

- the restrained person represents a **credible threat** to the physical safety of a protected person, OR

- This order explicitly prohibits the use, attempted use, or threatened use of **physical force** against any protected person.

Therefore, the weapons restrictions are required by state law. RCW 9.41.800(2).

**Do not contact.** KURT BENSHOOF shall make no attempts whatsoever to contact the protected person or the child listed in **1**, including but not limited to contact in-person, by phone, by text, by email, by written letter, or through third parties, except as may be set out in the parties' Parenting Plan.

**Service of Process.** KURT BENSHOOF may only effect service of process, for any and all legal proceedings, through use of either Pegasus Process Service or ABC Legal Services. Any service of process made by KURT BENSHOOF by any other means is a violation of this Restraining Order.

**6. Washington Crime Information Center (WACIC) and Other Data Entry**

**Clerk's Action.** The court clerk shall forward a copy of this order immediately to the following law enforcement agency Seattle Police Department.

This agency shall enter this order into WACIC and National Crime Info. Center (NCIC).

**7. Service:**

☒ **Required.** The Restrained Person must be served with a copy of this order.

> **Important!** The Protected Person has a right to have law enforcement serve this order free of charge if the "Do not disturb," "Stay away," "Do not hurt or threaten," or "Prohibit weapons and order surrender" boxes are checked above.

☒ The **law enforcement agency** where the Restrained Person lives or can be served shall serve the Restrained Person with a copy of this order and shall promptly complete and return proof of service to this court.

Law enforcement agency: SEATTLE POLICE DEPARTMENT

☐ The **Protected Person** shall make private arrangements for service. (*This is only an option if surrender of weapons is **not** ordered*)

After serving, the server fills out a *Proof of Personal Service* (form FL All Family 101) and gives it to you. File the original *Proof of Personal Service* with the court clerk, and give a copy to the law enforcement agency listed in section 6 above.

**Clerk's Action.** The court clerk shall forward a copy of this order on or before the next judicial day to the agency and/or person checked above. The court clerk shall also provide a copy to the Protected Person.

☐ **Not required.** The Restrained Person does not have to be served because the Restrained Person or their lawyer signed this order, or was at the hearing when this order was made and the court finds sufficient notice.

**450**

RCW 26.09.060, .110, .120, .194, .300
Mandatory Form (07/2022)
**FL All Family 150**

Restraining Order

p. 3 of 4

SDS
SEATTLE
DIVORCE
SERVICES

2317 NW Market St.
Seattle, WA 98107
phone: (206) 784-3049
fax: (206) 784-2681

**0073**

**Ordered.**

_____   _____   ▶ _____
Date                        Time                        Judge or Commissioner

**Petitioner and Respondent or their lawyers fill out below.**

| This order *(check any that apply)*: | This order *(check any that apply)*: |
|---|---|
| ☐ is an agreement of the parties | ☐ is an agreement of the parties |
| ☒ is presented by me | ☐ is presented by me |
| ☐ may be signed by the court without notice to me | ☐ may be signed by the court without notice to me |

_____          _____
NATHAN CLIBER, WSBA 41787                    KURT A. BENSHOOF,
Attorney for Petitioner                              Respondent, pro se


_____
AMY FRANKLIN-BIHARY, .
WSBA #35787
Guardian ad Litem

*Important!* **Protected Person**: you must fill out a *Law Enforcement and Confidential Information* form, PO 003, and give it to the court clerk.

**451**
RCW 26.09.060, .110, .120, .194, .300          Restraining Order
Mandatory Form *(07/2022)*
**FL All Family 150**                                    p. 4 of 4

SDS
SEATTLE DIVORCE SERVICES
2317 NW Market St.
Seattle, WA 98107
phone: (206) 784-3049
fax: (206) 784-2681

**0074**

King County Superior Court
Judicial Electronic Signature Page

Case Number: 21-5-00680-6
Case Title: OWEN VS BENSHOOF

Document Title: ORDER RE RESTRAINING ORDER

Signed By: David Keenan
Date: October 21, 2022

Judge: David Keenan

This document is signed in accordance with the provisions in GR 30.

Certificate Hash: D4CD579720E4BB8A7E792BCE878FD210340F014A
Certificate effective date: 1/3/2022 3:21:39 PM
Certificate expiry date: 1/3/2027 3:21:39 PM
Certificate Issued by: C=US, E=kcscefiling@kingcounty.gov, OU=KCDJA,
O=KCDJA, CN="David Keenan:
CCQR2jst7BGY3&#43;AVCKww&#43;Q=="

Page 5 of 5

**452**

# Appendix  G

*ORIGINAL*



## AFFIDAVIT OF ~~AZHRAEL RUNE WALKER~~ A.R.W.

I, ~~Azhrael Rune Walker~~ A.R.W., state and declare as follows:

1. I am the son of Kurt Benshoof and Jessica Owen.
2. My dad has never engaged in domestic violence.
3. My dad has never abused me in any way and has never spanked me.
4. In December 2015 my mom was angry and block the front door, and chased my dad around our house, and I was held in my dad's left arm.
5. My mom tried to grab me, and my dad used his right hand to grab my mom's upper left arm to keep her away.
6. My dad accidentally bumped my head against the wall or door frame because he was running from my mom to get out of the house.
7. My mom called the police and showed the police a bruise on her right arm and lied to police that my dad grabbed her on her right arm and bruised it.
8. My mom lied to me in July 2021 and coerced me to get a Pfizer vaccine.
9. My mom told me the Pfizer vaccine was safe, effective and FDA Approved.
10. My mom told me that I wouldn't be able to play with my friends or attend school unless I got the Pfizer vaccine.
11. My mom did not tell me that the Pfizer vaccine could cause permanent disability or death to me.
12. When I told my dad in August 2021 that my mom had me get the Pfizer vaccine, my dad showed me the CDC Vaccine Adverse Event Reporting System data, and how many thousands of people had died or been disabled after getting the Pfizer vaccine.
13. My dad showed me CDC data that showed I was at zero risk of being hospitalized or dying from Covid-19.
14. My dad explained to me that, because me and my mom had got Covid-19 a few months earlier that I had natural immunity, and getting a Pfizer vaccine was unnecessary and potentially lethal.
15. After realizing that my mom coerced me to get a Pfizer vaccine that was not safe, effective or necessary, I didn't want to talk to my mom or go back to her house.
16. My dad made me call my mom because he said she was accusing him of withholding me from my mom.
17. When I called my mom, she was very angry and started yelling and said my dad was an "abuser," which upset me, so I walked away from my phone and went to my room.
18. My dad used my phone to text my mom to invite her to come over to my dad's house and have a family discussion together, but my mom refused to.
19. My mom then got a temporary restraining order to try to take me and my dad's car.

**494**

1

20. My mom said in her declaration that if she took me from my dad that it would devastate me.

21. In King County Superior Court Case No. 21-2-11149-8 SEA, my mom lied to family court by saying that my dad withheld me from my mom in August 2020.

22. The truth is, I didn't want to talk to my mom at that time, or see her.

23. After my dad won the hearing on September 3, 2021 for Case No. 21-2-11149-8, my dad made me call my mom so that she wouldn't worry. I didn't want to call my mom, but my dad said I had to.

24. Later that day, my mom and her girlfriend Justice (her real name is Magalie Lerman) had the police arrest my dad, and Justice drove away in my dad's FJ Cruiser with me inside.

25. My mom and Justice then kept my dad's FJ Cruiser in their garage for about eight months.

26. During September of 2021, my mom texted my dad from my phone, pretending that she was me.

27. Pretending to be me, my mom texted my dad that I was busy and that it was scary when he came over to her house to see me, and that I didn't want him to come back.

28. During September of 2021, my mom wouldn't let my dad see me or talk to me.

29. In September of 2021, my mom got a family attorney named Nathan Cliber and my mom got another temporary restraining order against my dad in Case No. 21-5-00680-6.

30. My mom lied and said that my dad wasn't my presumed dad in her Petition to Decide Parentage. Everyone knows my dad is my dad, and always has been.

31. My mom lied to family court by saying that my dad refused to be acknowledged as my dad.

32. My mom lied to family court by saying that my dad had abused me.

33. My mom lied to family court by saying that my dad had exercised "coercive control."

34. My mom lied to family court by saying that my dad had engaged in domestic violence.

35. After my mom lied to family court to take me from my dad, she again coerced me to get another Pfizer vaccine in October of 2020.

36. My mom said that my dad was crazy because he said that the Pfizer vaccine wasn't safe, effective, or necessary.

37. My mom tried to get my dad to give her money to get his FJ Cruiser back.

38. My mom and Justice said that unless my dad gave them $100,000 they would evict my dad from his house where I had lived with him since 2015.

39. On July 6, 2022 I went to my dad's house, but the police made me go back to my mom's house.

40. In August of 2022 I considered killing myself because I didn't know if I would be forced to stay at my mom's until I am eighteen years old.

41. Then my mom got family court to forbid any contact at all with my dad.

**.495**

42. On January 23, 2023, I left my mom a note that said I had hated her for months and that I wanted to go back to my dad's house, and that if she loved me she should stop keeping me from my dad.

43. My mom found the note before I walked to my dad's house. She told me that she would talk to her attorney about resolving things with my dad, and then she said I could go over to my dad's house.

44. After I walked over to my dad's house, my mom called the police to get my dad arrested, and the police came made me go back to my mom's house.

45. Justice hates my dad, and Justice does not care about what I want or need.

46. My mom does not care about what I want or what I need. She hates my dad, and keeps lying to keep me from being with my dad.

47. On February 10, 2023, I signed a Durable Power-of-Attorney Agreement with my dad, so that he can act on my behalf in all matters.

48. It is my express wish that my dad initiates a lawsuit against my mom and her family attorney because they lied to take me away from my dad.

49. It is my express wish that my dad has King County Superior Court Case No. 21-5-00680-6 SEA vacated because it was fraudulently initiated with lies by my mom and her family attorney, Nathan Cliber.

50. It is my express wish that my dad act as a "Next Friend" pursuant to FrCP 17(c)(2), or as my "guardian" or "fiduciary" pursuant to FrCP 17(1)(A)(D), or pursuant to RCW 11.125 Uniform Power of Attorney Act, so that my dad can bring claims on my behalf, either in Equity or in law, so I can go home to him.

## WASHINGTON DURABLE FINANCIAL POWER OF ATTORNEY

NOTICE: THE POWERS GRANTED BY THIS DOCUMENT ARE BROAD AND SWEEPING. THE POWERS LISTED IN THIS DOCUMENT DO NOT INCLUDE ALL POWERS THAT ARE AVAILABLE UNDER APPLICABLE LAW. ADDITIONAL POWERS AVAILABLE UNDER LAW MAY BE ADDED BY SPECIFICALLY LISTING THEM UNDER THE SPECIAL INSTRUCTIONS SECTION OF THIS DOCUMENT. IF YOU HAVE ANY QUESTIONS ABOUT THESE POWERS, OBTAIN COMPETENT LEGAL ADVICE. THIS DOCUMENT DOES NOT AUTHORIZE ANYONE TO MAKE MEDICAL AND OTHER HEALTH-CARE DECISIONS FOR YOU. YOU MAY REVOKE THIS POWER OF ATTORNEY IF YOU LATER WISH TO DO SO.

**496**

I, A█████R██ W████, currently residing at 849 NE 130th ST, Seattle, WA 98125 hereby appoint Kurt A. Benshoof, currently residing at 1716 N 128th ST, Seattle, WA 98133 as my agent (attorney-in-fact) to act for me in any lawful way with respect to the following subjects:

- Real property transactions.
- Tangible personal property transactions.
- Banking and other financial institution transactions.
- Insurance and annuity transactions.
- Estate, trust, and other beneficiary transactions.
- Claims and litigation.
- Personal and family maintenance.
- Benefits from social security, medicare, medicaid, or other governmental programs, or civil or military service.
- Retirement plan transactions.
- Tax matters.

## SPECIAL INSTRUCTIONS:

1. The foregoing powers shall specifically include the right to request and receive any health information or other medical records as would I with respect to my rights regarding the use and disclosure of my individually identifiable health information or other medical records, as may be governed by, and the foregoing shall constitute my release authority to the agent as authorized pursuant to, the Health Insurance Portability and Accountability Act (HIPAA). The foregoing release authority given my agent has no expiration date and shall expire only in the event I revoke the authority by written instrument delivered to my health-care provider or by revocation of this Power of Attorney.

2. The foregoing powers shall specifically include the power of my agent to submit claims, seek and receive reimbursements, pursue, settle or compromise claims, and to otherwise take any and all actions as may be necessary or desirable for purposes of enforcing the principal's rights, benefits and entitlements under any medical policies, medical reimbursement or other medical or health-care related plans or programs.

3. In addition to the statutory powers granted above with respect to retirement plan transactions, my agent is hereby granted the power to (i) access any account values and information relating to any interest which I may have in any qualified retirement plan, profitsharing plan, defined benefit plan, contribution plan, IRA, SEP-IRA, Roth IRA, 403(b) annuity plan, other annuity plan, Code Section 526 plan, Code Section 529 plan, and/or any other retirement or

**497**

4

**0080**

savings plan or account (collectively, the "retirement and savings accounts"), (ii) make contributions to retirement and savings accounts, (iii) make, authorize or otherwise direct the withdrawal and distribution of assets for my benefit from retirement and savings accounts and (iv) take any and all actions as may be desirable for purposes of ensuring the application and use of such retirement and savings accounts for my needs, and to comply with applicable tax and other laws pertaining thereto.

4.  My agent may access, control, archive, transfer, and delete my digital assets. Digital assets include my email accounts, digital music, digital photographs, digital videos, gaming accounts, software licenses, social-network accounts, file-sharing accounts, financial accounts, domain registrations, Domain Name System (DNS) service accounts, blogs, listservs, web-hosting accounts, tax-preparation service accounts, online stores and auction sites, online accounts, and any similar digital asset that currently exists or may be developed as technology advances. My digital assets may be stored on the cloud or on my own digital devices. My agent may access, use, and control my digital devices in order to access, control, archive, transfer, and delete my digital assets. Digital devices include desktops, laptops, tablets, peripherals, storage devices, mobile telephones, smartphones, and any similar hardware that currently exists or may be developed as technology advances.

## EFFECTIVE DATE:

 A.R.W.    THIS POWER OF ATTORNEY IS EFFECTIVE IMMEDIATELY AND WILL CONTINUE UNTIL IT IS REVOKED. THIS POWER OF ATTORNEY WILL CONTINUE TO BE EFFECTIVE EVEN THOUGH I BECOME INCAPACITATED.

 A.R.W.    THIS POWER OF ATTORNEY IS EFFECTIVE ON February 10, 2023. IT WILL CONTINUE UNTIL IT IS REVOKED. THIS POWER OF ATTORNEY WILL CONTINUE TO BE EFFECTIVE EVEN THOUGH I MAY BE CONSIDERED, OR BECOME CONSIDERED, INCAPACITATED.

   n/a     THIS POWER OF ATTORNEY SHALL BECOME EFFECTIVE ONLY AT SUCH TIME AS I BECOME INCAPACITATED AND SHALL CONTINUE THEREAFTER EVEN THOUGH I AM INCAPACITATED UNTIL SUCH TIME AS I AM NO LONGER INCAPACITATED, UNLESS THIS POWER OF ATTORNEY IS REVOKED.

   For purposes of this Power of Attorney, "incapacitated" shall mean either (1) an adjudication by a court of competent jurisdiction to the effect that I am incompetent, or (2) the appointment by a court of competent jurisdiction of a conservator or guardian for my estate or (3) written certification by two (2) physicians who are unrelated to me or to each other in any personal, business or professional capacity that in their opinion I am substantially unable to

**498**

5

manage my financial resources or resist fraud or undue influence. The effective date of such incapacity shall be the earlier of (a) the date of the order or decree adjudicating the incapacity, (b) the date of the order or decree appointing the conservator or guardian, or (c) the later date where both of the physicians' certifications described in this paragraph are obtained. A certified copy of the order or decree declaring incapacity or appointing a conservator or guardian or a copy of the physicians' certifications described herein shall be attached to the original of this Power of Attorney (and photocopies thereof shall be attached to photocopies hereof).

**EXERCISE OF POWER OF ATTORNEY WHERE MORE THAN ONE AGENT DESIGNATED:**   If I have designated more than one (1) agent, the agents may act separately as follows: at any time while two (2) or more persons are acting as my co-agents, any one (1) or more of such persons may be given the power to execute documents on my behalf or bind me in any particular transaction(s) or type(s) of transactions as set forth herein, and any such action taken by such person(s) pursuant to such power may be relied upon by third parties dealing with the agent(s). At any time while two (2) or more persons are acting as my agents, all decisions made hereunder shall be made by a majority of the agents. The power granted to an agent under the first sentence of this paragraph must be granted by a majority vote of the agents.

Successor Attorney- in-Fact. If Kurt A. Benshoof (agent's name) is unable or unwilling to serve or to continue to serve as my attorney-in-fact for any reason, then Peter L. Kral (alternate agent's name), presently residing at 1757 Greentree Rd. Encinitas, CA 92024 (address) is hereby appointed successor attorney-in-fact hereunder.

I agree that any third party who receives a copy of this document may act under it. Revocation of the power of attorney is not effective as to a third party until the third party has actual knowledge of the revocation. I agree to indemnify the third party for any claims that arise against the third party because of reliance on this power of attorney.

All prior general powers of attorney I have executed are hereby revoked.

Signed this 10th day of February , 20 23 .

x _Azhrael Rune Walker_
(signature)

Azhrael Rune Walker
(printed name)

**.499**

# ACKNOWLEDGMENT

## Statement of Witnesses

On February 10, 2023, the declarer of this document, Azhrael Rune Walker, signed it in my presence. I believe the declarer is able to understand this document, and to have signed it voluntarily.

- I am not related to the principal by blood, marriage, or state registered domestic partnership.

## VERIFICATION

As a Witness, I do hereby declare that all herein be true and correct to the best of my knowledge, under penalty of perjury in the State of Washington.

Executed this 10th day of February, in the year 2023, in Seattle, in King County, in Washington state.

**Witness 1**

_Kyrrah Nork_
Signature

Kyrrah Nork
Print Name
411 75th Place SW
Everett, WA 98203
Address

**Witness 2**

_Michael Bayles_
Signature

Michael Bayles
Print Name
411 75th place SW
Everett, WA 98203
Address

Witness 3

_Thomas Clay Layton_
Signature

Thomas Clay Layton
Name

8623 Palatine Ave N, APT 326 SEATTLE, Wa 98103
Address

7
**0083**









3:55

**Wrench**

**seraphdmortego**  09/25/2022 6:37 PM
Do you feel lonely or isolated, or are you feeling okay?

Tell me straight up

**Wrench**  09/25/2022 6:40 PM
I'm feeling like I am truly understanding insanity and I thought of writing a book called the face of insanity

💕 1

**seraphdmortego**  09/25/2022 6:41 PM
DO!!!!  Or just keep writing your thoughts and observations down and you can organize them into the structure of a book, or whatever later. Feel me?

The perspective on this from the eyes of a "13 year old" will be like Anne Frank's diary in a few years.

CAPTURE THIS EXPERIENCE

**Wrench**  09/25/2022 6:46 PM
I WILL

**seraphdmortego**  09/25/2022 6:48 PM
Candice told me this experience will shape who you are and your life in a big way.  Positive. Like you will truly understand what I have been taking about and the importance of seeing at is true and acting to protect others and all

Jump to Message



FILED
2023 OCT 31 12:07 PM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 22-2-15958-8 SEA

Hon. Marshall Ferguson

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| KURT A. BENSHOOF *Pro Se,* | CASE NO. |
| Petitioner, | PETITIONER'S SUMMARY RE: PETITION FOR WRIT OF PROHIBITION |
| v. | WRM - 2 |
| CITY OF SEATTLE, | Re: Seattle Municipal Case No. 669329 |
| Respondent. | |

## I.    INTRODUCTION

COMES NOW Petitioner Kurt Benshoof ("Benshoof"), under threat, duress, and coercion of this Court's Order Restricting Abusive Litigation of Kurt Benshoof ("Order"), summarizing Benshoof's Petition for Writ of Prohibition Re: Seattle Municipal Case No. 669329 ("Writ").

## II.    SUMMARY

The Order was granted in violation of RCW 26.51.030, which required that Benshoof had "been found by the court to have committed domestic violence." No court has found Benshoof to be a domestic violence perpetrator.

The Order was granted in violation of RCW 26.51.030, ignoring the statutory requirement that, "the court shall set a hearing to determine whether the litigation meets the

SUMMARY OF PETITION FOR WRIT OF PROHIBITION
RE: SEATTLE MUNICIPAL COURT CASE NO. 669329
Page 1 of 4

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

**0089**

definition of abusive litigation." This Court did not seek to determine if Benshoof had been found to be a domestic violence perpetrator by any court.

The Order was granted in violation of RCW 26.51.040(1), which states, "the court shall hear all relevant testimony." This Court did not hold a hearing to hear all relevant testimony to consider whether Benshoof had been found to be a domestic violence perpetrator by any court.

As such, the Order was *void ab initio*. This has been detailed in Benshoof's federal complaint in U.S. District Court for the Western District of Washington, Case No. 2:23-cv-01392-JNW in which His Honor is a named defendant for *ultra vires* acts in violation of the First Amendment; that is, acts which are not protected by the doctrine of judicial immunity.

The Writ evinces that Judge David Keenan ("Keenan") did not have jurisdiction to adjudicate family court Case No. 21-5-00680-6, and that Keenan knowingly allowed, enabled, and facilitated the felony perjury of Jessica R. Owen, mother of Benshoof's son. Keenan thereby issued *void ab initio* orders, causing Benshoof and his son irreparable, ongoing harm.

The Writ evinces that the City initiated Case No. 669329 without personal jurisdiction over Benshoof, as the City knowingly and willfully failed to comply with RCW 35.20.270(1), and ignored Benshoof repeatedly raising this threshold, dispositive issue at the commencement of the case.

The Writ evinces that the City initiated Case No. 669329 in violation of RCW 7.105.050(1)(a)(d) which states that only a Superior Court is so authorized to adjudicate the domestic violence allegations against Benshoof.

Upon the foregoing, the Writ evinces that the City has violated RCW 9.62.010 to perpetrate the malicious prosecution of Benshoof, in violation of 18 U.S. Code §§ 241; 242; 1512; 1513; 1962.

SUMMARY OF PETITION FOR WRIT OF PROHIBITION
RE: SEATTLE MUNICIPAL COURT CASE NO. 669329
Page 2 of 4

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

Benshoof seeks the Writ to prohibit the City from further violations of state and federal law, and to prevent the City from continuing to aid and abet state and federal law violations by Jessica R. Owen.

## VERIFICATION

I, Affiant Kurt Benshoof, do hereby declare that the foregoing is true and correct to the best of my knowledge under penalty of perjury in the State of Washington, and am competent to testify to the matters stated herein.  Executed this 31st day of October in the year 2023, in the City of Seattle, in the county of King, in the state of Washington.


By:  ____s/ Kurt Benshoof_____
          Kurt Benshoof *Pro Se*

1716 N 128th Street
Seattle, WA 98133
Phone: (206) 460-4202
Email: kurtbenshoof@gmail.com

SUMMARY OF PETITION FOR WRIT OF PROHIBITION
RE: SEATTLE MUNICIPAL COURT CASE NO. 669329
Page 3 of 4

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

## CERTIFICATION OF SERVICE

I, Kurt Benshoof, hereby certify that on October 31, 2023, I did effect service upon

counsels for Defendants by e-filing in King County Superior Court Case No. 22-2-15958-8 the

Petition for Writ of Prohibition Re: Case No. 669329 and this Summary of Petition for Writ of

Prohibition Re: Seattle Municipal Court Case No. 669329 by emailing to the email addresses

listed below:

**Attorney For Defendant Jessica Owen:**
Blair M. Russ, WSBA #40374
1000 Second Avenue
Suite 3660
Seattle, WA 98104
Email: bmr@tbr-law.com

**Attorney for Defendant Nathan Cliber:**
Kyle Rekofke, WSBA #49327
701 Fifth Avenue
Suite 2100
Seattle, WA 98104
Email: krekofke@grsm.com

**Attorney for Defendants Magalie Lerman and Owen Hermsen:**
Moshe Y. Admon, WSBA #50325
300 Lenora Street
Suite 4008
Seattle, WA 98121
Email: jeff@admonlaw.com

DATED:  October 31, 2023

Signed:  _____s/ Kurt Benshoof_____

Kurt Benshoof, *Pro Se*
1716 N 128th ST
Seattle, WA 98133
(206) 460-4202

SUMMARY OF PETITION FOR WRIT OF PROHIBITION
RE: SEATTLE MUNICIPAL COURT CASE NO. 669329
Page 4 of 4

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

**0092**

Hon. Marshall Ferguson

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| KURT A. BENSHOOF *Pro Se,* | CASE NO. |
| Petitioner, | |
| | PETITION FOR WRIT OF PROHIBITION |
| v. | WRM - 2 |
| CITY OF SEATTLE, | Re: Seattle Municipal Case No. 669329 |
| Respondent. | |

## I.    INTRODUCTION

COMES NOW Petitioner Kurt Benshoof ("Benshoof") requesting that this Court issue a writ of prohibition to arrest Seattle Municipal Court Case No. 669329 as such proceedings are absent the jurisdiction of Seattle Municipal Court pursuant to RCW 7.105.050(1)(a)(d).

The City Attorney's Office and municipal judges have been notified by Benshoof that only a Superior Court is authorized under the aforementioned statute to adjudicate the City's allegation against Benshoof of domestic violence in Case No. 669329.  Despite its absence of jurisdiction to proceed, Seattle Municipal Court has refused to dismiss the case or hear any motion by Benshoof.  As such, Benshoof has no plain, speedy and adequate remedy in the ordinary course of law other than to petition for Writ of Prohibition.

PETITION FOR WRIT OF PROHIBITION
RE: SEATTLE MUNICIPAL CASE NO. 669329
Page 1 of 27

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

0093

## II.    VERIFIED STATEMENTS OF FACT

Benshoof avers the following statements and is prepared to testify under penalty of perjury to these facts in a court of law authorized and convened under the Washington Constitution. Benshoof incorporates by reference as if fully restated herein the following documents filed in U.S. District Court for the Western District of Washington Case No. 2:23-01392-JNW: Complaint (Dkt. #9) Exhibits (Dkt. #13-1; #13-2; and #13-3)

All *emphasis* that of Benshoof.

### A.  Family Background

Benshoof and defendant Jessica Owen ("Owen") discovered she was pregnant with Benshoof's child, A.R.W., in August 2008.  Thereupon, Benshoof and Owen entered into a verbal parenting contract at common law ("Covenant") after notice, consideration, and accord; thereby exercising their unlimited right to contract as private individuals.

Under their Covenant as father and mother, they would henceforth have full, equal, and inalienable rights as parents of their son-to-be, sharing all significant decisions regarding A.R.W.'s care and upbringing, such as education, family scheduling, medical and dental care, and nutrition.

Though Benshoof and Owen never married, they raised A.R.W. amicably for the following twelve years, prioritizing their son's well-being and sharing equally in all significant decisions regarding their son's education, medical care, dental care, and living arrangements.

### B.  Owen Seizes Custody of A.R.W.

Owen explicitly threatened to steal Benshoof's car, seize custody of A.R.W., deny Benshoof's equity ownership in his home and evict Benshoof on August 16, 2021, via text message. (Dkt. #13-1 at 44)  When Benshoof refused to be intimidated by Owen's threats, Owen

PETITION FOR WRIT OF PROHIBITION
RE: SEATTLE MUNICIPAL CASE NO. 669329
Page 2 of 27

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

filed for a TRO in King County Superior Court Case No. 21-2-11149-8 on August 23, 2021.

In Owen's TRO petition, she truthfully stated under penalty of perjury that A.R.W. was related to Benshoof as his child, that Benshoof and A.R.W. had lived together, and that Benshoof had raised A.R.W. his entire life.

King County Superior Court issued a full denial order of Owen's TRO petition on September 3, 2021. Benshoof thought Owen would thereafter stop her lies and threats. Benshoof was mistaken.

Thereafter, Owen acted to keep Benshoof from seeing or communicating with A.R.W., including telling Jane Addams Middle School that Owen was the "sole legal guardian" of A.R.W. Owen was not the "sole legal guardian" of A.R.W., and could not be the sole "legal guardian" of A.R..W., as RCW 26.33.0209(11) defines a "legal guardian" as someone *other than a parent.*

Upon Owen's false statements that she was the "sole legal guardian" of A.R.W., school staff refused Benshoof access to A.R.W. and denied Benshoof access to his son's school records. RCW 28A.605.020 assures parent access to their child's classroom. RCW 28A.605.030 protects the right of a parent to review all education records of their child.

On September 24, 2021, Benshoof called 911 to do a wellness check on A.R.W. SPD Officers Kieran Barton #8747 ("Barton") and Adam Beaty #7453 ("Beatty") responded. Beaty refused to take a sworn affidavit from Benshoof evidencing that Benshoof had full rights as the father of A.R.W. Beaty stated, "I'm not taking anything from you. We know you're trying to set us up." (Dkt. #13-1 at 35-38)

Barton and Beatty asserted that Owen was the "sole legal guardian" of A.R.W. RCW 26.33.0209(11) defines a "legal guardian" as someone *other than a parent.* Barton and Beatty

PETITION FOR WRIT OF PROHIBITION
RE: SEATTLE MUNICIPAL CASE NO. 669329
Page 3 of 27

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

did not possess evidence that a court order had determined Owen to be sole "legal guardian" of A.R.W.

Owen hired family attorney Nathan Cliber ("Cliber") in September 2021, filing a Petition to Decide Parentage ("parentage action"). Case no. 21-5-00680-6 was a ruse so that Owen could seek an emergency restraining order against Benshoof to deny Benshoof's rights as A.R.W.'s father.

Benshoof did not consent to family court adjudicating his rights as the father of A.R.W. Defendant David Keenan ("Keenan") was assigned as presiding judge.

## C. Impairing the Obligation of Contracts

No evidence of Owen's and Benshoof's contractual privity with Washington state, by dissolution of marriage or domestic partnership, declaration of invalidity, or legal separation exists.

Cliber, and Owen knowingly and willfully acted in concert to impair the obligations of Owen to uphold the Covenant. By and through Cliber, Owen made materially false statements to initiate Family Court case no. 21-5-00680-6 by filing a barratrous, perjurious parentage action.

In August 2021 case no. 21-2-11149-8 and September 2021 case no. 21-5-00680-6 Owen took two mutually exclusive positions foundational to her parentage action.

First, Owen declared on August 23, 2021, in TRO case no. 21-2-11149-8 that: (1) Owen and Benshoof are the parents of A.R.W. (Dkt. #13-1 at 72); (2) A.R.W. is related to Benshoof as his child (*Id.* at 73); and (3) Benshoof had raised A.R.W. his entire life. (Dkt. #13-1 at 62)

Four weeks later in case no. 21-5-00680-6, Owen and Cliber filed a parentage action, the basis of which was that Benshoof: (1) was not the biological father of A.R.W.; (2) had never lived with A.R.W., and (3) had never held out A.R.W. as his son.

PETITION FOR WRIT OF PROHIBITION
RE: SEATTLE MUNICIPAL CASE NO. 669329
Page 4 of 27

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

**0096**

Owen's September 20, 2021, statement (Dkt. #13-1 at 254) that Benshoof was not the presumed father of A.R.W. was an inconsistent material statement under oath which directly contradicted Owen's prior sworn statement weeks earlier in case no. 21-2-11149-8, averring On August 21, 2021, that Owen and Benshoof are "parents of a child in common." (Dkt. #13-1 at 77) which affirmed that: (1) Owen and Benshoof are the parents of A.R.W.; (2) A.R.W. is related to Benshoof as his child; and (3) Benshoof had raised A.R.W. his entire life.

As such, Owen took two mutually exclusive positions between case no. 21-2-11149-8 and case no. 21-5-00680-6, in violation of RCW 9A.72.020; 9A.72.050.

First, Owen declared in August 2021 that Benshoof: (1) was the biological father of A.R.W., (2) had lived with A.R.W. his entire life; and (3) had acted as his father his entire life. Then in Owen's parentage action, the basis of which was that Benshoof was not the presumed father of A.R.W., Owen averred under penalty of perjury, "To my knowledge, no one is already presumed to be a parent" (Dkt. #13-1 at 254)

Owen also declared that Benshoof had at all times refused to agree to the legal recognition of A.R.W. (*Id.*) However, Benshoof had texted Owen on September 18, 2021, stating Benshoof's belief that Owen had refused to add Benshoof's name to A.R.W.'s birth certificate as part of Owen's fraud to assert that Owen was the "sole legal guardian" of their son. (Dkt. #13-4 at 392)

On September 19, 2021, Benshoof texted Owen, "Are you still refusing to amend [A.R.W.'s] birth certificate to show my legal name (as I have previously and repeatedly requested)?" (*Id.*)

PETITION FOR WRIT OF PROHIBITION
RE: SEATTLE MUNICIPAL CASE NO. 669329
Page 5 of 27

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

Pursuant to RCW 26.26A.115, there is presumption of fatherhood once the father has: (1) lived with the child for the first four years of the child's life, and (2) openly held out the child as his own, even if the child was not biologically his own.

In defiance of all logic or pretense of plausible honesty, *two days after* Owen signed the petition to decide parentage on September 20, 2021, asserting that Benshoof was not the presumed father of their son, Owen then signed her Declaration of Jessica R. Owen on September 22, 2021, stating, "***Kurt having acted as [A.R.W.'s] father for [A.R.W.'s] entire life…***" (Dkt. #13-1 at 229)

Owen also stated, "We moved in together in July of 2008. [A.R.W.] was born nine months later…" (Dkt. #13-1 at 230) "[Benshoof] always insisted on being treated as A.R.W.'s father and that A.R.W. was his." (*Id.*) "…September of 2020 that *I finally moved out of our shared residence…*" (Dkt. #13-1 at 231)

Family law attorney Cliber then reviewed Owen's statements, affixed his signature to the petition to decide parentage and motion for immediate restraining order, and filed them.

At no time did Owen ever claim that there was another possible biological father of A.R.W. Owen and Benshoof have known since August 2008 that A.R.W. was conceived during sexual intercourse involving only Owen and Benshoof on July 18, 2008, which also happens to be Benshoof's birthday.

## D. TRO Hearing

On October 25, 2021, Commissioner Jason Holloway ("Holloway") heard Owen's petition for temporary restraining order. Owen sought to seize sole custody of A.R.W. and prevent Benshoof from associating with his son.

PETITION FOR WRIT OF PROHIBITION
RE: SEATTLE MUNICIPAL CASE NO. 669329
Page 6 of 27

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

Holloway consulted the Judicial Information System but did not disclose this fact to Benshoof in accordance with the requirement of RCW 2.28.210(2).

Cliber asserted that Benshoof had engaged in "domestic violence" against Owen and A.R.W.

Benshoof has never engaged in domestic violence against anyone, nor threatened to do so. On the contrary, Owen has assaulted Benshoof during their parenting relationship on multiple occasions, including striking Benshoof in the face repeatedly and causing inches long, bloody scratches on Benshoof's leg.

Benshoof has never spanked his son, nor yelled at A.R.W., nor any child. Neither has Benshoof ever threatened to hit any woman, nor done so. In fact, the uncontested record showed that Owen had in fact been the domestic violence abuser on multiple occasions; that is, Owen repeatedly struck Benshoof in the face and arms, and also cause inches long bloody scratches on Benshoof's legs.

Holloway stated on the record, "I'm not requiring that [Benshoof] do a domestic violence assessment. That would have been something that would have been ordered if he had been found to be a domestic violence perpetrator, *which he is not.*"

Holloway thereby implicitly acknowledged that Owen's claims of being stalked by Benshoof, and her claims that Benshoof inflicted fear upon her and A.R.W., were false. (*See* RCW 26.50.010(3)).

Holloway asserted that Benshoof was a "credible threat" to A.R.W. due to Holloways discriminatory animus toward Benshoof's minority religious beliefs.

A State must, if it is to invoke the statutes after injunctive relief has been sought, assume the burden of obtaining a permissible narrow construction in a noncriminal proceeding.

PETITION FOR WRIT OF PROHIBITION
RE: SEATTLE MUNICIPAL CASE NO. 669329
Page 7 of 27

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

**0099**

After Benshoof discovered that family court does not allow trial by jury, he filed a motion objecting to the violations of due process. (Dkt. #13-1 at 278-284)

Keenan denied Benshoof's motion absent findings of fact or conclusions of law.

**E.  No Justiciable Issue**

For a court to obtain jurisdiction, there must be a justiciable issue before said court.

Owen, Cliber, and assigned Judge David Keenan ("Keenan"), knew or should have known that the evidence in the record of King County Superior Court as of the filing of the parentage action on September 28, 2021, evidenced that family court could not overcome Benshoof's legal presumption as the father of A.R.W., pursuant to RCW 26.26A.115; RCW 26.26A.435(2).

Family court had an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenged it.   Benshoof did challenge it, repeatedly.

Cliber, Holloway, and Keenan ("Keenan") knew that the doctrine of judicial estoppel and RCW 9A.72.020 prohibited Owen from making inconsistent material statements under oath; that is, Owen was prohibited from committing felony perjury.

Cliber, Holloway, and Keenan knew that the consent of Benshoof was never given to adjudicate case no. 21-5-00680-6 without a trial by jury.

Cliber, Holloway, and Keenan knew that through the Fourteenth Amendment the Seventh Amendment protects the right to trial by jury in all civil litigation and that Wash. Const. art I §14 prohibits a public official from denying a civil litigant the right to trial by jury absent the consent of both parties.  Benshoof has never consented to family court adjudication.

**F.  No Contractual Privity with State**

On, or around, March 10, 2023, Benshoof discovered that family court plans and orders apply to fathers and mothers in contractual privity with the state via marriage, domestic

PETITION FOR WRIT OF PROHIBITION
RE: SEATTLE MUNICIPAL CASE NO. 669329
Page 8 of 27

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

partnership, declaration of invalidity, or legal separation; none of which Benshoof and Owen were party to. (*See* RCW 26.09.004(3)(4)).

Between September 2021 and March 2022, Cliber failed to disclose that RCW 26.09.004(3)(4) did not apply to Benshoof without Benshoof' voluntary consent.

Washington BAR Rules of Professional Conduct ("RPC") 3.3(A)(3) states that a lawyer shall not knowingly, "fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by the opposing party."

In March 2022, Benshoof emailed Cliber upon his discovery of RCW 26.09.004.

Benshoof informed Cliber that Cliber had engaged in deceit to invoke family court jurisdiction. Cliber responded by stating that he had obtained the jurisdiction of family court by other means.

Upon Benshoof's request that Cliber disclose what this other means was, Cliber refused to disclose by what controlling authority he had done so.

Benshoof emailed Keenan's bailiff, Beatrice Marquez ("Marquez"), informing Marquez that family court did not have jurisdiction to impose plans and orders involving Benshoof and A.R.W. because Benshoof and Owen were not in contractual privity with the state via marriage, domestic partnership, declaration of invalidity, or legal separation. Marquez instructed Benshoof to bring the issue up before Keenan.

On April 1, 2022, Keenan heard Benshoof's motions to dismiss the case for lack of subject matter jurisdiction and the interests of A.R.W. (Dkt. #13-1 at 339-354; Dkt. #13-1 at 356-368)

Cliber could not, and did not, establish subject matter jurisdiction to maintain an action in case no. 21-5-00680-6. Cliber asserted *res judicata* and claimed that Benshoof's motions quoting

PETITION FOR WRIT OF PROHIBITION
RE: SEATTLE MUNICIPAL CASE NO. 669329
Page 9 of 27

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

0101

U.S. Supreme Court cases were "unintelligible" and "frivolous." Keenan dismissed Benshoof's motions without the requested findings of fact and conclusions of law.

## G.  SPD Incident 2022-154753

On, or around, May 1, 2022, Benshoof called 911 to report custodial interference to SPD. Benshoof made complaint by telephone to SPD Officer Ashlie T. Bissell ("Bissell"), also known as Ashlie Clark.  Benshoof had already made numerous such complaints to SPD, beginning in August 2021, including sworn affidavits as a victim witness.

Benshoof reported that Owen and Lerman had unlawfully taken Benshoof's 2011 Toyota FJ Cruiser and, with the aid of their friend, Owen Hermsen, had attempted felony extortion of Benshoof seeking $19,000 for the return of Benshoof's stolen FJ Cruiser.  (Dkt. #13-1 at 299-334)

Benshoof reported that Owen and Lerman had engaged in felony custodial interference in order to deny Benshoof's right of association with A.R.W.  Benshoof reported that Owen and Lerman had violated RCW 9A.36.070 by coercing A.R.W. to be subjected to a Pfizer medical experiment by threatening that A.R.W. would be restrained from going to school or seeing his friends.

Bissell told Benshoof that she could not file a complaint against Owen and Lerman for coercing A.R.W. to be subjected to Pfizer medical experimentation because all SPD officers had been required to get a "covid vaccine."

Benshoof reported that Owen and Lerman, both prostitutes, had brought their prostitution clients into their home while A.R.W. was present in the house.  Benshoof also provided the SPD video of A.R.W. confirming this fact.

PETITION FOR WRIT OF PROHIBITION
RE: SEATTLE MUNICIPAL CASE NO. 669329
Page 10 of 27

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

On June 29, 2022, Benshoof emailed the General Investigation Unit and Bissell, providing them with verified documents evidencing felony and gross misdemeanor crimes perpetrated by Owen, Lerman, and family law attorney Nathan L. Cliber. (Dkt. #13-1 at 379-410; Dkt. #13-3 at 294-320)  The City took no action against Cliber, Owen, or Lerman.

## H.  SPD Incident 2022-173684

On July 6, 2022, A.R.W. ran away from Owen's to come home to Benshoof.

SPD Officers were dispatched to Benshoof's home: Elias Williams #8767 ("Williams"), Charles Foreman #7569 ("Foreman"), and Eric Whitehead #7493 ("Whitehead).

Benshoof informed Williams that Owen and Lerman were welcoming their prostitution clients into their home when A.R.W. was present.

Benshoof informed Williams that Owen and Lerman had made false and misleading statements to police to take A.R.W. and Benshoof's FJ Cruiser, that Owen had committed perjury and custodial interference to fraudulently initiate family court case no. 21-5-00680-6, and that A.R.W. was being subjected to mental and emotional abuse by Owen and Lerman.

Benshoof informed Williams that Owen and Lerman, with the approval of family court, had coerced A.R.W., to engage in conduct that A.R.W. had the right to abstain from, by threatening him with confinement or restraint; that is, a Pfizer gene therapy that had not even completed adequate animal trials, let alone phase 3 of a clinical trial to ensure safety and efficacy.

Benshoof informed Williams that Owen and Lerman had accomplished by deception the unlawful imprisonment of both A.R.W. and Benshoof by restricting their movement without consent and without valid legal authority in a manner which interfered substantially with their liberty.

Pursuant to RCW 9A.40.040 it is a class C felony to restrict the movement of Benshoof without valid legal authority in a manner which interfered substantially with his liberty.

PETITION FOR WRIT OF PROHIBITION
RE: SEATTLE MUNICIPAL CASE NO. 669329
Page 11 of 27

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

Benshoof informed Williams that Lerman had threatened a process server at Owen's home with an aluminum baseball bat, while screaming lies which disparaged Benshoof in A.R.W.'s presence.

Benshoof informed Williams that Lerman's threats and intimidation of a process server constituted a felony law violation, and that such threats were made to violate Benshoof's right to petition for redress by scaring all of Benshoof's friends away from serving court documents under CR 4. Williams refused to act on Benshoof's complaints and A.R.W. was taken back to Owen's.

## I. SPD Incident #2022-177198

On July 7, 2022, A.R.W. did not appear on the court scheduled Zoom video call with Benshoof, as required by Owen's signature in family court case no. 21-5-00680-6.

At approximately 6:00pm on July 9, 2022, Benshoof called 911 to report Owen for custodial interference, perjury, and barratry, and Benshoof asked SPD dispatch to send officers to do a wellness check on A.R.W. SPD Officers Hayden Hogg #8472 ("Hogg") and Jeremy Weiss #8793 ("Weiss") eventually phoned Benshoof around 12:30am.

Benshoof met Hogg and Weiss and attempted to give the officers evidence of Owen's violations of the allegedly valid family court restraining order, evidence of Owen's perjury and barratry in obtaining the restraining order, and evidence supporting Benshoof's contention that the restraining order could not, and did not, apply to Benshoof and A.R.W. because Benshoof was not subject to the jurisdiction of family court in case no. 21-5-00680-6.

Hogg and Weiss refused to take Benshoof's documents, refused to even look at them, and refused to let Benshoof explain the documents' contents.

## J. Benshoof Withdraws from Case No. 21-5-00680-6

PETITION FOR WRIT OF PROHIBITION
RE: SEATTLE MUNICIPAL CASE NO. 669329
Page 12 of 27

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

**0104**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

On August 9, 2022, Benshoof filed his Notice of Withdrawal to Judge Keenan in family court case no. 21-5-00680-6.  (Dkt. #13-1 at 433-39)

Benshoof sent Keenan, via certified USPS mail, legal notice on August 8, 2021, demanding that Keenan cease and desist.  (Dkt. #13-1 at 441-42)

Thereafter, Benshoof emailed Keenan's bailiff, Beatrice Marquez ("Marquez"), to verify that the restraining order had been amended to reflect that Benshoof was no longer a party subject to its terms, or that it had been dismissed.  Marquez refused to confirm or deny and instructed Benshoof to contact the King County clerk.

Benshoof contacted the clerk and was told that Benshoof would have to come to the King County Courthouse *in person, with a facemask on*, to obtain confirmation.

When Benshoof informed the clerk that wearing a facemask to come to the clerk's office wasn't an option, as King County Sheriff deputies had repeatedly forced Benshoof from the courthouse for not wearing a face mask, the clerk instructed Benshoof to obtain confirmation regarding the restraining order by contacting the SPD.

Benshoof contacted SPD and spoke with Dispatcher #13 to determine whether SPD possessed record, whether digital or paper, of a valid restraining order preventing Benshoof from contacting A.W.R.  Dispatch #13 stated that SPD would not confirm any such record; Dispatch #13 told Benshoof to seek verification at the King County Superior Court clerk's office.

On, or around, August 14, 2022, Benshoof called 911 to report that, if there was a valid family court restraining order in effect, Owen had again violated it by withholding A.R.W. from communicating with Benshoof via Zoom video both Saturday and Sunday.  Benshoof reported to 911 that Owen was perpetrating custodial interference by withholding A.R.W. from Benshoof

PETITION FOR WRIT OF PROHIBITION
RE: SEATTLE MUNICIPAL CASE NO. 669329
Page 13 of 27

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

0105

Neither the King County Superior Court, nor the SPD, would confirm the existence of a valid order restraining Benshoof from A.R.W.  911 refused to dispatch officers to take Benshoof's complaint.

## K.  SPD Incident #2022-215424

On August 15, 2022, Benshoof drove down NE 130th Street where Owen's home is located to verify that A.R.W. was okay.  Owen was in her driveway and threatened to call the police, stating that A.R.W. was at summer camp; Benshoof left without incident.

When Benshoof arrived at his home, SPD Officers Jared Alden #8892 ("Alden"), Jordan Wallace #8382 ("Wallace") and Nicholas Hughes #8408 ("Hughes") followed Benshoof's up his driveway, passing two clearly marked "NO TRESPASSING" signs.

When Benshoof tried to enter his home, Wallace accosted Benshoof outside the front door by firmly grabbing his arm.

Benshoof stated that his right of association with A.R.W., protected by the First Amendment, had been violated since September 3, 2021, by and through the perjury of Owen and the abuse of discretion by King County Superior Court judges due to their discriminatory animus towards Benshoof's religious beliefs.

Benshoof stated that Owen, Lerman, SPD officers, City prosecutors, City judges, King County sheriff deputies, and King County Superior Court commissioners and judges denied Benshoof equal protection under the law in violation of the Fourteenth Amendment by knowingly and willfully ignoring Owen's felony perjury used initiate case no. 21-5-00680-6.

Benshoof tried to give Alden, Hughes and Wallace verified documents evincing Benshoof's claims.  Alden, Hughes and Wallace refused to take any documents from Benshoof.

PETITION FOR WRIT OF PROHIBITION
RE: SEATTLE MUNICIPAL CASE NO. 669329
Page 14 of 27

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

Alden and Wallace arrested Benshoof and took him to King County Jail where Benshoof had a spit sock forced over is head in violation of the Americans with Disabilities Act, RCW 49.60.030, and SPD Policy Manual 11.010.21; 11.010.22.  (Dkt. 13-3 at 148-155)

**L.   Complaint to SPD**

On August 16, 2022, after getting out of King County Jail, Benshoof called 911, and spoke to SPD Officers Ashlie Bissell #8559 ("Bissell") and Katrina O'Dell #6600 ("O'Dell").

Benshoof made complaint of Owen's violation of RCW 9A.40.070 (2) Custodial Interference in the second degree by Owen's violation of the either the family court temporary parenting plan, or unlawfully imprisoning Benshoof and A.R.W. from each other.

Bissell and Odell asserted to Benshoof that it was a "civil matter".

Benshoof informed Bissell and O'Dell that they were either: 1) ignorant of the law, or 2) knowingly and willfully lying to Benshoof, thereby violating the equal protection clause of the Fourteenth Amendment, in order to deny Benshoof his right to equal protection under the law.

To ensure that Bissell and O'Dell were not ignorantly well-intentioned, Benshoof then read aloud the Washington Legislative intent for Custodial Interference from the state website:

*Intent—2015 c 38: "It is the intent of the legislature to address the Washington supreme court's decision in State v. Veliz, 176 Wn.2d 849 (2013). The court held that a parent cannot be charged with custodial interference under RCW 9A.40.060(2) if a parent withholds the other parent from having access to the child in violation of residential provisions of a domestic violence protection order. The legislature intends that the provisions of RCW 9A.40.060(2) and 9A.40.070(2) be applicable in cases in which a court has entered any order making residential provisions for a child including, but not limited to, domestic violence protection orders that include such residential provisions."*

Bissell and O'Dell refused to acknowledge that the state statute and legislative intent, coupled with the facts enumerated by Benshoof, evinced Owen's felony law violation of either RCW 9A.40.070 or RCW 9A.40.040.  Bissell and O'Dell took no action to uphold the law.

PETITION FOR WRIT OF PROHIBITION
RE: SEATTLE MUNICIPAL CASE NO. 669329
Page 15 of 27

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

SPD Policy Manual 15.110 Investigating Custodial Interference requires SPD officers to act upon evidence of custodial interference. (Dkt. 13-4 at 158-161)

## M. A.R.W. Considers Suicide

On, or around, August 16, 2022, A.R.W. informed Owen, as recounted in the Guardian ad Litem report, "On August 16, [A.R.W.] disclosed contemplating jumping off a balcony at summer camp to kill himself." (Dkt. #13-3 at 334)

Owen and Lerman isolating A.R.W. from Benshoof has been mentally and emotionally traumatizing to A.R.W. It has also mentally and emotionally traumatized Benshoof.

## N. Trial In Absentia

On October 21, 2022, Keenan heard Owen's motions for final orders.

Benshoof was not afforded the opportunity to appear in person, and Keenan continued to deny Benshoof entrance to the courtroom in violation of Wash. Const. art I §§ 10, 22, nor was Benshoof allowed to testify before a jury of his peers pursuant to Wash. Const. art I § 21.

Keenan declared Benshoof to be a "credible threat" to A.R.W. and Owen, ordering that Benshoof would be subject to immediate arrest if Benshoof had any contact with A.R.W. before October 21, 2027, *five months after the 18th birthday of A.R.W.*

Keenan ordered that Benshoof would be subject to immediate arrest if he effected legal service of process upon Owen by any other means than ABC Legal Services or Pegasus Process Service. (Dkt. #13-2 at 4)

Keenan was not delegated the authority to effectively re-write Wash. CR 4 and Fed.R.Civ.P. 4, by which Benshoof effectuating legal service of process could be criminalized.

## O. No Proof of Service

On November 15, 2022, SPD Detective Ryan Ellis ("Ellis") allegedly filed Proof of

PETITION FOR WRIT OF PROHIBITION
RE: SEATTLE MUNICIPAL CASE NO. 669329
Page 16 of 27

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

0108

Service in family court case no. 21-5-00680-6, which stated on page one, "***Important!*** *Do not use electronic service if your case involves the surrender of firearms…. After 2 unsuccessful attempts at personal service, you can ask the court to authorize electronic service.*" (Dkt. #13-3 at 163)

Page two stated that Ellis served an Order to Surrender and Prohibit Weapons. Ellis did not ask for, nor receive, authorization from Judge Keenan to serve Benshoof via electronic service. Ellis did not obtain confirmation that Benshoof had been served final orders in case no. 21-5-00680-6.

Ellis did not date his signature under penalty of perjury on page three. The ***date*** line stated, "Seattle." GR 30(d)(3) requires compliance with GR 13(a)(2). CR 4, GR 13(a)(2) and RCW 5.50.050 require that proof of service sworn under penalty of perjury ***be dated.*** (*Id.* at 165) As such, Ellis did not legally serve Benshoof the final orders in case no. 21-5-00680-6.

**P. SMC Case No. 669329**

On November 15, 2022, Benshoof discovered in his mailbox that he was charged with violating RCW 7.105.450 related to the events of August 15, 2022, SPD Incident #2022-215424.

The City letter stated that a hearing was scheduled for November 16, 2022, at 230pm.

Benshoof wrote a motion to dismiss for lack of personal jurisdiction, citing the requirement of RCW 35.20.270(1) which states, "All criminal and civil process issuing out of courts created under this title shall be directed to the chief of police of the City served by the court and/or to the sheriff of the county in which the court is held and/or to the warrant officers and be by them executed according to law in any county of this state." (Dkt. #13-3 at 139-144).

Benshoof then wrote a motion for change of venue on the grounds that SMC had repeatedly denied his right to appear in person without a facemask. (Dkt. #13-3 at 146-149)

PETITION FOR WRIT OF PROHIBITION
RE: SEATTLE MUNICIPAL CASE NO. 669329
Page 17 of 27

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

0109

On the morning of November 16, 2022, Benshoof attempted to e-file his two motions via the SMC web portal. Despite SMC repeatedly asserting for the prior five months that Benshoof had been granted access to e-filing, the web portal would not permit Benshoof to e-file his motions.

Benshoof then emailed the two .pdf documents to the City Attorney Ann Davison, Senior Assistant Attorney Christopher Karr, Assistant Attorney Kevin Kilpatrick, and to courtroom 1102. (Dkt. #13-3 at 152-3)

At 230pm on November 16, 2022, Benshoof appeared by Special Appearance via WebEx in courtroom 1102 before Judge Gregory under threat, duress, and coercion.

Benshoof cited RCW 35.20.270(1) as a threshold issue and asked Gregory if the prosecutor had provided evidence the City effectuated legal service of process to grant jurisdiction to the court. Gregory did not affirm that the City had done so; rather, Gregory simply asserted, "The court has jurisdiction."

Unsatisfied with what appeared to Benshoof to be tautological evasion by Gregory, Benshoof asked City prosecutor Cooper directly if she had provided the court with evidence of the City's compliance with RCW 35.20.270(1); Cooper remained silent on the issue.

Gregory again asserted, "The court has jurisdiction," despite Benshoof's repeated objections that the court had no evidence of personal service granting the court jurisdiction to proceed.

Cooper did not provide the court evidence that a valid protection order existed, nor that the City had effected personal service pursuant to RCW 35.20.270(1).

Cooper did not provide the court with evidence that Seattle Municipal Court was authorized by law to have jurisdiction over a domestic violence protection order pursuant to RCW

PETITION FOR WRIT OF PROHIBITION
RE: SEATTLE MUNICIPAL CASE NO. 669329
Page 18 of 27

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

**0110**

7.105.050(1) which states, "The superior and district courts have jurisdiction over domestic violence protection order proceedings."

Gregory entered a plea of not guilty on Benshoof's behalf and set bail in the amount of $10,000. Benshoof stated that Gregory's conduct constituted a violation of RCW 9A.56.030 theft in the first degree. RCW 9A.56.020(1)(a) states in part, "Theft means to wrongly obtain or **exert unauthorized control** over the property or services of another or the value thereof, with intent to deprive him or her of such property."

Gregory increased the bail amount to $25,000 and stated that he was issuing a restraining order preventing Benshoof from contacting Owen or being within 1000 feet of her or her home.

Benshoof asked why, if there was **actually** a valid restraining order from family court would Gregory issue a verbatim duplicate? Gregory did not answer. Gregory set the bail amount to $10,000, and a bail hearing was set for November 22, 2022, despite Benshoof's objections.

Benshoof appeared by Special Appearance via WebEx on November 22, 2022, before Judge Adam Eisenberg ("Eisenberg"). Benshoof again cited RCW 35.20.270(1) and demanded evidence that the City had effectuated legal service of process to grant the court jurisdiction.

Eisenberg did not affirm that personal service of Benshoof was evidenced before the court; rather, Eisenberg asserted that Gregory had already addressed this issue on November 16, 2022, and that Benshoof had been arraigned. Benshoof rejected Eisenberg's claim and reminded Eisenberg that the Gregory court was absent jurisdiction to arraign Benshoof.

Eisenberg declared that Benshoof had failed to comply with Gregory's $10,000 bail order and thereupon issued bench warrant #990434611, in the amount of $10,000.

On February 10, 2023, Public Defender Faiz Pirani appeared on Benshoof's behalf. Upon Mr. Pirani's motion, warrant #990434611 was quashed.

PETITION FOR WRIT OF PROHIBITION
RE: SEATTLE MUNICIPAL CASE NO. 669329
Page 19 of 27

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

0111

On June 21, 2023, Benshoof appeared by WebEx before Judge Jerome Roache ("Roache"). City prosecutor Katrina Outland ("Outland") motion to issue a $100,000 warrant for Benshoof's arrest. Benshoof made an oral motion for Roache to issue a $1,000,000 warrant commensurate with the absurdity of such a kangaroo court. Roache issued warrant #990437083 in the amount of $50,000 for Benshoof's "failure to appear." The worksheet stated that Benshoof appeared. (Dkt. #13-3 at 161)

## Q. A.R.W. Runs Away Again

On January 23, 2023, A.R.W. tried to run away from Owen's a second time to come home to his father. Owen discovered her son's plans and told A.R.W. that he could either go to school or walk to Benshoof's house while Owen called her attorney to resolve the family dispute.

A.R.W. walked home to Benshoof's. Upon arrival at Benshoof's home, A.R.W. burst into tears and said, "I think mom disowned me."

While A.R.W. was walking home to his father's house, Owen called 911 to have Benshoof arrested. Owen also contacted Lerman. Lerman then immediately posted to her public Twitter account, "I really thought everything was going to be okay. But it isn't. It won't be as long as he's alive and free," referring to Benshoof; that is, Lerman predicated her need to have Benshoof dead or incarcerated as a condition of her own sense of well-being, without any regard for the devastating impact that would have on A.R.W. Lerman deleted the tweet shortly thereafter. (Dkt. 13-1 at 199)

## R. SMC Case No. 671384

On March 13, 2023, CITY prosecutor Katrina Outland ("Outland") filed eighty-nine criminal charges against Benshoof alleging that Benshoof violated a restraining order by

PETITION FOR WRIT OF PROHIBITION
RE: SEATTLE MUNICIPAL CASE NO. 669329
Page 20 of 27

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

effectuating legal service of process at Owen's house pursuant to CR4 and FrCP 4 and texting with A.R.W. over the Discord app.

Outland was given Discord text messages between Benshoof and A.R.W.  As such, Outland knows that A.R.W. expressed his desire to be freed from his imprisonment at Owen's. When Benshoof texted his son in December 2022 to ask if Benshoof should just give Owen his home and all of his money as effective ransom payment so that his son could come back to his father, instead of Benshoof seeking remedy through the courts, A.R.W. responded, "No way.  Hit [Owen and Lerman] with everything you got.  Keep hitting them."

Outland also read text messages from A.R.W. in which A.R.W. stated his belief that Owen and Lerman are "crazy."

On, or around, March 13, 2023, Judge Faye Chess determined there was probable cause to issue $250,000 warrant #990435958 for Benshoof's immediate arrest.

The City did not provide Judge Chess that Seattle Municipal Court had jurisdiction to proceed pursuant to RCW 7.105.050(1)(a)(d).

Benshoof emailed Outland, offering to turn himself in on the $250,000 warrant within twenty-four (24) hours if Outland would simply provide Benshoof evidence that the Seattle Municipal Codes she had charged Benshoof with were laws in accordance with Wash. Const. art II §§ 18; 22; 32; art III § 12 which the CITY had the legislative power to enact, enforce, and prosecute Benshoof under Wash. Const. art XI § 11.  (Dkt. #13-3 at 155)

Benshoof also offered to have the best polygraph analyst in Washington state hired to determine whether Owen or Benshoof was telling the truth.  Benshoof proposed a payment of $50,000 to Outland and Owen if anything Benshoof had alleged was false.  (*Id.* at 155)

Outland refused both offers.  In poker that is called "calling their bluff."

PETITION FOR WRIT OF PROHIBITION
RE: SEATTLE MUNICIPAL CASE NO. 669329
Page 21 of 27

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

0113

## S. Benshoof's Petition for Habeas Corpus

Benshoof filed a Petition for Writ of Habeas Corpus in U.S. District Court for the Western District of Washington in May 2023, Case No. 2:23-cv-00751-RAJ.

In May 2023, Benshoof attempted to contact Owen's attorney of record, Blair Russ, in order to have Mr. Russ accept service. Mr. Russ refused to respond, despite Benshoof informing Mr. Russ that, if Owen and Lerman were *actually* traumatized by legal service to their home, Mr. Russ should be more than willing to accept service.

However, this is illustrative of the blatantly sophomoric game that Owen and her co-conspirators have been playing; that is, feign victimhood to create the thin veneer of plausibility for more retaliation against Benshoof. It's well known in clinical psychology. Narcissists exhibit a predictable pattern of behavior: Deny, Accuse, Reverse Victim and Abuser.

Benshoof f eventually had an associate effect service of process to Owen. Predictably, Owen called 911. Predictably, SPD Officer Gabriel Ladd, who is a named defendant in Benshoof's federal lawsuit, filed SPD Incident Report #2023-151429.

The dismissal has been appealed to the 9th Circuit, Case No. 23-35418.

## T. SMC Case No. 675317

City prosecutor William Cotter is the latest accessory to the predicate acts of the City's RICO Enterprise targeting Benshoof. On September 28, 2023, Mr. Cotter filed charges against Benshoof, based upon Ofc. Ladd's SPD Incident Report #2023-151429, to initiate Seattle Municipal Court Case No. 675317.

This latest malicious prosecution, in violation of RCW 9.62.010, constituted additional predicate acts in violation of 18 U.S. Code §§ 4; 241; 242; 1512; 1513(e); and 1962(c)(d).

PETITION FOR WRIT OF PROHIBITION
RE: SEATTLE MUNICIPAL CASE NO. 669329
Page 22 of 27

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

On October 11, 2023, Benshoof emailed a Motion to Dismiss SMC Case No. 675317 to the prosecutors and Court.

On October 11, 2023, City prosecutor Soheila Sarrafan ("Sarrafan") appeared on behalf of the City in courtroom 902 before the Honorable Pooja Vadddadi.   Sarrafan informed the Court of the cases the City had noted for dismissal; Case No. 675317 was not among those noted.

Benshoof then made a Special Appearance by WebEx before Judge Vaddadi.   Sarrafan abruptly moved to dismiss Case No. 675317 prior to arraignment such that Benshoof's Motion to Dismiss Case No. 675317 was not heard.   SMC Case No. 675317 was thereupon dismissed without prejudice on October 11, 2023, under the pretense that the City needed to do "further investigation."

### III.    ISSUES WARRANTING WRIT

**1. Does the evidence show that Jessica R. Owen committed felony perjury to barratrously initiate King County family court case no. 21-5-00680-8 which was allowed, enabled, and facilitated by Nathan L. Cliber and David S. Keenan?**

Yes.  The evidence is irrefutable, yet it has been ignored.

**2. Is the City Attorney's Office in possession of irrefutable evidence that Owen, Cliber, and Keenan knowingly and willfully conspired to assert jurisdiction over Benshoof and A.R.W. in violation of the First Amendment and the Fourteenth Amendment?**

Yes.  City attorneys are complicit in these ongoing violations enabling Owen's crimes.

**3. Was the City absent evidence that SPD Det. Ryan Ellis legally effected service of process upon Benshoof?**

Yes.  The City was absent such evidence, and City police officers, prosecutors, and judges have refused to acknowledge Benshoof's evidence.

**4. Did the City comply with the statutory requirement of RCW 35.20.270(1) to effect service of process upon Benshoof to obtain *in personam* jurisdiction?**

No.  The City has a custom and widespread practice of violating RCW 35.20.270(1).

PETITION FOR WRIT OF PROHIBITION
RE: SEATTLE MUNICIPAL CASE NO. 669329
Page 23 of 27

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

**0115**

**5. Does the City have jurisdiction to hear allegations of domestic violence related to King County family court case no. 21-5-00680-6 pursuant to RCW 7.105.050(1)(a)?**

No. Only King County Superior Court is authorized by statute.

## IV.    ARGUMENT FOR GRANTING WRIT

To be valid and enforceable, a prosecution must be supported by three elements: (1) the court must have jurisdiction of the parties; (2) the court must have jurisdiction of the subject matter; and (3) the court must have the authority to render the particular judgment.

## A.  NO PERSONAL JURISDICTION

Even if the final orders granted by Keenan on October 21, 2022, were valid, which they are not, the City failed to comply with RCW 35.20.270(1) to effect service of process, as Benshoof argued prior to arraignment when he made a special appearance before Judge Willie Gregory on November 16, 2022.

Judge Gregory asserted that "the Court has jurisdiction" absent any substantiating evidence from the City that the prosecution had complied with RCW 35.20.270(1).

As the Court did not have evidence of personal jurisdiction to proceed, the Court's order of $10,000 bail and the subsequent $50,000 warrant were *void ab initio, ultra vires,* and in violation of Wash. Const. art. I § 14.

Pursuant to RCW 9A.56.020(1)(a) "Theft" means to wrongfully obtain or exert unauthorized control over property or services of another or the value thereof, with intent to deprive him or her of such property or services;"

Attempting to exert unauthorized control over Benshoof's money in excess of $5,000 violated RCW 9A.56.030(1)(a) first degree theft, a class B felony.

## B.  NO SUBJECT MATTER JURISDICTION

PETITION FOR WRIT OF PROHIBITION
RE: SEATTLE MUNICIPAL CASE NO. 669329
Page 24 of 27

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

Under the Fruit of the Poisonous Tree Doctrine, City officials cannot profess the legitimacy of evidence that is the direct result of illegal conduct on the part of City and King County officials including, but not limited to, David Keenan, Katrina Outland, and Willie Gregory.

The City cannot assert jurisdiction to prosecute or adjudicate case no. 669329 in the face of irrefutable evidence that King County family court case no. 21-5-00680-8 was *void ab initio* due to the perjury of Jessica Owen and absence of subject matter jurisdiction precluding the family court's authority to proceed.

## C.  MUNICIPAL COURT ABSENT AUTHORITY

As a court of limited jurisdiction, Seattle Municipal Court lacks the authority to adjudicate the alleged domestic violence charge against Benshoof even if there were valid allegations premised upon a valid family court adjudication.

RCW 7.105.050(1)(a) stipulates that an alleged violation of a domestic violence protection order in King County District Court must be transferred to Superior Court when "a superior court has exercised or is exercising jurisdiction over a proceeding involving the parties."

As such, all acts by City prosecutors and judges related to SMC Case No. 669329 were *ultra vires* and thus violative of Benshoof's rights.

## V.    REQUESTED RELIEF

*WHEREFORE*, upon his verified statements herein Benshoof moves this honorable Court to grant a Writ of Prohibition arresting Seattle Municipal Court Case No. 669329 for the municipal court's absence of jurisdiction to proceed in accordance with RCW 7.16.300. Pursuant to RCW 7.16.310, this petition seeks an alternative writ commanding the City, immediately after the receipt of the writ, to desist from prosecuting and adjudicating Case No.

PETITION FOR WRIT OF PROHIBITION
RE: SEATTLE MUNICIPAL CASE NO. 669329
Page 25 of 27

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

669329 and any related action to threaten, detain, arrest, or imprison, Benshoof under Warrant #990437083, or to show cause before the court on or before November 10, 2023, why the City has not so desisted.

## VERIFICATION

I, Affiant Kurt Benshoof, do hereby declare that the foregoing is true and correct to the best of my knowledge under penalty of perjury in the State of Washington, and am competent to testify to the matters stated herein. Executed this 31st day of October in the year 2023, in the City of Seattle, in the county of King, in the state of Washington.

By: _____s/ Kurt Benshoof_____
Kurt Benshoof *Pro Se*

1716 N 128th Street
Seattle, WA 98133
Phone: (206) 460-4202
Email: kurtbenshoof@gmail.com

PETITION FOR WRIT OF PROHIBITION
RE: SEATTLE MUNICIPAL CASE NO. 669329
Page 26 of 27

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

# CERTIFICATION OF NOTICE

I, Kurt Benshoof, hereby certify that on October 31, 2023, I did effect service upon counsels for Defendants by e-filing in King County Superior Court Case No. 22-2-15958-8 the Petition for Writ of Prohibition Re: Case No. 669329 and this Summary of Petition for Writ of Prohibition Re: Seattle Municipal Court Case No. 669329 by emailing to the email addresses listed below:

**Attorney For Defendant Jessica Owen:**
Blair M. Russ, WSBA #40374
1000 Second Avenue
Suite 3660
Seattle, WA 98104
Email: bmr@tbr-law.com

**Attorney for Defendant Nathan Cliber:**
Kyle Rekofke, WSBA #49327
701 Fifth Avenue
Suite 2100
Seattle, WA 98104
Email: krekofke@grsm.com

**Attorney for Defendants Magalie Lerman and Owen Hermsen:**
Moshe Y. Admon, WSBA #50325
300 Lenora Street
Suite 4008
Seattle, WA 98121
Email: jeff@admonlaw.com

DATED:  October 31, 2023

Signed:  ____s/ Kurt Benshoof____

Kurt Benshoof, *Pro Se*
1716 N 128th ST
Seattle, WA 98133
(206) 460-4202

PETITION FOR WRIT OF PROHIBITION
RE: SEATTLE MUNICIPAL CASE NO. 669329
Page 27 of 27

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

**0119**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

FILED

Hon. Marshall Ferguson

2023 OCT 31 02:01 PM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 22-2-15958-8 SEA

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

KURT A. BENSHOOF *Pro Se,*

Petitioner,

v.

CITY OF SEATTLE,

Respondent.

CASE NO.

PETITIONER'S SUMMARY RE:
PETITION FOR WRIT OF PROHIBITION

WRM - 2

Re: Seattle Municipal Case No. 671384

## I.    INTRODUCTION

COMES NOW Petitioner Kurt Benshoof ("Benshoof"), under threat, duress, and coercion

of this Court's Order Restricting Abusive Litigation of Kurt Benshoof ("Order"), summarizing

Benshoof's Petition for Writ of Prohibition Re: Seattle Municipal Case No. 671384 ("Writ").

## II.    SUMMARY

The Order was granted in violation of RCW 26.51.030, which required that Benshoof

had "been found by the court to have committed domestic violence." No court has found

Benshoof to be a domestic violence perpetrator.

The Order was granted in violation of RCW 26.51.030, ignoring the statutory

requirement that, "the court shall set a hearing to determine whether the litigation meets the

SUMMARY OF PETITION FOR WRIT OF PROHIBITION
RE: SEATTLE MUNICIPAL COURT CASE NO. 671384
Page 1 of 4

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

definition of abusive litigation." This Court did not seek to determine if Benshoof had been found to be a domestic violence perpetrator by any court.

The Order was granted in violation of RCW 26.51.040(1), which states, "the court shall hear all relevant testimony." This Court did not hold a hearing to hear all relevant testimony to consider whether Benshoof had been found to be a domestic violence perpetrator by any court.

As such, the Order was *void ab initio.* This has been detailed in Benshoof's federal complaint in U.S. District Court for the Western District of Washington, Case No. 2:23-cv-01392-JNW.

The Writ evinces that Judge David Keenan ("Keenan") did not have jurisdiction to adjudicate family court Case No. 21-5-00680-6, and that Keenan knowingly allowed, enabled, and facilitated the felony perjury of Jessica R. Owen, mother of Benshoof's son. Keenan thereby issued *void ab initio* orders, causing Benshoof and his son irreparable, ongoing harm.

The Writ evinces that the City initiated Case No. 671384 without personal jurisdiction over Benshoof, as the City knowingly and willfully failed to comply with RCW 35.20.270(1), and ignored Benshoof repeatedly raising this threshold, dispositive issue at the commencement of the case.

The Writ evinces that the City knows SPD Det. Ryan Ellis neither legally served Benshoof Keenan's final orders, nor filed proper service in Case No. 21-5-00680-6.

The Writ evinces that the City initiated Case No. 671384 in violation of RCW 7.105.050(1)(a)(d) which states that only a Superior Court is so authorized to adjudicate the domestic violence allegations against Benshoof.

SUMMARY OF PETITION FOR WRIT OF PROHIBITION
RE: SEATTLE MUNICIPAL COURT CASE NO. 671384
Page 2 of 4

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

**0121**

Upon the foregoing, the Writ evinces that the City has violated RCW 9.62.010 to perpetrate the malicious prosecution of Benshoof, in violation of 18 U.S. Code §§ 241; 242; 1512; 1513; 1962.

Benshoof seeks the Writ to prohibit the City from further violations of state and federal law, and to prevent the City from continuing to aid and abet state and federal law violations by Jessica R. Owen.

**VERIFICATION**

I, Affiant Kurt Benshoof, do hereby declare that the foregoing is true and correct to the best of my knowledge under penalty of perjury in the State of Washington, and am competent to testify to the matters stated herein.  Executed this 31st day of October in the year 2023, in the City of Seattle, in the county of King, in the state of Washington.

By:    s/ Kurt Benshoof
Kurt Benshoof *Pro Se*

1716 N 128th Street
Seattle, WA 98133
Phone: (206) 460-4202
Email: kurtbenshoof@gmail.com

SUMMARY OF PETITION FOR WRIT OF PROHIBITION
RE: SEATTLE MUNICIPAL COURT CASE NO. 671384
Page 3 of 4

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

## CERTIFICATION OF SERVICE

I, Kurt Benshoof, hereby certify that on October 31, 2023, I did effect service upon

counsels for Defendants by e-filing in King County Superior Court Case No. 22-2-15958-8 the

Petition for Writ of Prohibition Re: Case No. 671384 and this Summary of Petition for Writ of

Prohibition Re: Seattle Municipal Court Case No. 671384 by emailing to the email addresses

listed below:

**Attorney For Defendant Jessica Owen:**          **Attorney for Defendant Nathan Cliber:**
Blair M. Russ, WSBA #40374                        Kyle Rekofke, WSBA #49327
1000 Second Avenue                                701 Fifth Avenue
Suite 3660                                        Suite 2100
Seattle, WA 98104                                 Seattle, WA 98104
Email: bmr@tbr-law.com                            Email: krekofke@grsm.com


**Attorney for Defendants Magalie Lerman and Owen Hermsen:**
Moshe Y. Admon, WSBA #50325
300 Lenora Street
Suite 4008
Seattle, WA 98121
Email: jeff@admonlaw.com


DATED:  October 31, 2023

Signed: _____s/ Kurt Benshoof_____

Kurt Benshoof, *Pro Se*
1716 N 128th ST
Seattle, WA 98133
(206) 460-4202

SUMMARY OF PETITION FOR WRIT OF PROHIBITION
RE: SEATTLE MUNICIPAL COURT CASE NO. 671384
Page 4 of 4

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

Hon. Marshall Ferguson

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| KURT A. BENSHOOF *Pro Se,* | CASE NO. |
| Petitioner, | PETITION FOR WRIT OF PROHIBITION |
| v. | WRM - 2 |
| CITY OF SEATTLE, | Re: Seattle Municipal Case No. 671384 |
| Respondent. | |

## I.    INTRODUCTION

COMES NOW Petitioner Kurt Benshoof ("Benshoof") requesting that this Court issue a writ of prohibition to arrest Seattle Municipal Court Case No. 671384 as such proceedings are absent the jurisdiction of Seattle Municipal Court pursuant to RCW 7.105.050(1)(a)(d).

The City Attorney's Office and municipal judges have been notified by Benshoof that only a Superior Court is authorized under the aforementioned statute to adjudicate the City's allegation against Benshoof of domestic violence in Case No. 671384.  Despite its absence of jurisdiction to proceed, Seattle Municipal Court has refused to dismiss the case or hear any motion by Benshoof.  As such, Benshoof has no plain, speedy and adequate remedy in the ordinary course of law other than to petition for Writ of Prohibition.

PETITION FOR WRIT OF PROHIBITION
RE: SEATTLE MUNICIPAL CASE NO. 671384
Page 1 of 27

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

## II.    VERIFIED STATEMENTS OF FACT

Benshoof avers the following statements and is prepared to testify under penalty of perjury to these facts in a court of law authorized and convened under the Washington Constitution. Benshoof incorporates by reference as if fully restated herein the following documents filed in U.S. District Court for the Western District of Washington Case No. 2:23-01392-JNW: Complaint (Dkt. #9) Exhibits (Dkt. #13-1; #13-2; and #13-3)

All *emphasis* that of Benshoof.

### A.  Family Background

Benshoof and defendant Jessica Owen ("Owen") discovered she was pregnant with Benshoof's child, A.R.W., in August 2008.  Thereupon, Benshoof and Owen entered into a verbal parenting contract at common law ("Covenant") after notice, consideration, and accord; thereby exercising their unlimited right to contract as private individuals.

Under their Covenant as father and mother, they would henceforth have full, equal and inalienable rights as parents of their son-to-be, sharing all significant decisions regarding A.R.W.'s care and upbringing, such as education, family scheduling, medical and dental care, and nutrition.

Though Benshoof and Owen never married, they raised A.R.W. amicably for the following twelve years, prioritizing their son's well-being and sharing equally in all significant decisions regarding their son's education, medical care, dental care, and living arrangements.

### B.  Owen Seizes Custody of A.R.W.

Owen explicitly threatened to steal Benshoof's car, seize custody of A.R.W., deny Benshoof's equity ownership in his home and evict Benshoof on August 16, 2021, via text message. (Dkt. #13-1 at 44)  When Benshoof refused to be intimidated by her threats, Owen filed

PETITION FOR WRIT OF PROHIBITION
RE: SEATTLE MUNICIPAL CASE NO. 671384
Page 2 of 27

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

for a TRO in King County Superior Court Case No. 21-2-11149-8 on August 23, 2021 under the false pretense that Benshoof was preventing Owen from seeing A.R.W.

In Owen's TRO petition, she truthfully stated under penalty of perjury that A.R.W. was related to Benshoof as his child, that Benshoof and A.R.W. had lived together, and that Benshoof had raised A.R.W. his entire life.

King County Superior Court issued a full denial order of Owen's TRO petition on September 3, 2021. Benshoof thought Owen would thereafter stop her lies and threats. Benshoof was mistaken.

Thereafter, Owen acted to keep Benshoof from seeing or communicating with A.R.W., including telling Jane Addams Middle School that Owen was the "sole legal guardian" of A.R.W. Owen was not the "sole legal guardian" of A.R.W.

Upon Owen's false statements that she was the "sole legal guardian" of A.R.W., school staff refused Benshoof access to A.R.W. and denied Benshoof access to his son's school records. RCW 28A.605.020 assures parent access to their child's classroom. RCW 28A.605.030 protects the right of a parent to review all education records of their child.

On September 24, 2021, Benshoof called 911 to do a wellness check on A.R.W. SPD Officers Kieran Barton #8747 ("Barton") and Adam Beaty #7453 ("Beatty") responded. Beaty refused to take a sworn affidavit from Benshoof evidencing that Benshoof had full rights as the father of A.R.W. Beaty stated, "I'm not taking anything from you. We know you're trying to set us up." (Dkt. #13-1 at 35-38)

Barton and Beatty asserted that Owen was the "sole legal guardian" A.R.W. RCW 26.33.0209(11) defines a "legal guardian" as someone *other than a parent.* Barton and Beatty

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

did not possess evidence that a court order had determined Owen to be "sole legal guardian" of A.R.W.

Owen hired family attorney Nathan Cliber ("Cliber") in September 2021, filing a Petition to Decide Parentage ("parentage action"). Case no. 21-5-00680-6 was a ruse so that Owen could seek an emergency restraining order against Benshoof to deny Benshoof's rights as A.R.W.'s father.

Benshoof did not consent to family court adjudicating his family affairs. Defendant David Keenan ("Keenan") was assigned as presiding judge.

## C. Impairing the Obligation of Contracts

No evidence of Owen's and Benshoof's contractual privity with Washington state, by dissolution of marriage or domestic partnership, declaration of invalidity, or legal separation exists.

Cliber, and Owen knowingly and willfully acted in concert to impair the obligations of Owen to uphold the Covenant. By and through Cliber, Owen made materially false statements to initiate Family Court case no. 21-5-00680-6 by filing a barratrous, perjurous parentage action.

In August 2021 case no. 21-2-11149-8 and September 2021 case no. 21-5-00680-6 Owen took two mutually exclusive positions foundational to her parentage action.

First, Owen declared on August 23, 2021, in TRO case no. 21-2-11149-8 that: (1) Owen and Benshoof are the parents of A.R.W. (Dkt. #13-1 at 72); (2) A.R.W. is related to Benshoof as his child (*Id.* at 73); and (3) Benshoof had raised A.R.W. his entire life. (Dkt. #13-1 at 62)

Four weeks later in case no. 21-5-00680-6, Owen and Cliber filed a parentage action, the basis of which was that Benshoof: (1) was not the biological father of A.R.W.; (2) had never lived with A.R.W., and (3) had never held out A.R.W. as his son.

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

Owen's September 20, 2021, statement (Dkt. #13-1 at 254) that Benshoof was not the presumed father of A.R.W. was an inconsistent material statement under oath which directly contradicted Owen's prior sworn statement weeks earlier in case no. 21-2-11149-8, averring On August 21, 2021, that Owen and Benshoof are "parents of a child in common." (Dkt. #13-1 at 77) which affirmed that: (1) Owen and Benshoof are the parents of A.R.W.; (2) A.R.W. is related to Benshoof as his child; and (3) Benshoof had raised A.R.W. his entire life.

As such, Owen took two mutually exclusive positions between case no. 21-2-11149-8 and case no. 21-5-00680-6, in violation of RCW 9A.72.020; 9A.72.050.

First, Owen declared in August 2021 that Benshoof: (1) was the biological father of A.R.W., (2) had lived with A.R.W. his entire life; and (3) had acted as his father his entire life. Then in Owen's parentage action, the basis of which was that Benshoof was not the presumed father of A.R.W., Owen averred under penalty of perjury, "To my knowledge, no one is already presumed to be a parent" (Dkt. #13-1 at 254)

Owen also declared that Benshoof had at all times refused to agree to legal recognition of A.R.W. (*Id.*) However, Benshoof had texted Owen on September 18, 2021, stating Benshoof's belief that Owen had refused to add Benshoof's name to A.R.W.'s birth certificate as part of Owen's fraud to assert that Owen was the "sole legal guardian" of their son. (Dkt. #13-4 at 392)

On September 19, 2021, Benshoof texted Owen, "Are you still refusing to amend [A.R.W.'s] birth certificate to show my legal name (as I have previously and repeatedly requested)?" (*Id.*)

Pursuant to RCW 26.26A.115, there is presumption of fatherhood once the father has: (1) lived with the child for the first four years of the child's life, and (2) openly held out the child as his own, even if the child was not biologically his own.

PETITION FOR WRIT OF PROHIBITION
RE: SEATTLE MUNICIPAL CASE NO. 671384
Page 5 of 27

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

In defiance of all logic or pretense of plausible honesty, **two days after** Owen signed the petition to decide parentage on September 20, 2021, asserting that Benshoof was not the presumed father of their son, Owen then signed her Declaration of Jessica R. Owen on September 22, 2021, stating, "**Kurt having acted as [A.R.W.'s] father for [A.R.W.'s] entire life…**" (Dkt. #13-1 at 229)

Owen also stated, "We moved in together in July of 2008. [A.R.W.] was born nine months later…" (Dkt. #13-1 at 230) "[Benshoof] always insisted on being treated as A.R.W.'s father and that A.R.W. was his." (*Id.*) "…September of 2020 that **I finally moved out of our shared residence…**" (Dkt. #13-1 at 231)

Family law attorney Cliber then reviewed Owen's statements, affixed his signature to the petition to decide parentage and motion for immediate restraining order, and filed them.

At no time did Owen ever claim that there was another possible biological father of A.R.W. Owen and Benshoof have known since August 2008 that A.R.W. was conceived during sexual intercourse involving only Owen and Benshoof on July 18, 2008, which also happens to be Benshoof's birthday.

**D. TRO Hearing**

On October 25, 2021, Commissioner Jason Holloway ("Holloway") heard Owen's petition for temporary restraining order. Owen sought to seize sole custody of A.R.W. and prevent Benshoof from associating with his son.

Holloway consulted the Judicial Information System but did not disclose this fact to Benshoof in accordance with the requirement of RCW 2.28.210(2).

Cliber asserted that Benshoof had engaged in "domestic violence" against Owen and A.R.W.

PETITION FOR WRIT OF PROHIBITION
RE: SEATTLE MUNICIPAL CASE NO. 671384
Page 6 of 27

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

Benshoof has never engaged in domestic violence against anyone, nor threatened to do so. On the contrary, Owen has assaulted Benshoof during their parenting relationship on multiple occasions, including striking Benshoof in the face repeatedly and causing inches long, bloody scratches on Benshoof's leg.

Benshoof has never spanked his son, nor yelled at A.R.W., nor any child.  Neither has Benshoof ever threatened to hit any woman, nor done so.

Holloway stated on the record, "I'm not requiring that [Benshoof] do a domestic violence assessment.  That would have been something that would have been ordered if he had been found to be a domestic violence perpetrator, **which he is not.**"

Holloway thereby implicitly acknowledged that Owen's claims of being stalked by Benshoof, and her claims that Benshoof inflicted fear upon her and A.R.W., were false.  (*See* RCW 26.50.010(3)).

Holloway asserted that Benshoof was a "credible threat" to A.R.W. due to Holloways discriminatory animus toward Benshoof's minority religious beliefs.

A State must, if it is to invoke the statutes after injunctive relief has been sought, assume the burden of obtaining a permissible narrow construction in a noncriminal proceeding.

After Benshoof discovered that family court does not allow trial by jury, he filed a motion objecting to the violations of due process.  (Dkt. #13-1 at 278-284)

Keenan denied Benshoof's motion absent findings of fact or conclusions of law.

**E.  No Justiciable Issue**

For a court to obtain jurisdiction, there must be a justiciable issue before said court.

Owen, Cliber, and assigned Judge David Keenan ("Keenan"), knew or should have known that the evidence in the record of King County Superior Court as of the filing of the parentage

PETITION FOR WRIT OF PROHIBITION
RE: SEATTLE MUNICIPAL CASE NO. 671384
Page 7 of 27

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

0130

1    action on September 28, 2021, evidenced that family court could not overcome Benshoof's legal

2    presumption as the father of A.R.W., pursuant to RCW 26.26A.115; RCW 26.26A.435(2).

3            Family court had an independent obligation to determine whether subject-matter

4    jurisdiction exists, even when no party challenged it.   Benshoof did challenge it, repeatedly.

5            Cliber, Holloway, and Keenan ("Keenan") knew that the doctrine of judicial estoppel and

6    RCW 9A.72.020 prohibited Owen from making inconsistent material statements under oath; that

7    is, Owen was prohibited from committing felony perjury.

8            Cliber, Holloway, and Keenan knew that the consent of Benshoof was never given to

9    adjudicate case no. 21-5-00680-6 without a trial by jury.

10           Cliber, Holloway, and Keenan knew that through the Fourteenth Amendment the Seventh

11   Amendment protects the right to trial by jury in all civil litigation and that Wash. Const. art I §14

12   prohibits a public official from denying a civil litigant the right to trial by jury absent the consent

13   of both parties.  Benshoof has never consented to family court adjudication.

## F.  No Contractual Privity with State

14           On, or around, March 10, 2023, Benshoof discovered that family court plans and orders

15   apply to fathers and mothers in contractual privity with the state via marriage, domestic

16   partnership, declaration of invalidity, or legal separation; none of which Benshoof and Owen

17   were party to.  (*See* RCW 26.09.004(3)(4)).

18           Between September 2021 and March 2022, Cliber failed to disclose that RCW

19   26.09.004(3)(4) did not apply to Benshoof.

20           Washington BAR Rules of Professional Conduct ("RPC") 3.3(A)(3) states that a lawyer

21   shall not knowingly, "fail to disclose to the tribunal legal authority in the controlling jurisdiction

PETITION FOR WRIT OF PROHIBITION
RE: SEATTLE MUNICIPAL CASE NO. 671384
Page 8 of 27

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

**0131**

known to the lawyer to be directly adverse to the position of the client and not disclosed by the opposing party."

In March 2022, Benshoof emailed Cliber upon his discovery of RCW 26.09.004. Benshoof informed Cliber that Cliber had engaged in deceit to invoke family court jurisdiction. Cliber responded by stating that he had obtained the jurisdiction of family court by other means.

Upon Benshoof's request that Cliber disclose what this other means was, Cliber refused to disclose by what controlling authority he had done so.

Benshoof emailed Keenan's bailiff, Beatrice Marquez ("Marquez"), informing Marquez that family court did not have jurisdiction to impose plans and orders involving Benshoof and A.R.W. because Benshoof and Owen were not in contractual privity with the state via marriage, domestic partnership, declaration of invalidity, or legal separation. Marquez instructed Benshoof to bring the issue up before Keenan.

On April 1, 2022, Keenan heard Benshoof's motions to dismiss the case for lack of subject matter jurisdiction and the interests of A.R.W. (Dkt. #13-1 at 339-354; Dkt. #13-1 at 356-368)

Cliber could not, and did not, establish subject matter jurisdiction to maintain an action in case no. 21-5-00680-6. Cliber asserted *res judicata* and claimed that Benshoof's motions quoting U.S. Supreme Court cases were "unintelligible" and "frivolous." Keenan dismissed Benshoof's motions without the requested findings of fact and conclusions of law.

## G. SPD Incident 2022-154753

On, or around, May 1, 2022, Benshoof called 911 to report custodial interference to SPD. Benshoof made complaint to SPD Officer Ashlie T. Bissell ("Bissell"). Benshoof had already made numerous such complaints to SPD, beginning in August 2021, including sworn affidavits as a victim witness.

PETITION FOR WRIT OF PROHIBITION
RE: SEATTLE MUNICIPAL CASE NO. 671384
Page 9 of 27

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

0132

Benshoof reported that Owen and Lerman had unlawfully taken Benshoof's 2011 Toyota FJ Cruiser and, with the aid of their friend, Owen Hermsen, had attempted felony extortion of Benshoof seeking $19,000 for the return of Benshoof's stolen FJ Cruiser.  (Dkt. #13-1 at 299-334)

Benshoof reported that Owen and Lerman had engaged in felony custodial interference in order to deny Benshoof's right of association with A.R.W.  Benshoof reported that Owen and Lerman had violated RCW 9A.36.070 by coercing A.R.W. to be subjected to a Pfizer medical experiment by threatening that A.R.W. would be restrained from going to school or seeing his friends.

Bissell told Benshoof that she could not file a complaint against Owen and Lerman for coercing A.R.W. to be subjected to Pfizer medical experimentation because all SPD officers had been required to get a "covid vaccine."

Benshoof reported that Owen and Lerman, both prostitutes, had brought their prostitution clients into their home while A.R.W. was present in the house.  Benshoof also provided the SPD video of A.R.W. confirming this fact.

On June 29, 2022, Benshoof emailed the General Investigation Unit and Bissell, providing them with verified documents evidencing felony and gross misdemeanor crimes perpetrated by Owen, Lerman, and family law attorney Nathan L. Cliber. (Dkt. #13-1 at 379-410; Dkt. #13-3 at 294-320)  The City took no action against Cliber, Owen, or Lerman.

**H.  SPD Incident 2022-173684**

On July 6, 2022, A.R.W. ran away from Owen's to come home to Benshoof.

SPD Officers were dispatched to Benshoof's home: Elias Williams #8767 ("Williams"), Charles Foreman #7569 ("Foreman"), and Eric Whitehead #7493 ("Whitehead).

PETITION FOR WRIT OF PROHIBITION
RE: SEATTLE MUNICIPAL CASE NO. 671384
Page 10 of 27

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

Benshoof informed Williams that Owen and Lerman were welcoming their prostitution clients into their home when A.R.W. was present.

Benshoof informed Williams that Owen and Lerman had made false and misleading statements to police to take A.R.W. and Benshoof's FJ Cruiser, that Owen had committed perjury and custodial interference to fraudulently initiate family court case no. 21-5-00680-6, and that A.R.W. was being subjected to mental and emotional abuse by Owen and Lerman.

Benshoof informed Williams that Owen and Lerman, with the approval of family court, had coerced A.R.W., to engage in conduct that A.R.W. had the right to abstain from, by threatening him with confinement or restraint; that is, a Pfizer gene therapy that had not even completed adequate animal trials, let alone phase 3 of a clinical trial to ensure safety and efficacy.

Benshoof informed Williams that Owen and Lerman had accomplished by deception the unlawful imprisonment of both A.R.W. and Benshoof by restricting their movement without consent and without valid legal authority in a manner which interfered substantially with their liberty.

Benshoof informed Williams that Lerman had threatened a process server at Owen's home with an aluminum baseball bat, while screaming lies which disparaged Benshoof in A.R.W.'s presence.

Benshoof informed Williams that Lerman's threats and intimidation of a process server constituted a felony law violation, and that such threats were made to violate Benshoof's right to petition for redress by scaring all of Benshoof's friends away from serving court documents under CR 4. Williams refused to act on Benshoof's complaints and A.R.W. was taken back to Owen's.

I.   **SPD Incident #2022-177198**

On July 7, 2022, A.R.W. did not appear on the court scheduled Zoom video call with Benshoof, as required by Owen's signature in family court case no. 21-5-00680-6.

PETITION FOR WRIT OF PROHIBITION
RE: SEATTLE MUNICIPAL CASE NO. 671384
Page 11 of 27

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

**0134**

At approximately 6:00pm on July 9, 2022, Benshoof called 911 to report Owen for custodial interference, perjury, and barratry, and Benshoof asked SPD dispatch to send officers to do a wellness check on A.R.W. SPD Officers Hayden Hogg #8472 ("Hogg") and Jeremy Weiss #8793 ("Weiss") eventually phoned Benshoof around 12:30am.

Benshoof met Hogg and Weiss and attempted to give the officers evidence of Owen's violations of the allegedly valid family court restraining order, evidence of Owen's perjury and barratry in obtaining the restraining order, and evidence supporting Benshoof's contention that the restraining order could not, and did not, apply to Benshoof and A.R.W. because Benshoof was not subject to the jurisdiction of family court in case no. 21-5-00680-6.

Hogg and Weiss refused to take Benshoof's documents, refused to even look at them, and refused to let Benshoof explain the documents' contents.

**J.    Benshoof Withdraws from Case No. 21-5-00680-6**

On August 9, 2022, Benshoof filed his Notice of Withdrawal to Judge Keenan in family court case no. 21-5-00680-6. (Dkt. #13-1 at 433-39)

Benshoof sent Keenan, via certified USPS mail, legal notice on August 8, 2021, demanding that Keenan cease and desist. (Dkt. #13-1 at 441-42)

Thereafter, Benshoof emailed Keenan's bailiff, Beatrice Marquez ("Marquez"), to verify that the restraining order had been amended to reflect that Benshoof was no longer a party subject to its terms, or that it had been dismissed. Marquez refused to confirm or deny and instructed Benshoof to contact the King County clerk.

Benshoof contacted the clerk and was told that Benshoof would have to come to the King County Courthouse ***in person, with a facemask on***, to obtain confirmation.

PETITION FOR WRIT OF PROHIBITION
RE: SEATTLE MUNICIPAL CASE NO. 671384
Page 12 of 27

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

0135

When Benshoof informed the clerk that wearing a facemask to come to the clerk's office wasn't an option, as King County Sheriff deputies had repeatedly forced Benshoof from the courthouse for not wearing a face mask, the clerk instructed Benshoof to obtain confirmation regarding the restraining order by contacting the SPD.

Benshoof contacted SPD and spoke with Dispatcher #13 to determine whether SPD possessed record, whether digital or paper, of a valid restraining order preventing Benshoof from contacting A.W.R.  Dispatch #13 stated that SPD would not confirm any such record; Dispatch #13 told Benshoof to seek verification at the King County Superior Court clerk's office.

On, or around, August 14, 2022, Benshoof called 911 to report that, if there was a valid family court restraining order in effect, Owen had again violated it by withholding A.R.W. from communicating with Benshoof via Zoom video both Saturday and Sunday.  Benshoof reported to 911 that Owen was perpetrating custodial interference by withholding A.R.W. from Benshoof

Neither the King County Superior Court, nor the SPD, would confirm the existence of a valid order restraining Benshoof from A.R.W.  911 refused to dispatch officers to take Benshoof's complaint.

## K.  SPD Incident #2022-215424

On August 15, 2022, Benshoof drove down NE 130th Street where Owen's home is located to verify that A.R.W. was okay.  Owen was in her driveway and threatened to call the police, stating that A.R.W. was at summer camp; Benshoof left without incident.

When Benshoof arrived at his home, SPD Officers Jared Alden #8892 ("Alden"), Jordan Wallace #8382 ("Wallace") and Nicholas Hughes #8408 ("Hughes") followed Benshoof's up his driveway, passing two clearly marked "NO TRESPASSING" signs.

PETITION FOR WRIT OF PROHIBITION
RE: SEATTLE MUNICIPAL CASE NO. 671384
Page 13 of 27

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

0136

When Benshoof tried to enter his home, Wallace accosted Benshoof outside the front door by firmly grabbing his arm.

Benshoof stated that his right of association with A.R.W., protected by the First Amendment, had been violated since September 3, 2021, by and through the perjury of Owen and the abuse of discretion by King County Superior Court judges due to their discriminatory animus towards Benshoof's religious beliefs.

Benshoof stated that Owen, Lerman, SPD officers, City prosecutors, City judges, King County sheriff deputies, and King County Superior Court commissioners and judges denied Benshoof equal protection under the law in violation of the Fourteenth Amendment by knowingly and willfully ignoring Owen's felony perjury used initiate case no. 21-5-00680-6.

Benshoof tried to give Alden, Hughes and Wallace verified documents evincing Benshoof's claims. Alden, Hughes and Wallace refused to take any documents from Benshoof.

Alden and Wallace arrested Benshoof and took him to King County Jail where Benshoof had a spit sock forced over is head in violation of the Americans with Disabilities Act, RCW 49.60.030, and SPD Policy Manual 11.010.21; 11.010.22. (Dkt. 13-3 at 148-155)

**L.  Complaint to SPD**

On August 16, 2022, after getting out of King County Jail, Benshoof called 911, and spoke to SPD Officers Ashlie Bissell #8559 ("Bissell") and Katrina O'Dell #6600 ("O'Dell").

Benshoof made complaint of Owen's violation of RCW 9A.40.070 (2) Custodial Interference in the second degree by Owen's violation of the either the family court temporary parenting plan, or unlawfully imprisoning Benshoof and A.R.W. from each other.

Bissell and Odell asserted to Benshoof that it was a "civil matter".

PETITION FOR WRIT OF PROHIBITION
RE: SEATTLE MUNICIPAL CASE NO. 671384
Page 14 of 27

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

0137

Benshoof informed Bissell and O'Dell that they were either: 1) ignorant of the law, or 2) knowingly and willfully lying to Benshoof, thereby violating the equal protection clause of the Fourteenth Amendment, in order to deny Benshoof his right to equal protection under the law.

To ensure that Bissell and O'Dell were not ignorantly well-intentioned, Benshoof then read aloud the Washington Legislative intent for Custodial Interference from the state website:

> *Intent—2015 c 38: "It is the intent of the legislature to address the Washington supreme court's decision in State v. Veliz, 176 Wn.2d 849 (2013). The court held that a parent cannot be charged with custodial interference under RCW 9A.40.060(2) if a parent withholds the other parent from having access to the child in violation of residential provisions of a domestic violence protection order. The legislature intends that the provisions of RCW 9A.40.060(2) and 9A.40.070(2) be applicable in cases in which a court has entered any order making residential provisions for a child including, but not limited to, domestic violence protection orders that include such residential provisions."*

Bissell and O'Dell refused to acknowledge that the state statute and legislative intent, coupled with the facts enumerated by Benshoof, evinced Owen's felony law violation of either RCW 9A.40.070 or RCW 9A.40.040.  Bissell and O'Dell took no action to uphold the law.

SPD Policy Manual 15.110 Investigating Custodial Interference requires SPD officers to act upon evidence of custodial interference.  (Dkt. 13-4 at 158-161).

## M.  A.R.W. Considers Suicide

On, or around, August 16, 2022, A.R.W. informed Owen, as recounted in the Guardian ad Litem report, "On August 16, [A.R.W.] disclosed contemplating jumping off a balcony at summer camp to kill himself."  (Dkt. #13-3 at 334)

Owen and Lerman isolating A.R.W. from Benshoof has been mentally and emotionally traumatizing to A.R.W.  It has also mentally and emotionally traumatized Benshoof.

## N.  Trial In Absentia

On October 21, 2022, Keenan heard Owen's motions for final orders.

PETITION FOR WRIT OF PROHIBITION
RE: SEATTLE MUNICIPAL CASE NO. 671384
Page 15 of 27

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

Benshoof was not afforded the opportunity to appear in person, and Keenan continued to deny Benshoof entrance to the courtroom in violation of Wash. Const. art I §§ 10, 22, nor was Benshoof allowed to testify before a jury of his peers pursuant to Wash. Const. art I § 21.

Keenan declared Benshoof to be a "credible threat" to A.R.W. and Owen, ordering that Benshoof would be subject to immediate arrest if Benshoof had any contact with A.R.W. before October 21, 2027, ***five months after the 18th birthday of A.R.W.***

Keenan ordered that Benshoof would be subject to immediate arrest if he effected legal service of process upon Owen by any other means than ABC Legal Services or Pegasus Process Service. (Dkt. #13-2 at 4)

Keenan was not delegated the authority to effectively re-write Wash. CR 4 and Fed.R.Civ.P. 4, by which Benshoof effectuating legal service of process could be criminalized.

**O.  No Proof of Service**

On November 15, 2022, SPD Detective Ryan Ellis ("Ellis") allegedly filed Proof of Service in family court case no. 21-5-00680-6, which stated on page one, "***Important!*** *Do not use electronic service if your case involves the surrender of firearms…. After 2 unsuccessful attempts at personal service, you can ask the court to authorize electronic service."* (Dkt. #13-3 at 163)

Page two stated that Ellis served an Order to Surrender and Prohibit Weapons. Ellis did not ask for, nor receive, authorization from Judge Keenan to serve Benshoof via electronic service. Ellis did not obtain confirmation that Benshoof had been served final orders in case no. 21-5-00680-6.

Ellis did not date his signature under penalty of perjury on page three. The ***date*** line stated, "Seattle." GR 30(d)(3) requires compliance with GR 13(a)(2). CR 4, GR 13(a)(2) and

PETITION FOR WRIT OF PROHIBITION
RE: SEATTLE MUNICIPAL CASE NO. 671384
Page 16 of 27

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

**0139**

RCW 5.50.050 require that proof of service sworn under penalty of perjury **be dated.** (*Id.* at 165)  As such, Ellis did not legally serve Benshoof the final orders in case no. 21-5-00680-6.

**P.  SMC Case No. 669329**

On November 15, 2022, Benshoof discovered in his mailbox that he was charged with violating RCW 7.105.450 related to the events of August 15, 2022, SPD Incident #2022-215424.

The City letter stated that a hearing was scheduled for November 16, 2022, at 230pm.

Benshoof wrote a motion to dismiss for lack of personal jurisdiction, citing the requirement of RCW 35.20.270(1) which states, "All criminal and civil process issuing out of courts created under this title shall be directed to the chief of police of the City served by the court and/or to the sheriff of the county in which the court is held and/or the warrant officers and be by them executed according to law in any county of this state." (Dkt. #13-3 at 139-144).

Benshoof then wrote a motion for change of venue on the grounds that SMC had repeatedly denied his right to appear in person without a facemask. (Dkt. #13-3 at 146-149)

On the morning of November 16, 2022, Benshoof attempted to e-file his two motions via the SMC web portal.  Despite SMC repeatedly asserting for the prior five months that Benshoof had been granted access to e-filing, the web portal would not permit Benshoof to e-file his motions.

Benshoof then emailed the two .pdf documents to the City Attorney Ann Davison, Senior Assistant Attorney Christopher Karr, Assistant Attorney Kevin Kilpatrick, and to courtroom 1102. (Dkt. #13-3 at 152-3)

At 230pm on November 16, 2022, Benshoof appeared by Special Appearance via WebEx in courtroom 1102 before Judge Gregory under threat, duress, and coercion.

PETITION FOR WRIT OF PROHIBITION
RE: SEATTLE MUNICIPAL CASE NO. 671384
Page 17 of 27

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

**0140**

Benshoof cited RCW 35.20.270(1) as a threshold issue and asked Gregory if the prosecutor had provided evidence the City effectuated legal service of process to grant jurisdiction to the court. Gregory did not affirm that the City had done so; rather, Gregory simply asserted, "The court has jurisdiction."

Unsatisfied with what appeared to Benshoof to be tautological evasion by Gregory, Benshoof asked City prosecutor Cooper directly if she had provided the court with evidence of the City's compliance with RCW 35.20.270(1); Cooper remained silent on the issue.

Gregory again asserted, "The court has jurisdiction," despite Benshoof's repeated objections that the court had no evidence of personal service granting the court jurisdiction to proceed.

Cooper did not provide the court evidence that a valid protection order existed, nor that the City had effected personal service pursuant to RCW 35.20.270(1).

Cooper did not provide the court with evidence that Seattle Municipal Court was authorized by law to have jurisdiction over a domestic violence protection order pursuant to RCW 7.105.050(1) which states, "The superior and district courts have jurisdiction over domestic violence protection order proceedings."

Gregory entered a plea of not guilty on Benshoof's behalf and set bail in the amount of $10,000. Benshoof stated that Gregory's conduct constituted a violation of RCW 9A.56.030 theft in the first degree. RCW 9A.56.020(1)(a) states in part, "Theft means to wrongly obtain or **exert unauthorized control** over the property or services of another or the value thereof, with intent to deprive him or her of such property."

Gregory increased the bail amount to $25,000 and stated that he was issuing a restraining order preventing Benshoof from contacting Owen or being within 1000 feet of her or her home.

PETITION FOR WRIT OF PROHIBITION
RE: SEATTLE MUNICIPAL CASE NO. 671384
Page 18 of 27

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

0141

Benshoof asked why, if there was ***actually*** a valid restraining order from family court would Gregory issue a verbatim duplicate? Gregory did not answer. Gregory set the bail amount to $10,000, and a bail hearing was set for November 22, 2022, despite Benshoof's objections.

Benshoof appeared by Special Appearance via WebEx on November 22, 2022, before Judge Adam Eisenberg ("Eisenberg"). Benshoof again cited RCW 35.20.270(1) and demanded evidence that the City had effectuated legal service of process to grant the court jurisdiction.

Eisenberg did not affirm that personal service of Benshoof was evidenced before the court; rather, Eisenberg asserted that Gregory had already addressed this issue on November 16, 2022, and that Benshoof had been arraigned. Benshoof rejected Eisenberg's claim and reminded Eisenberg that the Gregory court was absent jurisdiction to arraign Benshoof.

Eisenberg declared that Benshoof had failed to comply with Gregory's $10,000 bail order and thereupon issued bench warrant #990434611, in the amount of $10,000.

On February 10, 2023, Public Defender Faiz Pirani appeared on Benshoof's behalf. Upon Mr. Pirani's motion, warrant #990434611 was quashed.

On June 21, 2023, Benshoof appeared by WebEx before Judge Jerome Roache ("Roache"). City prosecutor Katrina Outland ("Outland") motion to issue a $100,000 warrant for Benshoof's arrest. Benshoof made an oral motion for Roache to issue a $1,000,000 warrant commensurate with the absurdity of such a kangaroo court. Roache issued warrant #990434611 in the amount of $50,000 for Benshoof's "failure to appear." The worksheet stated that Benshoof appeared. (Dkt. #13-3 at 161)

## Q. A.R.W. Runs Away Again

On January 23, 2023, A.R.W. tried to run away from Owen's a second time to come home to his father. Owen discovered her son's plans and told A.R.W. that he could either go to school

PETITION FOR WRIT OF PROHIBITION
RE: SEATTLE MUNICIPAL CASE NO. 671384
Page 19 of 27

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

0142

or walk to Benshoof's house while Owen called her attorney to resolve the family dispute.

A.R.W. walked home to Benshoof's.  Upon arrival at Benshoof's home, A.R.W. burst into tears and said, "I think mom disowned me."

While A.R.W. was walking home to his father's house, Owen called 911 to have Benshoof arrested.  Owen also contacted Lerman.  Lerman then immediately posted to her public Twitter account, "I really thought everything was going to be okay.  But it isn't.  It won't be as long as he's alive and free," referring to Benshoof; that is, Lerman predicated her need to have Benshoof dead or incarcerated as a condition of her own sense of well-being, without any regard for the devastating impact that would have on A.R.W.  Lerman deleted the tweet shortly thereafter.  (Dkt. 13-1 at 199)

**R.  SMC Case No. 671384**

On March 13, 2023, CITY prosecutor Katrina Outland ("Outland") filed eighty-nine criminal charges against Benshoof alleging that Benshoof violated a restraining order by effectuating legal service of process at Owen's house pursuant to CR4 and FrCP 4 and texting with A.R.W. over the Discord app.

Outland was given Discord text messages between Benshoof and A.R.W.  As such, Outland knows that A.R.W. expressed his desire to be freed from his imprisonment at Owen's. When Benshoof texted his son in December 2022 to ask if Benshoof should just give Owen his home and all of his money as effective ransom payment so that his son could come back to his father, instead of Benshoof seeking remedy through the courts, A.R.W. responded, "No way.  Hit [Owen and Lerman] with everything you got.  Keep hitting them."

Outland also read text messages from A.R.W. in which A.R.W. stated his belief that Owen and Lerman are "crazy."

PETITION FOR WRIT OF PROHIBITION
RE: SEATTLE MUNICIPAL CASE NO. 671384
Page 20 of 27

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

**0143**

Judge Faye Chess determined there was probable cause to issue $250,000 warrant #990435958 for Benshoof's immediate arrest.

Benshoof emailed Outland, offering to turn himself in on the $250,000 warrant within twenty-four (24) hours if Outland would simply provide Benshoof evidence that the Seattle Municipal Codes she had charged Benshoof with were laws in accordance with Wash. Const. art II §§ 18; 22; 32; art III § 12 which the CITY had the legislative power to enact, enforce, and prosecute Benshoof under Wash. Const. art XI § 11. (Dkt. #13-3 at 155)

Benshoof also offered to have the best polygraph analyst in Washington state hired to determine whether Owen or Benshoof was telling the truth. Benshoof proposed a payment of $50,000 to Outland and Owen if anything Benshoof had alleged was false. (*Id.* at 155)

Outland refused both offers. In poker that is called "calling their bluff."

## S. Benshoof's Petition for Habeas Corpus

Benshoof filed a Petition for Writ of Habeas Corpus in U.S. District Court for the Western District of Washington in May 2023, Case No. 2:23-cv-00751-RAJ.

In May 2023, Benshoof attempted to contact Owen's attorney of record, Blair Russ, in order to have Mr. Russ accept service. Mr. Russ refused to respond, despite Benshoof informing Mr. Russ that, if Owen and Lerman were ***actually*** traumatized by legal service to their home, Mr. Russ should be more than willing to accept service.

However, this is illustrative of the blatantly sophomoric game that Owen and her co-conspirators have been playing; that is, feign victimhood to create the thin veneer of plausibility for more retaliation against Benshoof. It's well known in clinical psychology. Narcissists exhibit a predictable pattern of behavior: Deny, Accuse, Reverse Victim and Abuser.

PETITION FOR WRIT OF PROHIBITION
RE: SEATTLE MUNICIPAL CASE NO. 671384
Page 21 of 27

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

0144

Benshoof f eventually had an associate effect service of process to Owen.  Predictably, Owen called 911.  Predictably, SPD Officer Gabriel Ladd, who is a named defendant in Benshoof's federal lawsuit, filed SPD Incident Report #2023-151429.

**T.   SMC Case No. 675317**

City prosecutor William Cotter is the latest accessory to the predicate acts of the City's RICO Enterprise targeting Benshoof.  On September 28, 2023, Mr. Cotter filed charges against Benshoof, based upon Ofc. Ladd's SPD Incident Report #2023-151429, to initiate Seattle Municipal Court Case No. 675317.

This latest malicious prosecution, in violation of RCW 9.62.010, constituted additional predicate acts in violation of 18 U.S. Code §§ 4; 241; 242; 1512; 1513(e); and 1962(c)(d).

On October 11, 2023, Benshoof emailed a Motion to Dismiss SMC Case No. 675317 to the prosecutors and Court.

On October 11, 2023, City prosecutor Soheila Sarrafan ("Sarrafan") appeared on behalf of the City in courtroom 902 before the Honorable Pooja Vadddadi.  Sarrafan informed the Court of the cases the City had noted for dismissal; Case No. 675317 was not among those noted.

Benshoof then made a Special Appearance by WebEx before Judge Vaddadi.  Sarrafan abruptly moved to dismiss Case No. 675317 prior to arraignment such that Benshoof's Motion to Dismiss Case No. 675317 was not heard.  SMC Case No. 675317 was thereupon dismissed without prejudice on October 11, 2023, under the pretense that the City needed to do "further investigation."

### III.    ISSUES WARRANTING WRIT

**1.   Does the evidence show that Jessica R. Owen committed felony perjury to barratrously initiate King County family court case no. 21-5-00680-8 which was allowed, enabled, and facilitated by Nathan L. Cliber and David S. Keenan?**

PETITION FOR WRIT OF PROHIBITION
RE: SEATTLE MUNICIPAL CASE NO. 671384
Page 22 of 27

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

**0145**

Yes.  The evidence is irrefutable.

**2.  Is the City Attorney's Office in possession of irrefutable evidence that Owen, Cliber, and Keenan knowingly and willfully conspired to assert jurisdiction over Benshoof and A.R.W. in violation of the First Amendment and the Fourteenth Amendment?**

Yes.  City attorneys are complicit in these ongoing violations enabling Owen to continue the abuse of A.R.W., as the City has had in its possession irrefutable evidence of Owen's perjury for many months.

**3.  Was the City absent evidence that SPD Det. Ryan Ellis legally effected service of process upon Benshoof?**

Yes.  The City was absent such evidence, and City police officers, prosecutors, and judges have refused to acknowledge Benshoof's evidence.

**4.  Did the City comply with the statutory requirement of RCW 35.20.270(1) to effect service of process upon Benshoof to obtain *in personam* jurisdiction?**

No.  The City has a custom and widespread practice of violating RCW 35.20.270(1).

**5.  Does the City have jurisdiction to hear allegations of domestic violence related to King County family court case no. 21-5-00680-6 pursuant to RCW 7.105.050(1)(a)?**

No.  Only King County Superior Court is authorized by statute.

### IV.    ARGUMENT FOR GRANTING WRIT

To be valid and enforceable, a prosecution must be supported by three elements: (1) the court must have jurisdiction of the parties; (2) the court must have jurisdiction of the subject matter; and (3) the court must have the authority to render the particular judgment.

### A.  NO FAMILY COURT SERVICE OF PROCESS

SPD Det. Ryan Ellis did not properly effect legal service of process upon Benshoof. Neither did Det. Ellis file properly completed certificate of service with King County Superior Court.

PETITION FOR WRIT OF PROHIBITION
RE: SEATTLE MUNICIPAL CASE NO. 671384
Page 23 of 27

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

The refusal by City officials to acknowledge Benshoof's evidence of Ellis's failures would lead a reasonable person to conclude that City officials are willfully and knowingly ignoring factual evidence showing the City had no jurisdiction to bring complaint.

## B.   NO PERSONAL JURISDICTION

Even if the final orders granted by Keenan on October 21, 2022, were valid, which they are not, the City failed to comply with RCW 35.20.270(1) to effect service of process, as Benshoof argued prior to arraignment when he made a special appearance before Judge Willie Gregory on November 16, 2022.

On, or around, March 14, 2023, Judge Chess asserted that "the Court has jurisdiction" absent any substantiating evidence from the City that the prosecution had complied with RCW 35.20.270(1).

The City did not provide Judge Chess that Seattle Municipal Court had jurisdiction to proceed pursuant to RCW 7.105.050(1)(a)(d).

As the Court did not have evidence of personal jurisdiction to proceed, the Court's $250,000 warrant was *void ab initio, ultra vires,* and in violation of Wash. Const. art. I § 14.

Pursuant to RCW 9A.56.020(1)(a) "Theft" means to wrongfully obtain or exert unauthorized control over property or services of another or the value thereof, with intent to deprive him or her of such property or services;"

Attempting to exert unauthorized control over Benshoof's money in excess of $5,000 violated RCW 9A.56.030(1)(a) first degree theft, a class B felony.

## C.   NO SUBJECT MATTER JURISDICTION

Under the Fruit of the Poisonous Tree Doctrine, City officials cannot profess the legitimacy of evidence that is the direct result of illegal conduct on the part of City and King

PETITION FOR WRIT OF PROHIBITION
RE: SEATTLE MUNICIPAL CASE NO. 671384
Page 24 of 27

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

**0147**

County officials including, but not limited to, David Keenan, Katrina Outland, and Willie Gregory.

The City cannot assert jurisdiction to prosecute or adjudicate case no. 671384 in the face of irrefutable evidence that King County family court case no. 21-5-00680-8 was *void ab initio* due to the perjury of Jessica Owen and absence of subject matter jurisdiction precluding the family court's authority to proceed.

## D. MUNICIPAL COURT ABSENT AUTHORITY

As a court of limited jurisdiction, Seattle Municipal Court lacks the authority to adjudicate the alleged domestic violence charge against Benshoof even if there were valid allegations premised upon a valid family court adjudication.

RCW 7.105.050(1)(a) stipulates that an alleged violation of a domestic violence protection order in King County District Court must be transferred to Superior Court when "a superior court has exercised or is exercising jurisdiction over a proceeding involving the parties."

As such, all acts by City prosecutors and judges related to SMC Case No. 671384 were *ultra vires* and thus violative of Benshoof's rights.

## V.    REQUESTED RELIEF

*WHEREFORE*, upon his verified statements herein Benshoof moves this honorable Court to grant a Writ of Prohibition arresting Seattle Municipal Court Case No. 671384 for the municipal court's absence of jurisdiction to proceed in accordance with RCW 7.16.300. Pursuant to RCW 7.16.310, this petition seeks an alternative writ commanding the City, immediately after the receipt of the writ, to desist from prosecuting and adjudicating Case No. 671384 and any related action to threaten, detain, arrest, or imprison Benshoof under Warrant

PETITION FOR WRIT OF PROHIBITION
RE: SEATTLE MUNICIPAL CASE NO. 671384
Page 25 of 27

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

#990435958, or to show cause before the court on or before November 7, 2023, why the City has not so desisted.

## VERIFICATION

I, Affiant Kurt Benshoof, do hereby declare that the foregoing is true and correct to the best of my knowledge under penalty of perjury in the State of Washington, and am competent to testify to the matters stated herein.  Executed this 31st day of October in the year 2023, in the City of Seattle, in the county of King, in the state of Washington.


By: _____s/ Kurt Benshoof_____
Kurt Benshoof *Pro Se*

1716 N 128th Street
Seattle, WA 98133
Phone: (206) 460-4202
Email: kurtbenshoof@gmail.com

PETITION FOR WRIT OF PROHIBITION
RE: SEATTLE MUNICIPAL CASE NO. 671384
Page 26 of 27

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

**CERTIFICATION OF SERVICE**

I, Kurt Benshoof, hereby certify that on October 31, 2023, I did effect service upon

counsels for Defendants by e-filing in King County Superior Court Case No. 22-2-15958-8 the

Petition for Writ of Prohibition Re: Case No. 671384 and this Summary of Petition for Writ of

Prohibition Re: Seattle Municipal Court Case No. 671384 by emailing to the email addresses

listed below:

**Attorney For Defendant Jessica Owen:**    **Attorney for Defendant Nathan Cliber:**
Blair M. Russ, WSBA #40374    Kyle Rekofke, WSBA #49327
1000 Second Avenue    701 Fifth Avenue
Suite 3660    Suite 2100
Seattle, WA 98104    Seattle, WA 98104
Email: bmr@tbr-law.com    Email: krekofke@grsm.com


**Attorney for Defendants Magalie Lerman and Owen Hermsen:**
Moshe Y. Admon, WSBA #50325
300 Lenora Street
Suite 4008
Seattle, WA 98121
Email: jeff@admonlaw.com

DATED:  October 31, 2023

Signed:  _____s/ Kurt Benshoof_____

Kurt Benshoof, *Pro Se*
1716 N 128th ST
Seattle, WA 98133
(206) 460-4202

PETITION FOR WRIT OF PROHIBITION
RE: SEATTLE MUNICIPAL CASE NO. 671384
Page 27 of 27

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

**0150**

Hon. Michael R. Scott

1

2

3

4

5

6

7    IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR KING COUNTY

8

9    KURT A. BENSHOOF, *Pro Se,*

10                          Plaintiff,         No.    23-2-23752-8 SEA

11            vs.                              DECLARATION OF KATRINA OUTLAND

12   CITY OF SEATTLE,

13                          Defendant.

14

15   I, KATRINA OUTLAND, being familiar with the facts set forth herein based on my personal

16   knowledge, and being competent to testify, hereby declare under penalty of perjury that the

17   following is true and correct:

18        1.   I am an Assistant City Attorney in the City Attorney's criminal division.

19        2.   In accordance with CrRLJ 2.2, in criminal proceedings in the Municipal Court, the Court

20             mails out summons on filing of a criminal complaint.

21        3.   The City Attorney's Office is in possession of a facially valid Protection Order, attached

22             hereto as Exhibit A, that supported its charges against the Petitioner.

23

DECLARATION OF KATRINA OUTLAND - 1

(23-2-23752-8 SEA)

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

1    I declare under penalty of perjury that the foregoing is true and correct.

2

3         DATED this 27th day of December, 2023.

4

5

6

7

8                              _____
9                              Katrina Outland, WSBA# 54342
                               Assistant City Prosecutor
10                             Email: Katrina.Outland@seattle.gov

11                             Seattle City Attorney's Office
                               701 Fifth Avenue, Suite 2050
12                             Seattle, WA 98104
                               Phone: (206) 684-8200
13

14

15

16

17

18

19

20

21

22

23

DECLARATION OF KATRINA OUTLAND - 2

(23-2-23752-8 SEA)

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

**CERTIFICATE OF SERVICE**

I certify that on the 27th day of December, 2023, I caused a true and correct copy of this document to be served on the following in the manner indicated below:

| Kurt Benshoof<br>1716 North 128th Street<br>Seattle, WA 98133<br><br>*[Pro Se Plaintiff]* | (X) U.S. Mail<br>( ) ABC Legal Messengers<br>( ) Faxed<br>( ) Via Email:<br>kurtbenshoof@gmail.com |
| --- | --- |

*/s/ Grace Selsor*
Grace Selsor, Legal Assistant

DECLARATION OF KATRINA OUTLAND - 3

(23-2-23752-8 SEA)

**0153**

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

FILED
SUPREME COURT
STATE OF WASHINGTON
APRIL 13, 2020
BY SUSAN L. CARLSON
CLERK

# THE SUPREME COURT OF WASHINGTON

| | | |
|---|---|---|
| IN THE MATTER OF STATEWIDE RESPONSE BY WASHINGTON STATE COURTS TO THE COVID-19 PUBLIC HEALTH EMERGENCY | ) ) ) ) ) ) | REVISED AND EXTENDED ORDER REGARDING COURT OPERATIONS No. 25700-B-615 |

WHEREAS, on February 29, 2020, Governor Inslee proclaimed a state of emergency due to the novel coronavirus disease (COVID-19) outbreak in Washington; and on March 13, 2020, President Trump declared a national emergency due to the COVID-19 outbreak across the United States; and

WHEREAS, during this state of emergency, the Centers for Disease Control and Prevention and the Washington State Department of Health have recommended increasingly stringent social distancing measures of at least six feet between people, and encouraged vulnerable individuals to avoid public spaces; and

WHEREAS, consistent with these recommendations, Governor Inslee issued and extended a "Stay Home, Stay Healthy" order directing non-essential businesses to close, banning public gatherings, and requiring Washingtonians to stay home except to pursue essential activities through at least May 4, 2020; and

WHEREAS, many court facilities in Washington are ill-equipped to effectively comply with social distancing and other public health requirements and therefore continued

Page 2
ORDER
25700-B-615

in-person court appearances jeopardize the health and safety of litigants, attorneys, judges, court staff, and members of the public; and

WHEREAS, pursuant to this Court's orders on March 4 and 18, 2020, many Washington courts have taken important steps to protect public health while ensuring continued access to justice and essential court services, including by strictly observing social distancing measures, holding proceedings remotely, suspending many in-building operations, and promulgating emergency rules as necessary; and

WHEREAS, the coordinated response from Washington courts to prevent the further spread of COVID-19 must be continued beyond the timeframes in this Court's March 18, 2020 order while allowing courts to operate effectively and maintain effective and equitable access to justice; and

WHEREAS, this Court's consultation with trial courts, justice partners and coordinate branches of government confirms the need for further direction from this Court by issuing an order that revises and supersedes the March 18, 2020 order; and

WHEREAS, the presiding judges across Washington need direction and authority to effectively administer their courts in response to this state of emergency, including authority to adopt, modify, and suspend court rules and orders as warranted to address the emergency conditions.

NOW, THEREFORE, pursuant to the Supreme Court's authority to administer justice and to ensure the safety of court personnel, litigants, and the public,

Page 3
ORDER
25700-B-615

IT IS HEREBY ORDERED:

*With Respect to Civil Matters:*

1. All civil jury trials are suspended until after May 4, 2020.  Trials already in session where a jury has been sworn and social distancing and other public health measures are strictly observed may proceed or, at the discretion of the trial court or agreement of the parties, be continued to a later date.

2. All non-emergency civil matters shall be continued until after May 4, 2020, except those motions, actions on agreed orders, mediations, conferences or other proceedings that can appropriately be conducted by telephone, video or other means that does not require in-person attendance.

3. All emergency civil matters that cannot be continued until after May 4, 2020, must be heard by telephone, video, or other means that does not require in-person attendance, unless impossible.  Where court matters must be heard in person, social distancing and other public health measures must be strictly observed.

4. Courts shall continue to hear emergency civil protection order and restraining order matters.  Courts must provide an accessible process for filing petitions for civil protection orders and motions for temporary restraining orders, which may include filing petitions in person or remotely. Courts are encouraged to provide alternative means for filing, including electronic filing options whenever possible, especially when the

Page 4
ORDER
25700-B-615

courthouse is closed to the public or public clerk's office hours are restricted due to the public health emergency.

a. Consistent with the Governor's Proclamation 20-45 (Apr. 10, 2020), requirements for *personal* service of the petition for a protection order or temporary protection order are suspended, except as to orders directing the surrender of weapons or removal of the respondent from a shared residence. Personal service remains preferred, and courts should require personal service by law enforcement when removal of children or change of custody of children is ordered, or in other circumstances where public or individual safety demands it. Where personal service is not required, service may be by law enforcement, including electronic service with acknowledgment of receipt, by process servers, by agreed service memorialized in writing, by publication or by mail. If parties have previously agreed to e-mail service or opted into e-service in the case or other currently open related case, service of temporary protection orders or reissuance/continuance orders by e-mail or e-service shall be sufficient. Before proceeding with a full hearing, the judicial officer must require proof of service five days prior to the hearing.

b. Judicial officers have discretion to set hearing dates and extend temporary protection orders based on the circumstances to reasonably allow for sufficient notice, remote appearance, and presentation of evidence, while avoiding unreasonable delay. Whenever possible, statutory timeframes suspended under Proclamation 20-45 (Apr. 10, 2020) should be followed. Circumstances relevant to the setting of

hearing dates include agreement of the parties, reasonable estimates for completing service, lack of prejudice, and specific findings of good cause, which may include restrictions in place due to the public health emergency. Reissuance orders may be similarly extended. Courts may provide a means for weapons surrender hearings that does not require in-person appearance only when consistent with public safety.

   c. Guidance for courts implementing emergency measures under this section may be found here.

5. With respect to all civil matters, courts should encourage parties to stipulate in writing to reasonable modifications of existing case schedules and methods of service and to conduct discovery by remote means whenever possible. Nothing in this Order requires courts to hear nonemergency civil matters until after May 4, 2020.

*With Respect to Criminal and Juvenile Offender Matters:*

6. All criminal jury trials are suspended until after May 4, 2020. Trials already in session where a jury has been sworn and social distancing and other public health measures are strictly observed may proceed or be continued if the defendant agrees to a continuance.

7. All **out of custody** criminal and juvenile offender matters shall be continued until after May 4, 2020, except (1) those motions, actions on agreed orders, status conferences or other proceedings that can appropriately be conducted by telephone, video or other means that does not require in-person attendance; and (2) matters that require in-person

Page 6
ORDER
25700-B-615

attendance but should in the interests of justice be heard immediately, provided that any such hearings must strictly comply with current public health mandates. Arraignment on **out of custody** criminal and juvenile offender cases filed between March 18, 2020 and May 4, 2020 may be deferred until a date 45 days after the filing of charges. Good cause exists under CrR 4.1 and CrRLJ 4.1 and JuCR 7.6 to extend the arraignment dates. The new arraignment date shall be considered the "initial commencement date" for purposes of establishing the time for trial under CrR 3.3(c)(1), CrRLJ 3.3(c)(1) and JuCR 7.8(c)(1). Nothing in this section requires suspension of therapeutic court proceedings that can appropriately be conducted by telephone, video or other means that does not require in–person attendance.

8. Courts may enter ex parte no contact orders pursuant to RCW 10.99.040, RCW 10.99.045, RCW 7.92.160, RCW 7.90.150, RCW 9A.46.085, and/or RCW 9A.46.040, when an information, citation, or complaint is filed with the court, either by summons or warrant, and the court finds that probable cause is present for a sex offense, domestic violence offense, stalking offense, or harassment offense. Ex parte orders may be served upon the defendant by mail or by electronic means of service. This provision does not relieve the prosecution of proving a knowing violation of such an ex parte order in any prosecution for violating the order. Good cause exists

644

Page 7
ORDER
25700-B-615

for courts to extend ex parte orders beyond the initial period until a hearing can be held.

9. All **in custody** criminal and juvenile offender matters shall be continued until after May 4, 2020, with the following exceptions:

   a. Scheduling and hearing of first appearances, arraignments, plea hearings, criminal motions, and sentencing or disposition hearings.

   b. Courts retain discretion in the scheduling of these matters, except that the following matters shall take priority:

      i. Pretrial release and bail modification motions.

      ii. Plea hearings and sentencing or disposition hearings that result in the anticipated release of the defendant or respondent from pretrial detention within 30 days of the hearing.

      iii. Parties are not required to file motions to shorten time in scheduling any of these matters.

10. Juvenile court jurisdiction in all pending offender proceedings and in all cases in which an information is filed with the juvenile court prior to May 4, 2020, in which the offender will reach the age of 18 within 120 days of May 4, 2020, shall be extended to the offender's next scheduled juvenile court hearing after May 4, 2020.

11. A continuance of these criminal and juvenile offender hearings and trials is required in the administration of justice. Based upon the court's finding that the serious danger posed by COVID-19 is good cause to continue

Page 8
ORDER
25700-B-615

criminal and juvenile offender trials, and constitutes an unavoidable circumstance under CrR 3.3(e)(8), CrRLJ 3.3(e)(8), and JuCR 7.8(e)(7), the time between the date of this Order and July 3, 2020 shall be EXCLUDED when calculating time for trial. CrR 3.3(e)(3), CrRLJ 3.3(e)(3), JuCR 7.8(e)(3).

12. The Court finds that obtaining signatures from defendants or respondents for orders continuing existing matters places significant burdens on attorneys, particularly public defenders and all attorneys who must enter correctional facilities to obtain signatures in person. Therefore, this Order serves to authorize continuing those matters without need for further written orders. Additionally:

a. Defense counsel is not required to obtain signatures from defendants or respondents on orders to continue criminal or juvenile offender matters through May 4, 2020.

b. Courts shall provide notice of new hearing dates to defense counsel and unrepresented defendants.

c. Defense counsel shall provide notice to defendants and respondents of new court dates.

13. Bench warrants may issue for violations of conditions of release from now through May 4, 2020. However, courts should not issue bench warrants for failure to appear in-person for criminal or juvenile offender court hearings and pretrial supervision meetings unless necessary for the

Page 9
ORDER
25700-B-615

immediate preservation of public or individual safety. Additionally, courts should not issue or enforce bench warrants for juvenile status offenses or violations.

14. Motions for Pre-Trial Release:

    a. Courts shall hear motions for pretrial release in criminal and juvenile offender matters on an expedited basis without requiring a motion to shorten time. Nothing in this section is intended to affect any statutory or constitutional provision regarding the rights of victims or witnesses.

    b. The Court finds that for those identified as part of a vulnerable or at-risk population by the Centers for Disease Control, COVID-19 is presumed to be a material change in circumstances, and the parties do not need to supply additional briefing on COVID-19 to the court. For all other cases, the COVID-19 crisis may constitute a "material change in circumstances" and "new information" allowing amendment of a previous bail order or providing different conditions of release under CrR 3.2(k)(1) or CrRLJ 3.2(k)(1), but a finding of changed circumstances in any given case is left to the sound discretion of the trial court. Under such circumstances in the juvenile division of superior court, the court may conduct a new detention hearing pursuant to JuCR 7.4.

    c. Parties may present agreed orders for release of in-custody defendants and respondents, which should be considered expeditiously.

Page 10
ORDER
25700-B-615

    d. If a hearing is required for a vulnerable or at-risk person as identified above, the court shall schedule such hearing within five days. The court is strongly encouraged to expedite hearings on other cases with due consideration of the rights of witnesses and victims to participate.

15. Courts must allow telephonic or video appearances for all scheduled criminal and juvenile offender hearings between now and through May 4, 2020, unless impossible. For all hearings that involve a critical stage of the proceedings, courts shall provide a means for defendants and respondents to have the opportunity for private and continual discussion with their attorney.

*General Provisions for Court Operations:*

16. Access to justice must be protected during emergency court operations. Where individuals are required to access the court through remote means, courts must provide no-cost options for doing so or provide a means for seeking a waiver of costs. This provision does not require suspending existing systems for remote filings or hearings that are based on a user-fee model.

17. Courts must provide clear notice to the public of restricted court hours and operations, as well as information on how individuals seeking emergency relief may access the courts. Courts are encouraged to provide such notice in the most commonly used languages in Washington, and to make every effort to timely provide translation or interpretation into other languages

648

upon request.    The <u>Washington State Supreme Court Interpreter Commission</u> may assist courts in this process.

18. The availability of interpreter services should not be restricted by emergency operations.    Interpreting should be done by remote means whenever possible, consistent with <u>protocols</u> developed by the Washington State Supreme Court Interpreter Commission.

19. Washington courts are committed to protecting rights to public court proceedings.  Any restrictions placed on public access to court proceedings due to the public health emergency must be consistent with the legal analysis required under *State v. Bone Club*, 128 Wn.2d 254 (1995) and *The Seattle Times v. Ishikawa*, 97 Wn.2d 30 (1982). Courts should continue to record remote hearings and to make the recording or a transcript part of the record, and should develop protocols for allowing public observation of video or telephonic hearings.  Guidance for courts in protecting public court proceedings during emergency operations can be found <u>here</u>.

20. Notwithstanding any provision of GR 30 to the contrary, an electronic signature shall be deemed a reliable means for authentication of documents and shall have the same force and effect as an original signature to a paper copy of the document so signed.  For purposes of this Order, "electronic signature" means a digital signature as described in Supreme Court Order No. <u>25700-B-596</u> (July 16, 2019) and RCW 9A.72.085(5) (repealed); an electronic image of the handwritten signature of an individual; or other

Page 12
ORDER
25700-B-615

electronic sound, symbol, or process, attached to or logically associated with an electronic record and executed or adopted by a person with the intent to sign the record, including but not limited to "/s/ [name of signatory]".

a. To the extent not already authorized, whenever a judicial officer or clerk is required to sign an order, judgment, notification, or other document an electronic signature shall be sufficient;

b. Courts are authorized and are hereby encouraged when practicable to waive by emergency rule or order provisions of GR 30(d) that require: (1) the issuance of a user ID and password to electronically file documents with the court or clerk; (2) that a party who has filed electronically or has provided the clerk with their email address must give consent to accept electronic transmissions from the court.

21. This Court recognizes that there are procedural issues in juvenile, dependency, involuntary commitment, child support, and other matters that may not be encompassed in this Order. Nothing in this Order limits other interested parties in submitting similar orders tailored to the unique circumstances of those matters and any other matters not addressed by this Order. Nothing in this Order prevents courts from following specific emergency plans for such matters, including for Involuntary Treatment Act and dependency matters. Where any provisions of this Order may be interpreted to conflict with any provision of another Supreme Court order

.650

0165

Page 13
ORDER
25700-B-615

addressing specific case matters, such as dependency and termination matters, the provisions of the more specific order shall control.

22. Nothing in this Order limits the authority of courts to adopt measures to protect health and safety that are more restrictive than this Order, as circumstances warrant, including by extending as necessary the time frames in this Order.

23. The Supreme Court may extend the time frames in this Order as required by continuing public health emergency, and if necessary, will do so by further order. This Order and other applicable emergency orders may be deemed part of the record in affected cases for purposes of appeal without the need to file the orders in each case, and all time frames previously extended to April 24, 2020 may be deemed extended to May 4, 2020. This revised and extended Order supersedes the Supreme Court's March 18, 2020 order (as corrected March 19, 2020) and its March 20, 2020 amended order.

DATED at Olympia, Washington this 13th day of April, 2020.

For the Court

CHIEF JUSTICE

651

**Superior Court of Washington, County of King**

In re the Marriage of:

Petitioner:

JESSICA R. OWEN

And Respondent:

KURT BENSHOOF

No. 21-5-00680-6 SEA

**Sealed Confidential Reports**
(Cover Sheet)
(SEALRPT)
**Clerk's Action Required**

## Sealed Confidential Reports

(List documents below and write "Sealed" at least one inch from the top of the first page of each document.)

This cover sheet shall be used to file the sealed portion of the following reports:

Report of a guardian ad litem.

The sealed portion of these reports include:  1) Detailed descriptions of material, or information gathered or reviewed; 2) Detailed descriptions of all statements reviewed or taken; 3) Detailed descriptions of tests conducted or reviewed; 4) Analysis to support the conclusions and recommendations.

Submitted by:

AMY FRANKLIN-BIHARY, WSBA #35787

*Notice:* The other party will have access to these confidential reports.  If you are concerned for your safety or the safety of the children, you may redact (block out or delete) information that identifies your location.

*Sealed Confidential Reports (SEALRPT)*
*WPF DRPSCU 09.0270 (6/2006) - GR 22(e)(1), (2)(B), (f)*

**0167**



WECHSLER BECKER, LLP
701 FIFTH AVE. SUITE 4550
SEATTLE, WA 98104
T: 206.624.4900 | F: 206.386.7896

1
2
3
4
5
6

**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON**
**COUNTY OF KING**

7  In re:

8  Petitioner:

9  <u>JESSICA R. OWEN</u>

And Respondent:

10  <u>KURT BENSHOOF</u>

No. **21-5-00680-6 SEA**

GUARDIAN AD LITEM REPORT TO THE
COURT

11

12  ## I. Appointment

13  The undersigned was appointed Guardian ad Litem for AZRHAEL WALKER (Age 13)

14  on April 12, 2022. I was appointed to investigate (1) all issues related to making a parenting

15  plan (2) criminal history of Respondent (3) domestic violence history of Respondent (4)

16  abusive use of conflict and withholding of child by Respondent and (5) any other issues

17  discovered that could affect the safety of the children. This is a parentage case.

18  I attest that I am free from influence from anyone interested in the result of these

19  proceedings and that I have the requisite knowledge, training and experience to perform the

20  duties required by the court and by statute. I am on the Guardian ad Litem Registry for King

21  County and am qualified to serve as Guardian ad Litem in family law matters.

22  In preparation for this report, I have reviewed the following documents:

23  GUARDIAN AD LITEM REPORT TO THE COURT
Page 1

24

**0168**



WECHSLER BECKER, LLP
701 FIFTH AVE. SUITE 4550
SEATTLE, WA 98104
T: 206.624.4900 | F: 206.386.7896

- Pleadings in the proceeding.

- Police reports.

- Court dockets for other cases involving the father.

- Emails between father and mother's attorney.

- Emails from the father with links and attachments (over 300).

- Email and attachment from father to child.

- Email from the mother.

- Texts between the parents.

- Our Family Wizard messages between the parents.

- Videos and transcripts of Zoom calls between father and child.

- NextDoor postings by the parties.

- Washington State Patrol WATCH Report for Kurt Benshoof.

- At Indaba supervision notes 2021-2022.

I have interviewed, either in person, via Zoom, or via telephone, the following individuals:

- Kurt Benshoof (Father)

- Jessica Owen (Mother)

- A▓▓▓▓▓ "R▓▓▓" W▓▓▓▓ (Child)

- Dawn Samuelson (Mother's Friend)

- Kyrrah Nork (Father's Friend and Child's Tutor)

- Samara Lane (Father's Adult Daughter)

GUARDIAN AD LITEM REPORT TO THE COURT
Page 2

**0169**

WB⅃⅃ᴾ  **WECHSLER BECKER, LLP**
701 FIFTH AVE. SUITE 4550
SEATTLE, WA 98104
T: 206.624.4900 | F: 206.386.7896

- Eric Woodward (Child's Former Therapist)

- Laura Rose (Mother's Friend)

- Magali Lerman (Mother's Fiancée)

- I contacted the father's friend, Peter Kral, via email three times and received no response to my requests to talk to him.

## II. Background and Procedural History

Kurt Benshoof is 53 years old.  Jessica Owen is 46 years old.  The parties were never married.  Their relationship started in 2007.  They lived together from June 2008 to June 2013. Between June 2013 and February 2016, they lived separately but parented together. They moved into the same household (but did not resume their relationship) in February 2016 which lasted until September 2020.   The father has an adult daughter, Samara Lane. The mother does not have other children.  The father lives alone.  The mother's fiancée, Magali Lerman, lives in her household.

Trial is scheduled for October 17, 2022.

Temporary orders were entered in November 2021 placing the child with the mother primarily and allowing for in-person supervised visits and recorded Zoom calls between the father and child.  In April 2022, the temporary parenting plan was amended to adjust the schedule for in-person visits and the father was warned not to discuss the litigation with the child.  In August 2022, the father's Zoom calls were suspended pending a full hearing in September based on his discussion of the litigation and other inappropriate topics with the child during Zoom calls.

GUARDIAN AD LITEM REPORT TO THE COURT
Page 3

**0170**



WECHSLER BECKER, LLP
701 FIFTH AVE. SUITE 4550
SEATTLE, WA 98104
T: 206.624.4900 | F: 206.386.7896

1    In late July, the father stopped in-person supervised visits and Zoom calls with the

2    child. We had arranged for me to attend a supervised visit on July 27th but that visit did not

3    take place. In early August, the father "withdrew" as the Respondent in this case and from e-

4    service. He told the mother's counsel not to contact him. He filed for an anti-harassment

5    order against the mother's counsel (but did not show up for the hearing). On August 3, 2022,

6    Kurt told my paralegal that he did not want any further contact from my office. On August 5,

7    2022, I wrote him a letter (filed with the court) indicating that I would not contact him further

8    unless he tells me that he wants to resume participating in the case but that I would be

9    sending him my report. In August, Kurt posted to his local NextDoor group (which Jade is

10   also a part of) that Azhrael was missing. He went on to state that Jade and Magali are liars

11   and posted Jade's full name and address. He made no mention of the court orders in place.

12   Kurt was arrested but released for coming to Jade's home on August 15, 2022.

13   Because Kurt decided to "withdraw" from this case, I was not able to have a second

14   interview with Kurt, observe him in person with **Azhrael, or visit** his home.

### III. Interviews With the Parties and Collateral Witnesses

16   Below is a summary of my interviews. These are not factual determinations, only

17   what the parties and collaterals reported.

18   **Jessica (Jade) Owen:** I met with Jade via Zoom on June 1, 2022 and August 23,

19   2022. I met with her in person on July 19, 2022 during my visit to her home.

20   Jade resides with her partner, Magali Lerman (also known as Justice), (whom she

21   started dating in 2019) in a home she purchased in September 2020. Jade is a former sex

22   worker who started working as a life coach (in a non-licensed therapeutic capacity) in 2019,

GUARDIAN AD LITEM REPORT TO THE COURT
Page 4

**0171**



WECHSLER BECKER, LLP
701 FIFTH AVE. SUITE 4550
SEATTLE, WA 98104
T: 206.624.4900 | F: 206.386.7896

1    briefly in a start up, and also as a clothing and pattern maker.  When she worked as an

2    escort, Jade only saw clients outside of the house in a separate apartment.  She currently

3    sees around six life coaching clients regularly (virtually and in person).  She recently had to

4    get a loan from a friend for her legal fees and mortgage.  She doesn't have a regular work

5    schedule and mostly works during school hours and sometimes on evenings.

6        Magali works as a policy consultant for disadvantaged communities.  Magali does not

7    have children.

8        According to Jade, Kurt grows pot in the basement and sells it.  He used to own a

9    building and carpentry company.

10    Azhrael is 13 years old and will be in the 8th grade in Fall at Jane Addams Middle

11    School.  He will be moving to the HCC program and gets good grades.  He is interested in

12    being a rocket scientist.  In the mornings, Azhrael can get himself up, ready for school, and

13    to the bus. While Kurt has suggested that Azhrael attend a Waldorf school, Jade does not

14    plan to move him to Waldorf but will take him on a tour if Azhrael makes a presentation to

15    her about it.

16        Kurt has a felony record (non-violent) for growing marijuana.  For a time, Kurt went by

17    the name Jason Walker (which is why Azhrael's last name is Walker).  He was on the run

18    from the law for growing marijuana.  He was not on Azhrael's birth certificate because he

19    didn't have valid ID at the time.  She kept trying to get him to sign an affidavit of paternity but

20    eventually gave up.  Jade will support Azhrael using whatever last name he wants to use.

21        When they first met, Jade worked for Kurt as a carpenter in his construction business.

22    They started dating in 2007.  Jade described their relationship as tumultuous and they broke

23

24

GUARDIAN AD LITEM REPORT TO THE COURT
Page 5

**0172**

1    up multiple times.  Kurt gave her an ultimatum regarding giving up sex work.  Two months

2    later, she became pregnant.  For a time, Kurt stayed home with A████ while she went back

3    to school.  Around the time that A████ was 4 years old, Kurt left Jade for another woman.

4    Kurt and Jade would fight often.  Jade felt like she gave up a lot to stay home with A████.

5    Her relationship with Kurt continued to be back and forth.  Jade tried to co-parent with Kurt to

6    benefit A████.  In retrospect, Jade sees Kurt as emotionally abusive and manipulative.  He

7    is unconcerned about the law or boundaries.  He finds a way to circumvent it.  She wishes

8    that she had left him earlier.

9         Kurt and Jade went in on a house so that they could raise A████ together.  This

10   lasted from about 2016 – 2020.  During this time, they shared parenting 50/50.  The home

11   was put in Jade's name because Kurt does not pay taxes and has no driver's license or

12   passport.  Kurt currently lives in that house.  While they lived there together, Jade lived

13   upstairs and Kurt lived downstairs.  Jade feels that this was not an ideal situation.  She also

14   noted that the house needs repairs.  Jade compartmentalized how bad the relationship was.

15        In September 2020, after Jade's relationship with Magali progressed and Magali gave

16   Jade an ultimatum about moving out of the house, Jade purchased another house within

17   walking distance (or 5-minute drive) of Kurt.  Both homes are in Northeast Seattle.  The

18   parties continued to share time with A████ except that he didn't want to spend the night at

19   Kurt's and would only do so about once a week.  A████ was doing tutoring at Kurt's house

20   three days a week during the pandemic.  The tutoring was good for him.  He would do school

21   at Kurt's and then they A████ and Kurt would play pickleball.

22

23   GUARDIAN AD LITEM REPORT TO THE COURT
     Page 6

24

**0173**

WECHSLER BECKER, LLP
701 FIFTH AVE. SUITE 4550
SEATTLE, WA 98104
T: 206.624.4900 | F: 206.386.7896

1      In December 2020, Kurt was arrested for erratic driving with Azhrael in the car. After

2    he was pulled over, Kurt got out of the car and approached the police officer. Kurt was

3    tackled and arrested. Jade had to pick Azhrael up. Azhrael was traumatized by this

4    incident. Jade further stated that Kurt doesn't like authority figures. That can made Azhrael

5    scared and feel unsafe. This includes the PCC incident, Sprouts incident, and other poor

6    parenting decisions outlined in declarations Jade has submitted to the court. Azhrael is

7    afraid that Kurt will embarrass him or that they will get harmed.

8      Kurt was arrested at Sprouts Market with a gun when he would not wear a mask. He

9    has had an altercation at PCC for the same reason. He has had bench warrants out at

10   times. Jade believes that the Sprouts incident resulted in a gross misdemeanor.

11     Prior to the start of this case, Jade made several police reports. The first one was the

12   result of Kurt refusing to leave Jade's house (at a time when they weren't living together).

13   He was trying to impose a 50/50 residential schedule on her. Jade told Kurt he could not

14   stay the night and he was shouting at her. Kurt pushed her and then she hit him. He

15   wouldn't leave her house. They both filed police reports.

16     In 2015, Kurt was at Jade's house working in the basement. Jade was in the

17   bedroom with Azhrael. Kurt demanded that it was time to go and that he was taking Azhrael.

18   He wouldn't let Jade come outside (she was holding Azhrael at that point). Kurt took Azhrael

19   out of her arms and hit Azhrael's head on the wall. Kurt left with Azhrael. Jade had a

20   thumbprint bruise on her arm.

21     In December 2020, Kurt picked Jade and Azhrael up from a friend's party. Kurt was

22   moody. When they got home, Kurt thought that Jade had made Christmas plans without him

23

GUARDIAN AD LITEM REPORT TO THE COURT
Page 7

24

**0174**



WECHSLER BECKER, LLP
701 FIFTH AVE. SUITE 4550
SEATTLE, WA 98104
T: 206.624.4900 | F: 206.386.7896

1   (they had previously agreed to celebrate together). Kurt slammed the door and broke the

2   glass in the door. He was shouting at her and coming toward her. He got in her face and

3   continued to shout. He slammed and broke kitchen items, including dishes and a cutting

4   board. Jade told Kurt she would call the police. Kurt ripped a door off the hinges. He tried

5   to clean up the mess. The police came. Azhrael was under the bed and had to be

6   convinced to come out. The police let Kurt stay. Jade now regrets not asking the police to

7   remove Kurt because it sent the wrong message to Azhrael. She was worried about being

8   stuck in the house with Kurt financially.

9           In April 2021, Jade decided to take Azhrael on a road trip. Kurt got mad because it

10  was a three-week trip. While Azhrael was given the choice, he did not want to stay with Kurt

11  instead. Flying Azhrael to meet them part way through the trip was not an option because

12  Kurt refused to wear a mask and therefore could not go to the airport. After that, the parties

13  briefly followed a week-on, week-off schedule. Azhrael started wanting to spend more time

14  with Kurt.

15          In August 2021, Jade asked Azhrael if he wanted to get vaccinated against COVID

16  and then had to convince him to get the first shot. In mid-August, Azhrael freaked out about

17  getting his second shot. Kurt got mad about the vaccination. Azhrael asked Kurt to pick him

18  up. After that, Kurt kept Azhrael and then Azhrael refused to be picked up to go to his

19  second shot. They exchanged texts and Azhrael was afraid that Jade would make him go to

20  the second appointment. She assured him that she wouldn't make him do it. Azhrael

21  wanted to stay with his father. Azhrael missed his well child appointment and also summer

22  camp. Jade did not see Azhrael from August 14, 2021 to September 3, 2021. She had one

23
    GUARDIAN AD LITEM REPORT TO THE COURT
24  Page 8

**0175**



WECHSLER BECKER, LLP
701 FIFTH AVE. SUITE 4550
SEATTLE, WA 98104
T: 206.624.4900 | F: 206.386.7896

1    call with him during that time. She kept texting Azhrael but Kurt would respond. Kurt wanted

2    to know where Azhrael had been vaccinated, evidence that COVID is real, and that informed

3    consent was given. Jade and Kurt each called the other a liar.

4         Jade then hired an attorney. Jade received a temporary DVPO and then the full order

5    was denied. She called CPS. At one point, Jade called Kurt's adult daughter, Samara, who

6    convinced Kurt to let Azhrael speak to her. When Kurt was served, they searched his house

7    for guns. He was given a deadline for bringing Azhrael to the police station. Kurt then

8    claimed that Azhrael ran away and was not at his house. There was a letter from Azhrael

9    but Jade was skeptical. Kurt did not file a missing person's report though. He told the police

10   that Jade stole his car. Finally, around September 3rd, Jade reached out to Samara again.

11   Magali and her friends followed Kurt and Azhrael to a parking lot where they switched cars –

12   someone else picked them up. Magali had called the police and the police started following

13   Kurt. Kurt was arrested. The police let Magali leave with Azhrael and the car. The police at

14   the North Precinct know Kurt. There was a dispute about whether there was a valid DVPO

15   at the time. The court had denied the full order but it was still in the system. When Azhrael

16   returned to Jade, he wouldn't tell her where he had been and has kept that secret for Kurt.

17        The current temporary orders place Azhrael with Jade but Kurt has Zoom visits and

18   supervised visits on weekends (although at the time of my report Kurt's Zoom calls are

19   suspended pending a full hearing). Jade never wanted to remove time with Kurt. This is not

20   what she envisioned for Azhrael. She acknowledges that Kurt loves Azhrael. She feels that

21   the pandemic changed Kurt – he has gotten much more into conspiracies. Because she was

22

23   GUARDIAN AD LITEM REPORT TO THE COURT
     Page 9

24                          **0176**

WB⅃⅃ᴾ WECHSLER BECKER, LLP
701 FIFTH AVE, SUITE 4550
SEATTLE, WA 98104
T: 206.624.4900 | F: 206.388.7896

1  in an emotionally abusive relationship with Kurt, she doesn't feel that she was making the

2  best decisions.

3  　　　　In January 2022, Jade reached out to Kurt to try to settle this matter but her effort

4  didn't go anywhere.  She wants Azhrael to live with her primarily but is otherwise unsure

5  about a plan.  She is not particular about holidays either.  She doesn't want to have any

6  more contact with Kurt than she has to and wants it limited to talking about Azhrael.  Our

7  Family Wizard works fine and is better than Jade getting 17 text messages from Kurt.

8  　　　　During summer 2022, Kurt stopped both in person supervised visits and Zoom calls.

9  On August 10th, he sent Jade a message demanding a Zoom call the next day.  When Jade

10  told him that would not work out and offered an alternate date and time, the communication

11  turned into Kurt criticizing Jade.  Kurt did not confirm the date and time offered by Jade.

12  During a Zoom call on August 13th, Kurt told Azhrael that the courts no longer apply to him

13  and that the court doesn't have jurisdiction.  This encouraged Azhrael to want to see Kurt.

14  On August 14th, Kurt and Azhrael exchanged text messages, in violation of the restraining

15  order.  On August 15th, Kurt showed up at Jade's house and was arrested (he was released

16  the next day and the city reserved the right to charge him later).  Also on August 15th, Jade

17  took Azhrael's phone and read the texts between Azhrael and Kurt wherein they planned for

18  Azhrael to sneak out to Kurt's house.  As a consequence, Jade took Azhrael's phone away

19  from him for a week.  She had to explain to Azhrael that they need to follow court orders and

20  that what Kurt is doing is making that harder.  After Kurt's arrest, a court advocate called

21  Jade to discuss the incident where Kurt blocked her driveway last fall, not recent events.

22

23

24

GUARDIAN AD LITEM REPORT TO THE COURT
Page 10

**0177**

WECHSLER BECKER, LLP
701 FIFTH AVE. SUITE 4550
SEATTLE, WA 98104
T: 206.624.4900 | F: 206.386.7896

1   Jade indicated to the advocate that a number of other things have happened since then and

2   that she would be in favor of Kurt being charged.

3         On August 16th, A█████ disclosed contemplating jumping off a balcony at summer

4   camp to kill himself. Jade was able to talk him down but he is really depressed. She noted

5   that he has done really well overall during the pandemic and situation with Kurt.

6         CPS recently visited Jade's home based on a report by Kurt. She did not have a letter

7   from them yet. This was the only time she has been investigated (Kurt has been

8   investigated in the past but they never went to his house).

9         Jade described A█████ emotionally wise and introspective. The emotionally fraught

10  relationship in the family has made him withdraw. He is sullen and introverted more now.

11  This may be because he is 13 now or because of the conflict between the parents. She sees

12  a real difference before and after Kurt took him in August-September 2021. He is more shut

13  down. In recent conversations with A█████, he has said that he misses Kurt. A█████ feels

    that he needs to see Kurt because otherwise Kurt will not be around in a year (Kurt told him

    ▓t he wouldn't survive without A█████). Jade told A█████ that it was not fair for Kurt to ask

    ▓ a child. A█████ said that Kurt makes bad choices but feels that he (A█████) can

    ▓rt. This ▓▓▓▓▓▓▓▓▓▓▓ 's been put on A█████. Jade feels

    ▓▓ Kurt while A█████ l

    ▓▓ to grasp

                                                                        ||

**0178**

1    Jade feels that Azhrael spends too much time online. Azhrael likes Legos and video

2    games, particularly Minecraft. He is rowing 2-3 times per week. They monitor Azhrael so

3    that he has no technology Monday, Wednesday, Friday and three hours total for the

4    weekend. He can have more during calls with Kurt. Azhrael is doing summer camps

5    involving science, cooking, robotics, STEM, and rowing.

6        In fall 2021, Azhrael was re-enrolled at Jane Addams Middle School (having been un-

7    enrolled while school was virtual). Jade filled out the paperwork with her as the parent

8    because parentage had not been established at that point which resulted in Kurt not having

9    access to the school. Kurt has overblown this issue with her and the school. Jade may have

10   Azhrael assessed for autism but also believes that his symptoms could be related to trauma.

11       Jade schedules Azhrael's doctor's appointments, school activities, and extracurricular

12   activities. Jade stated that Kurt is good at the playing and peer type stuff. Kurt and Jade

13   have differences of opinion about schooling (homeschool versus public) and health decisions

14   like vaccination.

15       Jade described Samara, Kurt's daughter, as a lovely person and a responsible adult.

16   She has a soft spot for her dad which is not based in recognizing who he is. Jade doesn't

17   blame her. Kurt is well behaved around Samara. She is not faced with Kurt's more

18   egregious actions (and Samara tends to give him a pass when Kurt does act out). Samara

19   tends to pretend that what Kurt does is not as bad as it is. She doesn't see Kurt for who he

20   is in order to have a loving father.

21       Kurt has involved Azhrael in this case by reading pleadings to him; explaining Magali's

22   Facebook posts to him and badmouthing her; calling Jade and Magali names; laying into

23   GUARDIAN AD LITEM REPORT TO THE COURT
     Page 12

24                        **0179**



WB²  WECHSLER BECKER, LLP
701 FIFTH AVE. SUITE 4550
SEATTLE, WA 98104
T: 206.624.4900 | F: 206.386.7896

Azhrael regarding getting vaccinated; and berating Jade and Azhrael. These occurred during recorded Zoom calls or supervised visits. During many Zoom calls, Azhrael plays video games and doesn't engage with Kurt. Azhrael finds the calls stressful (exemplified by his eczema flaring up). Jade is not sure that Kurt knows that the things he does are inappropriate. Jade has explained to Azhrael that Kurt does inappropriate things and that it is not Azhrael's fault. Jade is worried that Kurt will brainwash Azhrael if they continue to have contact. She doesn't know how to make Kurt behave well. Further, she has told Azhrael that Kurt is narcissistic. Jade stated that Azhrael may be better off without having contact with Kurt. She does acknowledge that Azhrael will always miss Kurt and may put him on a pedestal if there is no contact. Maybe it is better for Azhrael to see Kurt for what he is. He can make more choices about Kurt when he is older.

Kurt makes decisions that are not in his own best interests. He may have undiagnosed mental health issues such as bipolar disorder. Jade was not aware of Kurt being in therapy or having any mental health diagnosis. He was molested by his mother as a child (and is glad his mother is dead). He can be misogynistic. Kurt was in the Gnostic Church cult and was instrumental in taking the cult down after he found out that his daughter had been molested. The cult included toxic and abusive treatment. He may have been brainwashed by the cult. Kurt also suffered a brain injury in his 30s when he was hit in the head by a beam on a jobsite. Jade doesn't have concerns about Kurt's use of substances. He tends to be very controlled and doesn't drink. Marijuana and micro dosing mushrooms or DMT tended to mellow him out. He might benefit from prescription medications. At times, he has been a workaholic. His brother is an alcoholic and his sister is very religious. Jade has

GUARDIAN AD LITEM REPORT TO THE COURT
Page 13

**0180**



WECHSLER BECKER, LLP
701 FIFTH AVE. SUITE 4550
SEATTLE, WA 98104
T: 206.624.4900 | F: 206.386.7896

heard from others that Kurt burns bridges with people. He can seduce people to come back into relationships with him. He doesn't tend to have consistent relationships with people.

Jade reported that Kurt has found vulnerable young (20s) black women with felonies on Aurora (at least 5 of them) to hang out with him. He tries to get them to sell marijuana. He paid for things for them. Jade is not sure if he was having sex with them. He brought them to the house when Azhrael was there. It never really worked out the way that Kurt intended. Jade stated that it was weird to watch. There would be explosive breakups but then the women would come back. Jade also forwarded texts that Kurt sent her friend Owen which Owen considered threatening in nature – there was a link to an article about Guatemalan kidnapping suspects who were burned to death and also comments about how he (Kurt) burns people in court.

Jade doesn't have any substance abuse problems. She drinks socially but has alcoholics in her family. She doesn't have any mental health diagnosis. Jade recently started in therapy at Magali's insistence. She was overtaxing friends talking about Kurt. In our last conversation, she told me that she is depressed and afraid every day. The situation is having negative affects on her emotionally and in her other relationships.

Azhrael was in therapy from October 2021 to April 2022 when he turned 13. He didn't want to continue. Jade is still in contact with the therapist – Eric Woodward. Jade is currently looking for a therapist for Azhrael or for their family because he is depressed and has expressed wanting to harm himself.

Kurt has not paid Jade any child support. They used to split expenses 50/50.

GUARDIAN AD LITEM REPORT TO THE COURT
Page 14

**0181**



WECHSLER BECKER, LLP
701 FIFTH AVE. SUITE 4550
SEATTLE, WA 98104
T: 206.624.4900 | F: 206.386.7896

1    In August 2022, Jade emailed me Kurt's posts from Nextdoor which reported that

2    Azhrael was missing. She also sent her posts which explained to concerned neighbors that

3    Azhrael was not missing.

4    There is another related civil case regarding the house that Kurt is living in. Recently,

5    some of Kurt's claims were dismissed by the court. That case will be decided next year.

6    Jade would like to no longer be financially intertwined with Kurt. The anti-harassment

7    petition that Kurt filed against Jade's counsel was dismissed when Kurt did not appear for the

8    hearing.

9    **Kurt Benshoof:** I met with Kurt via Zoom on June 6, 2022. In August 2022, Kurt

10    withdrew from all involvement in the case and I was unable to meet with him for a home visit,

11    observation of supervised visit, or follow up meeting. The father also sent me a large volume

12    of email (over 300), at times more than one per day. Many of them were addressed to the

13    mother's counsel but copied to me. I reviewed all of them. The subjects of the emails

14    included vaccines, access to the courthouse, the validity of statutes and court orders, Jade's

15    prostitution activities, and the honesty of Jade and her counsel.

16    Kurt expressed wanting an independent person to listen to his son. He felt that

17    Azhrael would be better able to talk openly in person and offsite (not at his mother's house).

18    He was disappointed that this GAL has a busy caseload.

19    When asked what Azhrael is like, Kurt responded that he is very in touch with his

20    emotions, very aware even when it seems he is not paying attention, diplomatic, bright,

21    sensitive, and wise beyond 13. He is mature for his age and is not biased. He is quieter and

22    softer than other boys his age. He has friends in his neighborhood who are typical boys. His

23

24    GUARDIAN AD LITEM REPORT TO THE COURT
Page 15

**0182**



WB   **WECHSLER BECKER**, LLP
701 FIFTH AVE. SUITE 4550
SEATTLE, WA 98104
T: 206.624.4900 | F: 206.386.7896

1  friends at school tend to be female. Azhrael told Kurt that "you and I are basically the same."

2  Like Kurt, Azhrael doesn't like being lied to. When he was younger, he liked trains, robots,

3  and Star Wars. Kurt believes that it is best to let kids develop naturally. Azhrael doesn't like

4  to be pushed into things. He is physically active and plays pickleball with Kurt. He is

5  generally healthy except for some eczema. Azhrael enjoys Legos. He likes adults. The

6  company matters as much as the activity to him.

7      Azhrael attends Jane Addams Middle School (he went to BF Day Elementary) and will

8  be in 8th grade. He does well in school but sometimes he is not interested and it may look

9  like he is not doing as well as he should (Kurt was like that too). Kurt was involved at BF

10  Day, did pickups and drop offs, and the staff knew him.

11      Kurt stated that the parties have shared parenting 50/50 for Azhrael's whole life.

12  There were periods of time that Jade was gone out of town where he did all of the parenting.

13  She would have work obligations on short notice. When they lived together, they were

14  flexible with each other. The parties went to parent-teacher conferences together. He went

15  to all of Azhrael's graduations but Jade did not. Jade is chronically late.

16      Kurt stated that he is not trying to disparage Jade because she is doing her best. In

17  her own way, she loves Azhrael to pieces. She's done good by their son.

18      Kurt was about to break up with Jade when she found out that she was pregnant.

19  From that moment, he invested himself in Azhrael. Having a baby made them gloss over

20  how they were not getting along. During the first years of Azhrael's life, he was the sole

21  breadwinner. The parties separated when Azhrael was about 4 years old and in preschool.

22  Jade moved out because she met another guy. She wanted an open relationship but Kurt

23
GUARDIAN AD LITEM REPORT TO THE COURT
Page 16

24
**0183**



WB≡ WECHSLER BECKER, LLP
701 FIFTH AVE. SUITE 4550
SEATTLE, WA 98104
T: 206.624.4900 | F: 206.386.7896

1   did not. From 2013 to 2015, the parties had a 3 day on and 3 day off schedule with Azhrael.

2   They all had dinner together and were not acrimonious. Jade would **drop** Azhrael with Kurt

3   because he was home all of the time. They didn't use childcare. In 2015, they started living

4   in the same house again so that they could parent together. Kurt wanted to be there when

5   Azhrael **woke up and** when he went to bed. They bought the Bitter Lake house but Kurt was

6   still back and forth to his place in Fremont.

7          In 2020, Jade's current partner, Magali, started staying over at the house. During the

8   summer of 2020, they wanted to nest as a couple and get their own place. Kurt offered to

9   add on to the house. Jade offered to find Kurt another house but he felt that he had put too

10  much into the Bitter Lake house. In September 2020, Kurt was working on and off and he

11  was the default parent. In December 2020 and January 2021, it was up to Azhrael when he

12  wanted to change houses. They were flexible with each other, and it was no big deal. In

13  early 2021, the acrimony began when Jade planned two three-week trips with Azhrael

14  without talking to him. She had already made the plans and told Azhrael. Kurt had no say in

15  it. He wouldn't have done that and felt that her actions were disrespectful. The first trip was

16  in February 2021. There were hurt feelings but Jade tried to make it up to him. He was

17  shocked at how quickly their relationship went downhill.

18         The parties have a difference of opinion about the safety or efficacy of wearing masks.

19  Kurt doesn't believe that kids should be wearing them at school 30 hours per week. He felt

20  like he had no say in Azhrael's medical care. Jade was unwilling to discuss it with him or

21  look at peer reviewed literature. He has been dismissed as "crazy." He is frustrated. He is

22  big on dialog and trust and feels that he has been cancelled without honest discourse.

23  GUARDIAN AD LITEM REPORT TO THE COURT
    Page 17
24
                          **0184**



WECHSLER BECKER, LLP
701 FIFTH AVE. SUITE 4550
SEATTLE, WA 98104
T: 206.624.4900 | F: 206.386.7896

While the parties had had snarky texts in the past, Kurt was shocked when things changed in August 2021. Kurt told Jade that he did not want A█████ vaccinated. She said she wouldn't (A█████ has now received two doses). Around the same time, conflict started about money and a car. Kurt tried everything to talk to Jade. They had used an alternate schedule of vaccination for A█████ in the past. Kurt stated that vaccines are more risky when they are bunched together. Kurt stated that the COVID-19 vaccine is not a vaccine according to statute. Kurt offered the statistic from The Office of National Statistics in England that children 10-14 are 51 times more likely to die if they are vaccinated. Why isn't this screaming across the headlines? Kurt has talked to parents whose 16-year-old died from a myocardial problem after vaccination. Kurt referred to vaccinations as "experimental jab projects". He has been researching this for two years. He doesn't make claims that he can't back up.

On August 23, 2021, the police came by Kurt's house (but were unable to serve him). He instantly knew an order had been entered against him. He drove around and then called and asked the court clerk if a restraining order or DVPO had been filed and it had been. There was also a bench warrant out for him. He stated that the judge had violated his oath under the constitution. He had tried to get into the courthouse but was not allowed in without a mask. He was not allowed to appear in court. He can be the squeaky wheel and some people in power don't like it. He is pretty sure that Jade knew about the warrant. He was not served that day so he proactively called the police and asked if he could pick up the order from them. He was trying to follow the law. The next morning, he went to the North Precinct and got served. He didn't violate any order because he hadn't been served. He told the

GUARDIAN AD LITEM REPORT TO THE COURT
Page 18

**0185**



1   police that he had grave concerns about vaccination being medical experimentation and his

2   son's safety.  He did not commit custodial interference.  Jade accused Kurt of keeping

3   A̶z̶h̶r̶a̶e̶l̶ from talking to her.  Kurt let her know that A̶z̶h̶r̶a̶e̶l̶ was ok but didn't want to talk to

4   Jade. He invited her over to his house.  Kurt grew up with parents in conflict and wouldn't do

5   that.  It was against his beliefs to keep A̶z̶h̶r̶a̶e̶l̶ away from Jade.

6          On September 3, 2021, there was a hearing.  Commissioner Schaefer let Kurt speak

7   and told him he was credible.  She dismissed the DVPO petition.  A̶z̶h̶r̶a̶e̶l̶ still didn't want to

8   go back to Jade's house because he knew what she was trying to do.  Kurt begged A̶z̶h̶r̶a̶e̶l̶

9   to call Jade and would leave the room so that he could do so.  A̶z̶h̶r̶a̶e̶l̶ was devastated after

10  the call with Jade.  Kurt knew that Jade guilt tripped A̶z̶h̶r̶a̶e̶l̶ to get information to use against

11  Kurt (and get him thrown in jail).  Jade tells A̶z̶h̶r̶a̶e̶l̶ that Kurt is a threat to A̶z̶h̶r̶a̶e̶l̶ because

12  he was arrested in front of A̶z̶h̶r̶a̶e̶l̶ and it was emotionally traumatic.  Jade has no problem

13  lying to the police to get Kurt arrested in front of A̶z̶h̶r̶a̶e̶l̶.  Kurt took A̶z̶h̶r̶a̶e̶l̶ to Jade's to visit.

14  He got a call from the police accusing him of violating a court order (the now dismissed order

15  was still in the system).  He then went to the courthouse to get a copy of the order of

16  dismissal.  He texted pictures of the order to police.  He was told to come by the station

17  which he knew meant he would get arrested.  He pulled the car over to call his attorney

18  because he didn't know what to do.  An officer pulled up and showed him a copy of the order

19  that the police believed was still in effect.  The officer didn't look at the order of dismissal that

20  Kurt had.  Kurt stated that the police didn't care about following the law, protecting people's

21  rights, or keeping kids safe.

22

23
    GUARDIAN AD LITEM REPORT TO THE COURT
24  Page 19

                        **0186**



WECHSLER BECKER, LLP
701 FIFTH AVE. SUITE 4550
SEATTLE, WA 98104
T: 206.624.4900 | F: 206.386.7896

1    Kurt was arrested.  Magali came to get A█hrael and badgered A█hrael to say

2    something incriminating about Kurt.  She was not asking impartial questions.  Kurt was

3    released the next day.  He hired an attorney and no charges were filed.  He was unable to

4    reach **Jade** or A█hrael after he was released.

5        On September 12, 2021, Kurt went to Jade's house because he had only been getting

6    one-line responses from A█hrael (really sent by Jade).  Kurt told A█hrael that he would pick

7    him up on the 13th but A█hrael wasn't there.  Kurt thought that A█hrael was getting his

8    second vaccination.  Jade was not honoring the schedule they had been following.  Kurt was

9    concerned but trying not to stir things up.  **Kurt attempted to pick** A█hrael **up from** school.

10   The school had no record of him as A█hrael's parent.  They told him to talk to the district.

11   Kurt tried to talk to counsel for the district.  He **was** A█hrael's presumed parent but they didn't

12   care.  Kurt again went to Jade's house to try to talk to A█hrael while he was in Jade's car.

13   She reversed up the driveway.  Jade was screaming for A█hrael to get in the house.  Kurt

14   stayed in the street to respect Jade's request to stay off of **her property.**  A█hrael was

15   distraught and shut down.  Kurt asked A█hrael **to come** to him but then left when he didn't.

16   A█hrael **texted** him that what happened was scary and that he shouldn't come back (Kurt

17   believes that **Jade** sent the text).

18       Jade denies that Kurt has any parental rights.  Kurt believes that parental rights are

19   important.

20       Kurt called 911 for a wellness check on A█hrael because he couldn't confirm through

21   Jade or the school and A█hrael was not answering his phone.  The police were not coming

22   but when he returned they had talked to Jade.  The police told Kurt that he was harassing

GUARDIAN AD LITEM REPORT TO THE COURT
Page 20

**0187**



WECHSLER BECKER, LLP
701 FIFTH AVE. SUITE 4550
SEATTLE, WA 98104
T: 206.624.4900 | F: 206.386.7896

1    Jade.  They threatened to arrest him, saying "we know you are trying to set us up."   He

2    hasn't sued the police or sent them any tort letters.  They have the impression that he is a

3    cop hater (when he actually has a good friend who is a police sergeant).  Kurt just wants

4    people to follow the law.  Most officers at the North Precinct don't respond well to him even

5    when he is concerned about his kid.

6          In September 2021, Kurt tried to get a DVPO regarding vaccination (based on no

7    informed consent being given) but that request was denied.  At the end of September 2021,

8    a petition to establish parentage was served on him.  Jade's petition for a parenting plan and

9    parentage was fraudulent as it stated that no parent had held Azhrael out.  Kurt stated that

10   Jade has referred to him as Azhrael's father in many places and no one has wondered who

11   his father is.

12         At the October 25, 2021 hearing (which was supposed to occur within 14 days), Kurt

13   was given time with Azhrael on Tuesday and Thursdays 6-8 p.m. via Zoom and 4 hours of

14   supervised time on Saturday or Sunday.  He was represented by Richard Pope at that

15   hearing.  At a March 2022 hearing, Kurt's time was changed to every other weekend both

16   days. This was not his preference or Azhrael's.  Kurt reported that the Zoom visits during the

17   week have been happening.  They have done some of the supervised visits.  He had not

18   received any supervision reports.  Kurt described supervision as unnatural.  During Zoom

19   and in person visits, they like to go outside and also stay in and cuddle, watch movies, hold

20   hands, and play games.  Kurt finds Zoom frustrating but they are able to play games

21   together, read books and just be together.

22

23
GUARDIAN AD LITEM REPORT TO THE COURT
24   Page 21

**0188**



Kurt stated that when he really loves someone that he feels that physical contact is a way of showing love that is much more sincere and truer than any word could be. He has always been really hands-on with Azhrael (when he as a baby too). They are bonded. He takes offense that fathers can't provide at least as much nurturing as mothers. He fills his cup with physical love. He finds Jade to be more lenient with screens and technology. He is helping Azhrael with technology and using it was a coping mechanism.

When asked about Jade's mental health, Kurt responded that she has no diagnosis but takes meds for something. She saw a therapist when they were first dating. He couldn't see that she was willing to take responsibility for her actions. Kurt saw therapist Stacy Sprouts who gave him a medical exemption from mask wearing. She diagnosed him with Legal Abuse Syndrome.

When asked what his proposed parenting plan is, Kurt responded that it depends on Jade making steps with her anger and lies. The environment at Jade's is toxic. Jade and Magali carry a lot of anger and resentment toward him. He believes that Jade needs therapy. Jade and Magali bad mouthed him for the last year. They call him racist and crazy. They are having Azhrael lie to him. They are attacking him even though Azhrael loves and respects Kurt and looks up to him. As a parent, Kurt is open to his kids telling him that he made a mistake. He feels that Azhrael can be trusted with his own best interest regarding a residential schedule. He would like a more weighted schedule with four days to one parent and two to the other alternating. The holidays that he is interested in are Father's Day, Halloween, and Christmas.

GUARDIAN AD LITEM REPORT TO THE COURT
Page 22

**0189**

The parties have diverged a bit on educational decisions. Kurt hired a tutor during the prior school year. Kurt has advocated for Waldorf school but is not sure that Jade has looked into it or just googled it. He didn't push it hard. If Azhrael wanted to go to Waldorf, Kurt would pay for it. The parties have limited contact now via Our Family Wizard. Jade has talked about going to Spain.

In Fall 2019, Kurt was concerned about the safety of the vaccines Azhrael was getting. He tried to have a dialog with Jade about it but gave up. Resentment builds when he continues to give up. He felt that it was negligent on his part to not explain his side of medical decisions to Azhrael. He wants to take him to a naturopath. They don't have disagreements about religion.

Kurt was part of a cult, New Gnostic Church, before Azhrael was born. He credits that experience with learning lessons about people's dishonesty. He went to the police in 2004 because his daughter disclosed abuse in the cult.

Jade's mother is an alcoholic. Jade's drinking is a coping mechanism for her prostitution. Not a big issue now but her underlying problem is not the alcohol. He reported that she has used drugs recreationally and no longer blacks out. He hardly drinks alcohol. He dabbles in substances and micro-dosing psilocybin a few times a month.

Kurt has lived in Seattle his whole life and has no plans to move. He currently lives alone. His adult daughter, Samara, and her family live in Edmonds. Kurt is the reverend of a home church where he grows marijuana. He subsists on "donations." His work gives him flexibility and allows him to be available for Azhrael. He only works Tuesday, Wednesday,

GUARDIAN AD LITEM REPORT TO THE COURT
Page 23

**0190**



WECHSLER BECKER, LLP
701 FIFTH AVE. SUITE 4550
SEATTLE, WA 98104
T: 206.624.4900 | F: 206.386.7896

and Thursday mornings.  He ran a remodeling business until 2013 and still does some small projects.  Jade's work schedule is inconsistent.  She takes trips and her work fluctuates a lot.

**Dawn Samuelson:**  I spoke with Ms. Samuelson by phone on August 1, 2022.  She originally met Jade through mutual friends but then met her again when they both had toddlers.  She also knows Kurt.

Ms. Samuelson described Jade as non-judgmental, calm, chill, loving, patient, and a caretaker.  She trusts Jade with her kids overnight.  She has no concerns about Jade's parenting.  She thinks that Jade kept letting Kurt back in for too long.  She finally was done with him after Magali came into the picture (which was a messy situation).

Ms. Samuelson described Kurt as a playful parent when the kids were young.  He acted like a kid with them.  He liked to engage with them in sports and roughhousing.  Her kids enjoyed playing with Kurt.  He was also frequently late or would fall asleep when he was supposed to be picking up A█████.

Over the last four to five years, Ms. Samuelson noticed that Kurt was becoming increasingly unhinged and paranoid.  He thought that people were out to get him.  His opinions got more extreme.  Kurt thought that COVID was not real.  He kept spamming her with emails and information and using expletives.  She blocked him.  He contacted her then 11- or 12-year-old via text with the same types of information.  Ms. Samuelson is also concerned that the Kurt has filled A█████'s head with lies.  She was worried when he took A█████ and did not respond.  She thought that the kidnapping was due to his beliefs about COVID vaccination.

GUARDIAN AD LITEM REPORT TO THE COURT
Page 24

**0191**



WECHSLER BECKER, LLP
701 FIFTH AVE. SUITE 4550
SEATTLE, WA 98104
T: 206.624.4900 | F: 206.386.7696

1    Ms. Samuelson described a time when she was at the park with A█████ and her kids.

2   A█████ told Kurt where they were.  He came to the park and joined them without being

3   invited. When she told him that maybe they could get together another time, he told her that

4   maybe A█████ can't stay at the park with her.  She saw this as him being possessive of

5   A█████.  She also found this threatening.  Last summer, she met Kurt at Wild Waves with

6   the kids.  He was late and forgot to bring food, sunscreen, or a bathing suit.

7    Ms. Samuelson hasn't dealt with Kurt since last summer. She is no longer comfortable

8   being around Kurt.  She thinks that if he wants A█████ in his life, he should change for him.

9   The situation makes her sad.  She is worried that if Kurt is cut off from A█████, he may do

10   something scary.

11    Ms. Samuelson reported that Kurt micro doses with small amounts of molly and

12   mushrooms.  She felt like it might have amplified his behavior.

13    Ms. Samuelson described Kurt as preaching at the kids.  He also has a terrible filter

14   around the kids and talks to them about inappropriate topics.  He is also compulsive about

15   this. A█████ doesn't talk about the court case or Kurt to Ms. Samuelson.  She feels that he

16   bottles it up.  She wants what is best for A█████.

17    When the kids were in co-op preschool, Kurt was angry and threatening with another

18   mother and almost got A█████ kicked out of the preschool.  There was a restraining order

19   against him.  Jade had to deal with Kurt's behavior at the preschool.

20    **Kyrrah Nork:** I spoke with Mr. Nork by phone on August 1, 2022.  He has been

21   friends with Kurt since 2016 and also knows Jade.  He served as a tutor for A█████ during

22   online schooling.  He is a STEM professor at Seattle Central College.

23
     GUARDIAN AD LITEM REPORT TO THE COURT
24   Page 25

**0192**



1    Mr. Nork researched accredited curriculums and worked with Azhrael primarily on

2    math and science. He stated that Azhrael picks things up quickly. Azhrael did well with

3    schoolwork and was involved. Mr. Nork would have to get on him about homework

4    sometimes. He generally did homework first then on to other things. He noted that Azhrael

5    was more on time for school at Kurt's house than at Jade's.

6    Mr. Nork described Kurt as a really good dad who is supportive of Azhrael. Jade was

7    also supportive of his work with Azhrael but took more nudging to help out.

8    Mr. Nork described Kurt as a helping with homework and giving Azhrael a hug before

9    school. He is good at parenting in a playful way. Azhrael told Mr. Nork that he wished that

10    he could stay at Kurt's although he didn't say anything bad about being at Jade's. He has no

11    concerns about Kurt's parenting. He was not concerned about Kurt selling marijuana and

12    having clients come to his home. Azhrael never went downstairs where Kurt's plants are.

13    Azhrael does know about Kurt's business. When asked about Kurt's extreme views, Mr.

14    Nork didn't see any negative impact on Azhrael. He didn't feel that Kurt was saying anything

15    inappropriate or influencing Azhrael.

16    Mr. Nork's is concerned that it seems like no one is home with Azhrael at Jade's

17    house and that she is not present. He believes that she is not as active and present as Kurt.

18    Kurt is really involved with Azhrael academically. He was home alone at Jade's in the sixth

19    grade and reported eating only cookies. Magali also posted on Twitter about only feeding

20    Azhrael cookies while Jade was away. He is also concerned about Jade's choice of work

21    (which he believed to be as a sex worker) in that she would have clients in her home. He

22    knew about her sex work from a website (now taken down) and had talked to Jade about it.

23

GUARDIAN AD LITEM REPORT TO THE COURT
Page 26

24

**0193**



WB⅃⅃ᴾ WECHSLER BECKER, LLP
701 FIFTH AVE. SUITE 4550
SEATTLE, WA 98104
T: 206.624.4900 | F: 206.386.7896

1    As a mandatory reporter, he did not feel that it rose the level of him making a report. If it

2    had, he would have talked to Jade first. A⬛⬛⬛ does know about Jade being a sex worker.

3    He found out from her in 2020.

4       Mr. Nork has not heard any negative talk about the other parent around A⬛⬛⬛. It is

5    between them and not A⬛⬛⬛. Mr. Nork wants what is best for A⬛⬛⬛. His personal

6    opinion is that A⬛⬛⬛ is a smart kid and is old enough and knowledgeable enough to tell me

7    what he wants. He described him as an honest kid. He likes video games. A⬛⬛⬛ is

8    happier going to Kurt's. His smile goes away when he has to go back to Jade's.

9    **Laura Rose:** I spoke with Ms. Rose by phone on August 5, 2022. She met Jade in

10    2008 through Burning Man. They became close friends right after A⬛⬛⬛ was born and are

11    best friends. They used to live a couple of blocks apart and became running buddies about

12    10 years ago.

13    Ms. Rose doesn't see Jade as much currently because of COVID and that's been

14    hard on their friendship. In the last year, she saw Jade about once a month and saw A⬛⬛⬛

15    at bigger events.

16       Ms. Rose described Jade as dedicated, thoughtful, full of grace, kind, non-reactionary,

17    intelligent, and a great example. Ms. Rose has looked up to her as a parent and feels that

18    Jade paved the way for her own parenting. Jade has often operated as a single parent and

19    brought A⬛⬛⬛ places with her. Her only concern about Jade's parenting was when

20    A⬛⬛⬛ was not fully vaccinated as a younger child.

21       Ms. Rose found it hard to describe Kurt as a parent. There was a weird vibe in the

22    home. He would not acknowledge her when she visited. He slept weird hours. A⬛⬛⬛ did

23

GUARDIAN AD LITEM REPORT TO THE COURT
Page 27

24

**0194**

WB   WECHSLER BECKER, LLP
701 FIFTH AVE. SUITE 4550
SEATTLE, WA 98104
T: 206.624.4900 | F: 206.386.7896

1   not want to be left at home with Kurt and would instead want to go with Jade. She hasn't

2   seen a lot of parenting from him. She felt that he was there but not really around. He tried to

3   participate sometimes. She thinks that the way that Kurt and his friends don't acknowledge

4   the presence of others is creepy and a bad example. Ms. Rose doesn't know what Kurt's

5   business dealings are. It is possible that his business brings violence into his household.

6   She stated that Azhrael smelled of marijuana sometimes.

7        Ms. Rose viewed some of the recorded Zoom calls between Kurt and Azhrael. On the

8   one hand, she saw a father who loves his son and is affectionate. She felt sad for Kurt.

9   Conversely, Kurt showed Azhrael an anti-transgender video which she described as nasty

10  and offensive stuff. Azhrael was disturbed by it and was done watching it but Kurt kept

11  explaining and not stopping the video when Azhrael asked him to.

12       Ms. Rose stated that she is grateful for Magali being the catalyst for Jade getting out

13  of the co-parenting and co-habilitating relationship with Kurt. It really helped her to get out.

14  Ms. Rose stated that Jade was in an abusive relationship with Kurt. Magali also encouraged

15  Jade to go to therapy and normalized therapy.

16      **Samara Lane:** I spoke with Ms. Lane by phone on August 5, 2022. She is Kurt's

17  adult daughter from a prior relationship (he was 17 years old when she was born).

18       Ms. Lane reported having a strong and positive relationship with Kurt. They worked

19  hard to become closer. He comes over to her house. He babysits her four-year-old

20  daughter. She feels safe and loves her father.

21       Ms. Lane also has a relationship with Jade. It can be awkward at times. She loves

22  and respects both her father and Jade. Azhrael comes over to her house once and a while.

23
24  GUARDIAN AD LITEM REPORT TO THE COURT
Page 28

**0195**

WB LLP   WECHSLER BECKER, LLP
701 FIFTH AVE. SUITE 4550
SEATTLE, WA 98104
T: 206.624.4900 | F: 206.386.7896

He and Jade both come for dinner. Jade is a great parent and Ms. Lane thought that Jade and Kurt made a great team. Jade gets to eye level with A█████ to talk to him. She has met Magali but doesn't know her. She has no concerns about Jade.

Ms. Lane lived with Kurt when she was a teenager. She went through a lot (including the cult they were in). Kurt was loving and cared for her best interests. He advocated for her and was protective. Kurt and her mother worked together at the time. They had a good relationship. With A█████, Kurt had a safe word when there was too much tickling and respected it. This was a great example of parenting and was conscious, safe, and secure. She has no concerns about Kurt but described him as having a reputation for being eccentric and ruffling feathers. He apologizes if he hurts someone's feelings. When asked to elaborate on Kurt being eccentric, Ms. Lane said that he was consumed by helping her in relation to the cult. During COVID, Kurt's eccentric side came out with the police over masks. She has had extensive conversations with him about it. She feels that he is doing right by A█████ and that what he talks to A█████ about is coming from a good place (and are parenting decisions).

Ms. Lane described A█████ as impressive for his age. She stated that the parents need to figure it out. He wants to go where he wants. He thinks that it is crazy and wants to talk to Kurt.

Ms. Lane's opinion is that things between Jade and Kurt have been taken the wrong way. She has encouraged both to try mediation. This could have been prevented. A█████ shouldn't be separated from either parent. She is sad for all of them. Anything other than 50/50 time with each parent feels wrong to her.

GUARDIAN AD LITEM REPORT TO THE COURT
Page 29

**0196**



WECHSLER BECKER, LLP
701 FIFTH AVE. SUITE 4550
SEATTLE, WA 98104
T: 206.624.4900 | F: 206.386.7896

**Eric Woodward:** I spoke with Mr. Woodward by phone on August 5, 2022. He is Azhrael's former counselor. He saw him for four or five months starting in September 2021 when Azhrael was returning to in-person school and after he was with Kurt for several weeks. Azhrael chose to discontinue therapy when he turned 13 years old. Mr. Woodward would be willing to resume therapy if Azhrael wanted to. During their time working together, Azhrael showed up for appointments and participated.

Mr. Woodward started seeing Azhrael right after Kurt took Azhrael and he didn't have access to Jade for several weeks. They did some trauma work around that plus worked on anxiety and self-esteem. He talked with Azhrael mostly about peer relationships and friendships. He described Azhrael as a smart kid. He has trouble talking about close relationships probably because of feelings of loyalty and feeling threatened. It is complicated for him to connect to emotions.

Mr. Woodward could not recall any concerns about the parents. He didn't have any contact with Kurt. He had one or two check ins with Jade. He did not directly see either parent parenting.

**Magali (Justice) Lerman:** I spoke with Magali via Zoom on August 10, 2022. She also followed up with me via email. She is engaged to the mother. They met online in 2019. There first in-person date was in March 2019. She met Azhrael right away because Kurt had failed to pick him up. She had planned to stay in Seattle only briefly and then move to LA. She is from Colorado, like Jade, and still has family there. She would consider moving back there.

GUARDIAN AD LITEM REPORT TO THE COURT
Page 30

**0197**



WECHSLER BECKER, LLP
701 FIFTH AVE. SUITE 4550
SEATTLE, WA 98104
T: 206.624.4900 | F: 206.386.7896

1    Magali acts as a consultant on issues around sex work and sex trafficking. She used

2    to travel a lot for her work but that slowed down during the pandemic. She engaged in legal

3    pornography outside of the home in order to support herself during the pandemic but

4    stopped about a year ago. She has not done illegal sex work since 2009.

5    When Magali and Jade first started dating, Kurt would not let her come over for the

6    first four months. Jade described her relationship with Kurt as complicated which worried

7    Magali. Magali described Jade's relationship with Kurt as untenable, exploitive, abusive,

8    violent, and scary. Jade didn't use that language and Magali sees that it is hard for Jade to

9    admit. She urged Jade to move away from Kurt. Multiple events led to Jade and Azhrael

10   moving out. Magali told Jade that she would move with her. Jade bought the house herself

11   (meanwhile Magali is trying to buy a place in Puerto Rico). Jade tends to see the rosy side.

12   They were worried that Kurt would act out (because he is an abuser type) and got in touch

13   with Northwest Network where they both had separate DV advocates. Kurt started getting

14   arrested around his stances about masks and COVID. Magali also noted that Kurt is a white

15   supremacist and misogynist.

16   Magali described Jade and Kurt's parenting agreement as problematic. Azhrael often

17   didn't want to go to Kurt's house. Magali didn't want to leave Jade in that arrangement with

18   Kurt. Whatever Azhrael wanted to do regarding the residential schedule is what happened.

19   This put pressure on Jade and gave Azhrael an undue sense of self. The only way that Kurt

20   would listen to Jade was if Azhrael wanted to do something. This put Azhrael in a bad

21   position that he had to navigate. When Azhrael was with Kurt, he would often want to come

22   home early.

23

24   GUARDIAN AD LITEM REPORT TO THE COURT
     Page 31

**0198**



WBLLP  WECHSLER BECKER, LLP
701 FIFTH AVE. SUITE 4550
SEATTLE, WA 98104
T: 206.624.4900 | F: 206.386.7896

1    Kurt sells drugs and is not licensed to sell marijuana.  He has a grow operation in the

2    basement.  He ships it.  Magali reported that she has seen Kurt use drugs including meth,

3    cocaine, mushrooms, ecstasy, and DMT.  Some drugs made Kurt's behavior better.  She

4    believes that he also has unchecked mental illness.  He was convicted of a drug felony

5    (Magali attributes him not serving time in jail to white privilege).   Magali has been

6    incarcerated and on probation for drugs in the past.  Magali doesn't think that a child should

7    grow up in a drug house with people in and out.  In the home Kurt lives in, Magali has seen

8    white supremacist types (Kurt is part of a network and was formerly in a cult).  She has also

9    seen young 20-something, black sex workers from Aurora that Kurt tries to pimp out.  She

10   has met three of them.  Kurt tries to get them to deal drugs for him but then drops them when

11   they become dependant on him (which classifies as trafficking them).  Magali related that in

12   April 2022 Kurt was included on a Bad Date Report which is a place for sex workers to report

13   bad conduct of customers.  Kurt was described as refusing to let a sex worker leave his

14   home.

15       Magali is concerned that Kurt may have sold Azhrael to an underground network of

16   traffickers during the three weeks that Kurt had him last year.  No one knows what happened

17   during that time and Azhrael hasn't talked about it.  She described Kurt and Azhrael's

18   relationship as having a trauma bond – Azhrael dissociates when he talks about it.  They

19   have told the police about Kurt's dealings but with no results.  Azhrael will not say bad things

20   about Kurt.

21       Magali reported that Kurt hacked her social media accounts, contacted the police

22   about her, sued her, and sent people from his "church" to harass her.  She doesn't have

23   GUARDIAN AD LITEM REPORT TO THE COURT
     Page 32

24                      **0199**



WECHSLER BECKER, LLP
701 FIFTH AVE. SUITE 4550
SEATTLE, WA 98104
T: 206.624.4900 | F: 206.386.7896

1   shared friends with Kurt online – he hacked her account and then read it to Azhrael.  Kurt

2   has reported Magali and Jade to CPS.  Magali has to be hypervigilant.  Her mental health

3   has been affected by this.  She noted that she is not covered by the current restraining order,

4   only Jade and Azhrael are.

5       Magali has seen and heard Kurt berate Azhrael on Zoom calls.  She has also seen

6   him grab and shake Jade and Azhrael.  Kurt has trashed and destroyed property.  Azhrael's

7   reaction is to hide under the bed.  She is very afraid that Kurt will kidnap Azhrael and/or kill

8   Jade.  She believes that Kurt will run with Azhrael if he is left unsupervised.  In the past, Kurt

9   forced Jade to tell Azhrael about her being sex worker.  Kurt has asked Azhrael to spy on

10  them for him in regard to males who come to their house (who Kurt argues are sex work

11  clients).  They have looked for good male role models for Azhrael.

12      Magali believes that Azhrael should not have contact with Kurt.  She thinks that Kurt is

13  currently in a depressive cycle.  Kurt should undergo a mental health assessment and take

14  medication.  He should be drug tested.  He doesn't use much marijuana and does not drink

15  alcohol.  It is Magali's understanding that Kurt was abused as a child.

16      Magali stated that Jade has a higher tolerance for BS than others do.  She has

17  maintained a relationship with Samara, Kurt's adult daughter.  Samara can't stand up to Kurt.

18  She offered supervise visits.  Jade wants Azhrael to have family, including Samara.

19      Magali described Jade as a great mom who plays mom to their group of friends.  She

20  is caring, loving, and gives unconditional love.  Jade is interested in who Azhrael is as a

21  person.  They have a strong bond.  She engages in what Azhrael likes but has tried to

22  broaden his horizons.  She meets him where he is but pushes him a little.  Magali is there to

23
    GUARDIAN AD LITEM REPORT TO THE COURT
    Page 33
24
                    **0200**


WECHSLER BECKER, LLP
701 FIFTH AVE. SUITE 4550
SEATTLE, WA 98104
T: 206.624.4900 | F: 206.386.7896

1  help Jade establish boundaries and consistency for A███. A███ didn't have a lot of

2  boundaries but it is something that Jade is getting better at creating for him.  Jade is

3  endlessly loving and fun.  Jade is very good at having serious talks with A███ – she

4  catches him in the right moment.  She gives him consequences or incentives (like earning

5  screen time), not punishments.  He is a good kid who doesn't do anything worse than not

6  doing homework.  Jade takes A███ places with her most of the time.  Magali has no

7  concerns about Jade's current parenting now that she is away from Kurt.

8       Magali feels that Jade has a lot of healing to do from abuse by Kurt.  This is hard on

9  her executive functioning.  She also noted that Jade's pregnancy was not consensual.

10      Jade has not been a sex worker for years now and not since Jade and Magali have

11  been together.  Kurt has coercively controlled Jade's resources (which is technically

12  trafficking).  He uses her past sex work against her.

13      A███ was referred to an advanced learning program.  Magali doesn't think that

14  Waldorf would be appropriate.  Magali believes that A███ may be autistic.  They have

15  gotten a referral for evaluation but there is a long wait.  It may also be that his symptoms are

16  a result of trauma.  She cited his symptoms as including not using silverware, not performing

17  self-care tasks, and sleeping with his parents at age 11.  He misses social cues and talks at

18  people.  He is smart and can get obsessed with things.  He was slow developmentally

19  (walking for example).  He was too scared to do most things.  Four or five people mentioned

20  these things to Jade but she could never address it with Kurt.  Kurt also undoes the progress

21  that Jade makes with A███ in teaching him things.  Kurt tends to infantilize A███.

22  A███ didn't have his own room at Kurt's house.  It took nine months for him to sleep on his

23  GUARDIAN AD LITEM REPORT TO THE COURT
   Page 34

24                              **0201**



WB<sub>LLP</sub>   WECHSLER BECKER, LLP
        701 FIFTH AVE. SUITE 4550
        SEATTLE, WA 98104
        T: 206.624.4900 | F: 206.386.7896

1   own. A̶z̶h̶r̶a̶e̶l̶ can be a slow, cautious, and lazy kid.  Magali was surprised when A̶z̶h̶r̶a̶e̶l̶

2   walked to Kurt's house.  He usually won't go out alone.  He gets frustrated when they are not

3   on time.  He does take the bus alone.

4        In April 2020, their household got COVID from Kurt so they were unable to form a pod

5   with other families.  A̶z̶h̶r̶a̶e̶l̶ spent more and more time isolated.  Many of A̶z̶h̶r̶a̶e̶l̶'s friends

6   were queer and trans kids.  He isn't talking those kids now and is saying homophobic things.

7   **Home Visit with Mother and Interview with Child:** I visited Jade's home on July 19,

8   2022.  Magali and Jade gave me a tour of the house.  The home is in Northeast Seattle on a

9   dead-end road with little traffic.  It is a split level.  A̶z̶h̶r̶a̶e̶l̶ has his own room and bathroom

10  upstairs.  Jade and Magali's bedroom is also upstairs.  The lower level is used for Jade's

11  sewing business, a guest room, and garage.  The family has four cats.  The house is within

12  walking distance of Kurt's house.   The house is well kept and had no obvious safety

13  concerns.

14       Jade and Magali's interactions with A̶z̶h̶r̶a̶e̶l̶ that I witnessed were relaxed and

15  comfortable.  After the tour, Jade and Magali both left the home so that I could speak with

16  A̶z̶h̶r̶a̶e̶l̶ with no interruptions and so that A̶z̶h̶r̶a̶e̶l̶ could speak openly.  He was given the

17  option of us taking a walk but chose to talk at home.

18       A̶z̶h̶r̶a̶e̶l̶ is a normal seeming 13-year-old boy.  His main interests include video games

19  and board games.  Video games were his favorite topic of conversation.  He also likes math.

20  He told me a story about fracturing his elbow on a trampoline (he was set to get his cast off

21  later that week).

22

23  GUARDIAN AD LITEM REPORT TO THE COURT

24  Page 35

**0202**

WECHSLER BECKER, LLP
701 FIFTH AVE. SUITE 4550
SEATTLE, WA 98104
T: 206.624.4900 | F: 206.386.7896

When asked about a residential schedule, Azhrael wants to be able to go back and forth between his parents' houses freely. He would prefer that his days with his father are weekdays. He told me that Magali is ok but she gets more mad about Kurt than Jade does. He also wants this case to be over. When asked about why he recently left his mother's house and went to his father's house, he told me that he misses his time there. He doesn't like Zoom visits or supervised visits although he did like the supervised visits where they could be outdoors. Azhrael didn't have much to say about his parents talking to him about the court case. He didn't have many complaints about either parent or how they treat him. He is fine with going from one house to the other.

Azhrael likes living at his dad's house more because he has lived there longer. His dad told him that they could convert one room into a game room which Azhrael is looking forward to. When asked what he doesn't like about being at his mom's house, he responded that he wishes he had a computer monitor in his room. Azhrael likes to eat meat and mac and cheese. He doesn't like Brussel sprouts. Both of his parents cook for him. He likes his father's pancakes.

Azhrael has friends at school but some will be moving on to high school or other schools next year. He is not sure which high school he will attend. He is interested in a Waldorf school based on what his father told him about it which included that Waldorf students are polite and move through school as a cohort. He stated that public schools are trash. Azhrael likes to play pickleball which he plays with both parents. He liked his robotics and rocket camps this summer. This summer he also visited Colorado to see his grandmother.

GUARDIAN AD LITEM REPORT TO THE COURT
Page 36

**0203**



WB LLP  WECHSLER BECKER, LLP
701 FIFTH AVE. SUITE 4550
SEATTLE, WA 98104
T: 206.624.4900 | F: 206.386.7896

1    **Home Visit to Father's House:** I was unable to visit the father's home because he

2    discontinued his participation in the case and my investigation before I could do so.

3    **Zoom Calls between Father and Child:** I reviewed some of the Zoom calls that

4    took place between the father and the child which were provided by the mother. Because

5    there are hours and hours of calls, I was only able to review a selection and am summarizing

6    what I viewed.

7    The father engages Azhrael in Uno, tells him that he is happy to be there with him,

8    and at times they seem to be having a good time. They have common interests.

9    Unfortunately, the father also used his three hour Zoom calls to lecture the child, inform him

10   about the litigation and alleged lack of jurisdiction, tell him that his mother is a liar who is

11   trying to take Azhrael from him, tell him that the COVID vaccine is experimentational, offer

12   him $100,000 for proof that the vaccine is safe, ask him what Jade tells him, and ask Azhrael

13   to tell him why he (Kurt) is crazy. These subjects permeated the calls. Azhrael often looked

14   away and did something else when Kurt went talked about these issues. Even when he was

15   clearly uninterested or done with a topic, Kurt kept talking. He forced Azhrael to keep having

16   these types of conversations.

17   In a December 2, 2021 call, the father attempted to bribe the child to get proof that the

18   COVID vaccine is safe in an effort to call the mother's "bluff". **He suggested that** Azhrael say

19   to his mother, "I mean, you have it right, mom, because you researched it before you had

20   subjected me to an ongoing medical experiment that's not even finished yet, right?" He also

21   **encouraged** Azhrael **to "talk** some trash." He went on to refer to Jade as a lying fucking

22   crazy bitch and the CDC as corrupt. He also said, "And, I assure you, if Jade and Magali

23
GUARDIAN AD LITEM REPORT TO THE COURT
24   Page 37

**0204**



WECHSLER BECKER, LLP
701 FIFTH AVE. SUITE 4550
SEATTLE, WA 98104
T: 206.624.4900 | F: 206.386.7896

could push a button and have me sent off to a fucking gas chamber they'd probably do it."

He also talked about Jade wanting to take his house, his car, and his child. He talked at length about how he and Jade cannot both be telling the truth. At another point in the December 2nd call Kurt said,

> "On some deeper level they are aware of when they are about to be caught in a lie or, you know, like a, a logical fallacy. And, they avoid directly discussing the specifics of the subject. That's why Jade... None of Jade and her friends would ever actually talk about the facts. I'm talking about facts from the motherfuckin' CDC's own website. I'm not talking about some...somebody said on the inten- I'm talking about their own fucking CDC that they think is so perfect even though it's obviously corrupted. So, when somebody who's brainwashed to believe that the CDC is always telling you the truth and cares about your health and then they, they refuse to sit down and talk to me about the fact that the CDC is saying stuff that's contradictory and hiding shit, like actual evidence, that's how you know, or, that's a good indicator that somebody's probably brainwashed. They're refusing to look at the truth. Because if they look at the truth they have to admit the fact that they've been fooled and that they'd been lying to themselves and they'd been lying to other people. And, it's real hard for people's egos – a lot of people – to go, 'oh my god, I got lied to, I got screwed, I was an ASS..HOLE. I was a FUCKING ASSHOLE to all these people. Oh, I took, I took the, I took my child from his loving father because I thought he was a crazy asshole. Oops, guess what? I'm the lying fucking crazy bitch. That's pretty hard for, for most people to admit they fucked up that bad. (A⬛ says, "ya") So they will avoid at all costs sitting down at a table. Like, why do you think she went and lied to a judge so I can't even talk to her? Because she can't handle the truth. It was freaking her the fuck out. And, she would rather would steal my kid, and steal my car, and lie in court and, try and fuck my life up in every way possible because I was telling her the truth and I, like, I was the reason she was feeling uncomfortable because I was attached to her little fairy tale about how things are than the truth. (A⬛ says, 'hmmm, interesting) You know, if you go back to Nazi Germany, you know...how to say this... I was at the post office today. I could see in, in a few people's eyes that if, if they could just have me sent off to the gas chamber, they motherfuckin' would. Right now. If they could just push a button and say, 'off the the gas chamber with that guy' they would have pushed it. It wasn't just in Nazi Germany, it's what happens to people in situations like this. And, I assure you, if Jade and Justice could push a button and have me sent off to a fucking gas chamber they'd probably do it."

GUARDIAN AD LITEM REPORT TO THE COURT
Page 38

**0205**



WECHSLER BECKER, LLP
701 FIFTH AVE. SUITE 4550
SEATTLE, WA 98104
T: 206.624.4900 | F: 206.388.7896

During a February 10, 2022 call, Kurt said that it had been 5 months and 7 days since someone drove away in his car all "because I was trying to make sure you weren't subjected to an illegal medical experiment without your informed consent because I know the laws very well." He then went into a lengthy story about his experience with the cult where the leader was molesting his daughter. He also talked about a specific October 25, 2021 court hearing, explaining what he argued at the hearing, that A████ has a right to be with both parents, that King County Superior Court is criminally liable for not doing anything about A████ receiving COVID vaccinations, and that if people don't start caring about children there will be consequences and it is not his fault.

In the same call, Kurt said that, "I've been, umm, I've been writing documents like I'm basically telling the, the, the family law court judge, like I've got a 40 page document that I am going to serve him personally with that says page after page after page of, 'excuse me sir but you broke the law this way and that way and that way and that way and, I have been very patient with you but your ass is grass now'." Later he said that, "...suffice to say I have a lot of screws that I am turning on a lot of liars and I'm gonna turn those screws until the liars admit that they were doing things wrong and you and I are reunited." He also told A████ that a voice in his head told him that Jade wanted to have His baby.

During a March 10, 2022 call, Kurt looked at Facebook and read Magali's posts to A████. He told A████ that Magali is a liar, that she's a convicted felon for theft (Kurt is a convicted felon, too), and that she was a drug addict for six years. He called Magali a "bitch." He read from another where Magali asked for tips about talking to a traumatized 12-year-old about emotional and psychological abuse. He then clarified that that was her way of

GUARDIAN AD LITEM REPORT TO THE COURT
Page 39

**0206**


WECHSLER BECKER, LLP
701 FIFTH AVE. SUITE 4550
SEATTLE, WA 98104
T: 206.624.4900 | F: 206.386.7896

1   saying that he's an abuser in an outraged tone. Azhrael just sighed. He went on later to talk

2   about how what he's reading on Facebook is evidence that he can "use in court about what

3   they are doing." After saying he would not share anymore with Azhrael, he again read from

4   her Facebook page and, again, called her a bitch. He later talked about her being a

5   prostitute.

6       During a June 11, 2022 call, Kurt showed Azhrael a video entitled, "What is a

7   Woman?" by Matt Walsh. The video discussed Dr. John Money who conducted

8   questionable experiments regarding gender, featured a transgender individual who speaks

9   out against medical intervention in transitioning, and continued to question how we define

10  gender. After Azhrael said that he is done with the video, Kurt kept going with it. Later Kurt

11  talks about how he will not be at Azhrael's graduation and someone will need to record it for

12  Kurt.

13      During a July 10, 2022 call, Kurt shared that he found out that the court doesn't have

14  jurisdiction. He had Azhrael read from the Restraining Order. He called it the Restraining

15  Order toilet paper. He told Azhrael that he is not stuck at Jade's anymore. He told Azhrael

16  that he sent emails about this and contacted the police. Kurt further talked about how stupid

17  police officers are. He told Azhrael that he is free to do what he wants and that the "ten

18  months of bullshit is over." Kurt promised to throw a party. Kurt engaged both kids about the

19  definition of vaccine. Azhrael's best friend was present and involved in the call too.

20      Calls on May 12, 2022, July 10, 2022, July 12, 2022, and August 8, 2022 were

21  detailed in the mother's declaration in support of suspending the father's Zoom calls. Kurt

22  had Azhrael read from the Restraining Order, claimed that the Restraining Order isn't valid,

23

24  GUARDIAN AD LITEM REPORT TO THE COURT
    Page 40

**0207**



1 he advocated for an alternate supervisor, discussed the history of the family law case, said

2 he is coming for the mother's counsel and Judge Keenan using expletives, said the attorney

3 is a liar, called the mother and Magali liars and criminals, blamed the case on A████,

4 encouraged A████ to leave his mother's home and meet him, claimed the mother won't

5 mediate, said that he is withdrawing from the family law case, and that the court doesn't have

6 jurisdiction.

7    **Our Family Wizard Messages:** I reviewed the messages between the parties on Our

8 Family Wizard (OFW) parenting app. The majority of the messages exchanged were around

9 logistics of supervised visits and Zoom calls. Jade's tone was neutral and the content of her

10 messages informative, keeping to issues regarding Azhrael. She did not demean or insult

11 Kurt. Kurt's messages up until this summer were largely polite, informative, and keeping to

12 parenting A████ and logistics. Starting this summer, Kurt's messages more often

13 digressed into insulting Jade and her attorney and making accusations. His messages

14 included calling Jade and her attorney liars and accusing them of perjury; accusing Jade of

15 isolating Azhrael and committing custodial interference; stating he would call 911; asking for

16 extensive information about Azhrael's COVID vaccinations; complaining about At Indaba;

17 telling Jade he was withdrawing from the case; refusing to mediate the case except by

18 family-community mediation involving A████, saying that A████ should be free; calling

19 Jade names; and alleging that the temporary parenting plan and restraining order is void.

20    **Washington State Patrol WATCH Report:** On August 24, 2022, I obtained a

21 background check report for Kurt Benshoof. It showed one felony conviction and four arrests

22 as follows: 4/2/10 Felony Controlled Substance Manufacturing/Delivery/Possession with

23
24 GUARDIAN AD LITEM REPORT TO THE COURT
Page 41

**0208**

WB≗ WECHSLER BECKER, LLP
701 FIFTH AVE. SUITE 4550
SEATTLE, WA 98104
T: 206.624.4900 | F: 206.386.7896

1   Intent to Distribute; 8/5/09 Arrest Controlled Substance Manufacturing/Delivery/Possession

2   with Intent to Distribute; 4/19/10 Arrest (May have been merged with case related to 8/5/09

3   arrest); 9/3/21 Arrest No Contact/Protection Order/Restraining Order Violation and Custodial

4   Interference; and 8/15/22 Arrest No Contact/Protection Order/Restraining Order Violation.

5   The 9/3/21 and 8/15/22 arrests were related to orders protecting the mother and child.

6       **At Indaba Supervision Notes:** I reviewed the 2021 and 2022 supervision notes for

7   visits between the child and the father. There were many sweet moments of affection where

8   Kurt was supportive of Azhrael and they had fun together. Kurt came to every visit prepared

9   with activities, games, and snacks.

10      During a couple of visits, Kurt discussed vaccination and informed consent, asked

11  Azhrael about being interviewed by CPS, told Azhrael to ask Jade why he can no longer go

12  to whichever house he wants, talked about Jade getting served legal papers, told Azhrael

13  that the restraining order is full of lies, and talked about family court and specific court

14  proceedings.

15                  **IV. Discussion**

16      The parties co-parented for 12 years together without a court ordered parenting plan.

17  At the outset, this made them seem like flexible co-parents who were working together to

18  address Azhrael's needs. Over the course of my investigation, it has become clear that Jade

19  put up with Kurt's eccentricity and manipulation. While they co-parented, Azhrael had a lot of

20  say in the residential schedule because that was what Kurt listened to whether Jade thought

21  it appropriate or not. She was able to leave the house she was sharing with Kurt after her

22  relationship with Magali started and Magali encouraged her to separate from him.

23
    GUARDIAN AD LITEM REPORT TO THE COURT
24  Page 42

                    **0209**


WECHSLER BECKER, LLP
701 FIFTH AVE. SUITE 4550
SEATTLE, WA 98104
T: 206.624.4900 | F: 206.386.7896

Kurt holds a number of beliefs that fall outside of the Seattle mainstream including vaccine safety, mask safety, transgender issues, drugs, and prostitution. On one hand, I found him to be honest in his convictions and passionate about parenting A████. He provided me with volumes of emails and resources about vaccination and other topics. On the other hand, Kurt made many demands of this GAL and also of Jade's attorney which included providing proof of informed consent for vaccination and the names of the medical professionals who vaccinated A████.   Many of Kurt's demands fell outside of my appointment or were information I do not have. He asked me to form expert opinions for which I am not qualified, or asked me to dive into controversial subjects with no benefit to my investigation or A████.

While Kurt is very welcome to have his own opinions, I do not believe that he is willing to or perhaps able to appropriately decide what information to share with A████. Because I am not a mental health evaluator, I cannot opine about what mental health conditions Kurt may suffer from which have resulted in his totally unacceptable decision making in relation to A████. He needs to be evaluated and follow treatment recommendations including therapy and medication.

During supervised visits, with just a couple of exceptions, Kurt maintained positive and appropriate conversations with A████. He brought plenty of things to do and eat to visits – this seemed to be the best of their interactions. During recorded Zoom calls, Kurt doesn't maintain appropriate conversation with A████. The instances are numerous. The video he showed A████ about transgender people was totally inappropriate in its content both because it was graphic and it was very anti-trans. After A████ told Kurt, "I'm done with this

GUARDIAN AD LITEM REPORT TO THE COURT
Page 43

**0210**



WECHSLER BECKER, LLP
701 FIFTH AVE. SUITE 4550
SEATTLE, WA 98104
T: 206.624.4900 | F: 206.386.7896

shit," twice Kurt did not stop showing him this video. Again and again on Zoom calls, Kurt called Jade and Magali names. He talked about the litigation including having A████ read from the restraining order. Kurt has no ability to censor himself regarding the topics he talks to A████ about or how he talks about Jade.

Kurt conducted himself in a hostile and combative manner toward both Jade and her attorney. This only increased over the course of the case. In July, he wrote the following to Jade on Our Family Wizard.

> "Jade/Jessica/Isobella/Lucia Mar,
> Once again, you showed an absolute disregard for my parental rights and my love for my son, and a blatant disregard for the (invalid) COURT ORDERED time with my son. He and I could have had a zoom this morning, before his playdate.
> I'm sure if I was one of your prostitution clients, where you rent out your body for money to men who "kiss like fish", and "flop around on you", (your words, not mine) you would have magically prioritized and remembered my zoom time with my son. Of, course, you've been doing everything in your power to poison my relationship with my son, along with Magalie "Solana Sparks" Lerman for quite some time. This isn't new. No more zooms. We're done."

On July 27, 2022, Kurt wrote to Mr. Cliber, "Nate, don't you understand the meaning of "Fuck Off"? Your lies, abuse, barratry, money laundering, and coercion are well documented. Put your money where your petty little mouth is and file a Slander lawsuit against me if my claims are false, petition Keenan for sanctions against me, as I have nothing but contempt for him and Family Court, and move the court for permanent plans/orders. I dare you. Do not contact me again unless I address you specifically and demand a reply. Otherwise, I will file for an anti-harassment against you." He went on to file a Petition for Anti-Harassment Order against Mr. Cliber which was dismissed when Kurt failed to appear for the full hearing.

GUARDIAN AD LITEM REPORT TO THE COURT
Page 44

**0211**

In July 2022, the father sent an email with attachment to the child in violation of the restraining order. The attachment was a 17-page manifesto by someone named Randall Kelton asserting that everyone is manipulative and other theories.

In late July and early August, the father indicated first to the mother's attorney and then to me that he does not want us to contact him unless by personal service. He withdrew from e-service, declared that he was no longer the Respondent in the case due to a lack of jurisdiction, filed a withdrawal, and asserted that the restraining order was invalid. I confirmed by letter my understanding that he would no longer be participating in my investigation and that he did not want me to contact him. I invited him to let me know if he would like to resume his participation. That letter was filed with the court.

In August, Kurt posted to his local Next Door group that Azhrael was missing. Jade had to correct him and assure worried neighbors that Azhrael was not in fact missing.

Also in August, Kurt conspired with Azhrael for Azhrael to sneak out at night and go to Kurt's house. When Azhrael fell asleep and did not sneak out, Kurt came to Jade's house the next morning where he was arrested and released the next day. For a second time, Kurt has attempted to take Azhrael in violation of the parenting plan and restraining order.

Kurt's behavior has led to Azhrael being involved in decisions and conversations that are too adult in nature and things that the parents should be discussing directly. Kurt feels that Azhrael is sufficiently mature to make a lot of adult decisions. I find this to be the most troubling part of Kurt's actions over the last year. He has to stop asking Azhrael to make adult decisions, involving him in the conflict with Jade, and telling him his mother is a liar and a whore. All of these actions are deeply contrary to Azhrael's best interests. To a lesser degree, Jade has also explained things to Azhrael that she shouldn't have – for example

GUARDIAN AD LITEM REPORT TO THE COURT
Page 45

**0212**

WB WECHSLER BECKER, LLP
701 FIFTH AVE. SUITE 4550
SEATTLE, WA 98104
T: 206.624.4900 | F: 206.386.7896

telling him that Kurt is narcissistic.  Her over disclosure was in many cases intended to help Azhrael make sense of what Kurt had told him.

While Kurt and Azhrael share interests and much of the time Azhrael seems to enjoy the contact with his father, Kurt's inability and/or refusal to keep adult topics from Azhrael including the substance and procedure of this litigation and to refrain from badmouthing Jade overshadows the benefits of their relationship to Azhrael.  This is sad because Azhrael will not be able to benefit from the positives in their relationship.

Azhrael had few complaints about either parent.  This may be because it is his normal or he doesn't understand what issues he should not be involved in.  His former therapist also noted that Azhrael has trouble talking about his close relationships.  Kurt has insisted that Azhrael is mature and can make decisions for himself.  I found him to be an average 13-year-old in his interests and maturity.  While I have considered his input and want to honor it, he is not mature enough to make decisions about where he lives and has endured a lifetime of Kurt's manipulation and inappropriate disclosures.  Both Kurt and Azhrael don't want a schedule and want Azhrael to decide where he lives when.  Azhrael needs very limited and controlled contact with Kurt, not the freedom to determine when he sees Kurt.  That would only throw Azhrael even more deeply into the parental conflict.  This family needs a clear, non-negotiable schedule so that there is less conflict and more clarity.  Recently, Jade reported that Azhrael has been showing signs of depression and talking about harming himself.  He needs a break psychologically from Kurt's frequent conspiracy theories, lectures about this litigation, and degradation of Jade.  He also needs to return to therapy if he is willing.

GUARDIAN AD LITEM REPORT TO THE COURT
Page 46

**0213**

WB$_{LLP}$  **WECHSLER BECKER, LLP**
701 FIFTH AVE. SUITE 4550
SEATTLE, WA 98104
T: 206.624.4900 | F: 206.386.7896

1    There was a stark difference between Kurt's behavior on recorded Zoom calls and

2    professionally supervised visits. The visits were largely positive and gave Azhrael the best of

3    Kurt's parenting – his genuine interest in Azhrael's likes and hobbies and his ingenuity in

4    engaging Azhrael. The Zoom calls are not working and have been suspended pending trial

5    because of how detrimental they are.

6    The struggle in this case is how to balance Kurt's inability to prioritize Azhrael's best

7    interests against Azhrael's need to have a relationship with his father. Kurt may simply

8    check out of parenting until Azhrael turns 18, which would render any court order largely

9    moot. Assuming Kurt does want to maintain a relationship under judicial supervision, then

10   the court has to assume that Kurt will continue to engage with Azhrael the same way he has

11   done through this case. Psychological interventions are unlikely to be pursued by Kurt, or

12   successful in changing his behavior or parenting approach. While I recommend scheduled

13   contact between Azhrael and Kurt, the contact is limited based on what I see as Kurt's

14   inability to change. Hopefully, with limited time to talk with Azhrael, Kurt will use that time to

15   discuss shared interests and what's going on in Azhrael's life.

16

17   **V. Recommendations**

18   **1. Restrictions under RCW .191:** Restrictions pursuant to RCW 26.09.191 should
     be found against the father based on the Abusive Use of Conflict and Withholding the
19   Child.

20   **2. Residential Schedule:** The child should reside primarily with the mother. The
     child should have 10 minute monitored phone calls (not Zoom calls) with the father
21   two times a week and one three-hour professionally supervised visit every other week
     until the father has fully complied with evaluation and treatment recommendations
22   (see below).

23

GUARDIAN AD LITEM REPORT TO THE COURT
24   Page 47                                                **0214**

After he has completed an evaluation and been compliant with treatment for at least twelve months, the father's visits should be one weekend afternoon every other week from noon to 5 p.m. unsupervised. Visits should take place within Seattle city limits. Exchanges should happen at a location determined by the mother which is at least 500 feet from her home.

The professional supervisor or phone monitor should have the authority to terminate calls and visits if the father discusses court cases, makes derogatory comments about the mother, discusses medical or educational decisions, encourages the child to sneak out or otherwise take action not included in the parenting plan, or discusses other adult topics. Azhrael should also be free to terminate the calls if he is uncomfortable. If Azhrael wants to talk longer, that should be at the mother's discretion.

The father should not be permitted other contact with the child, including through text messages, social media, games, or other means.

If the father withholds the child from the mother for more than two hours past the end of his residential time, the violation should serve as a basis for modifying the plan.

If more than two visits are terminated early due to the father's inability to comply with rules of supervision, then the court may consider terminating supervised visits.

**3. Holidays, School Breaks, and Vacations:** The holiday, school break, vacation, and summer schedules should be the same as the school schedule. The father should have extra 10 minute phone calls on the father's birthday, Azhrael's birthday, and Christmas Day.

**4. Decision Making and Dispute Resolution:** The mother should have sole decision-making authority for major decisions based on the father's inappropriate involvement of the child in health care and educational decisions. There should be no dispute resolution ordered. The parties should return to court.

**5. Restraining Order:** The mother, child, and mother's fiancée should be protected by a restraining order for the next five years based on the father's recent violations in coming to her house, reporting the child missing online, and withholding the child. He should be restrained from coming to or within 500 feet of her home, her workplace, and the child's school.

**6. Involvement of Azhrael:** The father should not involve Azhrael in or ask Azhrael to make decisions related to the residential schedule or the other parent's parenting decisions.

GUARDIAN AD LITEM REPORT TO THE COURT
Page 48

**0215**

WB LLP WECHSLER BECKER, LLP
701 FIFTH AVE. SUITE 4550
SEATTLE, WA 98104
T: 206.624.4900 | F: 206.386.7896

**7. Evaluation and Treatment for Father:** The father should complete a full psychological evaluation with a PhD-level psychologist or psychiatrist to include the mother as a collateral contact and the evaluator should be given this report and the parenting plan. The completed evaluation should be provided to the mother or her counsel. The father should follow all recommendations for treatment, therapy, and/or medication use. The mother or her counsel should receive monthly compliance reports directly from the provider(s). (A protective order may be entered to prevent disclosure of the report by the mother outside this litigation.)

**8. Therapy for Azhrael:** The mother should find a therapist for Azhrael or return to Eric Woodward. Azhrael should be encouraged to actively participate in therapy at the frequency and duration recommended by the therapist. The mother should be involved in therapy as requested by the therapist.

**9. Exchanges:** All exchanges should take place in a public location of the mother's choosing. Even if a restraining order is no longer in place, the father should not be allowed to come to the mother's residence or the child's school. The child should independently go from one car to the other. The parents should stay in their own cars and not interact with each other in any way. The father should not speak to the mother. The mother may have a designee exchange the child.

**10. Other:**
A. Both parents should not allow the child to be driven by anyone (including themselves) who does not have a valid driver's license and car insurance.

B. Each parent should refrain from words or conduct, and discourage other persons from uttering words or engaging in conduct, which would have a tendency to estrange the children from the other parent, to damage the opinion of the children as to the other parent, or which would impair the natural development of the children's love and respect for the other parent.

C. Azhrael's school should be provided with copies of the final parenting plan and the restraining order.

D. The mother should have the authority to obtain and renew a passport for Azhrael without the father's authorization. She should be able to travel freely with Azhrael internationally.

E. The parents should communicate via a parenting app except in emergencies. The parties should communicate in a respectful and professional manner and limit their communication to issues necessary to parenting the children. Communication needs

GUARDIAN AD LITEM REPORT TO THE COURT
Page 49

**0216**

WB<sub>LLP</sub>  **WECHSLER BECKER, LLP**
701 FIFTH AVE. SUITE 4550
SEATTLE, WA 98104
T: 206.624.4900 | F: 206.386.7896

to be brief, informative, and friendly, focusing only on the children. They should not communicate otherwise.

F.  The mother should have the authority to fully control the child's cell phone including blocking the father, monitoring texts, and withholding the phone from the child. This should not relieve her of complying the above provision for twice weekly phone calls.

Respectfully submitted this 5th day of September, 2022.

AMY FRANKLIN-BIHARY, WSBA #35787
Guardian ad Litem

GUARDIAN AD LITEM REPORT TO THE COURT
Page 50

**0217**

**SEATTLE MUNICIPAL COURT**

| | | |
|---|---|---|
| **City of Seattle**, | ) | |
| | ) | **No.** |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **DECLARATION OF JESSICA OWEN** |
| | ) | |
| **Kurt Benshoof**, | ) | |
| Defendant. | ) | |
| | ) | |

I, Jessica Owen, declare as follows:

1.      I am 47 years old, and live in Seattle, Washington.

2.      I am the mother of A.R.W. ("A"), who is a thirteen-year-old boy.  A's father is Kurt Alden Benshoof.

3.      I have sole custody of A pursuant to an Order entitled Findings and Conclusions about Parentage and a Final Parentage Order, both entered by the Hon. David Keenan, King County Superior Court Judge, on October 21, 2022.

4.      Even prior to the entry of Judge Keenan's orders, I had temporary sole custody of A pursuant to a Temporary Family Law Order dated November 3, 2021, and signed by Pro Tem Judge Jason Holloway.  Pursuant to that order, and to a Restraining Order dated November 3, 2021, and signed by Judge Holloway, Mr. Benshoof has since November 3, 2021 had no legal

**DECLARATION (DCLR) -** Page 1 of 26
**WPF JU 11.0200** (9/2000)  - JuCR 2.1; RCW 13.34.050, .070(5)

right to have physical interactions or communications with, or knowingly be within 1000 feet of, either me or A. The only exception to those no-contact provisions were limited rights on the part of Mr. Benshoof to have periodic two-hour Zoom visits with A (which I had the right to monitor for content), and periodic supervised in-person visits at At Indaba, which is a family supervised visitation site in Madison Park, Seattle.

5.     In the summer of 2022, Mr. Benshoof voluntarily discontinued the supervised in-person visits at At Indaba.

6.     Since the entry of Judge Keenan's October 21, 2022 Order referenced in Paragraph 3 above, Mr. Benshoof has been prohibited to have any contact whatsoever with A.

7.     On January 23, 2023, I discovered that Mr. Benshoof has been systematically violating the no-contact provisions of the orders entered by Judge Keenan and Judge Holloway since at least March 1, 2022. Specifically, Mr. Benshoof began on that date communicating secretly with A through A's iPhone using an application called "Discord."

8.     I have since downloaded the entirety of Mr. Benshoof's March 2022 – January 2023 communications with A from A's iPhone. Those communications total 485 pages of screenshots comprising at least two thousand individual messages between the two of them during the March 2022 – January 2023 time frame. A true and correct copy of those screenshot pages downloaded from Discord is attached hereto as Exhibit A. A's handle on the Discord thread is "Wrench" and Mr. Benshoof's is "Seraph d'Mortego". (I am sometimes referred to on that thread by my nickname, "Jade", and my domestic partner, Magalie Lerman, is sometimes referred to as "Justice".)

9.       Until January 23, 2023, I was completely unaware that Mr. Benshoof was systematically violating the terms of the Final Parentage Order and the Restraining Order by secretly communicating with A on Discord.

10.      Over the past weeks I have reviewed the record of Mr. Benshoof's voluminous Discord interactions with A in detail.  As a whole, these messages show Mr. Benshoof to be a vindictive and emotionally manipulative person who repeatedly expresses to A his utter contempt for the law; who proudly declares that he is flouting court orders and that he has not paid taxes since the 1990s; who repeatedly refers to  me as a "liar" and makes vile and often profane accusations about me to my son in an effort to destroy my character and turn A against me; who explicitly directs A to lie to and deceive me; who attempts to enlist A to spy on me and my partner, to burglarize my home office, and to dig through my private papers; and who attempts to enlist A in near-endless plots to A whereby A would leave our home and Mr. Benshoof would take over custody of him in direct defiance of the existing custody and restraining orders.  One constant of all these secretive communications is Mr. Benshoof's focus and determination to turn A—a 13-year-old boy—into his accomplice in his serial wrongful acts, while simultaneously trying to dress up that unscrupulous purpose as some sort of mutual "dream" or "adventure" they can go on together.  In committing these abusive acts towards A, as well as in his repeated physical and emotional harassment of me, my friends, my family, and even my attorneys, Mr. Benshoof has intentionally inflicted tremendous stress, fear, and pain on me, on A, and on those we love, and has caused severe damage to the mutual trust and playful affection that are so critical to the relationship between a mother and her adolescent son.

11.     I have gone through all 485 screenshots and counted the number of times Mr.

Benshoof called me a liar to A (or said I am lying or used another form of the word "liar" or

"lies" in referring to me).  By my count, Mr. Benshoof used some variation of that word to my

son over 100 times in the Discord texts.  Mr. Benshoof also at least twice told my son that I do

not love him.  Within the Discord messages to my son, he frequently referred to me and Ms.

Lerman as "bitches" (or, as he sometimes spelled the word, "BitcheZz"), "witches", "prison

wardens", and "abusers", and called our shared home with A the "Witch House."

12.     The following paragraphs address just some of the most disturbing aspects of Mr.

Benshoof's secret Discord communications with my son over the past 10 months.  Reading

through the Discord texts—a process that has taken many hours over many days—has been

extremely painful and has made me feel victimized by them in at least four different ways.  First,

I feel victimized by the fact that Mr. Benshoof recruited my son into such a dishonest scheme

that was in direct violation of the Court's no-contact orders and that was kept from me for ten

months. Second, I feel victimized by the damage done to my son (the real target of Mr.

Benshoof's abuse), as well as to my relationship with my son, through A having been exposed to

the abusive and poisonous content of many of Mr. Benshoof's Discord messages.  Third, I feel

victimized by the very act of having to read through the horrifying content of the 485 screenshot

pages of Mr. Benshoof's Discord communications with A.  Seeing the awful and untrue things

stated again and again by Mr. Benshoof has caused me pain and stress, and has triggered my

longstanding fear that Mr. Benshoof will again try to kidnap A, or will do harm to him, to me, or

to my family or friends.  I can only hope that someday Mr. Benshoof comes to his senses and

realizes how profoundly he has hurt his son as well as me (and others).  Fourth, Mr. Benshoof's

Discord communications with my son, like his other wrongful acts mentioned in this Declaration, have led to a huge expense of my time, emotional energy, and other resources in responding to them (including in the preparation of this Declaration).

**Mr. Benshoof's April - July 2022 Plot to Seize Custody of A in Defiance of the Courts**

13.     Many of Mr. Benshoof's Discord messages to A during the period from April to July of 2022 are devoted to trying to turn A against me and urging him to run away from home and live with Mr. Benshoof.  This was not the first time Mr. Benshoof had attempted to take over custody of A.  In August 2021, Mr. Benshoof, who vehemently took issue with the fact that A had been vaccinated against COVID-19, had kept A away from me for nearly three weeks.  I later learned that he was shuttling A during this period between his own residence and the residences of certain of his friends and associates.  This act was an abrupt departure from our long-standing unwritten agreement to share custody of A on an alternate-weeks basis.  Mr. Benshoof's violation of that understanding resulted in a total absence of communications between A and me during that nearly three-week period, despite my repeated and increasingly frantic attempts to contact my son as well as my communications with the police about rescuing him.  In fact, during that period Mr. Benshoof himself used A's iPhone to text me and effectively block any communications between A and me, telling me, "This is Kurt.  He does not want to talk to you. He knows you are lying…."  Near the end of that text, Mr. Benshoof called me "irrational and unhinged."  In addition, Mr. Benshoof persuaded A to write a letter to the police stating falsely that he had run away, an obvious effort to give Mr. Benshoof plausible deniability that he was in fact the mastermind of the plot.  I had no clear idea where my son was during that entire period,

which ended only when Mr. Benshoof was spotted pulled over on the side of the road with my son in his car.  This resulted in Mr. Benshoof's arrest and the return of A to me.

14.     On April 1, 2022, Mr. Benshoof told A on Discord that if he were A, "here are things I would consider doing:  1). Call CPS and tell them I'm imprisoned at my mom's because of lies she keeps telling cops and courts, and that I want help to be able to be with my dad again. 2). Call the police and tell them the same thing 3).  Send an email to the judge telling him that Jade has been lying and you don't want to be trapped at your mom's and want to come home to your dad."  When in responding to that message A indicated his hesitation to follow those instructions, Mr. Benshoof pressured him by stating, "One of us is lying/One of us is telling the truth."  Later on the same day, Mr. Benshoof added in a further Discord text to A, "… I believe your mom needs help.  Lying has a way of eating at a person's soul and mind and heart".

15.     In an April 3, 2022 Discord message, Mr. Benshoof told A that I, my partner Ms. Lerman, my attorney, the court clerk, the courthouse sheriffs, and all of the family court judges are "all criminals or child abusers, either directly or indirectly."  The next day he added, "Beloved, you need to erase this message thread.  Delete me as a contact.  Jade and the courts are looking for any way they can find to put me in jail."  This was not the first time Mr. Benshoof suggested this to A or acknowledged the secretive (and criminal) nature of his Discord communications in texts sent to him.  For example, on March 25, 2022, Mr. Benshoof had texted A, "Maybe you should delete all these messages to be safe."

16.     On July 6, 2022, Mr. Benshoof proposed to A that they simply defy the custody order, and suggested that if A were to run away from home and come to Mr. Benshoof's house, "[t]he worst thing that will happen is this:  Cops take about five hours to come over and they

apologize and shrug and say they have to follow the court order and take you back to mom's/If the copse [sic] do that, I am 99 % positive that if you did the same thing 2 or 3 times they would simply throw their hands up in the air and quit responding.  Get it? They don't have the manpower to even deal with adult rape calls.  If they know you are doing what you want to do, they will simply get fed up with being dragged into it".

17.    Also on the July 6, 2022, Discord thread, Mr. Benshoof bragged to A that he put up "15" of his friends to call Child Protective Services to complain about my parenting of A, and added that the reaction to that tactic by CPS was, "whoa!  Something is Up!"

18.    Further down the same July 6, 2022, Discord thread, Mr. Benshoof told A that anything he was not able to pack before running away could be procured later, and asked A directly, "What time you think you are leaving?"  After A responded, "I thought maybe Friday", Mr. Benshoof replied "Oh okay."  When A suggested that it might be sooner, Mr. Benshoof added, "Totally your call son".  Later in the same text thread, Mr. Benshoof told A, "I'm fxuckong [sic] stoked!!!!!"

19.    Near the end of his lengthy text communications with A on July 6, 2022, Mr. Benshoof emphasized to A that he should "DELETE this entire conversation from your phone." He also explicitly instructed A to lie about when he last communicated with Mr. Benshoof: "So, the last time we talked was on Tuesday Zoom.  Period.  No, we have NOT had any communication outside of Zoom calls and At INDABA, okay?"  He later texted A, "Let me know when you are deleting this, so I know it's done."

20.    That same afternoon, I received a text from A saying he was going to his father's residence, and that he was doing so of his "own accord." This caused me tremendous stress and

worry for A's well-being.  I called 911 and asked that the police rescue my son. I was afraid this

would be a repeat of the August 2021 episode, in which I had not been able to have any contact at

all with A for almost three weeks.  Thankfully, the police rescued A and returned him to me that

evening.  I learned from them that Mr. Benshoof had called the police on himself soon after A

had arrived at his residence.  Now that I have seen the Discord thread that led up to this episode,

it is obvious that Mr. Benshoof intended it as a "dry run" and as a first step in a series of similar

events that he hoped would eventually convince the police to "simply throw their hands up in the

air and quit responding" as he had explained to A via Discord earlier that day.  This conclusion is

reinforced by a later (January 4, 2023) Discord text in which Mr. Benshoof was again trying to

convince A to come live with him and A asked in response whether the police would simply pull

up again and take him back.  Mr. Benshoof responded, "No fucking way are the police taking you

back there [laughing emoji]." He then explained, "Maybe I wasn't clear about LAST time at the

time.  At the time what I said was that it might take a few times of you leaving to get the point

across…. If you just stuck to the plan, there was a 99% probability back then of it working within

a few days".

**Mr. Benshoof's August 2022 SMS Texts, as well as Additional Texts Sent by His Surrogates**

21.    Between the incident of July 6, 2022, and September 15, 2022, there were

apparently no Discord communications between Mr. Benshoof and A.  They did, however,

communicate in August 2022 through a series of SMS texts which culminated in A telling Mr.

Benshoof (clearly referencing me and my partner Ms. Lerman), "They didn't fall asleep fast

enough last night.  I'll try and sneak out again."  *See* Exhibit B, which are A's texts back to Mr.

Benshoof during that conversation (A deleted Mr. Benshoof's texts that were part of the

conversation).  As part of this renewed plot to wrest A from my custody, Mr. Benshoof also

employed his brother and several of his acquaintances to send texts to A in which they tried to

engage him in a deliberately casual and friendly way.  *See* Exhibit C.  Needless to say, those

third-party contacts with A on Mr. Benshoof's behalf were all further violations of the Court's

no-contact orders.

### Mr. Benshoof's August 15, 2022, Stalking and Attempt to Intimidate Me at My Home

22.     Shortly after 1 pm on August 15, 2022, Mr. Benshoof followed me home in his

car and then pulled into my driveway behind me, parked so as to block my car, and exited his car.

He placed himself just a few yards from me—not 1000 feet or more away as required by the no-

contact order—in an obvious attempt to intimidate me.  I yelled at him to leave.  He responded

by stating that he was not on my property, and then began shouting my son's name.  I was fearful

that he would break into my house.  Thankfully, A was not at home.  Eventually, Mr. Benshoof

climbed into his car and left.  I immediately called the police.  I understand that they arrested Mr.

Benshoof within the hour.  Mr. Benshoof tried to convince my son that this menacing act in

violation of the no-contact order was a laughing matter in a later Discord text he sent to my son

on October 13, 2022:  "Jade said you were at camp, and then called the cops on me for being in

my car on her street.  LOLOLOL".

### Mr. Benshoof's Resumption of Discord Communications with A in September 2022

23.     On September 15, 2022, Mr. Benshoof resumed his surreptitious Discord

communications with A.  On September 24, 2022, Mr. Benshoof also used Discord to describe to

A an alternate secret method for communicating via the placement of "draft" emails in an email

account to which they both would have access.  After the "drafts" were read they could be

deleted without actually being sent, thus avoiding any permanent electronic record of the communications. Mr. Benshoof followed-up on January 1, 2023, by creating the joint email account and providing the joint password to A along with a "code word" they both could use in Discord texts to alert each other that a "draft" email had been placed in the joint account.

**The Court's September 20, 2022, Suspension of Mr. Benshoof's Zoom Calls with A**

24.     Because of Mr. Benshoof's repetitive misconduct in the periodic Zoom calls he had been allowed with A, on September 20, 2022, the King County Superior Court Commissioner Jonathan Lack issued a Temporary Restraining Order modifying the then-existing temporary parenting plan and suspending those Zoom calls. *See* Exhibit D. My review of the recordings of those calls revealed that Mr. Benshoof had (1) called A on his iPhone to demonstrate that a no-caller ID readout on A's phone was actually him; (2) told A to answer the phone when he saw that readout; (3) told A that the court had no jurisdiction over him (Mr. Benshoof), that the TRO was "not real", and that Azh should come over to his house; and (4) called myself and my domestic partner derogatory names repeatedly. Mr. Benshoof also read verbatim portions of the custody case legal proceedings to A during the Zoom calls—a direct violation of a specific written order that had been issued by the family-law court on April 12, 2022 (Exhibit E), as well as an incredibly disrespectful and abusive thing to do to A, who was of course the subject of those custody proceedings. Mr. Benshoof's Zoom calls with A were never reinstated.

**Mr. Benshoof's Dehumanizing Comments About Me in His September 2022 Discord Texts**

25.     Mr. Benshoof's September 2022 Discord texts included intensified efforts to convince my son that I am a bad person, and to turn him against me. For example, on September

28, 2022, Mr. Benshoof responded to a comment by A that "Mom got pretty betrayed and I don't want to hurt people" by launching an assault on my character. This diatribe included calling me "cunning and malicious" and someone who "does NOT CARE about you or your feelings or what you want." Mr. Benshoof went on to deny that I was "a normal human" and compared me, my partner, and my family law attorney to "snarling crazy animals." He concluded his attack on me by stating to my son, "Like turn your phone off and get somewhere safe. Because I think Jade and Magalie will get vicious for a few days and I don't want you to be at risk of them hitting you or being crazy verbally abusive. You don't deserve ANY of this shit/Jade gets violent when she loses her shit." In a later (January 18, 2023, Discord) text to A, Mr. Benshoof returned to the same theme: "That woman is evil, and [Ms. Lerman] is probably worse, but they are both VERY similar/She doesn't love you.: [sic] she doesn't care about you." In fact, I do not hit my son or believe in corporal punishment. A is generally a very well-behaved child. He loves animals and is very gentle and caring with our cats; he does not engage in rough play with his friends; he has good grades at school; he is well-liked by his teachers and peers. Typical punishments in our home range from taking away video game privileges to things like turning off the data on A's cell phone.

**The Frightening Psychological Impact on My Son of Mr. Benshoof's Torrent of Abuse**

26.    A has always been a kind and loving person. He is, however, only 13 years old, has an active imagination and enjoys fantasy games, and can be impressionable, particularly when he is being pressured by his father or someone else he perceives as an authority figure. The Discord threads I have reviewed demonstrate that Mr. Benshoof's systematic poisoning of A's impressionable mind with incessant vitriol directed towards me and those I love resulted in

occasional negative comments by A that were directed towards me and that were shockingly out

of character.  Reading those comments on the Discord thread between Mr. Benshoof and A has

caused me tremendous anguish and has also raised the concern that it may take many years of

counseling (something that the Guardian Ad Litem in the custody case specifically

recommended) to reverse the impact of Mr. Benshoof's repetitive psychological abuse of my son.

The most disturbing of those comments occurred in an October 24, 2022, Discord text when A

asked Mr. Benshoof, "What would happen if I killed mom".  Reading that text was horrifying to

me.  I know A loves me but was sometimes induced by Mr. Benshoof to say awful things about

me.  Since my discovery and review of the Discord threads, A has apologized to me multiple

times for these comments, which I appreciate but which also makes me sad.  Also, A's comments

about me in the Discord threads are not all negative.  For example, in a Discord text he sent to

Mr. Benshoof on September 28, 2022, A indicated to Mr. Benshoof, in response to being

encouraged to go live with him, that he was concerned about hurting and betraying me.  That

said, the knowledge that A was induced to make hateful comments towards me, as well as the

fact that I have recently become aware of the scope of his untruthfulness towards me during the

entire ten-month period that his father engaged in prohibited communications with him, has

created a wound in our relationship that will take time to heal.  In addition, I have realized since

discovering the Discord communications that starting around the time they began in March 2022,

A became increasingly more inward and isolated, both with me and in interactions with friends

and family.

### Mr. Benshoof's Use of Third Parties to Harass Me at My Home

27.    Starting the day after Mr. Benshoof's Discord attack on my character as recounted in Paragraph 24 above, he began a pattern of repeatedly enlisting third parties to invade my property and disturb me and my family at odd hours under the guise of "process serving." Specifically, on September 29, September 30, October 3, October 4, October 5, and October 6, 2022, a total of three different people showed up at my house to deliver a variety of "legal" documents that Mr. Benshoof had typed up.  These people—a woman I met once before named Molley Anderson, an unknown woman who said her name was Siri, and an unknown man— came to my house at times that were as early as 7:30 am and as late as 10:30 pm.  They hid in various ways, such as around the corner of my garage, behind trees, and in the driveway.  One simply sat on my porch and rang the doorbell so many times that it stopped working.  In particular, the two women were relentless in their knocking and banging on my door, shouting, and ringing my doorbell.  I stopped answering it after the first night when Molley Anderson handed me a sheaf of papers and said to me in a menacing tone, "The Gods are crying". While I did not file a police report for every single one of these intrusions, when I did call the police I was encouraged by them to keep reporting the harassment.

**Mr. Benshoof's Similar Harassment of My Friends, Family and Attorneys**

28.    Mr. Benshoof has engaged in the same sort of harassment targeting a number of my friends and associates.  An example is one of the flurry of frivolous lawsuits Mr. Benshoof saw fit to file over the past year, a bizarre and incoherent case he initiated in U.S. District Court on September 13, 2022, in which he named over eighty defendants including me, my partner Ms. Lerman, Anthony Fauci, Bill Gates, Dan Satterberg, Jay Inslee, Jenny Durkin, Judge Holloway, Judge Keenan, the Guardian Ad Litem in our custody case (whom Mr. Benshoof referred to in a

Discord text to A on January 21, 2023 as a "vax nazi Bitch" and a "Total retard"), four of my close friends, my civil court attorney, Blair Russ, and my family court attorney, Nathan Cliber. Mr. Benshoof chose to "serve" that lawsuit on Mr. Cliber through a surrogate who went to Mr. Cliber's private residence, after someone first called that residence and said to Mr. Cliber's domestic partner, "Is he hiding?" and added that "lying abusers … hide when confronted with the truth." In an October 10, 2022, Discord message, Mr. Benshoof boasted to A about that harassment of Mr. Cliber: "I have a paid subscription to truthfinder.com/It's how I had Cliber served at his house in his bath robe/And had someone call his cel [sic] phone that isn't public". United States District Judge Lauren King summarily dismissed Mr. Benshoof's baseless federal lawsuit soon after it was filed.

29.    Mr. Benshoof also sued me, Ms. Lerman, several close friends, and Mr. Cliber in an equally frivolous Superior Court lawsuit that was recently dismissed with prejudice, and with Mr. Benshoof ordered to pay tens of thousands of dollars of sanctions to the defendants. In October 2022, Mr. Benshoof had this lawsuit, like the federal lawsuit, served on Mr. Cliber at his private residence, this time by Molley Anderson, one of the people who similarly harassed me in the guise of "service of process." In a mid-December 2022 incident related to that lawsuit, Mr. Benshoof personally "served" a subpoena on one of my friends, Owen Hermsen, in a manner that amounted to a frightening home invasion. The following is my understanding of what happened when Mr. Benshoof showed up at Mr. Hermsen's front door: After one of Mr. Hermsen's house guests responded to Mr. Benshoof's knock and opened the door, Mr. Benshoof, whose face was covered with a balaclava and who was dressed in all black, strode uninvited about six feet into Mr. Hermsen's house and then dropped the papers on a table. Mr. Hermsen demanded that he

immediately leave the house, which he did.  Mr. Hermsen filed a police report regarding this

incident, which was not the first incident of in-person harassment of Mr. Hermsen.  Mr.

Benshoof had previously photographed Mr. Hermsen's housemate, without permission, when she

was standing on the front porch of the house and then texted that photograph with a mocking

message to Mr. Hermsen.  In a December 18, 2022, Discord text to A, Mr. Benshoof referred to

his intrusion into Mr. Hermsen's home: "Owen got served with his subpoena last night."

30.     Although Mr. Benshoof refrained from naming my accountant in either of the

frivolous lawsuits mentioned above, he extended his pattern of harassment to her in late October

22, 2022, by texting her repeatedly over a 48-hour period.  As she told me in a written message

about the harassment: "[H]e's definitely making threats against you in the texts…. [H]e's sent

over 50 messages in the last 2 days alone, most of them lengthy."  *See* Exhibit F.

31.     Mr. Benshoof has also harassed my mother, who lives in Colorado and has always

had a very close relationship with her grandson A.  After she blocked Mr. Benshoof's number

because of a series of upsetting texts he had sent her, he left a voicemail message with her saying

that A did not want to come back to visit her ever again.  After receiving that message, my

mother called me in tears.

32.  Several other friends of mine have similarly reported being recipients of

inappropriate or threatening messages from Mr. Benshoof over the course of the past several

months.

### Mr. Benshoof's Encouragement of My Son to Spy on Me

33.     In an October 10, 2022, Discord message, Mr. Benshoof asked A, "Do you wanna

do some recon when the ladies are gone?"  Later in the same text thread, Mr. Benshoof made his

purpose plain: "I'm trying to figure out who is helping pay for all the attorney costs.  Someone has to be helping them financially/You don't have to of course.  But I think she probably has some paper records of things in her black metal filing cabinet".  This was one of several instances in which Mr. Benshoof used his secret communications with A to try to discover private information about me or my partner.  In one of those instances, Mr. Benshoof used a January 18, 2023 Discord message to try to teach A to use his iPhone to listen to and illegally record my confidential discussions with my lawyer: "Do you think you can pretend you are on your computer but record it on your phone?  In your Utilities Icon you should have Voice Memo.  It records Audio into a file that you can share".  When A expressed reluctance to do so, Mr. Benshoof taunted him by calling him "Chicken!  What's she gonna do?  Spank you?!  SLAVE!"  Learning that Mr. Benshoof was actively encouraging my son to act a spy and a burglar in our own home has caused additional pain to me and, like so many other acts on his part, has caused tension and mistrust between A and my partner and me.

**Mr. Benshoof's Explicit Threats Against Me, My Family, My Friends, and Even A**

34.     Mr. Benshoof's Discord texts to A are filled with threats against me and those who are closest to me.  In fact, in an October 17, 2022, Discord text, Mr. Benshoof went so far as to threaten A.  He first chided A for not speaking up for him in his quest to obtain legal custody of him, and then threatened A that CPS will put him "in some foster home" if Mr. Benshoof does not ultimately win in his dealings with "evil" people and "public officials who hate me".  On the same day, Mr. Benshoof reprimanded A as follows: "Your silence is acquiescence.  Your silence is prolonging the injustice and the suffering".  This is yet another example of Mr. Benshoof's willingness to manipulate A in an effort to cause pain to me and others.   And in fact, Mr.

Benshoof used the same Discord thread to expand on his plan to inflict "maximum damage" and "maximum pain" on me, my family, and my friends: "Because I tried playing nice and now it's gotta be DEFCON 5 to get you back home.  I can't pull any punches and not see you for five more years.  The circle of destruction keeps getting wider.  More of Jade's friends and family.  Maximum damage.  Maximum pain.  That's all I can do on my end".  In a later (January 10, 2023) Discord message, Mr. Benshoof told A "I will take a flamethrower to ANYONE ... if they come between us.  Period…. The smell of their burning flesh and the sound of their screams is better with a flamethrower …. Then I pull out the hot dogs and marshmallows!"  Mr. Benshoof's threats to create a "circle of destruction", use a "flamethrower", and inflict "maximum damage" and "maximum pain" on me, my family, and my friends have caused me additional stress and worry.

**Mr. Benshoof's Expressions of Contempt for the Law and Admission of Tax Evasion**

35.    Mr. Benshoof's December 2022 Discord texts reflect an oft-repeated theme of his secret communications with A, namely the notion that the King County courts somehow lack jurisdiction over him and therefore the existing custody and no-contact orders are simply not valid against him.  For example, as he makes clear to A in December 18-19 texts, he does not intend to let those orders, or anything else said or done by the courts, affect his ultimate goal: "Ain't Nothing or Nobody that will stop me from getting you.  It's just a matter of when….. There's no valid restraining order.  It's all fake bullshit."  This echoed a July 26, 2022, email Mr. Benshoof sent to my family law lawyer as well as the Guardian Ad Litem in the custody case in which he claimed that "Family Court has no valid jurisdiction over me, or my son."  *See* Exhibit G.

36.    Mr. Benshoof expanded on this I-am-above-the-law theme by bragging to A in a December 22, 2022, Discord text that he had not paid any taxes since 1995 (this despite the fact that Mr. Benshoof has operated an illegal but lucrative marijuana growing/selling operation for over a decade).

37.    It is worth noting that despite his professed contempt for the law, at several places in his Discord communications with A, Mr. Benshoof has acknowledged that what he was doing was illegal and could put him in jail.  For example, in an April 4, 2022, Discord message to A, Mr. Benshoof exhorted A to "erase this message thread.  Delete me as a contact.  Jade and the Courts are looking for any way they can find to put me away in jail."  Mr. Benshoof repeated this in a July 6, 2022, Discord text to A in which he again told A that "this Discord convo" could result in him being thrown in jail.  As he elaborated to A, "This is one of those situations where not telling all of the facts is required for your well being, and ours."

**Mr. Benshoof's Use of Fantastical Language to Seduce A to Run Away With Him**

38.    Mr. Benshoof's January 4, 2023, Discord messages to A demonstrated how he tried to draw a 13-year-old boy into his plot by appealing to A's childlike sense of wonder and exploration.  In those texts, Mr. Benshoof referred grandly to "Your dreams are my dreams" and promised that once he and A were together, they would "do some traveling around" together "and see what we like the most.  ADVENTURE!"  They exchanged texts about getting some property in Leavenworth.  In a later Discord text sent on January 11, 2023, Mr. Benshoof used mock military/gamer lingo to try to emphasize to A the exciting aspects of this "adventure" he sought to lure him into: "Heh Heh.  They been so focused on stealing our house they haven't been watching their weak spot [laughing emoji]. /Rear Flank?/Exposed./Stealth Mode

Activated!"  In a January 21 Discord message to A, Mr. Benshoof suggested that the two of them

sue several individuals including the governor, "Then we get lots of money and build a 3 D

replica of [A's favorite video game, called Kerbal Space Program] And our own R&D

laboratory."  In short, Mr. Benshoof used every exploitive trick at his disposal to groom A to be a

participant in Mr. Benshoof's scheme to kidnap him.  It saddened to me to discover, on

unpacking A's backpack after Mr. Benshoof's most recent (January 23, 2023) plan to take him

away had been uncovered, that A had packed juvenile play items that were important to him,

including his Pokémon cards.

**The January 2023 Culmination of Mr. Benshoof's Renewed Scheme to Seize Custody of A**

39.     Over the two and one-half week period from January 6 through January 23, 2023,

Mr. Benshoof's Discord messages with A encompass 204 screenshot pages consisting of over a

thousand individual messages.  *See* Exhibit A.  Many of these communications reflect intensive

planning on the part of Mr. Benshoof directed to a renewed plot to take my son from me.  As an

example, on January 11, Mr. Benshoof interrogated A at length on whether he could sneak out of

the house in the middle of the night, and instructed him on such topics as making sure he had

access to an alarm other than that on his phone, the importance of packing the night before, the

advisability of sneaking out the less noisy back door and making sure his bedroom door would be

closed in the hope that I would not notice that he was gone, the need to turn the handle of the

bedroom door quietly, and the possibility of using a flashlight.  He even offered to have someone

pick A up.  In the same Discord thread, Mr. Benshoof instructed A, once again, to delete the

Discord application, "to remove ANY chance of them finding anything just to be on the safe

side?  I don't want them to have anything to use".

40.      Starting in his January 22, 2023, Discord messages to A, Mr. Benshoof began giving express directions on what A should tell me in his goodbye note, where to leave that note, and how to notify me that it was there.  He even told A to include in the note, "If you fuck with me anymore mom, this note is going to EVERYONE and you will be exposed as the lying thieving child abuser you are."  These directions continued in a series of Discord texts that occurred in the early morning of January 23, when Mr. Benshoof told A the following:

Here's a list:

1. You(Jade) know that Dad never kept me from you in August 2021 after I (A) told him you talked me into getting the first Pfizer shot

2. Dad invited you to come over and sit down to talk and you refused to

3. Dad made me call you so you couldn't accuse him of keeping me from you
. . . . .

4. You started screaming on the phone that Dad was an abuser, so I left my phone on the table and went to my room cuz you were talking crazy

At this point A indicated confusion: "Wdym dad invited u to sit down and talk? / Was it me who refused / Or mom".  Mr. Benshoof replied as follows: "I texted her from YOUR phone saying 'come on over and let's have a family discussion'.She had blocked my phone. / JADE refused to come over to have a family discussion. I even texted Gramma from your phone to say '[A] is fine he just needs some time to process things. I'm not interfering with hum [sic] talking to anyone'" He then added: "That's how we KNIoW [sic] Jade was fucking LYING when she then went to court and accused me of withholding you from her. / She and Justice lied to the cops about it, Jade lied about it to multiple judges / Lies on top of lies. / you were witness."  Further in the same Discord thread, Mr. Benshoof continued his list of things he wanted A to include in his note to me:

1. You lied to cops and judges about dad

2. You stole dads car

3. You tried to evict dad

4. You don't care about me wanting to have my dad, which is cruel

5. If you or justice try calling the cops, then I will tell EVERYONE what you have done. Gramma, Grampa, your friends, the judge, EVERYONE.

6. If you want to pretend you love me, then RESPECT my wishes.

After a few more messages, Mr. Benshoof continued the list further, saying:

One [sic] more thing to add to note

7. If you call the cops again and I have to tell them about all of your lies, they might stick me in foster care. Is that what you want, Mom? Really?

8. No More Lies.

42.     The handwritten note that A in fact left for me under his pillow on January 23, 2023, tracked the above numbered instructions he was given by Mr. Benshoof almost verbatim. See Exhibit H.

43.     Mr. Benshoof further plotted, in his Discord texts to my son in the early morning of January 23, 2023, about who should be used to tell me the note was waiting for me, to ensure that it would not be discovered until after A was with him.  After thinking aloud in the course of several texts regarding the best way to accomplish that, Mr. Benshoof directed A to contact his grandmother (my mother) and to make sure he did not do so too soon: "You want lead time to get to my house."

44.     In another Discord message on the same day, Mr. Benshoof told A that once he arrived at Mr. Benshoof's residence, he should "Go upstairs. I want to give it maybe an hour to

see if the cops come by. / If I have not 'seen' you then I can literally tell the cops I haven't SEEN you since a zoom call on August 17 [laugh emoji] …. But I'm also just playing things to cover all bases for the first hour or two while I see what she does or doesn't do". This suggestion that A conceal himself is in keeping with an earlier (January 11, 2023) Discord text in which Mr. Benshoof told A that "if you REALLY want out of Jade's right now, you would have to basically be hiding somewhere." This is one of my constant fears: that Mr. Benshoof will kidnap A and again try to conceal his whereabouts from me and the police.

### The Last-Minute Thwarting of the January 23, 2023, Attempt to Seize Custody of A

45.     Shortly after 8 am on the morning of January 23, 2023, I observed A walk right past his bus stop. Because of what had happened in July of 2022, and my recent sense that A had been distant and withdrawn, I immediately became concerned that Mr. Benshoof may have contacted my son and coerced him into running away. I picked up A in my car and drove him back to our home. While I was talking to him in the living room, my mother attempted to call me three times on my iPhone. I let the first two calls go to voicemail but became concerned when she called a third time and answered the call. She told me that A had texted her that morning that he had left me a present under his pillow, and would she help surprise me by letting me know? I went to A's room and looked under his pillow, where I found the letter that Mr. Benshoof had largely dictated to him and that is Exhibit H to this Declaration. As I was doing this, A sat on the living room couch with his head down and his eyes downcast and begged me not to read the note. Once I had read it I was devastated—as was my mother when she learned how badly she had been used.

46.     That morning, A tearfully revealed to me that he had been communicating with his father for months.  He eventually left our home and walked to Mr. Benshoof's residence.  I then contacted my lawyer and the police. Several hours later a police officer called me to say they had my son and could I come pick him up.  He apologetically added that they had so many officers surrounding Mr. Benshoof's house that they were not able to drop A off themselves.  I immediately got in my car and picked up A.

47.     Also on January 23, after learning from my son about his communications with Mr. Benshoof, and during the time I was waiting to hear back from the police, I found on A's iPhone the lengthy Discord communications that are attached to this Declaration as Exhibit A.

48.     I am glad that Mr. Benshoof's January 23 plot was thwarted but am outraged and saddened by his abusive treatment of my son and me in the course of that secret scheme, as well as by all the other abusive things he has done over the past two years.  Also, I am confident that Mr. Benshoof is still out there plotting to kidnap my son.

**Mr. Benshoof's Recent Renewed Attempt to Communicate With A**

49.     On February 12, 2023, Mr. Benshoof arranged to return my son's backpack, which had been left at his residence in the aftermath of the January 23rd incident.  Specifically, he asked to drop off the backpack with his grown daughter outside her house where A (her much younger half-brother) was visiting with my permission.  Mr. Benshoof's daughter had agreed to be the go-between in retrieving the backpack, again with my permission.  While returning the backpack, Mr. Benshoof attempted to provide some papers to his daughter to give to A.  Being unaware of the specifics of the restraining order, she took the papers inside her house and tried to give them to A, who refused them (for which I am grateful).  She instead returned the papers to

Mr. Benshoof. This is simply the latest attempt by Mr. Benshoof to initiate illegal communications with my son.

### The Wide-Ranging Impact of Mr. Benshoof's Wrongful Acts on his Victims

50.     The overall impact of Mr. Benshoof's repetitive wrongdoing—his stalking, intimidating, and harassing behavior towards me, my friends and family, and even my attorneys and accountant; his gross misuse of legal process; his contempt and defiance of court orders and the rule of law; his voluminous secret communications with my son over the past 10 months; his manipulative and abusive attempts in those secret communications to poison my son against me and my domestic partner; his intentional creation of a toxic situation whereby my son was induced to express hatred towards me; his instructions to my son to lie to me, deceive me, spy on me, and burgle my house; and his incessant underhanded attempts to take my son away from me in violation of the restraining orders entered by the court—have, over the past two years, been devastating to me, my mother and father (A's grandparents), and my partner Ms. Lerman. The ongoing fear that my son will again be kidnapped by Mr. Benshoof continues to take a tremendous toll. I worry daily about whether A will come home from school.

51.     Even when I am with A, our relationship has been altered. I am now always guarded around him, and do not completely trust him. I must be extremely vigilant on a virtually 24/7 basis to ensure that Mr. Benshoof does not find a way to initiate contact with him again. That is an exhausting task and one that deprives us of much of the joy and ease of a normal mother-son relationship. That has in turn has had a corrosive effect on my relationship with Ms. Lerman, as well as on her relationship with A.

52.     Ms. Lerman and I are genuinely afraid of what Mr. Benshoof might do next.  In addition to our fear that he will again attempt to abscond with A, we are concerned that he will continue to stalk us and our friends and family.  We also fear that he might some day break into our house, perhaps armed, and attempt to harm us or someone else in the vicinity.  That fear leads us to be careful around the house, peering around corners and listening for unusual sounds. We have installed surveillance cameras as a result of this harassment.

53.     We also fear that Mr. Benshoof might do harm one of our friends.  Several of our friends have themselves expressed fear of what Mr. Benshoof might do to them.  For example, A's best friend's mother (with whom I have been friends for twenty-five years) will no longer allow her children to come over to our home because she is afraid of Mr. Benshoof and does not trust him not to harm them.  Other friends have expressed similar uneasiness about being in our home.

54.     We further are concerned that Mr. Benshoof may try to damage our cars, burn down our house, or otherwise damage or destroy our property.  The violent fantasies about causing pain to us that Mr. Benshoof repeatedly expressed to A in his Discord texts only intensify those fears.

55.     My concern about Mr. Benshoof being armed is a real one that is based on his past criminal acts.  I am aware, for example, that in September 2020 Mr. Benshoof (who is a convicted felon), illegally acquired a shotgun and brandished it in front of a grocery store one week after being arrested at the same store after starting an altercation with store personnel arising from his refusal to either put on a mask or leave the store.  Although Mr. Benshoof was arrested for brandishing the shotgun outside the store, and was charged with intimidating a

witness and criminal trespass, to my knowledge he has not to date been charged with the felony

of unlawful possession of a firearm.  Nor has he yet been tried for the crimes he has been charged

with.  The delays in his being brought to justice for his criminal acts in September 2020 have, I

believe, reinforced his belief that he is above the law, and have emboldened him to commit

further crimes, including those detailed in this Declaration.

56.     Of course, the victim who has suffered the most harm from Mr. Benshoof's

abusive behavior is the target of that abuse, my son.  A does not deserve to have had his

relationship with his mother ruptured in such a cruel and deliberate way.  Nor does he deserve to

have his teenage years hijacked by his father's narcissistic, manipulative schemes and eruptions

of hatred towards everyone and every institution that gets in the way of them.  It is particularly

devastating to me to consider that A is at an age when most parents are starting to allow their

children more freedom and independence, but as a direct result of Mr. Benshoof's acts I need to

be vigilant in monitoring his movements and actions and avoid leaving him unattended.  It seems

likely that the wide-ranging negative effects of Mr. Benshoof's psychological abuse of my son

will take years to undo.

I declare under penalty of perjury under the laws of the state of Washington that the foregoing is
true and correct.

Signed at _____Seattle_____, Washington on __March 13th, 2023__

　　　　　　　　(City and State)　　　　　　　　　　　　　　　　　　　　　　　　(Date)

_J.R. Owen_____

Signature

Jessica Rae Owen
Type or Print Name

849 NE 130th St.

Address
Seattle, WA 98133

**DECLARATION (DCLR) -** Page 26 of 26
**WPF JU 11.0200** (9/2000)  - JuCR 2.1; RCW 13.34.050, .070(5)

**FILED**
2022 NOV 15 01:43 PM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 21-5-00680-6 SEA

## Superior Court of Washington, County of King

| | | |
|---|---|---|
| Jessica Owen | | No.   21-5-00680-6 SEA |
| Petitioner (Protected Person) | Date of Birth | Proof of Service (RTS) |
| vs. | | Clerk's Action Required:2 |
| Kurt Benshoof | | |
| Respondent (Restrained Person) | Date of Birth | |

### Proof of Service

*Server declares:*

1.  My name is _____ Ryan Ellis _____. I am 18 or older.
    I am [x] a peace officer  [ ] **not** a party to this case.

2.  **Able to Serve:**

    [ ] **Personal Service:** I served the court documents checked in section 4 for this case
    to *(name of party)* _____
    on *(date)* _____ at *(time)* _____
    by giving the documents directly to them at this address:

    _____

    [X] **Electronic Service:**

    > *Important! Do not use electronic service if your case involves the surrender of firearms, transfer of child custody, removing respondent from the parties' shared residence, an incarcerated respondent, or a petition for a vulnerable adult protection order is filed by someone other than the vulnerable adult. After 2 unsuccessful attempts at personal service, you can ask the court to authorize electronic service. Court authorization is not necessary for vulnerable adult protection orders.*

    I served the court documents checked in section 4 for this case to
    *(name of party)* _____ Kurt Benshoof _____
    on *(date)* __11/15/22__ at *(time)* __1326_____ via

    [x] email [ ] text [ ] social media applications [ ] other technology

    At the following email address/s, phone number/s, social media application and user
    name, or other address: ___ kurt benshoof <kurtbenshoof@gmail.com> _____

    I received a read receipt or communication from the receiving party *(describe or
    attach):* __Attached_____

| | |
|---|---|
| RCW 7.105.150 Mandatory *(07/2022)* PO 004 | Proof of Service p. 1 of 3 |

[ ] **Service by Mail:** I served the court documents checked in section 4 for this case to *(name of party)* _____
on *(date)* _____
at *(time)* _____.
I sent 2 copies of the documents, postage prepaid: one by ordinary, first-class mail and one by other mail with certified or tracking information *(attach receipts)*. I sent the mail to this/these address/es: _____

  **Clerk's Action:** The court clerk shall forward a copy of this proof of service to the following law enforcement agency where the respondent resides (county or city) (check only one): _____

  [ ] Sheriff's Office or [ ] Police Department

3.  **Not Able to Serve:**

    [ ] I was unable to make personal service on *(name of party)* _____.
    I notified the serving party that service was not successful. Personal service was attempted on the following date/s _____.

    [ ] Electronic service was attempted at the following address/es but it bounced back, was undeliverable, or there was no follow-up communication _____
    _____

    [ ] I did not mail court documents to *(name of party)* _____
    because I do not know the party's last known address.

4.  **List of Documents:**

    > *Important!* You must check or write in the title of every document that you served. Use the "Other Documents" box to write in the title of any document not already listed.

    I served the following documents *(check all that apply)*:

| New Petition: | After a Full Hearing: |
|---|---|
| [ ] Petition for Protection Order | [X] Protection Order |
| [ ] Temporary Protection Order and Hearing Notice | [X] Order to Surrender and Prohibit Weapons |
| [ ] Reissuance of Temporary Protection Order and Notice of Hearing | [ ] Order Realigning Parties |
| [ ] Order to Surrender and Prohibit Weapons (issued without notice) | |
| [ ] Order Transferring Case and Setting Hearing | |
| [ ] Declaration/s of: _____ | |
| [ ] Denial Order | |
| [ ] Notice to Vulnerable Adult | |

RCW 7.105.150
Mandatory *(07/2022)*
PO 004

Proof of Service
p. 2 of 3

0245

| Renewals: | Motions: |
|---|---|
| [ ] Motion for Renewal of Protection Order | [ ] Motion to Modify or Terminate Protection Order |
| [ ] Order Setting Hearing on Renewal<br>[ ] and Extending Order until Hearing | [ ] Motion for Surrender and Prohibition of<br>Weapons |
| [ ] Order for Renewal of Order for Protection | [ ] Notice of Hearing |
| | [ ] Motion to Realign Parties |
| | [ ] Motion to Set Show Cause Hearing - Contempt |
| | [ ] Order on Hearing - Contempt |
| | [ ] Order re Adequate Cause |
| [ ] Order Setting Hearing – Sexual Assault | *After a Motion Hearing:* |
| [ ] Order on Motion for Renewal of Sexual<br>Assault Protection Order | [ ] Order Modifying or Terminating Protection Order |
| | [ ] Order to Surrender and Prohibit Weapons |

*Other Documents:*

[ ] _____

[ ] _____

[ ] _____

[ ] _____

5.  **Fees Charged for Service:**

[ ] Does not apply.

[ ] Fees: $_____ + Mileage $_____ = Total: $_____

6.  Other:  Email confirmation _____

_____

_____

I declare under penalty of perjury under the laws of the State of Washington that the statements on this form are true.

Signed at *(city and state):*  Seattle _____    Date:  Seattle _____

*Signature of server*

Ryan Ellis

*Print or type name of server*

Seattle PD

*Law Enforcement Agency (if any)*

RCW 7.105.150
Mandatory *(07/2022)*
PO 004

Proof of Service
p. 3 of 3

**0246**

## Ellis, Ryan

| | |
|---|---|
| **From:** | kurt benshoof <kurtbenshoof@gmail.com> |
| **Sent:** | Tuesday, November 15, 2022 1:26 PM |
| **To:** | Ellis, Ryan |
| **Subject:** | Re: Court Documents |

<table><tr><td align="center">CAUTION: External Email</td></tr></table>

It says there was a Compliance Review Hearing for the weapons surrender on 10/27/2022.

Kind of hard for me to do that without a time machine, eh?

Gonna come arrest me for "violating" the order?

By the way, I don't HAVE ANY WEAPONS.

Gonna come take my dull kitchen knives?

How many times have we been over this nonsense?

On Tue, Nov 15, 2022 at 11:26 AM Ellis, Ryan <Ryan.Ellis2@seattle.gov> wrote:

Kurt – this is the final order related to the previous restraining order.  See attached packet.

Please reply to this email that you received this packet

Thank you


Detective Ryan Ellis

DV Order Service & Firearms Recovery Unit

Seattle Police Department

610 5th AV

Seattle, WA 98124

206-386-1306

**0247**

**FILED**
2022 OCT 21 01:00 PM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 21-5-00680-6 SEA

## Superior Court of Washington, County of King

In re:

Petitioner/s *(person/s who started this case)*:

    JESSICA R. OWEN,

And Respondent/s *(other party/parties)*:

    KURT A. BENSHOOF.

No. **21-5-00680-6 SEA**

Proof of Service by Mail
(AFML)

# Proof of Service by Mail

*Warning!* Use this form **only** if the court has signed an Order to Allow Service by Mail for documents that otherwise must be personally served. Use the Proof of Mailing or Hand Delivery form (FL All Family 112) to show service of documents that do **not** have to be personally served.

*Server declares:*

**1.** My name is: <u>Alyssa Stock</u>. I am **not** a party to this case. I am 18 or older.

**2.** **Service by mail allowed** *(Check one)*:

    ☒ The court signed an order on *(date):* <u>August 24, 2022,</u> that allows me to serve the documents listed in section **4** below by mail.

**3.** On *(date):* <u>October 21, 2022</u>, I personally mailed **two copies** of the documents listed below to *(name):* <u>Kurt A. Benshoof</u> at each address listed below. I mailed one copy by regular, prepaid first class mail. I mailed the other copy by certified mail with return receipt requested. The return receipt is taped below.

    *(Check all that apply):*

    ☒ Last known mailing address:

| <u>1716 N 128th St.</u> | <u>Seattle</u> | <u>WA</u> | <u>98133</u> |
|---|---|---|---|
| street number or P.O. box | city | state | zip |

CR 4(d)(4) and (g), RCW 4.28.100
Optional Form *(05/2016)*
FL All Family 107

Proof of Service by Mail

p. 1 of 2

SDS
SEATTLE
DIVORCE
SERVICES

2317 NW Market St.
Seattle, WA 98107
phone: (206) 784-3049
fax: (206) 784-2681

**0248**

**4.** **List all documents you served** *(check all that apply)*:
*(The most common documents are listed below. Check only those documents that were served. Use the "Other" boxes to write in the title of each document you served that is not already listed.)*

☒ Order on Motion for Default      ☒ Findings and Conclusions about Parentage

☒ Final Parentage Order      ☒ Final Restraining Order

☒ Order to Surrender and Prohibit Weapons

**5.** Other information (if any): _____

I declare under penalty of perjury under the laws of the state of Washington that the statements on this form are true.

Signed at *(city and state)*: _Seattle, WA_      Date: _10/21/22_

▶ _Alyssa Stock_      _Alyssa Stock_
*Signature of server*      *Print or type name of server*

**To the party having these documents served:**
- File the original *Proof of Service by Mail* with the court clerk.
- If you served a *Restraining Order* signed by the court, you must also give a copy of this *Proof of Service by Mail* and a *Law Enforcement Information Sheet* to law enforcement.

**See attached for receipt.**



| CR 4(d)(4) and (g), RCW 4.28.100 | Proof of Service by Mail | | 2317 NW Market St. Seattle, WA 98107 |
| Optional Form (05/2016) | | **SDS** | phone: (206) 784-3049 |
| FL All Family 107 | p. 2 of 2 | SEATTLE DIVORCE SERVICES | fax: (206) 784-2681 |

**0249**

**FILED**
KING COUNTY, WASHINGTON

JUL 22 2021

SEA
SUPERIOR COURT CLERK

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR KING COUNTY

| | |
|---|---|
| IN THE MATTER OF THE RESPONSE BY KING COUNTY SUPERIOIR COURT TO THE PUBLIC HEALTH EMERGENCY IN WASHINGTON STATE | No. 21-0-12050-3 **EMERGENCY ORDER #32 RE: PUBLIC HEALTH** |

This matter comes before the Court on the public health emergency in Washington State.

This Order is based upon the Washington State Supreme Court's February 19, 2021 Order, the Washington State Labor and Industries (L&I) Guidance and Requirements, June 30, 2021[1] , the Washington State Department of Health (DOH) Order of the Secretary of Health Amending Order 20-03, June 29, 2021[2] and Governor Jay Inslee's remaining proclamations regarding the COVID-19 pandemic governing the effectiveness of certain laws . **All parties and persons are encouraged to monitor the King County Superior Court website at** https://www.kingcounty.gov/courts/superior-court.aspx **for updates.**

**The Court Finds and Concludes as follows:**

1. On July 14, 2021, Washington State reached its goal of 70% vaccination rate. The President, Governor and Public Health Seattle-King County have dropped certain masking and social distancing mandates. Workplace rules continue to apply. Parts of

---

[1] https://www.lni.wa.gov/forms-publications/F414-164-000.pdf
[2] https://www.doh.wa.gov/Portals/1/Documents/1600/coronavirus/Secretary_of_Health_Order_20-03_Statewide_Face_Coverings.pdf

Emergency Order #32 Public Health - 1 of 3

**0250**

King County have exceeded the goal of 70%. Parts of King County have not exceeded that goal.

2.  Current L&I and DOH guidance and workplace rules state that people who are vaccinated are not required to wear masks or be socially distanced. Unvaccinated persons must wear masks in workplaces.

3.  Many persons come to the King County Superior voluntarily, but many are required to come by need, by summons, by arrest, by subpoena, or other circumstances, or because their significant rights are at stake.

4.  Some of these persons choose to be vaccinated and some do not. The Court must allow access to everyone who comes to court. The Court lacks the personnel to ask the general public who enter our courthouse locations whether or not they have been vaccinated.

5.  Current information on variants is new, uncertain, and developing[3]. The Court continues to consult with professors from the University of Washington, School of Public Health. The Court makes all final public health decisions with respect to the operation of the Court and the Courthouses.

**IT IS ORDERED:**

1.  All persons over the age of three entering the Maleng Regional Justice Center, the King County Courthouse, the Clark Children and Family Justice Center, or Harborview ITA Court on courthouse business, including anyone entering a courtroom, must wear a facial covering at all times regardless of vaccination status. Individuals who work in the courthouses shall follow their workplace rules when they are in private court offices, chambers, or non-public areas.

2.  The Superior Court locations shall continue to use appropriate ventilation in all locations.

---

[3] https://www.doh.wa.gov/Portals/1/Documents/1600/coronavirus/data-tables/420-316-SequencingAndVariantsReport.pdf

Emergency Order #32 Public Health - 2 of 3  **0251**

3. At this time, empaneled juries shall not be placed all together in a jury room, although a jury panel may be placed in multiple jury rooms as implemented at the Maleng Regional Justice Center.

4. This Order shall be subject to revision at any time as the public health situation changes.

This Order supersedes Emergency Order #19.

**IT IS SO ORDERED**.

Dated: July 22, 2021

JUDGE JIM ROGERS
Presiding Judge, King County Superior Court

# EXHIBIT – P7A
Lerman
Facebook Posts



**Justice Rivera**
September 11, 2020 · 🌐

Dear Sprouts, I really want to want to thank you for arresting that ridiculous narcissistic white man who wouldn't put on a mask at your North Seattle location today. I want him to go away too. The problem is, he won't. Like it or not, he is the father of a child close to me and the carceral system is only punishing the women he relies on. After you got rid of him, one of his child's mother's had to cancel all of her evening plans to go bail him out of jail because, if she didn't, she wouldn't have child care over the weekend. If you want to help, advocate for sterilizing narcissistic men, not jail. At a bare minimum, let's stop putting these type of men in the White House.

🕐😢😤 25                                                        2 comments

👍 Like                                              ↪ Share

View more comments



**Justice Rivera**
June 29, 2020 · 🌐

I feel this is important to say given some of the slander that is going around about my colleagues and I right now: I used to believe in police reform and interventions including Law Enforcement Assisted Diversion (LEAD). As a felon who has spent many months in jail, I wished I had a chance to be given services instead of a criminal conviction that *still* makes it hard for me to find housing. I wanted to hold out for the revolution, but didn't want to use other people as collateral to get there. So, I thought I could work to help ground these reforms and programs in compassionate principles. It worker at first, when we were talking about drug users in places with robust harm reduction services. Then, stakeholders started using these programs with sex workers and I wanted to see if it would work. My colleagues and I learned very quickly that it won't in this current service landscape where the only services for sex workers are exit based anti-trafficking services. We said as much. Our clients, these program's stakeholders, did it anyway. We tried to ground their work in principles still...and we were mistreated by them the whole time. I will never work with the again. And, I now have experienced how reforms get co-opted by people with power and privilege to serve their own pockets and aims. The only way forward is police and prison abolition - defund and reinvest in harm reduction. Obvs right now we are seeing that our movement has a lot to address to even make that safe. I am definitely not perfect. I wanted to believe in middle pathways and compromises, and all I have seen is that absolute power corrupts absolutely.

❤️👍 86                                        10 comments  6 shares

👍 Like                                              ↪ Share

View more comments

**200**                      **0254**



**Justice Rivera**
September 6, 2021 · 🌐

The last three weeks have shaken me to the core and caused me to re-evaluate the work I have been doing for the past decade. I've come to the conclusion that our movement towards decarceration and prison abolition is ineffective and even harmful when anti-violence resources aren't paired with it or given priority. I'd like to explain more of why this is but need to give a content warning: child abduction, psychological manipulation, interpersonal violence, state violence, racism, misogyny #metooharmreduction

The systemic barriers that are failing me and my family right now, contributing to our sense of fear and urgency, sit dangerously in the gap between criminalization and reform. Seattle King County is not booking misdemeanor warrants. Great! I thought until my fiancée's abuser kidnapped her kid and we had to flee as soon as we could because he wouldn't be arrested on his active warrant or for violating conditions of his bail. Because white men don't get arrested on charges that a black or brown man would have been killed for. I've fought for no mandatory minimums. Great! Except that my fiancée's abuser's charges for intimidating a security guard at Sprouts with a gun because the guard kicked him out for not wearing a mask were deprioritized even though he has a felony record. I've supported defunding the police. Great! SPD's budget was cut by 5% this year. And now the police are saying that their DV and Child Endangerment Offices don't work on weekends or holidays *eye roll* and that GPS tracking on the kid's devices wasn't enough evidence for a search warrant.

I've supported marijuana legalization. Great! Except that Washington State regulatory code is so racist and limited that it creates an environment for black market weed to be sold without transparency, funneling tons of money and resources towards my fiancée's abuser while simultaneously creating a cover and some level of legitimacy for him. I was in full support of the eviction moratorium until my finance's abuser refused to leave the house she owns and hasn't been paying rent despite having tons of money. He still hasn't and he won't, but it will now take us months to evict him. All the while, we have been enduring his toxic narcissism and abuse towards my fiancée, her kid, and her cat.

**201**            **0255**

I'm a prison abolitionist because I know that the police, family court, and prison systems were not designed to help us. They are serving the exact function they were meant to – to protect a cishet white male moral order. Tamir Rice was killed for being black and playing with a toy gun but a cishet white man with a rifle is given a slap on the wrist. Breonna Taylor was killed by police in her sleep in THE WRONG HOUSE. But, GPS evidence isn't enough to go into a white man's house to rescue a child. I know without a doubt that if this abuser wasn't white, the police and prosecutors would care. Instead, the courts have said there isn't enough evidence for a DV protection order and that this abusive man has rights to my stepson even though he isn't on the birth certificate or any other legal documents.

These systems suck because they can't provide femmes and POC (and especially women of color) safety, but simply abolishing prisons doesn't instantly make us safer. Repealing problematic policies and procedures one at a time leaves a huge gap for abuse to occur. We need to be filling that gap while we pass reforms. No misdemeanor bookings without increasing anti-violence measures was and is harmful. There's a ton of cost savings that can be de-vested and put into transformative justice. Same with no mandatory minimums, eviction moratoriums, and drug policy reforms.

I still believe in a world without prisons and prosecutors but that doesn't look like simply eradicating the prison industrial complex. My ask for my colleagues in the fight for liberation and social justice is to please consider hybrid abolition/ anti-violence models. In our drug policy reform pursuits, we need transparency in the supply chain. In the meantime, I propose everyone stop buying weed from white men.

I want to thank my amazing partner for being so strong though this and allowing me to publish my truth. Thank you to #metooharmreduction for backing me. Thank you to the handfuls of amazing friends who have supported us through this. It is long from over, but we will persist.

🌸💕 99                                                                19 comments

👍 Like                                             ➤ Share

View more comments

**202**                        **0256**

# EXHIBIT – P7B

Lerman
Twitter Posts



Ms. Lerman deleted this post sometime between 1pm Monday January 23, 2023 and 130pm Thursday January 26, 2023.

**Solana Sparks ☀San Juan** 🏳
@SolanaSparks

🏳 🔞 ⚬ Creator of erotic satires, somatic life coach, pleasure activist & 🐎 lover. Seattle, Puerto Rico & world wide.

📍 Seattle, WA   🔗 solanasparks.com   📅 Joined August 2018

**665** Following   **3,935** Followers

Not followed by anyone you're following

| Tweets | Tweets & replies | Media | Likes |
|---|---|---|---|

📌 **Pinned Tweet**

**Solana Sparks ☀San Juan** 🏳 @SolanaSparks · Jan 5   ···
Want to spend some of my birthday month with me? Here's where to find me:

Seattle: 1/1-1/8
Miami: 1/9 with Always Isobella  ⟵  *PROSTITUTION NAME OF JESSICA R. OWEN*
San Juan 1/16-1/25

My birthday is 1/31 and I'd love an extended date 🏄 surfing buddy + bday s*x 💦

Now accepting inquiries at solanasparks@pm.me.



💬     🔁 1     ♡ 10     📊 764     ⬆

**205**                    **0259**

# EXHIBIT – P7C

Lerman
Texts & Emails

12:32 PM

Daniel Heller, I am writing this to reinforce what I told you in-person on April 8th, 2022: You are not welcome on the property where I live at 849 NE 130th, Seattle. Do not come near me or my family. Do not contact us, intimidate us, or cyber stalk us. I am afraid of you because of your admitted and proven racism and misogyny, because you have on multiple occasions harassed me and my family as a minion of Kurt Benshoof, and because of similar reports I have found of your violence in the community. I am scared of you. Do not come near me or my family's property.

Si**207**, Magalie Lerman



To: +1 (303) 500-9723

iMessage
Saturday 11:23 AM

Molly Anderson, you are not welcome on the property where I live at 849 NE 130th, Seattle. Do not come near me or my family. Your constant harassment is scaring my 13 year old step son. Do not contact us, intimidate us, or cyber stalk us. I am afraid of you because of your allegiance to and collaboration with an abusive white supremacist. I am scared of you because you have on multiple occasions harassed me and my family as a minion of Kurt Benshoof. Do not come near me or my family's property. Next time, we will call the police and I promise you - no man is worth a charge. Signed, Magalie Lerman

# Stop
Inbox

**Magali Lerman <magalie.lerman@gmail.com>**          May 8, 2022, 5:48 PM
to me

Kurt,

I would think it's intuitive that I do not welcome your hate and harassment, but I've been advised by legal counsel to lay it out in writing. I do not consent to you contacting me or following me in person or online. You do not have technical nor verbal permission to access personal or professional information about me as Magalie Lerman, Justice Rivera, or Solana Sparks. I have never given you access to follow me on Facebook - you hacked my account - and I am now declaring in writing that you do not have consent to follow me on any other social media platforms. Stop cyber stalking me and then spinning tales about what you see.

I would think it is also obvious that I am scared of you. I have never done anything to you - we've barely had contact which is how I would like it - yet you have pointed your racism and misogyny at me. I am afraid of you because of your narcissism and violence towards my family, marginalized women, and the greater Seattle community. You are a scary person. Stop targeting me and keep my name out of your affairs.

-- Magalie

**209**                          **0263**



# STATE OF WASHINGTON
# DEPARTMENT OF HEALTH

## CERTIFICATE OF LIVE BIRTH



STATE FILE NUMBER:

**146-2009-028426**

DATE ISSUED:

**JULY 03, 2023**

FIRST AND MIDDLE NAME(S):

**AZHRAEL RUNE**

LAST NAME(S):

**WALKER**

DATE AND TIME OF BIRTH:

**APRIL 22, 2009   08:05 AM**

SEX:

**MALE**

PLACE OF BIRTH (CITY, COUNTY, STATE):

**SEATTLE, KING COUNTY, WASHINGTON**

FACILITY:

**SWEDISH MEDICAL CENTER - FIRST HILL**

MOTHER'S NAME PRIOR TO FIRST MARRIAGE:

**JESSICA RAE OWEN**

MOTHER'S PLACE OF BIRTH:

**CALIFORNIA**

MOTHER'S DATE OF BIRTH:

**NOVEMBER 23, 1975**

FATHER'S NAME:

**KURT ALDEN BENSHOOF**

FATHER'S PLACE OF BIRTH:

**WASHINGTON**

FATHER'S DATE OF BIRTH:

**JULY 18, 1969**

DATE FILED:

**MAY 09, 2009**

FEE NUMBER:

**164721396**

**0264**

NOT VALID IF PHOTOCOPIED OR ALTERED

DOH 422-132 King (8/18)

## MUNICIPAL COURT FOR THE CITY OF SEATTLE

CITY OF SEATTLE,
              *"Plaintiff"*          Case Nos: 676492, 676463, 676216,
V.                                              676207, 676175, 675405,
                                                671384, 656748.
KURT BENSHOOF,
              *"Defendant"*
_____
TO: CLERK of the above-entitled court
TO: PROSECUTING ATTORNEY

## DEFENDANT'S NOTICE OF MOTION for *"FRANKS* HEARING" AND MOTION TO VOID WARRANT, SUPPRESS EVIDENCE, AND DISMISS CHARGES FOR LACK OF PROBABLE CAUSE

PLEASE TAKE NOTICE that Defendant hereby moves the Court to suppress all evidence collected and derived from the unlawful search and seizure of the Defendant's home; hold that the warrant was not supported by probable cause; that the Defendant's arrest was unlawful and to suppress any statements made by Defendant subsequent to his arrest.

## The Search Warrant was Not Supported by Probable Cause

Defendant herewith asks the Court, pursuant to the Fourth Amendment to the United States Constitution, Washington Constitution Article I Section 3 [1], Section 7 [2], to suppress all evidence resulting from the State's unlawful search and seizure of Defendant's home on July 3, 2024. "Unreasonable searches and seizures" are prohibited by the United States and Washington Constitutions. [3]

"The touchstone of [the] analysis under the Fourth Amendment is always the reasonableness in all circumstances of the particular governmental invasion of a citizen's personal security."[4]

---

[1] SECTION 3 PERSONAL RIGHTS. No person shall be deprived of life, liberty, or property, without due process of law.

[2] SECTION 7 INVASION OF PRIVATE AFFAIRS OR HOME PROHIBITED. No person shall be disturbed in his private affairs, or his home invaded, without authority of law.

[3] U.S. Const. amend. IV; Washington Const. art. I, §3, §7.

[4] *State v. Bartylla*, 755 N.W.2d 8, 15 (Minn. 2008) (quoting *Pennsylvania v. Mimms*, 434 U.S. 106, 108-09 (1977)).

When a defendant seeks to invalidate a warrant, the two-prong *Franks* test requires a defendant to show that (1) the Applicant 'deliberately made a statement that was false or in reckless disregard of the truth,' and (2) 'the statement was material to the probable cause determination.'"[5]

## APPLICATION FOR SEARCH WARRANT

Page 1 line 12- 22:

> "*On the basis of the following, I believe there is probable cause that Kurt A BENSHOOF, date of birth 7/18/1969, has committed the crime(s) of Stalking,* **RCW 9A.46.110**, *and Violation of a Court Order,* **RCW 26.50.110** *in King County, and that:*
>    ☒ *Evidence of those crimes;*
>    ☒ *Contraband, the fruits of a crime, or things otherwise criminally possessed.*
>    ☒ *Weapons or other things by means of which a crime has been committed or reasonably appears about to be committed;*
>    ☒ *A person for whose arrest there is probable cause, or who is unlawfully restrained.*
> *is located in, on, at, or about the following described premises, vehicle or person:*
> *1716 N 128th ST, Seattle, Washington 98133 occupied by BENSHOOF*"

See attached EXHIBIT A

The APPLICATION FOR SEARCH WARRANT is quoting verbatim from RCRCW 10.79 0.035(1) (a), (b), (c):

**RCRCW 10.79 0.035 - Issuance of search warrants by magistrates.**
(1) Any magistrate as defined by RCW **2.20.010**, when satisfied that there is probable cause, may[,] upon application supported by oath or affirmation, issue a search warrant to search for and seize any:
(a) Evidence of a crime;
(b) contraband, the fruits of crime, or things otherwise criminally possessed;
(c) weapons or other things by means of which a crime has been committed or reasonably appears about to be committed; or
(d) person for whose arrest there is probable cause or who is unlawfully restrained.

The APPLICATION FOR SEARCH WARRANT described the place to be searched by naming the address but did not describe with specificity the evidence petitioner expected to find, the APPLICATION FOR SEARCH WARRANT failed to identify any of the items that petitioner intended to seize. Verbatim quotation from RCRCW 10.79 0.035(1) (a), (b), (c) squarely falls

---

[5] *State v. Andersen*, 784 N.W.2d 320, 327 (Minn. 2010) (internal citations omitted).

under *presumptive rule against warrantless searches whose only defect is a lack of particularity in the warrant.*

> "We have clearly stated that the **presumptive rule against warrantless searches applies with equal force to searches whose only defect is a lack of particularity in the warrant.**"
> **Groh v. Ramirez, 540 U.S. 551, 559, 124 S. Ct. 1284, 1291, 157 L. Ed. 2d 1068 (2004)**

The four boxes that are checked: **evidence, contraband, weapons, a person** –on its face constituted as a General Warrant in violation of 4th amendment, see *Groh v. Ramirez.*

Page 2 line 17:

*"The victim in this investigation, Jessica Owen, is the **previous wife** to suspect Benshoof."*

- Benshoof and Owen were never married, and RCW 26. Domestic Relations (26.04.007 to 26.60.901) does not apply.

Page 2 line 20-23:

*"Owen obtained a **Seattle Municipal No Contact Order, OCA223037** which was **served on** Benshoof on **11/16/2022** and expires on **11/16/2027**. In addition, Owen obtained a **Restraining Order, OCA215006806**, which was **served on 11/15/2022** and expires on 9/28/2027."*

- The record is devoid of evidence that those were served upon Benshoof.

Page 2 line 24-25:

*"Since that time, law enforcement officials have been unable to arrest Benshoof. See **Exhibit 1, attached.**"*

- The "APPLICATION FOR SEARCH WARRANT" provided to Benshoof in Discovery does not contain *"Exhibit 1"*, record requests by Benshoof's "next friend(s)" and his "assistance of counsel(s)"[6] under Judiciary Act of 1789, 1 Stat. 73, 92,[7] have not been provided the *"Exhibit 1"* referenced in "APPLICATION FOR SEARCH WARRANT". See attached EXHIBIT A

---

[6] *Faretta v. California*, 422 U.S. 806, 812–13, 95 S. Ct. 2525, 2530, 45 L. Ed. 2d 562 (1975)

[7] "SEC. 35. And be it further enacted, **That in all courts** of the United States, the **parties may plead and manage their own causes personally or by assistance of such counsel or attorneys at law**" "The Judiciary Act; September

Page 3 line 2-3:

"*Officers spoke to Owen over the phone who stated that **her ex-husband who** she verbally identified as Kurt, Benshoof*..."

- Benshoof and Owen were never married, and RCW 26. Domestic Relations (26.04.007 to 26.60.901) does not apply.

Page 3 line 24-28:

*"When asked about the nature of the text messages, Owen stated that Benshoof has messaged about several different topics. Some of his messages tell her that she "is toast" and that he is coming for his son. Others tell her that "shit is going to hit the fan" and asks her what side of the fan she wants to be on. Other messages talk about random topics about Jesus and other non relevant topics."*

Page 4 line 1- 7:

"*When asked about the content of **his emails**, Owen stated that they **mainly concern lawsuits** and **other legal proceedings**. Owen went on to explain that the court system has marked Benshoof as a "vexatious litigant." Benshoof has apparently tried to sue too many people too many times over nothing lawsuits and now the court system has flagged him as an abuser of the legal system.*
*However, despite the court fining him for his overuse of the system, Benshoof **continues to email her lawsuits**. Some of these lawsuits' she is named in and others she was simply forwarded the information."*

Page 4 line 8 - 9:

"*Owen also informed officers that this week she received a manila envelope in the mail, from Benshoof, containing more **court paperwork**.*"

Page 4 line 11 - 14:

"*The actual paperwork itself was more than a couple hundred pages so neither officer nor did Owen read through that. The front of the paperwork reads that it was a **Petition for Writ of Habeas Corpus** in which Benshoof is the petitioner and Owen is the respondent.*"

- Ryan Ellis #7612, Detective with the Seattle Police Department with "*twenty-five years' total in law enforcement experience and training*" [page 1 line 24] ("Detective Ellis") throughout

---

24, 1789, 1 Stat. 73. An Act to Establish the Judicial Courts of the United States." "APPROVED, September 24, 1789."

"APPLICATION FOR SEARCH WARRANT" keeps referring to what Owen told him [Detective Ellis] about the text messages, emails and phone calls.

- It is the duty of Detective Ellis to review the text messages, emails and voicemails reported to him by Owen, he could have reviewed them and known exactly what they said.

The actual voice mails, emails, text messages sent by Benshoof to Jessica R. Owen repeatedly referred to the fact that Jessica R. Owen and Magalie E. Lerman had kidnapped Benshoof's son A.R.W. [on September 3, 2021], had committed perjury, had stolen Benshoof's 2011 Toyota FJ Cruiser, and were extorting Benshoof of $19,000 for the return of Benshoof's FJ Cruiser and to see his son A.R.W. again. Benshoof was asking Jessica R. Owen and Magalie E. Lerman to stop the extortion and to stop abusing his son A.R.W.

Detective Ellis had a pre-search of Benshoof's house meeting with Jessica Owen on or around June 26th 2024.

Detective Ellis should have asked Jessica R. Owen to preserve and to provide/**forward and/or save onto a disk/flash drive all the emails, text messages and voice messages** - to substantiate Owen's alleged claims against Kurt Benshoof.

Detective Ellis had months and months to actually look at the text messages, emails and to listen to the voice mails. For some inexplicable reason Detective Ellis failed to perform his basic duty as a detective, and thereby "failed" to discover the exculpatory evidence in favor of Kurt Benshoof.

More importantly there would have been no reason to obtain search warrant for Benshoof's house because Detective Ellis would have had all the evidence of the alleged crimes.

Page 5 line 12 - 13:

*"Owen stated she avoids being at home and sometimes stays out of town in an attempt to keep herself and her son safe."*

Page **5** of **26**

**0269**

- Jessica R. Owen makes her living by receives payment for sexual intercourse or other sexual acts. The legal definition of her chosen profession is: Prostitute. [8]

> "Pursuant to **18 USCS § 2421**, on federal level **it is a crime to transport a person in interstate** or foreign commerce for the purpose of prostitution or for any other immoral purpose."

> **RCW 9A.88.030** Prostitution.
> (1) A person age eighteen or older is guilty of prostitution if such person engages or agrees or offers to engage in sexual conduct with another person in return for a fee.
> (2) For purposes of this section, "sexual conduct" means "sexual intercourse" or "sexual contact," both as defined in chapter 9A.44 RCW.
> (3) Prostitution is a misdemeanor.

Jessica R. Owen's statement that "*sometimes stays out of town*" is reference to "Fly Me to You", a service she is offering to non-local customers.

Benshoof has been raising the issue that his son A.R.W. is being raised by individual who is earning living by criminal activity codified under RCW 9A.88.030 and Federal 18 USCS § 2421 is taking his son to the "business trips".

Jessica R. Owen statement "*in an attempt to keep herself and her son safe*" is unsupported by any record before the court. Jessica R. Owen has never made any accusations of actual violence by Benshoof against his son A.R.W. or against herself.

Page 5 line 18 - 21:

> "*Owen said Benshoof never leaves the residence and she's too afraid to confront him about the residence. In addition, during their last hearing in Superior Court related to the ownership of the residence, Benshoof filed an appeal in Superior Court, which was denied.*"

---

[8] <u>Prostitute Law and Legal Definition:</u> "Prostitute is a person who receives payment for sexual intercourse or other sexual acts. This is generally taken as a regular occupation. Although usually a prostitute refers to a woman offering sexual favors to men, there are male prostitutes who may perform homosexual acts for money or receive payment from women for sexual services. Prostitution **is held illegal** in all states except Nevada, where it is strictly regulated. Some state statutes punish the act of prostitution, and other state statutes criminalize the acts of soliciting prostitution, arranging for prostitution, and operating a house of prostitution. Pursuant to **18 USCS § 2421**, on federal level **it is a crime to transport a person in interstate** or foreign commerce for the purpose of prostitution or for any other immoral purpose."
https://definitions.uslegal.com/p/prostitute/

- The statement that appeal in Superior Court was "denied" is false. The appeal in the lawsuit related to the ownership of the residence in the Court of Appeals of the State of Washington, Case No. 85092-0-I was ongoing during the submission for the search warrant.

Jessica R. Owen's claim to *"she's too afraid to confront him about the residence"* – holds no water, as the parties were in long standing litigation over the residence.

The ORDER in the appeal Case No. 85092-0-I was filed on August 26, 2024, and is in the process to be appealed.

Page 5 line 24 – page 6 line 1:

"*It should be noted to the Court, as referenced in Exhibit 1, Benshoof has a history of non compliance with Court Orders and law enforcement officials. As noted in the January 23, 2023, incident, Benshoof convinced his son to leave Owen's residence and come to his house, which was a direct violation of the protection orders. Subsequently, officers responded and were able to obtain short-term custody of the child and return him to Owens from Benshoof's residence.*"

- On **January 23rd, 2023,** was the last time that Benshoof's son A.R.W. tried running away from Jessica R. Owen to his father's [Kurt Benshoof] house.

When the officers showed up on Benshoof's front porch, Benshoof literally had in his hands documents which he attempted to hand to the officers as proof that Detective Ellis had never served the restraining order upon Benshoof. The officers were there to arrest Benshoof for supposedly violating the restraining order which was never served upon Kurt Benshoof. The body footage video supports Benshoof's statement and the fact that the officers declined to look at or take the documentary evidence offered by Benshoof.

Page 6 line 11:

"*Benshoof has remained within the Target residence*"

- Is pure conjecture without evidence.

Page 6 line 11 -13:

"*Attempts to conduct surveillance on Benshoof and/or his residence have been unsuccessful*"

-Benshoof saw police swat drive up his alleyway once in an unmarked van into Benshoof's driveway despite the multiple no trespassing signs on the property, including on the street, constituting trespass.

Page 6 line 15 -16:

> *"On 6/27/24, officers observed Benshoof's Toyota FJ Cruiser parked in front of his house. Although officers did not observe Benshoof on the property, officers noted the residence appeared occupied and noted several on-going projects on the property."*

- This is not adequate basis for probable cause to say that Benshoof has been living in the house. It is not possible to "observe" *"Benshoof's Toyota FJ Cruiser" because* it is not visible from the street.

The police swat drove their van down Benshoof's private driveway, turned around and drove out, constituting trespass on private property.

Page 6 line 21 -27:

> *"Based on all the foregoing information, I believe that evidence of the above-listed crime(s) exists at the above-described location, and that there is probable cause to search that location for evidence of the above-listed crimes, including:*
> • *Handgun(s) within the residence and/or BENSHOOF persons.*
> • *Bills, receipts, mail and other items that evidence dominion and control of the premises, places, property, and/or person searched.*
> • *Electronic communication device(s), computers and cell phones*
> *device(s), computers and cell phones*
> • *KURT A BENSHOOF"*

The APPLICATION FOR SEARCH WARRANT is quoting verbatim from **RCRCW 10.79 0.035(1) (a), (b), (c):**

**RCRCW 10.79 0.035 - Issuance of search warrants by magistrates.**
(1) Any magistrate as defined by RCW **2.20.010,** when satisfied that there is probable cause, may[,] upon application supported by oath or affirmation, issue a search warrant to search for and seize any:
   (a) Evidence of a crime;
   (b) contraband, the fruits of crime, or things otherwise criminally possessed;
   (c) weapons or other things by means of which a crime has been committed or reasonably appears about to be committed; or
   (d) person for whose arrest there is probable cause or who is unlawfully restrained.

*• **Handgun(s) within the residence and/or BENSHOOF persons***

- Where in the foregoing does it list any probable cause for a crimes including probable cause of having handguns on Benshoof's property?

Nowhere in the previous six pages does Detective Ellis even talk about why he believes that Benshoof would be in possession of a gun.

Since prior PCC and restraining orders back in 2021 and 2022 Detective Ellis has personal knowledge that Benshoof has provided Detective Ellis multiple signed weapons surrender forms attesting to the fact that Benshoof did not have any weapons.

See attached EXHIBIT D and E

There's never been any allegation that Benshoof has threaten anybody with the handgun. Therefore, no nexus exists between any purported allegation of alleged crime and possession and/or ownership of a handgun.

### • Bills, receipts, mail and other items that evidence dominion and control of the premises, places, property, and/or person searched.

Detective Ellis wants to search for bills, receipts, mail and other items that evidence Dominion or control over the premises. places, property, and/or person searched. Once again there is no nexus between any allegation of a crime and the items to be searched.

### • Electronic communication device(s), computers and cell phones, device(s), computers and cell phones

The APPLICATION FOR SEARCH WARRANT lists: electronic communication device(s), computers and cell phones, device(s), computers and cell phones

The important distinction is that the Search Warrant does not list: electronic communication device(s), computers and cell phones, device(s), computers and cell phones. See attached EXHIBIT F

Whatever is listed in the APPLICATION FOR SEARCH WARRANT does not automatically carry over to the SEARCH WARRANT. The search warrant itself has to explicitly say what is to be searched and taken.

> **"The Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents.** See *Massachusetts* v. *Sheppard,* 468 U. S. 981, 988, n. 5 (1984) ("[A] **warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional**"); see also *United States* v. *Stefonek,* 179 F. 3d 1030, 1033 (CA7 1999) ("**The Fourth Amendment requires that the** *warrant*

**particularly describe the things to be seized, not the papers presented to the judicial officer . . . asked to issue the warrant**" (emphasis in original)). And for good reason: "The presence of a search warrant serves a high function," *McDonald* v. *United States,* 335 U. S. 451, 455 (1948), and that high function is not necessarily vindicated when some other document, somewhere, says something about the objects of the search, but the contents of that document are neither known to the person whose home is being searched nor available for her inspection. We do not say that the Fourth Amendment forbids a warrant from cross-referencing other documents. See, *e.g., United States* v. *McGrew,* 122 F. 3d 847, 849-850 (CA9 1997); *United States* v. *Williamson,* 1 F. 3d 1134, 1136, n. 1 (CA10 1993); *United States* v. *Blakeney,* 942 F. 2d 1001, 1025-1026 (CA6 1991); *United States* v. *Maxwell,* 920 F. 2d 1028, 1031 (CADC 1990); *United States* v. *Curry,* 911 F. 2d 72, 76-77 (CA8 1990); *United States* v. *Roche,* 614 F. 2d 6, 8 (CA1 1980). **But in this case the warrant did not incorporate other documents by reference, nor did either the affidavit or the application** (which had been placed under seal) **accompany the warrant**. Hence, we need not further explore the matter of incorporation."

<u>**Groh v. Ramirez, 540 U.S. 551, 557–58, 124 S. Ct. 1284, 1289–90, 157 L. Ed. 2d 1068 (2004)**</u>

There is no probable cause to take computers and phone, which contain Benshoof's personal papers and effects, as Detective Ellis already had copies of the supposed text messages, emails from Owen's phone and computer.

"**The uniformly applied rule is that a search conducted pursuant to a warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional.** Stanford v. Texas, 379 U.S. 476, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965); United States v. Cardwell, 680 F.2d 75, 77–78 (C.A.9 1982); United States v. Crozier, 674 F.2d 1293, 1299 (C.A.9 1982); United States v. Klein, 565 F.2d 183, 185 (C.A.1 1977); United States v. Gardner, 537 F.2d 861, 862 (C.A.6 1976); United States v. Marti, 421 F.2d 1263, 1268–1269 (C.A.2 1970). \*560 **That rule is in keeping with the well-established principle that 'except in certain carefully defined classes of cases, a search of private property without proper consent is "unreasonable" unless it has been authorized by a valid search warrant.'** Camara v. Municipal Court, 387 U.S. 523, 528–529, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). See Steagald v. United States, 451 U.S. 204, 211–212, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981); Jones v. United States, 357 U.S. 493, 499, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958)." Ibid.

<u>**Groh v. Ramirez, 540 U.S. 551, 559–60, 124 S. Ct. 1284, 1291, 157 L. Ed. 2d 1068 (2004)**</u>

The APPLICATION FOR SEARCH WARRANT was approved by Judge Nicholas Straley, and **signed** by Judge Straley <u>**electronically on June 27, 2024,**</u> and Issuance of Warrant was Approved by LEESA MANION, Prosecuting Attorney. (footnote 1) See <u>Page 7 line 24 -to- page 8 line 7.</u>

Leesa Manion's signature does not appear anywhere on the APPLICATION FOR SEARCH WARRANT, see attached EXHIBIT A.

**Footnote 1:** "*1 If applicant is a Federal Agent, issuance of warrant is also requested by the signing King County Prosecuting Attorney.*" See Page 8 line 28.

Detective Ryan Ellis identifies himself as:

> "*I, Ryan Ellis, Seattle Police Detective #7612, currently assigned to the Seattle Police Department, Domestic Violence Unit, have been employed by the City of Seattle since February 2012. I have twenty-five years' total in law enforcement experience and training. I was previously employed by the Department of Corrections, during which time I was assigned as a **Federal Task Force Officer with the Drug Enforcement Administration (DEA).***"

See Page 1 line 25 -to- page 2 line 1.

Detective Ryan Ellis provides following in support of his experience with search warrant affidavits:

> "*I completed the basic law enforcement academy at the Washington State Criminal Justice Training Center. I have completed the basic Seattle Police Department Detective School. In doing so, **I have written and executed over two hundred search warrant affidavits.***"

See Page 2 line 1 - 4.

> "***Since February 2018**, I have been assigned as a Detective to the **Domestic Violence Protection Order Service** and **Firearms Surrender unit**. During this time, I have obtained and executed several search warrants related to the seizure of firearms as they pertain to Order to Surrender Weapon Court Orders.*"

See Page 2 line 5 - 7.

"*The warrant* [is] *invalid because it* [does] *not "describe with particularity the place to be searched and the items to be seized," and* [any potential] *oral statements by petitioner* [Detective Ellis] *during or after the search* [would] *not cure the omission.*" See Groh v. Ramirez. 540 U.S. 551, 556, 124 S. Ct. 1284, 1289. 157 L. Ed. 2d 1068 (2004)

## "MOTION, FINDING OF PROBABLE CAUSE AND ORDER DIRECTING ISSUANCE OF SUMMONS OR WARRANT AND FIXING BAIL"

On July 8, 2024, document entitled "MOTION, FINDING OF PROBABLE CAUSE AND ORDER DIRECTING ISSUANCE OF SUMMONS OR WARRANT AND FIXING BAIL" is filed into the No. 24-1-02680-7 SEA. See attached EXHIBIT H

The APPLICATION FOR SEARCH WARRANT was approved by Judge Nicholas Straley, and **signed** by Judge Straley **electronically on June 27, 2024,** and Issuance of Warrant was Approved by LEESA MANION, Prosecuting Attorney. (footnote 1) See Page 7 line 24 -to- page 8 line 7. See attached EXHIBIT A

"MOTION, FINDING OF PROBABLE CAUSE AND ORDER DIRECTING ISSUANCE OF SUMMONS OR WARRANT AND FIXING BAIL" is signed by Davud D. Martin, WSBA #27129, there is no handwritten date on the document on page 3.

| | |
|---|---|
| 1 | IT IS FURTHER ORDERED that the defendant be advised of the amount of bail fixed by the court and/or conditions of his or her release, and of his or her right to request a bail reduction. |
| 2 | Service of the warrant by telegraph or teletype is authorized. |
| 3 | SIGNED this _____ day of July, 2024. |
| 4 | |
| 5 | _____ |
| | JUDGE |
| 6 | Presented by: |
| 7 | *[signature]* |
| 8 | David D. Martin, WSBA #27129 |
| 9 | Senior Deputy Prosecuting Attorney |

See attached EXHIBIT H

On page 4 of the document there is signature of Hillary Madsen, dated on July 8, 2024.

King County Superior Court
Judicial Electronic Signature Page

Case Number:   24-1-02680-7
Case Title:   State vs Benshoof

Document Title:   ORDER TO ISSUE SUMMONS OR WARRANT OF ARREST

Signed By:   Hillary Madsen
Date.   July 08, 2024

*[signature]*

_____
Judge: Hillary Madsen

See attached EXHIBIT H

# SEARCH WARRANT

The SEARCH WARRANT itself is less specific, it fails to **identify any of the items that petitioner intended to seize.** In the portion of the form that called for a description of the:

Page 1 line 19 -to- page 2 line 3:

*"YOU ARE COMMANDED to:*
*1. Search, within 10 Days, the premises, vehicle or person described as follows:*
*RESIDENCE:*
 *1716 N 128th ST, Seattle, WA 98133 occupied by Kurt A BENSHOOF.*

*2. Seize, if located, evidence of the above-listed crimes, including:*" to be seized, petitioner typed:

"⊠ *Evidence of those crimes; to include Kurt A BENSHOOF*
⊠ *Contraband, the fruits of a crime, or things otherwise criminally possessed;*
⊠ *Weapons or other things by means of which a crime has been committed or*
*reasonably appears about to be committed;* "

The SEARCH WARRANT is quoting verbatim from **RCRCW 10.79 0.035(1) (a), (b), (c):**

**RCRCW 10.79 0.035 - Issuance of search warrants by magistrates.**
(1) Any magistrate as defined by RCW **2.20.010,** when satisfied that there is probable cause, may[,] upon application supported by oath or affirmation, issue a search warrant to search for and seize any:
   (a) Evidence of a crime;
   (b) contraband, the fruits of crime, or things otherwise criminally possessed;
   (c) weapons or other things by means of which a crime has been committed or reasonably appears about to be committed; or
   (d) person for whose arrest there is probable cause or who is unlawfully restrained.

The warrant does not incorporate by reference the itemized list contained in the APPLICATION FOR SEARCH WARRANT.

"The warrant [is] plainly invalid. The Fourth Amendment states unambiguously that "**no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and *particularly describing* the place to be searched, and *the persons or things to be seized.*** " (Emphasis added.)"
**Groh v. Ramirez, 540 U.S. 551, 557, 124 S. Ct. 1284, 1289, 157 L. Ed. 2d 1068 (2004)**

The SEARCH WARRANT is ambiguous and vague:  *"Evidence of those crimes; to include Kurt A BENSHOOF, Contraband, the fruits of a crime, or things otherwise criminally possessed;*

*Weapons or other things by means of which a crime has been committed or reasonably appears about to be committed;"*

### Not The Search Warrant That Detective Ellis Showed Kurt Benshoof On July 3, 2024

The SEARCH WARRANT which was supposedly **Filed on July 9, 2024,** is two page search warrant. See attached EXHIBIT F. This is absolutely not the search warrant that Detective Ellis showed Kurt Benshoof on July 3, 2024, when Benshoof was sitting in the back of the police car on July 3rd after having arrested by a swat team at his house.

The search warrant that Detective Ellis showed to Kurt Benshoof on July 3, 2024, stated in bold letters that it was a warrant for ***stalking and weapons.*** And NOT stalking in violation of a court order.

For some reason after Detective Ellis showed Benshoof the original Search Warrant, Detective Ellis decided to go back to his computer or maybe he was getting help from a prosecutor and he/they decided to change what the first page of the search warrant said.

### Failure To Provide Copy Of The Search Warrant and Copy of Application to Benshoof

Detective Ellis failed to give Kurt Benshoof a copy of the search warrant and the copy of the application, "*[t]he leaders of the search team must also make sure that a copy of the warrant is available to give to the person whose property is being searched at the commencement of the search, and that such copy has no missing pages or other obvious defects.*" *Ibid.* (footnote omitted). We granted certiorari. 537 U.S. 1231, 123 S.Ct. 1354, 155 L.Ed.2d 195 (2003)."

Groh v. Ramirez, 540 U.S. 551, 556. 124 S. Ct. 1284, 1289, 157 L. Ed. 2d 1068 (2004)

"This warrant did not simply omit a few items from a list of many to be seized, or misdescribe a few of several items. Nor did it make what fairly could be characterized as a mere technical mistake or typographical error. Rather, in the space set aside for a description of the items to be seized, the warrant stated that the items consisted of  [☒ *Evidence of those crimes; to include Kurt A BENSHOOF ☒ Contraband, the fruits of a crime. or things otherwise criminally possessed; ☒ Weapons or other things by means of which a crime has been committed or reasonably appears about to be committed*] **In other words, the warrant did not describe the items to be seized *at all.*** In this respect the warrant was so obviously deficient that we must regard the search as **"warrantless"** within the meaning of our case law. See *Leon,* 468 U. S., at 923; cf. *Maryland* v. *Garrison,* 480 U. S. 79, 85 (1987); *Steele* v. *United States,* 267 U. S. 498, 503-504 (1925). "We are not 559*559 dealing with formalities." *McDonald,* 335 U.S., at 455. Because "'**the right of a man to retreat into his own home**

and there be free from unreasonable governmental intrusion'" stands "'[a]t the very core' of the Fourth Amendment," *Kyllo* v. *United States,* 533 U. S. 27, 31 (2001) (quoting *Silverman* v. *United States,* 365 U. S. 505, 511 (1961)), our cases have firmly established the "'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable," *Payton* v. *New York,* 445 U. S. 573, 586 (1980) (footnote omitted). Thus, "absent exigent circumstances, a warrantless entry to search for weapons or contraband is unconstitutional even when a felony has been committed and there is probable cause to believe that incriminating evidence will be found within." *Id.,* at 587-588 (footnote omitted). See *Kyllo,* 533 U. S., at 29; *Illinois* v. *Rodriguez,* 497 U. S. 177, 181 (1990); *Chimel* v. *California,* 395 U. S. 752, 761-763 (1969); *McDonald,* 335 U. S., at 454; *Johnson* v. *United States,* 333 U. S. 10 (1948)."

Groh v. Ramirez, 540 U.S. 551, 558–59, 124 S. Ct. 1284, 1290–91, 157 L. Ed. 2d 1068 (2004)

"We have clearly stated that the **presumptive rule against warrantless searches applies with equal force to searches whose only defect is a lack of particularity in the warrant**."

Groh v. Ramirez, 540 U.S. 551, 559, 124 S. Ct. 1284, 1291, 157 L. Ed. 2d 1068 (2004)

**Issuance Of Warrant By Magistrate Does Not Necessarily Establish The Scope Of The Search**

*"The mere fact that the Magistrate issued a warrant does not necessarily establish that he agreed that the scope of the search should be as broad as the affiant's request.:*

Groh v. Ramirez, 540 U.S. 551, 561, 124 S. Ct. 1284, 1292, 157 L. Ed. 2d 1068 (2004)

*"It is incumbent on the officer executing a search warrant to ensure the search is lawfully authorized and lawfully conducted. Because petitioner* **[Detective Ellis]** *did not have in his possession a warrant particularly describing the things he intended to seize, proceeding with the search was clearly "unreasonable" under the Fourth Amendment."* Groh v. Ramirez, 540 U.S. 551, 563, 124 S. Ct. 1284, 1293, 157 L. Ed. 2d 1068 (2004)

*"**We have long held, moreover, that the purpose of the particularity requirement is not limited to the prevention of general searches**. See Garrison, 480 U.S., at 84, 107 S.Ct. 1013. A particular warrant also "**assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search.**" United States v. Chadwick, 433 U.S. 1, 9, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977) (citing Camara v. Municipal*

Page **15** of 26

*Court of City and County of San Francisco,* 387 U.S. 523, 532, 87 S.Ct. 1727 (1967)), abrogated on other grounds, *California v. Acevedo,* 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991). See also *Illinois v. Gates,* 462 U.S. 213, 236, 103 S.Ct. 2317 (1983*) ("[P]ossession \*562 of a warrant by officers conducting an arrest or search greatly reduces the perception of unlawful or intrusive police conduct").* **Groh v. Ramirez, 540 U.S. 551, 561–62, 124 S. Ct. 1284, 1292, 157 L. Ed. 2d 1068 (2004)**

*"It is incumbent on the officer executing a search warrant to ensure the search is lawfully authorized and lawfully conducted. Because petitioner did not have in his possession a warrant particularly describing the things he intended to seize, proceeding with the search was clearly "unreasonable" under the Fourth Amendment."* **Groh v. Ramirez, 540 U.S. 551, 563, 124 S. Ct. 1284, 1293, 157 L. Ed. 2d 1068 (2004)**

## KINGS COUNTY SUPERIOR COURT - Case No. 21-5-00680-6

Benshoof and Owen entered into a parenting agreement (" Agreement") at Common Law regarding their son Azhrael ["A.R.W."] *in utero.* They shared equal rights and responsibilities as father and mother, and all decisions regarding their son required mutual accord prioritizing the best interests and well-being of A.R.W. Owen violated their Agreement in July 202~ by injecting A.R.W. with an experimental Pfizer gene therapy treatment against the express wishes of Benshoof. Owen did so without informed consent, and in abject disregard of the safety issues.

After Owen explicitly threatened to steal Benshoof's car, seize custody of A.R.W., deny Benshoof's equity ownership in his home and evict Benshoof on August 16, 2021, via text message. (Case No. 21-5-00680-6, Exhibit P4A: Dkt. #13-1 pg. 44) When Benshoof refused to be intimidated Owen filed for a TRO in 21-2-11149-8 on August 23, 2021.

At the first Temporary Restraining Order ("TRO") hearing in Case No. 21-2-11149-8, Commissioner Schaefer stated, "*I find that the respondent's* [Benshoof] *testimony as to those events is credible*." King County Superior Court Commissioner Schaefer then issued a Full Order of Denial. of Owen's TRO petition on September 3, 2021. See attached EXHIBIT C

At that hearing, the inconsistencies in Owen's false and slanderous allegations against Benshoof were exposed. The credibility of Benshoof s testimony implicitly acknowledged the absence of credibility in Owen's testimony before the Court.

Owen then withheld A.R.W. from Benshoof for three weeks after the Full Order of Denial, lying to SPD that she was the "sole legal guardian" of A.R.W.. This resulted in SPD officers threatening Benshoof with arrest if Benshoof tried to contact A.R.W. at Owen's house. Then, on September 21, 2021, Owen and her family attorney, Nathan Cliber ("Cliber") initiated the parentage action in Case No. 21-5-00680-6 with the PDP.

Orders issued in Case No. 21-5-00680-6 *void ab initio* under the *Throckmorton Doctrine* held that res judicata does not apply to judgments where *"there was in fact no adversarial trial or decision of the issue in the case."*

## IN PERSONAM JURISDICTION – VOID. Case No. 21-5-00680-6

Benshoof was not provided Notice and Opportunity to be heard, pursuant to CR 4, for the hearing that occurred on, or around, October 21, 2022, in which Final Orders were issued in Case No. 21-5-00680-6. *"A judgment entered without notice and opportunity to be heard is void."* <u>*Columbia Valley Credit v. Lampson,*</u> 12 Wn. App. 952,955 (Wash. Ct. App. 1975).

*"There is no question of the general doctrine that fraud vitiates the most solemn contracts, documents, and even judgments."* <u>*United States v. Throckmorton,*</u> 98 U.S. 61 (1878).

## SUBJECT MATTER JURISDICTION – VOID. Case No. 21-5-00680-6

There was no valid parentage action to initiate Case No. 21-5-00680-6, as there was no actual controversy regarding Benshoof s fatherhood of A.R.W.

Pursuant to RCW 26.26A.435(2) Owen's PDP was frivolous, as Benshoof s presumption of fatherhood could not be overcome based upon Owen's own sworn statements and exhibits already in the record of Case No. 21-2-11149-8.

Benshoof and Owen were not in contractual privity with the State of Washington via a state marriage license, divorce, legal domestic partnership, or annulment. Pursuant to RCW 26.09.004(3)(4), a parenting plan could not apply to Benshoof without Benshoof's consent. Similarly, pursuant to RCW 26.50 a restraining order could not apply to Benshoof without his consent.

In Trautman, *Vacation and Correction of Judgments in Washington,* 35 WASH. L. Rev. 505, 530, the author notes that:

> "*There is no time limit as a judgment entered without jurisdiction is void. The court has said that this is true without regard to laches .... Just as the one year statutory time limit does not apply, so likewise it is not necessary to show a defense upon the merits. The law requires no showing other than that the defendant was, in fact, not served with process or that there was no jurisdiction over the subject matter. This results from the fact that the power to vacate such judgments does not arise from the statutes or rule; it is an inherent power of the court.*:
> <u>*Columbia Valley Credit v. Lampson,*</u> 12 Wn. App. 952,956 (Wash. Ct. App. 1975)

## NO PROOF OF SERVICE.   Case No. 21-5-00680-6

On **November 15, 2022,** SPD Detective Ryan Ellis allegedly filed Proof of Service in family court case no. 21-5-00680-6, which stated on page one:

> "*Important! Do not use electronic service if your case involves the surrender of firearms.... After 2 unsuccessful attempts at personal service, you can ask the court to authorize electronic service.*" [9]

See attached EXHIBIT G

Page two stated that Detective Ellis served an Order to Surrender and Prohibit Weapons. Detective Ellis did not ask for, nor receive, authorization from Judge Keenan to serve Benshoof via electronic service. Detective Ellis did not obtain confirmation that Benshoof had been served final orders in Case No. 21-5-00680-6.

Detective Ellis did not date his signature under penalty of perjury on page three. The date line stated, "Seattle." GR 30(d)(3) requires compliance with GR 13(a)(2). CR 4, GR 13(a)(2) and **RCW 5.50.050** require that proof of service sworn under penalty of perjury *be dated.*

As such, Ellis did not legally serve Benshoof the final orders in case no. 21-5-00680-6.

## MUNICIPAL COURT OF THE CITY OF SEATTLE, Case No. 669329

On November 15, 2022, Benshoof discovered in his mailbox that he was charged with violating RCW 7.105.450 related to the events of August 15, 2022, SPD Incident #2022-215424.

The Municipal Court of the City of Seattle, in the Case No. 669329, brought charges against

---

[9] (CASE NO. 669329, See Exhibit P54: Dkt. #13-3, pg. 163)

Kurt Benshoof for purported violation of the family court restraining order issued by Kings County Superior Court **Case No. 21-5-00680-6.**

The CITY letter stated that a hearing was scheduled for November 16, 2022, at 2:30 pm.

At 2:30 pm on November 16, 2022, Benshoof appeared by Special Appearance via WebEx in courtroom 1102 before Judge Gregory under threat, duress, and coercion.

Benshoof cited RCW 35.20.270(1) as a threshold issue and asked Gregory if the prosecutor had provided evidence the CITY effectuated legal service of process to grant jurisdiction to the court. Gregory did not affirm that the CITY had done so; rather, Gregory simply asserted, *"The court has jurisdiction."*

Benshoof asked CITY prosecutor Cooper directly if she had provided the court with evidence of the CITY's compliance with RCW 35.20.270(1); Cooper remained silent on the issue.

Gregory again asserted, *"The court has jurisdiction,"* despite Benshoof's repeated objections that the court had no evidence of personal service granting the court jurisdiction to proceed.

Cooper did not provide the court evidence that a valid protection order existed, nor that the CITY had effected personal service pursuant to RCW 35.20.270 (1).

Benshoof moved to dismiss for lack of personal jurisdiction, citing the requirement of **RCW 35.20.270(1)** which states, *"All criminal and civil process issuing out of courts created under this title shall be directed to the chief of police of the CITY served by the court and/or to the sheriff of the county in which the court is held and/or to the warrant officers and be by them executed according to law in any county of this state."* (Dkt. #13-3, pgs. 139-144; Dkt. #13-3, pgs. 152-3)

### November 16, 2022, *Sua Sponte* "Domestic Violence No-Contact Order"

On **November 16, 2022**, Municipal Court of the City of Seattle, in the **Case No. 669329**, Judge Willie Gregory *sua sponte* issued a "Domestic Violence No-Contact Order" for "protection" of Jessica Rae Owen, without any petition for such order by Jessica Rae Owen, against Kurt Benshoof. The Court's "Finding of Fact" is as follows:

> 3. The court finds that the defendant's relationship to the person protected by this order is as a/an:
> ☑ Intimate partner because they are:
> ☑ current or former spouses or domestic partners,  ☐ parents of a child-in-common.

4. ☑ For crimes not defined as a serious offense, the court makes the following mandatory findings pursuant to RCW 9.41.800(1) and (2): ☐ The defendant used, displayed, or threatened to use a firearm or other dangerous weapon in a felony; or ☐ The defendant is ineligible to possess a firearm pursuant to RCW 9.41.040; or ☑ Possession of a firearm or other dangerous weapon by the defendant presents a serious and imminent threat to public health or safety, or to the health or safety of any individual.

5. **Defendant:**
   A. do not cause, attempt, or threaten to cause bodily injury to, assault, sexually assault, harass, stalk, or keep under surveillance the protected person.

B. do not contact the protected person, directly, indirectly, in person or through others, by phone, mail, electronic or any other means, except for mailing or service of process of court documents through a third party, or contact by the defendant's lawyers.

C. do not knowingly enter, remain, or come within_____ (1,000 feet if no distance entered) of the protected person's residence, school, workplace, other: _places person is present_____.

See attached EXHIBIT B

To be valid and enforceable, a prosecution must be supported by three elements: (1) the court must have jurisdiction of the parties; (2) the court must have jurisdiction of the subject matter; and (3) the court must have the authority to render the particular judgment.

There must exist a Domestic Violence order in order for Kurt Benshoof to violate one. There was no Domestic Violence order issued against Benshoof.

Instead, it seems Seattle Municipal Court wanted to adjudicate the Domestic Violence issue itself. When Benshoof called out that the Court does not have the Subject Matter Jurisdiction the Seattle Municipal Court judge skipped over the Domestic Violence issue and found that Benshoof had violated the Domestic Violence Order in order to issue the No-Contact Order.

## **EXCEPTION FOR MAILING OR SERVICE OF PROCESS OF COURT DOCUMENTS**.

Even IF one would *assume* that the **November 16, 2022**, *sua sponte* issued a "Domestic Violence No-Contact Order" by Judge Willie Gregory in **Case No. 669329**, to be taken as *"valid"* - the "Domestic Violence No-Contact Order" specifically exempts all contact with the protected person, directly, indirectly, in person or through others, by phone, mail electronic or any other means, "***except for mailing or service of process of court documents through a third party***, *or contact by the defendant's lawyers*"

## NO PERSONAL JURISDICTION

### Case No. 669329

Even if the final orders granted by Judge Keenan on **October 21, 2022**, Kings County Superior Court **Case No. 21-5-00680-6,** were valid, which they are not, the City failed to comply with RCW 35.20.270(1) to effect service of process, as Benshoof argued prior to arraignment when he made a special appearance before Judge Willie Gregory on November 16, 2022. Judge Gregory asserted that "*the Court has jurisdiction*" absent any substantiating evidence from the City that the prosecution had complied with RCW 35.20.270(1).

The City did not comply with the statutory requirement of RCW 35.20.270(1) to effect service of process upon Benshoof to obtain in personam jurisdiction. The City has a custom and widespread practice of violating RCW 35.20.270(1).

## NO SUBJECT MATTER JURISDICTION

### Case No. 669329

The City does not have jurisdiction to hear allegations of domestic violence related to King County family court case no. 21-5-00680-6 pursuant to RCW 7.105.050(1)(a). Only King County Superior Court is authorized by statute.

The City cannot assert jurisdiction to prosecute or adjudicate **Case No. 669329** in the face of irrefutable evidence that King County family court **Case No. 21-5-00680-8** was *void ab initio* due to the perjury of Jessica Owen and absence of subject matter jurisdiction precluding the family court's authority to proceed. Under the Fruit of the Poisonous Tree Doctrine, City officials cannot profess the legitimacy of evidence that stems from King County family court **Case No. 21-5-00680-8** which is *void ab initio.*

## MUNICIPAL COURT ABSENT AUTHORITY

### Case No. 669329

As a court of limited jurisdiction, Seattle Municipal Court lacks the authority to adjudicate the alleged domestic violence charges against Benshoof even if they were valid allegations premised upon a valid family court adjudication.

**RCW 7.105.050 (1)** stipulates that an alleged violation of a domestic violence protection order in King County District Court must be transferred to Superior Court when:

> **(a)** "*a superior court has exercised or is exercising jurisdiction over a proceeding involving the parties*"
> **(b)** "*The action would have the effect of interfering with a respondent's care, control, or custody of the respondent's minor child.*"
> **(d)** "*The petitioner, victim, or respondent to the petition is under 18 years of age.*"

As such, all acts by City prosecutors and judges related to SMC Case No. 669329 were *ultra vires* and thus violative of Benshoof's rights.

## CONCLUSION

"The touchstone of [the] analysis under the Fourth Amendment is always the reasonableness in all circumstances of the particular governmental invasion of a citizen's personal security."[10]

Kurt Benshoof seeks to invalidate a warrant, the two-prong *Franks* test is satisfied bu showing that Detective Elliot "deliberately made a statement that was false or in reckless disregard of the truth," and "the statement was material to the probable cause determination."[11]

Pursuant to *Franks*, the Court must find that the search warrant, devoid of any reliability, lacked the necessary probable cause and is therefore void.

The requirement for particularity serves to "prohibit law enforcement from engaging in general or exploratory searches."[12] "By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit."[13]

> "The particularity requirement prevents officers from conducting "a general, exploratory rummaging of a person's belongings." The requirement is one of "practical accuracy rather than a hypertechnical one." In assessing whether a warrant is sufficiently particular,

---

[10] *State v. Bartylla*, 755 N.W.2d 8, 15 (Minn. 2008) (quoting *Pennsylvania v. Mimms*, 434 U.S. 106, 108-09 (1977)).
[11] *State v. Andersen*, 784 N.W.2d 320, 327 (Minn. 2010) (internal citations omitted).
[12] *State v. Fawcett*, 884 N.W.2d 380, 387 (Minn. 2016).
[13] *Maryland v. Garrison*, 480 U.S. 79, 84 (1987).

we consider the purpose for which the warrant was issued, the nature of the items to which it is directed, and the total circumstances surrounding the case."[14] None of the described behavior prompting the issuance of the search warrant is in any way related to the possession of firearms.

The Applicant, Detective Ellis failed to inform the judicial officer of the fact that Benshoof had filed "Declaration of Non-Surrender" on multiple occasions known to Detective Ellis, See attached EXHIBIT E, which the State's disclosures have revealed were known to State actors. This omission renders any suggestion of a nexus between the purpose for which the search warrant was issued, and the search found no firearms, therefore inclusion of "handguns" in the search warrant application was devoid of rational basis.

A warrantless search is "*per se* unreasonable."[15] "A search conducted without a warrant is unreasonable unless it satisfies one of the well-delineated exceptions to the warrant requirement."[16] Since none apply here, the seizure of Defendant's private property is unconstitutional and, as such, the fruit of the poisonous tree doctrine requires the underlying charges to be dismissed.

The Applicant misled the Court in seeking a warrant. Had the Applicant been truthful and relayed accurate information, the warrant would not have issued. For the foregoing reasons, this Court should suppress all evidence collected and derived from the unlawful search and seizure of the Defendant's home; hold that the warrant was not supported by probable cause; that the Defendant's arrest was unlawful and to suppress any statements made by Defendant subsequent to his arrest, and consequently dismiss all Counts against Kurt Benshoof.

I, Kurt Benshoof, have designated Urve Maggitti as a "next friend" of mine, and as one of my "assistance of counsel"[17] under Judiciary Act of 1789, 1 Stat. 73, 92,[18] am hereby instructing that

---

[14] *U.S. v. Ivey*, 91 F.4th 915, 918 (8th Cir. 2024) (internal citations omitted).

[15] *State v. Gauster*, 752 N.W.2d 496, 502 (Minn. 2008).

[16] *State v. Lester*, 874 N.W.2d 768, 771 (Minn. 2016).

[17] *Faretta v. California*, 422 U.S. 806, 812–13, 95 S. Ct. 2525, 2530, 45 L. Ed. 2d 562 (1975)

[18] "SEC. 35. And be it further enacted, **That in all courts** of the United States, **the parties may plead and manage their own causes personally or by assistance of such counsel or attorneys**

all discovery provided to me in the instant case be simultaneously provided to Urve Maggitti, via email: urve.maggitti@gmail.com.

Respectfully Submitted by:


Signature: _____  Date:_____

       /KURT ALDEN BENSHOOF /




## AFFIDAVIT *

The foregoing statements of fact were typed up by the undersigned, upon Mr. Benshoof's request and to the best of the undersigned's understanding, to be signed by Mr. Benshoof himself. [19]

Signature: _____  Date: August 26, 2024

       /URVE MAGGITTI /  urve.maggitti@gmail.com


* Federal and State Constitutions require that criminal prosecutions conform to prevailing notions of fundamental fairness and that criminal defendants be given a meaningful opportunity to present a complete defense. *State v. Wittenbarger, 124 Wn.2d 467, 474–75, 880 P.2d 517 (1994).*

Mr. Benshoof has been denied not only *meaningful opportunity* to present a *complete defense* in the malicious criminal prosecution and persecution brought against Mr. Benshoof, it is a FACT that Mr. Benshoof has been denied the most essential, elemental and basic resources to even attempt to present defense: access to pen, paper, computer, internet, email, and majority of the discovery.

---

**at law**" "The Judiciary Act; September 24, 1789, 1 Stat. 73. An Act to Establish the Judicial Courts of the United States." "APPROVED, September 24, 1789."

[19] See *Faretta v. California* and Section 35 of the Judiciary Act of 1789, 1 Stat. 73, 92

**ACKNOWLEDGMENT**

**AFFIDAVIT**

(Verification)

STATE OF PENNSYLVANIA   )
COUNTY OF CHESTER    )

I, Urve Maggitti, the undersigned Affiant hereto, do hereby declare under penalties of perjury under the laws of the Commonwealth of Pennsylvania and the United States of America, that the foregoing accounting of facts are true and correct to the best of my current knowledge and belief.

I am over the age of 18 years of age, am a resident of the Commonwealth of Pennsylvania, have personal knowledge of the matters of this affidavit, and am capable of making such affidavit.

Pursuant to 28 U.S. Code § 1746 (1) I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on *August 26* /2024.

Signed: _____
                    Urve Maggitti

Notary as JURAT CERTIFICATE

State of Pennsylvania ___*Chester*___

BEFORE ME personally appeared Urve Maggitti who, being by me first duly sworn, executed the foregoing in my presence and stated to me that the facts alleged therein are true and correct according to her own personal knowledge.

_____*Rose Marie Watts*_____

Notary Public,

My commission expires: *01-23-2027*

Commonwealth of Pennsylvania - Notary Seal
Rosemarie Watts, Notary Public
Delaware County
My commission expires January 23, 2027
Commission number 1285824
Member, Pennsylvania Association

**0289**

*Page 25 of 26*

## CERTIFICATE OF SERVICE

**1. Ann Davison,** Seattle City Attorney
701 5th Ave., Suite 2050, Seattle, WA 98104-7097   Phone (206) 684-7757
**Ann.Davison@seattle.gov**

**2. Katrina Outland**, Assistant City Attorney, WSBA #54342   **Katrina.Outland@seattle.gov**

**3. Daniel H. O'Brien,** City Prosecutor
The Seattle City, 701 Fifth Avenue, Suite 2050, Seattle, WA, 98104-7095
Phone: (206) 684-8200  FAX:206-684-4648
Daniel.H.OBrien@seattle.gov
**daniel.o'brien@seattle.gov**

**4.** Magistrate **Andrea Chin,** King County Seattle Municipal Court
Seattle Justice Center, 600 5th Ave, Seattle, WA 98104-1900
Bailiff:  Nina Cohen - (206) 733-9339 Phone: (206) 684-8709
**FAX: (206) 615-0443** alt.  **Fax: 206-615-0446**
GROUP email:  **SMC_CTR_1003@seattle.gov**
Group Email: **smc.publicsvcs@seattle.gov**  Email: **andrea.chinsmc@seattle.gov**

**5. Judge Faye R. Chess, Presiding Judge** King County Seattle Municipal Court
600 Fifth Avenue, Seattle, WA  98124-1900
Phone: main: (206) 684-5600 - *(206) 684-5610*
Fax:  206-615-0446 (Courtroom 1103 fax #)
Group Email: smc_publicsvcs@seattle.gov
Email:  **faye.chesssmc@seattle.gov**
Bailiff:  Lynn Milloy - (206) 615-0473

**6.** Mr. **Kurt Benshoof**
Home Address: 1716 N 128th Street, Seattle, Washington 98133,
Phone: (206) 460-4202, kurtbenshoof@gmail.com

CURRENTLY HELD AT: Maleng Regional Justice Center – Kent, Phone: 206-296-1234,
Address: 620 W. James St., Kent, WA 98032,  Mr. Kurt Benshoof, UPN# 10518097

**7. Urve Maggitti,** "next friend" and "assistance of counsel" [20] to Mr. Kurt Benshoof under as per Judiciary Act of 1789, 1 Stat. 73, 92.  **urve.maggitti@gmail.com**

---

[20] *Faretta v. California*, 422 U.S. 806, 812–13, 95 S. Ct. 2525, 2530, 45 L. Ed. 2d 562 (1975)

# EXHIBIT A

0291

| | |
|---|---|
| Case Number: | 24-0-62121-3 |
| Date: | August 25, 2024 |
| Serial ID: | 24-483857-6266988B6E |
| Certified By: | Catherine Cornwall |
| | King County Clerk, Washington |

FILED

SUPERIOR COURT OF THE STATE OF WASHINGTON

2024 KING 09 02 11 PM

KING COUNTY

SUPERIOR COURT CLERK

E-FILED

CASE #: 24-0-62121-3 SEA

**STATE OF WASHINGTON** )  SW NO. 24-0-62121-3 ___
                        )
                        )
**COUNTY OF KING** )  **APPLICATION FOR SEARCH WARRANT**

### Declaration

I, Detective Ryan Ellis #7612, declare that I have personal knowledge of the matters herein and/or am relying on witness statements, information provided by my fellow officers, reports, and other material I have gathered in my investigation, and that I am competent to testify to the matters stated herein:

On the basis of the following, I believe there is probable cause that Kurt A BENSHOOF, date of birth 7/18/1969, has committed the crime(s) of **Stalking, RCW 9A.46.110, and Violation of a Court Order, RCW 26.50.110** in King County, and that:

☒ Evidence of those crimes;

☒ Contraband, the fruits of a crime, or things otherwise criminally possessed.

☒ Weapons or other things by means of which a crime has been committed or reasonably appears about to be committed;

☒ A person for whose arrest there is probable cause, or who is unlawfully restrained.

is located in, on, at, or about the following described premises, vehicle or person:

**1716 N 128th ST, Seattle, Washington 98133 occupied by BENSHOOF**

### Affiant

I, Ryan Ellis, Seattle Police Detective #7612, currently assigned to the Seattle Police Department, Domestic Violence Unit, have been employed by the City of Seattle since February 2012. I have twenty-five years' total in law enforcement experience and training. I was previously employed by the Department of Corrections, during which time I was assigned as a Federal Task

APPLICATION FOR SEARCH WARRANT - Basic
Page 1 of 8
KCPAO Rev. 01.01.23

Leesa Manion (she/her)
Prosecuting Attorney
CRIMINAL DIVISION
W554 King County Courthouse
516 Third Avenue
Seattle, Washington 98104
(206) 477-3733, FAX (206) 296-9009

1   Force Officer with the Drug Enforcement Administration (DEA).  I completed the basic law
2   enforcement academy at the Washington State Criminal Justice Training Center.  I have completed
3   the basic Seattle Police Department Detective School.  In doing so, I have written and executed
4   over two hundred search warrant affidavits. I am assigned the below-described case for follow-up
5   investigation.  Since February 2018, I have been assigned as a Detective to the Domestic Violence
6   Protection Order Service and Firearms Surrender unit.  During this time, I have obtained and
7   executed several search warrants related to the seizure of firearms as they pertain to Order to
8   Surrender Weapon Court Orders. Since September 2023, I have been assigned to the DV Unit.

9   I, **Ryan Ellis #7612** is a Detective with the Seattle Police Department and has reviewed the
10  investigation conducted in Seattle Police Department Case number(s) 2024-163058, 2024-
11  156684, 2024-152490, 2024-079368 and Exhibit 1.  There is probable cause to believe that
12  **Kurt A BENSHOOF, date of birth 7/18/69** committed the crime of **Stalking, RCW
13  9A.46.110, and Violation of a Court Order, RCW 26.50.110**, within the City of Seattle,
14  County of King, State of Washington.  This belief is predicated on the following facts and
15  circumstances.

16  **The Investigation**
17  The victim in this investigation, Jessica Owen, is the previous wife to suspect Benshoof.  Ownes
18  is the current registered owner of the residence located at 1716 N 128th ST, Seattle, Washington
19  98133.  Owen has had several no-contact and retraining orders against Benshoof in the past,
20  which have routinely been violated by Benshoof.  Most recently, Owen obtained a Seattle
21  Municipal No Contact Order, OCA223037 which was served on Benshoof on 11/16/2022 and
22  expires on 11/16/2027.  In addition, Owen obtained a Restraining Order, OCA215006806, which
23  was served on 11/15/2022 and expires on 9/28/2027.  On 3/14/2023, a warrant for two counts of
24  Stalking, one count of Custodial Interference, and 83 counts of violation of a no-contact order
25  was issued in the amount of $250,000.00 for Benshoof, Warrant number 990435958.  Since that
26  time, law enforcement officials have been unable to arrest Benshoof. See **Exhibit 1**, attached.

27  **2024-079368**
28

APPLICATION FOR SEARCH WARRANT - Basic
Page 2 of 8
KCPAO Rev. 01.01.23

**0293**

**Leesa Manion (she/her)**
**Prosecuting Attorney**
CRIMINAL DIVISION
W554 King County Courthouse
516 Third Avenue
Seattle, Washington 98104
(206) 477-3733, FAX (206) 296-9009

On March 23, 2024, Victim Owen filed a police report for numerous violations of the protection orders in place related to Benshoof. Officers spoke to Owen over the phone who stated that her ex-husband who she verbally identified as Kurt, Benshoof had been calling and texting her phone which is a violation of the no contact order that she has against Benshoof. Benshoof did not make any threats in the messages but was rambling about an ongoing litigation between the two and telling her that he was right about the Covid-19 pandemic. Owens stated that the suspect/Benshoof lives in their previous home at 1716 N 128th ST and drives an army green FJ Crouser with a rack on the top. Owens advised that Benshoof is home most of the time but has cameras and will not answer the door when police try to contact him.

**2024-152490**

On June 5, 2024, Victim Owen filed another police report, documenting the multiple violations of the protection orders by Benshoof. Owen reported Benshoof has been violating the order by sending her text messages and emails daily. He sends over 40 messages per day. He has been wishing her a slow and painful death. He called her a "lying cunt." He messages her tangents about Covid and voter fraud by the Democratic party. He criticizes Owen for taking his son from him and giving him a Covid shot. Owen had recently moved out of state to get away from Benshoof but has returned to her residence in Seattle. She is concerned that things may escalate if he finds out she lives in the area again.

**2024-156684**

On June 9, 2024, Victim Owen filed another police report, documenting the multiple protection order violations by Benshoof. Owen stated that since her last report on 6/05/2024, Benshoof has been texting her, calling her, and emailing her nonstop despite there being an order in place.

When asked about the nature of the text messages, Owen stated that Benshoof has messaged about several different topics. Some of his messages tell her that she "is toast" and that he is coming for his son. Others tell her that "shit is going to hit the fan" and asks her what side of the fan she wants to be on. Other messages talk about random topics about Jesus and other non-relevant topics.

APPLICATION FOR SEARCH WARRANT - Basic
Page 3 of 8
KCPAO Rev. 01.01.23

**Leesa Manion (she/her)**
**Prosecuting Attorney**
CRIMINAL DIVISION
W554 King County Courthouse
516 Third Avenue
Seattle, Washington 98104
(206) 477-3733, FAX (206) 296-9009

**0294**

When asked about the content of his emails, Owen stated that they mainly concern lawsuits and other legal proceedings. Owen went on to explain that the court system has marked Benshoof as a "vexatious litigant." Benshoof has apparently tried to sue too many people too many times over nothing lawsuits and now the court system has flagged him as an abuser of the legal system. However, despite the court fining him for his overuse of the system, Benshoof continues to email her lawsuits. Some of these lawsuits' she is named in and others she was simply forwarded the information.

Owen also informed officers that this week she received a manila envelope in the mail, from Benshoof, containing more court paperwork. Owen showed officers the paperwork and the envelope. She informed officers that she knew it was from Benshoof himself because she recognizes his handwriting, and he would be the only one to write hearts next to her name as a way of mocking her. He also listed his current address as the return address on the envelop. The actual paperwork itself was more than a couple hundred pages so neither officer nor did Owen read through that. The front of the paperwork reads that it was a Petition for Writ of Habeas Corpus in which Benshoof is the petitioner and Owen is the respondent.

Officers photographed the envelope and the front page of paperwork.

Owen stated that she did not believe that Benshoof knew she was at the residence currently and did not think he would show up in the near future. She has been staying elsewhere that Benshoof does not know the address of. Her main concern is that Benshoof continues to harass her despite the order in place. He has made it very clear that he does not care about the orders in place, the fact that she has been granted full custody of their child, and that he has been ordered by the courts not to file any more lawsuits. Owen is fearful of Benshoof and scared of his blatant disregard for all of his court orders and the consequences.

### 2024-163058

On June 15, 2024, Victim Owen filed another police report, outlining the continued protection order violations.  Owen stated that since her last report on 06/05/2024, Benshoof has been texting her, calling her, and emailing her nonstop despite there being an order in place. She

APPLICATION FOR SEARCH WARRANT - Basic
Page 4 of 8
KCPAO Rev. 01.01.23

**Leesa Manion (she/her)**
**Prosecuting Attorney**
CRIMINAL DIVISION
W554 King County Courthouse
516 Third Avenue
Seattle, Washington 98104
(206) 477-3733, FAX (206) 296-9009

**0295**

1  confirmed Benshoof uses a phone number (206) 460-4202) and email address
2  (kurtbenshoof@gmail.com) associated with his name as well as states it is Benshoof that is
3  contacting her.

4  In the recent communication, Benshoof has made statements like, "Justice is coming", "Wake the
5  fuck up" and "Where is my son you cunt."
6

7  Benshoof also sends Owen lengthy emails regarding lawsuits he is pursuing despite being
8  marked as a "vexatious litigant" by the court.

9  Owen stated Benshoof contacts her numerous times a day everyday despite the protective Orders
10  in place both clearly showing Owen as the protected party and Benshoof as the respondent. Both
11  orders state Benshoof is restrained from making any contact or communication with Owen.

12
13  Owen stated she avoids being at home and sometimes stays out of town in an attempt to keep
14  herself and her son safe. She went on to say she will continue to file police reports documenting
     the violations and feels Benshoof has reached stalking levels of behavior.
15

16  On June 26, 2024, I spoke to Victim Owen. She informed me that she would be filing another
17  police report outlining the continued violations since June 15, 2024. Owen told me, it's non-
18  stop, every single day. Owen also told me the Courts awarded Owen ownership of the residence
19  located at 1716 N 128th ST, thus removing Benshoof. Owen said Benshoof never leaves the
     residence and she's too afraid to confront him about the residence. In addition, during their last
20  hearing in Superior Court related to the ownership of the residence, Benshoof filed an appeal in
21  Superior Court, which was denied. During a protection order hearing on February 28, 2024,
22  Ownes told me she observed Benshoof via ZOOM within the residence located at 1716 N 128th
23  ST, Seattle, Washington.
24
25  It should be noted to the Court, as referenced in **Exhibit 1**, Benshoof has a history of non-
     compliance with Court Orders and law enforcement officials. As noted in the January 23, 2023,
26  incident, Benshoof convinced his son to leave Owen's residence and come to his house, which
27  was a direct violation of the protection orders. Subsequently, officers responded and were able
28

APPLICATION FOR SEARCH WARRANT - Basic
Page 5 of 8
KCPAO Rev. 01.01.23

Leesa Manion (she/her)
Prosecuting Attorney
CRIMINAL DIVISION
W554 King County Courthouse
516 Third Avenue
Seattle, Washington 98104
(206) 477-3733, FAX (206) 296-9009

to obtain short-term custody of the child and return him to Owens from Benshoof's residence. In addition, based on the protection order violations, officers spoke with Benshoof and attempted to arrest him at the residence. Benshoof, however, barricaded himself within the residence, refusing to exit. Through the use of a negotiator, officers attempted to gain compliance from Benshoof and resolve the incident peacefully. Benshoof refused to cooperate, maintaining his barricaded status and officers were ordered to leave the scene. On March 14, 2023, the City of Seattle Municipal Court issued an arrest warrant for Benshoof in the amount of $250,000.00, outlining two counts of Stalking, one count of Custodial Interference and 83 counts of Violation of a Court Order. Since that time, Benshoof has continued violating the Court Orders with total disregard for the Court mandated conditions.

Since that time, Benshoof has remained within the Target residence. Attempts to conduct surveillance on Benshoof and/or his residence have been unsuccessful due to Benshoof's lack of movement, and the surrounding terrain of the residence. Officers have attempted to install electronic surveillance equipment to assist in the investigation; however, the terrain and environment has made it impossible to do so. Benshoof was last seen via ZOOM within the residence on 2/29/24, under case number 22-2-1598-8, per victim Owens. On 6/27/24, officers observed Benshoof's Toyota FJ Cruiser parked in front of his house. Although officers did not observe Benshoof on the property, officers noted the residence appeared occupied and noted several on-going projects on the property.

Based on all the foregoing information, I believe that evidence of the above-listed crime(s) exists at the above-described location, and that there is probable cause to search that location for evidence of the above-listed crimes, including:

- Handgun(s) within the residence and/or BENSHOOF persons.
- Bills, receipts, mail and other items that evidence dominion and control of the premises, places, property, and/or person searched.
- Electronic communication device(s), computers and cell phones
- KURT A BENSHOOF

APPLICATION FOR SEARCH WARRANT - Basic
Page 6 of 8
KCPAO Rev. 01.01.23

**0297**

**Leesa Manion (she/her)**
**Prosecuting Attorney**
CRIMINAL DIVISION
W554 King County Courthouse
516 Third Avenue
Seattle, Washington 98104
(206) 477-3733, FAX (206) 296-9009

**[X ] (Check if applicable) Pursuant to RCW 10.79.035(2) and 5.50.010(3), this application was signed and submitted to the issuing Judge using an electronic device that is owned, issued, or maintained by the below-identified criminal justice agency.**

I certify under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

Signed this _June 27, 2024, at Seattle, WA.

Declarant's Signature:  _____Ryan Ellis_____

OR, if submitted electronically:

Declarant's Full Name: _Detective Ryan Ellis_____

Agency Badge/Serial or Personnel #: _7612_____

Agency Name: __Seattle Police Department_____

**[ X ] (Check if applicable) Pursuant to RCW 10.79.035(3), the Judge's signature below was placed by declarant at the Judge's direction given by:**

    **[ ] telephone (preserve a recording of the authorization),**

    **[ X ] email (preserve and file the email), or by**

    **[ ] _____ (other reliable method).**

On June 27, 2024, I reviewed and considered the above application, submitted to me under penalty of perjury.

APPLICATION FOR SEARCH WARRANT - Basic
Page 7 of 8
KCPAO Rev. 01.01.23

**0298**

Leesa Manion (she/her)
Prosecuting Attorney
CRIMINAL DIVISION
W554 King County Courthouse
516 Third Avenue
Seattle, Washington 98104
(206) 477-3733, FAX (206) 296-9009

Signature: _Judge Nicholas Straley_____

SUPERIOR/DISTRICT COURT JUDGE

Printed Judge's Name: _Nicholas Straley_____

Issuance of Warrant Approved:[1]

LEESA MANION (she/her)

Prosecuting Attorney

---

[1]If applicant is a Federal Agent, issuance of warrant is also requested by the signing King County Prosecuting Attorney.

APPLICATION FOR SEARCH WARRANT - Basic
Page 8 of 8
KCPAO Rev. 01.01.23

**0299**

**Leesa Manion (she/her)**
**Prosecuting Attorney**
CRIMINAL DIVISION
W554 King County Courthouse
516 Third Avenue
Seattle, Washington 98104
(206) 477-3733, FAX (206) 296-9009

| | |
|---|---|
| Case Number: | 24-0-62121-3 |
| Date: | August 25, 2024 |
| Serial ID: | 24-483857-6266988B6E |
| Certified By: | Catherine Cornwall<br>King County Clerk, Washington |

I, CATHERINE CORNWALL, Clerk of the Superior Court of the State of Washington for King County, do hereby certify that this copy is a true and perfect transcript of said original as it appears on file and of record in my office and of the whole thereof. IN TESTIMONY WHEREOF, I have affixed this Seal of said Superior Court at my office at Seattle.



Catherine Cornwall, King County Clerk



**Instructions to recipient:** If you wish to verify the authenticity of the certified document that was transmitted by the Clerk, you must create and/or sign-in to your KC Script Portal account. Only e-certified documents that were directly ordered through the KC Script Portal can be verified through this tool.

Sign in to KC Script Portal:

**https://dja-prd-ecexap1.kingcounty.gov/**

After you login to your account, click Certified Copy Verification from the black ribbon menu at the top of the screen. There you will enter the following Serial ID.

Serial ID:    **24-483857-6266988B6E**

This document contains 8 page plus this sheet, and is a true and correct copy of the original that is of record in the King County Clerk's Office. The copy associated with Serial ID will be displayed by the Clerk.

# EXHIBIT B

**0301**





## IN THE MUNICIPAL COURT OF THE CITY OF SEATTLE

THE CITY OF SEATTLE, PLAINTIFF

vs

Kurt Benshoof

_____,

Defendant

**Domestic Violence No-Contact Order**
☑ Pre-Trial ☐ Post Conviction☐ 72-Hour hold - 3.2.1(f)
☐ Replacement Order (paragraph 8)
**Clerks Action Required (paragraph 7)**

Case # 669329 _____

This no-contact order expires on 11/16/2027 .
(date and time) or ☐ 1 year ☐ 2 years ☑ 5 years ☐Other
from today's date. The court may extend a no-contact
order even if the defendant does not appear at
arraignment.

No-Contact Order

1. **Protected Person's Identifiers:**

   Jessica Rae Owen
   _____
   Name (First, Middle, Last)
   11/23/1975     F            W
   DOB          Gender        Race

If a minor, use initials
instead of name, provide
other info, and complete
a Law Enforcement
Information Sheet (LEIS).

| Defendant's Identifiers: | |
| --- | --- |
| Date of Birth | |
| 07/18/1969 | |
| Gender | Race |
| M | W |

### Findings of Fact

2. Based upon the record both written and oral, the court finds that the defendant has been charged with, arrested for, or convicted of a domestic violence offense, that the defendant represents a credible threat to the physical safety of the protected person, and the court issues this Domestic Violence No-Contact Order under chapter 10.99 RCW to prevent possible recurrence of violence.

3. The court finds that the defendant's relationship to the person protected by this order is as a/an:
   ☑ Intimate partner because they are:
     ☑ current or former spouses or domestic partners, ☐ parents of a child-in-common,
     ☐ age 16 or older and are/were in a dating relationship and are currently residing together or resided together in the past. ☐ age 16 or older and are/were in a dating relationship but have *never* resided together.
   or
   ☐ Family or household member as defined by RCW 26.50.010(6): _____.

4. ☑ For crimes not defined as a serious offense, the court makes the following mandatory findings pursuant to RCW 9.41.800(1) and (2): ☐ The defendant used, displayed, or threatened to use a firearm or other dangerous weapon in a felony; or☐ The defendant is ineligible to possess a firearm pursuant to RCW 9.41.040; or ☑ Possession of a firearm or other dangerous weapon by the defendant presents a serious and imminent threat to public health or safety, or to the health or safety of any individual.

5. **Defendant:**
   A. do not cause, attempt, or threaten to cause bodily injury to, assault, sexually assault, harass, stalk, or keep under surveillance the protected person.

B. do not contact the protected person, directly, indirectly, in person or through others, by phone, mail, electronic or any other means, except for mailing or service of process of court documents through a third party, or contact by the defendant's lawyers.

C. do not knowingly enter, remain, or come within_____ (1,000 feet if no distance entered) of the protected person's residence, school, workplace, other: _places person is present_____.

D. exceptions:_____

E. other: _____

_____

---

**Warning:** Violation of the provisions of this order with actual notice of its terms is a criminal offense under chapter 26.50 RCW and will subject a violator to arrest; any assault, drive-by shooting, or reckless endangerment that is a violation of this order is a felony. **You can be arrested even if the person protected by this order invites or allows you to violate the order's prohibitions.** You have the sole responsibility to avoid or refrain from violating the order's provisions. Only the court can change the order upon written application.

*Additional Warnings to Defendant:* This order does not modify or terminate any order entered in any other case. You are still required to comply with other orders.

Willful violation of this order is punishable under RCW 26.50.110. State and federal firearm restrictions apply. 18 U.S.C. § 922(g)(8)(9); RCW 9.41.040. A violation is a felony and will subject you to arrest.

Pursuant to 18 U.S.C. § 2265, a court in any of the 50 states, the District of Columbia, Puerto Rico, any United States territory, and any tribal land within the United States shall accord full faith and credit to the order.

---

### Additional Orders

6. ☐ Civil standby: The appropriate law enforcement agency shall, at a reasonable time and for a reasonable duration, assist the defendant in obtaining personal belongings located at:

_____.

7. The clerk of the court shall enter this order into a computer-based criminal intelligence system available in the state used by law enforcement to list outstanding warrants or forward a copy of this order on or before the next judicial day to the protected person's local law enforcement agency.

8. ☐ This order replaces all prior no-contact orders protecting the same person issued under this cause number.

Dated _11/16/2022_         Time _03:11 PM_ ☐ am ☑ pm in open court with the defendant present.

I acknowledge receipt of a copy of this order:

_No defendant signature due to COVID-19_

**Defendant**

Willie Gregory (Nov 16, 2022 15:54 PST)
**Judge/ Pro Tem Judge**

The protected person shall be provided with a certified copy of this order.

☐ Interpreter Declaration attached

*31-017 Domestic Violence No-Contact Order   (June 2020)*
Case # _669329_            **0303**            *- Page 2 of 2*

# EXHIBIT C

0304

Case Number: 21-2-11149-8
Date: September 01, 2024
Serial ID: 24-497937-6324390U1L
Certified By: Catherine Cornwall
King County Clerk, Washington

FILED
2021 SEP 03
KING COUNTY
SUPERIOR COURT CLERK

CASE #: 21-2-11149-8 SEA

FAM 01

| **Superior Court of Washington**<br>**For King County** | No. 21-2-11149-8 SEA |
|---|---|
| | **Denial Order - Domestic Violence** |
| _Jessica Rae Owen_<br>Petitioner (Protected Person)<br>vs. | (Optional Use) (ORDMTP)<br>[X] Clerk's Action Required<br>Next Hearing Date/Time: _____<br>At: _____ |
| _Kurt Alden Benshoof_<br>Respondent (Restrained Person) | |

**This Matter** is before the court upon the request of (name) _Petitioner_, for a:

[ ] Temporary Order    [X] Full Order    [ ] Renewal Order
[ ] Modification Order    [ ] Termination Order

### Court Finding:

[ ]   Petitioner [ ] respondent did not appear.
[ ]   Petitioner requested dismissal of petition.
[ ]   This order materially changes an existing order. A hearing after notice is necessary.
[ ]   No notice of this request has been made or attempted to the opposing party.
[ ]   The petitioner has failed to demonstrate that there is sufficient basis to enter a temporary order without notice to the opposing party.
[ ]   The petitioner and respondent do not have an eligible relationship for this type of order.
[ ]   The domestic violence protection order petition does not list a specific incident and approximate date of domestic violence.
[X]   A preponderance of the evidence has not established that there is domestic violence.
[X]   Other: _Either party may file a parenting plan action to address custody issues, if desired. The court found Respondent's testimony to be credible regarding (*) The court did not consider documents filed by Respondent on 9/3/2021; Respondent chose to proceed with a hearing this morning even though the court had not had the opportunity to read the documents filed today._

Denial Order (ORDMTP) - Page 1 of 4
WPF DV-6.020 Mandatory (06/2020) - RCW 26.50

**0305**

(*) _incidents alleged by petitioner from Oct.-Nov. 2015._

Renewal:

[ ]    The respondent proved by a preponderance of the evidence that the respondent will not resume acts of domestic violence against the petitioner or the petitioner's children or family or household members when the protection order expires.

[ ]    Other: _____

_____

_____

Modify or Terminate:

[ ]    Petitioner's motion to modify or terminate a domestic violence Order for Protection is denied because:

_____

_____

_____

[ ]    Respondent's motion to modify or terminate a domestic violence Order for Protection effective less than two years is denied because:

_____

_____

_____

_____

[ ] The court finds that the respondent has previously filed a motion to modify or terminate during the current 12 month period following entry of the order, and is not eligible for the relief requested.

[ ]    For respondent's motion to modify or terminate a domestic violence Order for Protection effective longer than two years:
   [ ] The court finds that the respondent has previously filed a motion to modify or terminate during the current 12 month period following entry of the order, and is not eligible for the relief requested, or
   [ ] A preponderance of the evidence **failed** to establish that:
      [ ] the modification is warranted.
      [ ] for a modification to shorten the duration or remove restrictions against domestic violence acts or threats, or for termination, there has been a substantial change of circumstances such that the respondent is unlikely to resume acts of domestic violence against the petitioner or other persons protected in the order, to wit:
         [ ] since the protection order was entered, the respondent [ ] has committed or threatened domestic violence, sexual assault, stalking, or other violent acts; [ ] has exhibited suicidal ideation or attempts; [ ] has been convicted of criminal activity; [ ] neither acknowledged responsibility for the acts of domestic violence that resulted in entry of the protection order nor successfully completed domestic violence perpetrator treatment or counseling;

[ ] the respondent has continued to abuse drugs or alcohol, if such was a factor in the protection order.

[ ] the petitioner [ ] has [ ] has not voluntarily and knowingly consented to terminating the protection order

[ ] the respondent or petitioner moving further away from the other party will stop acts of domestic violence.

[ ] other _____
_____
_____
_____

[ ] The respondent proved that there has been a substantial change of circumstances; however, the court declines to terminate the Order for Protection because the acts of domestic violence that resulted in the issuance of the Order for Protection were of such severity that the order should not be terminated.

[ ] Other: _____
_____
_____
_____

---

*The court orders that:*

[ ] The request for a temporary order is denied and the case is dismissed.

[ ] The request for a temporary order is denied, but a hearing on the merits of the petition after notice to the respondent is set for the date listed in the caption on page 1 of this order, or

    [ ] The request for a temporary order is denied and the clerk is directed to set a hearing on the petition.

or

    [ ] The parties are directed to appear for a hearing as shown on page 1.
The requesting party shall make arrangements for service of the petition/motion and this order on (name) _____ by law enforcement, professional process server, or a person who is 18 or older, competent to be a witness, and not a party to the case. A Return of Service shall be filed with the clerk at or before the hearing.

[X] The request for a full order is denied, and the petition is dismissed. Any previously entered temporary order expires at _10 : 32_ a.m. today.

[ ] The request to modify, terminate, or renew the order dated _____ is denied.

[X] The request for a ~~temporary~~/final Order to Surrender and Prohibit Weapons is denied.

[ ] If any firearms or dangerous weapons have been surrendered under this cause number, they shall be released to the respondent, absent some other legal reason that may exist prohibiting the respondent from possessing them.

[ ] Other: _____

*Denial Order (ORDMTP) - Page 3 of 4*
*WPF DV-6.020 Mandatory (06/2020) - RCW 26.50*

***Failure to Appear at the Hearing May Result in the Court Granting All of the Relief Requested in the Petition or Motion.***

This order is dated and signed in open court.

Date: 9/3/2021 Time 10:32 a.m.

Judge/Commissioner   Camille J. Schaefer

[ ] Attended remotely/agreed to email copy
[ ] Acknowledge receipt of a copy in court:

[ ] Attended remotely/agreed to email copy
[ ] Acknowledge receipt of a copy in court:

Appeared by Zoom

➤ _____
Signature of Respondent/Lawyer  WSBA No.

_____
Print Name                      Date

Appeared by Zoom

➤ _____
Signature of Petitioner/Lawyer    WSBA No.

_____
Print Name                      Date

*Denial Order (ORDMTP) - Page 4 of 4*
*WPF DV-6.020 Mandatory (06/2020)  - RCW 26.50*

**0308**

| | |
|---|---|
| Case Number: | 21-2-11149-8 |
| Date: | September 01, 2024 |
| Serial ID: | 24-497937-6324390U1L |
| Certified By: | Catherine Cornwall |
| | King County Clerk, Washington |

I, CATHERINE CORNWALL, Clerk of the Superior Court of the State of Washington for King County, do hereby certify that this copy is a true and perfect transcript of said original as it appears on file and of record in my office and of the whole thereof. IN TESTIMONY WHEREOF, I have affixed this Seal of said Superior Court at my office at Seattle.



Catherine Cornwall, King County Clerk



**Instructions to recipient:** If you wish to verify the authenticity of the certified document that was transmitted by the Clerk, you must create and/or sign-in to your KC Script Portal account. Only e-certified documents that were directly ordered through the KC Script Portal can be verified through this tool.

Sign in to KC Script Portal:

**https://dja-prd-ecexap1.kingcounty.gov/**

After you login to your account, click Certified Copy Verification from the black ribbon menu at the top of the screen. There you will enter the following Serial ID.

Serial ID:    **24-497937-6324390U1L**

This document contains 4 page plus this sheet, and is a true and correct copy of the original that is of record in the King County Clerk's Office. The copy associated with Serial ID will be displayed by the Clerk.

**0309**

# EXHIBIT D

**0310**

Case Number: 21-2-11149-8
Date: September 01, 2024
Serial ID: 24-497937-6324374B6K
Certified By: Catherine Cornwall
King County Clerk, Washington

FILED
2021 AUG 31 01:26 PM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 21-2-11149-8 SEA

**Superior Court of Washington
For King County**

Jessica Owen

Petitioner (Protected Person)          Date of Birth

vs.

Kurt Benchoad

Respondent (Restrained Person)          Date of Birth

No. 21-2-11149-8 Sea

**Proof of Service
(RTS)**

Proof of Service

*Server declares:*

1.  My name is ___Ryan Ellis___ . I am 18 or older.
    I am [ X ] peace officer [ ] not a party to this case.

2.  **Able to Serve:**

    [X] **Personal Service:** I served the court documents checked in section 4 for this case
    to *(name of party)* ___Kurt Benchoad___
    on *(date)* ___8/26/21___ at *(time)* ___1105___
    by giving the documents directly to them at this address:
    ___10049 College Way N Seattle usa___ .

    [ ] **Electronic Service:**

    > *Important!* Do not use electronic service if your case involves the surrender of firearms, transfer of child
    > custody, removing respondent from the parties' shared residence, or an incarcerated respondent.

    I served the court documents checked in section 4 for this case to
    *(name of party)* _____
    on *(date)* _____ at *(time)* _____ via

    [ ] email [ ] text [ ] social media applications [ ] other technology

    At the following email address/s, phone number/s, social media application and user
    name, or other address: _____

    [ ] I received a read receipt or other reply from the receiving party *(describe or
    attach):* _____

Laws of 2021, ch. 215, § 18          Proof of Service
Mandatory (07/2021)                  p. 1 of 3
PO 004

**0311**

[ ] **Service by Mail:** I served the court documents checked in section 4 for this case to (*name of party*) _____
on (*date*) _____ at (*time*) _____
I sent 2 copies of the documents, postage prepaid: one by ordinary, first-class mail and one by other mail with certified or tracking information (*attach receipts*). I sent the mail to this/these address/es: _____

3.    **Not Able to Serve:**

[ ] I was unable to make personal service on (*name of party*) _____
I notified the serving party that service was not successful. Personal service was attempted on the following date/s _____

[ ] Electronic service was attempted at the following address/es but it bounced back or was undeliverable _____

[ ] I did not mail court documents to (*name of party*) _____
because I do not know the party's last known address.

4.    **List of Documents:**

> *Important! You must check or write in the title of every document that you served. Use the "Other Documents" box to write in the title of any document not already listed.*

I served the following documents (*check all that apply*):

| **New Domestic Violence Petition:** | **New Vulnerable Adult Petition:** |
|---|---|
| [X] Petition for Order for Protection | [ ] Petition for a Vulnerable Adult Order for Protection |
| [X] Temporary Order for Protection and Notice of Hearing | [ ] Temporary Order for Protection and Notice of Hearing |
| [ ] Reissuance of Temporary Order for Protection and Notice of Hearing | [ ] Reissuance of Temporary Order for Protection and Notice of Hearing |
| [X] Order to Surrender Weapons (issued without notice) and Notice of Hearing | [ ] Order to Surrender Weapons (issued without notice) and Notice of Hearing |
| [ ] Order Transferring Domestic Violence Case and Setting Hearing | [ ] Notice to Vulnerable Adult |
| [ ] Declaration/s of: _____ | [ ] Declaration/s of: _____ |
| [ ] Denial Order | [ ] Denial Order |
| **New Sexual Assault Petition:** | **New Harassment and/or Stalking Petition:** |
| [ ] Petition for a Sexual Assault Protection Order | [ ] Petition for Order for Protection – Harassment and/or Stalking [ ] Respondent Under Age 18 |
| [ ] Temporary Sexual Assault Protection Order and Notice of Hearing | [ ] Temporary Order for Protection and Notice of Hearing [ ] Respondent Under Age 18 |
| [ ] Reissuance of Temporary Sexual Assault Protection Order and Notice of Hearing | [ ] Order to Surrender Weapons (issued without notice) and Notice of Hearing |
| [ ] Order to Surrender Weapons (issued without notice) and Notice of Hearing | [ ] Declaration/s of: _____ |
| [ ] Declaration/s of: _____ | [ ] Denial Order |
| [ ] Denial Order | |

Laws of 2021, ch. 215, § 18
Mandatory (07/2021)
PO 004

Proof of Service
p. 2 of 3

0312

| **After a Full Hearing:** | **Renewals:** |
|---|---|
| [ ] Order for Protection | [ ] Petition for Renewal of Order for Protection and Notice of Hearing |
| [ ] Sexual Assault Protection Order | [ ] Order Setting Hearing on Renewal [ ] and Extending Order until Hearing |
| [ ] Order for Protection – Vulnerable Adult | |
| [ ] Order for Protection – Harassment [ ] Respondent Under Age 18 | [ ] Ex Parte Temporary Order for Renewal of Order for Protection and Notice of Hearing |
| [ ] Order for Protection – Stalking [ ] Respondent Under Age 18 | [ ] Order for Renewal of Order for Protection |
| [ ] Order to Surrender Weapons | [ ] Motion and Declaration for Renewal of Sexual Assault Protection Order |
| [ ] Order Realigning Parties and Notice of Hearing | [ ] Order Setting Hearing – Sexual Assault |
| | [ ] Order on Motion for Renewal of Sexual Assault Protection Order |
| **Motions:** | **After a Motion Hearing:** |
| [ ] Motion to Modify/Terminate Order for Protection | [ ] Order Modifying/Terminating Order for Protection |
| [ ] Motion for Surrender of Weapons | [ ] Order to Surrender Weapons |
| [ ] Notice of Hearing | |
| [ ] Motion to Realign Parties | |
| **Other Documents:** | |
| [ ] _____ | |
| [ ] _____ | |
| [ ] _____ | |
| [ ] | |

**5.   Fees Charged for Service:**

[ ] Does not apply.
[ ] Fees: $_____ + Mileage $_____ = Total: $_____

**6.   Other:** _DNS Sisnecl + _____ (R) did not Surrender the Child or Vehicle_

I declare under penalty of perjury under the laws of the state of Washington that the statements on this form are true.

Signed at (city and state): _Seattle Wat_   Date: _8/20/21_

_____   _KyanElle_
Signature of server                      Print or type name of server

_Seattle PD_
Law Enforcement Agency (if any)

Laws of 2021, ch. 215, § 16          Proof of Service
Mandatory (07/2021)                  p. 3 of 3
PO 004

# 0313

**Superior Court of Washington**
**For King County**

No. 21-2-11149-8 Sᴇᴀ

_Jessica Owens_
Petitioner

vs.

_Kurt Benshoof_
Respondent

**Declaration of Non-Surrender (DCLRNS)**

Note: If you previously surrendered your firearms, other dangerous weapons, and concealed pistol licenses, use the Proof of Surrender form, All Cases 03.0400 or NC 03.0400.

I understand that the court has ordered me to surrender all firearms, and other dangerous weapons that I own or have in my possession or control, and any concealed pistol licenses. I have not surrendered any firearms, other dangerous weapons, or concealed pistol licenses pursuant to that order because I do not have any of those items.

I also understand that:

I am prohibited from accessing, obtaining, or possessing firearms, other dangerous weapons, or concealed pistol licenses until further order of the court.

If I fail to comply with the order to surrender weapons, I may be found in contempt of court and be charged with a misdemeanor.

I may be charged with a crime up to and including a **felony** if I am found to own, possess, or control a firearm or other dangerous weapon.

I declare, under penalty of perjury under the laws of the State of Washington, that this statement is true and correct.

Dated: _8/24/21_ at (place) _Seattle_, Washington.

_Kurt Benshoof, TDC_
Signature of Restrained Person
ALL RIGHTS RESERVED

_KURT BENSHOOF_
Print name

Decl. of Non-Surrender (Civil) (DCLRNS) - Page 1 of 1
WPF All Cases 02-070 (07/2019) – RCW 9.41.800

NONE WAIVED

**0314**

| | |
|---|---|
| Case Number: | 21-2-11149-8 |
| Date: | September 01, 2024 |
| Serial ID: | 24-497937-6324374B5K |
| Certified By: | Catherine Cornwall<br>King County Clerk, Washington |

I, CATHERINE CORNWALL, Clerk of the Superior Court of the State of Washington for King County, do hereby certify that this copy is a true and perfect transcript of said original as it appears on file and of record in my office and of the whole thereof. IN TESTIMONY WHEREOF, I have affixed this Seal of said Superior Court at my office at Seattle.



Catherine Cornwall, King County Clerk



**Instructions to recipient:** If you wish to verify the authenticity of the certified document that was transmitted by the Clerk, you must create and/or sign-in to your KC Script Portal account. Only e-certified documents that were directly ordered through the KC Script Portal can be verified through this tool.

Sign in to KC Script Portal:

**https://dja-prd-ecexap1.kingcounty.gov/**

After you login to your account, click Certified Copy Verification from the black ribbon menu at the top of the screen. There you will enter the following Serial ID.

Serial ID:    **24-497937-6324374B5K**

This document contains 4 page plus this sheet, and is a true and correct copy of the original that is of record in the King County Clerk's Office. The copy associated with Serial ID will be displayed by the Clerk.

## 0315

# EXHIBIT E

0316

Case Number: 21-2-11149-8
Date:          September 01, 2024
Serial ID:    24-497937-6324373J0U
Certified By:  Catherine Cornwall
               King County Clerk, Washington

FILED
2021 AUG 31 01:26 PM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 21-2-11149-8 SEA

**Superior Court of Washington**
**For King County**

No. 21-2-11149-8 Sea

Petitioner Jessica Owens

vs.

Respondent Kurt Benshoof

**Declaration of Non-Surrender**
**(DCLRNS)**

Note: If you previously surrendered your firearms, other dangerous weapons, and concealed
pistol licenses, use the Proof of Surrender form, All Cases 03.0400 or NC 03.0400.

I understand that the court has ordered me to surrender all firearms, and other
dangerous weapons that I own or have in my possession or control, and any concealed
pistol licenses. I have not surrendered any firearms, other dangerous weapons, or
concealed pistol licenses pursuant to that order because I do not have any of those
items.

I also understand that:

I am prohibited from accessing, obtaining, or possessing firearms, other dangerous
weapons, or concealed pistol licenses until further order of the court.

If I fail to comply with the order to surrender weapons, I may be found in contempt of
court and be charged with a misdemeanor.

I may be charged with a crime up to and including a **felony** if I am found to own,
possess, or control a firearm or other dangerous weapon.

I declare, under penalty of perjury under the laws of the State of Washington, that this
statement is true and correct.

Dated: 8/06/21         at (place) Seattle       , Washington.

_Kurt Benshoof, TPC_                    KURT BENSHOOF
Signature of Restrained Person          Print name
ALL RIGHTS RESERVED
Decl. of Non-Surrender (Civil) (DCLRNS) - Page 1 of 1
WPF All Cases 02-070 (07/2019) – RCW 9.41.800
NONE WAIVED                      **0317**

| | |
|---|---|
| Case Number: | 21-2-11149-8 |
| Date: | September 01, 2024 |
| Serial ID: | 24-497937-6324373J0U |
| Certified By: | Catherine Cornwall |
| | King County Clerk, Washington |

I, CATHERINE CORNWALL, Clerk of the Superior Court of the State of Washington for King County, do hereby certify that this copy is a true and perfect transcript of said original as it appears on file and of record in my office and of the whole thereof. IN TESTIMONY WHEREOF, I have affixed this Seal of said Superior Court at my office at Seattle.



Catherine Cornwall, King County Clerk



**Instructions to recipient:** If you wish to verify the authenticity of the certified document that was transmitted by the Clerk, you must create and/or sign-in to your KC Script Portal account. Only e-certified documents that were directly ordered through the KC Script Portal can be verified through this tool.

Sign in to KC Script Portal:

**https://dja-prd-ecexap1.kingcounty.gov/**

After you login to your account, click Certified Copy Verification from the black ribbon menu at the top of the screen. There you will enter the following Serial ID.

Serial ID:    **24-497937-6324373J0U**

This document contains 1 page plus this sheet, and is a true and correct copy of the original that is of record in the King County Clerk's Office. The copy associated with Serial ID will be displayed by the Clerk.

**0318**

| | |
|---|---|
| Case Number: | 21-2-11149-8 |
| Date: | September 01, 2024 |
| Serial ID: | 24-497937-6324396D0T |
| Certified By: | Catherine Cornwall<br>King County Clerk, Washington |

FILED
2021 SEP 07
KING COUNTY
SUPERIOR COURT CLERK

CASE #: 21-2-11149-8 SEA

**Superior Court of Washington
For King County**

No. 21-2-11149-8 SEA

_Jessica Owens_
Petitioner

vs.

_Kurt Benshoof_
Respondent

**Declaration of Non-Surrender
(DCLRNS)**

Note: if you previously surrendered your firearms, other dangerous weapons, and concealed pistol licenses, use the Proof of Surrender form, All Cases 03.0400 or NC 03.0400.

I understand that the court has ordered me to surrender all firearms, and other dangerous weapons that I own or have in my possession or control, and any concealed pistol licenses. I have not surrendered any firearms, other dangerous weapons, or concealed pistol licenses pursuant to that order because I do not have any of those items.

I also understand that:

I am prohibited from accessing, obtaining, or possessing firearms. other dangerous weapons, or concealed pistol licenses until further order of the court.

If I fail to comply with the order to surrender weapons, I may be found in contempt of court and be charged with a misdemeanor.

I may be charged with a crime up to and including a **felony** if I am found to own, possess, or control a firearm or other dangerous weapon.

I declare, under penalty of perjury under the laws of the State of Washington, that this statement is true and correct.

Dated: _8/04/21_ at (place) _Seattle_, Washington.

_Kurt Benshoof, TIC_
Signature of Restrained Person
ALL RIGHTS RESERVED

_KURT BENSHOOF_
Print name

Decl. of Non-Surrender (Civil) (DCLRNS) - Page 1 of 1
WPF All Cases 02-070 (07/2019) – RCW 9.41.800

NONE WAIVED

**0319**

| | |
|---|---|
| Case Number: | 21-2-11149-8 |
| Date: | September 01, 2024 |
| Serial ID: | 24-497937-6324396D0T |
| Certified By: | Catherine Cornwall |
| | King County Clerk, Washington |

I, CATHERINE CORNWALL, Clerk of the Superior Court of the State of Washington for King County, do hereby certify that this copy is a true and perfect transcript of said original as it appears on file and of record in my office and of the whole thereof. IN TESTIMONY WHEREOF, I have affixed this Seal of said Superior Court at my office at Seattle.



Catherine Cornwall, King County Clerk



**Instructions to recipient:** If you wish to verify the authenticity of the certified document that was transmitted by the Clerk, you must create and/or sign-in to your KC Script Portal account. Only e-certified documents that were directly ordered through the KC Script Portal can be verified through this tool.

Sign in to KC Script Portal:

**https://dja-prd-ecexap1.kingcounty.gov/**

After you login to your account, click Certified Copy Verification from the black ribbon menu at the top of the screen. There you will enter the following Serial ID.

Serial ID:    **24-497937-6324396D0T**

This document contains 1 page plus this sheet, and is a true and correct copy of the original that is of record in the King County Clerk's Office. The copy associated with Serial ID will be displayed by the Clerk.

## 0320

# EXHIBIT F

0321

Case Number: 24-0-62121-3
Date: August 25, 2024
Serial ID: 24-483857-6266987O5D
Certified By: Catherine Cornwall
King County Clerk, Washington

**FILED**
2024 JUL 09 02:18 PM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 24-0-62121-3 SEA

# SUPERIOR COURT, KING COUNTY, WASHINGTON

| | | |
|---|---|---|
| **STATE OF WASHINGTON** | ) | **SW NO: 24-0-62121-3** |
| | ) | |
| **COUNTY OF KING** | ) | **SEARCH WARRANT**[1] |

## TO ANY PEACE OFFICER IN THE STATE OF WASHINGTON:

Upon the sworn complaint made before me, there is probable cause to believe that the crime(s) of **Stalking, RCW 9A.46.110, and Violation of a Court Order, RCW 26.50.110** has been committed, in King County, and that evidence of that/those crime(s); or contraband, the fruits of crime, or things otherwise criminally possessed; or weapons or other things by means of which a crime has been committed or reasonably appears about to be committed; or a person for whose arrest there is probable cause, or who is unlawfully restrained is concealed in or on certain premises, vehicles or persons.

YOU ARE COMMANDED to:

1. Search, within 10 Days, the premises, vehicle or person described as follows:

**RESIDENCE:**

**1716 N 128th ST, Seattle, WA 98133** occupied by Kurt A BENSHOOF.

2. Seize, if located, evidence of the above-listed crimes, including:

☒    Evidence of those crimes; to include Kurt A BENSHOOF

SEARCH WARRANT - Basic
Page 1 of 2
KCPAO Rev. 01.01.21

**0322**

Daniel T. Satterberg, Prosecuting Attorney
W554 King County Courthouse
516 Third Avenue
Seattle, Washington 98104
(206) 477-3733, FAX (206) 296-9009

☒     Contraband, the fruits of a crime, or things otherwise criminally possessed;

☒     Weapons or other things by means of which a crime has been committed or reasonably appears about to be committed;

Promptly return this warrant to me or the clerk of this court; the return must include an inventory of all property seized.

A copy of the warrant and a receipt for the property taken shall be given to the person from whom or from whose premises property is taken. If no person is found in possession, a copy and receipt shall be conspicuously posted at the place where the property is found.

Date/Time: _6/27/2024 @1324 hours_____

**[ X ] (Check if applicable) The Judge's signature, below, was placed by declarant, at the Judge's direction given by:**
   **[ ] telephone (preserve a recording of the authorization),**
   **[ X ] email (preserve and file the email), or by**
   **[ ] _____ (other reliable method).**

Signature: _Judge Nicholas Straley_ _____
SUPERIOR/DISTRICT COURT JUDGE
Printed Judge's Name: _Nicholas Straley_____

SEARCH WARRANT - Basic
Page 2 of 2
KCPAO Rev .01.01.21

**0323**

Daniel T. Satterberg, Prosecuting Attorney
W554 King County Courthouse
516 Third Avenue
Seattle, Washington 98104
(206) 477-3733, FAX (206) 296-9009

Case Number: 24-0-62121-3
Date:              August 25, 2024
Serial ID:         24-483857-626698705D
Certified By:     Catherine Cornwall
                   King County Clerk, Washington

I, CATHERINE CORNWALL, Clerk of the Superior Court of the State of Washington for King County, do hereby certify that this copy is a true and perfect transcript of said original as it appears on file and of record in my office and of the whole thereof. IN TESTIMONY WHEREOF, I have affixed this Seal of said Superior Court at my office at Seattle.



Catherine Cornwall, King County Clerk



**Instructions to recipient:** If you wish to verify the authenticity of the certified document that was transmitted by the Clerk, you must create and/or sign-in to your KC Script Portal account. Only e-certified documents that were directly ordered through the KC Script Portal can be verified through this tool.

Sign in to KC Script Portal:

**https://dja-prd-ecexap1.kingcounty.gov/**

After you login to your account, click Certified Copy Verification from the black ribbon menu at the top of the screen. There you will enter the following Serial ID.

Serial ID:      **24-483857-626698705D**

This document contains 2 page plus this sheet, and is a true and correct copy of the original that is of record in the King County Clerk's Office. The copy associated with Serial ID will be displayed by the Clerk.

# 0324

# EXHIBIT G

**0325**

Case Number: 21-5-00680-6
Date:           August 28, 2024
Serial ID:      24-492168-6299132U6U
Certified By:   Catherine Cornwall
                King County Clerk, Washington

**FILED**
2022 NOV 15 01:43 PM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 21-5-00680-6 SEA

### Superior Court of Washington, County of King

| Jessica Owen | | No.  21-5-00680-6 SEA |
|---|---|---|
| Petitioner (Protected Person) | Date of Birth | Proof of Service (RTS) |
| vs. | | Clerk's Action Required:2 |
| Kurt Benshoof | | |
| Respondent (Restrained Person) | Date of Birth | |

## Proof of Service

*Server declares:*

1.  My name is _____ **Ryan Ellis** _____. I am 18 or older.
    I am [X] a peace officer [ ] not a party to this case.

2.  **Able to Serve:**

    [ ] **Personal Service:** I served the court documents checked in section 4 for this case
    to *(name of party)* _____
    on *(date)* _____ at *(time)* _____
    by giving the documents directly to them at this address:
    _____
    _____

    [X] **Electronic Service:**

    > *Important! Do not use electronic service if your case involves the surrender of firearms, transfer of child custody, removing respondent from the parties' shared residence, an incarcerated respondent, or a petition for a vulnerable adult protection order is filed by someone other than the vulnerable adult. After 2 unsuccessful attempts at personal service, you can ask the court to authorize electronic service. Court authorization is not necessary for vulnerable adult protection orders.*

    I served the court documents checked in section 4 for this case to
    *(name of party)* **Kurt Benshoof**
    on *(date)*  **11/15/22**  at *(time)*  **1326**  via

    [X] email [ ] text [ ] social media applications [ ] other technology

    At the following email address/s, phone number/s, social media application and user
    name, or other address:  **kurt benshoof <kurtbenshoof@gmail.com>**

    I received a read receipt or communication from the receiving party (*describe or
    attach*):  **Attached**

RCW 7.105.150              Proof of Service
Mandatory *(07/2022)*      p. 1 of 3
PO 004

**0326**

[ ] **Service by Mail:** I served the court documents checked in section 4 for this case to (*name of party*) _____
on (*date*) _____
at (*time*) _____.
I sent 2 copies of the documents, postage prepaid: one by ordinary, first-class mail and one by other mail with certified or tracking information (*attach receipts*). I sent the mail to this/these address/es: _____.

**Clerk's Action:** The court clerk shall forward a copy of this proof of service to the following law enforcement agency where the respondent resides (county or city) (check only one): _____

[ ] Sheriff's Office or  [ ] Police Department

3. **Not Able to Serve:**

[ ] I was unable to make personal service on (*name of party*) _____,
I notified the serving party that service was not successful. Personal service was attempted on the following date/s _____.

[ ] Electronic service was attempted at the following address/es but it bounced back, was undeliverable, or there was no follow-up communication _____
_____

[ ] I did not mail court documents to (*name of party*) _____
because I do not know the party's last known address.

4. **List of Documents:**

> *Important! You must check or write in the title of every document that you served. Use the "Other Documents" box to write in the title of any document not already listed.*

I served the following documents (*check all that apply*):

| New Petition: | After a Full Hearing: |
|---|---|
| [ ] Petition for Protection Order | [X] Protection Order |
| [ ] Temporary Protection Order and Hearing Notice | [X] Order to Surrender and Prohibit Weapons |
| [ ] Reissuance of Temporary Protection Order and Notice of Hearing | [ ] Order Realigning Parties |
| [ ] Order to Surrender and Prohibit Weapons (issued without notice) | |
| [ ] Order Transferring Case and Setting Hearing | |
| [ ] Declaration/s of: _____ | |
| [ ] Denial Order | |
| [ ] Notice to Vulnerable Adult | |

RCW 7.105.150
Mandatory (07/2022)
PO 004

Proof of Service
p. 2 of 3

0327

<table>
<tr><td>

**Renewals:**

[ ]   Motion for Renewal of Protection Order

[ ]   Order Setting Hearing on Renewal
    [ ] and Extending Order until Hearing

[ ]   Order for Renewal of Order for Protection

</td><td>

**Motions:**

[ ]   Motion to Modify or Terminate Protection Order

[ ]   Motion for Surrender and Prohibition of
    Weapons

[ ]   Notice of Hearing

[ ]   Motion to Realign Parties

[ ]   Motion to Set Show Cause Hearing - Contempt

[ ]   Order on Hearing - Contempt

[ ]   Order re Adequate Cause

</td></tr>
<tr><td>

[ ]   Order Setting Hearing – Sexual Assault

[ ]   Order on Motion for Renewal of Sexual
    Assault Protection Order

</td><td>

**After a Motion Hearing:**

[ ]   Order Modifying or Terminating Protection Order

[ ]   Order to Surrender and Prohibit Weapons

</td></tr>
</table>

**Other Documents:**

[ ]_____

[ ]_____

[ ]_____

[ ]_____

5.   **Fees Charged for Service:**

    [ ] Does not apply.

    [ ] Fees: $_____ + Mileage $_____ = Total: $_____

6.   Other:\_\_\_Email confirmation_____

_____

_____

I declare under penalty of perjury under the laws of the State of Washington that the statements on this form are true.

                             Seattle

Signed at *(city and state):*_____  Date:\_\_\_\_Seattle\_\_\_\_\_

_____  Ryan Ellis

*Signature of server*  *Print or type name of server*

                                Seattle PD

                              *Law Enforcement Agency (if any)*

RCW 7.105.150
Mandatory *(07/2022)*
PO 004

Proof of Service
p. 3 of 3

**0328**

**Ellis, Ryan**

| | |
|---|---|
| **From:** | kurt benshoof <kurtbenshoof@gmail.com> |
| **Sent:** | Tuesday, November 15, 2022 1:26 PM |
| **To:** | Ellis, Ryan |
| **Subject:** | Re: Court Documents |

**CAUTION: External Email**

It says there was a Compliance Review Hearing for the weapons surrender on 10/27/2022.

Kind of hard for me to do that without a time machine, eh?

Gonna come arrest me for "violating" the order?

By the way, I don't HAVE ANY WEAPONS.

Gonna come take my dull kitchen knives?

How many times have we been over this nonsense?

On Tue, Nov 15, 2022 at 11:26 AM Ellis, Ryan <Ryan.Ellis2@seattle.gov> wrote:

Kurt -- this is the final order related to the previous restraining order.  See attached packet.

Please reply to this email that you received this packet

Thank you


Detective Ryan Ellis

DV Order Service & Firearms Recovery Unit

Seattle Police Department

610 5th AV

Seattle, WA 98124

206-386-1306

**0329**

| Case Number: | 21-5-00680-6 |
| --- | --- |
| Date: | August 28, 2024 |
| Serial ID: | 24-492168-6299132U6U |
| Certified By: | Catherine Cornwall<br>King County Clerk, Washington |

I, CATHERINE CORNWALL, Clerk of the Superior Court of the State of Washington for King County, do hereby certify that this copy is a true and perfect transcript of said original as it appears on file and of record in my office and of the whole thereof. IN TESTIMONY WHEREOF, I have affixed this Seal of said Superior Court at my office at Seattle.



Catherine Cornwall, King County Clerk



**Instructions to recipient:** If you wish to verify the authenticity of the certified document that was transmitted by the Clerk, you must create and/or sign-in to your KC Script Portal account. Only e-certified documents that were directly ordered through the KC Script Portal can be verified through this tool.

Sign in to KC Script Portal:

**https://dja-prd-ecexap1.kingcounty.gov/**

After you login to your account, click Certified Copy Verification from the black ribbon menu at the top of the screen. There you will enter the following Serial ID.

Serial ID:    **24-492168-6299132U6U**

This document contains 4 page plus this sheet, and is a true and correct copy of the original that is of record in the King County Clerk's Office. The copy associated with Serial ID will be displayed by the Clerk.

# EXHIBIT H

0331

Case Number: 24-1-02680-7
Date: August 09, 2024
Serial ID: 24-452350-6131750R5G
Certified By: Catherine Cornwall
King County Clerk, Washington

**FILED**
2024 JUL 08 03:15 PM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 24-1-02680-7 SEA

SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

THE STATE OF WASHINGTON,

Plaintiff,

v.

KURT ALDEN BENSHOOF,

Defendant.

No.    24-1-02680-7 SEA

MOTION, FINDING OF PROBABLE
CAUSE AND ORDER DIRECTING
ISSUANCE OF SUMMONS OR
WARRANT AND FIXING BAIL

The plaintiff, having informed the court that it is filing herein an Information charging the defendant with the crime(s) of **Felony Stalking, Attempting To Elude A Pursuing Police Vehicle, Attempting To Elude A Pursuing Police Vehicle,** now moves the court pursuant to CrR 2.2(a) for a determination of probable cause and an order directing the issuance of a summons or warrant for the arrest of the defendant, and

⊠ fixing the bail of the defendant in the amount of $500,000.00, cash or approved surety bond; **and no contact direct or indirect with Jessica Owen. The no contact order issued at the time of first appearance remains in effect until arraignment. The Order to Surrender Weapons issued at the time of first appearance (if any) remains in effect until arraignment.**

☐ directing the issuance of a summons; **and no contact direct or indirect with Jessica Owen. The no contact order issued at the time of first appearance (if any) remains in effect until arraignment.**

In connection with this motion, the plaintiff offers the following incorporated materials: The <u>Seattle Police Department </u>certification or affidavit for determination of probable cause; the <u>Seattle Police Department</u> suspect identification data; and the prosecutor's summary in support of order directing issuance of summons or order fixing bail and/or conditions of release.

If the defendant is not in custody, the plaintiff has attempted to ascertain the defendant's

MOTION, FINDING OF PROBABLE CAUSE AND
ORDER DIRECTING ISSUANCE OF SUMMONS OR
WARRANT AND FIXING BAIL - 1

**0332**

**Leesa Manion (she/her)**
**Prosecuting Attorney**
W554 King County Courthouse
516 Third Avenue
Seattle, WA 98104-2385
(206) 477-3742  FAX (206) 205-6104

1  current address by searching the District Court Information System database, the driver's license
2  and identicard database maintained by the Department of Licensing, and the database maintained
   by the Department of Corrections listing persons incarcerated and under supervision.

3                                          LEESA MANION (she/her)
                                           King County Prosecuting Attorney
4

5                                          By:

6

7                                          David D. Martin, WSBA #27129
                                           Senior Deputy Prosecuting Attorney
8

9  FINDING OF PROBABLE CAUSE AND ORDER FOR ARREST WARRANT

10         The court finds that probable cause exists to believe that the above-named defendant
   committed an offense or offenses charged in the information herein based upon the police agency
11 certification/affidavit of probable cause incorporated and pursuant to CrR 2.2(a).

12         IT IS ORDERED that the Clerk of this Court issue a summons or warrant of arrest for the
   above-named defendant; and

13

14         IT IS FURTHER ORDERED that

15         ☒ the bail of the defendant be fixed in the amount of $500,000.00,
           cash or approved surety bond; **and defendant shall have no**
16         **contact direct or indirect with Jessica Owen. The no contact**
           **order issued at the time of first appearance remains in effect**
17         **until arraignment. The Order to Surrender Weapons issued at**
           **the time of first appearance (if any) remains in effect until**
           **arraignment.**
18

19         ☐ a summons shall be issued; if the defendant is incarcerated on
           the investigation charge herein the defendant shall be released from
20         custody; **and shall have no contact direct or indirect with Jessica**
           **Owen. The no contact order issued at the time of first**
           **appearance (if any) remains in effect until arraignment.**
21

22         ☐ Additional Conditions: _____
           _____
23         _____
           _____
           _____
24
   MOTION, FINDING OF PROBABLE CAUSE AND
   ORDER DIRECTING ISSUANCE OF SUMMONS OR        **0333**
   WARRANT AND FIXING BAIL - 2

Leesa Manion (she/her)
Prosecuting Attorney
W554 King County Courthouse
516 Third Avenue
Seattle, WA 98104-2385
(206) 477-3742  FAX (206) 205-6104

1    IT IS FURTHER ORDERED that the defendant be advised of the amount of bail fixed by
2 the court and/or conditions of his or her release, and of his or her right to request a bail reduction.
Service of the warrant by telegraph or teletype is authorized.

3    SIGNED this _____ day of July, 2024.

4
_____
5                                        JUDGE

6 Presented by:

7

8 David D. Martin, WSBA #27129
9 Senior Deputy Prosecuting Attorney

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
MOTION, FINDING OF PROBABLE CAUSE AND              **Leesa Manion (she/her)**
ORDER DIRECTING ISSUANCE OF SUMMONS OR             **Prosecuting Attorney**
WARRANT AND FIXING BAIL - 3            **0334**   W554 King County Courthouse
                                                   516 Third Avenue
                                                   Seattle, WA 98104-2385
                                                   (206) 477-3742  FAX (206) 205-6104

# King County Superior Court
## Judicial Electronic Signature Page

Case Number:     24-1-02680-7

Case Title:      State vs Benshoof

Document Title:  ORDER TO ISSUE SUMMONS OR WARRANT OF ARREST

Signed By:       Hillary Madsen

Date:            July 08, 2024

Judge:  Hillary Madsen

This document is signed in accordance with the provisions in GR 30.

Certificate Hash:          A8F21D1A4134263FEF180B3D31AEF0CF46936405

Certificate effective date: 1/6/2021 3:26:10 PM

Certificate expiry date:   1/6/2026 3:26:10 PM

Certificate Issued by:     C=US, E=kcscefiling@kingcounty.gov, OU=KCDJA,
                           O=KCDJA, CN="Hillary Madsen:
                           BrlEviJ16hGkpFUp/CyjcQ=="

**0335**

Page 4 of 4

| Case Number: | 24-1-02680-7 |
|---|---|
| Date: | August 09, 2024 |
| Serial ID: | 24-452350-6131750R5G |
| Certified By: | Catherine Cornwall<br>King County Clerk, Washington |

I, CATHERINE CORNWALL, Clerk of the Superior Court of the State of Washington for King County, do hereby certify that this copy is a true and perfect transcript of said original as it appears on file and of record in my office and of the whole thereof. IN TESTIMONY WHEREOF, I have affixed this Seal of said Superior Court at my office at Seattle.



Catherine Cornwall, King County Clerk



**Instructions to recipient:** If you wish to verify the authenticity of the certified document that was transmitted by the Clerk, you must create and/or sign-in to your KC Script Portal account. Only e-certified documents that were directly ordered through the KC Script Portal can be verified through this tool.

Sign in to KC Script Portal:

**https://dja-prd-ecexap1.kingcounty.gov/**

After you login to your account, click Certified Copy Verification from the black ribbon menu at the top of the screen. There you will enter the following Serial ID.

Serial ID:     **24-452350-6131750R5G**

This document contains 4 page plus this sheet, and is a true and correct copy of the original that is of record in the King County Clerk's Office. The copy associated with Serial ID will be displayed by the Clerk.

# 0336

      

# B&A LITIGATION SERVICES

2200 Sixth Avenue, Suite 425, Seattle, WA 98121 • 206.389.9321 • Toll Free: 855.329.0919      2208 North 30th Street, Suite 202, Tacoma, WA 98403 • 253.627.6401 • Toll Fee: 800.649.2034

## ONE-WEEK TRANSCRIPT TURNAROUND
Digital Transcripts • Internet Realtime • HD Legal Video • Picture-in-Picture Depositions
Remote Depositions • Designation Editing • Nationwide Scheduling • HD Videoconferencing

**Verbatim Transcript of Proceedings**

(From Audio Recording)

*September 03, 2021*

---

**Jessica Rae Owen v. Kurt Alden Benshoof**

21-2-11149-8 SEA

---

Thank you for choosing BA Litigation Services for your court reporting, legal video, and deposition technology needs. It is always our goal to provide you with exceptional service. If there is anything we can do to assist you, please don't hesitate to let us know.

*Sarah Fitzgibbon, CCR*
Vice President



The Premier Advantage™
PDF transcript bundle contains:

• Full-size and condensed transcripts
• Printable word index
• Hyperlinked selectable word index
• Embedded printable exhibit scans
• Hyperlinked selectable exhibit viewing
• Common file formats: txt, lef, mdb
   accessed via *paperclip* icon

STRATEGY          TECHNOLOGY          DESIGN          DEPOSITIONS

Jessica Rae Owen vs Kurt Alden Benshoof
Report of Proceedings from Audio Recording, Motion for DVPO  -  September 03, 2021

```
 1

 2

 3

 4

 5            IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON

 6                    IN AND FOR THE COUNTY OF KING

 7    Jessica Rae Owen,               )
                                      )
 8              Petitioner,           )
                                      )
 9    vs.                             )     No. 21-2-11149-8 SEA
                                      )
10    Kurt Alden Benshoof,            )
                                      )
11              Respondent.           )

12                         Motion for DVPO
              Report of Proceedings from Audio Recording
13    Appearances:

14        Jessica Rae Owen, Self-Represented Litigant, appeared
      on behalf of the Petitioner.
15
          Richard Pope, Attorney at Law, appeared on behalf of
16    the Respondent.

17

18        BE IT REMEMBERED that on September 3, 2021, the

19    above-captioned cause came on for hearing in the Superior

20    Court in and for the County of King, State of Washington;

21    the following proceedings were had, to-wit:

22

23

24    Audio Recording Transcribed By:
      Jan-Marie Glaze, CCR, RPR, CRR      Certified Court Reporter
25                                        License No. 2491
```

**100**

```
 1                        TABLE OF CONTENTS

 2

 3                        PROCEEDINGS INDEX

 4     Proceeding:                                    Page

 5     Argument by Mr. Pope                             28
       Argument by Ms. Owen                            32
 6     Court's Ruling                                  34

 7

 8

 9                        EXAMINATION INDEX

10     Witness:                                       Page

11     Jessica R. Owen:
            Sworn Oral Statement                       10
12
       Kurt A. Benshoof:
13          Examination By Mr. Pope                     19

14

15

16

17                          EXHIBITS

18     Exhibit No.                          Page Referenced

19                    (No exhibits admitted.)

20

21

22

23

24

25
```

**101**

62

```
 1                    Friday, September 3, 2021
 2                       Morning Session
 3                            * * *
 4          THE COURT:  Our next case will be No. 11 on
 5    the calendar.  Owen vs. Benshoof, Cause No.
 6    21-2-11149-8 SEA.  And if the parties and counsel for
 7    Respondent would please unmute your microphones.  I'm
 8    going to ask the petitioner to start by stating your
 9    name and date of birth for the record.
10          MS. OWEN:  Hello.  My name is Jessica Owen,
11    and my birthdate is November 23rd, 1975.
12          THE COURT:  Okay.  Thank you.  And good
13    morning.
14       And then counsel for Respondent, would you please
15    state your name for the record?
16          MR. POPE:  Yes.  I'm Richard Pope, counsel
17    for the respondent, Kurt Benshoof, who is also
18    separately on this Zoom conference.
19          THE COURT:  Okay.  Good morning.  And would
20    the respondent --
21          MR. BENSHOOF:  Good morning.
22          THE COURT:  Would the respondent please state
23    your name and date of birth for the record?
24          MR. BENSHOOF:  Good morning, Your Honor.  My
25    name is Kurt Benshoof.  My date of birth is __/__/69.
```

**102**

1    THE COURT:  Okay.  Thank you.  And, again,

2   good morning to each of you.

3    We're here on a petition for a domestic violence

4   protection order.  I've reviewed the documents in the

5   court file up through yesterday.  I see from those,

6   that the respondent was personally served with the

7   petition and temporary order and notice of hearing on

8   August 26th, and I note that it looks like the

9   respondent has filed a number of declarations today,

10  September 3rd, in addition to counsel's notice of

11  appearance.

12    Mr. Pope, I'm assuming that the respondent wants

13  the Court to consider these declarations for purposes

14  of this hearing.  I haven't had a chance to review

15  them, and I don't know whether Ms. Owen has had a

16  chance to review them or not.  I see the certificate of

17  e-service indicating that they were e-mailed to her

18  yesterday, but if you're wanting the Court to consider

19  these, then we're going to need to set another hearing

20  date so that there's time for them to be reviewed.

21    MR. POPE:  We can do that, Your Honor.

22    MR. BENSHOOF:  No.

23    THE COURT:  Okay.  And --

24    MR. BENSHOOF:  I do not want to.

25    THE COURT:  Mr. Benshoof, you have an

**103**

Jessica Rae Owen vs Kurt Alden Benshoof
Report of Proceedings from Audio Recording, Motion for DVPO  -  September 03, 2021

Page 5

```
 1   attorney here, so I'm going to have Mr. Pope address
 2   the Court and ask that you keep your microphone on
 3   mute, and I'll let you know if I'm going to hear from
 4   you directly.
 5            MR. BENSHOOF:  Oh, okay.  Thank you, Your
 6   Honor.
 7            THE COURT:  Mr. Pope, would you like to
 8   address --
 9            MR. POPE:  Well, I think, you know, my
10   client's expressed his procedural position on this.
11   And I think, under the circumstances, I would certainly
12   advocate that; that we not have a continuance because
13   that's what he just -- just to make sure, apparently,
14   the Court's not going to consider our written stuff if
15   we don't have a continuance?
16            THE COURT:  Well, it was filed this morning,
17   and I haven't had a chance to read any of it.  So it's
18   not that I don't want to consider it, but I haven't
19   even had a chance to look at it.
20            MR. POPE:  How far out would we be looking,
21   Your Honor?
22            THE COURT:  Well, we can look at each of your
23   availability.  I could set this as soon as -- well,
24   maybe next Friday, depending on how much time Ms. Owen
25   might need to file a reply.  Any reply would need to be
```

**104**

```
 1   filed at least three days before the hearing.  So that
 2   would be by the 7th, next Tuesday.  If she needs a
 3   little bit more time than that, we could put it
 4   sometime the week of the 13th.
 5          MR. POPE:  Okay.  I have to, you know, defer
 6   to my client's position even though, you know,
 7   professionally, I might -- except for the client's
 8   position, I might want to have it continued, but he
 9   seems to -- Mr. Benshoof adamantly does not want it to
10   be continued.
11          THE COURT:  Mr. Pope, would you like an
12   opportunity to talk with Mr. Benshoof privately before
13   making a decision?  We can do one of two things, if you
14   would like that.  We can send the two of you to a Zoom
15   hearing room, where you can have a conversation that
16   Ms. Owen and myself wouldn't be part of, and it
17   wouldn't be on the record.  Or we can -- I can take --
18   and I'll take another case, either way.  I can take the
19   next case, and then we can just re-call this case, and
20   you can have a private phone call, or however you would
21   like to talk to Mr. Benshoof that's not through Zoom.
22          I see you both holding up your cell phones.  So
23   does that sound like a good idea?  I see you giving a
24   thumbs up --
25          MR. POPE:  Yes, Your Honor.
```

**105**

```
 1                THE COURT:  -- and a cell phone.
 2          Why don't we set this case aside for a moment.
 3     I'll take another case, and then we will re-call this
 4.    case in a few minutes and hear from you about how you
 5     want to move forward.
 6          Before we do that, though, let me just check in
 7     with Ms. Owen.
 8                MS. OWEN:  Yes.  I am fine with waiting until
 9     they've had a chance to communicate.
10                THE COURT:  Okay.  Thank you.  So stay in the
11     Zoom hearing, but we will come back to this case in a
12     little bit, and I'll just move on to another case for a
13     bit.  So I'm happy to do that to give Mr. Pope and
14     Mr. Benshoof an opportunity...
15                     (Other matters heard.)
16                THE COURT:  I'm now recalling No. 11 on the
17     calendar.  Owen vs. Benshoof, Cause No. 21-2-11149-8
18     SEA.
19          Would the parties please unmute your microphone,
20     and I want to confirm that you're all still here.  I
21     see Mr. Pope and Mr. Benshoof on Zoom with your video.
22     Ms. Owen, it looks like you're still here.  Are you
23     still in the Zoom hearing room?
24                MS. OWEN:  Yes, I am.
25                THE COURT:  Okay.  Thank you.
```

**106**

Jessica Rae Owen vs Kurt Alden Benshoof
Report of Proceedings from Audio Recording, Motion for DVPO  -  September 03, 2021

Page 8

1   So, Mr. Pope, how would you like to proceed this

2   morning?

3          MR. POPE:  We're going to go ahead today.

4          THE COURT:  Okay.  So moving forward with the

5   hearing without the Court having considered any of the

6   documents filed by the respondent this morning?

7          MR. POPE:  That's Mr. Benshoof's personal,

8   strongly-desired wish, Your Honor.

9          THE COURT:  Okay.  I'm sorry.  I didn't hear

10  that clearly.  Mr. Benshoof strongly desires --

11         MR. POPE:  Desired wish to proceed in this

12  matter.

13         THE COURT:  Desired wish.  Okay.  Thank you.

14         MR. POPE:  Yes.

15         THE COURT:  And, Ms. Owen, are you ready to

16  proceed this morning?

17         MS. OWEN:  I am, yes.

18         THE COURT:  Okay.  So just for the record,

19  I've reviewed the documents in the court file between

20  the date that the petition was filed, August 23rd,

21  2021, and September 1st of 2021, plus the notice of

22  appearance filed by Mr. Pope.  It was filed today, but

23  somehow it was in the file and I saw it yesterday, so I

24  was aware that he was appearing, and he's -- I see that

25  he's filed that as attorney of record in this matter,

**107**

 1   but the declarations filed by Mr. Benshoof, I have not

 2   reviewed because they were filed this morning is when

 3   they appeared in the file, and he's indicating he wants

 4   to proceed without the Court having considered those.

 5        I can consider the testimony of the parties, and,

 6   Mr. Pope, if you would like your client to testify,

 7   I'll swear him in.  I'm going to swear the petitioner

 8   in since she's representing herself this morning and

 9   will be speaking on her own behalf.

10        Mr. Pope, would you like me to swear in

11   Mr. Benshoof?

12              MR. POPE:  Yes, I would.

13              THE COURT:  So I will ask that both parties

14   please raise your right hand.

15                   (Both parties sworn.)

16         THE COURT:  Ms. Owen?

17         MS. OWEN:  I do, Your Honor.

18         THE COURT:  Mr. Benshoof?

19         MR. BENSHOOF:  I do, Your Honor.

20         THE COURT:  Thank you.  You may put down your

21   hands.

22        In order for me to grant the petition and enter an

23   order for protection, I must find by a preponderance of

24   the evidence, which means it is more likely than not,

25   that there has been domestic violence as defined by the

```
 1   statute, RCW 26.50.010, which defines domestic violence
 2   as physical harm, bodily injury, assault, or the
 3   infliction of fear of imminent physical harm, injury or
 4   assault between family or household members, sexual
 5   assault or stalking.
 6        I'm going to hear first from Ms. Owen, the
 7   petitioner.  Then I'll hear a response from Mr. Pope on
 8   behalf of Mr. Benshoof.  And you can both argue and
 9   take any testimony of your client at that time.  And
10   then I'll hear a brief reply from Ms. Owen if she would
11   like, and then I will make my decision and tell you my
12   decision.
13        So, Ms. Owen, starting with you, I've reviewed
14   your petition filed August 23rd.  Is everything in your
15   petition true and correct?
16            MS. OWEN:  Yes, it is, Your Honor.
17            THE COURT:  Is there anything else that you
18   would like me to consider?
19                Jessica R. Owen, having been first duly
20                sworn by the Court, testified as
21                follows:
22            MS. OWEN:  Yes.  After being granted the
23   temporary DVPO on Monday, August 23rd, it was served to
24   Kurt later that same week, but despite this order, I
25   have not seen my son in 20 days, and I have not spoken
```

1   to him in 18.  I can see that his phone was turned off

2   on August 25th, and there's been no interaction.

3        After receiving the DVPO by the police, Kurt went

4   to the police station with a note that was supposedly

5   handwritten by my son saying that he, Azh, was running

6   away, and that he was so afraid that I would force him

7   to receive his second vaccine shot.  I have included

8   that report by the officer about this interaction with

9   Kurt in my documents.

10       Kurt also said that his vehicle was stolen that

11  night, and he suspected that I had taken it, and he

12  repeatedly declined Detective Ellis' suggestion that he

13  file a missing persons report for my son and a stolen

14  vehicle report.

15       After hearing this, I filed a missing persons

16  report, and I have asked all of my son's friends and

17  family members if they know where he is, and none of

18  them say that they do.  However, I feel completely

19  confident that Kurt is lying about not knowing the

20  whereabouts of my son, A██.  Part of the reason is that

21  I can see daily use of my son's iPad at Kurt's house

22  despite the fact that he's not supposed to -- that he

23  supposedly ran away, and I'm also confident about this

24  because I spoke with Samara, Kurt's adult daughter, on

25  Saturday, August 28th at which time she said she didn't

1  know where my son A⬛ was, but that her dad, Kurt, had

2  told her that he was with people who love him and that

3  he was safe, clearly indicating that he knows where Azh

4  is, despite his claim to the contrary.

5      It is important to note that Samara is also one of

6  Kurt's character witnesses.  One of the documents that

7  was entered yesterday was by Samara and, therefore, is

8  someone who is trustworthy enough to vouch for him.

9      All of this began after my son received his first

10  shot of the COVID vaccine, and it's just escalated from

11  there.  Kurt is a rabid anti-masker and anti-vaxxer,

12  and he has repeatedly stated that having A⬛ wear a

13  mask is tantamount to child abuse.  Kurt is also making

14  a correlation to my having Azh wear a mask to Kurt

15  making A⬛ wear a butt plug.

16      I'm worried sick about my son.  I've never gone

17  this long without seeing or talking to him, and I'm

18  constantly thinking about him, and I'm worried about

19  him, and I'm -- he's always on my mind.

20      I think it's also important to note that school

21  started this week, and that while I have registered him

22  for school, he is not attending.

23      I think it's also important to note that every

24  officer that I have communicated with at this North

25  Seattle Precinct knows Kurt Benshoof by name or in

Jessica Rae Owen vs Kurt Alden Benshoof
Report of Proceedings from Audio Recording, Motion for DVPO - September 03, 2021

Page 13

1  person because of the multiple times that he has been

2  arrested over the last 18 months. In fact, delivery of

3  the paperwork was delayed because Kurt -- because the

4  police felt that Kurt was volatile enough that they

5  needed a special unit to go to his residence, and it

6  took a few days for everyone to arrange for that.

7      I was also contacted by Detective Christianson,

8  the officer that I have been dealing with recently, and

9  he said he spoke at length with Kurt yesterday. In

10 that conversation, Kurt yet again reiterated that A█

11 had run away, and that he had encouraged him to run

12 away and told him to leave his phone at the house so

13 that he couldn't be tracked and told him there was

14 money in a drawer that he could grab when he left.

15     I've been working with a victim's advocate since

16 this began and they have suggested that we prepare for

17 Kurt to retaliate if we do -- when the judgment for

18 getting custody of A█. I am afraid of what Kurt will

19 do once we get A█ back. I'm afraid that he will

20 retaliate or that he will kidnap A█ or any number of

21 things.

22     The problem with this whole ordeal is that I have

23 been afraid of confronting Kurt for years, and it's

24 just escalated to a point where I feel it's endangering

25 both myself and my son.

1          You have all the rest of the paperwork.  I don't

2    need to go over all of the things that were detailed in

3    it, but I hope that you remember that he has a pending

4    court case coming up on September 21st for showing up

5    at a local grocery store with a rifle and intimidating

6    a witness all because they evicted him from the store

7    for not wearing a mask.

8          He's a problem -- he's a threat to our society,

9    and he's a scary person, and I -- I petition for full

10   custody of my son and an order of no contact for both

11   my son and myself.  If that is not granted by the

12   Court, I ask that the Court enforce -- that the Court

13   force Kurt to receive a mental health evaluation and

14   have documented participation in mental health

15   services.  I don't think Kurt's actions over the last

16   20 days or the last year and a half, and probably years

17   before that, are those of a stable individual.

18          I'm done, Your Honor.

19          THE COURT:  Okay.  Thank you.  Please mute

20   your microphone.

21          Mr. Pope, go ahead.

22          MR. POPE:  Your Honor, this is a domestic

23   violence case, not a parenting plan action.  It would

24   probably be -- issues raised by Ms. Owen ought to be

25   113  in that kind of context, any kind of disputes about



```
 1    that.  The domestic violence as defined by the statute,

 2    there's only two incidences where Ms. Owen alleges

 3    anything even remotely resembling that.  There's police

 4    reports from November 10th of 2015 and December 7th, or

 5    whatever date, in 2015, are both -- both reports are in

 6    there, and Ms. Owen has a narrative about her version

 7    of those events which is markably -- what she's saying

 8    now is, you know, quite different than what she said

 9    back in 2015 when these events were -- had just

10    happened, and she told the cops what she told them.

11         Notably, both of the incidences in the police

12    reports, if you read the police reports, Ms. Owen said

13    they resulted from mutual shoving matches between the

14    parties.  That's -- you know, that's what she told the

15    police.  The police did not even interview Mr. Benshoof

16    for his side of the story because, you know, they

17    didn't consider that necessary.  They obviously didn't

18    file any charges in any of the incidences.  They didn't

19    feel, you know, they would have mandatory arrest

20    requirements had there been an actual domestic violence

21    criminal incident.

22         But Ms. Owen now is trying to say -- ignore the

23    fact that she said both of them are mutual shoving

24    matches.  She's trying -- interestingly, for the

25    ember incident, she's trying to say that she
```

**114**

75

Jessica Rae Owen vs Kurt Alden Benshoof
Report of Proceedings from Audio Recording, Motion for DVPO - September 03, 2021

Page 16

1   suspects jealousy because of Mr. -- because of her

2   having a new relationship, but in the same paragraph,

3   she talks about how Mr. Benshoof had a girlfriend, not

4   her, but he had, you know, a different relationship as

5   well.  So it makes her allegation of jealousy to be a

6   little bit interesting when Mr. Benshoof also has

7   another relationship at that time.

8        The November 10th, 2015, incident.  Again, in the

9   police report, she said it was a mutual shoving match

10  between the parties, whereas, in her current

11  declaration she says simply that he pushed her, and she

12  ignores the fact that she pushed him as well and told

13  that to the cops back in November of 2015 and is

14  documented in the report.

15       Interestingly, in that particular incident,

16  Ms. Owen does talk about being hurt by rejection,

17  "betrayal of our relationship" because Mr. Benshoof is

18  apparently with some other girlfriend at the time.  So

19  that's interesting that she's talking about that

20  (inaudible) and she said the same thing to the police

21  in November of 2015.

22       She said, "I retaliated by slapping him repeatedly

23  on the arm."  Okay.  That is -- that's not a mutual

24  combat.  That's Ms. Owen, even currently, admitting

25  that she repeatedly struck blows to Mr. Benshoof.  Had

**115**

Jessica Rae Owen vs Kurt Alden Benshoof
Report of Proceedings from Audio Recording, Motion for DVPO  -  September 03, 2021

Page 17

1  there -- any kind of standard for domestic violence,

2  she's a primary aggressor in that situation.  She's

3  continuing to inflict violence when there's nothing

4  coming from Mr. Benshoof at that time.  It's after they

5  had some pushing back and forth, and then she

6  repeatedly slaps him.

7      Now, even if the Court found that Mr. Benshoof had

8  committed domestic violence on those things, which the

9  Court should not find -- this was nearly six years ago.

10  Just because somebody has committed an incident in the

11  past doesn't entitle them to come back, you know, many

12  years after many intervening facts, including the fact

13  that they lived together off and on, had relationships

14  off and on, had a roughly 50/50 parenting plan

15  arrangement informally between them about their son who

16  is now 12 years old.

17      There has to be something -- some credible,

18  objectively reasonable belief that Mr. Benshoof is

19  going to commit, you know, current domestic violence if

20  it's based on something in the distant past, and that's

21  a very hard test to meet because, otherwise, everybody

22  would be filing for protection orders just because they

23  get upset at somebody who might have actually assaulted

24  them and been convicted of it years ago, which wasn't

25  the case here.

**116**

1      For these reasons, this should be dismissed.

2   Mr. Benshoof's going to testify about a few things that

3   he would like to testify about before I conclude on

4   that.

5      If for some reason this matter isn't dismissed

6   today, it would certainly need a Family Court parenting

7   plan investigation.  Obviously, there's a lot of issues

8   with the 12-year-old child who apparently has a very

9   strong mind of his own, as the mother admits in her

10  description of her interactions with her son and,

11  obviously, based on what's -- you know, obviously,

12  represented by Mr. Benshoof is that, you know, the

13  kid's not been with him.  Apparently, during this time,

14  the child's not been with her mother.  This would be

15  the kind of thing that, if there was a domestic

16  violence case, or if somebody files a parenting plan

17  action, which may come very soon, that, you know, the

18  Court would want to have an investigation, would

19  probably want to have a CASA or some other, you know,

20  guardian ad litem look into the best interest of the

21  child here.

22      You know, this is not the, you know, really proper

23  forum to determine whether vaccination is appropriate,

24  whether masks are good or bad or, you know, frankly, if

25  Mr. Benshoof's been arrested for criminal trespass

1    someplace.  That's not domestic violence.

2       He had a situation where he was pulled over by the

3    police, and he'll tell you, in that situation,

4    December 17th of 2020, that there were no charges

5    filed.  He was released from jail and without any

6    charges being filed on that incident where he was

7    pulled over and arrested.  But I would like to have

8    Mr. Benshoof say what he would like to say under oath

9    here.

10       THE COURT:  Okay.  Mr. Pope, go ahead and ask

11    your client a question and then he can answer so that

12    we have some structure to his testimony.

13       MR. POPE:  Okay.  Yeah.

14          Kurt A. Benshoof, having been first duly

15          sworn by the Court, testified as

16          follows:

17             EXAMINATION

18    BY MR. POPE:

19    Q    Mr. Benshoof, can you tell me what happened

20    approximately November 10th, 2015, that there's one of

21    the police reports in there for?

22    A    Yeah.  I think I filed my own police reports.  Jade --

23    Jessica and I were living in separate houses at the

24    time.  We were dating different people, but we were

25    still coparenting as we always have, you know,

                    Benshoof, K. - Examination by Mr. Pope

**118**

Jessica Rae Owen vs Kurt Alden Benshoof
Report of Proceedings from Audio Recording, Motion for DVPO - September 03, 2021

```
 1    throughout A████'s life, whether we're living in the same

 2    house or separate.  And I -- it was my parenting week,

 3    meaning I was the -- I was the one that had Azh at my

 4    house, and I stopped by our Haller Lake house that Jade

 5    and I had purchased together in January of 2015 to pick

 6    up something or discuss something, I can't remember

 7    what, and things became argumentative.  Jade seemed

 8    really emotional, and I thought it best to just leave

 9    and, you know, get A████ out of there because it seemed

10    like it was going to be emotional turmoil that he

11    didn't need to be around.  And Jade physically went

12    over to block the front door to prevent me and my son

13    from leaving who was in my -- I was carrying him in my

14    arms, and she tried to grab him and -- so in response,

15    I tried to get away from her and ran towards the

16    hallway and, you know, just to prevent her from

17    grabbing my son out of my hands, and as she was chasing

18    us around the house and trying to grab him with -- I

19    had A████████ on my left arm, and with my right hand, I

20    grabbed her -- it would be her upper left arm simply to

21    hold her at enough distance so she couldn't pull A████

22    from my hands.

23         I'm not that strong of a person.  I don't know,

24    you know, so if she got bruised from that, I'm -- I

25    would say I'm surprised, but in no way was I grabbing
               Benshoof, K. - Examination by Mr. Pope
```

119

 1   her in any manner other than just to keep her at bay.

 2   I wasn't trying to, you know, squeeze her arm and cause

 3   pain.

 4        And then I took off down the hall, and I think it

 5   was at that point, you know -- because imagine, I'm

 6   running through the house with my five-year-old trying

 7   to keep an adult woman who is nearly as tall as I am

 8   from grabbing him from my arms, and that is when I

 9   bumped A██'s head against the wall as we were going

10   through the doorway into the hallway.

11        So when Jessica recounted events for her TRO

12   filing, I would say it was very disingenuous of her to

13   leave out the context of everything that was going on

14   because she simply -- I think the verbiage was, "he

15   banged our son's head against the wall."

16        Well, I have never -- I have never spanked either

17   of my children, ever.  I have never yelled at either of

18   my children, ever.  I do not believe in physical

19   punishment for children under any circumstances.  And I

20   find it personally offensive that anybody would accuse

21   me of that.

22        And, you know, I understand that Jade's emotional

23   right now, and she's trying to bolster a case, but I am

24   a staunch pacifist, and there's nothing more dear to my

25   heart than protecting children and making sure that

**120**          Benshoof, K. - Examination by Mr. Pope

```
 1          they're safe and happy.  So --

 2               THE COURT:  So, Mr. Benshoof -- or Benshoof,

 3          I'm going to ask that you stop, and Mr. Pope, do you

 4          have another specific question for him?

 5               MR. POPE:  Yes.

 6     Q    (By Mr. Pope) There's an incident.  I believe the

 7          date -- looking at the police report, apparently,

 8          December 6 of 2015, which we've, you know, had some

 9          discussion about in my argument, but can you tell us --

10          tell me your testimony about what happened on that

11          date.

12     A    Yeah.  So -- and I may be getting the two mixed up

13          because it's six years ago, you know, water under the

14          bridge.  But the other incident where she says there

15          was -- there was, like, a mutual altercation is

16          baloney.  We were sitting upstairs.  A[    ] had gone to

17          bed.  We put him to bed downstairs, and we were having

18          a conversation upstairs in the evening, and Jade was --

19          Jade was emotional.  She's always been a very jealous

20          person, and we were talking back and forth, and I -- I

21          don't think I was being as compassionate as I should

22          have been towards her feelings in our discussions

23          and -- and when I stood up, because we were sitting

24          down -- when I stood up, she stood up and, you know,

25          felt like -- she said later that she felt like I was
```

Benshoof, K. - Examination by Mr. Pope

**121**

Jessica Rae Owen vs Kurt Alden Benshoof
Report of Proceedings from Audio Recording, Motion for DVPO - September 03, 2021

Page 23

```
 1        being intimidating when I stood up, but she stood up
 2        and started whaling on my face, and all I did was put
 3        my hands up to protect myself and tell her to please
 4        stop because she was going to wake the baby with her
 5        screaming.
 6            And, like, one of the -- one of the things that's
 7        really stood out in my own personal self-awareness in
 8        my lifetime is that the times --
 9            THE COURT:  Mr. Benshoof, again, I'm going to
10        ask that you stop.
11            MR. BENSHOOF:  Anyway...
12            THE COURT:  Mr. Pope, do you have another
13        question -- Mr. Benshoof, please wait.
14            MR. BENSHOOF:  Yes.  Yes.
15            THE COURT:  Mr. Pope, do you have another
16        question about the allegations in the petition?
17            MR. POPE:  Yeah.
18    Q   (By Mr. Pope) The -- can you tell us, was there a
19        situation where you -- where you happened to have the
20        back window of her pickup truck canopy shatter?
21    A   Yeah.
22    Q   Can you tell us about that?
23    A   Yeah.  That was -- yeah.  So that incident -- I had
24        ordered and delivered and unloaded lumber, which I paid
25        for, for remodeling our Bitter Lake house, and it
```

122
                    Benshoof, K. - Examination by Mr. Pope

1   was -- you know, been doing a lot of remodeling on it.

2   And so the only space to unload it was in the driveway,

3   and there's really only space for two cars in the

4   driveway.  And my FJ is my baby.  And so I don't park

5   it out in the street because I don't want people to

6   scratch it or break a window or whatever.  And Jade's

7   truck is an old, beat up, been through car crashes,

8   has, you know, alternate colored doors, and, you know,

9   she bought it back from an insurance claim because they

10  totaled it.

11      So I had been asking her for weeks and weeks to

12  help me move the lumber because it was too much to move

13  just myself, and she was complaining about not having

14  her parking space in front of the house.  And I said,

15  Well, if you just help me move the lumber, you'll have

16  your parking space.

17      So I think the worse you can accuse me of is being

18  stubborn about not -- anyways, so one evening she came

19  home, and she was -- she got mad at me because I still

20  hadn't moved the lumber even though I had repeatedly

21  said I need your help doing it.  And so she left the

22  groceries at the bottom of the steps, stormed into the

23  house and, you know, my girlfriend was over at the time

24  and, you know, it was kind of embarrassing.  And I felt

25  frustrated that Jade was still treating me this way,

        Benshoof, K. - Examination by Mr. Pope

**123**

Jessica Rae Owen vs Kurt Alden Benshoof
Report of Proceedings from Audio Recording, Motion for DVPO - September 03, 2021

Page 25

```
 1        making it out as if I was the one inconveniencing her
 2        when, in fact, I had been waiting weeks for her to
 3        simply help me move some lumber.  And, you know, at
 4        times --
 5               THE COURT:  Mr. Benshoof, sorry to interrupt
 6        you.  Can you just tell us what happened with that
 7        window?
 8               THE WITNESS:  Sorry.  That was context, Your
 9        Honor.  I apologize.
10        So I brought the groceries up for her, and then I
11        went back out to park her own truck out on the street
12        for her because she seemed so agitated about having
13        to -- about not having her own parking space, and after
14        I brought all the groceries into the house, and I went
15        back out, the -- because, you know, she usually puts
16        the groceries in the back of the house, and I -- I
17        slammed the back hatch down before I had put the
18        tailgate up in place, and so when I slammed it down, it
19        didn't have the tailgate to back stop the hatch window,
20        and so the safety glass flexed too much and it popped
21        into a bunch of little pieces.  It wasn't an
22        intentional action of destruction.  And I paid in full
23        for her to get a new hatch.
24   Q    (By Mr. Pope) Mr. Benshoof, can you tell us about --
25        was there a situation where some glass got broken in
                    Benshoof, K. - Examination by Mr. Pope
```

**124**

Jessica Rae Owen vs Kurt Alden Benshoof
Report of Proceedings from Audio Recording, Motion for DVPO  -  September 03, 2021

Page 26

```
 1          your front door, something like that?
 2   A      Yeah.  Well, we've had -- it's an old -- it's an old
 3          house with a French pane door, and I have personally
 4          paid for at least six panes to be replaced since we've
 5          owned the house because, like, we've literally had
 6          panes break because the wind blows when the door is
 7          open, and the changing pressure closes the door and
 8          they just break.  They're not safety glass.  They're
 9          all single-pane pieces of glass.  And because there's
10          no -- there's no weather stripping in the door to
11          cushion it, if -- if the door closes too hard, they
12          break.  They break all the time.  They've broke when
13          Jade closed the door.  They've broke when I closed the
14          door.  They've broke when the wind closes the door.
15          You could sneeze at the door and the windowpanes would
16          break.
17   Q      And was there a situation where you put a cat in a box
18          or anything like that?
19   A      Yeah.  I've -- there's -- this was one of the mutual
20          annoyances.  So in any long-term relationship -- and
21          we've known each other for 14 years -- I think, we have
22          mutual respect and mutual annoyances.  You know, I
23          think she's a good person.  I think she's a good mom.
24          I think inside she thinks the same of me.  But her cats
25          had been a bone of contention because I care very much
```

125

Benshoof, K. - Examination by Mr. Pope

Jessica Rae Owen vs Kurt Alden Benshoof
Report of Proceedings from Audio Recording, Motion for DVPO  -  September 03, 2021

Page 27

```
 1    about animals, and we -- the Bitter Lake house has a
 2    lot of trees around.  There's squirrels and birds and
 3    wildlife.
 4         And while Jade says that she cares about animals,
 5    her actions regarding her cats would speak otherwise.
 6    I would say it's blatant hypocrisy, and what I speak to
 7    is that her favorite cat, while we were living
 8    together, was repeatedly killing the mice, killing
 9    squirrels, killing birds.  And, you know, besides the
10    fact that that's heartbreaking to me, I would always be
11    the one at home finding the dead bodies all around the
12    yard.  You know, strewn body parts or birds brought in
13    the house or worse is when they were maimed but not
14    quite dead, and I -- month after month after month, I
15    kept saying, "Would you please do something to keep
16    your cats in the house so that they're not killing the
17    poor little creatures in the yard," and she refused to
18    do anything substantively.
19         I mean, she put little collars on with bells, and
20    it wasn't working.  And, you know, it reached a point
21    to where I put her cat that was primarily responsible
22    for all the killing in a box on the front porch.  And
23    just to show you the level of hypocrisy, while she
24    refused to do any of the measures that I requested, you
25    know, over two years' time of her cats killing all of
```

126
                Benshoof, K. - Examination by Mr. Pope

1    the animals in the yard, as soon as she moved over to

2    her new house with her fiance, she has kept her -- the

3    animals inside as house pets which she just said she

4    couldn't do when she lived with me.

5              THE COURT:  Thank you.

6         Mr. Pope, I'm going to ask that you finish up your

7    side of this case in five minutes or less.  I've heard

8    quite a bit here, 20 minutes or so, of your client's

9    testimony and your argument.  So if you could wrap it

10   up, that would be appreciated.

11   Q   (By Mr. Pope) Just very briefly, short answer.  On the

12   December 17th, 2020, incident where the Seattle Police

13   arrested you after a traffic stop, were any charges

14   filed against you for any crimes out of that incident.

15   A   No.  I was released before I could even see a judge.

16   They were bogus charges.  I was, again, the victim of

17   police brutality, and I filed an OPA complaint for that

18   as well as all the other incidences where I've been a

19   victim by the police department.  I'm a peaceful -- I'm

20   a peaceful activist.

21             MR. POPE:  Okay.  So, anyway, Your Honor,

22   there's no domestic violence that the Court should find

23   ever happened in this situation.

24        We have two disputed stories from December 2015

25   and November 2015 which were documented by -- at least

**127**

88

Jessica Rae Owen vs Kurt Alden Benshoof
Report of Proceedings from Audio Recording, Motion for DVPO - September 03, 2021

Page 29

1    by Ms. Owen's testimony, by her report to the police at

2    the time.

3         And, you know, obviously, I pointed out the

4    inconsistencies in her statement.  We have

5    Mr. Benshoof's recollection of them which, you know, is

6    certainly much more consistent with what Ms. Owen told

7    the police initially than what she's trying to tell the

8    Court now.  But, regardless, you know, even if there

9    was some concern about that domestic violence, there is

10   none of that subsequent in the relationship.

11        We have two accidental incidences of glass

12   breakage which wouldn't even, you know, qualify under

13   the strict definition under 26.50, even if those had

14   been intentional malicious actions against property.

15   But we have a negligent situation where he shut a

16   canopy window, a window with the tailgate up, which

17   unfortunately broke that.  It's not like it's a regular

18   door to a car.  It's an add-on canopy that, you know,

19   presumably isn't manufactured as strongly as something

20   that would be protecting a passenger compartment.

21        And then we have an old-fashioned door that has,

22   you know, very thin glass in it and has had a number of

23   different accidents in the past.  And just because --

24   even if somebody was upset and shut the door too hard,

25   that doesn't -- you know, that wouldn't even make it

**128**

```
 1   malicious mischief much less domestic violence under

 2   this situation.

 3        So the Court should not, you know, proceed further

 4   with this.  Obviously, the Court may have a lot of

 5   concerns about the welfare of this child.  And either

 6   parent should, you know, probably avail themselves of a

 7   parenting plan action as it does seem, at this point,

 8   that the parties do have a strong impasse about

 9   parenting.

10        Ms. Owen doesn't want to talk to Mr. Benshoof

11   anymore about things, so probably court action and a

12   parenting plan is appropriate.  If for some reason the

13   Court felt that this should be intervened on in a

14   domestic violence situation, the standard practice is

15   to have an evaluation by Family Court Services, at the

16   very minimum, and probably by CASA, although those kind

17   of things should be done, you know, in the context of a

18   parenting plan action.

19        And, you know, we haven't really gone into what

20   the parenting history has been, but except for,

21   inferentially, certainly, Ms. Owen shows that it's been

22   a 50/50 kind of arrangement.  And most recently the

23   parties were alternating the child each week.

24   Obviously, there could be difficulties.  I don't know

25   how we get the child's position in a case like this.
```

**129**

```
 1        What Ms. Owen said was somewhat compelling on the
 2   parenting issues and child welfare issues.  Although,
 3   again, that's not domestic violence.  But there is,
 4   certainly, a very big concern here that the child at
 5   this point doesn't even want to live with Ms. Owen,
 6   which can be a very back-and-forth kind of thing when
 7   the child is 12 years old.  But, still, there are
 8   reasonable things that -- there are things that happen
 9   in those kind of conflict situations too, but domestic
10   violence is not the appropriate way of addressing this,
11   just like, you know, any kind of issue about
12   vaccination would be a matter for a parenting plan
13   issue if the parents and the child don't agree on it.
14        Certainly, if a child is 12 years old and believes
15   that a vaccine is very dangerous -- some of us do, most
16   of us don't -- that has a lot to do, the child
17   shouldn't be, you know, forced to take a vaccine
18   against the child's will, but that's not the issue
19   here.  It's domestic violence, and the Court should
20   dismiss the petition, Your Honor.
21        THE COURT:  Okay.  Thank you.  And, Mr. Pope,
22   I have one question, and I'll ask the same question of
23   Ms. Owen in a moment.
24        You've referenced a parenting plan case.  I don't
25   have any record of a parenting plan case being filed in
```

**130**

BA LITIGATION SERVICES

*91*

1   Washington.  Are you aware of the existence of a

2   parenting plan case in any jurisdiction or any state?

3             MR. POPE:  There are no parenting plan cases

4   in any jurisdiction.  The parties have dealt with this

5   on an informal, you know, largely verbal or informal

6   agreement basis since Azhrael was born a little over 12

7   years ago.

8             THE COURT:  Okay.  Thank you.  If you would

9   please mute your microphones.

10     Ms. Owen, go ahead with a reply, if you would

11   like.

12             MS. OWEN:  Yes.  The parenting plan is not

13   something that -- that we have established, and it's

14   not something that I am opposed to.  However, over the

15   years, I have asked Kurt repeatedly to get a valid ID

16   and have his name added to the birth certificate.  And

17   just like many other instances where he has to conform

18   to a government restriction or request, he steadfastly

19   refused.

20     I think also that his retelling of the domestic

21   violence incidents that I've included in my initial

22   report is disingenuous and revisionist history, and I

23   would like to articulate that he has spent years

24   terrorizing myself and, at times, my son.  My son has

25   been afraid of his father and has hidden from him while

**131**

```
 1   we've had fights.

 2        He talks about the door glass shattering; that

 3   it's just an ancient door, but that happened because of

 4   the force with which he shut the door when he was angry

 5   with me.  And that's also true about the glass door on

 6   the back of my truck.  He shattered it because he

 7   slammed it shut and was angry with me.

 8        There's a history of gaslighting and violence

 9   around me that feels imminent if I get my son back, and

10   I am afraid of what he will do.  I think this is clear

11   to the officers that I speak with because of his most

12   recent escalations at the grocery stores where he has

13   found himself on the wrong end of their mask mandates

14   and I -- I'm afraid of what he'll do once I have Azh

15   back with me.

16        I don't know why he says he's a pacifist but

17   showed up to a grocery store with a gun.  I don't think

18   that's what a pacifist does.  I also don't understand

19   how a felon in the state of Washington was able to

20   acquire a gun or why that charge was dropped.

21        I think he has proven that he will take matters

22   into his own hands and flagrantly disregard the laws

23   and the requirements of him as a citizen and a member

24   of this community.  He has proven that he will do that

25   time and time again.
```

**132**

1    He also, without regard for my own request that he

2    leave me alone, will send me text after text after text

3    harassing me for things that I disagree with him about

4    until I'm forced to block his phone numbers at which

5    time, most recently, he began to text me on my son's

6    phone and send me e-mails.

7    I don't think he's going to stop, and I would like

8    to ask the Court to help me protect myself and help me

9    get my son back and protect him as well.  That's all I

10   have to say, Your Honor.

11        THE COURT:  Okay.  Thank you.  We're here on

12   a petition for a domestic violence protection order.

13   I've clarified for the record the documents I've

14   reviewed and I've heard the testimony of the parties,

15   the argument of Respondent's counsel, and I have

16   Petitioner who is representing herself today.

17   The petitioner's initial testimony focused on

18   issues involving custody of the parties' child, and I

19   want to be clear that this is not a custody proceeding.

20   If the Court granted the petition, the Court could

21   address where the child would reside on a temporary

22   basis and temporary custody, but this is not a

23   parenting plan case.

24   It doesn't appear that either party has ever filed

25   a parenting plan case and have worked things out on a

**133**

1  more informal basis regarding their child in common.

2      The petitioner has alleged some incidents or has

3  addressed -- raised incidents from 2015, and I find

4  that the respondent's testimony as to those events is

5  credible and that there is overall insufficient

6  evidence of domestic violence as defined by

7  RCW 26.50.010.  So I find that the petitioner has not

8  met the burden of proving, by a preponderance of the

9  evidence, or on a more-likely-than-not basis, that the

10  respondent has committed domestic violence, and so I am

11  denying the petition.

12      The temporary order and order to surrender weapons

13  that were entered on August 23rd will no longer be in

14  effect.  The request for a full order to surrender

15  weapons is also denied in denying this petition.

16      Either party is free to file a parenting plan or a

17  custody case if you want to address disputes or

18  concerns or custody issues.  That would be the proper

19  forum to address those, not through a petition for a

20  protection order.  Again, I'm unable to address those

21  issues today.

22      So I will enter an order that reflects my decision

23  today, and a copy will be e-mailed to each of you for

24  your records.  It looks like I have e-mail addresses

25  for both of the parties and, counsel, we have an e-mail

**134**

135

96

1    address for you as well on your notice of appearance.

2    So you'll receive courtesy copies of the denial order

3    later today.

4         That will conclude this hearing, and you are free

5    to leave the Zoom hearing platform at this time.  Thank

6    you and have a good rest of your day.

7              MR. BENSHOOF:  Thank you, Your Honor.

8                   (Proceedings concluded.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**136**

137

98

```
 1                          CERTIFICATE

 2

 3              I, JAN-MARIE GLAZE, Certified Court Reporter

 4    in the state of Washington, do hereby certify:

 5              That the foregoing proceedings were

 6    transcribed from an audio recording received from B&A

 7    Litigation Services to the best of my ability, subject to

 8    the quality of audio recording, or was transcribed under my

 9    direction;

10              That I am not a relative, employee, attorney

11    or counsel of any party to this action or relative or

12    employee of such attorney or counsel, and I am not

13    financially interested in the said action or the outcome

14    thereof;

15              That this certification applies only to the

16    original and copies supplied under my direction and not to

17    any copies made by other parties;

18              IN WITNESS WHEREOF, I have hereunto set my

19    hand in Contoocook, New Hampshire, this 8th day of September

20    2021.

21

22

23    _____

24                            Jan-Marie Glaze
                              Court Reporter

25
```

**138**

99

Jessica Rae Owen vs Kurt Alden Benshoof
Report of Proceedings from Audio Recording, Motion for DVPO - September 03, 2021 Page 38 Index: 10..arrange

**1**

**10** 2:11
**10th** 15:4 16:8 19:20
**11** 3:4 7:16
**12** 17:16 31:7,14 32:6
**12-year-old** 18:8
**13th** 6:4
**14** 26:21
**17th** 19:4 28:12
**18** 11:1 13:2
**19** 2:13
**1975** 3:11
**1st** 8:21

**2**

**20** 10:25 14:16 28:8
**2015** 15:4,5,9 16:8,13,21 19:20 20:5 22:8 28:24,25 35:3
**2020** 19:4 28:12
**2021** 1:18 3:1 8:21
**21-2-11149-8** 1:9 3:6 7:17
**21st** 14:4
**23rd** 3:11 8:20 10:14,23 35:13
**2491** 1:25
**25th** 11:2
**26.50** 29:13
**26.50.010** 10:1 35:7
**26th** 4:8
**28** 2:5
**28th** 11:25

**3**

**3** 1:18 3:1
**32** 2:5
**34** 2:6
**3rd** 4:10

**5**

**50/50** 17:14 30:22

**6**

**6** 22:8

**7**

**7/18/69** 3:25
**7th** 6:2 15:4

**A**

**above-captioned** 1:19
**abuse** 12:13
**accidental** 29:11
**accidents** 29:23
**accuse** 21:20 24:17
**acquire** 33:20
**action** 14:23 18:17 25:22 30:7,11,18
**actions** 14:15 27:5 29:14
**activist** 28:20
**actual** 15:20
**ad** 18:20
**adamantly** 6:9
**add-on** 29:18
**added** 32:16
**addition** 4:10
**address** 5:1,8 34:21 35:17,19,20 36:1
**addressed** 35:3
**addresses** 35:24
**addressing** 31:10
**admits** 18:9
**admitted** 2:19
**admitting** 16:24
**adult** 11:24 21:7

**advocate** 5:12 13:15
**afraid** 11:6 13:18,19,23 32:25 33:10, 14
**aggressor** 17:2
**agitated** 25:12
**agree** 31:13
**agreement** 32:6
**ahead** 8:3 14:21 19:10 32:10
**Alden** 1:10
**allegation** 16:5
**allegations** 23:16
**alleged** 35:2
**alleges** 15:2
**altercation** 22:15
**alternate** 24:8
**alternating** 30:23
**ancient** 33:3
**angry** 33:4,7
**animals** 27:1,4 28:1,3
**annoyances** 26:20,22
**anti-masker** 12:11
**anti-vaxxer** 12:11
**anymore** 30:11
**apologize** 25:9
**apparently** 5:13 16:18 18:8,13 22:7
**appearance** 4:11 8:22 36:1
**Appearances** 1:13
**appeared** 1:14,15 9:3
**appearing** 8:24
**appreciated** 28:10
**approximately** 19:20
**argue** 10:8
**argument** 2:5 22:9 28:9 34:15
**argumentative** 20:7
**arm** 16:23 20:19,20 21:2
**arms** 20:14 21:8
**arrange** 13:6

**139**

Jessica Rae Owen vs Kurt Alden Benshoof
Report of Proceedings from Audio Recording, Motion for DVPO - September 13, 2023   Page 139   Index: arrangement..citizen

arrangement 17:15 30:22

arrest 15:19

arrested 13:2 18:25 19:7 28:13

articulate 32:23

assault 10:2,4,5

assaulted 17:23

assuming 4:12

attending 12:22

attorney 1:15 5:1 8:25

Audio 1:12,24

August 4:8 8:20 10:14,23 11:2,25 35:13

avail 30:6

availability 5:23

aware 8:24 32:1

A▆ 11:5,20 12:1,3,12,14,15 13:10, 18,19,20 20:3,9,21 22:16 33:14

A▆'s 20:1 21:9

A▆▆ 20:19 32:6

**B**

baby 23:4 24:4

back 7:11 13:19 15:9 16:13 17:5,11 22:20 23:20 24:9 25:11,15,16,17,19 33:6,9,15 34:9

back-and-forth 31:6

bad 18:24

baloney 22:16

banged 21:15

based 17:20 18:11

basis 32:6 34:22 35:1,9

bay 21:1

beat 24:7

bed 22:17

began 12:9 13:16 34:5

behalf 1:14,15 9:9 10:8

belief 17:18

believes 31:14

bells 27:19

Benshoof 1:10 2:12 3:5,17,21,24, 25 4:22,24,25 5:5 6:9,12,21 7:14,17, 21 8:10 9:1,11,18,19 10:8 12:25 15:15 16:3,6,17,25 17:4,7,18 18:12 19:8,14,19,25 20:25 21:25 22:2,25 23:9,11,13,14,25 24:25 25:5,24,25 26:25 27:25 30:10 36:7

Benshoof's 8:7 18:2,25 29:5

betrayal 16:17

big 31:4

birds 27:2,9,12

birth 3:9,23,25 32:16

birthdate 3:11

bit 6:3 7:12,13 16:6 28:8

Bitter 23:25 27:1

blatant 27:6

block 20:12 34:4

blows 16:25 26:6

bodies 27:11

bodily 10:2

body 27:12

bogus 28:16

bolster 21:23

bone 26:25

born 32:6

bottom 24:22

bought 24:9

box 26:17 27:22

break 24:6 26:6,8,12,16

breakage 29:12

bridge 22:14

briefly 28:11

broke 26:12,13,14 29:17

broken 25:25

brought 25:10,14 27:12

bruised 20:24

brutality 28:17

bumped 21:9

bunch 25:21

burden 35:8

butt 12:15

**C**

calendar 3:5 7:17

call 6:20

canopy 23:20 29:16,18

car 24:7 29:18

care 26:25

cares 27:4

carrying 20:13

cars 24:3

CASA 18:19 30:16

case 3:4 6:18,19 7:2,3,4,11,12 14:4, 23 17:25 18:16 21:23 28:7 30:25 31:24,25 32:2 34:23,25 35:17

cases 32:3

cat 26:17 27:7,21

cats 26:24 27:5,16,25

CCR 1:24

cell 6:22 7:1

certificate 4:16 32:16

Certified 1:24

chance 4:14,16 5:17,19 7:9

changing 26:7

character 12:6

charge 33:20

charges 15:18 19:4,6 28:13,16

chasing 20:17

check 7:6

child 12:13 18:8,21 30:5,23 31:2,4, 7,13,14,16 34:18,21 35:1

child's 18:14 30:25 31:18

children 21:17,18,19,25

Christianson 13:7

circumstances 5:11 21:19

citizen 33:23

**140**



141

102

Jessica Rae Owen vs Kurt Alden Benshoof
Report of Proceedings from Audio Recording, Motion for DVPO  -  September 03, 2024   Page 140   Index: claim..destruction

claim  12:4 24:9

clarified  34:13

clear  33:10 34:19

client  9:6 10:9 19:11

client's  5:10 6:6,7 28:8

closed  26:13

closes  26:7,11,14

collars  27:19

colored  24:8

combat  16:24

commit  17:19

committed  17:8,10 35:10

common  35:1

communicate  7:9

communicated  12:24

community  33:24

compartment  29:20

compassionate  22:21

compelling  31:1

complaining  24:13

complaint  28:17

completely  11:18

concern  29:9 31:4

concerns  30:5 35:18

conclude  18:3 36:4

concluded  36:8

conference  3:18

confident  11:19,23

confirm  7:20

conflict  31:9

conform  32:17

confronting  13:23

considered  8:5 9:4

consistent  29:6

constantly  12:18

contact  14:10

contacted  13:7

contention  26:25

CONTENTS  2:1

context  14:25 21:13 25:8 30:17

continuance  5:12,15

continued  6:8,10

continuing  17:3

contrary  12:4

conversation  6:15 13:10 22:18

convicted  17:24

coparenting  19:25

copies  36:2

cops  15:10 16:13

copy  35:23

correct  10:15

correlation  12:14

counsel  3:6,14,16 34:15 35:25

counsel's  4:10

County  1:6,20

court  1:5,20,24 3:4,12,19,22 4:1,5,
13,18,23,25 5:2,7,16,22 6:11 7:1,10,
16,25 8:4,5,9,13,15,18,19 9:4,13,16,
18,20 10:17,20 14:4,12,19 17:7,9
18:6,18 19:10,15 22:2 23:9,12,15
25:5 28:5,22 29:8 30:3,4,11,13,15
31:19,21 32:8 34:8,11,20

Court's  2:6 5:14

courtesy  36:2

COVID  12:10

crashes  24:7

creatures  27:17

credible  17:17 35:5

crimes  28:14

criminal  15:21 18:25

CRR  1:24

current  16:10 17:19

cushion  26:11

custody  13:18 14:10 34:18,19,22
35:17,18

**D**

dad  12:1

daily  11:21

dangerous  31:15

date  3:9,23,25 4:20 8:20 15:5 22:7,
11

dating  19:24

daughter  11:24

day  36:6

days  6:1 10:25 13:6 14:16

dead  27:11,14

dealing  13:8

dealt  32:4

dear  21:24

December  15:4,25 19:4 22:8 28:12,
24

decision  6:13 10:11,12 35:22

declaration  16:11

declarations  4:9,13 9:1

declined  11:12

defer  6:5

defined  9:25 15:1 35:6

defines  10:1

definition  29:13

delayed  13:3

delivered  23:24

delivery  13:2

denial  36:2

denied  35:15

denying  35:11,15

department  28:19

depending  5:24

description  18:10

Desired  8:11,13

desires  8:10

destruction  25:22

**142**

*103*

Jessica Rae Owen vs Kurt Alden Benshoof
Report of Proceedings from Audio Recording, Motion for DVPO  -  September 03, 2021 Page 41 Index: detailed..full

**detailed** 14:2

**Detective** 11:12 13:7

**determine** 18:23

**difficulties** 30:24

**directly** 5:4

**disagree** 34:3

**discuss** 20:6

**discussion** 22:9

**discussions** 22:22

**disingenuous** 21:12 32:22

**dismiss** 31:20

**dismissed** 18:1,5

**disputed** 28:24

**disputes** 14:25 35:17

**disregard** 33:22

**distance** 20:21

**distant** 17:20

**documented** 14:14 16:14 28:25

**documents** 4:4 8:6,19 11:9 12:6 34:13

**domestic** 4:3 9:25 10:1 14:22 15:1, 20 17:1,8,19 18:15 19:1 28:22 29:9 30:1,14 31:3,9,19 32:20 34:12 35:6, 10

**door** 20:12 26:1,3,6,7,10,11,13,14, 15 29:18,21,24 33:2,3,4,5

**doors** 24:8

**doorway** 21:10

**downstairs** 22:17

**drawer** 13:14

**driveway** 24:2,4

**dropped** 33:20

**duly** 10:19 19:14

**DVPO** 1:12 10:23 11:3

E

**e-mail** 35:24,25

**e-mailed** 4:17 35:23

**e-mails** 34:6

**e-service** 4:17

**effect** 35:14

**Ellis'** 11:12

**embarrassing** 24:24

**emotional** 20:8,10 21:22 22:19

**encouraged** 13:11

**end** 33:13

**endangering** 13:24

**enforce** 14:12

**enter** 9:22 35:22

**entered** 12:7 35:13

**entitle** 17:11

**escalated** 12:10 13:24

**escalations** 33:12

**established** 32:13

**evaluation** 14:13 30:15

**evening** 22:18 24:18

**events** 15:7,9 21:11 35:4

**evicted** 14:6

**evidence** 9:24 35:6,9

**Examination** 2:9,13 19:17,25 20:25 21:25 22:25 23:25 24:25 25:25 26:25 27:25

**Exhibit** 2:18

**exhibits** 2:17,19

**existence** 32:1

**expressed** 5:10

F

**face** 23:2

**fact** 11:22 13:2 15:23 16:12 17:12 25:2 27:10

**facts** 17:12

**family** 10:4 11:17 18:6 30:15

**father** 32:25

**favorite** 27:7

**fear** 10:3

**feel** 11:18 13:24 15:19

**feelings** 22:22

**feels** 33:9

**felon** 33:19

**felt** 13:4 22:25 24:24 30:13

**fiance** 28:2

**fights** 33:1

**file** 4:5 5:25 8:19,23 9:3 11:13 15:18 35:16

**filed** 4:9 5:16 6:1 8:6,20,22,25 9:1,2 10:14 11:15 19:5,6,22 28:14,17 31:25 34:24

**files** 18:16

**filing** 17:22 21:12

**find** 9:23 17:9 21:20 28:22 35:3,7

**finding** 27:11

**fine** 7:8

**finish** 28:6

**five-year-old** 21:6

**FJ** 24:4

**flagrantly** 33:22

**flexed** 25:20

**focused** 34:17

**force** 11:6 14:13 33:4

**forced** 31:17 34:4

**forum** 18:23 35:19

**forward** 7:5 8:4

**found** 17:7 33:13

**frankly** 18:24

**free** 35:16 36:4

**French** 26:3

**Friday** 3:1 5:24

**friends** 11:16

**front** 20:12 24:14 26:1 27:22

**frustrated** 24:25

**full** 14:9 25:22 35:14

BA LITIGATION SERVICES

Jessica Rae Owen vs Kurt Alden Benshoof
Report of Proceedings from Audio Recording, Motion for DVPO  -  September 03, 2024   Page 42   Index: gaslighting..issue

**G**

**gaslighting** 33:8

**girlfriend** 16:3,18 24:23

**give** 7:13

**giving** 6:23

**glass** 25:20,25 26:8,9 29:11,22 33:2, 5

**Glaze** 1:24

**good** 3:12,19,21,24 4:2 6:23 18:24 26:23 36:6

**government** 32:18

**grab** 13:14 20:14,18

**grabbed** 20:20

**grabbing** 20:17,25 21:8

**grant** 9:22

**granted** 10:22 14:11 34:20

**groceries** 24:22 25:10,14,16

**grocery** 14:5 33:12,17

**guardian** 18:20

**gun** 33:17,20

**H**

**half** 14:16

**hall** 21:4

**Haller** 20:4

**hallway** 20:16 21:10

**hand** 9:14 20:19

**hands** 9:21 20:17,22 23:3 33:22

**handwritten** 11:5

**happen** 31:8

**happened** 15:10 19:19 22:10 23:19 25:6 28:23 33:3

**happy** 7:13 22:1

**harassing** 34:3

**hard** 17:21 26:11 29:24

**harm** 10:2,3

**hatch** 25:17,19,23

**he'll** 19:3 33:14

**head** 21:9,15

**health** 14:13,14

**hear** 5:3 7:4 8:9 10:6,7,10

**heard** 7:15 28:7 34:14

**hearing** 1:19 4:7,14,19 6:1,15 7:11, 23 8:5 11:15 36:4,5

**heart** 21:25

**heartbreaking** 27:10

**hidden** 32:25

**history** 30:20 32:22 33:8

**hold** 20:21

**holding** 6:22

**home** 24:19 27:11

**Honor** 3:24 4:21 5:6,21 6:25 8:8 9:17,19 10:16 14:18,22 25:9 28:21 31:20 34:10 36:7

**hope** 14:3

**house** 11:21 13:12 20:2,4,18 21:6 23:25 24:14,23 25:14,16 26:3,5 27:1,13,16 28:2,3

**household** 10:4

**houses** 19:23

**hurt** 16:16

**hypocrisy** 27:6,23

**I**

**ID** 32:15

**idea** 6:23

**ignore** 15:22

**ignores** 16:12

**imagine** 21:5

**imminent** 10:3 33:9

**impasse** 30:8

**important** 12:5,20,23

**inaudible** 16:20

**incidences** 15:2,11,18 28:18 29:11

**incident** 15:21,25 16:8,15 17:10 19:6 22:6,14 23:23 28:12,14

**incidents** 32:21 35:2,3

**included** 11:7 32:21

**including** 17:12

**inconsistencies** 29:4

**inconveniencing** 25:1

**INDEX** 2:3,9

**indicating** 4:17 9:3 12:3

**individual** 14:17

**inferentially** 30:21

**inflict** 17:3

**infliction** 10:3

**informal** 32:5 35:1

**informally** 17:15

**initial** 32:21 34:17

**initially** 29:7

**injury** 10:2,3

**inside** 26:24 28:3

**instances** 32:17

**insufficient** 35:5

**insurance** 24:9

**intentional** 25:22 29:14

**interaction** 11:2,8

**interactions** 18:10

**interest** 18:20

**interesting** 16:6,19

**interestingly** 15:24 16:15

**interrupt** 25:5

**intervened** 30:13

**intervening** 17:12

**interview** 15:15

**intimidating** 14:5 23:1

**investigation** 18:7,18

**involving** 34:18

**ipad** 11:21

**issue** 31:11,13,18

**144**

**issues** 14:24 18:7 31:2 34:18 35:18, 21

**J**

**Jade** 19:22 20:4,7,11 22:18,19 24:25 26:13 27:4

**Jade's** 21:22 24:6

**jail** 19:5

**Jan-marie** 1:24

**January** 20:5

**jealous** 22:19

**jealousy** 16:1,5

**Jessica** 1:7,14 2:11 3:10 10:19 19:23 21:11

**judge** 28:15

**judgment** 13:17

**jurisdiction** 32:2,4

**K**

**kid's** 18:13

**kidnap** 13:20

**killing** 27:8,9,16,22,25

**kind** 14:25 17:1 18:15 24:24 30:16, 22 31:6,9,11

**King** 1:6,20

**knowing** 11:19

**Kurt** 1:10 2:12 3:17,25 10:24 11:3,9, 10,19 12:1,11,13,14,25 13:3,4,9,10, 17,18,23 14:13 19:14 32:15

**Kurt's** 11:21,24 12:6 14:15

**L**

**Lake** 20:4 23:25 27:1

**largely** 32:5

**Law** 1:15

**laws** 33:22

**leave** 13:12 20:8 21:13 34:2 36:5

**leaving** 20:13

**left** 13:14 20:19,20 24:21

**length** 13:9

**level** 27:23

**License** 1:25

**life** 20:1

**lifetime** 23:8

**litem** 18:20

**literally** 26:5

**Litigant** 1:14

**live** 31:5

**lived** 17:13 28:4

**living** 19:23 20:1 27:7

**local** 14:5

**long** 12:17

**long-term** 26:20

**longer** 35:13

**lot** 18:7 24:1 27:2 30:4 31:16

**love** 12:2

**lumber** 23:24 24:12,15,20 25:3

**lying** 11:19

**M**

**mad** 24:19

**maimed** 27:13

**make** 5:13 10:11 29:25

**makes** 16:5

**making** 6:13 12:13,15 21:25 25:1

**malicious** 29:14 30:1

**mandates** 33:13

**mandatory** 15:19

**manner** 21:1

**manufactured** 29:19

**markably** 15:7

**mask** 12:13,14 14:7 33:13

**masks** 18:24

**match** 16:9

**matches** 15:13,24

**matter** 8:12,25 18:5 31:12

**matters** 7:15 33:21

**meaning** 20:3

**means** 9:24

**measures** 27:24

**meet** 17:21

**member** 33:23

**members** 10:4 11:17

**mental** 14:13,14

**met** 35:8

**mice** 27:8

**microphone** 5:2 7:19 14:20

**microphones** 3:7 32:9

**mind** 12:19 18:9

**minimum** 30:16

**minutes** 7:4 28:7,8

**mischief** 30:1

**missing** 11:13,15

**mixed** 22:12

**mom** 26:23

**moment** 7:2 31:23

**Monday** 10:23

**money** 13:14

**month** 27:14

**months** 13:2

**more-likely-than-not** 35:9

**morning** 3:2,13,19,21,24 4:2 5:16 8:2,6,16 9:2,8

**mother** 18:9,14

**Motion** 1:12

**move** 7:5,12 24:12,15 25:3

**moved** 24:20 28:1

**moving** 8:4

**multiple** 13:1

**mute** 5:3 14:19 32:9

**mutual** 15:13,23 16:9,23 22:15 26:19,22

**145**



Jessica Rae Owen vs Kurt Alden Benshoof
Report of Proceedings from Audio Recording, Motion for DVPO - September 03, 2024   Index: narrative..privately

**N**

narrative  15:6

needed  13:5

negligent  29:15

night  11:11

North  12:24

Notably  15:11

note  4:8 11:4 12:5,20,23

notice  4:7,10 8:21 36:1

November  3:11 15:4 16:8,13,21
  19:20 28:25

number  4:9 13:20 29:22

numbers  34:4

**O**

oath  19:8

objectively  17:18

offensive  21:20

officer  11:8 12:24 13:8

officers  33:11

old-fashioned  29:21

OPA  28:17

open  26:7

opportunity  6:12 7:14

opposed  32:14

Oral  2:11

ordeal  13:22

order  4:4,7 9:22,23 10:24 14:10
  34:12 35:12,14,20,22 36:2

ordered  23:24

orders  17:22

Owen  1:7,14 2:5,11 3:5,10 4:15 5:24
  6:16 7:7,8,17,22,24 8:15,17 9:16,17
  10:6,10,13,16,19,22 14:24 15:2,6,
  12,22 16:16,24 29:6 30:10,21 31:1,
  5,23 32:10,12

Owen's  29:1

owned  26:5

**P**

pacifist  21:24 33:16,18

paid  23:24 25:22 26:4

pain  21:3

pane  26:3

panes  26:4,6

paperwork  13:3 14:1

paragraph  16:2

parent  30:6

parenting  14:23 17:14 18:6,16 20:2
  30:7,9,12,18,20 31:2,12,24,25 32:2,
  3,12 34:23,25 35:16

parents  31:13

park  24:4 25:11

parking  24:14,16 25:13

part  6:16 11:20

participation  14:14

parties  3:6 7:19 9:5,13,15 15:14
  16:10 30:8,23 32:4 34:14 35:25

parties'  34:18

parts  27:12

party  34:24 35:16

passenger  29:20

past  17:11,20 29:23

peaceful  28:19,20

pending  14:3

people  12:2 19:24 24:5

person  13:1 14:9 20:23 22:20 26:23

personal  8:7 23:7

personally  4:6 21:20 26:3

persons  11:13,15

petition  4:3,7 8:20 9:22 10:14,15
  14:9 23:16 31:20 34:12,20 35:11,15,
  19

petitioner  1:8,14 3:8 9:7 10:7 34:16
  35:2,7

petitioner's  34:17

pets  28:3

phone  6:20 7:1 11:1 13:12 34:4,6

phones  6:22

physical  10:2,3 21:18

physically  20:11

pick  20:5

pickup  23:20

pieces  25:21 26:9

place  25:18

plan  14:23 17:14 18:7,16 30:7,12,18
  31:12,24,25 32:2,3,12 34:23,25
  35:16

platform  36:5

plug  12:15

point  13:24 21:5 27:20 30:7 31:5

pointed  29:3

police  11:3,4 13:4 15:3,11,12,15
  16:9,20 19:3,21,22 22:7 28:12,17,19
  29:1,7

poor  27:17

Pope  1:15 2:5,13 3:16 4:12,21 5:1,7,
  9,20 6:5,11,25 7:13,21 8:1,3,7,11,
  14,22 9:6,10,12 10:7 14:21,22
  19:10,13,18,25 20:25 21:25 22:3,5,
  6,25 23:12,15,17,18,25 24:25 25:24,
  25 26:25 27:25 28:6,11,21 31:21
  32:3

popped  25:20

porch  27:22

position  5:10 6:6,8 30:25

practice  30:14

Precinct  12:25

prepare  13:16

preponderance  9:23 35:8

pressure  26:7

prevent  20:12,16

primarily  27:21

primary  17:2

private  6:20

privately  6:12


LITIGATION SERVICES

Jessica Rae Owen vs Kurt Alden Benshoof
Report of Proceedings from Audio Recording, Motion for DVPO - September 03, 2024 Index: problem..running

**problem** 13:22 14:8

**procedural** 5:10

**proceed** 8:1,11,16 9:4 30:3

**proceeding** 2:4 34:19

**proceedings** 1:12,21 2:3 36:8

**professionally** 6:7

**proper** 18:22 35:18

**property** 29:14

**protect** 23:3 34:8,9

**protecting** 21:25 29:20

**protection** 4:4 9:23 17:22 34:12 35:20

**proven** 33:21,24

**proving** 35:8

**pull** 20:21

**pulled** 19:2,7

**punishment** 21:19

**purchased** 20:5

**purposes** 4:13

**pushed** 16:11,12

**pushing** 17:5

**put** 6:3 9:20 14:25 22:17 23:2 25:17 26:17 27:19,21

**puts** 25:15

**Q**

**qualify** 29:12

**question** 19:11 22:4 23:13,16 31:22

**R**

**rabid** 12:11

**Rae** 1:7,14

**raise** 9:14

**raised** 14:24 35:3

**ran** 11:23 20:15

**RCW** 10:1 35:7

**re-call** 6:19 7:3

**reached** 27:20

**read** 5:17 15:12

**ready** 8:15

**reason** 11:20 18:5 30:12

**reasonable** 17:18 31:8

**reasons** 18:1

**recalling** 7:16

**receive** 11:7 14:13 36:2

**received** 12:9

**receiving** 11:3

**recent** 33:12

**recently** 13:8 30:22 34:5

**recollection** 29:5

**record** 3:9,15,23 6:17 8:18,25 31:25 34:13

**Recording** 1:12,24

**records** 35:24

**recounted** 21:11

**referenced** 2:18 31:24

**reflects** 35:22

**refused** 27:17,24 32:19

**regard** 34:1

**registered** 12:21

**regular** 29:17

**reiterated** 13:10

**rejection** 16:16

**relationship** 16:2,4,7,17 26:20 29:10

**relationships** 17:13

**released** 19:5 28:15

**remember** 14:3 20:6

**REMEMBERED** 1:18

**remodeling** 23:25 24:1

**remotely** 15:3

**repeatedly** 11:12 12:12 16:22,25 17:6 24:20 27:8 32:15

**replaced** 26:4

**reply** 5:25 10:10 32:10

**report** 1:12 11:8,13,14,16 16:9,14 22:7 29:1 32:22

**Reporter** 1:24

**reports** 15:4,5,12 19:21,22

**represented** 18:12

**representing** 9:8 34:16

**request** 32:18 34:1 35:14

**requested** 27:24

**requirements** 15:20 33:23

**resembling** 15:3

**reside** 34:21

**residence** 13:5

**respect** 26:22

**respondent** 1:11,16 3:7,14,17,20, 22 4:6,9,12 8:6 35:10

**respondent's** 34:15 35:4

**response** 10:7 20:14

**responsible** 27:21

**rest** 14:1 36:6

**restriction** 32:18

**resulted** 15:13

**retaliate** 13:17,20

**retaliated** 16:22

**retelling** 32:20

**review** 4:14,16

**reviewed** 4:4,20 8:19 9:2 10:13 34:14

**revisionist** 32:22

**Richard** 1:15 3:16

**rifle** 14:5

**room** 6:15 7:23

**roughly** 17:14

**RPR** 1:24

**Ruling** 2:6

**run** 13:11

**running** 11:5 21:6

**147**

B·A LITIGATION SERVICES

Case 2:24-cv-00808-JNW Document 53-1 Filed 09/26/24 Page 386 of 540

Jessica Rae Owen vs Kurt Alden Benshoof
Report of Proceedings from Audio Recording, Motion for DVPO  -  September 03, 2024    Page 46    Index: safe..suspects

**S**

**safe** 12:3 22:1

**safety** 25:20 26:8

**Samara** 11:24 12:5,7

**Saturday** 11:25

**scary** 14:9

**school** 12:20,22

**scratch** 24:6

**screaming** 23:5

**SEA** 1:9 3:6 7:18

**Seattle** 12:25 28:12

**self-awareness** 23:7

**Self-represented** 1:14

**send** 6:14 34:2,6

**separate** 19:23 20:2

**separately** 3:18

**September** 1:18 3:1 4:10 8:21 14:4

**served** 4:6 10:23

**services** 14:15 30:15

**Session** 3:2

**set** 4:19 5:23 7:2

**sexual** 10:4

**shatter** 23:20

**shattered** 33:6

**shattering** 33:2

**short** 28:11

**shot** 11:7 12:10

**shoving** 15:13,23 16:9

**show** 27:23

**showed** 33:17

**showing** 14:4

**shows** 30:21

**shut** 29:15,24 33:4,7

**sick** 12:16

**side** 15:16 28:7

**simply** 16:11 20:20 21:14 25:3

**single-pane** 26:9

**sitting** 22:16,23

**situation** 17:2 19:2,3 23:19 25:25 26:17 28:23 29:15 30:2,14

**situations** 31:9

**slammed** 25:17,18 33:7

**slapping** 16:22

**slaps** 17:6

**sneeze** 26:15

**society** 14:8

**someplace** 19:1

**son** 10:25 11:5,13,20 12:1,9,16 13:25 14:10,11 17:15 18:10 20:12, 17 32:24 33:9 34:9

**son's** 11:16,21 21:15 34:5

**sound** 6:23

**space** 24:2,3,14,16 25:13

**spanked** 21:16

**speak** 27:5,6 33:11

**speaking** 9:9

**special** 13:5

**specific** 22:4

**spent** 32:23

**spoke** 11:24 13:9

**spoken** 10:25

**squeeze** 21:2

**squirrels** 27:2,9

**stable** 14:17

**stalking** 10:5

**standard** 17:1 30:14

**start** 3:8

**started** 12:21 23:2

**starting** 10:13

**state** 1:5,20 3:15,22 32:2 33:19

**stated** 12:12

**statement** 2:11 29:4

**stating** 3:8

**station** 11:4

**statute** 10:1 15:1

**staunch** 21:24

**stay** 7:10

**steadfastly** 32:18

**steps** 24:22

**stolen** 11:10,13

**stood** 22:23,24 23:1,7

**stop** 22:3 23:4,10 25:19 28:13 34:7

**stopped** 20:4

**store** 14:5,6 33:17

**stores** 33:12

**stories** 28:24

**stormed** 24:22

**story** 15:16

**street** 24:5 25:11

**strewn** 27:12

**strict** 29:13

**stripping** 26:10

**strong** 18:9 20:23 30:8

**strongly** 8:10 29:19

**strongly-desired** 8:8

**struck** 16:25

**structure** 19:12

**stubborn** 24:18

**stuff** 5:14

**subsequent** 29:10

**substantively** 27:18

**suggested** 13:16

**suggestion** 11:12

**Superior** 1:5,19

**supposed** 11:22

**supposedly** 11:4,23

**surprised** 20:25

**surrender** 35:12,14

**suspected** 11:11

**suspects** 16:1

**148**

**swear** 9:7,10

**sworn** 2:11 9:15 10:20 19:15

**T**

**TABLE** 2:1

**tailgate** 25:18,19 29:16

**talk** 6:12,21 16:16 30:10

**talking** 12:17 16:19 22:20

**talks** 16:3 33:2

**tall** 21:7

**tantamount** 12:13

**temporary** 4:7 10:23 34:21,22 35:12

**terrorizing** 32:24

**test** 17:21

**testified** 10:20 19:15

**testify** 9:6 18:2,3

**testimony** 9:5 10:9 19:12 22:10 28:9 29:1 34:14,17 35:4

**text** 34:2,5

**thin** 29:22

**thing** 16:20 18:15 31:6

**things** 6:13 13:21 14:2 17:8 18:2 20:7 23:6 30:11,17 31:8 34:3,25

**thinking** 12:18

**thinks** 26:24

**thought** 20:8

**threat** 14:8

**thumbs** 6:24

**time** 4:20 5:24 6:3 10:9 11:25 16:7, 18 17:4 18:13 19:24 24:23 26:12 27:25 29:2 33:25 34:5 36:5

**times** 13:1 23:8 25:4 32:24

**to-wit** 1:21

**today** 4:9 8:3,22 18:6 34:16 35:21, 23 36:3

**told** 12:2 13:12,13 15:10,14 16:12 29:6

**totaled** 24:10

**tracked** 13:13

**traffic** 28:13

**Transcribed** 1:24

**treating** 24:25

**trees** 27:2

**trespass** 18:25

**TRO** 21:11

**truck** 23:20 24:7 25:11 33:6

**true** 10:15 33:5

**trustworthy** 12:8

**Tuesday** 6:2

**turmoil** 20:10

**turned** 11:1

**U**

**unable** 35:20

**understand** 21:22 33:18

**unit** 13:5

**unload** 24:2

**unloaded** 23:24

**unmute** 3:7 7:19

**upper** 20:20

**upset** 17:23 29:24

**upstairs** 22:16,18

**V**

**vaccination** 18:23 31:12

**vaccine** 11:7 12:10 31:15,17

**valid** 32:15

**vehicle** 11:10,14

**verbal** 32:5

**verbiage** 21:14

**version** 15:6

**victim** 28:16,19

**victim's** 13:15

**video** 7:21

**violence** 4:3 9:25 10:1 14:23 15:1, 20 17:1,3,8,19 18:16 19:1 28:22 29:9 30:1,14 31:3,10,19 32:21 33:8 34:12 35:6,10

**volatile** 13:4

**vouch** 12:8

**W**

**wait** 23:13

**waiting** 7:8 25:2

**wake** 23:4

**wall** 21:9,15

**wanting** 4:18

**Washington** 1:5,20 32:1 33:19

**water** 22:13

**weapons** 35:12,15

**wear** 12:12,14,15

**wearing** 14:7

**weather** 26:10

**week** 6:4 10:24 12:21 20:2 30:23

**weeks** 24:11 25:2

**welfare** 30:5 31:2

**whaling** 23:2

**whereabouts** 11:20

**wildlife** 27:3

**wind** 26:6,14

**window** 23:20 24:6 25:7,19 29:16

**windowpanes** 26:15

**witnesses** 12:6

**woman** 21:7

**worked** 34:25

**working** 13:15 27:20

**worried** 12:16,18

**worse** 24:17 27:13

**wrap** 28:9

**written** 5:14

**wrong** 33:13

**149**

Jessica Rae Owen vs Kurt Alden Benshoof
Report of Proceedings from Audio Recording, Motion for DVPO  -  September 03, 2021 Page 48Index: yard..Zoom

**Y**

**yard**  27:12,17 28:1

**year**  14:16

**years**  13:23 14:16 17:9,12,16,24
22:13 26:21 31:7,14 32:7,15,23

**years'**  27:25

**yelled**  21:17

**yesterday**  4:5,18 8:23 12:7 13:9

**Z**

**Zoom**  3:18 6:14,21 7:11,21,23 36:5

**150**

111



**FILED**
2021 AUG 23
KING COUNTY
SUPERIOR COURT CLERK

CASE #: 21-2-11149-8 SEA

| **Superior Court of Washington** **For King County** | **No.** 21-2-11149-8 **SEA** |
|---|---|

**Temporary Order for Protection and Notice of Hearing** (TMORPRT)
(Clerk's Action Required)

Jessica Rae Owen          11/23/1975
Petitioner                DOB

                vs.

**Next Hearing Date/Time:** 09/03/2021

8:30 check in for 9:00 hearings at:

**All hearings are by ZOOM pending further order of the court.**

To find the video link or Zoom call-in number for your virtual courtroom, go to https://bit.ly/3A7nSIj

Kurt Alden Benshoof          07/18/1969
Respondent                   DOB

**2 court days before your hearing**; or, if you do not have Internet access, call (206) 477-1523 or email FamilyLawStaffSeattle@KingCounty.gov to get the Zoom call-in number for your hearing as soon as possible. *More information on last page!*

**Names of minors:** ☐ No minors involved

| First | Middle | Last | Age |
|---|---|---|---|
| A⬛⬛ | R⬛ | W⬛⬛ | 12 yrs |
| - | | | |
| | | | |
| | | | |

Caution:

**Respondent Identifiers**

| Sex | Race | Hair |
|---|---|---|
| M | W | Brown |
| **Height** | **Weight** | **Eyes** |
| 6'00" | 175 lbs | Blue |

**Respondent's Distinguishing Features:**
N/A

**Access to weapons:** ☒ yes ☐ no ☐ unknown

**TERMS OF THIS ORDER EFFECTIVE UNTIL:**

**End of the hearing, date noted above**

*The court finds*:
The court has jurisdiction over the parties, the minors, and the subject matter. The respondent will be served notice of his or her opportunity to be heard at the scheduled hearing. RCW 26.50.070. For good cause shown, the court finds that an emergency exists and that a Temporary Protection Order should be issued without notice to the respondent to avoid irreparable harm or injury.

83 Temp Ord for Protection/Nt of Hrg (TMORPRT) - Page 1 of 6
WPF DV-2.015 Mandatory (06/2020) - RCW 26.50.070, RCW 9.41.800

0389                                                                    002

**The court orders:**

☒ 1. Respondent is **restrained** from causing petitioner physical harm, bodily injury, assault, including sexual assault, and from molesting, harassing, threatening, or stalking ☒ petitioner ☒ the minors named in the table above ☐ these minors only:_

☒ 2. Respondent is **restrained** from harassing, following, keeping under physical or electronic surveillance, cyberstalking as defined in RCW 9.61.260, and using telephonic, audiovisual, or other electronic means to monitor the actions, locations, or wire or electronic communication of
☒ petitioner ☒ the minors named in the table above ☐ only the minors listed below ☒ members of the victim's household listed below ☐ the victim's adult children listed below:

Magalie Lerman

☒ 3. Respondent is **restrained** from coming near and from having any contact whatsoever, in person or through others, by phone, mail, or any means, directly or indirectly, except for mailing or service of process of court documents by a 3ʳᵈ party or contact by respondent's lawyer(s) with ☒ petitioner ☒ the minors named in the table above ☐ these minors only:

☒ 4. Respondent is **restrained** from going onto the grounds of or entering petitioner's
☒ residence ☒ workplace ☐ school ☒ the day care or school of ☒ the minors named in the table above ☐ these minors only:

☐ other:

☐Petitioner's address is confidential. ☒ Petitioner waives confidentiality of the address which is: 849 Northeast 130th Street, Seattle WA 98125

☐ 5. Petitioner shall have exclusive right to the residence petitioner and respondent share. The respondent shall immediately **vacate** the residence. The respondent may take respondent's personal clothing and respondent's tools of trade from the residence while a law enforcement officer is present. ☐ This address is confidential. ☐ Petitioner waives confidentiality of this address which is:

☒ 6. Respondent is **prohibited** from knowingly coming within, or knowingly remaining within **500 feet**__(distance) of: petitioner's ☒ residence ☒ workplace ☐ school ☒ the day care or school of ☒ the minors named in the table above ☐ these minors only: _

☐ other:

☐ 7. Petitioner shall have possession of essential personal belongings, including the following:

☒ 8. Petitioner is granted use of the following vehicle:
Year, Make & Model: 2014 Toyota FJ Cruiser
License No. BGF9753

☒ 9. **Other:** No contact with my son, A___ R W___, or me in person or through any form of communication.

84

0390

003

**Protection for minors:**

☒ 10. Petitioner is **granted** the temporary care, custody, and control of ☒ the minors named in the table above ☐ these minors only:

☒ 11. Respondent is **restrained** from interfering with petitioner's physical or legal custody of ☒ the minors named in the table above ☐ these minors only:

☒ 12. Respondent is **restrained** from removing from the state ☒ the minors named in the table above ☐ these minors only:

---

☒ **Surrender and Prohibition of Weapons Order**

The court finds that:

☒ Irreparable injury could result if the order to surrender weapons is not issued.

☐ Respondent's possession of a firearm or other dangerous weapon presents a serious and imminent threat to public health or safety or the health or safety of any individual.

☐ Irreparable injury could result if the Respondent is allowed to access, obtain, or possess any firearms or other dangerous weapons, or obtaining or possessing a concealed pistol license.

The Respondent must comply with the **Order to Surrender Weapons (and Prohibit Weapons if checked below) Issued Without Notice** filed separately which states:

Respondent shall immediately surrender all firearms, other dangerous weapons, and any concealed pistol licenses.

☒ Respondent is prohibited from accessing, obtaining, or possessing any firearms or other dangerous weapons, or obtaining or possessing a concealed pistol license.

*(Note: Also use form number All Cases 02-030.)*

The respondent is directed to appear and show cause why this temporary order should not be made effective for one year or more and why the court should not order the relief requested by the petitioner or other relief which may include electronic monitoring, payment of costs, and treatment. **Failure to Appear at the Hearing May Result in the Court Granting Such Relief. The Next Hearing Date is Shown on Page One.**

---

**Warnings to Respondent**: A violation of provisions 1 through 6 of this order with actual notice of its terms is a criminal offense under chapter 26.50 RCW and will subject you to arrest. If the violation of the protection order involves travel across a state line or the boundary of a tribal jurisdiction, or involves conduct within the special maritime and territorial jurisdiction of the United States, which includes tribal lands, you may be subject to criminal prosecution in federal court under 18 U.S.C. § 2261, 2261A, or 2262.

A violation of provisions 1 through 6 of this order is a gross misdemeanor unless one of the following conditions apply: Any assault that is a violation of this order and that does not amount to assault in the first degree or second degree under RCW 9A.36.011 or 9A.36.021 is a class C felony. Any conduct in violation of this order that is reckless and creates a substantial risk of death or serious physical injury to

**85** Temp Ord for Protection/Nt of Hrg (TMORPRT) - Page 3 of 6
WPF DV-2.015 Mandatory (06/2020) - RCW 26.50.070, RCW 9.41.800

004

**0391**

another person is a class C felony. Also, a violation of this order is a class C felony if you have at least two previous convictions for violating a protection order issued under Titles 7, 10, 26 or 74 RCW.

If the court issues a final protection order, and your relationship to the petitioner is that of spouse or former spouse, parent of a common child, or former or current cohabitant as intimate partner, including a current or former registered domestic partner, you may not possess a firearm or ammunition for as long as that final protection order is in effect. 18 U.S.C. § 922(g)(8). A violation of this federal firearms law carries a maximum possible penalty of 10 years in prison and a $250,000 fine. An exception exists for law enforcement officers and military personnel when carrying department/government-issued firearms. 18 U.S.C. § 925(a)(1). If you are convicted of an offense of domestic violence, you will be forbidden for life from possessing a firearm or ammunition. 18 U.S.C. § 922(g)(9); RCW 9.41.040.

*You Can Be Arrested Even if the Person or Persons Who Obtained the Order Invite or Allow You to Violate the Order's Prohibitions.* You have the sole responsibility to avoid or refrain from violating the order's provisions. Only the court can change the order upon written application.

Pursuant to 18 U.S.C. § 2265, a court in any of the 50 states, the District of Columbia, Puerto Rico, any United States territory, and any tribal land within the United States shall accord full faith and credit to the order.

**Warning:** A person may be guilty of custodial interference in the second degree if they violate provisions 10, 11, or 12.

### Washington Crime Information Center (WACIC) Data Entry

It is further ordered that the clerk of the court shall forward a copy of this order on or before the next judicial day to __SEATTLE__ ☐ County Sheriff's Office ☒ Police Department *Where Petitioner Lives* which shall enter it into WACIC.

### Service

☒ The clerk of the court shall also electronically forward a copy of this order on or before the next judicial day to __SEATTLE__ ☐ County Sheriff's Office ☒ Police Department *Where Respondent Lives* which shall ☒ personally and/or ☐ electronically serve the respondent with a copy of this order and shall promptly complete and return to this court proof of service.

☐ (Only if surrender of weapons not ordered) Petitioner has made private arrangements for service of this order

### Law Enforcement Assistance

☒ Law enforcement shall assist petitioner in obtaining:
  ☐ Possession of petitioner's ☐ residence ☐ personal belongings located at: ☐ the shared residence ☐ respondent's residence ☒ other: __Possession of the vehicle designated above.__
  ☒ Custody of the above-named minors, including taking physical custody for delivery to petitioner (if applicable).
  ☐ Other: _____

ORDERED: 8/23/202 at 12 ~~a.m.~~/p.m.

_____
**Judge/Commissioner**

Presented by/Zoom or Telephonic presentation by:

_____
Signature of Petitioner/Lawyer        WSBA No.

Jessica Rae Owen
_____
*Print Name*

Temp Ord for Protection/Nt of Hrg (TMORPRT) - Page 4 of 6
WPF DV-2.015 Mandatory (06/2020) - RCW 26.50.070, RCW 9.41.800

86
07

0392

005

| The petitioner or petitioner's lawyer must complete a<br>Law Enforcement Information Sheet (LEIS). |
| --- |

Temp Ord for Protection/Nt of Hrg (TMORPRT) - Page 5 of 6<br>WPF DV-2.015 Mandatory (06/2020) - RCW 26.50.070, RCW 9.41.800

0393

006

*2006 4th 4000*

Messages - Jade

Also, your cord might work until it arrives.

my cord is different

Liked "A⬤'s laptop is not working. The power cord is broken i think. I'm ordering a new one but we're leaving this week and won't be back until Sunday. Can I have it mailed to your house?"

Ok. Mine, too.

He'll have to use your laptop for homework until it arrives.

5/19/21, 9:06 AM

Hi!  I'm interested in transferring your FJ over to you. And, I want to catch up on finances. Can we plan a time next week? Maybe Friday the 28th?

let's do it!!!!

Great!

6/14/21, 9:20 AM

what day do you leave on the trip with A⬤?

The 18th. Friday. This upcoming Friday.

Are you home today?  Is A⬤ taken care of if not?

6/14/21, 12:12 PM

yeah i came home early to avoid any problems

7/7/21, 10:17 AM

hey mom it's me wrench

i was just wondering when i have to come home?

before i have to leave for camp

By noon?

If you want to do lunch camp come back by 11:30 but if not we need to leave by 12:30. So, not noon. By 12:30 at the latest.

Kiddo, if you miss lunch club you need to eat lunch at your dads.

**45**

Messages - Jade

7/7/21, 9:41 PM

> do you happen to have my Bosch belt sander?

7/12/21, 10:44 AM

> where's A███?

He's asleep still. He was up until 2am on Saturday night because of M███'s sleepover and they woke up around 6:30am after that. I'm just letting him sleep in since he doesn't have school. We went paddle boarding yesterday, too, so I think he's exhausted. It's a lot of movement for someone who didn't do much for a year and half.

> does he have camp tomorrow?

> nvm he's awake

8/15/21, 2:50 PM

I see that I missed your call. What's up?

> just wanted to grab the title to my FJ

I'd like to settle up the money you owe me before that. Let's plan a time to do the transfer this week.

Also, I'd like to hear your plan for buying me out of the house. I want to be finished with that by the end of the year.

> first the FJ

> but yes i'm on board with getting everything settled

> when can I get the title to my FJ that i have paid for in full two years ago or more?

> probably 3 years right?

I'd like you to pay me for all of the money you owe me for outstanding bills from when we lived together, the mortgage on the house you live in, and the insurance I've been paying for your FJ. I don't care that your car is paid off. It's not about that. It's about how much you owe me for bills that I've had to pay for and I want to be reimbursed. I'm holding the title as collateral. You can get it when you pay me.

> the FJ has been and is, a separate item. period. it's not up for debate.

**46**

Messages - Jade

> if you try to uphold the transfer of the title of my FJ any further, we will resolve it in court.  your call

> a⬤ doesn't recall you providing him informed consent in accordance with the Nuremberg Code, the AMA code of ethics 2.1.1 or state and federal law when you coerced him into being injected with an experimental, gene altering substance, in violation of your assurance to me months ago that you would not do so, and in violation of my explicit objection to him even wearing an unapproved medical device (mask).

> He didn't even realize he was a guinea pig in an ongoing medical trial that won't finish until 2023.

> Did he just forget something you told him before subjecting him to an unapproved drug trial?  If so, please inform me of what you explained to him prior to the injection.

> Furthermore, how can you be trusted to not subject our child, through your own ignorance and deceit, to further medical experimentation?

Laughed at "if you try to uphold the transfer of the title of my FJ any further, we will resolve it in court.  your call"

I would love to see you try. You have a warrant out for your arrest. Go right ahead to the courthouse to press charges and see how that goes. 🤭

8/15/21, 8:15 PM

> you haven't answered any of the questions about subjecting A⬤ to an ongoing medical experiment.  why is that?

Because I don't have to. He is safer vaccinated than not. And, I'm listening to science and doctors not your wackadoodle conspiracy theories.

8/15/21, 9:39 PM

> Oh.  So the fact that VAERS has more reported deaths from the covid "vaccines" in 10 months than in ALL OTHER vaccines COMBINED in the previous TEN years sounds like a "safe" experimental trial to subject our son to?

> The "Vaccines" are so safe that they required legal immunity from damages?

> What flavor was your Kool-Aid?

**47**

**0396**

Messages - Jade



8/16/21, 10:54 AM

is that your evidence that it was safe to inject our son with an experimental genetically altering chemical?

please provide evidence of safety and efficacy.

also please provide the complete list of ingredients that you had injected into our son's body.

please provide your evidence that

1) A⬤ didn't already have natural immunity.

2) injecting him with an experimental chemical improved his existing natural immunity——or if you have evidence he didn't ALREADY have natural immunity, provide the evidence that jabbing him as safely improved his body's immune response to "SARS-CoV-2"

FYI——i will be cancelling my service for this number and you will only be able to reach me at my new number

one of us has been lying to our son. this is an undeniable fact. if that has been me, I will take full responsibility for that. if that has been you, then you will have to take full responsibility for your willful deceit.

you owe it to him to provide the evidence that proves you are telling the truth.

he doesn't want to talk to you. he knows now that your are a liar who does not care about his safety.

respect his wishes

**48**

Messages - Jade

> i didn't tell him to block you, as you did for Father's Day. i tell him the truth.

> if you want to earn his trust back, prove you haven't been lying.

I want to talk to A⬤. If you don't let him call me I will bring a police escort to pick him up, repossess the FJ, and evict you. Fucking put him on the phone now.

All of these things are within my power. Do not push me.

> did you just threaten me?

Definitely.

> nice job.

> i'm not preventing him from calling you. he said "i don't want to talk to her" when I suggested he call you.

Lol. That's what he said when I asked him if he wanted to block you.

> so respect it

> since you're resorting to more lying and committing crimes today, such as RCW 9A.46.020, maybe you should go for broke and allege I stole my own FJ and call in an Amber Alert and falsely allege A⬤ isn't afraid of you and doesn't want to be with me.

> 8/16/21, 5:10 PM

> Which experimental trial did you subject our son to as an unwitting guinea pig? moderna? pfizer? did you even read their Fact Sheets? If you haven't yet, please go read them.

> Then, please explain to me how you concluded they are safe.

> Furthermore, please cite the double blind RCT that is ongoing, or has concluded, proving the safety of what you had injected into our son.

> Additionally, provide the evidence you used to conclude that what you injected him with has benefits outweighing the risks, and that this benefit/risk ratio is superior to either 1) no experimental shot or 2) any of the other known methods of prophylaxis or treatment.

> If you had such solid scientific evidence prior to your unilateral and deceitful decision to inject our son, why did you not simply provide such evidence to refute my claims and alleviate my concerns for our son's health?

**49**

Messages - Jade

8/17/21, 5:33 AM

you said you had him experimentally injected based upon the "science" and "doctors".

please provide this "science".

please provide what these doctors stated.

since you researched all of this BEFORE subjecting A⬤ to an ongoing medical experiment. the information should be at your fingertips. right?

shouldn't you KNOW it?

I have $100,000 prize money if you can simply prove what you did to our son was safe. You can have the house, as well. I've paid for more than half of it so far, but I will renounce my financial interest in it and move out by the end of September.

By law, the medical professional that injected our son was required to provide you with informed consent.

please provide
1). the clinic where he was injected
2) the name and title of the person who injected him
3) all information provided to you as part of the informed consent process

as his parent and guardian I have a legal right to this information.

as his Father, who is very very concerned about his health. I need this information NOW so that I can research the potential side effects of this injection—including life threatening side effects—and any mitigating treatments or supplements.

Any further stonewalling will be considered willful neglect. negligence. and/or wreckless endangerment of our child.

Is the Inventor of mRNA technology who was up for a Nobel before he had the courage to risk his career to get the truth out about children being experimented on a "wackadoodle conspiracy theorist"?

Are you privy to "science" that he isn't?

Please validate your assertions.

https://twitter.com/rwmalonemd/status/1427417780618502150?s=21

Did trustworthy "Doctor" Fauci tell you to?

50

Messages - Jade

> Waiting for all of your FB friends to send you some memes in lieu of evidence? That's what you usually do, isn't it?
>
> Maybe a John Oliver video explaining how only deplorable, ignorant "Trumpers" (which I am not) ignore the "science"
>
> Let's see what you based your deceitful decision on, Jade.

Delivered

Blocking you. Have a nice day!

**51**

# EXHIBIT – P3B

Texts
Jessica Owen
(206) 966-3158

*206 966 5758*

Messages - Jade Owen

6/19/21, 9:37 AM

> Well, just discovered A⬤ didn't just plagiarize ONE writing assignment, he plagiarized every fucking one.

In what section? What do you mean?

> Writing assignments

In what? English? History? Science? I don't remember him having writing assignments

> I'm having Kyrrah go back in the system and fail him on every one

In what section are you talking about???

> There are writing assignments in different sections

> The point is he cheated. Repeatedly

Can we all have a meeting and talk about his cheating and a strategy for what we're going to do?

> Sure. Take away all his electronics and internet on his phone is the first step. He doesn't deserve them

> He's not done with school even besides the cheating. FYI

6/20/21, 2:13 PM

> I tried calling A⬤ but I think his phone is off. I opened his card and it made me LOL. Loved it😂

6/21/21, 6:59 PM

> Hello? How can I talk to our son?

Hey. He's upset about how you spoke to him the other day and he doesn't want to talk to you right now.

> Okey dokey

6/22/21, 7:04 AM

> Hey do you remember what tree service we used? I gotta get the tree down from the driveway

6/22/21, 8:24 AM

Ballard Tree Service

**53**

Messages - Jade Owen

6/24/21, 12:15 PM



LOL. Looking at YOU 😂

6/24/21, 7:20 PM

That was an interesting Precident you set by having A⬤ block his Father. It was amusing, but unsurprising, to hear him explain that I was too "aggressive"

Sounds like more plagiarism. I told him that isn't a word he uses 😄 Gee whiz, I wonder where he got his narrative from?

The hypocritical behavior is beneath you, and you need to stop it. For our son's benefit, as well as the fact that I'm bored of you trying to get under my skin by doing petty things like having A⬤ block me for Father's Day.

Grow up, Jade. I ain't playing those games with you any more, and if you try to ratchet up your games to get me to react, it ain't gonna work out for you, or Justice.

So just stop the baloney or I will make a sandwich with mayonnaise and ketchup and rotten sausage and make you eat it.

Do not continue to come between me and our son.

Do not continue to impose your hate speech narratives about your feelings for me around our son.

He will see thru your
and Justice's games as time goes on, as I have cautioned you many times.

Cut the bullshit. Got it?

**54**

Messages - Jade Owen

6/25/21, 7:06 AM

I never told him you were aggressive. I said you were being abusive.
And, yes, I suggested that he block you after I found him laying down,
crying, in the middle of the day out of nowhere. There's no reason to say
the things you did the way you did. It was out of line and not
constructive. And, why did you need to bring Brianna into it? It sounded
like you had some shit to deal with that had nothing to do with him. Good
job pulling yourself together again. Because that was way out of line.

As for this dumb, vaguely threatening, text you sent me? Stop it. I'm not
playing games with you. I don't give a fuck about you. I just want to be
finished with the house, your car and the bills. I'm not holding on. In fact
you are still there, in that house, by my good graces. Your lease is up
next month. And, I don't want to be your landlord anymore. So you'd
better figure out something quick because this threat? It's not vague. I'm
over your bullshit and if you come for me I will take you down. And, I'll
never come between you and A⬤ because you'll find a way to do that on
your own. So, like I said, stop it.

And, because I know that you most likely can't, I'm blocking your number
now. Have a great day! 🖤

6/28/21, 8:04 AM

https://www.globalresearch.ca/lisbon-court-rules-only-0-9-verified-cases-
died-covid-numbering-152-not-17000-claimed/5748807

7/7/21, 9:39 PM

Do you have my Bosch belt sander?

7/7/21, 11:17 PM

No, I don't.

7/17/21, 5:55 PM

https://www.zerohedge.com/covid-19/worrying-me-quite-bit-mrna-
vaccine-inventor-shares-viral-thread-showing-covid-surge-most

Ruh Roh

7/18/21, 6:30 PM

Can I pick A⬤ up from his camp tomorrow to go paddle boarding? It's
supposed to be 79F and warm enough for swimming

Yes, that will be fun for him!

He will be at the loyal heights community center. Done right at 4pm.

**55**

Messages - Jade Owen

Roger

A⬤ just asked if he can come to your place tonight

Yes, of course. We will be home by 8:45. Does that work?

Sure

7/19/21, 12:48 PM

Are you definitely picking A⬤ up at 4pm today?

Ya why?

Just making sure.

I've left his swim trucks and swim shirt with him. Will you please make sure they come back with him. And, would you also make sure he brings his flip flops? Thanks.

Will you make sure he comes back with at least one of his sweatshirts?

Sure.

I let him wear my sweatshirts, but my drip isn't as cool

He has high standards for drip.

7/19/21, 5:29 PM

Be sure to text me before you head over to my house. I am running errands.

7/24/21, 8:51 PM

What do ya know? Total Recall?! Gee whiz, who could have possibly ever imaging that they were using a test NOT designed for diagnosis in a FRAUDULENT way to create the illusion of a pandemic?!

https://www.cdc.gov/csels/dls/locs/2021/07-21-2021-lab-alert-Changes_CDC_RT-PCR_SARS-CoV-2_Testing_1.html

7/25/21, 12:02 PM

I need your signature I think for signing over my FJ

**56**

**0405**

Messages - Jade Owen

.

> You have the Title at your house?

Yes. I need to go with you to the license place.

I am gone this next week. It'll have to wait until the first week in August.

7/26/21, 3:26 PM

> What's the monthly mortgage on 1716?

7/26/21, 5:08 PM

A little over $1,850. I can't rennet. Why?

A⬤ is playing a game online with his friends. I can drop him off afterwards.

> I will be home by 630

> Does that work?

No problem.

7/26/21, 6:54 PM

> I'm gonna run a quick errand. Door is unlocked

7/27/21, 7:23 AM

> The masking of our son needs to stop. It's an unapproved medical device according to law. it inhibits his oxygen intake. and requires the informed consent of both of his parents, which I cannot in good conscience grant.

> Unapproved = unauthorized according to federal law.

> I will be taking on the school district in a federal lawsuit if they persist in violating the law

> What they have been doing to the children is tantamount to state sanctioned child abuse. Not hyperbole

**57**

Messages - Jade Owen



Torture on the left/policy on the right.

This is from a federal lawsuit in the courts now

7/27/21, 10:07 AM

21 USC Section 360 bbb (3)

Masks and vaccines are Emergency Use Authorizations, for which there is no legal authority to require of any person in a public accommodation.... that includes schools, playgrounds, stores, courts, parks, courts....any place that is open to the public. Period.

To do so, without clearly articulated informed consent is a violation of federal law, as well as the Nuremberg Code that was used to sentence the Nazis.

As our son is legally my property (as well as yours) no EUA can be inflicted upon him without the express consent of BOTH of his parents.

I'm not looking to argue with you over this. I'm simply asserting my parental rights, as guaranteed by law, so that our son's health is prioritized.

That being said, I have allowed this to persist for almost a year and a half, and I am putting my foot down on the matter.

And to be clear, I'm not going to burden you with needing to step forward to protect his health vis a vis the school district or camps or anyone else.

I am happy and prepared to be the point person on this so that you don't have to deal with any uncomfortable situations, (with school or camps, etc) cuz I know that isn't something you like to do. Rest assured, I got this.

**58**

Messages - Jade Owen

7/30/21, 2:36 PM



telegram_video.mp4

"FACT" checkers
LOL

8/1/21, 5:51 PM



8/2/21, 8:44 PM

Hi!

What part about my not consenting to A_____ being forced to wear an emergency use medical device that is detrimental to his health and well being didn't you understand?

If you're going to persist, then I will proceed with a civil lawsuit.

Help yourself. Have fun!

Is this your refusal to stop requiring our son to wear a mask?

What about buying the house? And, paying me for all of the expenses you owe me? Like, car insurance and rent?

We're talking about our son

Yes, I refuse to listen to your ridiculous shenanigans about him wearing a mask.

AND, I want you to pay me what you owe me and to bury the house. I'm done dealing with your crap.

Buy. Or, bury. Whatever. I just want to severe our financial relationship.

**59**

Messages - Jade Owen

Ugh. Sever.

> Objecting to your Forcing our son to wear a mask is "ridiculous shenanigans"
>
> Got it

Bring on the civil lawsuit. I'd love you to try that one. And, just so you know I've got plenty of things to sue you for so go right ahead.

> Oh no. You got me there.



That's how I feel about your threats.

> No threat. Just letting you know that I will take it to the mat of legal remedy regarding our son's health, if you persist in forcing him to be subjected to experimental devices or procedures without my consent.
>
> It's just simple black and white law.
>
> You, apparently, believe that I don't know what I'm talking about. That's your mistake.



8/2/21, 11:48 PM

> Here's a corollary you may be able to understand.
>
> If I mandated that A⬤ wear a ball gag or a butt plug during my week with him, would you raise an objection that such mandating would be without your consent?
>
> Legally speaking.

> Same legal principle

**60**

**0409**

Messages - Jade Owen

For the ball gag ...
Degrading? Check
Restricts breathing? Check.
Makes eating difficult? Check.
Confers no viral protection? Check
Makes it difficult for other children to see his expression? Check.
Increase chance of bacterial pneumonia? Check.
Restricts exalation and increases CO2 inhalation?
Inhibits the respiratory purification process? Check.

Sounds like child abuse

But you're just being a good little German



8/3/21, 12:02 AM

Spineless and Ignorant because you're too afraid to honestly admit what is going on around you, because you're terrified of the truth and you feel too weak and powerless to do anything besides pretend it isn't happening.

Or, maybe you're just really THAT mentally incapacitated from years of inculcating blatant propaganda into your consciousness from NPR, Facebook, HuffPo and the echo chamber of your similarly brainwashed community ?

Who knows. The manifest result is what concerns me.

It's like the pathetic irony of your virtue signaling March for some lifetime criminal who got killed by the cops, but when the father of your son stands up for ALL of our rights, he's an annoyance, a disturbance, an embarrassment, worthy of derision.

Well, I wear that crown of thorns with a smile.

Unlike you, I don't need to fit in, in order to feel comforted and accepted by the hollow inclusion and belonging of conformity

**61**

Messages - Jade Owen

8/3/21, 8:59 AM

So, do YOU have legal grounds to OBJECT and DENY my authorization to make A⬛ wear a ball gag? In case you don't know, try asking an attorney versed in this area of law.

SPOILER ALERT: you do, indeed, have solid legal grounds to prevent such abuse.

In strict legal terms, our minor child is our property. Similarly, if we own a house together, if you endanger, threaten or damage the house, I have the foundation for a claim against you.

Respect our child's body, or the law will force you to comply.



PDF

6076ddcb96c12c1e6e611614_Mask-Public-Letter-Adult-1.pdf

Bring it. Or, shut up.

Okay

It will be both

There's no way to bring a silent lawsuit.

It will be loud

Lower oxygen levels promotes "systemic inflammation"

Is Eczema inflammatory in nature? Has his eczema worsened since he started wearing a mask 5 days a week at camp?

Duhhhhhh

Child abuser

One step up from a pedophile in my book

Okay, you're offensive and crazy. I'm muting you now. Have a great day!

8/3/21, 9:34 PM

https://www.instagram.com/p/CSINL1qpeuf/?utm_medium=share_sheet

https://www.instagram.com/p/CSINL1qpeuf/?utm_medium=share_sheet

**62**

Messages - Jade Owen

> Gee, how did this guy know all this LAST Summer?!

8/4/21, 2:06 PM

> Do you know why there are no long term studies on children wearing masks?

> Cuz nobody could get funding for study that involves CHILD ABUSE.

> https://www.mdpi.com/1660-4601/18/8/4344

> Read this study and tell me that you are okay with masking our son without my consent

8/5/21, 8:11 AM

> https://www.fda.gov/medical-devices/coronavirus-disease-2019-covid-19-emergency-use-authorizations-medical-devices/personal-protective-equipment-euas

> Putting a mask on a child is legally NOT APPROVED.

8/6/21, 12:22 PM

> https://twitter.com/austinkbf/status/1423415883259695105?s=10

8/18/21, 7:06 AM

> https://medicalkidnap.com/2021/08/17/singapore-teen-awarded-225000-for-heart-attack-caused-by-pfizer-covid-19-shot-while-more-than-half-million-covid-shot-injuries-in-u-s-get-nothing/

8/19/21, 1:07 AM

> https://twitter.com/aginnt/status/1428005302742487046?s=21

Text message
8/19/21, 1:07 AM

> 0 out of 1.8 million kids.

> Risks of vaxxes outweigh the benefits.

iMessage
9/13/21, 3:29 PM

A⬤ is not at school. I took him out for a doctors appointment. He told me you were planning on picking him up.

> Yes it's my parenting week.

**63**

Messages - Jade Owen

> What time do you want to drop him off?

> What is the doctors appointment for?

> I wish to speak with my son now

> Please quit interfering with my relationship with my son

I'm not interfering. He had a doctor appointment.

I'm not dropping him off. We have plans tonight.

I have no idea what you mean in regards to a parenting plan. As far as I can tell you ruined our agreements when you lied to the police about A███ running away.

A███ is available to talk via text or phone later. Tonight isn't a good night.

> It's my week. Put him on the phone

> The parenting plan is the parenting plan.

I'm not preventing him from talking to you. He can get your texts.

9/14/21, 8:32 AM

> Will you please have A███ call me now?

9/14/21, 1:13 PM

> Can you please send me the mortgage company, address and account number so I can make the mortgage payments on our house at 1716 N 128th ST, Seattle WA 98133?

> I asked you in email previously but didn't receive a response.

I'm putting together an offer for you to buy it. I'm no longer interested in owning the house you live in.

**64**

**0413**

Messages - Jade Owen

9/14/21, 4:40 PM

I would be happy to consider buying you out of your minority share in our house that we co-own at 1716 N 128th street. Please include a complete list of the records you have concern our down payments, monthly mortgage payments, and also my mortgage payments that I handed to you in cash since September 2020. Full records includes, but is not limited to, current mortgage balance, Lender, Title Company and a copy of the Title and Deed.

I know we still have to sit down to make a separate determination as to who owes who, and how much, for our financials such as : A⬤'s tutoring that I paid for all last school year, clothing, etc. as well as receipts I have for labor and materials..

Thanks!

9/14/21, 9:45 PM



From my heart to yours

Delivered

**65**

Honorable James L. Robart

FILED _____ ENTERED
_____ LODGED _____ RECEIVED

JUN 15 2023 CR

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. C12-1282JLR |
| Plaintiff, | PETITION FOR LEAVE TO FILE AMICUS CURIAE BRIEF |
| v. | |
| CITY OF SEATTLE | |
| Defendant. | |

## I.   INTRODUCTION

COMES NOW Petitioner Kurt Benshoof ("Petitioner") petitioning in good faith for leave from this Court to file an Amicus Curiae Brief in order to assist this case of significant public interest, to supplement the efforts of counsels for the United States of America, and to draw this Court's attention to evidence and authority that may otherwise escape consideration.

Whatever the original intentions of the Department of Justice may have been more than a decade ago, this is not an adversarial proceeding. In layman's terms, the parties are playing footsie under the table while they stage a dog-and-pony-show to deceive this Court and placate the public. The police officers have been blamed as the fall guys. The public is being gaslit.

PETITION FOR LEAVE TO FILE
AMICUS CURIAE BRIEF
Page 1 of 5

Kurt Benshoof, Petitioner
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

## II.   STATEMENT OF FACTS

Petitioner incorporates by reference as if fully restated herein the following documents:

1) *Benshoof v. Inslee, et. al.,* 2:22-cv-01281-lk (including all hyperlink Exhibits),

2) *Benshoof v. Keenan et. al.,* 2:23-cv-00751-RAJ (including Brief in Support, Affidavit in Support, and all Exhibits),

Petitioner states the following upon his information and belief and will testify under oath to all alleged herein.

Petitioner contacted numerous Department of Justice and City of Seattle ("City") attorneys two weeks ago by email to address these substantive issues.  No one from the Department of Justice nor the City responded to Petitioner.

Petitioner has vast personal knowledge acquired over the last three years, including firsthand witness information he is willing to testify to under oath, hundreds of gigabytes of video evidence, and thousands of pages of documents.  In aggregate, they constitute clear and convincing evidence that the City's senior leadership knowingly and willfully acted to enable, authorize, and promulgate biased policing against any member of the public who attempts to address the City's *de facto* policies violative of the Civil Rights Act of 1964.

Former Mayor Jenny Durkan ("Durkan") was the U.S. Attorney for the Western District of Washington when this $200,000,000 case was initiated.  Durkan created a Civil Rights Department in her office prior to becoming Mayor of Seattle.  Upon Petitioner's information and belief Durkan was well acquainted with the Civil Rights Act of 1964 upon her election as Mayor.

Despite Durkan's ostensible knowledge of, and commitment to, civil rights the City has spent the last three years systematically arresting and persecuting Petitioner.  Simply stated, it is the most extensive conspiracy to deprive a reverend of First Amendment rights secured by the

PETITION FOR LEAVE TO FILE
AMICUS CURIAE BRIEF
Page 2 of 5

Kurt Benshoof, Petitioner
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

**0416**

Constitution in the history of Washington state.  When such a pattern of conduct spans three years, two Mayors, and two City Attorneys, deductive reasoning produces the inescapable conclusion that senior City leadership continues to knowingly and willfully allow, enable, authorize or perpetrate systemic violations of the Civil Rights Act of 1964.

As a matter of spiritual and ethical principle, Petitioner acts as his brother's keeper regardless of gender, skin color, sexual orientation, religious belief, socioeconomic status, or political ideology.  With or for Seattle Police Department ("SPD") officers, Petitioner has played Dungeons and Dragons, attended potlucks, written letters of commendation, shared holidays and children's birthdays, bought flowers for dying loved ones, and offered moral counsel.  When appropriate, Petitioner has also filed Office of Police Accountability complaints to address matters of public concern.

SPD officers are not the problem plaguing Seattle.  SPD officers are trained to follow City *policies* even when those policies conflict with state or federal law.  Those policies have been promulgated by the City Attorney's Office.  Under policy directives of Peter Holmes and Ann Davison, by and through attorney liaisons with the SPD, police officers have been placed in the untenable position of either: 1) following City policies that violate state and federal laws, as well as our state and federal constitutions, or 2) violating City policies and facing reprimand or termination.

### III.  STATEMENT OF ISSUES

1. **Should this Court grant Petitioner leave to file an Amicus Curiae Brief in order to assist this case of significant public interest, to supplement the efforts of counsels for the United States of America, and to draw this Court's attention to evidence and authority that may otherwise escape consideration.**

Yes.  The public welfare and the interests of justice so require this Court's leave in order

PETITION FOR LEAVE TO FILE
AMICUS CURIAE BRIEF
Page 3 of 5

Kurt Benshoof, Petitioner
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

that there may be a full and open accounting of Petitioner's evidence and briefing as it relates to the instant case.

**2. Does Petitioner have an "axe to grind" with the City which would render Petitioner's briefing too prejudicial for this Court's consideration?**

No. If Petitioner has learned one thing it is that if the City is allowed perpetrate discriminatory policies against *one person*, the City will be allowed to discriminate against *any person*. The issues under consideration are the City's pattern of biased policing and the interests of the public good. Petitioner is simply the proverbial "canary in the coal mine" offering his uniquely voluminous experiential evidence.

## IV.    EVIDENCE RELIED UPON

Petitioner relies upon the following: *Benshoof v. Inslee, et. al.,* 2:22-cv-01281-lk (including all hyperlink Exhibits), *Benshoof v. Keenan et. al.,* 2:23-cv-00751-RAJ (including Brief in Support, Affidavit in Support, and all Exhibits).

## V.    ARGUMENT AND AUTHORITY

Although there is no federal rule or statute governing participation by amicus curiae at the district court level, see *United States v. Gotti, 755 F.Supp.* 1157, 1158 (E.D.N.Y. 1991), a federal district court has the inherent authority to invite participation by amicus curiae to assist the court in its proceedings. *United States v. Louisiana,* 751 F.Supp. 608, 620 (E.D. La. 1990); *United States v. Michigan,* 116 F.R.D. 655, 660 (W.D. Mich. 1987).

The decision to invite or accept participation by an amicus is committed to the sound discretion of the court. *Alexander v. Hall,* 64 F.R.D. 152, 155 (D.S.C. 1974). The classic role of the amicus curiae is to assist in a case of general public interest, supplement the efforts of counsel, and draw the court's attention to law that may otherwise escape consideration. *Miller-*

PETITION FOR LEAVE TO FILE
AMICUS CURIAE BRIEF
Page 4 of 5

Kurt Benshoof, Petitioner
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

**0418**

*Wohl Co., Inc. v. Commissioner of Labor and Indus.*, 694 F.2d 203, 204 (9th Cir. 1982); see also

*New England Patriots Football Club, Inc., v. University of Colorado*, 592 F.2d 1196, 1198 n. 3

(1st Cir. 1979) (historically, the role of an amicus was "to aid the court in resolving doubtful

issues of law").

There is no requirement that an amicus be disinterested. *Funbus Systems, Inc. v*

*California Public Utilities Commission*, 801 F.2d 1120, 1125 (9th Cir. 1986); *Hoptowit v. Ray*,

682 F.2d 1237, 1260 (9th Cir. 1982).

## VI.    CONCLUSION

For the reasons elucidated herein, Petitioner requests that this Honorable Court grant his

Petition for Leave to File Amicus Curiae Brief.

## VERIFICATION

I, Kurt Benshoof, do hereby declare that the foregoing is true and correct to the best of my

knowledge under penalty of perjury in the State of Washington.  Executed this 15th day of June in

the year 2023, in the city of Seattle, in the county of King, in the state of Washington.

I certify that this petition contains 1190 words, in compliance with Local Civil Rule 7.

By: _____/s Kurt Benshoof_____
      Kurt Benshoof *Pro Se*

kurtbenshoof@gmail.com
1716 N 128th Street
Seattle, WA 98133
Ph: (206) 460-4202

PETITION FOR LEAVE TO FILE
AMICUS CURIAE BRIEF
Page 5 of 5

Kurt Benshoof, Petitioner
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

**0419**

# EXHIBIT – P12B

Texts
Hermsen
(206) 460-4202

Messages - Owen Hermsen Hermsen

iMessage
1/3/22, 10:11 AM

Hi Kurt, Owen here (new number, moved back stateside recently).

I'm reaching out to you on behalf of Jade. She's asked me to discuss the transfer of the title of the FJ Cruiser to you, and given me power of attorney to do so.

She'd like to start that process by reconciling past outstanding payments from both of you. She said you paid for his schooling though the summer of '21 and knows she owes half of that.

She also has accounting that includes mortgage payments, car insurance and bills related to A⬤. She wants to settle up for all of that and then the car.

Would you be interested in this arrangement?

> Hi Owen!

He replied "Hi Owen!", that's a good start.

Ah shit sorry Kurt sent that to you.

I sent this to the wrong number a few days ago. Confused strangers!

> LOL. You rolled a 1 on your skill check

Constantly

Jade was also making fun of me for it, which is what I was sending her that for. Double 1s!

So, anyways, let me know what you think of that when you have a sec.

> Sorry to be a stickler, but do you have a signed and notarized power of attorney form?

> I can't have conversations with anyone that could appear like illegal third party convos with Jade, per the Family Law Court

> I could be arrested if I were to tell you "tell A⬤ I love him". Or, if I were to say "tell Jade I said happy new year."

No sweat, I totally get it. Yep I have that, can share it with you later if you like.

> Sweet. Just gotta play everything by the book.

**.299**

Exported from Seraph's Phone (FFWG1JT0N72J) on 4/29/23, 4:03 PM with iMazing by DigiDNA. Database date when extracted: 4/29/23, 3:50 PM

0421

Page 1 of 71

Messages - Owen Hermsen Hermsen

Yep, and that's good. We can make this official and easy as possible.

1/3/22, 4:31 PM

You can send me a scan or picture of it either to my phone or email kurtbenshoof@gmail.com

Will do.

Two adult non party witnessed signatures have the same legal effect as a notary. I know notaries can be a hassle.

1/6/22, 10:01 PM

So that you understand me best. A ████ is all that matters to me, being with him, learning with him, showing him the beauty of a pure heart, embodying compassion, taking responsibility for mistakes, being his dad, being his friend. He is everything to me. He is a part of me now and always. It makes me sob every day to know that he doesn't get to be with the sweetest, kindest, goofiest, most loving dad imaginable, warts and all.

all the "things" like cars and money and houses are naught but dust in the wind to me.

That's what's important indeed, and well said.

Btw been working my ass off but have the day off tomorrow: will send you the power of attorney copy and then we can discuss.

1/8/22, 6:38 PM

Hey Kurt I have some questions about the Power of Attorney form Jade sent me, gonna make sure all is hunky dory before sending it to you. Sorry for the delay.

Okay, Owen!

1/15/22, 6:23 PM

Hey Kurt, just sent you the power of attorney form all filled out etc.

Do you have a bit of time to discuss things in the next couple days?

Totes

When would work? Maybe tomorrow at noon if that works?

.300

Exported from Seraph's Phone (FFWG1JT0N72J) on 4/29/23, 4:03 PM with iMazing by DigiDNA. Database date when extracted: 4/29/23, 3:50 PM

0422

Page 2 of 71

Messages - Owen Hermsen Hermsen

1/15/22, 8:02 PM

If not, Monday morning perhaps

> Trying to schedule some PickleBall tomorrow but we can definitely meet up morning or mid day

Cool, sounds good. I'm free anytime after 11:30 until about 4.

1/15/22, 9:20 PM

> Brother Owen, I appreciate your willingness to facilitate amicable resolution in the fair interests of all. May I propose 1130am at Bitterlake community center tennis/PickleBall courts?

Very happy to help, and frankly honored to do so. I'll see you there and then.



1/16/22, 9:16 AM

> Could we do 1230 instead?

Yep, that's doable.



1/16/22, 12:20 PM

Hey, the lightrail schedule was messed up/delayed. Catching a Lyft up there now: might be 5-10 late sorry

> Ok

Here! Where ya at?

> Almost back went to grab different shoes

> Meet ya by the kiddy pool

Coolio

.**301**

Exported from Seraph's Phone (FFWG1JT0N72J) on 4/29/23, 4:03 PM with iMazing by DigiDNA. Database date when extracted: 4/29/23, 3:50 PM

Page 3 of 71

**0423**

Messages - Owen Hermsen Hermsen

1/16/22, 2:16 PM

I'm also open to buying her out of our house so that she can feel as much positive closure as possible. I do not wish for her to suffer in any way. The happier she is, the happier R⬤ will be.

Everything could be worked out amicably OUTSIDE of any court.

My suggestion would be that Jade and I both Motion the family law court to vacate the case entirely, as it will only piss our money away to litigate.

I would rather not sue her. I simply want R⬤'s rights and wishes to be honored with sincerity. He's old enough and smart enough to articulate his wishes.

We could simply sign an agreement to not litigate any past issues and move forward in respectful harmony, and if any parenting issue arise in the future to use mediation, if necessary. There is no need for any further conflict.

It would be a huge weight off of R⬤'s shoulders to witness his mother and father creating fair and peaceful resolution.

I'll forward that proposal.

.302

Exported from Seraph's Phone (FFWG1JT0N72J) on 4/29/23, 4:03 PM with iMazing by DigiDNA. Database date when extracted: 4/29/23, 3:50 PM

0424

Page 4 of 71

Messages - Owen Hermsen Hermsen

1/17/22, 12:38 AM

Greetings Brother Owen. Thank you again for taking time today to converse.

Here are estimates of costs to date. I do not, at this time, wish to go through receipts for a precise total.

Unilateral Costs (not split)
Car rentals: $17,000
Attorneys: $20,000
Supervised Visitation: $4,500
Subtotal: $41,000

Shared Expenditures
Tutoring/school supplies: $9200
House/Yard labor & materals & miscellany: $8,200

House Down payment:
$26,000 owed to me (I paid $67,000. Jade paid 15,000)

As long as there is ongoing litigation in family court, especially in light of the fact that her attorney has proposed unilateral conditions such as "if Kurt gets arrested with A⬤ then Kurt loses custody", I will not be entering into any agreement in which I give Jade money. This is because I already have evidence (SPD reports, body cam footage, and court transcripts) that Jade has been willing to commit perjury and lie to police in order to take my car, seize custody of R⬤ get me arrested and vindictively cause me immense suffering (as well as indirect suffering to R⬤) simply because I was trying to ensure Rune's physical safety.

As Family Law Court is not an impartial trier of facts when a mother is willing to lie, if Jade wishes to perpetuate litigation in Family Law Court, I will in response need to retain all remaining money for prolonged litigation.

I repeatedly proposed mediation in August, as well as communicating that wish to impartial third parties even after the first restraining order hearing.

If Jade wishes to continue exerting control over me and our son via the mechanisms of Family Law Court, I respect her choices and will honorably and truthfully respond in the best interests of R⬤

Furthermore, as Jade may still attempt to petition Family Law Court for either past (during the 4.5 months and counting that she took R⬤ from me) or future "child support", I am not comfortable disbursing any money whatsoever to her, so long as she retains that implicit, or explicit, option.

.303

Exported from Seraph's Phone (FFWG1JT0N72J) on 4/29/23, 4:03 PM with iMazing by DigiDNA. Database date when extracted: 4/29/23, 3:50 PM

Page 5 of 71

0425

Messages - Owen Hermsen Hermsen

1/17/22, 5:16 PM



.304

Exported from Seraph's Phone (FFWG1JT0N72J) on 4/29/23, 4:03 PM with iMazing by DigiDNA. Database date when extracted: 4/29/23, 3:50 PM

0426

Page 6 of 71

Messages - Owen Hermsen Hermsen

The narrative that Jade has promulgated to people that I "kidnapped R███ for three weeks" is a fabrication.

We alternated parenting weeks.
A███ was with me August 9-15th, yet I graciously let her have him for an overnight wedding Saturday August 14th, even after discovering that she had him jabbed without consulting me.

The following week, August 16-22, was indeed Jade's week. R███ chose on his own not to go back to her house. He did not wish to speak to her, in spite of my repeated coaxing. I took the time to explain to Jade and her mom that R███ was fine and needed time to process events. I eventually cajoled R███ into calling her, and Jade was so venemous in her attacks upon me that Rune literally walked away from the phone and I had to pick it up and tell Jade the phone call was over.

I also offered that Jade should come over to my house so we could ALL sit down and talk things over. She refused to.

The following week was MY week, August 23-29. R███ did not wish to see or speak to Jade.

The next week was Jade's week August 30-September 5.

Justice took my car and R███ on September 3.

On the morning of September 3rd, after R███ had come home and I had won the hearing to dismiss everything, I had to implore R███ to call Jade to let her know he was fine. I offered to drive him over to her house so they could spend time together. On my way to her house, the cops tracked me by my phone, pulled up and arrested me in front of R███ based upon Jade's lies.

Lastly, I will inform you that "Custodial Interference" which is what the cops accused me of, has an Affirmative Defense, which is——if I was trying to protect my son, and had alerted authorities, there is no crime. As I was both trying to protect R███ and had told multiple authorities of my concern for R███'s physical well being based upon explicitly stated laws, the allegations were false.

The irony is that it was okay (for Jade) to take him on a month long road trip against my wishes , some of which I could not even speak to him because she had him block my phone number, but when the roles were reversed and he did NOT wish to see or speak to her, that I was "kidnapping her son".

.305

Exported from Seraph's Phone (FFWG1JT0N72J) on 4/29/23, 4:03 PM with iMazing by DigiDNA. Database date when extracted: 4/29/23, 3:50 PM

Page 7 of 71

0427

Messages - Owen Hermsen Hermsen

> While I was not afforded the opportunity to present evidence and witnesses, or to cross examine Jade on the stand for her provable lies, if she chooses to continue with litigation of these matters, I welcome the opportunity to put everyone under oath, on the witness stand, and show a jury the entire truth of what has transpired the last 5 months.
>
> My car was stolen.
> I was threatened in writing by Jade.
> Jade lied to the courts and cops that she was R███'s sole legal guardian.
> My son was stolen from me with provable lies.
> The cops conspired (due to ignorance and their vendettas against me)
> The judges conspired, even denying me access to get my own case records to this day.)
> R███'s wishes to be with his loving father half time for the last 4.5 months was violated.
>
> I am not angry, nor do I sit in judgment of anyone, as I understand everyone has their free will to exercise.
>
> However, the law is the law, and the facts are the facts.

> If Jade chooses to continue to hold my stolen FJ Cruiser as a "bargaining" chip, the only rational conclusion I could come to is that she does not wish to be fair or reasonable, nor does she wish to honor R███'s wishes in these matters.

1/17/22, 8:35 PM

> I stand behind every word I say.
> $10,000 cash to anyone who can prove I have stated anything that isn't true.

> I have also sworn an unbreakable oath to my son that :
> 1) I will never raise my voice in anger at anyone in his presence
> 2) I will never do anything that would get me arrested in his presence
> 3) That I will honorably respect everyone and everything that is important to him.
> 4) That I will act in his best interests to the best of my ability

Hey Kurt, pardon the slow reply. I can't say anything to the other matters: it's all well beyond my understanding of this very complicated situation. All I'm authorized to do is to try to get the FJ Cruiser title back to you, and to settle up smaller charges between you and Jade that she feels are needed to make the car transfer.

I definitely understand that it's a whole connected ball of wax for you, and thanks for the explanation of that. I hope it can be worked out to the best possible outcome for both of you and R███.

## .306

Exported from Seraph's Phone (FFWG1JT0N72J) on 4/29/23, 4:03 PM with iMazing by DigiDNA. Database date when extracted: 4/29/23, 3:50 PM

Page 8 of 71

0428

It sounds like settling any costs in exchange for the vehicle title is not a thing you want to do separately from the other, bigger legal issues. Is that correct?

1/18/22, 12:17 AM

How much do I have to pay for the return of my FJ Cruiser?

What is the itemization of what Sister Jade is wishing recompense for?

Thanks again for your time, and whatever schedule you reply on is always fine with me.

1/19/22, 2:03 AM

Just a thought , though I understand your deflated duty is regarding my FJ cruiser.

As it seems in the best interests of both Jade and myself to mutually cut the material strings that are still entangling us, I would like to propose a potential solution.

Without getting into any more "who, what, why, how, etc" why don't we just find a dollar amount we both agree on to resolve everything.

No need for receipts or accounting or any of that. Just a mutual compromise $ number.

And with that, we can both move on in peace . The FJ is returned, the house title is transferred to my name, and we drop all of the family court stuff and just move forward as respectfully independent 50/50 co-parents.

Just a thought.

1/19/22, 8:04 AM

I'll pass that along. It's totally outside what I'm authorized to comment on for Jade.

But just a note from a practical perspective as an outside set of eyes (and again not speaking for Jade at all because I'm not authorized to help with anything but the car), you're right it does seem like dealing with everything as a lump -would- be easier; but also would require dealing with the legal paperwork etc. all at once and that's realistically still going to take weeks minimum.

Because you both need to be protected during that process, you still might want a few stages to the agreement, even if they happen over a couple weeks instead of months. Putting all that on one sheet of paper and making it take as little time as possible though is an excellent idea.

.307

Exported from Seraph's Phone (FFWG1JT0N72J) on 4/29/23, 4:03 PM with iMazing by DigiDNA. Database date when extracted: 4/29/23, 3:50 PM

Page 9 of 71

0429

Messages - Owen Hermsen Hermsen

1/19/22, 11:53 AM

Agreed.

1/20/22, 8:48 PM

Hello Brother Owen.

As I haven't heard any figures or offers from Jade, I will make an attempt.

$50,000 to resolve everything and move on in peace.

1/21/22, 8:10 AM

Hey Kurt, the delay has been my fault sorry. She gave me figures, I want to put yours onto a single document with hers, sorted with a couple stages for resolution.

My boss is out right now though so workdays at the metal shop have been long and kinda punishing, I had to punt the resolution stuff for you and Jade to this weekend if that's okay with you.

If not I can step on it.

(Normally I have Fridays off to do stuff like helping Jade and yourself, but I have been asked to do installs on Fridays this month and hooooly shit does that suck).

1/21/22, 3:33 PM

How much $ to get my FJ Cruiser back?

I'll have the two amounts next to each other this weekend. Still at work right now.

1/23/22, 11:32 AM

Brother Owen. I will be busy at visitation with A⬛ from 130-630 today. Looking forward to seeing what's on the table

1/24/22, 12:33 AM

I've spent another $2000 on car rentals since the overture was made, so if Jade is sincere about returning my FJ, it would be great to get this resolved

.308

Exported from Seraph's Phone (FFWG1JT0N72J) on 4/29/23, 4:03 PM with iMazing by DigiDNA. Database date when extracted: 4/29/23, 3:50 PM

Page 10 of 71

0430

Messages - Owen Hermsen Hermsen

1/24/22, 6:15 PM

Hey Kurt, working on this and need to know the scope of one thing:
when you say $50,000 to resolve everything, I assume that 50K does not
include anything towards buying her out of the house, correct?

50,000 to settle all claims and the house.

But I would really love to get my FJ back asap. It's my understanding
that she has had her $ of what she wants to return my FJ for many
months now, so that figure would seem to be simple to convey to me.

$50,000 me paying her that is

Okay, noted, thanks.

1/26/22, 8:42 PM

Hey Kurt, still ironing out details of costs for the stuff that needs to be
settled for the Cruiser title, but getting close (thank god). Realized that
we have a difference in how you and Jade are presenting shared costs.
She gives the split cost (ie only the half that you owe) while you give full
amounts . The figure you gave for schooling costs for A⬤ is $9,200. Is
that full cost I assume, not split cost?

Also she gives the following math for what that full cost should be. Take
a look and let me know if it seems accurate:

- Kurt paid Kyrrah $20/hr. A⬤ met with Kyrrah three times a week for two
hours each time starting in October of 2020 and ending in July of 2021.
That comes out to 43 weeks (+/- 1 week) which equals $5,160.
-Time 4 Learning (the homeschooling program we used) is $19.95/mo
for 10 months = $199.50.
- So, $5,160 + $199.50 = $5,359.50. Total cost of tuition
- Jade's half of that amount should be $5,359.50/2 = $2,679.75.

Brother Owen, as I stated previously, I'm not interested in debating line
items and the validity thereof, unless this needs to be litigated in open
court before a judge.

Case in point, I paid Kyrrah $40/hour after the first few tutoring sessions.
His mother, who was a teacher, advised that $20/hour tutoring was far
below market value and I concurred. Kyrrah is naturally generous and
loves A⬤ but I prioritize fairness in all matters.

**.309**

Exported from Seraph's Phone (FFWG1JT0N72J) on 4/29/23, 4:03 PM with iMazing by DigiDNA. Database date when
extracted: 4/29/23, 3:50 PM

Page 11 of 71

**0431**

Messages - Owen Hermsen Hermsen

Gotcha, thanks for that info. Getting into the weeds is annoying but can help her understand the costs. Makes it easier for me to put everything on one sheet of paper and hopefully make it easier for you both to agree what's there is all valid.

It's why I'm recommending pretty indisputable stuff like this get resolved before all the stuff that is more contentious gets handled. Gets you your car faster, gets Jade feeling like there's a path to resolutionx

> Totally bro-man

> I don't envy your onus. That's why I'm trying to make your experience conversing with me as simple and lighthearted as possible, while still being true to my forthright bluntness. LMFAO

> Honestly, bro, if we were up in a steampunk dirigible about 5,000 feet up, this whole thing would look sooooooo silly.

> Like kids arguing over a Tonka in the playground sand box

Loved "I don't envy your onus. That's why I'm trying to make your experience conversing with me as simple and lighthearted as possible, while still being true to my forthright bluntness. LMFAO"

That's true of most human experience! Still gets real sandy down here tho

How many sessions or weeks in with Kyrrah were you when you raised his rate (general area is fine)?

> I'd have to ask Kyrrah if he remembers exactly. I think it was 3

> Maybe 2

Coolio- sessions or weeks?

> Weeksies

> My precious

Got it. Okay I'll add that (to its pocketses)

> I still chuckle at the dwarf with the miner's hat candle cuz he prefers color

Hey man color is important in mines. So is lustre, reflectivity, etc.

> The Blue Flamers. I'm imagining a kerosene like oil lamp upgrade that burns bluish

## .310

Exported from Seraph's Phone (FFWG1JT0N72J) on 4/29/23, 4:03 PM with iMazing by DigiDNA. Database date when extracted: 4/29/23, 3:50 PM

Page 12 of 71

0432

Messages - Owen Hermsen Hermsen

Or propane like

Ankheg oil.

1/27/22, 6:24 AM

Loved "Ankheg oil."

Of greatest import to myself and my son is that, after nearly five months of forcible separation based upon provable lies and hearsay, that we are rejoined in physical reality.

I have provided her attorney with the requisite proof of court ordered classes, and further delay is further abuse to both my son and myself.

I requested of Jade six months ago that she provide me with her financial claims. Six months is absurd, even from a dirigible.

Well, I can't speak to that. I can say though that the current muddle is me trying to find an agreeable solution for both of you that prevents you both going to court and making things likely way worse for both parties. I've got the day off tomorrow and you'll have the numbers then. Gonna put your adjusted tuition numbers in and you'll have the amount for the Fj.

Each of you sees this as an inseparable whole and yourself as the injured party. To make it solvable you can work things into slightly more manageable bites (even just two big settle-ups should do it), and you're both going to have to set grievance aside during and after. On the hopeful side, each of you seems capable of that during non-frustrated moments.

Potential always abounds, awaiting its stage call. Brother Owen.

1/29/22, 3:06 PM

Hey Kurt, sent you a Google Doc with settlement proposal for the FJ and framework for the house and legal stuff.

Please review and let me know if you are okay with the first step. We can resolve that and work on the second step in the next couple weeks.

Cool.
I have zoom with A⬛⬛ at 330 but will get back to you afterwards

Okeydokey.

.311

Exported from Seraph's Phone (FFWG1JT0N72J) on 4/29/23, 4:03 PM with iMazing by DigiDNA. Database date when extracted: 4/29/23, 3:50 PM

0433

Page 13 of 71

Messages - Owen Hermsen Hermsen

> So that I understand correctly, if I pay Jade $19,107.80 she will return my FJ Cruiser and sign over the title, and if I don't pay her $19,107.80 she will continue to keep my FJ Cruiser (that I already paid her for in fiull many months ago) and refuse to sign over the title?
>
> Is this correct?

> Second question—-do you know what Jade omitted the cash payments that I handed her in 2020 that totaled AT LEAST $20,000? (I have to check my records. It may be $22,000.)

> *why not what

Yes, although I can't speak to anything paid for previously besides what's on that agreement.

She's asking for the first set of outstanding payments to be settled for $19K, before dealing with the other stuff that's more contentious (and I put a bunch of her stuff in that second set too, to get this done soon).

Those are in the value of the vehicle I assume. I could add the value of the vehicle and any previous payments but that would assumably wash out in the end yeah?

> It appears that she is trying to pretend I didn't give her &20.000 or $22.0000 cash last year for the mortgage😩

I'll ask her about that. I understood that this is the outstanding part of the mortgage.

> She refinanced the house around September of 2020 against my wishes and I need to see her verified mortgage payments between August 2019 and November 2019 because I think there was a grace period between refinancing in which no mortgage payments were required or made

> She's lying BIG TIME. I'm still digging through my paperwork, but just the following is enough to illustrate this.
>
> 8/27/19. $1000 cash .
>
> 10/28/20 I paid her $10,000 cash.
>
> 5/31/21 I paid her $12,000 in money orders.
>
> I also paid her almost $4,693.34 via cashiers check in 7/31/2020 so that she could lie to her lender and say I was renting my house.
>
> 11/1/2019 i paid her $1000 money order

> Looks like we need to go to court if that's how dishonest she wants to be.

.312

Exported from Seraph's Phone (FFWG1JT0N72J) on 4/29/23, 4:03 PM with iMazing by DigiDNA. Database date when extracted: 4/29/23, 3:50 PM

0434

Page 14 of 71

Messages - Owen Hermsen Hermsen

> Her "Kurt owes me $14,811.44" for "household bills" apparently includes the mortgage, as there is no way she paid $29,000 in groceries and clothes and miscellany that I owe her half of.
>
> And then she goes on to charge me for the mortgage on top of that?
>
> LMFAO.

I don't negotiate with liars

> I have zoom with A████ at 4pm. After that I will call you to discuss some things that, for today, are better not put in writing.
>
> If you can obtain the internet log in information for the loan care account so that I can verify the house payments that would be great
>
> I am more than happy to pay Jade for the insurance on my FJ. Beyond that, I can only laugh

Okay, I'll let her know all that.

I'll get pdfs of whatever you need.

I'm at an appointment 5-6:30, can call you after.

Wordup, Brother Owen

1/29/22, 6:53 PM

Still on Zoom with A████

Okeydokey. I'm booked the rest of the evening, won't have my laptop with me to take notes. I'll try you again Sunday or Monday.

Can I call you in 5mins?

.313

Exported from Seraph's Phone (FFWG1JT0N72J) on 4/29/23, 4:03 PM with iMazing by DigiDNA. Database date when extracted: 4/29/23, 3:50 PM

Page 15 of 71

0435

Messages - Owen Hermsen Hermsen

1/29/22, 8:29 PM

The $14,811 for "household bills" between June 2019 and July 2020 is going to require documentation. The notion that she spent $29,000 ——more than $2,000 per month—on shared food and clothes for A▮▮▮▮ and some Xmas presents (and a new back hatch for her canopy) is laughable.

But if we're going to get into the details as a condition of having my FJ Cruiser returned, I have thousands of dollars of similar expenditures to toss into this game.

The funny thing is, stealing my car and demanding payment for OTHER things as a condition of the return of stolen property may actually be felony extortion.

Oops.

I will have to look through my cel messages, but I already gave Jade some household receipts back in 2019 that she may have failed to enter into her accounting from June 2019-July 2020.

And as she was feeding Justice for much of 2019 out of our "shared groceries" the groceries will need to be split accordingly.

1/30/22, 3:16 PM

Due to Jade's cats, I'm also getting cost estimates for reupholstering both kitchen booths, the drywall upstairs, the damaged kitchen cabinet doors, and getting the cat door removed from the front door.

This isn't my first rodeo in life. I've been more than patient, competent, honest, and I am always fair, even with those who have attacked me with lies, threats and theft.

She can return my FJ Cruiser by 9pm Monday 1/31/2022, and hand over the title, or we can litigate every last crime and detail in court. It's up to her. Brother Owen.

If she chooses the second option, she will be buried in legal expenses before it even gets to a judgment for compensatory and punitive damages

I can write and litigate a Writ of Replevin and a state or federal lawsuit by myself. She can't.

.314

Exported from Seraph's Phone (FFWG1JT0N72J) on 4/29/23, 4:03 PM with iMazing by DigiDNA. Database date when extracted: 4/29/23, 3:50 PM

Page 16 of 71

0436

Messages - Owen Hermsen Hermsen

*"What day is today?" asked Pooh*

*"It's the day we burn this motherfucker to the ground." squeaked Piglet*



*"My favorite day." said Pooh*

1/31/22, 9:32 PM

Hey Kurt, I conveyed all that to Jade.

She replies that she does have receipts for everything on the document I sent you, and can share them as part of either settlement or court or whatever, if that would make a difference.

She also says the offer of $19,107.80 still stands until Friday Feb 4th. After that she'll sell the car. She said to tell you she would much rather resolve things satisfactorily for both of you.

Personally I think you're going to make that amount up in the house part of the separation tally, and it's not a bad deal when looking at the rest of what's going to get worked out between you (most of your claims went into the second part category, and it sounds like you have more to add).

But I am not you, or Jade, and have to respect whatever you two each choose.

Anyways, there's the info. I'm headed to bed, will be available in the morning.

2/1/22, 8:53 AM

Is it Hermson or Hermsen?

Hermsen

2/1/22, 5:32 PM

Selling stolen property? That's funny.

.315

Exported from Seraph's Phone (FFWG1JT0N72J) on 4/29/23, 4:03 PM with iMazing by DigiDNA. Database date when extracted: 4/29/23, 3:50 PM

0437

Page 17 of 71

Messages - Owen Hermsen Hermsen

I have no idea what the law is around this extremely complicated situation. I'm not here to help either of you in anything but communicating. Fucking hell man, it really sucks to

See things like this between you.

> It's pretty funny really.
>
> So she denied the list of payments I gave her. I take it?

> And my house expenditures don't count but hers do? LOL

> She has a fascinating personal code of ethics.

The stuff you sent me all ended up in that settlement, in the second step. I'm telling you, you have a lot of credit in the house part of things. Also the place has appreciated a lot.

Both of you have contentious stuff, it just seemed better to put all that together.

If that's a failure of organization, it's on my part.

Damnit I knew I should have finished the whole picture before sending it to you.

> Would you like to meet in person Thursday?

I've got stuff 6:30 am to 8:30 pm Thursday. Let me see if I can move anything.

> Her felony Extortion "offer" of $19,000 for my FJ cruiser does not reflect any changes from my informing her of my payment records, nor does it appear she is willing to compensate me for MY house expenditures.
>
> Did I miss something?

> Or we could do tomorrow evening after 8pm.

2/1/22, 9:10 PM

You guys are arguing some things from a really broad swathe of both your lives that could be made clearer and fairer with a spreadsheet. That's beyond the scope of what I can help you with, but it really seems like a good idea.

Maybe instead of court you guys should try a professional arbitrator. Have you two considered or discussed that before?

.316

Exported from Seraph's Phone (FFWG1JT0N72J) on 4/29/23, 4:03 PM with iMazing by DigiDNA. Database date when extracted: 4/29/23, 3:50 PM

Page 18 of 71

0438

Messages - Owen Hermsen Hermsen

> Whoa now. I'm just having fun. Not arguing. Just stating facts and asking questions😊

> I repeatedly proposed professional mediation before this all went crazy and even AFTER her first perjurous attempt at a restraining order. She refused.

> Liars have an aversion to mediation and court.

Hmm. Well, I hope she would consider it now. Would you still be willing?

I mean someone who splits estates for a living.

> Brother Owen....consider the last few days. She refused to acknowledge $2,000 in money orders and $10,000 in cash.

> How does one mediate lies exactly?

> The only forum for dealing with lies is under oath.

> And I doubt it's a coincidence that her attorney dangling the carrot of me getting A█████ back 8 days per month has gone deafeningly silent for 10 days as she tries to extort me for $19,000.

> I know her games better than anyone on this planet. That's just a fact.

Honestly I don't know that she doesn't include that stuff in the first few things she says you paid in the document I sent you. Similarly some of your own claims can be misunderstood on the other side. And I've lost track a bit as this has really spiraled outside the scope I thought it was.

This is why a pro arbitrator seems like a good match.

Being able to have a master table of payments, including ones you claim and she disputes, and vice versa, all alongside each other, really would help you see what claims are opposite versions of each other. Maybe some agreement could follow.

Having someone able and willing to sit with each of you through that, then make sense of it all, will be a lot more satisfying than doing it with lawyers in a winner-takes-all format.

> Shrug 'n' Chuckle.
> She's been doing everything she can to screw me every possible way for many months now, even when it hurts A█████. She ain't likely to change at this point.

.317

Exported from Seraph's Phone (FFWG1JT0N72J) on 4/29/23, 4:03 PM with iMazing by DigiDNA. Database date when extracted: 4/29/23, 3:50 PM

Page 19 of 71

0439

Messages - Owen Hermsen Hermsen

2/3/22, 9:23 AM

Brother Owen

1) Do you have a few minutes to meet up today?
2) What about extending negotiations to Monday 6pm?

Hey Kurt, would phone work?

Totes

Cool, thanks. I can call you after I get home about 17:00 if that will do.

Schwiiiiinnnnnng

Old skool

Great, talk to you then.

2/3/22, 5:26 PM

Hey, I'm gonna eat too. Call you at 6 if that's okay.

No problem.
Can we do 730 so I have time to zoom with Azhrael?

I'm busy after 7- talk now, if you don't mind me being on mute while actively munching

?

2/4/22, 8:48 AM

Hey Kurt, Jade has a lot of work to do this weekend, so she can get the notes on what exactly is in those receipts to me this Tuesday. We'll push back the decision for you guys on how to resolve this until Wednesday, if that works.

2/4/22, 7:14 PM

5 months without my son or my car, what's a couple more days, right?

2/5/22, 9:38 AM

I'm at the visitation for 930-130 Azhrael supervised visit and no sign of Jade/A████ or the visitation supervisor

Have you heard anything mr babysitter?

Nope, visitation center hasn't texted Jade yet. I'm waiting to drop him off.

.318

Exported from Seraph's Phone (FFWG1JT0N72J) on 4/29/23, 4:03 PM with iMazing by DigiDNA. Database date when extracted: 4/29/23, 3:50 PM

Page 20 of 71

0440

Messages - Owen Hermsen Hermsen

It's clear to pull up

It's a cluster fuck here today

Okeydokey

Black lady with a face diaper out front

Roger, dropped off. They'll give you extra time to make up for the delay.

Yay!

2/5/22, 8:48 PM

You rang?

Just an A█ question, already handled, all good.

Careful bro!  Didn't you get the memo that I'm a danger and a threat to him?

2/8/22, 5:27 PM

Brother Owen I am behind on my receipts due to extenuating circumstances but I did get a package from Emily to Jade in my mailbox by mistake (Emily's) today

I can't communicate that to Jade

I'll let her know both things, no sweat.

Can you get the receipts and tally by tomorrow?

Also watch out your little dude has at least two operational pokemon decks now. Y'all should play, it's actually a great resource game disguised as a fighting game.



2/8/22, 7:45 PM

Would you please send that package with A█ when you see him for visitation this weekend, Jade asks?

Sure that's what I told A█████ I could do on our zoom tonight

**.319**

Exported from Seraph's Phone (FFWG1JT0N72J) on 4/29/23, 4:03 PM with iMazing by DigiDNA. Database date when extracted: 4/29/23, 3:50 PM

Page 21 of 71

**0441**

Messages - Owen Hermsen Hermsen

Cool thanks.

2/10/22, 7:32 AM

Hey Kurt, unsurprisingly you and Jade are both taking a minute to get all the receipts figured. Can you get those to me by tomorrow? She is going to have hers to me by tomorrow, I'll look through them and send them your way.

I say unsurprisingly because it's a big task. I fucking hate receipts.

2/10/22, 5:30 PM

IKR?

I will have them over late tomorrow

Okay.

Thanks Brother Owen 🖤

Happy to help!

2/12/22, 3:30 PM

Heya Kurt, happy sunny Saturday. I forwarded Jade's detailed accounting to your email, check it out please.

She would like a reply by tomorrow (Sunday) night at 10 pm.

Do you have accounting/receipts as well?

Yes I have lots of receipts. She actually owes me.

Which makes her and Justice perpetrating felony taking of a motor vehicle. and subsequent attempts at felony extortion for said stolen vehicle. even more humorous.

They might want to lawyer up real quick

The grocery receipts total that I gave her during the 2019 time period she can scroll back and find her her phone text messages. I tossed that envelope of receipts after I texted her what she owed me.

Her half for that was around $1750 I think. but the exact amount is in her text messages

.320

Exported from Seraph's Phone (FFWG1JT0N72J) on 4/29/23, 4:03 PM with iMazing by DigiDNA. Database date when extracted: 4/29/23, 3:50 PM

Page 22 of 71

0442

Messages - Owen Hermsen Hermsen

> I don't have any intention filing a criminal complaint against you, or naming you as a defendant in civil litigation, but you will be called as a witness.

> That being said regarding STATE felonies, it's out of my hands with FEDERAL felonies

> It's out of my hands once it goes to a grand jury

Okay. If you change your mind by tomorrow eve at 10, let me know.

> I didn't say I'm not having fun playing along with Jade's Extortion game and providing receipts 💭

> It's felony extortion regardless of whether I owed HER for groceries or she owed ME. But the actual accounting will be a fun display of how even her and Justice's justification for stealing my car was without any merit whatsoever. .

> The accounting part is what will be hilarious to put on the 6ft x 4ft courtroom monitor screen when she's on the stand under oath. Can't wait

> Watching A█████ crying on Zoom Thursday night was heart breaking. Beyond words. Jade and Justice are literally abusing him by what they have been doing for 5 months and 9 days. It's breaking him. They don't give a fuck about what HE wants and needs.

> And when anybody does that to one of my kids, there is NOTHING I will not do to protect him. I will crawl naked across 1000 miles of glass for him.

> Their selfish, vindictive, criminal and abusive machinations are about to bite them in their asses like they never could have imagined.

> Best of luck to them finding an affordable attorney for federal district court

2/12/22, 6:20 PM

Clarification: are you saying you want the $1,750 knocked off the car settlement amount and would otherwise be okay with it? I'm guessing we could talk her into that.

.321

Exported from Seraph's Phone (FFWG1JT0N72J) on 4/29/23, 4:03 PM with iMazing by DigiDNA. Database date when extracted: 4/29/23, 3:50 PM

Page 23 of 71

0443

Messages - Owen Hermsen Hermsen

2/12/22, 8:33 PM

> Yes, the $1750 approximate amount for SHARED grocery and home expenses (meaning I spent about $3500), was provided to her long ago via text message before she provided me with anything on her end.
>
> Nobody has to talk her into anything. She can do whatever she wants to do and deal with the consequences.

> If she wants to pretend I didn't give her all of the cash I gave her, then we can bring the IRS and Nika, her CPA, into this matter in federal district court and put everyone under oath and fugue it out down to the last penny.

> Jade's attorney is under the illusion I live in a glass house. LMFAO. I am 100% in compliance with the IRS. Ain't my problem.

2/13/22, 10:49 AM

> Jade agreed in writing, which she will find in her phone text messages with me, to pay for half off the house materials during the time period in question for the Home Depot expenditures.
>
> Can she go into her Home Depot account and get print outs of what those purchases were exactly?

She has all of the receipts, probably. If you're willing to settle for the car, she would probably be willing to dig those out and photocopy them etc. Otherwise, I'm guessing she's not going to add that effort. Also you probably need to give her a detailed accounting like this last one she sent your way, before requesting specific receipts. If you're willing to do that, s

he would probably do the same.

> What I'm saying is that the last email itemization for Home Depot credit card charges she is billing me for 100% of them and she agreed in writing to pay HALF of expenditures for work on the house during the time period in question, which means her accounting needs to be amended

Sure, that makes sense. If you're willing to settle for the car, I'm guessing that would be something she would agree on.

I you would like to work that out, let me know by noon. I'm busy from 12:30 on with family-in-law stuff.

2/13/22, 12:49 PM

> I'm getting ready to go see A███████ 2-6

.322

Exported from Seraph's Phone (FFWG1JT0N72J) on 4/29/23, 4:03 PM with iMazing by DigiDNA. Database date when extracted: 4/29/23, 3:50 PM

Page 24 of 71

0444

Messages - Owen Hermsen Hermsen

> I've never been unwilling to pay something I owe anyone

2/13/22, 6:37 PM

> So, is Jade acknowledging the payments that I have made to her, both cash and money orders, that I provided a couple weeks ago?

2/13/22, 7:40 PM

She did in the first accounting she gave you, didn't she?

Regardless, she will knock the 50% of the Home Depot stuff off the car settlement, plus some change. That makes it $17K. Will you pay that? She wants a final decision about that by 10pm.

> The first accounting incorrectly listed $10,000 in money orders when it was $12,000 and she missed a payment of $10,000 cash, both of which I have recorded and provided the dates of payment.

> So, right there was $12,000 she hadn't accounted for

Anything that doesn't fit in here, settles with the house stuff. You could put the $10K in there.

> On Jade's line item side she bills for:
> 1) house mortgage
> 2) all the various things like food and ▅▅▅ clothes and classes, etc
>
> On MY side of line items, she acknowledged SOME of my payments, but omitted $12,000.
> That $12,000 I gave her was specifically for those line items on her side.
>
> It's not accounting if it's unilateral. 😂😂😂

So is that a no to the $17K and exchange of the FJ title then?

I just need to give her your yes or no by 10 pm.

> I didn't get an answer to my question yet.

I know you have other things to add. They will get added. We don't have time to redo the various claims right now.

Settle them with the house stuff.

> Is it correct that, as part of her Felony Extortion, she is unwilling to acknowledge my payments made to her specifically for the items she is trying to bill me for?

.323

Exported from Seraph's Phone (FFWG1JT0N72J) on 4/29/23, 4:03 PM with iMazing by DigiDNA. Database date when extracted: 4/29/23, 3:50 PM

Page 25 of 71

0445

Messages - Owen Hermsen Hermsen

> And is it correct that if I don't acquiesce to her unilateral accounting that she is employing as the quasi-legal basis for this felony extortion that she is threatening to sell my fully paid for FJ Cruiser, which would constitute felony selling of stolen property?

I think you are probably both saying similar things two different ways, and could hash it out in a more thorough settlement with a professional negotiator in between you who handles divorces. However, to get there you're going to have to settle the car thing.

I would highly recommend you settle the amount she's asking now, get the car, then add whatever on your side is not worked out here to the larger settlement.

> That's felony extortion. I've read the statutes

I have no idea, and I'm not here to say anything about it, just to pass whatever you two want to say to each other. I'm also pretty done with that. So should I tell her no about the $17K?

> So, none of my payments and receipts that she hasn't agreed to already matter? LOL

> If so, you should politely tell her to go ahead and sell my stolen FJ Cruiser and the stolen property inside my stolen car and we can let the authorities handle it.

You never gave me your other detailed receipts, after the broader statements you gave me a couple weeks ago. Most of those are disputable stuff, so they go in the second category alongside the legal bills etc.

> If she isn't willing to acknowledge the aforementioned $10,000 cash payment and the $2,000 in money orders that she missed when she recorded it as $10,000 in money orders instead of $12,000, there's no point in me emailing over the other receipts, as she clearly is not willing to be fair.

> That's her choice. She will have to deal with the consequences of her crimes.

.324

Exported from Seraph's Phone (FFWG1JT0N72J) on 4/29/23, 4:03 PM with iMazing by DigiDNA. Database date when extracted: 4/29/23, 3:50 PM

Page 26 of 71

0446

Messages - Owen Hermsen Hermsen

2/13/22, 10:46 PM

Brother Owen, I appreciate that you tried to do what you could to create some resolution with the few cards you were dealt.

But after more than five months of trying the path of patience to afford Jade and Justice the opportunity to be fair and act in the best interests of my son, the evidence speaks for itself.

Jade and Justice have subjected my son to illegal medical experimentation through coercion, restricted his breathing with experimental medical devices, committed felony theft of my FJ Cruiser, perpetrated felony extortion, felony perjury in court, made false statements to police, and is now threatening to commit felony sale of stolen goods.

Time's up. I will now do everything in my power to lawfully and truthfully address their crimes, both civilly and criminally. Everything you can imagine.

But if she wants an easy $100,000 cash, my offer still stands for her to just provide the factual evidence that the illegal medical experiment she subjected my son to was

1) a "vaccine" as legally defined by RCW 70.290.010 (10).
2) Didn't violate 21 CFR 50.23 and 50.24
3) Qualified as "informed consent"
4) Was proven "safe and effective"
5) wasn't a violation of the AMA code of ethics 2.1.1
6) Wasn't a violation of the Nuremberg Code

And I will give her even more money if she can provide factual evidence that:

1) She had a "financial interest" in my FJ Cruiser as required by the Revised Code of Washington, to take my FJ Cruiser without committing felony Unauthorized Taking of a Motor Vehicle.
2) She didn't commit felony extortion by threatening to sell my FJ Cruiser if I didn't pay her money
3) She didn't commit felony perjury in king county district court
4) She didn't violate 18 USC § 242 and 241 by violating my parental rights and property rights

Easy money, Jade!

She and Justice have fucked themselves six ways from Sunday

I don't care if daddy gets her the best Perkins Coie attorney in all of Seattle. The law is the law, and they're fucking toast. Ain't no amount of daddy's help gonna get them out of the legal hole they dug for themselves in their venomous hubris. Tick Tock.

.325

Exported from Seraph's Phone (FFWG1JT0N72J) on 4/29/23, 4:03 PM with iMazing by DigiDNA. Database date when extracted: 4/29/23, 3:50 PM

Page 27 of 71

0447

Messages - Owen Hermsen Hermsen

2/14/22, 9:10 AM

On hold with 911.  She better sell it quick 

Hey, she sent me some stuff late night last night. Hold your horses, I was going to call you on my break.

And if she does something stupid like put sugar in the gas tank. I will be checking for that too and filing charges as appropriate

Game on.  Too late

And I've got felony  complaints coming for Justice as well

They took it too far

"I couldn't sleep and I checked and Kurt did give me $12k in money orders on May 31, 2021. Which makes me wonder if he's telling the truth about the $10k, too.

Will you please ask him when he gave me the $10k cash? A date would be great but what was going on at the time would be better.

If he's right then I'd like to redo the accounting. It would mean he'd only owe me around $8k. I'd prefer not to discount the parking tickets and everything else I was letting go. But it probably makes it more feasible to get this done."

Kurt, I would recommend you not do that, I think you are close to getting exactly what you want, and facing way less opposition on all the other stuff.

Btw I would advocate for her to not include the parking tickets etc in this step, just as you put off other stuff.

So as I thought, you guys' aggravated communication lead to misunderstandings about similar payments, and one of the ones that you were insisting was there was not counted correctly. This is why you need a pro who can put all the payments for everything in a spreadsheet, so stuff like this $10K gets highlighted and worked out. I'm not that person, but I would appreciate it if you took a sec to consider this.

2/14/22, 10:53 AM

It's funny bro!  Lying criminals who abuse people will get exactly what they deserve.

There's no misunderstanding on my end.  It's quite clear she is a liar and criminal and so is Justice.  They're thieves and child abusers, and it will be proven in court

.326

Exported from Seraph's Phone (FFWG1JT0N72J) on 4/29/23, 4:03 PM with iMazing by DigiDNA. Database date when extracted: 4/29/23, 3:50 PM

Page 28 of 71

0448

Messages - Owen Hermsen Hermsen

> The 8 page criminal complaint specifically cites and explains the applicable laws and factually presents the evidence of their crimes. It's not opinion. It's legal fact

Okay, well I'm out of it then.

> Totally understandable bro. Thanks for your efforts. I know it was a thankless job 🙏

Sure thing.

2/16/22, 10:08 PM

Hey Kurt. Jade says she just doesn't want to deal with the car issue anymore, and she doesn't want to sell it. She wants to give you back the FJ and end the disagreement, and is willing to simply let whatever she was claiming go. You pay for the parking tickets and collections ($3500), and agree to end all the lawsuits, criminal complaints, etc. Then that's it, and you get the title.

I'm headed to bed but said I would relate that to you before I went to sleep. I'll check messages in the morning.

> I'm not willing to forego all claims for a car. I couldn't care less about a car. I care about my son having his Father's loving embrace. Period.

> I'd be happy to pay whatever I owe her for insurance and tickets, but until the custody case is dropped with prejudice, there will be no cessation of my legal pursuits, both criminal and civil.

2/17/22, 8:26 AM

The custody stuff is separate. We're talking about the lawsuits and complaints concerning the car only. Drop those, pay the tickets, and you can have the title.

Not doing so does not make the custody suits etc. any stronger.

And it will be one less tangled emotionally draining thing for both of you.

> Brother Owen, allow me to clarify something. I'm not negotiating.

> I played along for over a month to see if, after more than five months, Jade might start considering the welfare of my son, and the fact that I have been more than patient with her crimes and abuse.

> It's all out nuclear war. Good luck!

.327

Exported from Seraph's Phone (FFWG1JT0N72J) on 4/29/23, 4:03 PM with iMazing by DigiDNA. Database date when extracted: 4/29/23, 3:50 PM

Page 29 of 71

0449

Messages - Owen Hermsen Hermsen

We'll see how discovery plays out in court when she's required to provide her fraudulent tax returns that Nika knowingly aided her with.

We'll see how family law judges look at all of the internet documentation of Isobella and Solana.

It was amusing how they eventually tried to scrub Jade's internet footprint. That was an entertaining Spotify interview 😂

Running an international porn site too? Tsk Tsk.

That Tort Letter has numerous crimes listed, but that is far from a comprehensive list, and doesn't include Justice's or anyone else yet.

To me, child abusers are one step up from pedophiles.

Daddy's gonna be broke from the legal costs by the time I'm done nuking the lives of Jade and Justice. 🤍

Jade is ignorant when it comes to law. She might want to run her tort letter past a competent attorney before she deluded herself into thinking I don't hold all of the cards. I was just being gracious the last few months to give her an opportunity to come to her senses and quit abusing my son.

I'm about to sue half the judges in Seattle Municipal Court. Do you know how hard it is to get past judicial immunity? Very Hard.

But guess what? I set them all up for major lawsuits and, in their hubris, they fell for it. Cuz I'm just a silly conspiracy theorist pro se idiot 😂



Funniest part is I tell everyone what the law is ahead of time., and what will happen if they violate it. I'm forthright. Guileless almost.

Not my fault if people don't take me seriously ☐

.328

Exported from Seraph's Phone (FFWG1JT0N72J) on 4/29/23, 4:03 PM with iMazing by DigiDNA. Database date when extracted: 4/29/23, 3:50 PM

Page 30 of 71

0450

Messages - Owen Hermsen Hermsen

> Which, of course, removes the possibility they can claim ignorance later as a defense of their negligence.

> And I do it in writing. I texted Jade plenty. She was just too ignorant to realize what was occurring at the time. Her attorney has a steep hill to climb.

Okay, I'll relate that you're not willing to quit the lawsuits etc. specifically relating to the car.

> I'm getting son back, whatever it takes. I don't give af about anything else. And whoever I have to burn to the ground to get him, I will

The custody stuff's going to get figured out. Just trying to get the car untangled in the meantime.

Everyone would rather see you have the car. Just cut those particular suits and claims, pay for the tickets, and you have the car. It won't lessen any of your other claims.

> If she isn't returning my car and dismissing the family court case don't even bother texting.

2/18/22, 12:56 AM

> The really amusing thing about lying hypocrites is they're too stupid to think through the potential ramifications .

> Case in point, when Jade and Justice ((who posted a hilarious rant on Facebook after their failed attempt) tried to get me arrested by sending 9 cops to my house——based upon the lie that Jade knew A⬤ was at home still——they were also trying to get me arrested for lawfully growing cannabis.

> Well, here's the obvious (to anyone with a brain) problem with pursuing that angle of "logic". by falsely alleging that I am a criminal drug dealer, that implicitly means that Jade and Nika have been committing federal felonies to launder drug money every time I have given Jade money. Not to mention the amounts she has lied about and hidden from the IRS. That's the problem with signing a tax return when you're lying or hiding income.

> Tsk Tsk.

> Glass Houses are dangerous to live in😂

.329

Exported from Seraph's Phone (FFWG1JT0N72J) on 4/29/23, 4:03 PM with iMazing by DigiDNA. Database date when extracted: 4/29/23, 3:50 PM

Page 31 of 71

0451

Messages - Owen Hermsen Hermsen

2/18/22, 8:51 PM

https://meridian.allenpress.com/aplm/article/doi/10.5858/arpa.2021-0435-SA/477788/Autopsy-Histopathologic-Cardiac-Findings-in-Two

Every day more evidence is coming out of what I warned Jade about a year and a half ago.

This is why we have federal and international laws, covenants and declarations prohibiting medical experimentation upon children.

It's not even legal to do this to POW's for fuck's sake. Big time mistake.

Her attorney, Justice, the family court commissioners and judges are all complicit.

2/19/22, 1:49 PM

https://app.leg.wa.gov/rcw/default.aspx?cite=9A.72.120

Threatening to keep my FJ unless I drop criminal and civil complaints is another crime

Jade didn't ask that, I proposed it as a medium between what you each wanted. I've tried to do my best to relate what each of you wanted without anything inflammatory.

https://app.leg.wa.gov/RCW/default.aspx?cite=9A.76.175

Oops. Telling SPD she knew A⬛ was at my house to send 9 cops over to search my house was another crime

How much is she paying you to fall on her sword? LOL

You can do this through the courts man, but I really think you would both do better with a divorce arbitrator.

"Hey Kurt. Jade says she just doesn't want to deal with the car issue anymore, and she doesn't want to sell it. She wants to give you back the FJ and end the disagreement, and is willing to simply let whatever she was claiming go. You pay for the parking tickets and collections ($3500), and agree to end all the lawsuits, criminal complaints, etc. Then that's it, and you get the title."

Sure sounded like her terms

.330

Exported from Seraph's Phone (FFWG1JT0N72J) on 4/29/23, 4:03 PM with iMazing by DigiDNA. Database date when extracted: 4/29/23, 3:50 PM

Page 32 of 71

0452

Messages - Owen Hermsen Hermsen

I suggested that part because I thought you would find it vindicating of your position but still be acceptable to both parties, and save you both grief and legal wrangling. I still want to see both of you get a fair shake.

I really think you're both in a place where settlement is possible if you'd all chill and let someone professionally qualified and totally impartial settle it. Please consider it, if the court path doesn't work out. I wish you well, my man.

https://app.leg.wa.gov/RCW/default.aspx?cite=9A.76.100

2/19/22, 6:31 PM

I didn't realize you're parenting my son tonight

I don't want anything getting in the way of your being present with him so we can pick this back up after he's on a plane

Sure thing. Btw, I heard you beat him at trivia. Thank god, he wins at everything. Avenge us elderly folks!

We went a little easy on me. He was giving me reminders of "it was season 1, episode 7" 😂😂😂

I miss having that much available memory space.

.331

Exported from Seraph's Phone (FFWG1JT0N72J) on 4/29/23, 4:03 PM with iMazing by DigiDNA. Database date when extracted: 4/29/23, 3:50 PM

0453

Page 33 of 71

Messages - Owen Hermsen Hermsen

2/20/22, 10:43 AM

I'm not the one who lied on court.

I'm mot the one that TWICE weaponized a Temporary Restraining Order with LIES to seize total control over our son.

I'm mot the one who repeatedly refused to sit down and talk.

I'm not the one who repeatedly refused mediation.

I'm not the one who lied in court to prevent A⬛⬛ from being able to see—or even TEXT MESSAGE his parent

I'm not the one who coerced A⬛⬛ into an ongoing medical experiment that does far more harm than good.

I'm not the one who stole someone's car to extort money

I'm not the one who refuses to drop this bullshit family court case.

I'm not the one who LIED to police to have the other parent arrested.

I'm not the one who texted from A⬛⬛s phone to "Dad, today was scary. please don't come by mom's house". Pretending to be A⬛⬛

5 1/2 months I haven't even been able to text my son "I love you."

Mediation?! LMFAO. Jade has refused that for six months.

I'm not the one perpetuating the abuse of A⬛⬛ via the courts.

Jade could drop this case any day. But she hasn't.

.332

Exported from Seraph's Phone (FFWG1JT0N72J) on 4/29/23, 4:03 PM with iMazing by DigiDNA. Database date when extracted: 4/29/23, 3:50 PM

Page 34 of 71

0454

Messages - Owen Hermsen Hermsen

2/20/22, 12:24 PM

I warned Jade about her willful ignorance. I repeatedly proposed examining the factual evidence. I cited the law.

She assured me she would not inject A██████ behind my back.

She LIED about the most serious decision of our son's life.

And instead of sitting down to discuss this, she LIED again repeatedly to prevent me from having contact with my son.

She's going to have to live with the consequences of her deceit, her crimes and her child abuse for the rest of her life.

From Dr Clare Craig:

Some basic maths re children and covid:

If 0.0013% die with covid when infected then out of 76,923 infected kids, one will die. If you need to vaccinate 200 kids to prevent one infection then you need to vaccinate 200*76,923 = 15,384,615 to prevent one covid death.

Omicron is ⅓ as lethal in kids as delta. Therefore, that number becomes 46,153,846 need to be vaccinated to prevent one covid death.

Therefore, if more than 1 kid in 46M dies from vaccination, then you have net negative mortality.

References

https://twitter.com/ClareCraigPath/status/1495017738330382347?s=20&t=n9gSRCUs4_VezyFbGHtfjA

2/21/22, 4:03 PM

https://en.wikipedia.org/wiki/Parental_alienation_syndrome

.333

Exported from Seraph's Phone (FFWG1JT0N72J) on 4/29/23, 4:03 PM with iMazing by DigiDNA. Database date when extracted: 4/29/23, 3:50 PM

Page 35 of 71

0455

Messages - Owen Hermsen Hermsen

I was listening to the speaker phone conversation in August (after I had to cajole A_____ to call Jade). She venemously told him that I'm abusive. He immediately walked away from the call and refused to speak to her again, until Justice took him, and my car, on 9/3/21.

After I found out he was plagianzing his written assignments last Spring (not the first time, and his tutor and I had tried every communication approach to address this with him) I reprimanded him. Jade's and Justice's response was to tell Azhrael I'm an abuser.

She lied in court——contradicting her recorded statement to police in 2016—-and said that I pushed her. Well, the truth is, Jade repeatedly hit me in the face, and the ONLY thing I did was put my hands up to protect my face and tell her to calm down so she didn't wake A_____ up.

I have NEVER hit, pretended I might hit, or even pushed Jade.

She cited an incident in 2015 saying I banged A_____'s head against the wall. I addressed this with sworn testimony on 9/3—which the first Judge found more credible than Jade's lies. The truth was this:

It was MY parenting day. A_____ and I stopped by the house. Jade was belligerent (she was jealous about Sowande at the time) and tried to start a fight. So, I went to leave. A_____ in my arms, not wanting an argument in front of our son. Jade literally blocked the door so we couldn't leave and then chased me around the house trying to tear A_____ from my arms. Since I was running with a child AND trying to keep Jade from yanking him out of my arms, I accidentally bumped his head running down the hallway.

These are the sorts of examples of how Jade has tried to revise history and paint me as an abuser.

Jade and Justice have been filling A_____'s head with their venomous lies for months and months, trying to drive a wedge between my son and I.

The only thing it is going to do in the long run is show A_____ that they care more about hurting me, and my relationship with my son, than they do about the well being of A_____.

It's sad. Truly sad.

.334

Exported from Seraph's Phone (FFWG1JT0N72J) on 4/29/23, 4:03 PM with iMazing by DigiDNA. Database date when extracted: 4/29/23, 3:50 PM

Page 36 of 71

0456

Messages - Owen Hermsen Hermsen

And she tried to paint our arguments as somehow MY fault. In truth, I am the one who instigated the rule that if one of us feels like the discussion is unproductive, that the other parent must cease communication at that time. I made that rule because Jade would repeatedly perpetuate unproductive communication.

Well the last time we had an argument, Jade once again violated our agreed rule and kept yelling at me, even after I implored her to stop because A████ was in the other room.

Did I lose my cool? Yes I did. Total failure on my part. But what she fails to mention is that it never would have gone there if she hadn't violated our communication rule.

And her statement to the court about when we argue "A████ hides under her bed" narrative also neglects to acknowledge the fact that we were ALL sleeping in Jade's bed, so of course her bed is the one her would go crawl under to get away from OUR argument.

The argument we had before that one, I disengaged to make sure A████ was okay. He and I were sitting on the stairs going up to my room. I was in shorts. "Jade came up, threw her cat onto my legs, which clawed and bloodied them with scratches (that I have pictures of) and grabbed A████ and took him into her room and closed the door, shutting me out from my son.

THAT is the sort of bullshit Jade has been pulling for YEARS

She's a decent liar, especially when I'm not there to controvert her falsehoods, but her lies are going to be eviscerated once I put her on the witness stand under oath.

2/23/22, 12:46 PM



Seneff_costBenefit.pdf

.335

Exported from Seraph's Phone (FFWG1JT0N72J) on 4/29/23, 4:03 PM with iMazing by DigiDNA. Database date when extracted: 4/29/23, 3:50 PM

Page 37 of 71

0457

Messages - Owen Hermsen Hermsen

The data is only getting worse week by week.

Guess how many people just in WA state who were double jabbed have still "died of Covid"?

Over 1,500.

Remember when Fauci and the CDC and Biden were saying "the vax will prevent infection and transmission"?

Then their were "rare" "breakthrough" cases.

Then there were so many breakthrough cases they finally had to admit the jabs stop neither infection nor transmission.

So they changed their stories to "the vax keeps you from dying with Covid"

"It's a pandemic of the unvaccinated"

I warned about this back in 2020. Jade called me a conspiracy theorist. LOL. Cuz she can't discuss FACTS that controvert her BELIEFS in corrupt and criminal organizations like the CDC, and Pfizer.

All cause mortality in the vaccinated is WAY up the last six months, especially in the 18-49 age group.

Just you wait.....as all of the auto-immune disorders, myocarditis, thrombosis, etc starts really presenting itself.—-because not all of it is immediately obvious—-this will go down as the greatest crime against humanity in the history of earth.

It ain't hyperbole when I stated in writing that Jade subjected my son to a dangerous medical experiment in violation of state, federal and international law, and by the time a jury hears this case, people will be out for blood about this.

And I have the exact citation of federal law regarding this that requires BOTH parents to be consulted for Informed Consent.

She better get a REALLY good attorney

She and Justice are going to be begging for mercy by the time I'm done with them. And I'm just going to look at them and ask: "how long did you keep my stolen car? How long did you keep my beloved son from his Father?"

Too long for mercy.

.336

Exported from Seraph's Phone (FFWG1JT0N72J) on 4/29/23, 4:03 PM with iMazing by DigiDNA. Database date when extracted: 4/29/23, 3:50 PM

0458

Page 38 of 71

Messages - Owen Hermsen Hermsen

2/23/22, 2:42 PM

Pfizer has an abominable record of criminality. Bribing doctors, falsifying clinical trial data. Paid billions in damages.

Google Maddie Gray. She was in the child trials.

Pfizer didn't include Maddie Gray's case in their clinical trial report to the FDA....she's in a wheelchair for life. She quit the trial after becoming disabled. She was listed by Pfizer as having a stomach ache.

Who in their right fucking mind would ever subject their healthy child to an ongoing medical experiment by Pfizer?

The CDC, FDA, WHO....they're all corrupt revolving doors of BigPharma shills. Regulatory Capture on steroids.

2/27/22, 9:54 AM

Brother Owen.

Are you aware or f why Jade said that I only gave her $10,000 in money orders instead of the $12,000 I actually gave her?

Or why she omitted mention of the $10,000 cash I gave her?

If she hasn't, I will inform you. She signed her IRS tax return under penalty of perjury, with the assistance of Nika, who is now (im pretty sure) a partner at a law firm.

Jade is concerned about criminal liability for felony tax fraud, as well as the legal implications for Nika, and potentially Nika's entire law firm.

That's one of the problems with lying. One lie requires another. And another.

Jade owes it to our son to be honest and fair. If she continues to be dishonest and unfair, the consequences upon her relationship with our son will be one of her greatest regrets. He is smart and wise enough to see through her lies and witness her unfairness.

I do not wish that for either of them.

3/1/22, 11:16 AM

I have court documents that Brother Nathan Cliber doesn't want to receive. Would you, as power ranger of authority, like to receive them for Jade and pass them on to her, or should I have her served at her house?

**.337**

Exported from Seraph's Phone (FFWG1JT0N72J) on 4/29/23, 4:03 PM with iMazing by DigiDNA. Database date when extracted: 4/29/23, 3:50 PM

Page 39 of 71

**0459**

# EXHIBIT – P51A

SMC
669329
Benshoof Motion to Dismiss

**IN THE MUNICIPAL COURT OF THE CITY OF SEATTLE**

THE CITY OF SEATTLE,

          Plaintiff,

vs.

KURT BENSHOOF,

          Defendant

Case No.: 669329

MOTION TO DISMISS

      COMES NOW Kurt Benshoof ("Defendant" herein), by special appearance, not submitting to the court's jurisdiction, participating under threat, duress and coercion, who hereby moves this court to dismiss the above captioned case in SEATTLE MUNICIPAL COURT ("SMC" herein) Case No. 669329. The court is further requested to provide a full finding of facts and conclusions of law if the court denies this motion.

      Defendant is not an attorney; this Motion to Dismiss, "however unartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Also, a *pro se* Defendant's pleadings should be "liberally construed to do substantial justice." *Haines v. Kerner*, 404 U.S. 519 (1972).

MOTION TO DISMISS                         PAGE 1

"Where jurisdiction is challenged, it must be proven." *Hagans v. Lavine,* 415 US 528 (note 5) (1974).

"No sanction can be imposed absent proof of jurisdiction." *Standard v. Oleson,* 74 S. Ct. 768 (1954).

"If any tribunal finds absence of proof of jurisdiction over a person and subject matter, the case must be dismissed." *Louisville R.R. v. Motley* 211 US 149, 29 S. Ct. 42 (1908).

Violations of Due Process render any court proceeding, order, or adjudication *void ab initio.* Defendant will hereby show, in the following factual allegations, arguments, and points of authority, that SEATTLE MUNICIPAL COURT, must dismiss Case No. 669329, in the interests of fairness and equality under the law, the integrity of our judicial system, and the rights of Defendant.

## I.   LACK OF *IN PERSONAM* JURISDICTION

1. Defendant received a first-class mail letter on Monday November 14, 2022 when he walked to his mailbox, which is something Defendant only does a couple times per week, as it is hundreds of feet down the street from his home.

2. The letter inside, from Seattle Municipal Court, stated that Defendant would be subject to arrest if he did not make an appearance in the instant

MOTION TO DISMISS                                   PAGE 2

**0462**

case on November 16, 2022 in Courtroom 1102, 600 Fifth Avenue, Seattle, WA 98104.

3. Legal service of process to initiate a criminal action against defendant must comport with the statutory requirements of the Revised Code of Washington ("RCW" herein).

4. CITY OF SEATTLE ("Plaintiff" herein) did not provide Defendant with legal service of criminal process.

> **RCW 35.20.270 Service of criminal and civil process**
> (1)All criminal and civil process issuing out of courts created under this title shall be directed to the chief of police of the city served by the court and/or to the sheriff of the county in which the court is held and/or the warrant officers and be by them executed according to law in any county of this state.

5. As such, SMC does not have *in personam* jurisdiction to adjudicate the instant case.

6. Defendant was arrested for an alleged violation of an allegedly valid temporary parenting plan ("TPP" herein) issued in King County Family Court Case No. 21-5-00680-6 SEA.

7. Allegedly, the TPP prevented Defendant from coming within 1000 ft. of Jessica Owen, the mother of Defendant's minor son, A.R.W., and A.R.W.

8. Defendant has never been married to Ms. Owen or in a legal domestic partnership with Ms. Owen.

> **RCW 26.09.004 Definitions.**
> (4) "Temporary parenting plan" means a plan for parenting of the child pending final resolution of any action for dissolution of marriage or domestic partnership, declaration of invalidity, or legal separation which is incorporated in a temporary order.

MOTION TO DISMISS                                    PAGE 3

**0463**

9. The TPP was never agreed to by Defendant, nor signed by Defendant.

10. On, or around, August 11, 2022, Defendant tried to obtain confirmation that Case No. 21-5-00680-6 SEA had been dismissed after Defendant had served Judge Keenan with a notice that Family Court had no lawful jurisdiction over Defendant or A.R.W. filed a Notice of Withdrawal as named Respondent.

11. Defendant contacted the King County Superior Court Clerk's Office, who refused to confirm that there was a valid Temporary Parenting Plan restraining Defendant. King County Superior Court Clerk's Office told Defendant to contact SPD.

12. Defendant contacted SPD. Dispatch #34 refused to confirm that there was a valid Temporary Parenting Plan restraining Defendant. Dispatch #34 told Defendant to contact King County Superior Court Clerk's Office.

13. Defendant made a special appearance via zoom before Judge Gregory on November 16, 2022. Defendant informed the court that it lacked personal jurisdiction, pursuant to RCW 35.20.270.

14. Judge Gregory imposed $10,000 bail upon Defendant.

15. The prosecutor did not provide the court evidence of Plaintiff's compliance with the mandatory service of process requirements, pursuant to RCW 35.20.270.

16. The prosecutor admitted on the record that City of Seattle does not possess a valid TPP signed by Defendant.

MOTION TO DISMISS                                    PAGE 4

**0464**

17. Defendant has demanded four times, twice in court and twice by email, that Plaintiff provide the allegedly valid TPP, signed by Defendant, that Defendant allegedly violated on August 15, 2022.

18. Plaintiff has refused to provide Defendant with the allegedly valid TPP.

19. An invalid TPP constitutes exculpatory evidence that Plaintiff must provide to Defendant.

20. Defendant again made a special appearance via Zoom on November 22, 2022 before Judge Eisenberg.

21. Defendant again quoted RCW 35.20.270 and stated that the court does not have personal jurisdiction to proceed with.

22. Judge Eisenberg falsely asserted the court's jurisdiction without factual evidence of Plaintiff's compliance with RCW 35.20.270.

23. Judge Eisenberg issued a bench warrant for Defendant's arrest.

24. Defendant informed Judge Eisenberg that "exerting unauthorized control" over $10,000 of Defendant's money constitutes a violation of RCW 9A.56.030, a class B felony.

*WHEREFORE*, any and all charges regarding SMC Case No. 669329 must be dismissed with prejudice in the interests of justice, and the rights of Defendant.

MOTION TO DISMISS                    PAGE 5

**0465**

1    I, Kurt Benshoof, do hereby declare that the foregoing accounting of facts are

2    true and correct to the best of my knowledge.  Submitted this 28th day of

3    November, 2022.

4

5

6                              _____/s/ Kurt Benshoof_____

7                                   Kurt Benshoof

8                              By Special Appearance

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO DISMISS                           PAGE 6

# EXHIBIT – P51B
SMC
669329
Benshoof Motion to Change Venue

IN THE MUNICIPAL COURT OF THE CITY OF SEATTLE

| | |
|---|---|
| THE CITY OF SEATTLE, | Case No.: 669329 |
| Plaintiff, | |
| vs. | MOTION FOR CHANGE OF VENUE |
| KURT BENSHOOF, | |
| Defendant | |

COMES NOW Kurt Benshoof ("Defendant" herein), by special appearance, not submitting to the court's jurisdiction, participating under threat, duress and coercion, who hereby moves this court for a change of venue for SEATTLE MUNICIPAL COURT ("SMC" herein) Case No. 669329. The court is further requested to provide a full finding of facts and conclusions of law if the court denies this motion.

Defendant is not an attorney; this Motion to Dismiss, "however unartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Also, a *pro se* Defendant's pleadings should be "liberally construed to do substantial justice." *Haines v. Kerner*, 404 U.S. 519 (1972).

MOTION FOR CHANGE OF VENUE                    PAGE 1

**0468**

## I.   INCORPORATION OF MOTIONS & EXHIBITS

Defendant hereby incorporates the following documents formally by reference, as if all were fully set forth herein:

    A. Motion to Dismiss, filed on, or around, December 28, 2021, as well as the following Exhibits attached to said Motion to Dismiss:

    B. Exhibit A
    C. Exhibit B
    D. Exhibit C
    E. Exhibit D
    F. Exhibit E
    G. Exhibit F
    H. Exhibit G
    I.  Exhibit H
    J.  Exhibit I
    K. Exhibit J
    L.  Exhibit K
    M. Exhibit L

## II.   ASSEVERATED STATEMENTS OF FACT

1. Upon information and belief of Defendant, he has a right to move the court for a change of venue, in the interest of the fair and impartial adjudication of Case No. 669329.

> **RCW 10.25.070 Change of venue—Procedure.**
> The defendant may show to the court, by affidavit, that he or she believes he or she cannot receive a fair trial in the county where the action is pending, owing to the prejudice of the judge, or to excitement or prejudice against the defendant in the county or some part thereof, and may thereupon demand to be tried in another county. The application shall not be granted on the ground of excitement or prejudice other than prejudice of the judge, unless the

MOTION FOR CHANGE OF VENUE                    PAGE 2

affidavit of the defendant be supported by other evidence, nor in any case unless the judge is satisfied the ground upon which the application is made does exist.

2. Defendant also has the right to appear in person in any SMC courtroom to defend himself against a criminal charge.

3. Defendant's right to appear in person has been repeatedly denied by SMC, if he did not wear a face mask, or face shield.

> *Washington Constitution*, Article I § 22.
> RIGHTS OF THE ACCUSED:
> In criminal prosecutions the accused shall have the right to appear and defend in person, or by counsel, to demand the nature and cause of the accusation against him, to have a copy thereof, to testify in his own behalf, to meet the witnesses against him face to face, to have compulsory process to compel the attendance of witnesses in his own behalf, to have a speedy public trial by an impartial jury of the county in which the offense is charged to have been committed and the right to appeal in all cases:

4. Presiding Judge Willie Gregory, as well as Judges Anita Crawford-Willis, Faye Chess, Catherine McDowall, Adam Eisenberg, Damon Shadid, and Andrae Chin, have all violated Article I § 22 by denying Defendant's right to appear in person.

5. Furthermore, Judges Gregory and Crawford-Willis have utilized their denial of Defendant's right to appear in order to perpetuate an ongoing scheme to repeatedly accuse Defendant of "Failure to Appear" as a pretext for issuing tens of thousands of dollars of bench warrants.

6. Said bench warrants constitute a violation of Defendant's right to not be subjected to excessive bail.

MOTION FOR CHANGE OF VENUE                    PAGE 3

*Washington Constitution,* Article I § 22.
EXCESSIVE BAIL, FINES AND PUNISHMENTS
Excessive bail shall not be required, excessive fines imposed,
nor cruel punishment inflicted.

*WHEREFORE,* SMC Case No. 669329 should be moved to Snohomish
County in the interests of justice, and the rights of Defendant.

## III.   VERIFICATION

I, Kurt Benshoof, do hereby declare under penalty of perjury
under the laws of Washington state that the foregoing accounting of facts are true
and correct to the best of my knowledge.  Signed this 15th Day of November 2022.

_____/s/ Kurt Benshoof_____
Kurt Benshoof
By Special Appearance

MOTION FOR CHANGE OF VENUE                              PAGE 4

# EXHIBIT – P52

SMC
669329
Emails Outland

 **Gmail**

kurt benshoof <kurtbenshoof@gmail.com>

## $50,000 cash Offer + Turn myself in
2 messages

**kurt benshoof** <kurtbenshoof@gmail.com>
To: "Outland, Katrina" <Katrina.Outland@seattle.gov>, faiz.pirani@kingcounty.gov
Bcc: Eric.beseler@gmail.com

Wed, Jun 21, 2023 at 2:32 PM

Ms Outland,

While you have so far failed to 1) offer proof of your office's compliance with the statutory mandate of RCW 35.20.270, and 2)evidence that the Seattle Municipal Codes you have falsely alleged I violated are "laws"'applicable to the general public pursuant to Wash. Const. art 2 §§ 18; 19, and while you seem to believe that Wash. Const. art 1 § 14 does not prohibit a public servant, such as yourself, from "excessive bail," I'm going to give you another opportunity to conduct yourself as if you have a tenable legal position.

I've made this offer to Ms. Owen and several of their attorneys previously, yet they curiously refused to take me up on the offer.

A friend has offered to post a $50,000 cash prize for you and Ms. Owen. The conditions are simple. My friend hires the best expert polygraph analyst in Washington.
 Ms Owen and I are both subjected to eight (8) hours of examination and cross-examination regarding the alleged crimes, and the evidentiary foundation of those alleged crimes.

If I am lying about anything, the $50,000 is yours and Ms. Owen's. However, if everything I have said is true——which means Ms . Owen has been lying——then you drop all of the charges. Heck, I will also turn myself in as well!

Why wouldn't you take the offer, Ms. Outland?

For the same reason none of Ms. Owen's attorneys would take the "free" money?

You know Ms Owen is lying. You know that I know you know this.     Is that why you sound so uncomfortable in court, Ms. Outland?


--
In Truth & Spirit,
Reverend Kurt Benshoof


*"It's easier to build strong children than to repair broken men."*
---Frederick Douglass

*"It's amazing how much panic one honest man can spread among a multitude of hypocrites."*

---Thomas Sowell


**kurt benshoof** <kurtbenshoof@gmail.com>
To: "Outland, Katrina" <Katrina.Outland@seattle.gov>, "faiz.pirani@kingcounty.gov" <faiz.pirani@kingcounty.gov>, pwu@kingcounty.gov

Fri, Jun 23, 2023 at 8:22 AM

Ms. Outland,

This is to inform you of my concern that you once again knowingly and willfully violated Washington BAR Rules of Professional Conduct ("RPC") 8.4(c) on Friday June 16, 2023 by falsely asserting on the record in SMC case no 669329 before Judge Roache that I had committed another restraining order violation.

# 0473

If you were referencing the legal service of a federa summons upon Ms. Owen in U.S. District Court for the Western District of Washington case no. 2:23-cv-00751-RAJ, then it logically follows that you are asserting that Judge David S.Keenan was delegated the authority to effectively rewrite Fed.R.Civ.P 4, thereby criminalizing my effecting legal service of process through any adult non-party to the case.

That would be the judicial equivalent of a Bill of Attainder.

I've hoped that Appellee Keenan (9th Circuit case no. 23-35418) wouldnprovide me with the law which delegated him such authority, but neither he nor his attorney of record, Ms. Peggy Wu, has been able to provide me such evidence.  As such, it is my belief that David S. Keenan, while impersonal a judicial officer, committed an ultra vires act in the furtherance of an ongoing conspiracy to deny one or more of my rights in violation of 18 U.S.C. §§ 241; 242.

You are hereby afforded the opportunity to clarify or amend your slanderously false deceptions in violation of RPC 8.4(c). If I do not receive evidence clarifying and controverting my information and belief by 5pm today, June 23, 2023, I will presume that you have acted with mens rea in furtherance of the City of Seattle's ongoing criminal conspiracy to violate the constitutional prohibitions enumerated in our state and federal constitutions, as well as the Civil Rights Acts of 1871 and 1964.  In such event, I will be duty bound as a concerned citizen and crime victim to report your misconduct to the Washington state BAR Association, and the U.S. Attorney's Office.

[Quoted text hidden]

**0474**

 Gmail

**kurt benshoof** <kurtbenshoof@gmail.com>

## Witness Interviews of Ms. Owen and Mr. Benshoof
1 message

**kurt benshoof** <kurtbenshoof@gmail.com>
To: "Outland, Katrina" <Katrina.Outland@seattle.gov>, faiz.pirani@kingcounty.gov
Bcc: Eric.beseler@gmail.com

Wed, Jun 21, 2023 at 10:33 AM

Good morning,

There are several relevant questions to consider:

Would you please schedule a witness interview with *me* at your earliest convenience, Ms. Outland, regarding case nos. 669329; 671384?

As you, and your colleagues at the City Attorney's Office, are so clearly interested in truth and justice, it logically follows that you want to ask me questions in advance of trial, right?

Would any lawyer devoted to truth and justice jump at the opportunity to corner a dangerous, lying, racist, trespassing, thieving, misogynistic, threatening, abusive, violent criminal such as myself?

Surely, with your legal acumen you will get some priceless "gotcha" answers, right?

Or, are you going to avoid interviewing me for the same reason that you have obstructed Mr. Pirani's repeated efforts to conduct a witness interview with Ms. Owen?

Do you want the truth to come out?

If not, why not?

If it is true that "truth feels like hate to those who hate the truth," are you a hater?

Are you as amused by this clown show being staged by the City of Seattle as I am, Ms. Outland?

Your voice and expression in court today did not convey that.  You may want to work on your acting skills.

In Truth & Spirit,
Reverend Kurt Benshoof

*"It's easier to build strong children than to repair broken men."*
---Frederick Douglass

*"It's amazing how much panic one honest man can spread among a multitude of hypocrites."*
---Thomas Sowell

Date Printed 06/14/2023   Courtroom 1103   Digital Log 8:53   Hearing Date/Time 06/21/2023 08:30 AM   Type Master

City of Seattle, Plaintiff        Case Number                     Charge Doc Number              Judge JC
V.                                OPEN 669329                     915                            Prosecuting Atty KO
                                                                                                Clerk MCS/km
**BENSHOOF, KURT A**                                                                            Entry
                                                                                                Defense Atty ✓ PILANI
Defendant Number   192814   *DV*                                    [barcode]

Related Cases

☐ Probable Cause   ☐ B.T. Waiver   ☐ Jury Waiver   ☐ Appellate Rights   ☒ Defendant Appeared   ☐ I/C   Defendant Not Present
☐ Interpreter Language                                ☐ Interpreter Name   Via Webex

| Charge Number | Violation | Plea | Finding | Disposition | Fine | Suspended | Jail | Suspended |
|---|---|---|---|---|---|---|---|---|
| 1 | VIOL DV ORDR | NG | | | $ | $ | | $ |
| Amended To | | | | | $ | $ | | $ |
| | | | | | $ | $ | | $ |
| Amended To | | | | | $ | $ | | $ |
| | | | | | $ | $ | | $ |
| Amended To | | | | | $ | $ | | $ |
| | | | | | $ | $ | | $ |
| Amended To | | | | | $ | $ | | $ |

☐ Court maintains jurisdiction for _____ months
☐ Commited with credit for time served         ☐ Credit for previous time served         ☐ Judge authorizes work release
☐ To run concurrently with _____             ☐ To run consecutively to _____
☐ Other _____                                ☐ _____ In lieu of jail
☐ Bail Set $ _____                           ☐ Bail / Bond Exonerated
☐ Bail Reduced $ _____                       ☐ Bail/ Bond Forfeited         ☒ Warrant Amount $ 50,000   ☒ No PR
☐ Day Reporting _____                        ☐ Forfeiture Set Aside         ☐ Default Amount $ _____   ☐ Cash Only
                                               ☐ Reinstated                   ☐ FTA Default Judgment Entered
☐ PR ☐ Release                                 ☐ Appeal Bond $ _____        Reason No PR Def failed to
Conditions of Release _____                                                 appear in person.
                                               ☐ Warrant Quashed
                                    OTSK       Order Suspending Fines and Fees   ☐ S/F   ☐ Denied

| | | |
|---|---|---|
| ☐ NCLV No Criminal Law Violations | ☐ CDAT Drug/Alcohol TX & Follow up _____ | ☐ BRTH $ |
| ☐ CADD Report Address Change | ☐ ADIS Alcohol Drug Info School | ☐ CCFE $ |
| ☐ NVOI Do No Drive w/o Valid OL/Ins | ☐ DWIV Victims Panel | ☐ COST $ |
| ☐ ABST Abstain from Drugs/Alcohol | ☐ DVTX DV Treatment & Follow-up | ☐ CRAS $ |
| ☐ NARO No Alcohol Related Offenses | ☐ ANGC Anger Management Classes | ☐ CSFE $ |
| ☐ NDRO No Drug Related Offenses | ☐ MHDT Mental Health TX & Follow-up | ☐ DIAS $ |
| ☐ DONT No Breath Test/Blood Draw Refusal | ☐ MHCO Mental Health Conditions | ☐ DNAF $ |
| ☐ DDAA Do Not Drive After Consuming Alcohol | ☐ SSEX Sex Education Class | ☐ DVOA $ |
| ☐ IID Ignition Interlock Device ☐ Per DOL | ☐ HIVT HIV Test | ☐ DVPA $ |
| ☐ IIL Ignition Interlock License | ☐ DNAS DNA Sample | ☐ PPIA $ |
| ☐ COPL Obtain Valid Operator's License | ☐ TRAF Traffic School | ☐ PSFE $ |
| ☐ NOWP Possess No Weapons Forfeit | ☐ SELF Self Awareness Class | ☐ RCFE $ |
| ☐ NCOV Verbal No Contact | ☐ CSHS Community Service Hours | ☐ SIVF $ |
| ☐ NCOW Written No Contact ☐ AHO See Order | ☐ CREW Work Crew | ☐ STDC $ |
| ☐ SOAP Stay Out of Prostitution Area | ☐ PROB Probation ☐ Refer Back | ☐ WCFE $ |
| ☐ SODA Stay Out of Drug Area | ☐ Defendant ordered to report | ☐ WFEE $ |
| ☐ Other | ☐ | ☐ REST $ |

☐ City   ☐ Defense   ☐ Joint motion to continue          ☐ Granted   ☐ Denied   ☐ DOL Screen
☐ Time for Trial Waiver filed. New commencement date _____   DEFENDANT IS NOT CURRENTLY HELD
                                                              KING COUNTY CORRECTIONAL SYS
Dfns win to continue (City objects) - Denied
City win for bench warrant - Granted.        PER BAILIFF _____   6/21/23
& failed to appear in person for hearing.
☐ PSD/DSCP Report in court

Hearing Type _____   Next Court Date _____   Time _____   Court _____   ☐ MRA
31-081 clerk worksheet   ☐ Need not return if all conditions are met   ☐ Defendant must return   ☐ Continued on page 2









12/27/22, A.R.W.:



12/28/22, 12/29/22, A.R.W.:



12/30/22, 12/31/22, A.R.W.:



01/01/23, A.R.W.:



**0481**



## Service Request KITE | Only One Request Per Kite

Name: Kurt Benshoof     BA#: 2024-008067

9ELB-06

Date: 9/13/24   Time: 4pm   Location: 8ELA #2

| OFFICER | | TABLET | CELL PROPERTY |
|---|---|---|---|
| ☐ Wristband | ☐ Uniform | ☐ TABLET | ☐ CELL PROPERTY |
| ☐ Sandals | ☐ Blanket | ☐ PRO SE | ☐ SECURUS PIN |
| ☐ Court Date | ☐ Bail | ☐ MAIL ROOM | ☐ LEGAL COMPUTER |
| ☐ Release Date | | ☐ RECORDS | ☐ MAINTENANCE |
| | | | ☐ PROPERTY ROOM |

| RELIGIOUS | PROGRAMS | ACCOUNTING |
|---|---|---|
| ☐ Visit from Chaplain | ☐ School / GED | ☐ Balance _____ |
| ☐ Bible  ☐ Quran | ☐ Games / Cards | ☐ Release of Money |
| ☐ Torah  ☐ Other | ☐ SUD  ☐ NA / AA | **OTHER** |
| ☐ Calendar | ☐ Library Book | ☐ Voter Registration |
| ☐ Address Book | ☐ Courage to Change | ☐ Tort Claim Form |
| ☐ Head Covering | ☐ Veteran Programs | ☐ Vegan Diet |
| ☐ Prayer Mat | ☐ Book Club | **COMMISSARY** |
| ☐ Ramadan/Passover | ☒ Reading Glasses | ☐ Balance _____ |
| ☐ Halal / Kosher Diet | Strength: 1.0 | ☐ Reset PIN |
| ☐ Bible Study | | ☐ Other |

**Details of request, if needed:**

My glasses were stolen on
9/3/24 in 8SLB and the
captain did not retrieve them.

**Response:**

You were given
Glasses on 07/22/24

Use:
☐ Medical KITE
☐ Classification KITE
☐ Release Planning KITE
☐ Resident Handbook
page _____

Staff Name / # _____/_____     Date 09/16/24

F-530 (Rev. 7/24)          **0 0483** epartment of Adult and Juvenile Detention

# Service Request KITE — Check only 1 box per Kite

**Name:** KURT BENSHOOF  **BA#:** 2024-008067

**Date:** 7/4/24  **Time:** 12pm  **Location:** 59LB

| OFFICER | | |
|---|---|---|
| ☐ Wristband | ☐ Cup | ☐ RETURN CELL PROPERTY |
| ☐ Uniform | ☐ Pencil | ☐ SECURUS PIN  ☐ PRO SE |
| ☐ Sandals | ☐ Nail Clippers | ☐ SERGEANT  ☐ TABLET |
| ☐ Towel | ☐ Games, Cards | ☐ LEGAL COMPUTER |
| ☐ Blanket | ☐ Release Date ___ | ☐ MAINTENANCE |
| ☐ Court Date | ☐ Bail Amount | ☐ MAIL ROOM |
| | | ☐ PROPERTY |

| RELIGIOUS | PROGRAMS | ACCOUNTING |
|---|---|---|
| ☐ Chaplain Visit | ☐ GED | ☐ Balance ___ |
| ☐ Bible  ☐ Quran | ☐ School | ☐ Release of Money |
| ☐ Torah  ☐ Other | ☐ SUD  ☐ NA/AA | **OTHER** |
| ☐ Calendar | ☐ Library Books | ☐ Voter Registration |
| ☐ Address Book | ☐ Courage to Change | ☒ Tort Claim |
| ☐ Head Covering | ☐ Veteran Programs | ☐ Vegan Diet |
| ☐ Prayer Mat | ☐ Book Club | **COMMISSARY** |
| ☐ Ramadan/Passover | ☐ Reading Glasses | ☐ Balance ___ |
| ☐ Halal / Kosher | Strength: ___ | ☐ Reset PIN |
| ☐ Bible Study | | |

**Details of request, if needed:**

NEED PEN/PAPER/COMPUTER TO FILE PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO RCW 7.36

**Response:**

Order paper from Commissary.

**ONLY ONE ITEM PER KITE**

☐ Use Classification KITE  ☐ Use Medical KITE  ☐ See Attached
☐ See Resident Handbook, page # ___  ☐ Item Provided ___

**Staff Name / #** A. Williams  /  ___  **Date** 7/5/24

F-530 (Rev. 4/24)

# Service Request KITE | Only One Request Per Kite

**Name:** KURT BENSHOOF  **BA#:** 2024-008067

**Date:** 9/21/24  **Time:** 3pm  **Location:** 9ELB #6

| OFFICER | TABLET | CELL PROPERTY |
|---|---|---|
| ☐ Wristband ☐ Uniform | ☐ PRO SE | ☐ SECURUS PIN |
| ☐ Sandals ☐ Blanket | ☐ MAIL ROOM | ☐ LEGAL COMPUTER |
| ☐ Court Date ☐ Bail | ☐ RECORDS | ☐ MAINTENANCE |
| ☐ Release Date | | ☐ PROPERTY ROOM |

| RELIGIOUS | PROGRAMS | ACCOUNTING |
|---|---|---|
| ☐ Visit from Chaplain | ☐ School / GED | ☐ Balance _____ |
| ☐ Bible ☐ Quran | ☐ Games / Cards | ☐ Release of Money |
| ☐ Torah ☐ Other | ☐ SUD ☐ NA / AA | **OTHER** |
| ☐ Calendar | ☐ Library Book | ☐ Voter Registration |
| ☐ Address Book | ☐ Courage to Change | ☐ Tort Claim Form |
| ☐ Head Covering | ☐ Veteran Programs | ☐ Vegan Diet |
| ☐ Prayer Mat | ☐ Book Club | **COMMISSARY** |
| ☐ Ramadan/Passover | ☒ Reading Glasses | ☐ Balance _____ |
| ☐ Halal / Kosher Diet | Strength: 1.25 | ☐ Reset PIN |
| ☐ Bible Study | | ☐ Other |

**Details of request, if needed:** DUTY OF CARE, DOCTRINE!
The glasses you provided in July
were STOLEN on 9/6/24 and
jail staff refused to retrieve
them from the thieves in S8LB.

**Response:** Use: ☐ **Medical** KITE
☐ **Classification** KITE
☐ **Release Planning** KITE
☐ Resident Handbook page _____

YOU WERE GIVEN GLASSES
ON 07/22/24. IT IS YOUR
RESPONSIBILITY TO KEEP TRACK OF YOUR STUFF

**Staff Name / #** _____/_____  **Date** 09/23/24

F-530 (Rev. 7/24)  Department of Adult and Juvenile Detention

**0485**

# SERVICE REQUEST KITE

**RECEIVED** AUG 19 2024

**King County**
Department of Adult and Juvenile Detention

Name: Kurt Benshoof

BA#: 2024-0080967

Date: 8/17/24   Location: J143

Circle one (1) recipient per KITE:

- Officer ~ Sergeant
- Booking ~ Release ~ Commitments
- Property Room
- Department Records
- Commissary

- School / Education
- Chaplain / Religious Services
- Veteran Services
- Legal Computer Workstation
- Community Corrections Division

- Inmate Funds/Accounts
- Inmate Management & Services
- Mail Room
- Food Services
- Programs Office

**PRINT YOUR REQUEST:** Due to previously diagnosed carpal tunnel syndrome (requiring surgery) I cannot write dozens of pages of briefs as a pro se defendant and under the ADA and WLAD request a typewriter or word processor as a reasonable accommodation

**Response from Recipient:**

You will need to get a court order from the judge to allow this. if you're approved we must have a copy of that court order.

08/19

**0486**

**Service Request KITE** | Only One Request Per Kite

Name: Kurt Benshoof     BA#: 2024-008067

Date: 9/22/24   Time: 7:30 pm   RECEIVED SEP 23 2024   Location: 9ELB #6

| OFFICER | TABLET | CELL PROPERTY |
|---|---|---|
| ☐ Wristband ☐ Uniform | ☐ PRO SE | ☐ SECURUS PIN |
| ☐ Sandals ☐ Blanket | ☐ MAIL ROOM | ☐ LEGAL COMPUTER |
| ☐ Court Date ☐ Bail | ☐ RECORDS | ☐ MAINTENANCE |
| ☐ Release Date | | ☐ PROPERTY ROOM |

| RELIGIOUS | PROGRAMS | ACCOUNTING |
|---|---|---|
| ☐ Visit from Chaplain | ☐ School / GED | ☐ Balance_____ |
| ☐ Bible ☐ Quran | ☐ Games / Cards | ☐ Release of Money |
| ☐ Torah ☐ Other | ☐ SUD ☐ NA / AA | **OTHER** |
| ☐ Calendar | ☐ Library Book | ☐ Voter Registration |
| ☐ Address Book | ☐ Courage to Change | ☐ Tort Claim Form |
| ☐ Head Covering | ☐ Veteran Programs | ☐ Vegan Diet |
| ☐ Prayer Mat | ☐ Book Club | **COMMISSARY** |
| ☐ Ramadan/Passover | ☐ Reading Glasses | ☐ Balance _____ |
| ☐ Halal / Kosher Diet | Strength: _____ | ☐ Reset PIN |
| ☐ Bible Study | | ☐ Other |

**Details of request, if needed:**

Printing Paper, please.
I've been out of paper for
weeks & at trial.

| Response: | Use: ☐ **Medical** KITE |
|---|---|
| CONTACT DPD FOR | ☐ **Classification** KITE |
| FUNDING FOR SUPPLIES. | ☐ **Release Planning** KITE |
| THE JAIL DOES NOT PROVIDE | ☐ Resident Handbook |
| FREE PRINTER PAPER. | page ____ |

↓H     , RMS   9/23/24

Staff Name / #          Date

F-530 (Rev. 7/24)          **0487** Department of Adult and Juvenile Detention

| **Service Request KITE** | **Only One Request Per Kite** |
|---|---|

Name: KURT BENSHOOF   BA#: 2024-008067

Date: 9/24/24   Time: 7am   Location: GELB #6

| **OFFICER** | **☐ TABLET** | **☐ CELL PROPERTY** |
|---|---|---|
| ☐ Wristband ☐ Uniform | ☐ PRO SE | ☐ SECURUS PIN |
| ☐ Sandals ☐ Blanket | ☐ MAIL ROOM | ☐ LEGAL COMPUTER |
| ☐ Court Date ☐ Bail | ☐ RECORDS | ☐ MAINTENANCE |
| ☐ Release Date | | ☐ PROPERTY ROOM |

| **RELIGIOUS** | **PROGRAMS** | **ACCOUNTING** |
|---|---|---|
| ☐ Visit from Chaplain | ☐ School / GED | ☐ Balance ____ |
| ☐ Bible ☐ Quran | ☐ Games / Cards | ☐ Release of Money |
| ☐ Torah ☐ Other | ☐ SUD ☐ NA / AA | **OTHER** |
| ☐ Calendar | ☐ Library Book | ☐ Voter Registration |
| ☐ Address Book | ☐ Courage to Change | ☐ Tort Claim Form |
| ☐ Head Covering | ☐ Veteran Programs | ☐ Vegan Diet |
| ☐ Prayer Mat | ☐ Book Club | **COMMISSARY** |
| ☐ Ramadan/Passover | ☒ Reading Glasses | ☐ Balance ____ |
| ☐ Halal / Kosher Diet | Strength: 1.25 | ☐ Reset PIN |
| ☐ Bible Study | | ☐ Other |

**Details of request, if needed:**
DAJD staff FAILED to retrieve
my glasses from the violent thieves
in 8SLB on 9/6/2024. You will be sued.
STOP GASLIGHTING ME ☺

| **Response:** | Use: ☐ **Medical** KITE |
|---|---|
| You WERE GIVEN GLASSES on 07/22/24. | ☐ **Classification** KITE |
| | ☐ **Release Planning** KITE |
| | ☐ Resident Handbook page ____ |

Staff Name / # _____   Date 09/25/24

ADA VIOLATION

ADA VIOLATION KURT RECIVD 9/25/2024

# SERVICE REQUEST KITE

**King County**
Department of Adult and Juvenile Detention

PRO SE

Name: Kurt Benshoof    BA#: 2024-008067    Date: 9/3/24    Location: J143

Circle one (1) recipient per KITE:

- Officer ~ Sergeant
- Booking ~ Release ~ Commitments
- Property Room
- Department Records
- Commissary

- School / Education
- Chaplain / Religious Services
- Veteran Services
- Legal Computer Workstation
- Community Corrections Division

- Inmate Funds/Accounts
- Inmate Management & Services
- Mail Room
- Food Services
- Programs Office

RECEIVED 2024

PRINT YOUR REQUEST: TEEN  10x13 envelopes

| | | |
|---|---|---|
| TEN x POSTAGE LARGE ENVELOPES | (.06) = | .60 |
| TEN x MANILLA FILE FOLDER | (1.50) = | 15.00 |
| TWENTY x LEGAL ENVELOPE | (.18) = | 1.80 |
| | (.03) = | .30 |
| TWENTY x POSTAGE | (.50) = 10.10.0 | |

COST

Response from Recipient: TWENTY x POSTAGE

provided supplies.

M 9/4

SUB TOTAL = 27.70

TAX = 2.80

TOTAL = 30.50

DO NOT USE THIS KITE FOR MEDICAL ISSUES (Use a MEDICAL kite for Medical Service request)

KCDAJD F-530 Front (9/17)

**0489**

| **Service Request KITE** | **Only One Request Per Kite** |
|---|---|

**Name:** Kurt Benshoof   **BA#:** 2024-008067

**Date:** 9/18/24   **Time:** 9am   **Location:** 9ELB #6

| **OFFICER** | | |
|---|---|---|
| ☐ Wristband  ☐ Uniform | ☐ TABLET | ☐ CELL PROPERTY |
| ☐ Sandals  ☐ Blanket | ☐ PRO SE | ☐ SECURUS PIN |
| ☐ Court Date  ☐ Bail | ☐ MAIL ROOM | ☐ LEGAL COMPUTER |
| ☐ Release Date | ☐ RECORDS | ☐ MAINTENANCE |
| | | ☐ PROPERTY ROOM |

| **RELIGIOUS** | **PROGRAMS** | **ACCOUNTING** |
|---|---|---|
| ☐ Visit from Chaplain | ☐ School / GED | ☐ Balance _____ |
| ☐ Bible  ☐ Quran | ☐ Games / Cards | ☐ Release of Money |
| ☐ Torah  ☐ Other | ☐ SUD  ☐ NA / AA | **OTHER** |
| ☐ Calendar | ☐ Library Book | ☐ Voter Registration |
| ☐ Address Book | ☐ Courage to Change | ☐ Tort Claim Form |
| ☐ Head Covering | ☐ Veteran Programs | ☐ Vegan Diet |
| ☐ Prayer Mat | ☐ Book Club | **COMMISSARY** |
| ☐ Ramadan/Passover | ☒ Reading Glasses | ☐ Balance _____ |
| ☐ Halal / Kosher Diet | Strength: 1.0 | ☐ Reset PIN |
| ☐ Bible Study | | ☐ Other |

**Details of request, if needed:**

ADA request for reading
glasses for court. Thanks!! :)

**Response:**

YOU RECEIVED GLASSES

ON 07/22/24

Use:
☐ **Medical** KITE
☐ **Classification** KITE
☐ **Release Planning** KITE
☐ Resident Handbook
   page _____

**Staff Name / #** _____ / _____   09/18/24

**Date**

F-530 (Rev. 7/24)

**0490** Department of Adult and Juvenile Detention

## PRO SE WEEKLY COMPUTER SCHEDULE

| NAME: **BENSHOOF, KURT**<br>BA#:   **2024-008067** | YOU ARE SCHEDULED TO USE THE<br>**E-UNIT COMPUTER WORKSTATION.** |
|---|---|
| **THIS WILL BE YOUR WEEKLY SCHEDULE FOR THE DURATION OF YOUR PRO SE STATUS.** | **SUNDAYS, EFFECTIVE 8/18/2024**<br>**FROM 11:00 AM – 1:00 PM** |
| | **WEDNESDAYS, EFFECTIVE 8/21/2024**<br>**FROM 11:00 AM – 1:00 PM** |

**TO REQUEST A CHANGE TO YOUR SCHEDULE, YOU MUST SEND A KITE TO THE INMATE MANAGEMENT & SERVICES OFFICE.**

- IT IS YOUR RESPONSIBILITY TO INFORM THE DECK OFFICER ABOUT YOUR LAW LIBRARY SESSIONS.

- IF YOU ARE REHOUSED, PLEASE SUBMIT A KITE TO IMS REQUESTING AN UPDATED SCHEDULE.

Acknowledged: _____          Date: 8/15/24
*Pro Se* Defendant Signature

8/18/24 - arrived at 11:48am No printing ability. Kept glitching

**0491**



# King County
Department of Adult and Juvenile Detention

## Grievance / Response

**Resident:** BENSHOOF, KURT ALDEN
**Submitted On:** 9/6/2024

**Booking:** 2024-008067
**Facility:** Maleng Regional Justice Center

### Grievance Details:

| | |
|---|---|
| **Grievance #:** | 0924-038 |
| **Grievance Category:** | Programs |
| **Grievance Section:** | Resident Services |
| **Received On:** | 9/6/2024 |
| **Description:** | Not allowed access to computer/envelopes. |
| | *Please see documents tab for complete grievance* |
| **Who was Involved?** | |

### Response Details:

| | |
|---|---|
| **Respondent:** | J Anderson |
| **Response Due Date:** | 9/20/2024 |
| **Non-Grievable Response:** | |
| **Grievance Response:** | You were given a law library schedule and a discovery laptop. Unsure your complaint about not allowed access to a computer. You also ordered envelopes and were provided those. I spoke with you about being resonable with the amount you are requesting. |
| **Response Date:** | 9/11/2024 |

### Appeal Details:

| | |
|---|---|
| **Reason for Appeal:** | |
| **Appeal Date:** | |
| **Appeal Response Due By:** | |
| **Assigned to Staff:** | |
| **Non-Grievable Response:** | |
| **Appeal Response:** | |
| **Appeal Response Completed On:** | |

*Kurt received 8:30pm September 28, 2024*

**0492**



## King County
Department of Adult and Juvenile Detention

### Grievance / Response

**Resident:** BENSHOOF, KURT ALDEN
**Submitted On:** 9/6/2024

**Booking:** 2024-008067
**Facility:** Maleng Regional Justice Center

### Grievance Details:

| | |
|---|---|
| **Grievance #:** | 0924-043 |
| **Grievance Category:** | Programs |
| **Grievance Section:** | Resident Services |
| **Received On:** | 9/6/2024 |
| **Description:** | Legal computer/printer access. |
| | *Please see documents tab for complete grievance* |
| **Who was Involved?** | |

### Response Details:

| | |
|---|---|
| **Respondent:** | J Anderson |
| **Response Due Date:** | 9/20/2024 |
| **Non-Grievable Response:** | |
| **Grievance Response:** | This has already been addressed. |
| **Response Date:** | 9/23/2024 |

### Appeal Details:

| | |
|---|---|
| **Reason for Appeal:** | |
| **Appeal Date:** | |
| **Appeal Response Due By:** | |
| **Assigned to Staff:** | |
| **Non-Grievable Response:** | |
| **Appeal Response:** | |
| **Appeal Response Completed On:** | |

Kurt received
8³⁰ pm
9/25/2024

**0493**

# Service Request KITE

**Only One Request Per Kite**

**Name:** Kurt Benshoof   **BA#:** 2024-008067

**Date:** 11/15/24   **Time:** 4 pm   **Location:** IEUB #1

| OFFICER | | TABLET | CELL PROPERTY |
|---|---|---|---|
| ☐ Wristband ☐ Uniform | | ☐ PRO SE | ☐ SECURUS PIN |
| ☐ Sandals ☐ Blanket | | ☐ MAIL ROOM | ☐ LEGAL COMPUTER |
| ☐ Court Date ☐ Bail | | ☐ RECORDS | ☐ MAINTENANCE |
| ☒ Release Date | | | ☐ PROPERTY ROOM |

| RELIGIOUS | PROGRAMS | ACCOUNTING |
|---|---|---|
| ☐ Visit from Chaplain | ☐ School / GED | ☐ Balance _____ |
| ☐ Bible ☐ Quran | ☐ Games / Cards | ☐ Release of Money |
| ☐ Torah ☐ Other | ☐ SUD ☐ NA / AA | **OTHER** |
| ☐ Calendar | ☐ Library Book | ☐ Voter Registration |
| ☐ Address Book | ☐ Courage to Change | ☐ Tort Claim Form |
| ☐ Head Covering | ☐ Veteran Programs | ☐ Vegan Diet |
| ☐ Prayer Mat | ☐ Book Club | **COMMISSARY** |
| ☐ Ramadan/Passover | ☐ Reading Glasses | ☐ Balance _____ |
| ☐ Halal / Kosher Diet | Strength: _____ | ☐ Reset PIN |
| ☐ Bible Study | | ☐ Other |

**Details of request, if needed:**

MY BAIL - $420,000 was paid 11/10/24. When do I get my EHD release?

**Response:**

You have been ordered to Sentinel on SMC cases, an EHD with King County on Superior court case. You cannot be monitored on both therefore, new conditions of release need to be signed by the court. →

DeFolo   / 16480   11-18-24

**Staff Name / #**   **Date**

F-530 (Rev. 7/24)   **0494**   Department of Adult and Juvenile Detention

# INSTRUCTIONS   0495

All information at the top is required.

**Your KITE will not be answered if left blank.

Only one item allowed per KITE. Do not ask for more than one item per KITE. Use separate KITES for each request.

Check the box for the item or service you want.

Give additional information, if needed, in the Details box. Such as, strength of reading glasses, reason for Maintenance, reason for Kitchen, etc.

Do not write outside the box or along the edges of the paper.

Only send one KITE on the same subject. In most cases, it will take staff three or more days to respond to your request.

Be patient. Yours is not the only request staff are responding to.

Be polite and professional.

If you have an emergency, tell the officer or medical staff immediately.

If you need disability accommodation, fill out a Green KITE and write ADA Coordinator at the top.

Request to see a Sergeant only after you have tried talking with the officer.

*(handwritten margin notes)* SMC, Supervisor, court attorneys, ED), and central were all emailed on 11-15-24. All city was aware of this issue prior to posting bond. Must there is a six week wait list with End. SMC scheduled you for a court date on 12-2-24.

RETURN TO RESIDENT

# Service Request KITE

**Only One Request Per Kite**

Name: KURT BENSHOOF    BA#: 2024-008067

Date: 7/31/24    Time: 8 am    Location: SALB OSUAL4

| OFFICER | TABLET | CELL PROPERTY |
|---|---|---|
| ☐ Wristband ☐ Uniform | ☒ PRO SE | ☐ SECURUS PIN |
| ☐ Sandals ☐ Blanket | ☐ MAIL ROOM | ☐ LEGAL COMPUTER |
| ☐ Court Date ☐ Bail | ☐ RECORDS | ☐ MAINTENANCE |
| ☐ Release Date | | ☐ PROPERTY ROOM |

| RELIGIOUS | PROGRAMS | ACCOUNTING |
|---|---|---|
| ☐ Visit from Chaplain | ☐ School / GED | ☐ Balance_____ |
| ☐ Bible ☐ Quran | ☐ Games / Cards | ☐ Release of Money |
| ☐ Torah ☐ Other | ☐ SUD ☐ NA / AA | **OTHER** |
| ☐ Calendar | ☐ Library Book | ☐ Voter Registration |
| ☐ Address Book | ☐ Courage to Change | ☐ Tort Claim Form |
| ☐ Head Covering | ☐ Veteran Programs | ☐ Vegan Diet |
| ☐ Prayer Mat | ☐ Book Club | **COMMISSARY** |
| ☐ Ramadan/Passover | ☐ Reading Glasses | ☐ Balance_____ |
| ☐ Halal / Kosher Diet | Strength: _____ | ☐ Reset PIN |
| ☐ Bible Study | | ☐ Other |

**Details of request, if needed:**

I HAVE NOT RECEIVED ANY OF MY
PRO SE MATERIALS & NEED
ENVELOPES & STAMPS ASAP!

RECEIVED

| Response: AUG 09 2024 | Use: | ☐ Medical KITE |
|---|---|---|
| Hello, sorry such late reply. we are working to verify your status. once we confirm, if Pro se then we will urgently get you supplies to you. 7/12/24 | | ☐ Classification KITE |
| | | ☐ Release Planning KITE |
| | | ☐ Resident Handbook page _____ |

Staff Name / # _____    Date 7/12/24

F-530 (Rev. 7/24)    **0496**    Department of Adult and Juvenile Detention





# IN THE MUNICIPAL COURT OF THE CITY OF SEATTLE

THE CITY OF SEATTLE, PLAINTIFF

vs

Kurt Benshoof

_____, DEFENDANT

## Order on Criminal Motion

Case # 671384, 676175, 676207, 6

THIS MATTER having come before the undersigned judge of the above entitled court on the motion of the _____,
for _____,

It is hereby ORDERED that:

Defendant, who is representing himself, shall be granted a reasonable access to the RJC law room, a working computer and printer & paper (or a typewriter & paper), for research and ~~brief writing. Defendant shall have reasonable access to all pro se materials including~~ current WPIC. Defendant shall have access to digital discovery with regard to the above cases. Defendant shall also be allowed to purchase envelopes with postage from

_____

_____

_____

_____

DATED: 09/03/2024 _____

_~~aon~~_
Andrea Chin (Sep 3, 2024 14:57 PDT)
JUDGE

_Katrina Outland (Sep 3, 2024 14:49 PDT)_        54342

Attorney for Defendant    WSBA #

Assistant City Attorney    WSBA#

31-063   Order on Criminal Motion   June 2010

**0497**

5114



# IN THE MUNICIPAL COURT OF THE CITY OF SEATTLE

THE CITY OF SEATTLE, PLAINTIFF

vs

Kurt Benshoof

_____, Defendant

**Trial Setting Order**

676175, 671384, 669329, 678216, 656749, 675405, 656748, 676463, 676492, &

**Case no.** 6762 07 _____

## 1. SPEEDY TRIAL:

Expiration: 09/23/2024 ___ Agreed: ☒ City      Disagreed: ☐ City _____
                         ☐ Defense              ☒ Defense _____

## 2. DISCOVERY: All discovery obligations governed by CrRLJ 4.7 unless otherwise noted.

☐ Discovery is complete

☒ Discovery is incomplete; parties request the following case-specific orders:

dx is incomplete because the court allowed defendant to represent himself today, 8/5/24

_____

_____

_____

## 3. NOTICE OF SUBSTANTIVE MOTIONS:

☑ CrR 3.5

☐ CrR 3.6   Affidavit: ☐ filed today ☐ to be filed within 5 business days

☑ Other (Dolson, Prok, Speedy trial, Knapstad, etc.):

def: insufficiency of warrant to arrest; motions to dismiss

city: 3.5 res'd to trial court

## 4. TRIAL SCHEDULE:

☑ MOTION DATE: 09/03/2024 _____ Time: 1:30 ___ Court 1003 __

Moving party brief due: 08/13/2024 _ Response brief due: 08/26/2024 __

Defendant's presence ☒ is required.   ☐ not required.

READINESS DATE: 09/13/2024 _____ Time: 8:45 ___ Court 1103 __

Defendant's presence ☒ is required

☐ not required

TRIAL DATE: 09/17/2024 _____ Time: 8:45 ___ Court 1103 __

## 5. PRESENCE: Parties must appear in person for trials. Remote appearance is permitted for Readiness hearings, unless otherwise ordered by the Court. The failure of a defendant to appear at the scheduled hearing may result in the issuance of a bench warrant.

SIGNED IN OPEN COURT ON 08/05/2024 _____

_____          Noted _____          _____
City attorney, WSBA#____   Defense attorney  WSBA#____   Judge
                                                        Andrea Chin (Aug 5, 2024 15:55 PDT)

31-029   March 2023          **0498**



**King County**
Department of Adult and Juvenile Detention

# Grievance / Response

**Location: 09ELB-06L**
**Resident:** BENSHOOF, KURT ALDEN
**Submitted On:** 10/29/2024

**Booking:** 2024-008067
**Facility:** King County Correctional Facility

## Grievance Details:

| | |
|---|---|
| **Grievance #:** | 1024-251 |
| **Grievance Category:** | Programs |
| **Grievance Section:** | Resident Management Services |
| **Received On:** | 10/21/2024 |
| **Description:** | *Please see documents tab for complete grievance* |

I have a court order REQUIRING DAJD staff to grnat me:

"a working computer and printer & paper (or a type writeer and paper) for research and brief writing"
I am also to "have access to digital discovery and "shall be allowed to purchase manilla envelopes and postage"
NONE of these are bieng provieded an my pro se laptop with video discovery is now at MRJC

**Who was Involved?**

## Response Details:

| | |
|---|---|
| **Respondent:** | C Tringali |
| **Response Due Date:** | 11/9/2024 |
| **Non-Grievable Response:** | |
| **Grievance Response:** | Your electronic discovery materials were immediately transferred from MRJC, appointments have been scheduled for you to view your new discovery on a laptop, it has been explained that you need funds to purchase legal supplies, and the legal workstation has a printer that you have been regularly scheduled to use for weeks now. This grievance is unfounded. |
| **Response Date:** | 11/4/2024 |

## Appeal Details:

| | |
|---|---|
| **Reason for Appeal:** | |
| **Appeal Date:** | |
| **Appeal Response Due By:** | |
| **Assigned to Staff:** | |
| **Non-Grievable Response:** | |
| **Appeal Response:** | |

# King County
Department of Adult and Juvenile Detention

## Grievance / Response

**Location: 09ELB-06L**

**Resident:** BENSHOOF, KURT ALDEN

**Submitted On:** 10/29/2024

**Booking:** 2024-008067

**Facility:** King County Correctional Facility

## Grievance Details:

|  |  |
|---|---|
| **Grievance #:** | 1024-252 |
| **Grievance Category:** | Programs |
| **Grievance Section:** | Resident Management Services |
| **Received On:** | 10/21/2024 |
| **Description:** | *Please see documents tab for complete grievance* |

Pascal Herzer violated RCW 9A. 76.175, a gross misdemeanor, on 9/9/2024 before Judge Andrea Chin by claiming DAJD does not provide inmates with a computer with microsoft word. I soke with another inmate today who will testify that he has been provided with this access & an external hard drive.

**Who was Involved?**

## Response Details:

|  |  |
|---|---|
| **Respondent:** | C Tringali |
| **Response Due Date:** | 11/9/2024 |
| **Non-Grievable Response:** | |
| **Grievance Response:** | Temporary accommodations that may be ordered by a judge to address the specific circumstances of an individual do not constitute a change in DAJD policy. DAJD provides laptops for viewing discovery only and does not provide access to word processing software. |
| **Response Date:** | 11/4/2024 |

## Appeal Details:

|  |  |
|---|---|
| **Reason for Appeal:** | |
| **Appeal Date:** | |
| **Appeal Response Due By:** | |
| **Assigned to Staff:** | |
| **Non-Grievable Response:** | |
| **Appeal Response:** | |
| **Appeal Response Completed On:** | |

**0500**



## King County
Department of Adult and Juvenile Detention

# Grievance / Response

**Location: 09ELB-06L**

**Resident:** BENSHOOF, KURT ALDEN

**Submitted On:** 10/29/2024

**Booking:** 2024-008067

**Facility:** King County Correctional Facility

## Grievance Details:

| | |
|---|---|
| **Grievance #:** | 1024-250 |
| **Grievance Category:** | Programs |
| **Grievance Section:** | Resident Management Services |
| **Received On:** | 10/21/2024 |
| **Description:** | *Please see documents tab for complete grievance* |
| | I am being denied ProSe materials and computer access |
| **Who was Involved?** | |

## Response Details:

| | |
|---|---|
| **Respondent:** | C Tringali |
| **Response Due Date:** | 11/9/2024 |
| **Non-Grievable Response:** | |
| **Grievance Response:** | Unfounded. Same issues already addressed/responded in grievances 1024-251 and 1024-252. |
| **Response Date:** | 11/4/2024 |

## Appeal Details:

| | |
|---|---|
| **Reason for Appeal:** | |
| **Appeal Date:** | |
| **Appeal Response Due By:** | |
| **Assigned to Staff:** | |
| **Non-Grievable Response:** | |
| **Appeal Response:** | |
| **Appeal Response Completed On:** | |

**0501**

IN THE COURT OF APPEALS OF THE STATE OF
WASHINGTON
DIVISION ONE

In re Personal Restraint )
Petition of )
)        No. 86968-0
)
)        RESPONSE TO
)        PERSONAL
KURT BENSHOOF, )        RESTRAINT
        Petitioner. )        PETITION
_____)

A.    AUTHORITY FOR RESTRAINT OF PETITIONER.

Kurt Benshoof is restrained pending trial on felony

charges pursuant to King County Cause No. 24-1-02680-7

SEA. App. at 1-3, 6. The King County Correctional Facility

submits this response in accordance with the ruling of

Commissioner Koh on September 16, 2024.

B.    ISSUE PRESENTED.

Whether petitioner has failed to establish that his

conditions of confinement are unconstitutionally punitive where

**0502**

there are no restrictions on him other than those uniformly
applied and reasonably related to maintaining institutional order
and security?

C.   STATEMENT OF THE CASE.

1.  Procedural facts.

Kurt Benshoof was charged with felony stalking, and two
counts of attempting to elude a pursuing police officer on July
8, 2024. App. at 1-3. The stalking charge arises from a
"significant and unrelenting campaign of harassment of the
victim over many months despite no contact orders and
multiple warrants from the Seattle Municipal Court." App. at 4.
Release conditions were set by the court requiring a surety bond
or other surety or cash in the amount of $250,000. App. at 6.
Benshoof is currently housed in the King County Correctional
Facility ("KCCF") in restricted housing. App. at 14.

Benshoof waived his right to counsel on August 6, 2024.
App. at 9-10. However, on October 23, 2024, counsel was

reappointed for Benshoof. App. at 11. As of October 23, 2024,

trial is set for January 13, 2025. App. at 12.

    2. <u>Facts regarding confinement</u>.

Benshoof alleges the following restrictions on his

confinement:

> 1) That he is not allowed visitors;
>
> 2) That his "outbound" communications are blocked,
> including communications "with attorneys";
>
> 3) That "inbound" communications are blocked from
> numbers he previously called or attempted to call;
>
> 4) That his incoming mail is "blocked";
>
> 5) That he is being denied pen and paper; and
>
> 6) That he is being denied access to a typewriter,
> computer, printer and Internet.

Most of these allegations are simply false. There are no

restrictions on Benshoof's ability to receive visitors, receive or

send mail, use pencils, paper and envelopes or his ability to use

KING COUNTY CORRECTIONAL    3
FACILITY'S RESPONSE TO
PERSONAL RESTRAINT PETITION    **0504**

the phone.[1] App. at 14-16, 21-23. No jail residents are allowed

to receive "incoming" phone calls. App. at 15, 23. For obvious

security reasons, no jail residents are given a typewriter,

computer, or printer—large items that could be used to harm

others. App. at 16. Jail residents may use computer work

stations (that allow printing) and individual tablets for legal

research. App. at 16. No jail residents are given access to the

Internet; internet access carries an obvious risk that it would be

used to tamper with or intimidate witnesses, or obtain

information that could endanger institutional security. App. at

16. Benshoof's own filings demonstrate that he has access to

golf pencils[2] and paper, legal research and the ability to

communicate outside the jail.

---

[1] The days and times that all residents can receive non-attorney visitors is limited by housing location to provide all residents access to visitors. App at 14-15. Likewise, like all residents, Benshoof's access to the telephone is limited to his out-of-cell time. App. at 15.

[2] Regular  writing instruments such as ink pens present an obvious increased safety risk to staff and residents as they can be used as weapons against others or for self-harm. *See e.g. Corley v. Prator*, 290 Fed. Appx. 749 (5th Cir. 2008) (inmate

E.   ARGUMENT

Petitioner Has Failed To Show That He Is Being
Unlawfully Restrained.

To obtain judicial relief through a PRP, a person in

custody raising a constitutional challenge to the conditions of

confinement must show he is being unlawfully restrained

pursuant to RAP 16.4. *In re Pers. Restraint of Pauley*, 13 Wn.

App. 2d 292, 309, 466 P.3d 245 (2020). There is no dispute that

Benshoof is restrained.

Restraint is unlawful when the conditions or manner of

restraint are in violation of the state or federal constitution or

state law. RAP 16.4(c)(6). The petitioner bears the burden of

proving by a preponderance of the evidence, with competent,

admissible evidence, that his restraint is unlawful. *Pauley*, 13

Wn. App. 2d at 309. When evaluating a PRP alleging unlawful

---

stabbed herself with ink pen); *Aikens v. Houser*, 2016 WL
98134 (M.D. Penn. 2016) (inmate stabbed another inmate with
ink pen); *Gordon v. Harry*, 2020 WL 1159158 (W.D. Mich.
2020) (inmate stabbed by another inmate with an ink pen).

conditions of confinement, the court looks to the petitioner's current conditions of confinement. *See, e.g., In re Pers. Restraint of Gentry*, 170 Wn.2d 711, 715, 245 P.3d 766 (2010) (requiring petitioner to show that "he *is* unlawfully restrained") (emphasis added). An inmate can demonstrate unlawful restraint where he is subject to atypical and significant deprivations that differ from the "normal incidents of prison life." *Id.* (quoting *In re Pers. Restraint of Dyer*, 143 Wn.2d 384, 392-93, 20 P.3d 907 (2001)).

The Due Process Clause governs claims regarding conditions of pretrial detention. *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Under the Due Process Clause, a detainee may not be punished prior to adjudication of guilt. *Id.* However, a pretrial detainee can be subjected to restrictions and conditions of confinement so long as they do not amount to punishment. *Id.* at 536. Not every

---

These unpublished cases are cited as examples, not persuasive authority, pursuant to GR 14.1 and FRAP 32.1.

KING COUNTY CORRECTIONAL    6
FACILITY'S RESPONSE TO
PERSONAL RESTRAINT PETITION

**0507**

restriction amounts to punishment in a constitutional sense. *Id.*
Loss of freedom of choice and privacy are inherent incidents of
confinement. *Id.* As a result, "[m]any rights and privileges are
subject to limitation in penal institutions because of paramount
institutional goals and policies." *State v. Hartzog*, 96 Wn.2d
383, 391, 635 P.2d 694 (1981) (citing *Bell*, 441 U.S. at 545-46).

The distinction between regulatory restraints that may be
imposed and punitive measures that may not be imposed
depends on whether the restriction has a legitimate
governmental purpose. *Bell*, 441 U.S. at 538. Restrictions that
are reasonably related to the institution's interest in maintaining
jail order and security do not constitute unconstitutional
punishment. *Id.* at 540. The effective management of the
detention facility is a valid objective that can justify
restrictions. *Id.* Courts give jail administrators wide-ranging
deference in the adoption and execution of policies and
practices that in their judgment are needed to preserve order and
security. *Foss v. Dept. of Corrections*, 82 Wn. App. 355, 358,

KING COUNTY CORRECTIONAL     7
FACILITY'S RESPONSE TO
PERSONAL RESTRAINT PETITION

918 P.2d 521 (1996). As the U.S. Supreme Court has observed, courts are ill-equipped to deal with the "complex and intractable" problems of correctional facility administration. *Turner v. Safley*, 482 U.S. 78, 84, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).

To constitute punishment, a government action must: 1) harm the detainee and 2) be intended to punish him. *Houston v. Maricopa County*, 116 F.4th 935, 939 (2024). Courts have rejected pretrial detainees' constitutional challenges to "double-bunking," restrictions on hardcover books and restrictions on outdoor exercise. *Bell*, 441 U.S. at 541, 551; *Norbert v. City and County of San Francisco,* 10 F.4th 918, 922 (9th Cir. 2021).

In this case, the only restrictions that exist are those that are applied uniformly to jail residents, such as limitations on the days and time for receiving visitors, and limitations on the times for telephone usage. These restrictions have not been imposed on Benshoof individually. They are reasonably related to legitimate governmental purposes of institutional order and

KING COUNTY CORRECTIONAL   8
FACILITY'S RESPONSE TO
PERSONAL RESTRAINT PETITION

**0509**

security. They are not punitive measures, but reasonable

regulatory restraints. Benshoof has failed to prove that the

conditions of his pretrial confinement violate the Due Process

Clause.

F.    CONCLUSION

This consolidated petition challenging the

constitutionality of Benshoof's conditions of confinement

should be dismissed.

DATED this 19th day of November, 2024.

Respectfully Submitted,

LEESA MANION (she/her)
King County Prosecuting Attorney


*s/ Pascal Herzer*
Pascal Herzer, WSBA #42944
Senior Deputy Prosecuting Attorney
Attorneys for Respondent
Office ID #91002

W554 King County Courthouse
516 Third Avenue
Seattle, WA 98104
(206) 296-9650

KING COUNTY CORRECTIONAL    9
FACILITY'S RESPONSE TO
PERSONAL RESTRAINT PETITION

**0510**

1

2

3

4

5          IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

6                                    DIVISION ONE

In re Personal Restraint of KURT BENSHOOF,                )

7                                                          )      No. 86968-0
                                                           )
                        Petitioner,                        )
8                                                          )      DECLARATION OF GREGG
                                                           )      CURTIS
9                                                          )
                                                           )
10                                                         )
                                                           )
11                                                         )
                                                           )
12                                                         )
                                                           )

13          I, Gregg Curtis, declare as follows:

14          1. I am over the age of 18 and I am competent to testify as to the matters stated herein. I

15              am the Corrections Program Administrator for the King County Correctional Facility

16              ("KCCF").

17          2. Kurt Benshoof is currently housed in the KCCF in the East Wing of the 11th Floor in

18              restricted housing due to behavior issues.

19          3. Every KCCF resident is provided a copy of the Inmate Handbook, which provides

20              information about jail rules and privileges. Exhibit 1 is a true and correct copy of

21              excerpts from the 2024 Inmate Handbook.

22          4. All KCCF residents can receive non-attorney visitors on designated days and times

23              based on their housing location. Day and time limitations are necessary to allow all jail

DECLARATION OF GREGG CURTIS - 1                          **Leesa Manion (she/her)**
                                                          Prosecuting Attorney
                                                          CIVIL DIVISION, Litigation Section
                                                          701 5th Avenue, Suite 600
                                                          Seattle, Washington 98104
                          Appendix 014                    (206) 477-1120  Fax (206) 296-0191

Docusign Envelope ID: 6188F64B-A8DF-47A8-9697-7694FE69D1B5

1        residents equal access to visitors. Video visitation is also available for registered users

2        for a fee. KCCF has placed no restrictions on Benshoof's ability to receive visitors or

3        participate in video visitations.

4    5. All KCCF residents have access to telephones located in dayrooms during the hours

5        when they are out of their cells. Telephone calls are limited to 15 minutes. Residents

6        housed in the East Wing of the 11th floor spend approximately one hour per day in the

7        dayroom. KCCF has placed no restrictions on Benshoof's ability to use the telephone

8        in the dayroom to make calls.

9    6. KCCF does not allow residents to receive incoming calls, and jail staff do not take or

10       deliver telephone messages for residents. Only attorneys from the Department of Public

11       Defense can set up voice-mail boxes and leave voice-mail messages for their clients.

12    7. All KCCF residents have the ability to send and receive mail through the U.S. Post

13       Office. Indigent inmates are provided a packet that contains three postage-paid return-

14       addressed envelopes, three pencils, and three sheets of paper. Additional pre-stamped

15       envelopes may be purchased. For security reasons, general mail is opened by staff and

16       screened for prohibited content. Mail clearly marked "legal mail" is opened in front of

17       residents to confirm that it meets policy requirements, but is not otherwise screened if

18       confirmed to be legal mail. KCCF has placed no restrictions on Benshoof's ability to

19       send or receive mail.

20    8. All KCCF residents are allowed to have paper, golf pencils and approved envelopes,

21       as well as legal material that has been examined for contraband, except residents

22       evaluated to be at risk of suicide are not given golf pencils. Residents who are pro se

23       in criminal cases, civil cases involving conditions of confinement, civil rights

DECLARATION OF GREGG CURTIS - 2

Leesa Manion (she/her)
Prosecuting Attorney
CIVIL DIVISION, Litigation Section
701 5th Avenue, Suite 600
Seattle, Washington 98104
(206) 477-1120  Fax (206) 296-0191

complaints, habeas corpus or personal restraint petitions are provided a one-time provision of supplies free of charge. If more supplies are needed, residents may purchase them through the commissary. KCCF has placed no restrictions on Benshoof's right to be issued pro se supplies or his ability to purchase additional supplies.

9. KCCF residents are not allowed typewriters, computers, printers or access to the Internet either in their cells or in the dayrooms. KCCF has computer workstations for residents for legal research. The computer workstations have access to legal software for purposes of conducting legal research. Residents who are representing themselves have priority access to these workstations, and are authorized to use the printer for case preparation only. KCCF has placed no restrictions on Benshoof's access to these workstations.

10. Most KCCF residents are issued a computer tablet on which they can view content from a secured server. These tablets also have access to the legal software for purposes of conducting legal research. For security reasons, none of the tablets have access to the Internet. Benshoof has been issued a computer tablet.

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

Signed this 13th day of November, 2024, at Seattle, Washington.



GREGG CURTIS

DECLARATION OF GREGG CURTIS - 3

Leesa Manion (she/her)
Prosecuting Attorney
CIVIL DIVISION, Litigation Section
701 5th Avenue, Suite 600
Seattle, Washington 98104
(206) 477-1120  Fax (206) 296-0191

*PRP for Azhkael to Court of Appeals?*

**ERIN L. LENNON**
SUPREME COURT CLERK

**SARAH R. PENDLETON**
DEPUTY CLERK/
CHIEF STAFF ATTORNEY

# THE SUPREME COURT
## STATE OF WASHINGTON

**TEMPLE OF JUSTICE**
P.O. BOX 40929
OLYMPIA, WA 98504-0929

(360) 357-2077
e-mail: supreme@courts.wa.gov
www.courts.wa.gov

*9-4 MF
lunch 12-1 pm*

*USPS*
*360 357-2077
PO BOX 40929*

July 25, 2024

*Temporary Address   Fed Ex
UPS
243 Israel Road SE
Tumwater, WA 98501*

Kurt Alden Benshoof
B/A # 2024-008067
King County Correctional Facility
500 Fifth Avenue
Seattle, WA 98104

Re:    Writ of Habeas Corpus

Mr. Benshoof:

On July 22, 2024, the Supreme Court received via email from Brett Fountain a document entitled "Petition for Writ of Habeas Corpus" filed on your behalf.

The email was also sent to certain Justices and Judicial Administrative Assistants. Mr. Benshoof and Mr. Fountain are advised that parties may not directly contact any Justice or Judicial Administrative Assistants. Both Mr. Benshoff and Mr. Fountain are advised to direct any communications to this Court through the Clerk's Office.

Review of the petition discloses that it is primarily a complaint alleging unlawful restraint. The Rules of Appellate Procedure (RAP) 16.3 through 16.15 establish a single procedure for obtaining relief in the appellate courts for an alleged unlawful restraint. That procedure is known as a personal restraint petition. In the appellate courts, the personal restraint petition procedure supersedes the petition for writ of habeas corpus procedure (and also other writ processes when it applies). See RAP 16.3(b). Accordingly, the writ of habeas corpus will be treated as a personal restraint petition under RAP 16.3(b).

Under RAP 16.7(b), "The petition must be signed by the Petitioner or his attorney and verified under penalty of perjury." Accordingly, I have enclosed a copy of the petition so that it may be signed by Mr. Benshoof and returned.

Additionally, the petition cannot be processed further until either the required $250 filing fee is paid to this Court or the fee is waived upon appropriate request. In the event you believe you are unable to pay the filing fee, I have enclosed a "Statement of Finances" form with which waiver of the filing fee may be requested (a statement of your total assets and liabilities should support any such request; see RAP 16.7(a)(4)).

**0514**

Page 2
July 25, 2024

       The petition will be held without further action until Mr. Benshoof returns a signed copy of the petition, and either pays the $250 filing fee or submits a completed statement of finances form to request waiver of the filing fee.

                              Sincerely,

                              Erin L. Lennon
                              Supreme Court Clerk

ELL:ejn

Enclosures

cc:    Brett Fountain (sent by e-mail to kb407@exposelegalcorruption.com)

0515

## RAP 16.5
## PERSONAL RESTRAINT PETITION-WHERE TO SEEK RELIEF

(a) Court of Appeals. A personal restraint petition should be filed in the Court of Appeals, unless the
petition is subject to subsection (b).

(b) Supreme Court. A personal restraint petition filed by a person under sentence of death shall be filed in
the Supreme Court. See RAP 16.3(c).

(c) A personal restraint petition may be transferred by the court in which it is filed. The transfer of a
personal restraint petition between the Supreme Court and the Court of Appeals shall not be subject to a motion to
reconsider or, if the transfer is ordered by the clerk of the court, a motion to modify.

(d) If a petition filed in the Supreme Court is not transferred to the Court of Appeals, or has been
transferred from the Court of Appeals to the Supreme Court, the determinations ordinarily made by the "Chief Judge"
under rules 16.11 and 16.13 may be made by a commissioner.

**0516**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KURT BENSHOOF,

                    Petitioner,                    Case No. C24-1110-JNW-SKV

        v.

WARDEN,                                            ORDER TO SHOW CAUSE

                    Respondent.

This is a federal habeas action proceeding under 28 U.S.C. § 2241. Petitioner Kurt Benshoof is currently confined at the King County Regional Justice Center in Kent, Washington, where he is awaiting trial on charges filed against him in both King County Superior Court and Seattle Municipal Court. The original petition in this matter was filed in the United States Court of Appeals for the Ninth Circuit by "next friend" Tate David Prows as a petition under 28 U.S.C. § 2254. Dkt. 1. The Ninth Circuit construed the petition as one filed under § 2241 and transferred the petition to this Court. Dkt. 1-1.

On August 6, 2024, before any action had been taken on the transferred petition, Benshoof filed a § 2241 petition under his own signature. Dkt. 7. Most recently, the Co7rt received from Benshoof an affidavit and memorandum in support of his § 2241 petition, again

**0517**

filed under his own signature. Dkt. 12. Petitioner's recently filed petition is properly construed as an amended petition that supersedes the original petition filed by Petitioner's "next friend," Mr. Prows. Although Benshoof's amended petition is not a model of clarity, he does make clear that he is seeking to challenge the lawfulness of his pretrial detention, and the Court can discern at least three grounds for relief therein: (1) the simultaneous prosecutions in King County Superior Court and Seattle Municipal Court violate Petitioner's rights under the Double Jeopardy Clause; (2) the amount of bail imposed by the two courts is excessive; and (3) a search warrant authorized by the King County Superior Court and executed by the Seattle Police Department was invalid and violated Petitioner's Fourth Amendment rights. *See* Dkt. 7.

These claims all relate to Petitioner's ongoing state court criminal proceedings. Generally, the federal courts will not intervene in a pending state court criminal proceeding absent extraordinary circumstances where the danger of irreparable harm is both great and immediate. *See Younger v. Harris*, 401 U.S. 37 (1971). *Younger* requires a federal court to abstain from interference with pending state judicial proceedings when: "(1) there is 'an ongoing state judicial proceeding'; (2) the proceeding 'implicate[s] important state interests'; (3) there is 'an adequate opportunity in the state proceedings to raise constitutional challenges'; and (4) the requested relief 'seek[s] to enjoin' or has 'the practical effect of enjoining' the ongoing state judicial proceeding." *Arevalo v. Hennessy*, 882 F.3d 763, 765 (9th Cir. 2018) (quoting *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 758 (9th Cir. 2014)).

It appears that the *Younger* criteria are satisfied here. First, Petitioner is a pre-trial detainee with ongoing state proceedings. Second, as these proceedings involve a criminal prosecution, they implicate important state interests. *See Kelly v. Robinson*, 479 U.S. 36, 49, (1986); *Younger*, 401 U.S. at 43–44. Third, Petitioner has failed to allege facts showing he has

been denied an adequate opportunity to address the alleged constitutional violations in the state court proceedings. Fourth, Petitioner appears to seek release from custody based on the alleged violation of his rights. If this Court were to conclude that Petitioner was entitled to such relief, this would have the practical effect of enjoining Petitioner's ongoing state court proceedings. Accordingly, *Younger* abstention appears to apply in this case, and Petitioner must therefore show cause why this federal habeas action is not subject to dismissal on abstention grounds.

Even if Petitioner can demonstrate that his claims fall within an exception to the *Younger* abstention doctrine, such a showing would not, by itself, entitle him to proceed with this federal habeas action. "[A] state prisoner must normally exhaust available state judicial remedies before a federal court will entertain his petition for habeas corpus." *Picard v. Connor*, 404 U.S. 270, 275 (1971). Petitioner's claims will be considered exhausted only after "the state courts [have been afforded] a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary." *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

Although there is no exhaustion requirement mandated by 28 U.S.C. § 2241(c)(3), the Ninth Circuit Court of Appeals has held exhaustion is necessary as a matter of comity unless special circumstances warrant federal intervention prior to a state criminal trial. *Carden v. Montana*, 626 F.2d 82, 83-84 (9th Cir. 1980); *see Younger*, 401 U.S. 37. Petitioner fails to show state court remedies were exhausted by presenting federal constitutional or statutory claims to the Washington state trial and appellate courts in the ongoing criminal proceedings against him. Petitioner has also not shown special circumstances warrant federal intervention in this case.

ORDER TO SHOW CAUSE - 3

Therefore, Petitioner must show cause why this case should not be dismissed for failure to exhaust state remedies.

Finally, with respect to the attempt by Tate David Prows to pursue this action on Petitioner's behalf, Mr. Prows does not demonstrate that he satisfies the requirements for doing so. The federal habeas statute provides that the "[a]pplication for a writ of habeas corpus shall be in writing signed and verified by the person for whose relief it is intended or by someone acting in his behalf." 28 U.S.C. § 2242. Federal courts recognize that under appropriate circumstances, habeas petitions can be brought by third parties, such as family members or agents, on behalf of a prisoner – this is known as next-friend standing. *Whitmore v. Arkansas*, 495 U.S. 149, 161–64 (1990). The prerequisites for "next friend" standing in habeas proceedings are: (1) that the "next friend" provide an adequate explanation – such as inaccessibility, mental incompetence or other disability – as to why the real party in interest cannot appear on his own behalf to prosecute the action; and (2) that the "next friend" must be truly dedicated to the best interests of the person on whose behalf he seeks to litigate. *See id*.

Mr. Prows represented to the Court in the original petition that he filed the petition on Petitioner's behalf because Petitioner had been denied pen and paper while in King County custody, which rendered him unable to prepare a petition for writ of habeas corpus on his own. Petitioner's recent submission of his amended petition suggests that he is now able to appear on his own behalf and prosecute this action. The Court notes as well that absent from the original petition are facts from which this Court could reasonably conclude that Mr. Prows has any significant relationship with Benshoof or that he is truly dedicated to Benshoof's best interests. As the record does not demonstrate that Mr. Prows satisfies the prerequisites for "next friend" standing, Petitioner will be required to litigate this action on his own behalf.

ORDER TO SHOW CAUSE - 4

Based on the foregoing, this Court hereby ORDERS as follows:

(1)     Petitioner shall show cause not later than ***thirty (30) days*** from the date on which this Order is signed why this action should not be dismissed.  If Petitioner believes he can adequately demonstrate that this action should not be dismissed, he shall file with any response to this Order to Show Cause a second amended petition, on the Court's standard form, which identifies a proper Respondent and which clearly sets forth the constitutional claims upon which he is seeking relief.  Failure to timely respond to this Order will result in a recommendation that this action be dismissed.

(2)     The Clerk is directed to send to Petitioner a copy of this Order and the Court's standard § 2241 habeas petition form.  The Clerk is further directed to send a copy of this Order to Mr. Prows and to the Honorable Jamal N. Whitehead.

DATED this 10th day of September, 2024.

S. KATE VAUGHAN
United States Magistrate Judge

**0521**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KURT BENSHOOF and BRIANA D. GAGE, | CASE NO. 2:23-cv-1392 |
| Plaintiffs, | ORDER DENYING FIFTH AND SIXTH MOTIONS FOR TEMPORARY RESTRAINING ORDERS |
| v. | |
| MOSHE ADMON et al., | |
| Defendants. | |

This matter comes before the Court on Plaintiff Kurt Benshoof's fifth and

sixths motions for temporary restraining orders ("TROs"). Dkt. Nos. 129, 158.

Benshoof asks the Court for three forms of injunctive relief: (1) to enjoin

"Respondents" from enforcing the terms or conditions of the Honorable Marshall

Ferguson's Order Restricting Abusive Litigation of Kurt Benshoof in *Benshoof v.*

*Cliber et al.*, Case No. 22-2-15958-8 (King Cnty. Sup. Ct. February 17, 2023), Dkt.

No. 177, and Judge Ferguson's subsequent contempt order, Dkt. No. 319[1]; (2) to

---

[1] Under Rule 201(b), courts may take judicial notice of a fact that is not subject to reasonable dispute because it "can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201(b)(2). Judicial notice may be taken "of court filings and other matters of public record."

enjoin the City of Seattle from "acting to detain, arrest, imprison, prosecute, or sentence Benshoof relating to Seattle Municipal Count Nos. 669329; 671384; 675317; 675405; 676175; 676207; 676216; 676463; 676492; or King County Superior Court case no. 21-5-00680-6"; and (3) to enjoin the mother of his son, A.R.W., from "continuing to conceal A.R.W. from Benshoof." The Court DENIES both TROs.

## 1. BACKGROUND

On March 31, 2023, King County Superior Court Judge Marshall Ferguson determined that Benshoof is a vexatious litigant, based on his "pattern of abusive litigation and weaponization of the [King County Superior Court] system[.]" Dkt. No. 13-2 at 111-117; *see also Benshoof v. Cliber et al.*, Case No. 22-2-15958-8 (King Cnty. Sup. Ct. February 17, 2023), Dkt. No. 177. Judge Ferguson ordered Benshoof to follow certain filing restrictions including requiring him to move for leave to proceed with any future action filed against Nathan Cliber, Jessica Owen, Magalie Lerman, or Owen Hermsen, and to submit a copy of the abusive litigant order with the complaint. *Id.*

On March 1, 2024, Judge Ferguson entered a Contempt Order for violating the filing restrictions. Dkt. No. 129-3; *see also Benshoof v. Cliber et al.*, Case No. 22-2-15958-8 (King Cnty. Sup. Ct. February 17, 2023), Dkt. No. 319. Judge Ferguson entered "an ongoing remedial sanction" requiring Benshoof to pay $250 per day that he fails to file the Abusive Litigation Order in his pending actions. *Id.*

---

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). The Court takes judicial notice of *Benshoof v. Cliber et al.*, Case No. 22-2-15958-8 (King Cnty. Sup. Ct. February 17, 2023), Dkt. No. 177, Order Restricting Abusive Litigation of Kurt Benshoof, and Dkt. No. 319, Contempt Order.

ORDER - 2

**0523**

## 2. DISCUSSION

"A plaintiff seeking a [temporary restraining order] must establish that [(1) they are] likely to succeed on the merits, [(2)] that [they are] likely to suffer irreparable harm in the absence of preliminary relief, [(3)] that the balance of equities tips in [their] favor, and [(4)] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). As to the second element, courts will not grant relief "based only on a 'possibility' of irreparable harm." *Id.* at 22. Indeed, likely success on merits is "most important" factor. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015).

Regarding Benshoof's fifth TRO motion, he argues the Order Restricting Abusive Litigation was issued without jurisdiction, after ex parte communication, and based on fraud. But a TRO is not the proper vehicle for appealing a state court order. Benshoof has not shown he will likely succeed on the merits, nor has he established an irreparable injury based on the contempt order's $250 "ongoing remedial sanction." Accordingly, the Court DENIES his fifth TRO motion.

As to Benshoof's sixth TRO motion, the Court *already* denied Benshoof injunctive relief regarding Seattle municipal Court Case Nos. 669329 and 671384. *See* Dkt. No. 29. The remaining Seattle Municipal Court cases are criminal matters. Case Nos. 669329, 671384, 675405, 676175, 676207, 676216, 676463, and 676492 are open matters.[2] The Court has explained in multiple orders that the relief

---

[2] Case No. 675317 has closed, and charges were dismissed. *See City of Seattle v. Benshoof*, No. 675317 (Seattle Municipal Court Sep. 2023) (available at https://courtrecords.seattle.gov/portal/court/68f021c4-6a44-4735-9a76-

ORDER - 3

Benshoof seeks regarding ongoing criminal matters is barred by *Younger v. Harris*, 401 U.S. 37 (1971). *See* Dkt. Nos. 29 at 8-9; 38 at 15; 92 at 4.

Finally, King County Superior Court Case No. 21-5-00680-6 refers to a parentage action between Benshoof and Owen. This Court has no authority to interfere with the outcome of this matter or Owen and Lerman's custody. As this Court has told Benshoof repeatedly, he cannot seek federal relief for child custody issues. "It is well-settled that federal district courts have no jurisdiction over child custody issues, which are exclusively matters of state law." *Benshoof v. Keenan*, No. C23- 751-RAJ, 2023 WL 4142956, at *1 (W.D. Wash. June 12, 2023) (citing *Ankenbrandt v. Richards*, 504 U.S. 689, 702-04) (1992) (affirming the domestic relations exception "divests the federal courts of power to issue divorce, alimony[,] and child custody decrees.")) The Court DENIES Benshoof's sixth TRO motion.

### 3. CONCLUSION

Accordingly, the Court DENIES Benshoof's fifth and sixth TRO motions with prejudice, Dkt. Nos. 129, 158.

Dated this 28th day of June, 2024.

Jamal N. Whitehead
United States District Judge

---

5360b2e8af13/case/8f7bb23c-7a63-44ba-91a4-bceea76f5d1c). As a result, even if relief were not barred by *Younger* abstention, Benshoof's request to enjoin this matter is moot.

ORDER - 4

**0525**

1

2

3                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON
4                             AT SEATTLE

5    KURT BENSHOOF,                      CASE NO. 2:23-cv-1392

6              Plaintiff,                ORDER DENYING PLAINTIFF'S
                                         MOTIONS FOR PRELIMINARY
7         v.                             INJUNCTION AND GRANTING
                                         LEAVE TO AMEND HIS
8    MOSHE ADMON, DANIEL                 COMPLAINT
     AUDERER, JUSTIN BOOKER, FREYA
9    BRIER, CITY OF SEATTLE, NATHAN
     CLIBER, ZACHARY COOK.
10   BENJAMIN COOMER, ANITA
     CRAWFORD-WILLIS, JENNY
11   DURKAN, JAMES ERVIN, DAVID
     ESTUDILLO, MARSHALL
12   FERGUSON, MICHAEL FOX, COREY
     FOY, AMY FRANKLIN-BIHARY,
13   WILLIAM GATES, III, STEVEN
     GONZALEZ, TYLER GOSLIN, WILLIE
14   GREGORY, OWEN HERMSEN, JAY
     INSLEE, DAVID KEENAN, GABRIEL
15   LADD, DANIEL LENTZ, MAGALIE
     LERMAN, MARY LYNCH, SARAH
16   MACDONALD, ANTHONY
     MARINELLA, RICHARDO
17   MARTINEZ, BRADLEY MOORE,
     KATRINA OUTLAND, JESSICA
18   OWEN, PCC NATURAL MARKETS,
     KYLE REKOFKE, STEVEN ROSEN,
19   BLAIR RUSS, UMAIR SHAH,
     SPROUTS FARMERS MARKET,
20   MICHAEL THURSTON, JARED
     WALLACE, and SANDRA WIDLAN,
21
              Defendants.
22

23

24

**0526**

1

## 1. INTRODUCTION

This matter is before the Court on its own motion. Plaintiff Kurt Benshoof, proceeding pro se and in forma pauperis, filed a civil rights complaint on September 19, 2023, naming 42 Defendants and pleading over 40 causes of action. *See generally* Dkt. No. 9. As explained below, the Court ORDERS Benshoof to replead his claims to comply with Fed. R. Civ. P. 8. The Court also DENIES Benshoof's two separately pending "Emergency Petitions for Preliminary Injunction." Dkt. Nos. 14, 15.

## 2. BACKGROUND

### 2.1    Factual allegations.

Benshoof's complaint spans 280 pages, contains over 1,000 paragraphs in its statement of facts, and includes over 2,000 pages in attachments. *See* Dkt. Nos. 9, 13. It is hard to make out the exact nature of his conflict among all of the irrelevant, conclusory, and confusing details, but Benshoof appears to allege Defendants violated his due process rights during multiple legal proceedings in Seattle Municipal Court and King County Superior Court. Dkt. No. 9 at 204-216. These cases include King County Superior Court Case No. 21-5-00680-6, a parentage action between Jessica Owen and Benshoof. *See* Dkt. Nos. 9 at 81-82; 13-2 at 13-18.

Owen and Benshoof are the parents of A.R.W. Dkt. No. 13-2 at 15. Benshoof alleges Owen and her attorneys made false statements about him, which led to a restraining order. Dkt. Nos. 9 at 82; 13-2 at 2-6. Under the restraining order, Benshoof cannot contact A.R.W. and he "may only effect service of process [on

**0527**

Owen], for any and all legal proceedings, through use of either <u>Pegasus Process Service</u> or <u>ABC Legal Services</u>." Dkt. No. 13-2 at 4 (emphasis in original).

Beyond allegations about his family law cases, Benshoof brings claims about the implementation and enforcement of COVID-19 mask mandates.

Benshoof states his beliefs in his complaint:

> The Breath of Life is sacred and shall not be restricted nor impeded . . . [and] [t]he human body is a vessel of the Divine. God designed and created human bodies with innate immune systems enriched from the mother's breast milk.

Dkt. No. 9 at 20.

Benshoof also alleges his "invisible disabilities" preclude him from wearing a mask. *Id.* at 23. Specifically, he "was sexually abused as a child by someone in a position of trust and authority; as such, demands by [D]efendants that [he] restrict his breathing or cover his face were perceived by [Benshoof] as particularly ***abusive*** and ***triggering.***" *Id.* (emphasis in original). Benshoof alleges that being denied access to grocery stores and courts because of his refusal to wear a face mask violated his First Amendment right of religious expression and his rights guaranteed by the Americans with Disabilities Act. *See id.* at 188-191, 233-235.

## 2.2 Benshoof's first emergency petition for a preliminary injunction.

Benshoof asks the Court to bar the City and Seattle Police Department (SPD) officers from arresting and prosecuting him "under the family court Final Restraining Order for effecting service of process to 849 NE 130th ST [sic], Seattle, WA 98125 pursuant to Fed.R.Civ.P.4. [sic]." Dkt. Nos. 14 at 8; 14-1 at 2. According to Benshoof, Owen resides at the 849 NE 130th St. address. Dkt. No. 14 at 2.

1    Benshoof says both ABC Legal Services and Pegasus Process Service have refused

2    to do business with him. *Id.*

### 2.3   Benshoof's second emergency petition for a preliminary injunction.

4    Benshoof seeks to enjoin the City and SPD officers from arresting and

5    prosecuting him for charges levied in Seattle Municipal Court Case No. 656748.

6    Dkt. No. 15 at 1. The municipal court docket shows Benshoof faces four charges of

7    criminal trespass in the first degree, all of which are pending. *See City of Seattle v.*

8    *Benshoof,* Case No. 656748 (Municipal Court of Seattle Nov. 13, 2020).[1] The matter

9    is still pending although a warrant appears to have expired on August 29, 2023.

### 2.4   Procedural history.

12    Around a week after filing this lawsuit, Benshoof filed two "Emergency

13    Petitions for Preliminary Injunction," and three motions for a temporary restraining

14    order (TRO) on successive days between October 2-4, 2023. Dkt. Nos. 14, 15, 16, 20,

15    23. On October 6, 2023, the Court denied all three TRO motions. Dkt. No. 29.

16    In the past year, Benshoof has filed two other cases in this District that have

17    raised similar issues about his family law disputes and objections to mask

---

[1] Under Rule 201(b), courts may take judicial notice of a fact that is not subject to reasonable dispute because it "can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201(b)(2). Taking judicial notice of publicly available information provided by a government agency meets the requirements for judicial notice under the Rules. *See Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 n. 2 (9th Cir. 2006) (holding facts contained in public records are considered appropriate subjects of judicial notice). Therefore, the Court takes judicial notice of the municipal court docket in *City of Seattle v. Benshoof*, Case No. 656748 (Municipal Court of Seattle Nov. 13, 2020) (available at http://web.seattle.gov/SMC/ECFPortal/default.aspx).

ORDER - 4

1
2
3

mandates. The court dismissed both actions. *See Benshoof v. Keenan, et al.,* No. 23-cv-751-RAJ, Dkt. No. 22 (W.D. Wash. Jun. 12, 2023); *Benshoof v. Fauci, et al.,* No. 22-cv-1281-LK, Dkt. Nos. 7 (W.D. Wash. Oct. 31, 2022).

4

## 3. DISCUSSION

5

### 3.1 Legal standards.

6
7
8
9
10
11
12
13
14
15
16
17

When a litigant proceeds in forma pauperis ("IFP"), "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(i)–(iii); *see Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (internal citation omitted) ("[S]ection 1915(e) not only permits but requires a district court to dismiss an [IFP] complaint that fails to state a claim."). "The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) (citing *Lopez*, 203 F.3d at 1122).

18
19
20
21
22
23

Thus, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation and quotation marks omitted). This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

24

### 3.2 Benshoof's complaint is deficient.

Benshoof's complaint is sprawling. His causes of action are numbered within the complaint—46 in all—but they are not so clearly delineated as the enumeration would suggest. His claims can be roughly summarized as follows:

- Benshoof seeks declaratory judgment on 17 questions. *See* Dkt. No. 9 at 173-176 ("First Cause of Action").

- Benshoof pleads Constitutional violations, including several 42 U.S.C. § 1983 claims, *Bivens* claims, a denial of service under the 1964 Civil Rights Act, conspiracy under 42 U.S.C. § 1985(2)-(3) and 42 U.S.C. § 1986, and a related RICO action under 18 U.S.C. § 1962(c)-(d). *See id.* at 177-217, 218-268 (Benshoof's second through 22nd and 24th through 42nd causes of action).

- Benshoof seeks four preliminary injunctions, which he styles as his 43rd-46th causes of action. *See id.* at 268-277.

- Benshoof pleads two state-law claims: common law fraud and common law conspiracy. *See id.* at 220-224 (22nd and 23rd causes of action).

Some of these claims are deficient on their face. Others are impossible to understand as pled.

### 3.2.1 The Court lacks jurisdiction over Benshoof's "First Cause of Action" for "Declaratory Judgment."

The Uniform Declaratory Judgment Act, 28 U.S.C. § 2201, provides "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking

**0531**

such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "A lawsuit seeking federal declaratory relief must first present an actual case or controversy within the meaning of Article III," and "must also fulfill statutory jurisdictional prerequisites." *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 (9th Cir. 1998) (citing *Aetna Life Ins. Co. of Hartford v. Haworth*, 300 U.S. 227, 239–40 (1937); *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 672 (1950)). Because "[t]he Declaratory Judgment Act does not provide for its own subject matter jurisdiction," a plaintiff "must establish federal question jurisdiction or diversity jurisdiction before a district court can consider a request for declaratory judgment." *Fluke Corp. v. Ratner*, No. C07-1921-JPD, 2008 WL 11342997, at *2 n.2 (W.D. Wash. Apr. 18, 2008).

Benshoof asserts 17 questions that he labels "federal questions." But none of these questions are federal questions within the meaning of 28 U.S.C. § 1331. Nor does Benshoof allege diversity jurisdiction. Questions 1, 2, 3, 4, 6, 11, 12, 13, 16, and 17 ask the Court to interpret the Washington Constitution and Washington state statutes or court rules. *See* Dkt. No. 9 at ¶¶ 1281, 1282, 1283, 1284, 1286, 1291, 1292, 1293, 1296, 1297. Question 5 involves the jurisdiction of a family court, which is not a federal question. *See id.* ¶ 1285. Questions 8 and 14 relate to Benshoof's allegations against King County Superior Court Judge David Keenan and United States District Judge Richard Jones, however, the Court finds Benshoof's allegations against Judges Keenan and Jones are likely barred by absolute immunity so there is no live controversy between the parties. *See* Dkt. No. 9 at ¶¶ 1288, 1294; *see also infra* Section 3.2.3. Because the Court finds Benshoof's

**0532**

1

2

allegations against William Gates to be deficient under Fed. R. Civ. P. 8(a),

independent subject matter jurisdiction also does not exist for Questions 9 and 10,

which ask the Court to decide whether Gates acted jointly with "state actors

pursuant to 42 U.S.C. §§ 1983; 1985(2)(3)" and whether "the Bill and Melinda Gates

Foundation is a 'person' under 18 U.S.C. § 1961(3) subject to 18 U.S.C. § 1962(d)."

*See* Dkt. No. 9 at ¶¶ 1289, 1290; *see also infra* Section 3.3. Questions 7 and 15 are

merely hypothetical. Question 7 asks whether a child can consent to receiving a

COVID-19 vaccine and Question 15 asks whether the Ninth Circuit can "adjudicate

Plaintiff's claims under 42 U.S.C. § 1983 when the facts evidence a prima facie case

that judges of the U.S. District Court for the Western District of Washington acted,

individually and in concert, to allow, enable, facilitate, or perpetrate violations of

constitutional prohibitions?" *See* Dkt. No. 9 at ¶¶ 1287, 1295. These questions aren't

tied to any live claim raised in this suit.

Accordingly, Benshoof does not meet the Declaratory Judgment Act's

requirements, and he thus fails to state a claim for declaratory relief.

### 3.2.2  Benshoof's Section 1983 claims against private persons fail as a matter of law.

To state a Section 1983 claim, a plaintiff must "plead that (1) the defendants

acting under color of state law (2) deprived plaintiffs of rights secured by the

Constitution or federal statutes." *Gibson v. United States*, 781 F.2d 1334, 1338 (9th

Cir. 1986). As for the first element, a defendant acts under the color of state law

where they "exercised power 'possessed by virtue of state law and made possible

only because the wrongdoer is clothed with the authority of the state.'" *West v.*

ORDER - 8

**0533**

1    *Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326

2    (1941)). Generally, private parties are not acting under color of state law unless

3    they conspire with state officials to deprive others of constitutional rights. *Price v.*

4    *State of Hawaii*, 939 F.2d 702, 707-08 (9th Cir. 1991) ("[P]rivate parties are not

5    generally acting under color of state law"); *Simmons v. Sacramento Cnty. Superior*

6    *Ct.*, 318 F.3d 1156, 1161 (9th Cir. 2003). Conclusory allegations, however, are not

7    enough to state a claim of conspiracy. *Simmons*, 318 F.3d at 1161 (finding a

8    plaintiff's "conclusory allegations that the lawyer was conspiring with state officers

9    to deprive him of due process . . . insufficient.").

10      Benshoof brings Section 1983 claims against Owen, her current partner,

11    Lerman, and her friend, Hermsen, alleging they conspired to deny Benshoof his

12    parental rights and extort him for the value of his FJ Cruiser. Dkt. No. 9 at ¶¶ 416–

13    418. Owen, Lerman, and Hermsen are private individuals and Benshoof alleges

14    nothing beyond private action and conclusory claims of conspiracy with the

15    municipal court and police officers. Therefore, Benshoof cannot maintain Section

16    1983 claims against Owen, Lerman, and Hermsen.

17      Benshoof's claims against Brier, Cliber, Franklin-Bihary, Marinella, Rekofke,

18    and Russ, who are all private attorneys, similarly fail. *See Simmons*, 318 F.3d at

19    1161 (holding plaintiff could not sue counsel under § 1983 because he was a "lawyer

20    in private practice who was not acting under color of state law" and conclusory

21    conspiracy allegations were insufficient).

22

23

24

### 3.2.3 Benshoof's claims against immune parties also fail as a matter of law.

"Judges are absolutely immune from damage actions for judicial acts taken within the jurisdiction of their courts[.]" *Schucker v. Rockwood*, 846 F.2d 1202, 1204 (9th Cir. 1988) (per curiam) (citations omitted). Indeed, a judge retains absolute immunity even when the judge erroneously interprets jurisdiction. *See Sadoski v. Mosley*, 435 F.3d 1076, 1079 (9th Cir. 2006) (upholding immunity where a judge "acted in excess of his jurisdiction" but did "not act in clear absence of all jurisdiction."). Benshoof alleges several municipal and superior court judges acted without personal jurisdiction over him and further alleges he "did not consent to family court adjudicating his family affairs." *See* Dkt. No. 9 at 81, 146, 154. Even taking his allegations as true, Benshoof does not establish that any judges acted in clear absence of all jurisdiction. Thus, Benshoof's Section 1983 claims against Seattle Municipal Court judges and King County Superior Court judges all fail. Similarly, to the extent Benshoof alleges a *Bivens* claim against United States District Judge Richard Jones for his decisions in a prior habeas case, judicial immunity also blocks this claim. *See* Dkt. No. 9 at 172-173.

Benshoof sues United States District Judges David Estudillo and Ricardo Martinez, Washington State Supreme Court Chief Justice Steven González, and Seattle Municipal Court Judge Willie Gregory for issuing mask mandates in their courthouses. "Administrative decisions, even though they may be essential to the very functioning of the courts," are not within the scope of judicial immunity. *Forrester v. White*, 484 U.S. 219, 228–30 (1988). Even if the Court assumes without

deciding that these claims relate to administrative decisions for which judges are not immune, Benshoof's claims are moot. Benshoof has not alleged these mandates remain active or that he has suffered some actual harm. As a result, he lacks standing to bring a moot or hypothetical claim. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2200 (2021) ("No concrete harm, no standing.").

Benshoof's Section 1983 claims against MacDonald and Outland are also barred by prosecutorial immunity. Prosecutors are absolutely immune from Section 1983 actions when performing functions "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). In other words, a "prosecutor is fully protected by absolute immunity when performing the traditional functions of an advocate. *Kalina v. Fletcher*, 522 U.S. 118, 131 (1997). "[T]he functional nature of the activities being performed, not the status of the person performing them, is the key to whether absolute immunity attaches." *Stapley v. Pestalozzi*, 733 F.3d 804, 810 (9th Cir. 2013).

Benshoof alleges City of Seattle Prosecutor MacDonald provided the court with insufficient evidence, engaged in ex parte communications with the judge during his court proceedings, failed to provide exculpatory evidence, and deceived the jury. Dkt. No. 9 at ¶¶ 954, 960, 995-997, 999, 1031-1034, 1047-1048. Benshoof alleges City of Seattle Prosecutor Outland failed to provide the Seattle Municipal Court evidence of proof of personal service or proof that Benshoof violated the law. Dkt. No. 9 at ¶¶ 1151-1155. The alleged conduct by MacDonald and Outland falls within the traditional function of an advocate, therefore, immunity precludes Benshoof's Section 1983 claims.

### 3.3 Benshoof's complaint violates Rule 8(a), so the Court orders him to replead his claims in compliance with the Civil Rules.

Benshoof alleges more—he alleges Section 1983 claims against SPD Officers Auderer, Coomer, Foy, Ladd, Lentz, and Wallace, Jane Adams Middle School Vice Principal Booker, Durken, Inslee, and Shah; he also alleges claims under Title II of the Civil Rights Act, 42 U.S.C. § 1985(2)-(3), 42 U.S.C. § 1986, and 18 U.S.C. § 1962(d). But the "prolixity," argumentativeness, redundancy, and often plain confusing nature of Benshoof's complaint makes it difficult to discern what the circumstances were that supposedly give rise to these claims. *See Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1059 (9th Cir. 2011) (upholding district court's dismissal of complaint without leave to amend because plaintiff violated Rule 8; explaining, "[o]ur district courts are busy enough without having to penetrate a tome approaching the magnitude of War and Peace to discern a plaintiff's claims and allegations.").

Rather than straightforwardly stating his claims and allegations, as required by Rule 8, Benshoof saddles the Court and Defendants with a nearly 300-page complaint and 2,000 pages of exhibits. A complaint so confusing that its "true substance, if any, is well disguised" may be dismissed sua sponte for failure to satisfy Rule 8. *Herns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1131 (9th Cir. 2008) (quoting *Gillibeau v. City of Richmond*, 417 F.2d 426, 431 (9th Cir. 1996)).

Instead of dismissal, however, the Court orders Benshoof to replead his claims. *Agnew v. Moody*, 330 F.2d 868, 870 (9th Cir. 1964) ("[T]he district court was entirely justified in holding that the complaint did not comply with Rule 8(a), and in

**0537**

ordering [the plaintiff] to replead."); *see also Johnson Enter. of Jacksonville, Inc. v. FPL Grp., Inc.,* 162 F.3d 1290, 1332 n.94 (11th Cir. 1998) ("District courts have the inherent authority to demand repleader *sua sponte*.")

Any amended complaint must address—if possible—the deficiencies identified above and comply with Fed. R. Civ. P. 8 by providing a short plain statement of each of Benshoof's claims. For example, statements identifying (1) the right violated, (2) the name of the defendant who violated that right, (3) the specific, wrongful acts of the defendant, and (4) the resulting injuries, would suffice. It may be necessary to repeat this process for each named defendant.

### 3.4 Benshoof is not entitled to the injunctive relief sought in his separately pending motions.

Rather than leaving the question open during the pendency of an amended complaint, the Court addresses Benshoof's separately pending motions for injunctive relief. Dkt. Nos. 14, 15.

A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A party seeking a preliminary injunction must establish four elements: (1) they are "likely to succeed on the merits," (2) they will likely "suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in [their] favor," and (4) "an injunction is in the public interest." *Id.* at 20.

In his first motion, Benshoof asks the Court to exempt him from a restraining order issued by King County Superior Court Judge David Keenan that bars

**0538**

1   Benshoof from serving Owen except with process completed by Pegasus Process

2   Service or ABC Legal Services.[2] *See* Dkt. Nos. 13-2 at 4; 14. The restraining order

3   originated from a parentage action, Case No. 21-5-00680-6. This matter is beyond

4   the Court's subject matter jurisdiction, however, because the subject of Benshoof's

5   request and the relief sought are inextricably linked to his family law case. "It is

6   well-settled that federal district courts have no jurisdiction over child custody

7   issues, which are exclusively matters of state law." *Benshoof v. Keenan*, No. C23-

8   751-RAJ, 2023 WL 4142956, at *1 (W.D. Wash. June 12, 2023) (citing *Ankenbrandt*

9   *v. Richards*, 504 U.S. 689, 702–04) (1992) (affirming the domestic relations

10  exception "divests the federal courts of power to issue divorce, alimony[,] and child

11  custody decrees."). Because this Court likely lacks jurisdiction to grant the relief

12  Benshoof seeks, he fails to establish he is likely to succeed on the merits and the

13  Court DENIES his first motion for a preliminary injunction.

14      This is not the first time Benshoof has sought federal injunctive relief related

15  to his child custody issues. *See Benshoof*, No. C23-751-RAJ, 2023 WL 4142956, at

16  *1. In denying Benshoof's motion for a temporary restraining order and dismissing

17  his complaint, the Honorable Richard A. Jones cautioned Benshoof that "federal

---

[2] At one point in his motion, Benshoof argues due process requires that he be able to effect service of process through the U.S. Marshals. Dkt. No. 14 at 4. He further argues that the Court should enjoin the City of Seattle from detaining, arresting, imprisoning, or prosecuting the U.S. Marshals from serving process on Owen in this case. *Id.* at 1. The Court does not decide, at this time, whether the restraining order issued by Judge Keenan would allow service of process by the U.S. Marshals because Benshoof has yet to plead a claim against Owen. As the Court explained, Benshoof's Section 1983 claims against Owen fail because they involve only private action and, regardless, Benshoof must amend his complaint to comply with Fed. R. Civ. P. 8(a) before the Court will issue summonses.

ORDER - 14

**0539**

courts are not courts of appeal from state decisions." *Id.* The Court reiterates this caution, as a pattern of unmeritorious litigation may lead to a bar order limiting Benshoof's ability to bring suit.

In his second motion, Benshoof asks the Court to enjoin the SPD from enforcing a bench warrant issued in the ongoing Seattle Municipal Court Case No. 656748. Dkt. No. 15. Federal courts will not interfere where "(1) there is an ongoing state judicial proceeding; (2) the proceeding implicate[s] important state interests; (3) there is an adequate opportunity in the state proceedings to raise constitutional challenges; and (4) the requested relief seek[s] to enjoin or has the practice effect of enjoining the ongoing state judicial proceeding." *Arevalo v. Hennessy*, 882 F.3d 763, 765 (9th Cir. 2018) (internal quotation marks omitted) (quoting *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 758 (9th Cir. 2014)).

Here, the proceedings implicate local interests because the charges concern the City's ability to enforce local trespass laws. Benshoof does not allege the municipal court forum prevented him from raising his constitutional and jurisdictional claims. The requested relief would effectively disrupt and invalidate the municipal court proceedings even though Benshoof has not established bad faith, harassment, or extraordinary circumstances that would justify the Court setting aside abstention under the *Younger* abstention doctrine. Thus, Benshoof fails to show likelihood of success on the merits and the Court DENIES Benshoof's second motion for a preliminary injunction.

## 4. CONCLUSION

In sum, the Court orders as follows:

- The Court ORDERS Benshoof to file an amended complaint within 21 days of the date of this order that provides a short, plain, and concise statement of the factual basis for each of the claims as required by Fed. R. Civ. P. 8.

- The amended complaint will operate as a complete substitute for Benshoof's original pleading. Thus, any amended complaint must not cross-reference the original complaint, and must clearly identify the claims, the specific facts that support each claim, which allegations are relevant to which Defendants, and the specific relief requested.

- Failure to file a proper amended complaint within 21 days of the date of this order will result in dismissal of this action without prejudice.

- The Court DENIES Benshoof's emergency petitions for a preliminary injunction. Dkt. Nos. 14, 15.

Dated this 31st day of October, 2023.

Jamal N. Whitehead
United States District Judge

1

2

3

4                     UNITED STATES DISTRICT COURT
                     WESTERN DISTRICT OF WASHINGTON
5                              AT SEATTLE

6    KURT BENSHOOF,                        CASE NO. 2:23-cv-1392

7                        Plaintiff,        ORDER DENYING PLAINTIFF'S
                                           MOTIONS FOR TEMPORARY
8            v.                            RESTRAINING ORDER

9    MOSHE ADMON, DANIEL
     AUDERER, JUSTIN BOOKER, FREYA
10   BRIER, CITY OF SEATTLE, NATHAN
     CLIBER, ZACHARY COOK,
11   BENJAMIN COOMER, ANITA
     CRAWFORD-WILLIS, JENNY
12   DURKAN, JAMES ERVIN, DAVID
     ESTUDILLO, MARSHALL
13   FERGUSON, MICHAEL FOX, COREY
     FOY, AMY FRANKLIN-BIHARY,
14   WILLIAM GATES, III, STEVEN
     GONZALEZ, TYLER GOSLIN, WILLIE
15   GREGORY, OWEN HERMSEN, JAY
     INSLEE, DAVID KEENAN, GABREL
16   LADD, DANEIL LENTZ, MAGALIE
     LERMAN, MARY LYNCH, SARAH
17   MACDONALD, ANTHONY
     MARINELLA, RICHARDO
18   MARTINEZ, BRADLEY MOORE,
     KATRINA OUTLAND, JESSICA
19   OWEN, PCC NATURAL MARKETS,
     KYLE REKOFKE, STEVEN ROSEN,
20   BLAIR RUSS, UMAIR SHAH,
     SPROUTS FARMERS MARKET,
21   MICHAEL THURSTON, JARED
     WALLACE, and SANDRA WIDLAN,
22
                         Defendants.
23

**0542**

Plaintiff Kurt Benshoof, proceeding pro se and *in forma pauperis*, filed a Section 1983 civil rights complaint on September 19, 2023. Dkt. No. 9. Benshoof sues 42 Defendants and pleads 46 causes of action in his 280-page complaint. *Id.* In less than a week's time, Benshoof has moved for three temporary restraining orders (TROs). Dkt. Nos. 16, 20, 23. In each motion, he seeks to enjoin the City of Seattle from arresting or imprisoning him on a bench warrant issued by the Municipal Court of Seattle, which stems from three on-going criminal cases. *See id.* Because the doctrine of *Younger* abstention bars the Court from deciding Benshoof's claims, and because he is unlikely to succeed on the merits in any event, the Court DENIES Benshoof's TRO motions.

## 1. BACKGROUND

The Court granted Benshoof leave to proceed *in forma pauperis,* but it has not issued summonses yet, so Benshoof has not served Defendants with process. *See* Dkt. 8. Benshoof moved for three temporary restraining orders on successive days between October 2-4, 2023. Dkt. Nos. 16, 20, 23. The City opposed each motion. Dkt. Nos. 21, 24, 26. The Court discusses the circumstances behind each TRO motion below.

### 1.1. Benshoof's first TRO.

On October 2, 2023, Benshoof filed his first TRO motion. Dkt. No. 16. In it, he alleges he will be unlawfully imprisoned by the City based on a bench warranted issued by the Seattle Municipal Court in his pending criminal Case No. 656749. *Id.* at 1. Benshoof attached a copy of the docket from his municipal court case to his

motion, showing that he is representing himself pro se and failed to appear for a sentencing hearing on September 28, 2023, which prompted the municipal court to issue a bench warrant that same day. Dkt. No. 16-3 at 1, 12.

Benshoof describes the underlying charges and criminal proceeding like this:

Beginning in August 2020, Benshoof refused to wear a mask while shopping at PCC Community Markets because of his "firmly held religious beliefs" and "invisible disability." Dkt. No. 16 at 2. In October 2020, PCC cashiers denied Benshoof checkout services because he was not wearing a mask, so he left payment for his groceries inside the store, but away from the checkout stand. *Id.* at 3. PCC then accused Benshoof of shoplifting. *Id.* The City filed charges against Benshoof for criminal trespass and theft and a trial was eventually held. Dkt. No. 16-3 at 1, 6–8.

During his trial, Benshoof alleges the judge refused to "show the jury video of [him] leaving payment for his groceries out of view of the checkout security camera," and the prosecutor "knowingly and willfully deceived the jury to believe that [Benshoof] did not leave payment for his groceries." Dkt. No. 9 at 142, ¶¶ 1046–1047. Benshoof further argues the "City judges, prosecutors, and police officers have knowingly and willfully conspired with PCC employees against [him] for the exercise of [his] rights protected by the First Amendment" and to deny "equal access to shop at PCC[.]" Dkt. No. 16 at 8. Benshoof contends these actions amount to a malicious prosecution by the City. *Id.*

On September 23, 2021, the municipal court entered guilty findings on the two charges against Benshoof. Dkt. No. 16-3 at 8–9.

1

2

Back to the TRO; Benshoof alleges that absent an order restraining the Seattle Police Department (SPD) from arresting him under the bench warrant, he will be unable to "call 911 to make any future victim witness complaint[s] without facing immediate unlawful imprisonment[,]" and he will suffer a "loss of First Amendment rights[.]" Dkt. No. 16 at 10–11. Additionally, Benshoof claims he "has been living under threat of immediate unlawful arrest every day for months. This retaliation must stop immediately, lest another one of the poorly trained SPD officers who has drawn, or may draw, a loaded firearm at [Benshoof] pulls the trigger." *Id.* at 16.

Benshoof argues he will prevail on the merits because he "is entirely innocent of any wrongdoing, and is in fact the victim, the only possible outcome is [his] eventual vindication of any wrongdoing and the vacatur of [the municipal court case judgment]." *Id.* at 15.

## 1.2. Benshoof's second TRO.

On October 3, 2023, Benshoof moved for a second TRO. Dkt. No. 20. This motion concerns a separate municipal proceeding, Case No. 669329, in which the City charged Benshoof with violating a vulnerable adult protective order. *See id.* at 1; *City of Seattle v. Benshoof*, Case No. 669329 (Municipal Court of Seattle Nov. 8, 2022).[1] The matter is still pending although the warrant appears to have expired on

---

[1] Under Rule 201(b), the court may take judicial notice of a fact that is not subject to reasonable dispute because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Taking judicial notice of publicly available information provided by a government

July 19, 2023. *City of Seattle v. Benshoof*, Case No. 669329 (Municipal Court of Seattle Aug. 15, 2022). When Benshoof failed to appear in person for a hearing, the judge issued a bench warrant on June 21, 2023. *See id.*

Based on Benshoof's allegations, the charge appears to relate to a conflict he had with Jessica Owen. *See generally* Dkt. No. 9 at 146–149. Benshoof and Owen have a child, A.R.W. *Id.* at 24 ¶ 30. They appear to dispute the custody arrangement for A.R.W. *See id.* at 205 ¶¶ 1496–99 . Benshoof alleges the judge presiding over his municipal court case disregarded his argument that the court lacked jurisdiction. *Id.* at 147 ¶¶ 1094–96.

Benshoof argues a TRO is necessary to prevent irreparable harm. Dkt. No. 20 at 18. He generally lists the same harms identified in his first TRO motion: "the fact that [he] cannot call 911 to make any future victim witness complaint without facing immediate unlawful imprisonment" and that these retaliatory prosecutions cause a loss of First Amendment rights. *Id.*; *see also* Dkt. No. 16 at 10. Like the first TRO motion, Benshoof argues he will prevail on the merits because he "is entirely innocent of any wrongdoing, and is in fact the victim," leading the Court to dismiss

---

agency meets the requirements for judicial notice under the Rules. *See Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 n. 2 (9th Cir. 2006) (holding that facts contained in public records are considered appropriate subjects of judicial notice). Therefore, the Court takes judicial notice of the municipal court docket in *City of Seattle v. Benshoof*, Case No. 669329 (Municipal Court of Seattle Nov. 8, 2022) and *City of Seattle v. Benshoof*, Case No. 671384 (Municipal Court Mar. 14, 2023) (available at http://web.seattle.gov/SMC/ECFPortal/default.aspx).

his underlying municipal proceeding, Case No. 669329. Dkt. No. 20 at 21; *see also* Dkt. No. 16 at 15.

**1.3. Benshoof's third TRO.**

On October 4, 2023, Benshoof moved for another TRO, even though his arguments largely mirror those found in his second TRO motion. *Compare* Dkt. No. 20 *and* Dkt. No. 23. In this motion, Benshoof claims he is in danger of imminent arrest because of a bench warrant issued in municipal Case No. 671384. Dkt. No. 23 at 1. The City brings 89 charges; two stalking charges, a custodial interference charge, and 86 charges of violating a vulnerable adult protection order. *See City of Seattle v. Benshoof*, Case No. 671384 (Municipal Court of Seattle Mar. 14, 2023). The disposition is pending, and Benshoof has again failed to appear. *Id.* Benshoof makes the same jurisdictional arguments found in his second TRO motion and repeats the same arguments about irreparable harm and likelihood of success on the merits. *See* Dkt. Nos. 20 at 18–19, 21; 23 at 19–20, 22.

## 2. DISCUSSION

**2.1. Legal standard for temporary restraining orders.**

In this District, TRO motions that do not meet the ex parte requirements must be served on the opposing party and "include a certificate of service[.]" LCR 65(b)(1). Formal service of process need not occur before moving for a TRO, so long as the adverse party has actual notice of the TRO motion. *H-D Michigan, LLC v. Hellenic Duty Free Shops S.A.*, 694 F.3d 827, 842 (7th Cir. 2012); *Glasser v. Blixseth*, No. C14-1576 RAJ, 2014 WL 12514894, at *1 (W.D. Wash. Nov. 14, 2014). Once notified of the TRO, "the adverse party must (1) file a notice indicating

whether it plans to oppose the motion within twenty-four hours after service of the motion, and (2) file its response, if any, within forty-eight hours after the motion is served." LCR 65(b)(5).

If "notice of a motion for a temporary restraining order is given to the adverse party, the same legal standard as a motion for a preliminary injunction applies." *Fang v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 16-cv-06071, 2016 WL 9275454, at *1 (N.D. Cal. Nov. 10, 2016), *aff'd*, 694 F. App'x 561 (9th Cir. 2017). In evaluating the merits of a motion for a temporary restraining order, courts consider the (1) likelihood of success on the merits; (2) irreparably injury to the moving party; (3) any substantial injury to other interested parties; and (4) public interest. *Washington v. Trump*, 847 F.3d 1151, 1164 (9th Cir. 2017). The first factor—likely success on the merits—is the most important. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). If the moving party does not show likelihood of success on the merits, the court need not consider the other three factors. *Id.* (citing *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir.2013)).

## 2.2. Benshoof fails to establish he is likely to succeed on the merits of any of his TRO motions.

Benshoof notified the City that he would be seeking temporary restraining orders by sending copies of his motions to its legal service email address. Dkt. Nos. 16 at 18; 20 at 24; 23 at 25. The City appeared and responded to Benshoof's TRO

motions. Dkt. Nos. 17, 18, 21, 24, 26. The City argues Benshoof's claims are barred by *Younger v. Harris*, 401 U.S. 37 (1971). Dkt. No. 21 at 2.[2] The Court agrees.

From Benshoof's arguments, it is doubtful the causes of action asserted entitle him to the relief he seeks. It appears the allegations above relate to Benshoof's Section 1983 claims that the City violated his First, Eighth, and Fourteenth Amendment rights and engaged in a malicious prosecution. He alleges the charges violated his First Amendment rights because he had religious reasons for not wearing a mask, and that the municipal court set unreasonable bail and warrants in violation of the Eighth Amendment. Dkt. No. 9 at 188 ¶ 1383, 189 ¶ 1391; *see generally* 201–02. He also alleges his due process rights were violated because he could not present an exculpatory video to the jury. *Id.* at 208 ¶ 1519.

Because Benshoof seeks relief related to an ongoing criminal proceeding in municipal court, his claims will likely be barred by *Younger* abstention. Federal courts will not interfere were "(1) there is 'an ongoing state judicial proceeding'; (2) the proceeding 'implicate[s] important state interests'; (3) there is 'an adequate opportunity in the state proceedings to raise constitutional challenges'; and (4) the requested relief 'seek[s] to enjoin' or has 'the practice effect of enjoining' the ongoing state judicial proceeding." *Arevalo v. Hennessy*, 882 F.3d 763, 765 (9th Cir. 2018) (quoting *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 758

---

[2] The City also argues Benshoof's claims cannot proceed under *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). Dkt. No. 21 at 2. Because it appears municipal court Case Nos. 656749, 669329, and 671384 remain ongoing, the Court applies the *Younger* abstention doctrine and finds it unnecessary to also analyze the motions under *Heck*.

(9th Cir. 2014)). Where there is bad faith, harassment, or some other extraordinary circumstances that would make abstention inappropriate, *Younger* does not apply. *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n.*, 457 U.S. 423, 435 (1982).

Here, there are multiple ongoing proceedings in municipal court in which Benshoof has failed to appear. The proceedings implicate local interests because the charges concern the City's ability to enforce local trespass and theft laws, as well as uphold its protective orders. Further, Benshoof does not allege the municipal court forum prevented him from raising his constitutional and jurisdictional claims. The requested relief would effectively disrupt and invalidate the municipal court proceedings given that Benshoof asks the Court to enjoin enforcement of another court's warrants.

Finally, Benshoof fails to establish bad faith, harassment, or extraordinary circumstances that would justify the Court setting aside abstention under *Younger*. As the City points out, Benshoof does not show harms beyond those "incidental to every criminal proceeding brought lawfully and in good faith." *Younger*, 401 U.S. at 47 (citation omitted). Because federal abstention is almost certain, Benshoof fails to show likelihood of success on the merits and therefore does not meet the requirements for a temporary restraining order.

**2.3. The Court will issue summonses if it finds Benshoof has stated a plausible claim for relief after completing its review of Benshoof's complaint under 28 U.S.C. § 1915(e)(2).**

When a litigant proceeds *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks

monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(i)–(iii). As stated above, Benshoof's complaint is 280 pages long, and alleges 46 causes of action against 42 defendants. Dkt. No. 9. Benshoof also filed 2,034 pages of "Exhibits." Dkt. Nos. 13-1, 13-2, 13-3, 13-4. Given the length and number of claims, the Court has not yet completed its review under 28 U.S.C. § 1915(e)(2)(i)–(iii). Once completed, the Court will issue summonses, or dismiss all or part of Benshoof's complaint with or without leave to amend.

In addition, Benshoof filed two "Emergency Motion[s] for Preliminary Injunction" under Fed. R. Civ. P. 65(a). Dkt. Nos. 14, 15. Benshoof noted his motions for the same day he filed them. But under LCR 7(d)(3), motions seeking a preliminary injunction are noted "no earlier than the fourth Friday after filing and service of the motion." Thus, the Court revises the noting dates for Dkt. Nos. 14 and 15 to October 13, 2023.

## CONCLUSION

Accordingly, the Court DENIES Benshoof's motions for a temporary restraining order. Dkt. Nos. 16, 20, 23. The Clerk is directed to change the noting dates for Dkt. Nos. 14 and 15 to October 13, 2023.

Dated this 6th day of October, 2023.

Jamal N. Whitehead
United States District Judge

HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KURT BENSHOOF,

        Plaintiff,

    v.

DAVID KEENAN, *et al*.,

        Defendants.

Case No. C23-751-RAJ

**ORDER DISMISSING COMPLAINT AND DENYING MOTION FOR TEMPORARY RESTRAINING ORDER**

## I.    INTRODUCTION

This matter comes before the Court on *pro se* Plaintiff's Motion for a Temporary Restraining Order ("TRO"). Dkt. # 15. For the reasons that follow, the Court **DENIES** Plaintiff's motion and dismisses the habeas petition.

## II.    DISCUSSION

### A. Dismissal for lack of jurisdiction

A judge ... may dismiss an action sua sponte for lack of jurisdiction." *Franklin v. State of Or., State Welfare Div*., 662 F.2d 1337, 1342 (9th Cir. 1981); see also Fed. R. Civ. P. 12(h)(3). Having reviewed the complaint, the record, and the applicable law, the Court concludes there is no jurisdiction to hear this petition. The record shows that a final order granting child custody to Defendant Owen was entered in October 2022 and

ORDER – 1

**0552**

Plaintiff's prior appeals in state court for habeas relief have been denied. Dkt. # 18-1 at 2, 23, 27.

It is well-settled that federal district courts have no jurisdiction over child custody issues, which are exclusively matters of state law. *See Ankenbrandt v. Richards*, 504 U.S. 689, 702-704 (1992) (holding that the domestic relations exception to federal subject matter jurisdiction "divests the federal courts of power to issue divorce, alimony and child custody decrees."). Although styled as a habeas petition, Plaintiff's allegations here raise issues of child custody. Federal habeas corpus has never been available to challenge parental rights or child custody. *See Lehman v. Lycoming County Children's Services*, 458 U.S. 502, 511 (1982). A federal habeas petition challenging a state's child-custody determination simply seeks to relitigate the petitioner's interest in his or her own parental rights. *See id*. A federal court has no jurisdiction to relitigate these interests; and federal courts are not courts of appeal from state decisions. *See D.C. Ct. App. v. Feldman*, 460 U.S. 462, 486 (1983). Accordingly, the petition is **DISMISSED** for lack of jurisdiction.

**B. Temporary restraining order**

A TRO is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).[1] To obtain a TRO, Plaintiff must show that (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009).

Having found no jurisdiction to hear this petition, the Court finds that Plaintiff has not established a likelihood of success on the merits, irreparable harm in the absence of a TRO, that the balance of equities tips in his favor, or that an injunction is in the public interest. Therefore, the Court **DENIES** Plaintiff's Motion for a TRO. Dkt. # 15.

---

[1] The standard for issuing a TRO is identical to the standard for issuing a preliminary injunction. *New Motor Vehicle Bd. of California v. Orrin W. Fox Co.*, 434 U.S. 1345, 1347 (1977).

ORDER – 2

### III.   CONCLUSION

For the reasons above, the Court **DENIES** Plaintiff's motion for a Temporary Restraining Order ("TRO") and dismisses the habeas petition with prejudice. Dkt. # 15.

DATED this 12th day of June, 2023.

_Richard A. Jones_

The Honorable Richard A. Jones
United States District Judge

ORDER – 3

**0554**

FILED
SUPREME COURT
STATE OF WASHINGTON
5/8/2023
BY ERIN L. LENNON
CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

KURT BENSHOOF,

               Petitioner,

v.

HON. DAVID KEENAN, ADRIAN
DIAZ, and JESSICA R. OWEN,

               Respondents.

No. 1 0 1 9 6 4 - 5

RULING DISMISSING PETITION

Pro se petitioner Kurt Benshoof filed a pleading directly in this court, entitled "VERIFIED PETITION FOR COMMON LAW WRIT OF HABEAS CORPUS" (petition), together with a motion for leave to file said petition. In response to questions from the deputy clerk, petitioner clarified he is not filing a personal restraint petition but is instead seeking relief by way of a common-law habeas petition. To the extent this petition seeks to initiate an original action contemplated under article IV, section 4 of the Washington Constitution, the petition is dismissed pursuant to RAP 16.2(d), as explained more fully below.

The instant petition consists of 87 pages of text, not including the title page, table of contents, and table of authorities. As indicated, petitioner also filed a motion for leave to file the petition, apparently trying to comply with a King County Superior

0555

Court order restricting petitioner's filing of pleadings in that court.[1] The motion is unnecessary here but is granted to expedite ruling on the petition.

The petition is packed with factual allegations but there are no supporting exhibits. The petition cites documents apparently contained in lower court files but none of those have been provided here. Accordingly, there is no way for this court to assess the veracity of petitioner's bald allegations.

The petition names as respondents King County Superior Court Judge David Keenan, Seattle Police Chief Adrian Diaz, and private citizen Jessica Owen. To the extent the petition is styled as an original action against a state officer, it cannot be lodged against respondent Owen. RAP 16.2(a).

As for petitioner's many claims for relief, they mainly relate to a child custody dispute between petitioner and respondent Owen. Petitioner claims Owen wrongfully took custody of the child and ownership of his motor vehicle. He also castigates COVID-19 mask and vaccine mandates. He complains that the child has been vaccinated without his permission. Petitioner contends he is the victim of religious discrimination. He claims he has been unlawfully arrested. He claims he has been barred from access to the courts and court records. Petitioner demands this court issue a show cause order directed at respondents compelling them to be examined based on his allegations.

Petitioner claims to be seeking a writ of habeas corpus, but Washington appellate courts no longer consider petitions for writs of habeas corpus; that procedure has been superseded by personal restraint procedures set forth in Title 16 of the Rules of Appellate Procedure. RAP 16.3(b). It is also uncertain petitioner is restrained for purposes of a personal restraint petition, *see* RAP 16.4(a) (personal restraint petitioner

---

[1] It appears there is a pending action in Division One of the Court of Appeals concerning the superior court's order.

must be under "restraint"). In an event, petitioner has expressly stated that he is not seeking relief by personal restraint petition. Upon close inspection of the petition, it seems petitioner asserts claims vaguely sounding in mandamus or prohibition, two ancient forms of writ this court has original jurisdiction to issue under article IV, section 4 of our state's constitution. The petition here will be treated as such.[2] Accordingly, before me for determination is whether to retain the petition in this court for a decision on the merits, transfer it to the superior court for further proceedings, or dismiss it outright. RAP 16.2(d).[3]

Writs of mandamus or prohibition are extraordinary remedies turning on, in the case of mandamus, the existence of nondiscretionary duties of the respondent officials or, in the case of prohibition, an official acting without or outside of their jurisdiction. *See*, *e.g.*, *Colvin, et al. v. Inslee, et al.*, 195 Wn.2d 879, 890-94, 467 P.3d 953 (2020) (discussing mandamus); *Riddle v. Elofson*, 193 Wn.2d 423, 430, 439 P.3d 647 (2019). Petitioner fails to identify any duties that can be compelled by a writ of mandamus or any extrajurisdictional actions that must be suspended or prevented by way of a writ of prohibition. More critically, petitioner has not persuasively shown that he has no plain, speedy, and adequate remedies at law—in state or federal court—for all of the alleged injustices he complains of. *See King County v. Sorensen*, 200 Wn.2d 252, 258, 516 P.3d 388 (2022) (mandamus); *Riddle*, 193 Wn.2d at 430 (prohibition). An original action in mandamus or prohibition is not cognizable under these

---

[2] Quo warranto and other writs necessary for this court's appellate or revisory jurisdiction are not at play here. CONST. art. IV, § 4.

[3] Petitioner contends the Rules of Appellate Procedure do not apply here because he is seeking a "common law" writ, but these rules do apply because they set forth the procedures necessary for seeking relief in this court. Original actions of the type contemplated by petitioner are governed by procedures set forth in RAP 16.2. Procedural rules governing motions filed in this court set forth in Title 17 RAP govern. RAP 16.2(c). It is not necessary to call for an answer to the petition in this instance. RAP 17.4(c)(1).

circumstances, and nothing else in petitioner's filings indicates he is entitled to relief directly in this court.

The petition is dismissed.

_____
COMMISSIONER

May 8, 2023

1

2   The Honorable Marshall Ferguson

3

4

5

6

7           SUPERIOR COURT OF THE STATE OF WASHINGTON
                        FOR KING COUNTY
8

9   KURT BENSHOOF,                        NO. 22-2-15958-8 SEA

            Plaintiff,
10                                         ORDER DENYING PLAINTIFF KURT
        v.                                 BENSHOOF'S REQUEST FOR LEAVE TO
11                                         FILE PETITION FOR WRIT OF *HABEAS*
    NATHAN CLIBER, JESSICA OWEN,           *CORPUS*
12  MAGALIE LERMAN, and OWEN
    HERMSEN,
13
            Defendants.
14
            On January 31, 2024, Plaintiff Kurt Benshoof filed with this Court an application for
15
    approval to file a petition for a writ of *habeas corpus* against Jessica Owen, Magalie Lerman, and
16
    Nathan Cliber, each of whom is protected from Mr. Benshoof's abusive litigation by this Court's
17
    March 31, 2023 Order Restricting Abusive Litigation Of Kury Benshoof ("Abusive Litigation
18
    Order"). Sub No. 189.
19
            The Court has reviewed Mr. Benshoof's application materials. Based upon such review, it
20
    is
21
            ORDERED, ADJUDGED, AND DECREED that Mr. Benshoof's request for leave to file
22
    his proposed *habeas corpus* petition is DENIED. The Abusive Litigation Order bars Mr.
23
    Benshoof's proposed petition against Ms. Owen, Ms. Lerman, and Mr. Cliber for the reasons set
24
    forth below.
25

ORDER DENYING PLAINTIFF KURT
BENSHOOF'S REQUEST FOR LEAVE          **0559**          JUDGE MARSHALL FERGUSON
TO FILE PETITION FOR WRIT OF                            KING COUNTY SUPERIOR COURT
*HABEAS CORPUS* - 1                                     516 THIRD AVENUE
                                                        SEATTLE WA 98104
                                                        (206) 477-1513

1
2
3
4
5
6
7
8
9

Washington's state constitution secures for citizens the right to petition for a writ of *habeas corpus*. "The privilege of the writ of *habeas corpus* shall not be suspended, unless in case of rebellion or invasion the public safety requires it." Const. art. 1, § 13. The writ referred to in our constitution is more fully known as a writ of *habeas corpus ad subjiciendum*, which is a writ "directing an official who is detaining another to show the cause of that person's confinement, and why he or she should not be released." *Petition of Runyan*, 121 Wn.2d 432, 853 P.2d 424 (1993). "The writ is not a substitute for an appeal or a writ of error." *Fleetwood v. Rhay*, 7 Wn. App. 225, 226, 498 P.2d 891 (1972), citing *Massey v. Rhay*, 76 Wn.2d 78, 455 P.2d 367 (1969). Yet, that is precisely what Mr. Benshoof seeks to accomplish here.

10
11
12
13
14
15
16
17
18

In his proposed petition, Mr. Benshoof seeks to reverse a civil restraining order protecting defendant Jessica Owen entered in a separate parentage action filed in 2021 in this Court[1]; he demands that this Court investigate "whether family court had jurisdiction" in that other matter and look into allegedly fraudulent proceedings in that case; and he claims that assorted constitutional violations occurred in those other proceedings. In other words, Mr. Benshoof clearly intends to use his proposed *habeas* petition as a substitute for appeal of those other proceedings. His petition is frivolous and without merit. If permitted to proceed, Mr. Benshoof's *habeas corpus* proceeding would be antithetical to justice and would only serve to further harass and burden Ms. Owen, Ms. Lerman, and Mr. Cliber through abusive litigation.

19
20

Accordingly, Mr. Benshoof is barred from filing his *habeas corpus* petition.

DATED this 4th day of March, 2024.

21
22
23

_____
Judge Marshall Ferguson
King County Superior Court

24
25

_____
[1] King County Superior Court Case No. 21-5-00680-6 SEA.

ORDER DENYING PLAINTIFF KURT
BENSHOOF'S REQUEST FOR LEAVE
TO FILE PETITION FOR WRIT OF
*HABEAS CORPUS* - 2

**0560**

1          Hon. Mark A. Larrañaga

2

3

4

5

6

7    IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
     FOR KING COUNTY

8

9    KURT A. BENSHOOF, *Pro Se,*

10                          Plaintiff,          No.    23-2-23752-8 SEA

11          vs.                                 ORDER DENYING PLAINTIFF'S
                                                PETITION FOR THE WRIT OF
12   CITY OF SEATTLE,                           PROHIBITION

13                          Defendant.

14

15        THIS MATTER having come before the undersigned judge of the above-entitled Court

16   pursuant to City's Partial Motion to Dismiss in the above-entitled cause, and the Court has read and

17   considered the following:

18        1.  Plaintiff's Petition for Writ of Prohibition,

19        2.  City's Response to Plaintiff's Petition for Writ of Prohibition,

20        3.  Declaration of Dallas LePierre in Objection to Plaintiff's Petition for Writ of Prohibition,

21        4.  Declaration of Katrina Outland in Objection to Plaintiff's Petition for Writ of Prohibition.

22

23

ORDER DENYING PLAINTIFF'S
PETITION FOR THE WRIT OF PROHIBITION - 1

(23-2-23749-8 SEA)                    **"' (1**

1    Argument was also heard on January 26, 2024.

2    Based on the foregoing, it is hereby ORDERED that Plaintiff's Petition for Writ of Prohibition

3    is **DENIED**.

4    DATED this 5th day of February, 2024.

6                                    *Mark A. Larrañaga*
                                     Hon. Mark A. Larrañaga
7                                    King County Superior Court

ORDER DENYING PLAINTIFF'S
PETITION FOR THE WRIT OF PROHIBITION - 2

(23-2-23749-8 SEA)                              **0562**

**SUPERIOR COURT OF WASHINGTON**
**COUNTY OF KING**

| | |
|---|---|
| In re: ) | |
| ) | |
| JESSICA R. OWEN, ) | **NO. 21-5-00680-6 SEA** |
|      Petitioner, ) | |
| ) | **ORDER DENYING RESPONDENT'S** |
| and ) | **MOTION TO VACATE** |
| ) | |
| KURT A. BENSHOOF, ) | |
|      Respondent. ) | **Clerk's Action Required** |

_____)

## JUDGMENT SUMMARY

A.  Judgment Creditor: JESSICA R. OWEN
B.  Judgment Debtor: KURT A. BENSHOOF
C.  Principal judgment amount                                          $5,040.00
D.  Interest to date of Judgment                                       $_____
E.  Attorney's fees                                                    $_____
F.  Costs                                                              $_____
G.  Other recovery amount                                             $_____
H.  Principal judgment shall bear interest at 12% per annum (1% per month).
I.  Attorney's fees, costs and other recovery amounts shall bear interest at _____% per annum.
J.  Attorney for Judgment Creditor: NATHAN CLIBER
K.  Attorney for Judgment Debtor: *pro se*

*Order and Judgment - Page 1*

0563

THIS MATTER having come on before the undersigned Judge of the above-entitled Court on the below-stated date; the court, having reviewed the file and records herein, now, therefore makes the following **FINDINGS:**

1) Respondent's *Motion for Order to Show Cause and Order to Vacate Judgment/Order re: King County Superior Court Case No. 21-5-00680-6 SEA Under CR 60* (hereafter "Motion to Vacate") is without merit.

2) The issues presented by Respondent in his *Motion to Vacate* flow from his mistaken belief that Petitioner was legally precluded from filing this action. His belief, or anger, or both led him to stop participating in the case and resulted him demanding that he not be contacted by Petitioner, her lawyer or generally any one else. Unsurprisingly, Petitioner filed a motion for default judgment, which a Court granted. Final orders then entered because Respondent was not participating.

3) He now requests that final orders be undone.

4) Mr. Benshoof's motion follows a string of frivolous pleadings which has resulted in him being designated a vexatious litigant. This motion is also frivolous. Additionally, Mr. Benshoof supported his motion with a declaration from his son, whom Mr. Benshoof is currently prohibited from contacting. This leads this Court to one of two conclusions: either Mr. Benshoof made up the declaration (in which case he is lying to this Court) or he procured it from the child, in which case he is violating a valid court order. Either of these actions is sanctionable and the latter is particularly egregious.

5) Sanctions are appropriate given this conduct.

It is therefore, hereby **ORDERED, ADJUDGED and DECREED:**

1) Respondent's request that final orders in this matter be vacated is **DENIED**, with prejudice.

2) Respondent is barred from initiating further Petitions, Motions, or other litigation under this cause number as a result of Judge Ferguson's *Order Granting Defendants' Joint Motion for a Vexatious Litigant Order Against Plaintiff, and Temporary Order Restricting Abusive Litigation by Kurt Benshoof,* and all subsequent orders related thereto, under KCSC Case No 22-2-15958-8 SEA.

3) Petitioner shall have a judgement against Respondent in the amount of $5,040.00, payable within 30 days of this order. Payment in the form of a cashier's check, payable to Petitioner, shall be delivered to Petitioner's attorney's office at the address below.

*Order and Judgment - Page 2*

**0564**

Dated:_____          _____
                                          Judge Sean P. O'Donnell

*Order and Judgment - Page 3*

**0565**

King County Superior Court
Judicial Electronic Signature Page

Case Number:    21-5-00680-6
Case Title:      OWEN VS BENSHOOF

Document Title:   ORDER DENYING MOTION/PETITION

Signed By:       Sean O'Donnell
Date:            March 24, 2023

_____

Judge：  Sean O'Donnell

This document is signed in accordance with the provisions in GR 30.

Certificate Hash:            22C471BDBBADB7622DCA6C95C191992CF79C14F6
Certificate effective date:  1/30/2019 8:24:49 AM
Certificate expiry date:     1/30/2024 8:24:49 AM
Certificate Issued by:       C=US, E=kcscefiling@kingcounty.gov, OU=KCDJA,
                             O=KCDJA, CN="Sean O'Donnell:
                             nHo0hQvS5hGLVE33AFk6yQ=="

Page 4 of 4

### SUPERIOR COURT OF THE STATE OF WASHINGTON
### KING COUNTY

| | |
|---|---|
| Kurt A. Benshoof, | NO. 22-2-11112-7 SEA |
| Petitioner | |
| | **Order On Writ of Habeas Corpus** |
| vs | |
| Judge David Keenan, | |
| Commissioner Jason Holloway, | |
| Nathan Cliber, | |
| Seattle Police Chief Adrian Diaz, | |
| Jessica R. Owen, | |
| Magalie Lerman, | |
| Respondents. | |

The Court, having reviewed the Petitioner's Writ and attached materials, and having reviewed the Court file and the Court files for the other cause numbers mentioned in the Writ, now decides that the Petitioner's Writ of Habeas Corpus should be DENIED without oral argument.  Therefore,

**IT IS SO ORDERED.**

Dated: July 21, 2022

Honorable Judge Steve Rosen

**0567**

IN THE MUNICIPAL COURT FOR THE CITY OF SEATTLE

CITY OF SEATTLE,                    )
                                    )    No. 671384
                Plaintiff,          )
                                    )
        vs.                         )
                                    )    MOTION FOR DETERMINATION OF
KURT BENSHOOF,                      )    PROBABLE CAUSE; MOTION FOR
                                    )    ARREST WARRANT; MOTION FOR
                Defendant.          )    CONDITIONS OF RELEASE
                                    )
                                    )

## I.      List of Attachments

A. Police report for related case 669329, GO#22-215424, from August 15, 2022.
B. GO# 20-268834 (non-DV firearms incident from September, 2020).
C. Temporary Restraining Order (TRO) and in King County Superior Court case 21-5-00680-6, issued November 3, 2021, and Order Amending the TRO on April 12, 2022.
D. Police reports for probable cause on this case:
    a. 21-241501: September 14, 2021
    b. 22-265177: September 29- October 3, 2022
    c. 22-262382: (also part of the September 30 incident in the above report)
    d. 22-338690: December 23, 2022
    e. 23-010065: January 11, 2023
    f. 23-21770: January 23, 2023
E. Permanent Restraining Order (RO) in 21-5-00680-6, issued October 21, 2022.
F. Final Parentage Order in 21-5-00680-6, issued October 21, 2022.
G. Excerpts of some chat messages between Mr. Benshoof and A.R.W. in support of probable cause.
H. Affidavit of minor A.R.W. in 22-2-15958-8 (one of Defendant's civil cases against the named victim and others).
I. Affidavit of one of the victims, Jessica Owen.

MOTION FOR DETERMINATION
OF PROBABLE CAUSE;
FOR ARREST WARRANT;
FOR CONDITIONS OF RELEASE

**0568**

## II.    Declaration

I, Katrina Outland, declare under penalty of perjury under the laws of the State of

Washington that the foregoing is true and correct to the best of my knowledge and belief:

1.  That I am an Assistant City Attorney for the City of Seattle and am familiar with the
    records and files in this case.

**Procedural Background (Related case 669329)**

2.  On November 7, 2022, the City initiated case 669329 by filing one count DV violation of
    a court order, alleged to have occurred on August 15, 2022.[1] Full facts are detailed in the
    GO report # 22-215424 (Attachment A). On this date, the Defendant, Kurt Benshoof,
    tailgated his ex-partner, Jessica Owen, while she was driving. He followed her all the
    way to her house and yelled out for their son-in-common, A.R.W. At the time, Ms. Owen
    had a temporary civil restraining order prohibiting Mr. Benshoof from contacting or
    being within 1000 feet of her or their child or their home. Attachment C.[2]

3.  Arraignment was held out of custody November 16. The Court set bail at $10,000 and
    issued a no-contact order protecting Ms. Owen.

    a.  During that hearing, the Court at one point increased bail to $25,000 after finding
        that Mr. Benshoof presented an increased risk of non-compliance; after Mr.
        Benshoof assured the Court he would not contact Ms. Owen, the Court then
        reduced bail back to $10,000.

4.  On November 22, the Court found Mr. Benshoof not in compliance after he failed to post
    a bond and refused to turn himself in to jail. The $10,000 bail was converted into a bench
    warrant.

5.  On December 21, Mr. Benshoof appeared on some of his other unrelated cases in this
    Court (662870, 659470, 656748, 656749, 656927). The Court denied his motion to

---

[1] Mr. Benshoof was originally taken into custody on this incident under case #667465, but the City did not file the case at that time in order to further investigate. The case was then re-filed under the current case #669329.

[2] This TRO was issued nearly a year earlier on November 3, 2021 as part of a complicated custody case 21-5-00680-6. King County Superior Court extended the TRO many times until a permanent restraining order was issued on October 21, 2022. Attachments C, E.

MOTION FOR DETERMINATION
OF PROBABLE CAUSE;
FOR ARREST WARRANT;
FOR CONDITIONS OF RELEASE

**0569**

Ann Davison
Seattle City Attorney
701 5th Ave., Suite 2050
Seattle, WA 98104-7097
(206) 684-7757

continue those cases, set all of his pending cases for trial, but maintained the $10,000 bench warrant on 669329 against Mr. Benshoof's objections.

    a. The Court also ordered that Mr. Benshoof be ordered to appear in person at readiness, specifically denying a Webex appearance.

6. At the readiness hearing on February 10, 2023 for case 669329, the trial was continued without objection. Mr. Benshoof appeared over Webex rather than in person.

    a. Also at the readiness hearing, the Court on its own motion quashed the $10,000 bench warrant against the City's objection. The Court did not impose any bail in place of the warrant.

7. Accordingly, Mr. Benshoof's condition of $10,000 bail in 669329 has now been exonerated without Mr. Benshoof ever posting a bond, paying the bail, or turning himself in to custody.

**Firearms History**:

8. Mr. Benshoof's known gun purchase history: Glock pistol 0.45, HAY103, purchased 06/13/2005 from Butch's Discount Guns.

9. On September 16, 2020, Mr. Benshoof was arrested and later charged under case 656927 (GO# 20-268834) for assault, criminal trespass (two counts), and unlawful use of a weapon to intimidate. Mr. Benshoof had been repeatedly returning to a Sprouts Market and aggressively confronting and assaulting employees about their mask policy; on September 16, he showed up with a "shotgun or rifle slung over his shoulder," and the employees called 911 rather than confront him because, as one of them told police, "I did not want to get shot." Attachment B.

    a. It is unclear to the City how Mr. Benshoof got possession of the firearm in this incident, as there is no rifle or shotgun in his purchase history.

    b. This case was sent out for trial in January, 2022, but Mr. Benshoof refused to comply with the Court's mask mandate at that time, and was put on bench warrant instead. He remained on bench warrant until February 24, 2023, when the City dismissed the case because the only witnesses had since moved out of state and could no longer testify at trial.

/
/

MOTION FOR DETERMINATION OF PROBABLE CAUSE; FOR ARREST WARRANT; FOR CONDITIONS OF RELEASE

**0570**

Ann Davison
Seattle City Attorney
701 5th Ave., Suite 2050
Seattle, WA 98104-7097
(206) 684-7757

**Summary of Police Narratives Supporting Probable Cause for This Case:**

1. Since the City began investigating the August 15 incident underlying case 669329, the City has received multiple police reports of Mr. Benshoof's subsequent violations of various no contact orders. The police reports with additional information are included in Attachment D, and summarized below:

    a. **21-241501: Date of Violation (DOV) September 14, 2021: (**This report details an incident prior to the TRO, so it is not a violation in and of itself. However, it does support PC for stalking, as it demonstrates how long Mr. Benshoof's behavior has been ongoing.) Mr. Benshoof blocks Ms. Owen's driveway with his car as she's attempting to drive A.R.W. to school. Mr. Benshoof stood out in the street and yelled at them while Ms. Owen and A.R.W. retreated to their house to wait for him to leave. The then-11-year-old A.R.W. told police he was "especially afraid of Benshoof and does not want to split time with him."

    b. **22-265177: DOV September 29, 2022; September 30, 2022; October 3, 2022:** One of Mr. Benshoof's friends known to Ms. Owen appeared at Ms. Owen's home with a packet of papers from Mr. Benshoof that the friend purported to be a lawsuit. According to the reporting officer: "Owen showed me the paperwork and it did not contain any valid case number, signature by a judge, or any other official elements that would lead me to believe it was anything other than a Word document created by Benshoof in an effort to intimidate Owen."

        i. The next day, September 30, the same friend showed up at Ms. Owen's house a second time with a similar batch of papers from Mr. Benshoof, which she left on the front door stoop.

        ii. On October 3, an unknown woman showed up at Ms. Owen's house, allegedly on Mr. Benshoof's behalf and in violation of the temporary restraining order 21-5-00680-6. The woman blocked the doorway with her legs, knocked incessantly on the front door, rang the doorbell so much that she broke the doorbell, and rattled the door handle attempting to enter the home.

    c. **22-262382: DOV September 30 (same incident as above).** Ms. Owen initially reported this incident on October 1 after discovering the manila envelope with

MOTION FOR DETERMINATION
OF PROBABLE CAUSE;
FOR ARREST WARRANT;
FOR CONDITIONS OF RELEASE

**0571**

Ann Davison
Seattle City Attorney
701 5th Ave., Suite 2050
Seattle, WA 98104-7097
(206) 684-7757

papers from Mr. Benshoof on her doorstep. On October 3, when she reported the above sequence of events, she was able to confirm the papers had been delivered by the same friend as the September 29 incident, after reviewing surveillance video.

d. **22-338690: DOV December 23:** A person unknown to Ms. Owen showed up at her house and gave a package to her 13-year-old son. The package was addressed to Ms. Owen's current partner, in handwriting she recognized to be Mr. Benshoof's, and was labeled "From: Santa North Pole." Inside were purported legal documents suing Ms. Owen's current partner.

   i. By this date, the temporary restraining order had been replaced by a permanent restraining order that required one of two specific process servers to deliver legal documents (Attachment E); neither of which delivered this package.

e. **23-010065: DOV January 11, 2023:** A different person unknown to Ms. Owen showed up at her house and started looking inside her windows while she and her partner were inside. They did not answer the door, and the person left.

   i. By this point, Ms. Owen had "signed up to receive court summons online instead of in person so [Mr.] Benshoof would have no reason to contact her. . . . [Ms.] Owen stated she believes [Mr.] Benshoof is doing this in an attempt to harass her."

f. **23-21770: DOV January 23, 2023:** Ms. Owen's son, A.R.W., told her Mr. Benshoof had been communicating with him in violation of the permanent restraining order and parentage order issued on October 21, 2022. (Attachments E, F). A.R.W. then went to Mr. Benshoof's house, where officers found them together.

   i. Officers managed to convince A.R.W. to leave the house, but Mr. Benshoof barricaded himself in his house and refused to come out or answer his phone, even after police called a hostage negotiator. The officers eventually decided to leave without attempting a potentially violent confrontation.

MOTION FOR DETERMINATION
OF PROBABLE CAUSE;
FOR ARREST WARRANT;
FOR CONDITIONS OF RELEASE

**0572**

Ann Davison
Seattle City Attorney
701 5th Ave., Suite 2050
Seattle, WA 98104-7097
(206) 684-7757

g. The primary officer in the January 23 incident also noted an additional report involving Mr. Benshoof and Ms. Owen, which the City has not yet received and is still investigating: 22-173684.

**Additional Supporting Evidence**

2. On the January 23 incident, Ms. Owen discovered nearly a year of chat conversations between A.R.W. and Mr. Benshoof. The City was able to obtain 485 screenshots of around 2000 messages, only a small sample of which are included and organized by DOV in Attachment G.

a. Mr. Benshoof (whose handle is "Seraph d'Mortego") frequently talks to A.R.W. ("Wrench") about his efforts to intimidate and harass Ms. Owen (also referred to by her nickname, "Jade"):



b. At times, he specifically mentions sending people to Ms. Owen's house for some of the incidents she reported to the police (here referring to the September 29/30 violations):



MOTION FOR DETERMINATION
OF PROBABLE CAUSE;
FOR ARREST WARRANT;
FOR CONDITIONS OF RELEASE

**0573**

Ann Davison
Seattle City Attorney
701 5th Ave., Suite 2050
Seattle, WA 98104-7097
(206) 684-7757

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

c. Many of these chat communications prior to October 21, 2022 violate the TRO issued in November 2021, in which Mr. Benshoof was allowed to communicate with A.R.W., but not about any legal proceedings. Attachment C.

    i. For example, Mr. Benshoof tells A.R.W. that "The Court Order has no legal authority in reality."



    ii. At times, Mr. Benshoof even enlists the young boy to write legal documents on his behalf:



MOTION FOR DETERMINATION
OF PROBABLE CAUSE;
FOR ARREST WARRANT;
FOR CONDITIONS OF RELEASE

**0574**

Ann Davison
Seattle City Attorney
701 5th Ave., Suite 2050
Seattle, WA 98104-7097
(206) 684-7757

d. All of the chats from October 21 and after violated the permanent RO, in which Mr. Benshoof "shall make <u>no attempts whatsoever</u> to contact the protected person or the child" (Attachment E, emphasis in original).

3. Subsequent to January 23, Mr. Benshoof actively *continues* to violate the no contact order protecting his son. For example, on February 10, he filed an affidavit purportedly written by A.R.W., in which Mr. Benshoof signs as a witness "that [A.W.] did willingly and knowingly declare all herein to be true. . . and did affix his signature to an Affidavit stating verbatim the foregoing statements as true". Attachment H. This affidavit is part of a civil case that Mr. Benshoof has initiated in Superior Court against Ms. Owen, her family law attorney, her current partner, and another friend of Ms. Owen.

a. Mr. Benshoof also discussed this plan extensively with A.R.W. beforehand in violation of the RO, and wrote the boy's affidavit for him:



Seraph d'Mortego 01/06/2023 10:02 AM
Can I email you a Declaration to look over for confirmation it's all accurate from your personal knowledge?

4. Ms. Owen has contacted the City throughout this process and expressed that she is afraid for herself and her son's and partner's safety. She has provided the City with a signed declaration detailing her fears. Attachment I.

I declare that the foregoing is true and correct, based upon information and belief, under penalty of perjury and the laws of the State of Washington.

<u>2023 Seattle, WA</u>                    <u>.s. Katrina Outland</u>
DATE AND PLACE                    Katrina Outland, WSBA #54342

## MOTION FOR DETERMINATION OF PROBABLE CAUSE

Pursuant to CrRLJ 2.2(a), the City requests the Court determine that the above declaration of facts and attached supporting documentation establishes probable cause to believe the defendant

MOTION FOR DETERMINATION
OF PROBABLE CAUSE;
FOR ARREST WARRANT;
FOR CONDITIONS OF RELEASE

**0575**

Ann Davison
Seattle City Attorney
701 5th Ave., Suite 2050
Seattle, WA 98104-7097
(206) 684-7757

committed these crimes. The arrest of the above-named defendant is necessary to prevent further harm to the victims and the community.

## MOTION FOR ARREST WARRANT & FOR CONDITIONS OF RELEASE

The defendant has committed the crimes of Stalking, Custodial Interference, and many Violations of a Court Order. In the interest of safety and preventing further harm to the victims and community at large, a warrant should be issued as provided in CrRLJ 2.2(b)(2)(i), based on Mr. Benshoof's likelihood to commit a violent offense. Additionally, the City requests bail be set for $250,000 on the basis of Mr. Benshoof's blatant disregard of multiple court orders and interfering with the administration of justice; for new criminal law violations; and for presenting a substantial danger. CrRLJ 3.2.

As of the writing of this motion, Mr. Benshoof has not posted any bond or turned himself in on the $10,000 bail the Court initially issued in case 669329. Instead, he flagrantly refused to recognize the Court's authority or jurisdiction, and the Court issued a bench warrant for his arrest over four months ago, on November 22, 2022. Since then, Mr. Benshoof has still refused to appear in person for his hearings, has continued violating the Superior Court's and this Court's no contact orders, has continued a relentless campaign of interfering with Ms. Owen's life and her relationship with her son and family, and has manipulated A.R.W. to the point of the boy essentially aiding in his own kidnapping. He has directed his son how to lie to police:

MOTION FOR DETERMINATION
OF PROBABLE CAUSE;
FOR ARREST WARRANT;
FOR CONDITIONS OF RELEASE

0576

Ann Davison
Seattle City Attorney
701 5th Ave., Suite 2050
Seattle, WA 98104-7097
(206) 684-7757



and sneak out of the house:



**Seraph d'Mortego** 01/03/2023 5:52 PM
Do they have cameras on all doors?  What about the garage door?  You could leave by the garage door if they don't have a camera on it
That way if they have the door cameras linked to their phone they won't know

and delete evidence:

**Seraph d'Mortego** 01/11/2023 9:34 AM
If they are gonna take it at bedtime, can you delete the Discord app to remove ANY chance of them finding anything just to be on the safe side?  I don't want them to have anything to use

At several points throughout the nine-month recorded conversation, A.R.W. expresses

some hesitation or remorse, only to have his own father question his bravery:

 **Seraph d'Mortego**
I was pushing the shopping cart around and didn't realize you were in n tears following me
Before in the store
Then the cops arrived at the store and I saw you were crying and grabbed you with my left arm

I'm so so sorry I pushed you too fast.  I was just worried you wouldn't be brave enough when the shit hit the fan if I didn't push you to be more outwardly assertive and defiant

By contrast, when A.R.W. does respond in a way in which Mr. Benshoof approves, he

compares the boy to the heroic character Harry Potter:

MOTION FOR DETERMINATION
OF PROBABLE CAUSE;
FOR ARREST WARRANT;
FOR CONDITIONS OF RELEASE

0577

Ann Davison
Seattle City Attorney
701 5th Ave., Suite 2050
Seattle, WA 98104-7097
(206) 684-7757



Mr. Benshoof uses the legal system as a weapon by filing a barrage of civil complaints against Ms. Owen and anyone who dares to assist her, while he simultaneously refuses to recognize any court's authority over himself. He sends third parties to Ms. Owen's house, creating in her a constant fear of being watched even in her own home. She has watched, silent in terror, from the inside of her own front door while an agent of Mr. Benshoof pressed the doorbell until it broke, hammered on the door and rattled the door handle in an attempt to break in. Perhaps most egregiously, Mr. Benshoof has turned their own young boy into a method of surveilling and harassing his own mother. In the clip above, Mr. Benshoof was encouraging A.R.W. to eavesdrop on a phone conversation between Ms. Owen and her lawyer. In other examples, he asks the boy to go through his mother's files:

MOTION FOR DETERMINATION
OF PROBABLE CAUSE;
FOR ARREST WARRANT;
FOR CONDITIONS OF RELEASE

0578

Ann Davison
Seattle City Attorney
701 5th Ave., Suite 2050
Seattle, WA 98104-7097
(206) 684-7757

And who has been visiting:



And what the family's movements are:



MOTION FOR DETERMINATION
OF PROBABLE CAUSE;
FOR ARREST WARRANT;
FOR CONDITIONS OF RELEASE

0579

Ann Davison
Seattle City Attorney
701 5th Ave., Suite 2050
Seattle, WA 98104-7097
(206) 684-7757

And yet, since he promised this Court at his arraignment on November 16 that he would follow the Court's orders, Mr. Benshoof has faced no consequences. By contrast, the Court even quashed his bench warrant without Mr. Benshoof ever appearing in person as required, nor paying a single dollar of his bail. That bench warrant was still active on January 23, when SPD felt the need to call in a hostage negotiator to try to coax him out of his house, yet he has remained out of custody to this day. Now, he is manipulating Ms. Owen's 13-year-old son into giving Mr. Benshoof full control over the young boy's life, blatantly defying every fact finding and order of the Superior Court.

The City has no confidence that Mr. Benshoof will post a bond of any amount, nor willingly turn himself in to custody, nor follow any promise he makes the Court. He is a danger to the specific victims in this case, Ms. Owen and A.R.W., and to the community at large. Mr. Benshoof extends his harassment campaign against Ms. Owen to her partner, her attorneys, and her friends; he has also demonstrated that he has access to firearms not in his purchase history, and is not afraid to use them to intimidate strangers in public. At a minimum, the City is requesting $250,000 bail be imposed, and an immediate warrant be issued for his arrest and remand into custody.

DATED this 14 day of March, 2023

Respectfully submitted,

_Katrina Outland_

_____

Katrina Outland, WSBA #54342
Assistant City Attorney

MOTION FOR DETERMINATION
OF PROBABLE CAUSE;
FOR ARREST WARRANT;
FOR CONDITIONS OF RELEASE

**0580**

Ann Davison
Seattle City Attorney
701 5th Ave., Suite 2050
Seattle, WA 98104-7097
(206) 684-7757

IN THE MUNICIPAL COURT OF THE CITY OF SEATTLE,
KING COUNTY, WASHINGTON

CITY OF SEATTLE,                    )
                                   )
                                   )
          Plaintiff,               )   No. 671384
                                   )
     vs.                           )   **ORDER DETERMINING PROBABLE**
                                   )   **CAUSE; DIRECTING ISSUANCE OF**
                                   )   **ARREST WARRANT; IMPOSING**
KURT BENSHOOF,                     )   **CONDITIONS OF RELEASE**
                                   )
          Defendant.               )
                                   )

The Court has reviewed the City's motion and probable cause materials, including police reports, selections of chats between Mr. Benshoof and his son/victim A.R.W., and the affidavit of intimate partner victim Ms. Owen. Hereby, the Court determines that probable cause exists to believe that the defendant committed two counts of Stalking in violation of SMC 12A.06.035/RCW 9A.46.110, one count of custodial interference in violation of SMC 12A.06.300, and 83 counts of Violation of a Court Order in violation of SMC 12A.06.180/RCW 26.50.110 on or about September 14, 2021-March 10, 2023.

The Court, also having reviewed the attached documents, hereby determines that there is a substantial danger that Kurt Benshoof will commit a violent crime and interfere with the administration of justice.

NOW, THEREFORE, IT IS ORDERED that the Clerk of Seattle Municipal Court issue a warrant, returnable forthwith, for the arrest of Kurt Benshoof; and

IT IS FURTHER ORDERED that the following conditions of release be imposed so that the defendant will not pose a substantial danger to the community:

a.   That the defendant post bail in the amount of $250,000;

MOTION FOR DETERMINATION
OF PROBABLE CAUSE;
FOR ARREST WARRANT;
FOR CONDITIONS OF RELEASE

**0581**

Ann Davison
Seattle City Attorney
701 5th Ave., Suite 2050
Seattle, WA 98104-7097
(206) 684-7757

b. That, should the defendant post bail, he be released to Sentinel for Electric Home Monitoring with GPS;

c. That the defendant keep the court informed of his current address;

d. That the defendant have no contact with Jessica Owen and A.R.W. per the existing written No Contact Order in case 669329 and the Restraining Order in King County Superior Court 21-5-00680-6;

e. That the defendant not possess any firearms or other weapons;

f. That the defendant not reside at a residence where firearms are located;

g. That the defendant surrender any firearms or other dangerous weapons that he owns or possesses, and surrender any permit related to the possession of firearms; and

h. That the defendant commit no criminal law violations.

DONE IN OPEN COURT this 14 day of March, 2023.

_____
Judge

Presented by: Katrina Outland

_____
Assistant City Attorney
WSBA #54342

MOTION FOR DETERMINATION
OF PROBABLE CAUSE;
FOR ARREST WARRANT;
FOR CONDITIONS OF RELEASE

**0582**

Ann Davison
Seattle City Attorney
701 5th Ave., Suite 2050
Seattle, WA 98104-7097
(206) 684-7757



## IN THE MUNICIPAL COURT OF THE CITY OF SEATTLE

THE CITY OF SEATTLE, PLAINTIFF

vs

Kurt Benshoof

_____,
Defendant

### Domestic Violence No-Contact Order

☑ Pre-Trial ☐ Post Conviction ☐ 72-Hour Hold-3.2.1(f)
☐ Replacement Order (paragraph 8)
Clerks Action Required (paragraph 7)

**Case #** 671384
_____

**This no-contact order expires on** 07/05/2029 .
or ☐ 1 year ☐ 2 years ☑ 5 years ☐ Other from today's
date. The court may extend a no-contact order even if
the defendant does not appear at arraignment.

No-Contact Order

1. **Protected Person's Identifiers:**

   A.R.W.
   _____
   Name (First, Middle, Last)
   04/22/2009     M          W
   _____
   DOB         Gender       Race

   If a minor, use initials
   instead of name, provide
   other info, and complete
   a Law Enforcement
   Information Sheet (LEIS).

| Defendant's Identifiers: | |
|---|---|
| Date of Birth | |
| 07/18/1969 | |
| Gender | Race |
| M | W |

### Findings of Fact

2. Based upon the record both written and oral, the court finds that the defendant has been charged with, arrested for, or convicted of a domestic violence offense, that the defendant represents a credible threat to the physical safety of the protected person, and the court issues this Domestic Violence No-Contact Order under chapter 10.99 RCW to prevent possible recurrence of violence. (*This finding requires the court to issue a weapons surrender order under 9.41.800.*)

3. The court finds that the defendant's relationship to the person protected by this order is as a/an:
   ☐ Intimate partner because they are:
       ☐ current or former spouses or domestic partners, ☐ parents of a child-in-common,
       ☐ age 13 or older and are/were in a dating relationship and are currently residing together or
       resided together in the past. ☐ age 13 or older and are/were in a dating relationship but have
       *never* resided together.
   or
   ☑ Family or household member as defined by RCW 7.105.010(13): father/son _____.

4. ☑ For crimes not defined as a serious offense, the court makes the following mandatory findings pursuant to RCW 9.41.800(1) and (2): ☐ The defendant used, displayed, or threatened to use a firearm or other dangerous weapon in a felony; or ☐ The defendant is ineligible to possess a firearm pursuant to RCW 9.41.040; or ☑ Possession of a firearm or other dangerous weapon by the defendant presents a serious and imminent threat to public health or safety, or to the health or safety of any individual. (*If any of these boxes are checked, the court is required to order weapons surrender under 9.41.800.*)

5. **Defendant:**
   A. do not cause, attempt, or threaten to cause bodily injury to, assault, sexually assault, harass, stalk, or keep under surveillance the protected person.

*31-017 Domestic Violence No-Contact Order   (February 2024)*
*- Page 1 of 2*

5129

**0583**

B. do not contact the protected person, directly, indirectly, in person or through others, by phone, mail, electronic or any other means, except for mailing or service of process of court documents through a third party, or contact by the defendant's lawyers.

C. do not knowingly enter, remain, or come within_____ (1,000 feet if no distance entered) of the protected person's residence, school, workplace, other: places person is present_____.

D. exceptions:_____
_____

E. other: _____
_____

---

**Warning:** Violation of the provisions of this order with actual notice of its terms is a criminal offense under chapter 7.105 RCW and will subject a violator to arrest; any assault, drive-by shooting, or reckless endangerment that is a violation of this order is a felony. **You can be arrested even if the person protected by this order invites or allows you to violate the order's prohibitions.** You have the sole responsibility to avoid or refrain from violating the order's provisions. Only the court can change the order upon written application.

---

*Additional Warnings to Defendant:* This order does not modify or terminate any order entered in any other case. You are still required to comply with other orders.

Willful violation of this order is punishable under RCW 7.105.450. State and federal firearm restrictions apply. 18 U.S.C. § 922(g)(8)(9); RCW 9.41.040. A violation is a felony and will subject you to arrest.

Pursuant to 18 U.S.C. § 2265, a court in any of the 50 states, the District of Columbia, Puerto Rico, any United States territory, and any tribal land within the United States shall accord full faith and credit to the order.

---

## Additional Orders

6. ☐ Civil standby: The appropriate law enforcement agency shall, at a reasonable time and for a reasonable duration, assist the defendant in obtaining personal belongings located at:

_____.

7. The clerk of the court shall enter this order into a computer-based criminal intelligence system available in the state used by law enforcement to list outstanding warrants or forward a copy of this order on or before the next judicial day to the protected person's local law enforcement agency.

8. ☐ This order replaces all prior no-contact orders protecting the same person issued under this cause number.

Dated _07/05/2024_____Time _11:07 AM_____ ■ in open court with the defendant present.

I acknowledge receipt of a copy of this order:

_Melanie Tratnik_____
Melanie Tratnik (Jul 5, 2024 11:49 PDT)
Judge/ Pro Tem Judge

No defendant signature required due to GAO 2023-01
_____
Defendant

The protected person shall be provided with a certified copy of this order.

☐ Interpreter Declaration attached

FAX: (206) 684-8115
SEATTLE MUNICIPAL
COURT RECORDS

RE: CASE NO. 671384
- MOTION TO DISMISS
- MARSDEN MOTION

SUBMITTED BY:
DEFENDANT KURT BENSHOOF

Hon. Pooja Vaddadi
Courtroom 902

IN THE MUNICIPAL COURT FOR THE CITY OF SEATTLE
KING COUNTY, STATE OF WASHINGTON

| | |
|---|---|
| CITY OF SEATTLE, | CASE NO. 671384 |
| Plaintiff, | |
| v. | MOTION TO DISMISS COUNSEL |
| KURT BENSHOOF, | |
| Alleged Defendant. | |

## I.    INTRODUCTION

PLEASE TAKE NOTICE that on October 19, 2023, or as soon thereafter as may be heard, alleged Defendant Kurt Benshoof ("Benshoof") moves the Court to immediately discharge counsel Mr. Faiz Pirani from representation of Benshoof in Seattle Municipal Court ("SMC") Case No. 671384.

## II.    VERIFIED STATEMENTS OF FACT

Benshoof avers the following statements and is prepared to testify to these facts in a court of law authorized and convened under the Washington Constitution.

Benshoof is competent to proceed *Pro Se.*

MOTION TO DISMISS COUNSEL
MUNICIPAL CASE NO. 671384
Page 1 of 4

**0586**

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

Irreconcilable differences between Benshoof and Mr. Pirani exist.

Irreconcilable differences exist between Benshoof and the policies and widespread customs of the Northwest Defenders Association.

### III.   ISSUES WARRANTING MOTION

**I. Do the interests of equity and justice require the Court to discharge Mr. Pirani as Benshoof' public defender?**

Yes.

**2. Is Benshoof competent to proceed *Pro Se* without a colloquy?**

Yes.  The Court is in possession of three years of evidence showing that Benshoof is competent to proceed *Pro Se.*

### IV.   ARGUMENT FOR GRANTING MOTION

**A. Marsden**

Consistent with the holding of *People v. Marsden.* Cal. App. 2d (1965) the Court must discharge Mr. Pirani so that Benshoof can proceed *Pro Se.*

**B. Washington BAR Rules of Professional Conduct**

Consistent with Washington BAR Rules of Professional Conduct 1.16(4)(7) the Court must discharge Mr. Pirani so that Benshoof can proceed *Pro Se.*

### V.   REQUESTED RELIEF

*WHEREFORE,* Benshoof moves this Court to immediately discharge Mr. Faiz Pirani as counsel for Benshoof so that Benshoof may proceed *Pro Se* in Seattle Municipal Court Case No. 671384 in accordance with the aforementioned facts and law.

### VERIFICATION

I, Affiant Kurt Benshoof, do hereby declare that the foregoing is true and correct to the

MOTION TO DISMISS COUNSEL
MUNICIPAL CASE NO. 671384
Page 2 of 4

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

**0587**

1    best of my knowledge under penalty of perjury in the State of Washington, and am competent to

2    testify to the matters stated herein. Executed this 19th day of October in the year 2023, in the city

3    of Seattle, in the county of King, in the state of Washington.

4                                    By:     s/ Kurt Benshoof
5                                            Kurt Benshoof *Pro Se*

6

7                                    1716 N 128th Street
                                     Seattle, WA 98133
8                                    Phone: (206) 460-4202
                                     Email: kurtbenshoof@gmail.com
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26   MOTION TO DISMISS COUNSEL                          Kurt Benshoof, Benshoof
     MUNICIPAL CASE NO. 671384                          1716 N 128th ST
     Page 3 of 4                                        Seattle, Washington 98133
                                      **0588**          (206) 460-4202
                                                        kurtbenshoof@gmail.com

1

# CERTIFICATION OF SERVICE

2

I, Kurt Benshoof, hereby certify that on October 19, 2023, I did effect service upon CITY

3

OF SEATTLE by emailing to the email addresses listed below and by fax to:

4

5

**CITY OF SEATTLE:**

6

MOS_Legalservice@seattle.gov

7

**SEATTLE MUNICIPAL COURT:**

8

SMC_CTR_902@seattle.gov

Fax No: (206) 684-8815

9

**CITY OF SEATTLE City Attorney:**

10

Katrina Outland, WSBA #54342

11

701 Fifth Ave
Suite 2050

12

Seattle, WA 98104

Email: Katrina.Outland@seattle.gov

13

Phone: (206) 684-7756

14

**CITY OF SEATTLE Assistant Prosecuting Attorney:**

15

William Cotter, WSBA #57838

16

701 Fifth Ave
Suite 2050

17

Seattle, WA 98104

Email: William.Cotter@seattle.gov

18

Phone: (206) 733-9614

19

20

DATED: October 19, 2023

21

Signed:    s/ Kurt Benshoof

22

Kurt Benshoof, *Pro Se*

23

1716 N 128th ST
Seattle, WA 98133

24

(206) 460-4202

25

26

MOTION TO DISMISS COUNSEL
MUNICIPAL CASE NO. 671384
Page 4 of 4

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

Hon. Pooja Vaddadi
Courtroom 902

IN THE MUNICIPAL COURT OF THE CITY OF SEATTLE
KING COUNTY, STATE OF WASHINGTON

| | |
|---|---|
| CITY OF SEATTLE,<br><br>                        Plaintiff,<br><br>        v.<br><br>KURT BENSHOOF,<br><br>                Alleged Defendant. | CASE NO. 671384<br><br><br>MOTION TO DISMISS |

## I.      INTRODUCTION

Alleged Defendant Kurt Benshoof ("Benshoof") makes his Special Appearance, objecting to the Court's assertion of jurisdiction to move the Court to immediately dismiss the instant case for lack of *in personam* jurisdiction, lack of subject matter jurisdiction, and absence of statutory authority to proceed.

## II.      VERIFIED STATEMENTS OF FACT

Benshoof avers the following statements and is prepared to testify to these facts in a court of law authorized and convened under the Washington Constitution.  Benshoof incorporates by reference as if fully restated herein the following documents filed in U.S. District Court for the

MOTION TO DISMISS
SEATTLE MUNICIPAL CASE NO. 671384
Page 1 of 29

**0590**

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

1  Western District of Washington Case No. 2:23-01392-JNW:  Complaint (Dkt. #9) Exhibits (Dkt.

2  #13-1; #13-2; #13-3; and #13-4)

3      All *emphasis* that of Benshoof.

4
5  **A.  Family Background**

6      Benshoof and defendant Jessica Owen ("Owen") discovered she was pregnant with

7  Benshoof's child, A.R.W., in August 2008.  Thereupon, Benshoof and Owen entered into a verbal

8  parenting contract at common law ("Covenant") after notice, consideration, and accord; thereby

9  exercising their unlimited right to contract as private individuals.

10     Under their Covenant as father and mother, they would henceforth have full, equal and

11  inalienable rights as parents of their son-to-be, sharing all significant decisions regarding A.R.W.'s

12  care and upbringing, such as education, family scheduling, medical and dental care, and nutrition.

13     Though Benshoof and Owen never married, they raised A.R.W. amicably for the following

14  twelve years, prioritizing their son's well-being and sharing equally in all significant decisions

15  regarding their son's education, medical care, dental care, and living arrangements.

16
17  **B.  Owen Seizes Custody of A.R.W.**

18     After Owen explicitly threatened to steal Benshoof's car, seize custody of A.R.W., deny

19  Benshoof's equity ownership in his home and evict Benshoof on August 16, 2021, via text message.

20  (Dkt. #13-1 at 44)  When Benshoof refused to be intimidated Owen filed for a TRO in 21-2-11149-

21  8 on August 23, 2021.

22     King County Superior Court issued a full denial order of Owen's TRO petition on

23  September 3, 2021.  Benshoof thought Owen would thereafter stop her lies and threats.  Benshoof

24  was mistaken.

25     Thereafter, Owen acted to keep Benshoof from seeing or communicating with A.R.W.,

26  MOTION TO DISMISS                                        Kurt Benshoof, Benshoof
SEATTLE MUNICIPAL CASE NO. 671384                          1716 N 128th ST
Page 2 of 29                                                Seattle, Washington 98133
                                                           (206) 460-4202
                                                           kurtbenshoof@gmail.com

1  including Owen falsely telling Jane Addams Middle School that Owen was the "sole legal guardian"

2  of A.R.W.

3      Upon Owen's lies, school staff refused Benshoof access to A.R.W. and denied Benshoof

4  access to his son's school records.  RCW 28A.605.020 assures parent access to their child's

5  classroom.  RCW 28A.605.030 protects the right of a parent to review all education records of

6

7  their child.

8      On September 24, 2021, Benshoof called 911 to do a wellness check on A.R.W.  SPD

9  Officers Kieran Barton #8747 ("Barton") and Adam Beaty #7453 ("Beaty") responded.  Beaty

10  refused to take a sworn affidavit from Benshoof evidencing that Benshoof had full rights as the

11  father of A.R.W.  Beaty stated, "I'm not taking anything from you.  We know you're trying to set

12  us up." (Dkt. #13-1 at 35-38)

13      Barton and Beatty asserted that Owen was the "sole legal guardian" of A.R.W.  RCW

14  26.33.0209(11) defines a "legal guardian" as someone *other than a parent.*  Barton and Beatty did

15  not possess evidence that a court order had determined Owen to be "sole legal guardian" of A.R.W.

16

17      Owen hired family attorney Nathan Cliber ("Cliber") in September 2021, filing a Petition

18  to Decide Parentage ("parentage action").  Case no. 21-5-00680-6 was a ruse so that Owen could

19  seek an emergency restraining order against Benshoof to deny Benshoof's rights as A.R.W.'s

20  father.

21      Benshoof did not consent to family court adjudicating his family affairs.  Defendant David

22  Keenan ("Keenan") was assigned as presiding judge.

23  **C.  Impairing the Obligation of Contracts**

24      No evidence of Owen's and Benshoof's contractual privity with Washington state, by

25  dissolution of marriage or domestic partnership, declaration of invalidity, or legal separation exists.

26  MOTION TO DISMISS                                              Kurt Benshoof, Benshoof
   SEATTLE MUNICIPAL CASE NO. 671384                             1716 N 128th ST
   Page 3 of 29                                                  Seattle, Washington 98133
                                                                 (206) 460-4202
                                                                 kurtbenshoof@gmail.com

**0592**

1   Cliber, and Owen knowingly and willfully acted in concert to impair the obligations of

2   Owen to uphold the Covenant.  By and through Cliber, Owen made materially false statements to

3   initiate Family Court case no. 21-5-00680-6 by filing a barratrous, perjurious parentage action.

4       In August 2021 case no. 21-2-11149-8 and September 2021 case no. 21-5-00680-6 Owen

5   took two mutually exclusive positions foundational to her parentage action.

6

7       First, Owen declared on August 23, 2021, in TRO case no. 21-2-11149-8 that: (1) Owen

8   and Benshoof are the parents of A.R.W.; (Dkt. #13-1 at 72) (2) A.R.W. is related to Benshoof as

9   his child; (*Id.* at 73) and (3) Benshoof had raised A.R.W. his entire life.  (Dkt. #13-1 at 62)

10      Four weeks later in case no. 21-5-00680-6, Owen and Cliber filed a parentage action, the

11  basis of which was that Benshoof: (1) was not the biological father of A.R.W.; (2) had never lived

12  with A.R.W., and (3) had never held out A.R.W. as his son.

13      Owen's September 20, 2021, statement (Dkt. #13-1 at 254) that Benshoof was not the

14  presumed father of A.R.W. was an inconsistent material statement under oath which directly

15  contradicted Owen's prior sworn statement weeks earlier in case no. 21-2-11149-8, averring On

16  August 21, 2021, that Owen and Benshoof are "parents of a child in common." (Dkt. #13-1 at 77)

17  which affirmed that: (1) Owen and Benshoof are the parents of A.R.W.; (2) A.R.W. is related to

18  Benshoof as his child; and (3) Benshoof had raised A.R.W. his entire life.

19

20      As such, Owen took two mutually exclusive positions between case no. 21-2-11149-8 and

21  case no. 21-5-00680-6, in violation of RCW 9A.72.020; 9A.72.050.

22      First, Owen declared in August 2021 that Benshoof: (1) was the biological father of A.R.W.,

23  (2) had lived with A.R.W. his entire life; and (3) had acted as his father his entire life.  Then in

24  Owen's parentage action, the basis of which was that Benshoof was not the presumed father of

25

26  MOTION TO DISMISS
    SEATTLE MUNICIPAL CASE NO. 671384
    Page 4 of 29

    Kurt Benshoof, Benshoof
    1716 N 128th ST
    Seattle, Washington 98133
    (206) 460-4202
    kurtbenshoof@gmail.com

**0593**

1   A.R.W., Owen averred under penalty of perjury, "To my knowledge, no one is already presumed

2   to be a parent" (Dkt. #13-1 at254)

3       Owen also declared that Benshoof had at all times refused to agree to legal recognition of

4   A.R.W. (*Id.*) However, Benshoof had texted Owen on September 18, 2021, stating Benshoof's

5   belief that Owen had refused to add Benshoof's name to A.R.W.'s birth certificate as part of

6   Owen's fraud to assert that Owen was the "sole legal guardian" of their son. (EDkt. #13-4 at 392)

7

8       On September 19, 2021, Benshoof texted Owen, "Are you still refusing to amend

9   [A.R.W.'s] birth certificate to show my legal name (as I have previously and repeatedly

10  requested)?" (*Id.*)

11      Pursuant to RCW 26.26A.115, there is presumption of fatherhood once the father has: (1)

12  lived with the child for the first four years of the child's life, and (2) openly held out the child as

13  his own, even if the child was not biologically his own.

14
        In defiance of all logic or pretense of plausible honesty, *two days after* Owen signed the
15
    petition to decide parentage on September 20, 2021, asserting that Benshoof was not the presumed
16
    father of their son, Owen then signed her Declaration of Jessica R. Owen on September 22, 2021,
17
    stating, "***Kurt having acted as [A.R.W.'s] father for [A.R.W.'s] entire life…***" (Dkt. #13-1 at 229)
18

19      Owen also stated, "We moved in together in July of 2008. [A.R.W.] was born nine months

20  later…" (Dkt. #13-1 at 230) "[Benshoof] always insisted on being treated as A.R.W.'s father and

21  that A.R.W. was his." (*Id.*) "…September of 2020 that ***I finally moved out of our shared***

22  ***residence…*** " (Dkt. #13-1 at 231)

23      Family law attorney Cliber then reviewed Owen's statements, affixed his signature to the

24  petition to decide parentage and motion for immediate restraining order and filed them.

25

26  MOTION TO DISMISS                                          Kurt Benshoof, Benshoof
    SEATTLE MUNICIPAL CASE NO. 671384                         1716 N 128th ST
    Page 5 of 29                                              Seattle, Washington 98133
                                                              (206) 460-4202
                          **0594**                            kurtbenshoof@gmail.com

1       At no time did Owen ever claim that there was another possible biological father of A.R.W.

2   Owen and Benshoof have known since August 2008 that A.R.W. was conceived during sexual

3   intercourse involving only Owen and Benshoof on July 18, 2008.  July 18 also happens to be

4   Benshoof's birthday.

5
## D.  TRO Hearing
6
7       On October 25, 2021, Commissioner Jason Holloway ("Holloway") heard Owen's petition

8   for temporary restraining order.  Owen sought to seize sole custody of A.R.W. and prevent

9   Benshoof from associating with his son.

10      Holloway consulted the Judicial Information System, but did not disclose this fact to

11  Benshoof in accordance with the requirement of RCW 2.28.210(2).

12      Cliber asserted that Benshoof had engaged in "domestic violence" against Owen and

13  A.R.W.

14      Benshoof has never engaged in domestic violence against anyone, nor threatened to do so.

15  On the contrary, Owen has assaulted Benshoof during their parenting relationship on multiple

16  occasions, including striking Benshoof in the face repeatedly and causing inches long, bloody

17  scratches on Benshoof's leg.

18

19      Benshoof has never spanked his son, nor yelled at A.R.W.

20      Holloway stated on the record, "I'm not requiring that [Benshoof] do a domestic violence

21  assessment.  That would have been something that would have been ordered if he had been found

22  to be a domestic violence perpetrator, *which he is not.*"

23      Holloway thereby implicitly acknowledged that Owen's claims of being stalked by

24  Benshoof, and her claims that Benshoof inflicted fear upon her and A.R.W., were false. (*See* RCW

25  26.50.010(3)).

26  MOTION TO DISMISS
    SEATTLE MUNICIPAL CASE NO. 671384
    Page 6 of 29

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

Holloway asserted that Benshoof was a "credible threat" to A.R.W. due to Holloways discriminatory animus toward Benshoof's minority religious beliefs.

A State must, if it is to invoke the statutes after injunctive relief has been sought, assume the burden of obtaining a permissible narrow construction in a noncriminal proceeding.

After Benshoof discovered that family court does not allow trial by jury, he filed a motion objecting to the violations of due process.  (Dkt. #13-1 at 278-284)

Keenan denied Benshoof's motion absent findings of fact or conclusions of law.

**E.  No Justiciable Issue**

For a court to obtain jurisdiction, there must be a justiciable issue before said court.

Owen, Cliber, and assigned Judge David Keenan ("Keenan"), knew or should have known that the evidence in the record of King County Superior Court as of the filing of the parentage action on September 28, 2021, evidenced that family court could not overcome Benshoof's legal presumption as the father of A.R.W., pursuant to RCW 26.26A.115; RCW 26.26A.435(2).

Family court had an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenged it.   Benshoof did challenge it, repeatedly.

Cliber, Holloway, and Keenan ("Keenan") knew that the doctrine of judicial estoppel and RCW 9A.72.020 prohibited Owen from making inconsistent material statements under oath; that is, Owen was prohibited from committing felony perjury.

Cliber, Holloway, and Keenan knew that the consent of Benshoof was never given to adjudicate case no. 21-5-00680-6 without a trial by jury.

Cliber, Holloway, and Keenan knew that through the Fourteenth Amendment the Seventh Amendment protects the right to trial by jury in all civil litigation and that Wash. Const. art I §14

MOTION TO DISMISS
SEATTLE MUNICIPAL CASE NO. 671384
Page 7 of 29

**0596**

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

1  prohibits a public official from denying a civil litigant the right to trial by jury absent the consent

2  of both parties.  Benshoof has never consented to family court adjudication.

3  **F.  No Contractual Privity with State**

4  On, or around, March 10, 2023, Benshoof discovered that family court plans and orders

5
6  apply to fathers and mothers in contractual privity with the state via marriage, domestic

7  partnership, declaration of invalidity, or legal separation; none of which Benshoof and Owen were

8  party to. (*See* RCW 26.09.004(3)(4)).

9  Between September 2021 and March 2022, Cliber failed to disclose that RCW

10  26.09.004(3)(4) did not apply to Benshoof.

11  Washington BAR Rules of Professional Conduct ("RPC") 3.3(A)(3) states that a lawyer

12  shall not knowingly, "fail to disclose to the tribunal legal authority in the controlling jurisdiction

13  known to the lawyer to be directly adverse to the position of the client and not disclosed by the

14  opposing party."

15
16  In March 2022, Benshoof emailed Cliber upon his discovery of RCW 26.09.004.  Benshoof

17  informed Cliber that Cliber had engaged in deceit to invoke family court jurisdiction.  Cliber

18  responded by stating that he had obtained the jurisdiction of family court by other means.

19  Upon Benshoof's request that Cliber disclose what this "other means" was, Cliber refused

20  to disclose by what controlling authority he had done so.

21  Benshoof emailed Keenan's bailiff, Beatrice Marquez ("Marquez"), informing Marquez

22  that family court did not have jurisdiction to impose plans and orders involving Benshoof and

23  A.R.W. because Benshoof and Owen were not in contractual privity with the state via marriage,

24  domestic partnership, declaration of invalidity, or legal separation.  Marquez instructed Benshoof

25  to bring the issue up before Keenan.

26  MOTION TO DISMISS
SEATTLE MUNICIPAL CASE NO. 671384
Page 8 of 29

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

**0597**

1    On April 1, 2022, Keenan heard Benshoof's motions to dismiss the case for lack of subject

2  matter jurisdiction and the interests of A.R.W. (Dkt. #13-1 at 339-354; Dkt. #13-1 at 356-368)

3    Cliber could not, and did not, establish subject matter jurisdiction to maintain an action in

4  case no. 21-5-00680-6. Cliber asserted *res judicata* and claimed that Benshoof's motions quoting

5
   U.S. Supreme Court cases were "unintelligible" and "frivolous." Keenan dismissed Benshoof's
6
   motions without the requested findings of fact and conclusions of law.
7

8  **G. SPD Incident 2022-154753**

9    On, or around, May 1, 2022, Benshoof called 911 to report custodial interference to SPD.

10  Benshoof made complaint to SPD Officer Ashlie T. Bissell ("Bissell"). Benshoof had already

11  made numerous such complaints to SPD, beginning in August 2021, including sworn affidavits as

12  a victim witness.

13    Benshoof reported that Owen and Lerman had unlawfully taken Benshoof's 2011 Toyota

14  FJ Cruiser and, with the aid of their friend, Owen Hermsen, had attempted felony extortion of

15
   Benshoof seeking $19,000 for the return of Benshoof's stolen FJ Cruiser. (Dkt. #13-1 at 299-334)
16

17    Benshoof reported that Owen and Lerman had engaged in felony custodial interference in

18  order to deny Benshoof's right of association with A.R.W. Benshoof reported that Owen and

19  Lerman had violated RCW 9A.36.070 by coercing A.R.W. to be subjected to a Pfizer medical

20  experiment by threatening that A.R.W. would be restrained from going to school or seeing his

21  friends.

22    Bissell told Benshoof that she could not file a complaint against Owen and Lerman for

23  coercing A.R.W. to be subjected to Pfizer medical experimentation because all SPD officers had

24  been required to get a "covid vaccine."

25

26  MOTION TO DISMISS
   SEATTLE MUNICIPAL CASE NO. 671384
   Page 9 of 29

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

1   Benshoof reported that Owen and Lerman, both prostitutes, had brought their prostitution

2   clients into their home while A.R.W. was present in the house. Benshoof also provided the SPD

3   video of A.R.W. confirming this fact.

4
     On June 29, 2022, Benshoof emailed the General Investigation Unit and Bissell, providing
5
    them with verified documents evidencing felony and gross misdemeanor crimes perpetrated by
6
    Owen, Lerman, and family law attorney Nathan L. Cliber. (Dkt. #13-1 at 379-410; Dkt. #13-3 at
7
8   294-320)

9   The City took no action against Cliber, Owen, or Lerman.

10  **H. SPD Incident 2022-173684**

11   On July 6, 2022, A.R.W. ran away from Owen's to come home to Benshoof.

12   SPD Officers were dispatched to Benshoof's home: Elias Williams #8767 ("Williams"),

13  Charles Foreman #7569 ("Foreman"), and Eric Whitehead #7493 ("Whitehead").

14
     Benshoof informed Williams that Owen and Lerman were welcoming their prostitution clients
15
    into their home when A.R.W. was present.
16
     Benshoof informed Williams that Owen and Lerman had made false and misleading statements
17
18  to police to take A.R.W. and Benshoof's FJ Cruiser, that Owen had committed perjury and custodial

19  interference to fraudulently initiate family court case no. 21-5-00680-6, and that A.R.W. was being

20  subjected to mental and emotional abuse by Owen and Lerman.

21   Benshoof informed Williams that Owen and Lerman, with the approval of family court, had

22  coerced A.R.W., to engage in conduct that A.R.W. had the right to abstain from, by threatening him

23  with confinement or restraint; that is, a Pfizer gene therapy that had not even completed adequate

24  animal trials, let alone phase 3 of a clinical trial to ensure safety and efficacy.

25

26  MOTION TO DISMISS
    SEATTLE MUNICIPAL CASE NO. 671384
    Page 10 of 29

    Kurt Benshoof, Benshoof
    1716 N 128th ST
    Seattle, Washington 98133
    (206) 460-4202
    kurtbenshoof@gmail.com

**0599**

1    Benshoof informed Williams that Owen and Lerman had accomplished by deception the

2    unlawful imprisonment of both A.R.W. and Benshoof by restricting their movement without consent

3    and without valid legal authority in a manner which interfered substantially with their liberty.

4    Benshoof informed Williams that Lerman had threatened a process server at Owen's home with

5    an aluminum baseball bat, while screaming lies which disparaged Benshoof in A.R.W.'s presence.

6

7    Benshoof informed Williams that Lerman's threats and intimidation of a process server

8    constituted a felony law violation, and that such threats were made to violate Benshoof's right to

9    petition for redress by scaring all of Benshoof's friends away from serving court documents under CR

10   4. Williams refused to act on Benshoof's complaints and A.R.W. was taken back to Owen's.

11   **I.   SPD Incident #2022-177198**

12    On July 7, 2022, A.R.W. did not appear on the court scheduled Zoom video call with

13   Benshoof, as required by Owen's signature in family court case no. 21-5-00680-6.

14    At approximately 6:00pm on July 9, 2022, Benshoof called 911 to report Owen for custodial

15   interference, perjury, and barratry, and Benshoof asked SPD dispatch to send officers to do a wellness

16   check on A.R.W.  SPD Officers Hayden Hogg #8472 ("Hogg") and Jeremy Weiss #8793 ("Weiss")

17

18   eventually phoned Benshoof around 12:30am.

19    Benshoof met Hogg and Weiss and attempted to give the officers evidence of Owen's violations

20   of the allegedly valid family court restraining order, evidence of Owen's perjury and barratry in

21   obtaining the restraining order, and evidence supporting Benshoof's contention that the restraining

22   order could not, and did not, apply to Benshoof and A.R.W. because Benshoof was not subject to the

23   jurisdiction of family court in case no. 21-5-00680-6.

24    Hogg and Weiss refused to take Benshoof's documents, refused to even look at them, and

25   refused to let Benshoof explain the documents' contents.

26   MOTION TO DISMISS                                          Kurt Benshoof, Benshoof
     SEATTLE MUNICIPAL CASE NO. 671384                         1716 N 128th ST
     Page 11 of 29                                             Seattle, Washington 98133
                                                               (206) 460-4202
     **0600**                                                  kurtbenshoof@gmail.com

**J.    Benshoof Withdraws from Case No. 21-5-00680-6**

On August 9, 2022, Benshoof filed his Notice of Withdrawal to Judge Keenan in family court case no. 21-5-00680-6. (Dkt. #13-1 at 433-39)

Benshoof sent Keenan, via certified USPS mail, legal notice on August 8, 2021, demanding that Keenan cease and desist. (Dkt. #13-1 at 441-42)

Thereafter, Benshoof emailed Keenan's bailiff, Beatrice Marquez ("Marquez"), to verify that the restraining order had been amended to reflect that Benshoof was no longer a party subject to its terms, or that it had been dismissed.  Marquez refused to confirm or deny and instructed Benshoof to contact the King County clerk.

Benshoof contacted the clerk and was told that Benshoof would have to come to the King County Courthouse *in person, with a facemask on*, to obtain confirmation.

When Benshoof informed the clerk that wearing a facemask to come to the clerk's office wasn't an option, as King County Sheriff deputies had repeatedly forced Benshoof from the courthouse for not wearing a face mask, the clerk instructed Benshoof to obtain confirmation regarding the restraining order by contacting the SPD.

Benshoof contacted SPD and spoke with Dispatcher #13 to determine whether SPD possessed record, whether digital or paper, of a valid restraining order preventing Benshoof from contacting A.W.R.  Dispatch #13 stated that SPD would not confirm any such record; Dispatch #13 told Benshoof to seek verification at the King County Superior Court clerk's office.

On, or around, August 14, 2022, Benshoof called 911 to report that, if there was a valid family court restraining order in effect, Owen had again violated it by withholding A.R.W. from communicating with Benshoof via Zoom video both Saturday and Sunday.  Benshoof reported to 911 that Owen was perpetrating custodial interference by withholding A.R.W. from Benshoof

MOTION TO DISMISS
SEATTLE MUNICIPAL CASE NO. 671384
Page 12 of 29

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

1  Neither the King County Superior Court, nor the SPD, would confirm the existence of a

2  valid order restraining Benshoof from A.R.W. 911 refused to dispatch officers to take Benshoof's

3  complaint.

4  **K. SPD Incident #2022-215424**

5

6  On August 15, 2022, Benshoof drove down NE 130th Street where Owen's home is located

7  to verify that A.R.W. was okay. Owen was in her driveway and threatened to call the police,

8  stating that A.R.W. was at summer camp; Benshoof left without incident.

9  When Benshoof arrived at his home, SPD Officers Jared Alden #8892 ("Alden"), Jordan

10  Wallace #8382 ("Wallace") and Nicholas Hughes #8408 ("Hughes") followed Benshoof's up his

11  driveway, passing two clearly marked "NO TRESPASSING" signs.

12  When Benshoof tried to enter his home, Wallace accosted Benshoof outside the front door

13  by firmly grabbing his arm.

14  Benshoof stated that his right of association with A.R.W., protected by the First

15  Amendment, had been violated since September 3, 2021, by and through the perjury of Owen and

16  the abuse of discretion by King County Superior Court judges due to their discriminatory animus

17  towards Benshoof's religious beliefs.

18

19  Benshoof stated that Owen, Lerman, SPD officers, CITY prosecutors, CITY judges, King

20  County sheriff deputies, and King County Superior Court commissioners and judges denied

21  Benshoof equal protection under the law in violation of the Fourteenth Amendment by knowingly

22  and willfully ignoring Owen's felony perjury used to barratrously initiate case no. 21-5-00680-6.

23  Benshoof tried to give Alden, Hughes and Wallace verified documents evincing Benshoof's

24  claims. Alden, Hughes and Wallace refused to take any documents from Benshoof.

25

26  MOTION TO DISMISS
SEATTLE MUNICIPAL CASE NO. 671384
Page 13 of 29

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

**0602**

1    Alden and Wallace arrested Benshoof and took him to King County Jail where Benshoof

2   had a spit sock forced over is head in violation of the Americans with Disabilities Act, RCW

3   49.60.030, and SPD Policy Manual 11.010.21; 11.010.22.  (Dkt. 13-3 at 148-155)

4
     **L.  Complaint to SPD**
5
6    On August 16, 2022, after getting out of King County Jail, Benshoof called 911, and spoke

7   to SPD Officers Ashlie Bissell #8559 ("Bissell") and Katrina O'Dell #6600 ("O'Dell").

8    Benshoof made complaint of Owen's violation of RCW 9A.40.070 (2) Custodial

9   Interference in the second degree by Owen's violation of the either the family court temporary

10  parenting plan, or unlawfully imprisoning Benshoof and A.R.W. from each other.

11    Bissell and Odell asserted to Benshoof that it was a "civil matter".

12    Benshoof informed Bissell and O'Dell that they were either: 1) ignorant of the law, or 2)

13  knowingly and willfully lying to Benshoof, thereby violating the equal protection clause of the

14  Fourteenth Amendment, in order to deny Benshoof his right to equal protection under the law.

15
      To ensure that Bissell and O'Dell were not ignorantly well-intentioned, Benshoof then read
16
17  aloud the Washington Legislative intent for Custodial Interference from the state website:

18    *Intent—2015 c 38: "It is the intent of the legislature to address the Washington supreme
      court's decision in State v. Veliz, 176 Wn.2d 849 (2013). The court held that a parent cannot*
19    *be charged with custodial interference under RCW 9A.40.060(2) if a parent withholds the
      other parent from having access to the child in violation of residential provisions of a*
20    *domestic violence protection order. The legislature intends that the provisions of RCW
      9A.40.060(2) and 9A.40.070(2) be applicable in cases in which a court has entered any*
21    *order making residential provisions for a child including, but not limited to, domestic
      violence protection orders that include such residential provisions."*
22

23    Bissell and O'Dell refused to acknowledge that the state statute and legislative intent,

24  coupled with the facts enumerated by Benshoof, evinced Owen's felony law violation of either

25  RCW 9A.40.070 or RCW 9A.40.040.  Bissell and O'Dell took no action to uphold the law.

26  MOTION TO DISMISS                                    Kurt Benshoof, Benshoof
     SEATTLE MUNICIPAL CASE NO. 671384                   1716 N 128th ST
     Page 14 of 29                                        Seattle, Washington 98133
                                                          (206) 460-4202
                                                          kurtbenshoof@gmail.com

1   SPD Policy Manual 15.110 Investigating Custodial Interference requires SPD officers to

2   act upon evidence of custodial interference.  (Dkt. #13-4 at 158-161).

3   **M.  A.R.W. Considers Suicide**

4   On, or around, August 16, 2022, A.R.W. informed Owen, as recounted in the Guardian ad

5   Litem report, "On August 16, [A.R.W.] disclosed contemplating jumping off a balcony at

6   summer camp to kill himself."  (Dkt. #13-3 at 334)

7

8   Owen and Lerman isolating A.R.W. from Benshoof has been mentally and emotionally

9   traumatizing to A.R.W.  It has also mentally and emotionally traumatized Benshoof.

10  **N.  Trial In Absentia**

11  On October 21, 2022, Keenan heard Owen's motions for final orders.

12  Benshoof was not afforded the opportunity to appear in person, and Keenan continued to

13  deny Benshoof entrance to the courtroom in violation of Wash. Const. art I §§ 10, 22, nor was

14  Benshoof allowed to testify before a jury of his peers pursuant to Wash. Const. art I § 21.

15  Keenan declared Benshoof to be a "credible threat" to A.R.W. and Owen, ordering that

16  Benshoof would be subject to immediate arrest if Benshoof had any contact with A.R.W. before

17  October 21, 2027, *five months after the 18th birthday of A.R.W.*

18

19  Keenan ordered that Benshoof would be subject to immediate arrest if he effected legal

20  service of process upon Owen by any other means than ABC Legal Services or Pegasus Process

21  Service.  (Dkt. #13-2 at 4)

22  Keenan was not delegated the authority to effectively re-write Wash. CR 4 and

23  Fed.R.Civ.P. 4, by which Benshoof effectuating legal service of process could be criminalized.

24  **O.  No Proof Of Service**

25  On November 15, 2022, SPD Detective Ryan Ellis ("Ellis") allegedly filed Proof of

26  MOTION TO DISMISS
    SEATTLE MUNICIPAL CASE NO. 671384
    Page 15 of 29

    Kurt Benshoof, Benshoof
    1716 N 128th ST
    Seattle, Washington 98133
    (206) 460-4202
    kurtbenshoof@gmail.com

Service in family court case no. 21-5-00680-6, which stated on page one, "***Important! Do not use electronic service if your case involves the surrender of firearms…. After 2 unsuccessful attempts at personal service, you can ask the court to authorize electronic service.***" (Dkt. #13-3 at 163)

Page two stated that Ellis served an Order to Surrender and Prohibit Weapons. Ellis did not ask for, nor receive, authorization from Judge Keenan to serve Benshoof via electronic service. Ellis did not obtain confirmation that Benshoof had been served final orders in case no. 21-5-00680-6.

Ellis did not date his signature under penalty of perjury on page three. The **date** line stated, "Seattle." GR 30(d)(3) requires compliance with GR 13(a)(2). CR 4, GR 13(a)(2) and RCW 5.50.050 require that proof of service sworn under penalty of perjury **be dated.** (*Id.* at 165)

As such, Ellis did not legally serve Benshoof the final orders in case no. 21-5-00680-6.

## P. A.R.W. Runs Away Again

On January 23, 2023, A.R.W. tried to run away from Owen's a second time to come home to his father. Owen discovered her son's plans and told A.R.W. that he could either go to school or walk to Benshoof's house while Owen called her attorney to resolve the family dispute.

A.R.W. walked home to Benshoof's. Upon arrival at Benshoof's home, A.R.W. burst into tears and said, "I think mom disowned me."

While A.R.W. was walking home to his father's house, Owen called 911 to have Benshoof arrested. Owen also contacted Lerman. Lerman then immediately posted to her public Twitter account, "I really thought everything was going to be okay. But it isn't. It won't be as long as he's alive and free," referring to Benshoof; that is, Lerman predicated her need to have Benshoof dead or incarcerated as a condition of her own sense of well-being, without any regard for the

MOTION TO DISMISS
SEATTLE MUNICIPAL CASE NO. 671384
Page 16 of 29

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

1  devastating impact that would have on A.R.W. Lerman deleted the tweet shortly thereafter. (Dkt.

2  13-1 at 199)

3

## Q.  SMC Case No. 671384

4

5  On March 14, 2023, City prosecutor Katrina Outland ("Outland") filed eighty-nine criminal

6  charges against Benshoof alleging that Benshoof violated a restraining order by effectuating legal

7  service of process at Owen's house pursuant to CR4 and FrCP 4 and texting with A.R.W. over the

8  Discord app.

9  The text messages between Benshoof and his son were private communications intended

10  only for each other. City officials intercepted or recorded the private communications between

11  Benshoof and his son. However, RCW 9.73.030 states:

12  *(1)  "...it shall be unlawful for any individual, partnership,, corporation, association, or*
    *the state of Washington, its agencies, and political subdivisions to intercept, or record*
13  *any:*

14  *(a)  Private communication transmitted by telephone, telegraph, radio, or other device*
15  *between two or more individuals between points within or without the state by any*
    *device electronic or otherwise designed to record and/or transmit said communication*
16  *regardless how such device is powered or actuated, without first obtaining the consent*
    *of all the participants in the communication;*
17

18  *(b)  Private conversation, by any device electronic or otherwise designed to record or*
    *transmit such conversation regardless how the device is powered or actuated without*
19  *first obtaining the consent of all the persons engaged in the conversation.*

20  Outland obtained private Discord text messages between Benshoof and A.R.W. without

21  Benshoof's consent or knowledge. Outland, or one of her associates, recorded copies of these

22  text messages and provided them to other public officials. Additionally, Outland selectively

23  chose certain text messages and thereupon ***divulged the private communications of Benshoof***

24  ***and A.R.W. to the public*** by submitting them as evidence in the court record of SMC Case No.

25  671384 within Outland's Motion for Determination of Probable Cause for Arrest Warrant.

26  MOTION TO DISMISS
    SEATTLE MUNICIPAL CASE NO. 671384
    Page 17 of 29

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

1    Because Outland read through private text messages between Benshoof and his son,

2    Outland knows that A.R.W. expressed his desire to his father be freed from his imprisonment at

3    Owen's. When Benshoof texted his son in December 2022 to ask if Benshoof should just give

4    Owen his home and all of his money as effective ransom payment so that his son could come

5    back to his father, instead of Benshoof seeking remedy through the courts, A.R.W. responded,

6

7    "No way. Hit [Owen and Lerman] with everything you got. Keep hitting them."

8    Outland also read text messages from A.R.W. in which A.R.W. stated his belief that Owen

9    and Lerman are "crazy."

10   Judge Faye Chess ("Chess") determined there was probable cause to issue $250,000 warrant

11   #990435958 for Benshoof's immediate arrest.

12   Outland and Chess knew, or should have known, that King County Superior Court asserted

13   jurisdiction in family court case no. 21-5-00680-6 beginning in September 2021. Documents

14   submitted by Outland for Chess's consideration and determination of probable cause included: (1)

15   evidence that Owen's parentage action involved the minor son of Benshoof and Owen, A.R.W.;

16
     and (2) evidence that King County Superior Court had asserted jurisdiction over a proceeding
17
     involving Benshoof, Owen, and A.R.W.
18

19   Outland and Chess knew, or should have known, that RCW 7.105.050 states:

20   (1) "The superior and district courts have jurisdiction over domestic violence protection
         order proceedings, sexual assault protection order proceedings, stalking protection
21       order proceedings, and antiharassment protection order proceedings under this
         chapter, except that such proceedings must be transferred from district court to superior
22       court when:
23   (a) A superior court has exercised or is exercising jurisdiction over a proceeding involving
         the parties;
24   (d) The petitioner, victim, or respondent to the petition is under 18 years of age;

25

26   MOTION TO DISMISS                                          Kurt Benshoof, Benshoof
     SEATTLE MUNICIPAL CASE NO. 671384                         1716 N 128th ST
     Page 18 of 29                                             Seattle, Washington 98133
                                    **0607**                   (206) 460-4202
                                                               kurtbenshoof@gmail.com

1    Benshoof emailed Outland, offering to turn himself in on the $250,000 warrant within

2    twenty-four (24) hours if Outland would simply provide Benshoof evidence that the Seattle

3    Municipal Codes she had charged Benshoof with were laws in accordance with Wash. Const. art

4    II §§ 18; 22; 32; art III § 12 which the City had the legislative power to enact, enforce, and

5    prosecute Benshoof under Wash. Const. art XI § 11.  (Dkt. #13-3 pg. 155)

6

7    Benshoof also offered to have the best polygraph analyst in Washington state hired to

8    determine whether Owen or Benshoof was telling the truth.  Benshoof proposed a payment of

9    $50,000 to Outland and Owen if anything Benshoof had alleged was false.  (*Id.* at 155)

10    Outland refused both offers.  In poker that is called "calling their bluff."

11    **R. Benshoof's Petition for Habeas Corpus**

12    Benshoof filed a Petition for Writ of Habeas Corpus in U.S. District Court for the Western

13    District of Washington in May 2023, Case No. 2:23-cv-00751-RAJ.  This case is now before the

14    9th Circuit Court of Appeals, Case No. 23-35418.

15

16    In May 2023, Plaintiff attempted to contact Owen's attorney of record, Blair Russ, in order

17    to have Mr. Russ accept service.  Mr. Russ refused to respond, despite Plaintiff informing Mr.

18    Russ that, if Owen and Lerman were *actually* traumatized by legal service to their home, Mr. Russ

19    should be more than willing to accept service.

20    However, this is illustrative of the blatantly sophomoric game that Owen and her co-

21    conspirators have been playing; that is, feign victimhood to create the thin veneer of plausibility

22    for more retaliation against Benshoof.  It's well known in clinical psychology.  Narcissists exhibit

23    a predictable pattern of behavior:  Deny, Accuse, Reverse Victim and Abuser.

24

25

26    MOTION TO DISMISS                                   Kurt Benshoof, Benshoof
      SEATTLE MUNICIPAL CASE NO. 671384                   1716 N 128th ST
      Page 19 of 29                                       Seattle, Washington 98133
                                                          (206) 460-4202
                        **0608**                          kurtbenshoof@gmail.com

Benshoof eventually had an associate effect service of process to Owen. Predictably, Owen called 911. Predictably, SPD Officer Gabriel Ladd, who is a named defendant in Benshoof's federal lawsuit, filed SPD Incident Report #2023-151429.

**S.  SMC Case No. 675317**

City prosecutor William Cotter was the latest accessory to the predicate acts of the City's RICO Enterprise targeting Benshoof. On September 28, 2023, Mr. Cotter filed charges against Benshoof to initiate Seattle Municipal Court Case No. 675317 relating to Ofc. Ladd's SPD Incident Report #2023-151429.

This latest malicious prosecution, in violation of RCW 9.62.010, constituted additional predicate acts in violation of 18 U.S. Code §§ 4; 241; 242; 1512(b); 1513(e); and 1962(c)(d).

On October 11, 2023, the City dismissed SMC Case No. 675317 without prejudice before Benshoof could present his Motion to Dismiss.

### III.  ISSUES WARRANTING MOTION

1. **Does the evidence show that Owen committed felony perjury to barratrously initiate King County family court case no. 21-5-00680-8**

   Yes. The evidence is irrefutable.

2. **Is the City Attorney's Office in possession of irrefutable evidence that Owen, Cliber, and Keenan knowingly and willfully conspired to assert jurisdiction over Benshoof and A.R.W. in violation of the First Amendment and the Fourteenth Amendment?**

   Yes. City attorneys are complicit in these ongoing violations enabling Owen to continue the abuse of A.R.W.

3. **Did Keenan act in absence of subject matter jurisdiction?**

   Yes.

4. **Did Keenan act *ultra vires* by effectively criminalizing Benshoof effecting service of process pursuant to Fed.R.Civ.P. 4?**

MOTION TO DISMISS
SEATTLE MUNICIPAL CASE NO. 671384
Page 20 of 29

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle. Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

1

2    Yes.  A family court judge lacks the authority to criminalize legal service of process

3    pursuant to Washington CR 4 and Fed.R.Civ.P. 4.

4  **5.  Have City police, prosecutors, and judges ignored evidence showing that personal
       service was not effected upon Benshoof?**

5

6    Yes.

7  **6.  Did the City comply with the statutory requirement of RCW 35.20.270(1) to effect
       service of process upon Benshoof to obtain *in personam* jurisdiction?**

8
     No.  The City has a custom and widespread practice of violating RCW 35.20.270(1) and
9
     the City is absent evidence that SPD Det. Ryan Ellis effected legal service of process of
10
     the family court orders.
11

12 **7.  Does the City have jurisdiction to hear allegations of domestic violence related to King
       County family court case no. 21-5-00680-6 pursuant to RCW 7.105.050(1)(a)(d)?**

13
     No.  Only King County Superior Court is so authorized by statute.
14

15 **8.  Was Plaintiff afforded the opportunity to raise constitutional and jurisdictional
       claims before King County family court?**

16   No.

17 **9.  Have government officials, including named defendants, prevented Plaintiff from
       effecting service of process by three different licensed process servers, as well as the
18     King County Sheriff's Office and the U.S. Marshal Service?**

19   Yes.  City police, prosecutors, and judges have conspired to file numerous charges against

20   Plaintiff for having defendants Jessica Owen and Magalie Lerman legally served.
21

22 **10.  Did Outland violate Benshoof's right to privacy?**

23   Yes.  Outland violated the Fourth Amendment prohibition against a government official

24   invading, recording and divulging the private communications between Benshoof and his

25   minor son.

26 MOTION TO DISMISS                                    Kurt Benshoof, Benshoof
   SEATTLE MUNICIPAL CASE NO. 671384                   1716 N 128th ST
   Page 21 of 29                                       Seattle, Washington 98133
                                                       (206) 460-4202
                              **0610**                 kurtbenshoof@gmail.com

## IV.  ARGUMENT FOR GRANTING MOTION

### A.  UNREBUTTED STATEMENTS OF FACT – Family Court

#### 1) Jessica R. Owen's Perjury

The felony perjury committed by the mother of Plaintiff's son, defendant Jessica R. Owen ("Owen") in King County family court case no. 21-5-00680-6 has never been refuted; rather, it has simply been ignored across nearly every level of court in Washington.  (Dkt. #23 at 4-6)

The City has not rebutted that Owen lied to the SPD and Jane Addams Middle School to falsely assert that she was the "sole legal guardian" of Plaintiff's minor son, A.R.W., and thereby perpetrated custodial interference.  (Dkt. #23 at 3)

#### 2) No Proof of Service

The City has not rebutted evidence that SPD Detective Ryan Ellis failed to legally serve Plaintiff with the final orders issued by Keenan.  (Dkt. #23 at 16)

#### 3) No Subject Matter Jurisdiction

The City has not rebutted evidence that King County family court Judge, defendant David Keenan ("Keenan") knowingly and willfully allowed, enabled, and facilitated Owen's felony perjury, aid and abetted by Owen's family attorney, Defendant Nathan Cliber ("Cliber").  As such, Keenan knew that the court lacked subject matter jurisdiction, and despite Plaintiff's repeated challenges, Keenan proceeded to act *ultra vires*. (Dkt. #23 7)

The City has not rebutted evidence that Cliber and Keenan knew that the family court could not assert jurisdiction over Plaintiff and Owen with their mutual consent, which Plaintiff never gave, because Plaintiff and Owen had never been in contractual privity with the state via via marriage, domestic partnership, declaration of invalidity, or legal separation; none of which Plaintiff and Owen were party to.  (Dkt. #23 at 8)

MOTION TO DISMISS
SEATTLE MUNICIPAL CASE NO. 671384
Page 22 of 29

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

0611

1  Even if the final orders granted by Keenan on October 21, 2022, were valid, SPD Det. Ellis

2  did not legally serve Benshoof pursuant to state law. As such, this Court has not been provided

3  evidence as a threshold matter of *in personam* jurisdiction over Benshoof.

4  The criminal complaint signed by Outland on March 13, 2023, is void for vagueness on its

5  face. For example, Count 3 reads, "On or about April 1, 2022 – March 10, 2023…"

6  Counts 26-89 all relate to alleged incidents after the October 21, 2022, final orders; that is,

7  because Plaintiff had not been legally served, these counts are barratrous malicious prosecutions

8  on their face in violation of RCW 9.62.010.

9

10  Count 1 relates to Owen's custodial interference when Benshoof attempted to speak to

11  A.R.W. on a ***public street.*** Owen falsely stated to the responding SPD officers that she was the

12  sole "legal guardian" of A.R.W., and that Benshoof had no rights as his father. False reporting is

13  a crime pursuant to RCW 9A.84.040. Owen making false or misleading statements to SPD officers

14  is also a crime pursuant to RCW 9A.76.175.

15

16  Compounding the City's disregard of facts and law, when Plaintiff attempted to provide

17  SPD Officers Alden and Wallace evidence that Ellis had not effectuated legal service, Alden and

18  Wallace refused to even look at the documentation Plaintiff attempted to provide them.

19  **D.  NO SUBJECT MATTER JURISDICTION**

20  The City cannot assert jurisdiction to prosecute or adjudicate case no. 671384 in the face

21  of irrefutable evidence that King County family court case no. 21-5-00680-8 was *void ab initio.*

22  Even a law passed by Congress which is repugnant to the United States Constitution is *void*

23  *ab initio.* A court order issued in the absence of jurisdiction has no more legal authority than

24  Crayola scrawlings on a piece of toilet paper.

25

26  MOTION TO DISMISS
SEATTLE MUNICIPAL CASE NO. 671384
Page 24 of 29

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

1

2

3

4

"So, if a law be in opposition to the Constitution, if both the law and the Constitution apply to a particular case, so that the Court must either decide that case conformably to the law, disregarding the Constitution, or conformably to the Constitution, disregarding the law, the Court must determine which of these conflicting rules governs the case. This is of the very essence of judicial duty.

5

6

If, then, the Courts are to regard the Constitution, and the Constitution is superior to any ordinary act of the Legislature, the Constitution, and not such ordinary act, must govern the case to which they both apply.

7

8

9

Those, then, who controvert the principle that the Constitution is to be considered in court as a paramount law are reduced to the necessity of maintaining that courts must close their eyes on the Constitution, and see only the law."

10

*Marbury v. Madison*, 5 U.S. 137, 178 (1803).

11

The contention of City police, prosecutors and judges for more than two years is that,

12

because King County Superior Court Commissioner Jason Holloway and Judge David Keenan

13

14

issued orders, that those orders are law. City officials have done so, despite Benshoof providing

15

irrefutable evidence that: (1) family court could not obtain jurisdiction without a justiciable

16

controversy between Benshoof and Owen; (2) that family court could not obtain jurisdiction over

17

Benshoof and Owen without Benshoof's consent; (3) that Owen violated felony perjury laws to

18

initiate her barratrous parentage action; (4) that Owen's parentage action was textbook abusive

19

litigation; (5) that Owen's parentage action was also used to perpetrate Abuse of Process in which

20

Owen, Lerman, their friend Owen Hermsen, and family attorney Nathan Cliber conspired to

21

attempt felony extortion against Benshoof to obtain $19,000 for the return of Benshoof's 2011

22

Toyota FJ Cruiser that Lerman stole on September 3, 2021. See *Benshoof v. Cliber, et. al.*, King

23

24

County Superior Court Case No. 22-2-15958-8, which has recently gone to the Washington Court

of Appeals, Division I, Case No. 85092-0.

25

26

MOTION TO DISMISS
SEATTLE MUNICIPAL CASE NO. 671384
Page 25 of 29

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

**0614**

The City did not have subject matter jurisdiction to adjudicate the false allegations that Plaintiff violated Seattle Municipal Code 12A.06.300 or 12A.09.020, as neither are laws in accordance with Wash. Const. art II §§ 18; 22; 32; art III §12 that the City had the legislative power to enact, enforce, and prosecute Benshoof under Wash. Const. art XI § 11.

## E.   MUNICIPAL COURT ABSENT AUTHORITY

As a court of limited jurisdiction, Seattle Municipal Court lacks the authority to adjudicate the alleged domestic violence charges against Benshoof even if they were valid allegations premised upon a valid family court adjudication.

RCW 7.105.050(1)(a) stipulates that an alleged violation of a domestic violence protection order in King County District Court must be transferred to Superior Court when "a superior court has exercised or is exercising jurisdiction over a proceeding involving the parties."

## F.   FOURTEENTH AMENDMENT

The Fourteenth Amendment prohibits the City and its officers from denying Plaintiff the equal protection of the law.

While SPD officers may receive inadequate training, City prosecutors and judges have no such excuse for conflating civil and criminal jurisdiction to retaliate against Plaintiff.

The City's malicious prosecution of Plaintiff, in blatant disregard of the facts and law, constitutes ongoing violations of 18 U.S.C. §§ 241; 241; 1512(b)(1); 1512(b)(2)(C); and 1513(e), predicate acts under civil RICO 18 U.S.C. § 1962(c)(d).

## G.   FOURTH AMENDMENT

The Fourth Amendment, through the equal protection clause of the Fourteenth Amendment, prohibited City officials from violating Benshoof's right to be secure in his papers

MOTION TO DISMISS
SEATTLE MUNICIPAL CASE NO. 671384
Page 26 of 29

**0615**

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

1  and effects, against unreasonable searches and seizures. RCW 9.73.060 provides Benshoof a claim

2  for statutory damages resulting from the violations of RCW 9.73.030.

3      Pursuant to RCW 9.73.030, the private text messages between Benshoof and his son shall

4  be "inadmissible in any civil or criminal case in all courts of general or limited jurisdiction in this

5  state…"

6

7      The $250,000 warrant issued by Chess was also in violation of the Fourth Amendment, as

8  "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation…"

9      As City officials had lacked evidence that: (1) the court had jurisdiction of the parties; (2)

10 the court had jurisdiction of the subject matter; and (3) the court had the authority to render the

11 particular judgment, the warrant sought by Outland, and granted by Chess, was a violation of the

12 Fourth Amendment through the equal protection clause of the Fourteenth Amendment.

13 **H. EIGHTH AMENDMENT**

14     The $250,000 warrant issued in SMC Case No. 671384 was also a gross violation of the

15 Eighth Amendment to the United States Constitution through the equal protection clause of the

16 Fourteenth Amendment, as well as a violation of Wash. Const. art. I § 14.

17

18              **V.    REQUESTED RELIEF**

19     *WHEREFORE*, Benshoof moves this Court to immediately dismiss Seattle Municipal

20 Court Case No. 671384 in accordance with the aforementioned facts and law, lest malicious

21 prosecution of Benshoof in violation of RCW 9.62.010 be allowed to continue.

22              **VERIFICATION**

23     I, Affiant Kurt Benshoof, do hereby declare that the foregoing is true and correct to the

24 best of my knowledge under penalty of perjury in the State of Washington, and am competent to

25

26 MOTION TO DISMISS
   SEATTLE MUNICIPAL CASE NO. 671384
   Page 27 of 29

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

**0616**

testify to the matters stated herein. Executed this 19th day of October in the year 2023, in the city of Seattle, in the county of King, in the state of Washington.

By: ___ s/ Kurt Benshoof _____
Kurt Benshoof *Pro Se*


1716 N 128th Street
Seattle, WA 98133
Phone: (206) 460-4202
Email: kurtbenshoof@gmail.com

MOTION TO DISMISS
SEATTLE MUNICIPAL CASE NO. 671384
Page 28 of 29

0617

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

# CERTIFICATION OF SERVICE

I, Kurt Benshoof, hereby certify that on October 19, 2023, I did effect service upon CITY

OF SEATTLE by emailing to the email addresses listed below, as well as faxing to the Seattle

Municipal Court Records Office:


**CITY OF SEATTLE:**
MOS_Legalservice@seattle.gov

**SEATTLE MUNICIPAL COURT:**
SMC_CTR_902@seattle.gov
Fax No. (206) 684-8115

**CITY OF SEATTLE Assistant Prosecuting Attorney:**
Katrina Outland, WSBA #54342
701 Fifth Ave
Suite 2050
Seattle, WA 98104
Email: Katrina.Outland@seattle.gov
Phone: (206) 684-7756

**CITY OF SEATTLE Assistant Prosecuting Attorney:**
William Cotter, WSBA #57838
701 Fifth Ave
Suite 2050
Seattle, WA 98104
Email: William.Cotter@seattle.gov
Phone: (206) 733-9614



DATED: October 19, 2023

Signed:    s/ Kurt Benshoof

Kurt Benshoof, *Pro Se*
1716 N 128th ST
Seattle, WA 98133
(206) 460-4202

MOTION TO DISMISS
SEATTLE MUNICIPAL CASE NO. 671384
Page 29 of 29

Kurt Benshoof, Benshoof
1716 N 128th ST
Seattle, Washington 98133
(206) 460-4202
kurtbenshoof@gmail.com

**0618**



**Seattle**
Municipal Court

**The City of Seattle**, PLAINTIFF

vs

**BENSHOOF, KURT A**, DEFENDANT


DOB: 07-18-1969

**Order of Release/Order Setting Bail**

☐ Amended

CASE: **671384**

Police Report Number - 23-021770

UCN: 10518097

BA NUMBER: 2024-008067

**Charge(s):**

| #  | Statute    | Descriptions |
|----|------------|--------------|
| 1  | R9A.46.110 | STALKING |
| 2  | R9A.46.110 | STALKING |
| 3  | 12A.06.300 | CUSTODIAL INTERFERENCE |
| 4  | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 5  | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 6  | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 7  | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 8  | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 9  | R07.105.450 | Violation of a Vulnerable Adult Protection Order - Invalid |
| 10 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 11 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 12 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 13 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 14 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 15 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 16 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 17 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 18 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 19 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 20 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 21 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 22 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 23 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 24 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 25 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 26 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 27 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 28 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 29 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 30 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 31 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 32 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |



Seattle
Municipal Court

| 33 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 34 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 35 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 36 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 37 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 38 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 39 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 40 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 41 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 42 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 43 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 44 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 45 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 46 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 47 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 48 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 49 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 50 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 51 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 52 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 53 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 54 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 55 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 56 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 57 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 58 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 59 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 60 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 61 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 62 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 63 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 64 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 65 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 66 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 67 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 68 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 69 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 70 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 71 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 72 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 73 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 74 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 75 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 76 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |
| 77 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER |



Seattle
Municipal Court

| 78 | R7.105.450 | **VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER** |
|----|-----------|-----|
| 79 | R7.105.450 | **VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER** |
| 80 | R7.105.450 | **VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER** |
| 81 | R7.105.450 | **VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER** |
| 82 | R7.105.450 | **VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER** |
| 83 | R7.105.450 | **VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER** |
| 84 | R7.105.450 | **VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER** |
| 85 | R7.105.450 | **VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER** |
| 86 | R7.105.450 | **VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER** |
| 87 | R7.105.450 | **VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER** |
| 88 | R7.105.450 | **VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER** |
| 89 | R7.105.450 | **VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER** |

It is hereby ordered that the defendant is:

**[X] Released from King County Jail:**

[ ] Upon personal recognizance

[X] Upon the posting of cash bail or bond in the amount of **$25000**

[X] Release to a representative of Sentinel    [ ] when other holds are lifted

[X] No Contact with: **A.R.W.   DOB: 04/22/2009**

[X] No Contact with: **Jessica Owen   DOB: 11/23/1975.**
**Other:**

**Next Hearing Date: 07/17/2024 – 1:30 PM** in **1103.**

**This order supersedes all prior Orders of Release/Orders Setting Bail/Commitments on this case.**

Dated: **July 05, 2024**
Court Staff: **AA**

*Melanie Tratnik*

Courtroom: **King County Jail - KCJ2**    Judge: **Melanie Tratnik**



## Personal Recognizance &
## Indigent Screening Case(s):

HEARING: **Warrant - In Custody** on **July 05, 2024** at **10:05 AM**    LOCATION: **King County Jail - KCJ2**

CASE: **676216, 676175, 676207, 675405, 656748, 656749, 669329, 671384, 676463, 676492**

DEFENDANT: **BENSHOOF, KURT  A**

DOB: **07-18-1969**    SEX: **Male**    RACE: **White**

BA: **2024-008067**    UCN: **10518097**

ADDRESS: 1716 N. 128TH ST., SEATTLE WA 98133

EMAIL/PHONE: KURTBENSHOOF@GMAIL.COM / 206-460-4202


**CURRENT SMC CHARGE(S):**
**FTA VIOLATON VULNERABLE ADULT PROTECTION ORDER 15 COUNTS (1000)**
**FTA VIOLATION VULNERABLE ADULT PROTECTION ORDER 15 COUNTS (1000)**
**FTA VIOLATION VULNERABLE ADULT PROTECTION ORDER 15 COUNTS (1000)**
**FTA OBSTRUCTION (5000)**
**FTA TRESPASS 1 (25,000)**
**FTA TRESPASS 1/THEFT (20,000)**
**FTA VIOL NCO (50,000)**
**FTA VIOL NCO (250,000)**
**FTA STALKING X 2, CUSTODIAL INTERFERENCE, VIOL VULN ADULT PROTECTION ORDER X 7 (250,000)**
**FTA VIOLATION VULNERABLE ADULT PROTECTION ORDER 15 COUNTS (1000)**
**FTA VIOLATION VULNERABLE ADULT PROTECTION ORDER 15 COUNTS (1000)**

OTHER JURISDICTION CHARGE(S):

☐ NO PRIOR KCJ BOOKINGS        KCJ BOOKED WARRANTS IN PAST 12 MONTHS: **10**

**NCIC COMMENTS: NO OUT OF STATE CRIMINAL HISTORY RECORDS LOCATED.**

**JABS COMMENTS: WASHINGTON CONVICTIONS EXCLUDING JUVENILE:**
**2020 TRESPASS 1 X 2.**
**2009 VEHICLE OPERATOR REFUSE TO COMPLY WITH POLICE.**
**2008 CONTROLLED SUBSTANCE VIOLATION.**
**1999 DWLS3.**
**1997 DWLS3.**
**1995 NOVOL.**


DETERMINATION:
☒ **INDIGENT**        ☐ CAN CONTRIBUTE        ☐ NOT INDIGENT
☐ DECLINED SCREEN        ☐ DECLINED TO SIGN        ☒ **REFER TO DPD**
                              PROMISSORY NOTE
☐ SCREENED LAST 365 DAYS        ☐ NOT SEEN        ☐ NOT @ KCJ
☐ WEAPONS CCW:

SCREENER NAME:  JG        SCREEN DATE: **July 03, 2024**

IN THE MUNICIPAL COURT OF THE
CITY OF SEATTLE
KING COUNTY, WASHINGTON

| | |
|---|---|
| CITY OF SEATTLE,<br>　　　Plaintiff,<br><br>V<br><br>Kurt A. Benshoof,<br>　　　Defendant, | CASE NOS. 671384,<br>　　　676175,<br>　　　676207<br>　　　676216<br>　　　676463<br>　　　676492 |

MOTION TO DISMISS

## I. INTRODUCTION

Alleged Defendant Kurt Benshoof ("Benshoof") comes by Special Appearance, challenging the jurisdiction of this court and moving for the immediate dismissal with prejudice of all the sham charges brought by the Seattle City Attorney's Office.

Benshoof and his minor son, Azhrael are the only actual victims of threats and domestic violence perpetrated for the last three years

**0623**

by two selfish, lying, thieving abusers: Jessica R. Owen ("Owen") and Magalie E. Lerman ("Lerman"). Despite repeated attempts to run away from Owen and Lerman, and despite being driven to the point of suicide to end his abuse, Seattle Police Department ("SPD") officers continue to ignore what is actually going on.

## II. STATEMENT OF FACTS

1) Benshoof incorporates by reference as if fully restated herein the following documents:
(1) U.S. Supreme Court No. 23-7607 petition;
(2) WAWD No. 2:23-cv-1392-JNW Dkt. #158;
(3) SMC No. 671384 Frank's Hearing motion.

2) Despite the court order from Judge Andrea Chin on September 3, 2024, King County Department of Adult & Juvenile Detention ("DAJD") personnel continue to refuse to provide Benshoof with office supplies and equipment with which to write briefs, Benshoof has no envelopes and postage to mail this motion.

3) City of Seattle allegedly arraigned Benshoof on July 5, 2024, Judge Willie Gregory

**0624**

671384, et al.

PAGE 2 OF 12

stepped down from the bench to allow a
pro tem judge to sit for the hearing on
July 5, 2024, as Willie Gregory, Faye
Chess, and other judges were sued by
Benshoof, currently on appeal in Ninth Circuit
Court of Appeals No. 24-4223.

4) On July 5, 2024, the expiration for these
cases was set for September 5, 2024,
pursuant to Washington's sixty day in custody
speedy trial requirement. At no time has
Benshoof waived his right to speedy trial.

5) To date, the City has refused to provide Benshoof
his requested discovery documents, has refused
to allow Benshoof to conduct interviews of the
City's witnesses, and the City continues to
withhold Benshoof's personal papers, effects, and
exculpatory evidence contained on Benshoof's
computers and cell phone which SPD
seized without probable cause or a valid
warrant on July 3, 2024.

6) On July 3, 2024, more than twenty (20) SPD
SWAT shot out the windows of Benshoof's
home church with chemical weapons cannisters

**0625**

671384, et al                    PAGE 3 OF 18

believed to be oleoresin capsicum aerosol
("OC" or "pepper spray"). SPD then posted a
sign outside the front door warning of the
danger and health risk to anyone entering.

7) Professional cleaning estimates to remove the
OC contamination from Benshoof's home
church range from $80,000 - $100,000.

8) Benshoof is indigent.

9) Benshoof is being held on a $250,000
warrant in SMC No. 671384.

10) The City has stated it may sentence
Benshoof to more than ninety (90) con-
secutive years of imprisonment if Benshoof
is tried and found guilty on all charges.
Benshoof is 55 years old.

11) To date, the City hasn't even provided
the names of the more than twenty officers
who entered Benshoof's home church on
July 3, 2024, making it impossible to
subpoena them for testimony at any hearing.

12) In court of September 3, 2024, City
prosecutor Katrina Outland claimed that she

**0626**

dismissed SMC No. 669329 so that King County could file it as a felony in KCSC No. 24-1-02680-7 SEA. However, Benshoof has not seen a Motion & Order of Dismissal regarding SMC No. 669329 which dismissed SMC No. 669329 without prejudice for a felony filing, nor has Benshoof seen a subsequently amended Information by King County to amend its First Amended Information filed in open court before Judge Suzanne Parisien on August 15, 2024.

13) Benshoof was transferred from the Maleng Regional Justice Center ("MRJC") to the Seattle King County Jail on September 6, 2024. However, the pro se laptop upon which some of the discovery videos were downloaded was left at the MRJC by DAJD personell, violating Judge Chin's order.

14) Benshoof's notebooks, reading glasses, discovery documents, pencils, file folders

**0627**

and eraser were stolen on Friday September 6, 2024 and DAJD personnel refused to retrieve Benshoof's property from S9LB where inmates had taken his items.

15) The commissary list for the Seattle King County jail does not offer $1.50 postage for the 10 x 13 manilla envelopes, making it impossible for Benshoof to mail twelve (12) pages per manilla envelope. Therefore, the only mailing option for Benshoof at the Seattle jail location is to purchase legal envelopes and postage, which are limited to six (6) pages per envelope.

16) The only domestic violence or threats of domestic violence within Benshoof's family have been perpetrated by the mother of A.R.W., Jessica Rae Owen, a career prostitute who has undeniably perjured herself in King County Superior Court regarding family matters involving Benshoof, A.R.W., and Jessica Owen ("Owen").

671384, et al.

**0628**

PAGE 6 OF 18

17) Owen revealed her malicious and criminal intent to seize custody of A.R.W. by lying to police and judges, to steal Benshoof's 2011 Toyota FJ Cruiser, to defraud Benshoof of his equity ownership in his home church, and to unlawfully imprison Benshoof by making false or misleading statements to public officials, in violation of RCW 9A.76.175, in Owen's text messages to Benshoof on August 15, 2021.

18) Owen's texts explicitly threatened Benshoof, and when Benshoof replied by text, "Did you just threaten me?" Owen texted in reply, "Definitely." Unfortunately, this text message exchange is on Benshoof's cell phone, (206) 460-4202, which SPD seized on July 3, 2024, and have refused to return to Benshoof's possession so that Benshoof can exonerate himself with exculpatory evidence.

**0629**

671384, et al

PAGE 7 OF 18

19) After Owen's threats against Benshoof, Owen then initiated KCSC Nos. 21-2-11149-8 and 21-5-00680-6, making numerous inconsistent material statements of fact between August 22, 2021 and September 23, 2021, including: (i) Benshoof _is_ the biological father and Benshoof is _not_ the biological father of A.R.W.; (2) Benshoof _had lived_ with A.R.W. his entire life and Benshoof had _never_ lived with A.R.W.; and (3) Benshoof had _always_ held out A.R.W. as his son and Benshoof had _never_ held out A.R.W. as his son.

20) Tellingly, Owen even admitted in her sworn Declaration in KCSC No. 21-5-00680-6 on, or around, September 21, 2021 that separating A.R.W. from Benshoof would "_devastate_" A.R.W.

21) Predictably, A.R.W. eventually considered suicide to end the devastating estrangement from his loving father. The Guardian ad Litem hired by Owen to falsely accuse Benshoof

**0630**

671384, et al.

PAGE 8 OF 18

of being an "extremist" and a "transphobe"
reported in September 2022 in her GAL
report the A.R.W. had recently considered
jumping from a summer camp balcony to
kill himself.

22) After A.R.W. repeatedly attempted to run
away from the abuse by Owen and Lerman
and SPD forced A.R.W. to return to his
abusers, and after Benshoof counseled his
son to persevere through the ongoing abuse
and thoughts of suicide, A.R.W. texted
his father, "What would happen if I killed
Mom"?

23) While Benshoof does not have a PhD. in
psychology, Benshoof believes that all indications
of prolonged and severe psychological and
emotional child abuse by Owen and Lerman
led to A.R.W. thinking that killing his abusers
was the only remaining option to end his
abuse.

24) While Benshoof did not discount his son's
feelings of despair, Benshoof counseled his
son to persevere with wisdom, patience and
pacifism.

**0631**

671384, et al.

PAGE 9 OF 18

25) Benshoof has repeatedly informed Seattle prosecutors Katrina Outland and Soheila Sarrafan that Owen and Lerman are perjuring prostitutes who have deceived police, prosecutors and judges for more than three years. Despite Benshoof providing Outland with irrefutable documentation of Owen's perjury, in violation of RCW 9A.72.020, supra at 19, Outland has continued to ignore the fact Owen is not a reliable witness.

26) Despite Benshoof providing Outland with irrefutable proof that SPD Det. Ryan G. Ellis did not serve Benshoof the allegedly valid Final Restraining Order (KCSC No. 21-5-00680-6) as Ellis falsely claimed in his Proof of Service filed on November 15, 2022, Outland has continued to falsely claim that Benshoof was subject to the personal jurisdiction of Seattle Municipal Court in case nos. 669329, 671384, 675317, 675405, 676175, 676207, 676216, 676463, 676492.

**0632**

671384, et al.

PAGE 10 OF 18

27) Despite Benshoof informing Outland
that Seattle Municipal Court did not obtain
personal jurisdiction by serving criminal
summons to Benshoof in case no. 669329,
in compliance with RCW 35.20.270(i),
Outland has continued to proceed with her
attempts to prosecute Benshoof.

28) Despite Benshoof informing Outland
that, pursuant to RCW 7.105.050(1)(a)(d)
only, Kirry County Superior Court would be
statutorily authorized to prosecute Benshoof,
Outland has continued her attempts to prosecute
Benshoof.

29) City of Seattle and DAJD officials have
refused to provide Benshoof with the WPIC
Volume 11 (4th edition) which the Pro Se
Handbook explicitly states Pro Se defendants
are entitled to request for seven (7) days at
a time. Volume 11 contains the pattern jury
instructions for violations of protective orders,
stalking, and custodial interference, all of
which Outland has alleged that Benshoof
violated.

**0633**

671384, et al.

PAGE 11 OF 18

# III. STATEMENT OF ISSUES

## A. NO PERSONAL JURISDICTION

Pursuant to RCW 35.20.270(1), the City did not obtain personal jurisdiction to proceed against Benshoof in case nos. 669329, 671384, 675317, 675405, 676175, 676207, 676216, 676463, or 676492.

Because SPD Det. Ryan G. Ellis did not legally serve Benshoof in person in compliance with CR 4 and the express requirements of personal service stated on Page 1 of the Proof of Service and Page 3 of the Final Restraining Order in KCSC No. 21-5-00680-6 SEA, Benshoof was never subject to the personal jurisdiction of any court regarding the terms and conditions of the aforesaid Final Restraining Order.

## B. NO SUBJECT MATTER JURISDICTION

The City claims that King County Superior Court had jurisdiction to adjudicate Owen's fraudulent, perjurious, and barratrous petition to Decide Parentage in KCSC No. 21-5-00680-6, 671384, et al

**0634**

PAGE 12 OF 18

yet RCW 7.105.050(i)(a) expressly states that once a superior court claims jurisdiction to adjudicate a family court case that ONLY a county superior court is authorized to adjudicate the prosecution of an alleged violation of a restraining order issued in such case.

Furthermore, RCW 7.105.050(i)(d) states that if a superior court family court case involves a minor such as A.R.W., who is now fifteen years old, that ONLY a county superior court is authorized to adjudicate the prosecution of an alleged violation of a restraining order issued in such case.

In other words, Katrina Outland knows that she has been maliciously prosecuting Benshoof, in violation of RCW 9.62.010, for more than twenty-one (21) months

C. VIOLATION OF EIGHTH AMENDMENT

Outland surely knows that when a court has neither personal nor subject matter jurisdiction over an alleged defendant that any attempts to imprison the defendant or impose bail upon

671384, et al.

**0635**

the defendant constitute ultra vires acts.
Therefore, when Outland sought $250,000
bail against Benshoof in SMC No. 671384 it
was a prima facie violation of the Eighth Am-
endment to the U.S. Constitution, which was in-
corporated to apply to the several states through
the Equal protection Clause of the Fourteenth Amend-
ment.

D. EXCULPATORY EVIDENCE DENIED

In violation of Brady v. Maryland, 373 U.S.
83 (1963) the City continues to unlawfully withhold
exculpatory evidence from Benshoof.

By seizing Benshoof's computers and cell
phone on July 3, 2024 (see Defendant's Franks
Hearing motion) the City unlawfully seized—
and continues to unlawfully withhold—Benshoof's
personal papers and effects and video proof
that would exonerate Benshoof at trial and is
exculpatory evidence.

According to SPD Det. Ryan Ellis, he has
still not obtained and secured exculpatory evidence
from alleged victims Jessica Owen and Majalie

671384, et al.

**0636**

Lerman as of September 3, 2024. The true reason for this is simple: Ellis, Outland, Owen and Lerman are conspiring to hide exculpatory evidence from Benshoof and this Court in order to perpetuate the malicious prosecutions of Benshoof in violation of RCW 9.62.010.

## E. VIOLATION OF SPEEDY TRIAL

Benshoof was arrested on July 3, 2024 and allegedly arraigned on July 5, 2024, despite Benshoof's objections to the lack of personal and subject matter jurisdiction.

The City, under Washington case law and the criminal rules of procedure, had sixty (60) days from July 5, 2024 to prosecute Benshoof.

The City chose to sit Judge Faye Chess on the bench on July 17, 2024, despite knowing that Faye Chess is a named defendant — appellee in Ninth Circuit Court of Appeals No. 24-4223. With that ruse, the City has claimed the authority to toll Benshoof's speedy trial calendar for

671384, et al.

**0637**

PAGE 15 OF 18

three weeks. That would be a clear violation of Washington's criminal rules of procedure, Benshoof's right to speedy trial as an incarcerated person, and the holding of <u>Barker v. Wingo</u>.

## F. RIGHT TO JURY TRIAL

The City explicitly claimed authority to prosecute and sentence Benshoof to <u>consecutive</u> sentences. Therefore, the City is attempting to imprison Benshoof for more than <u>EIGHTY (80)</u> years in cases 671384, 675175, 676207, 676 216, 676463, and 676492. This is an egregious and blatant attempt to circumvent the prohibitions of the Sixth Amendment and Wash. Const. art I § 21.

It is "nearly 'unthinkable' to suggest that the Sixth Amendment's right to a jury trial is satisfied' by an lesser number" than twelve. <u>Cunningham v. Florida</u>, No. 23-5171 (May 28, 2024) "[O]ur cases have warned ~~against~~ of the gradual 'erosion' of the jury trial right. Our cases have insisted, repeatedly, that the right to trial by jury should mean no less today, and afford

671384, et al.

**0638**

no fewer protections for individual liberty, than it did at the Nation's founding. "See e.g, _Apprendi v. New Jersey_, 530 U.S. 466 (2000); _Ramos v. Louisiana_, 590 U.S. 83 (2020)," _Cunningham v. Florida_, No 23-5171, at 2 (May 28, 2024).

## G. PRO SE MATERIALS DENIED

The City set in motion a series of events by which Benshoof would be denied access to pro se materials and office equipment in violation of Wash. Const. art I §22 and the Due Process Clause of the Fourteenth Amendment, supra at #2.

Wash. Const. art I §22 affords a pro se pretrial detainee a greater access to the courts than the federal constitution provides, yet Benshoof can't even access a pencil sharpener or envelopes and postage to mail his motions. See e.g. _State v. Silva_, 107 Wn. App 605, 27 P.3d 663, 107 Wash. App 605 (Wash. App. 2001)

**0639**

671384, et al.

H. NO MENS REA

All Benshoof has done is try to father his beloved son, despite more than three years of malicious attempts by Owen and Lorman to violate the sanctity of the father-son relationship of Benshoof and A.R.W,

In all of these events, it is an innocent and beautiful adolescent, Azhrael RuneWalker, who has suffered the most. It is time for the scales of justice to fairly consider and weigh the incontrovertible facts before the court to prevent further irreparable harm to Azhrael and his father. Amen,

Sworn this ninth day of September 2024 under penalty of perjury of the laws of Washington state in the city of Seattle, the county of King, the state of Washington,

_____

Kurt A. Benshoof

671384, et al.

**0640**

PAGE 18 OF 18