Hon. John H. Chun

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10   Mr. Kurt A. Benshoof,
     A.R.W. By and Through His Father,
11   Mr. Kurt A. Benshoof, Brett Fountain,
     Urve Maggitti,
12

                              Plaintiffs,
13
         v.
14

15   ANDREA CHIN, ANTHONY BELGARD,
     DONOVAN BROUSSARD, NATHAN
16   CLIBER, CATHERINE CORNWALL,
     GREGG CURTIS, JANE DOE, JENNY
17   DURKAN, JOHN DUUS, NICHOLAS
     EVANS, PASCAL HERZER, RYAN
18   ELLIS, MICHAEL FOX, TYLER GOSLIN,
     JULIE KLINE, ERNEST JENSEN,
19   JONATHAN KIEHN, SPENCER KURZ,
     MAGALIE LERMAN, RICHARD LIMA,
20   ADAM LOSLEBEN, YVES LUC,  SARAH
     MACDONALD, JACOB MASTERSON,
21   GRANT MAYER, STEVEN MITCHELL,
     JOHNATHAN MUSSEAU, BREHON
22   NESS, LILIYA NESTERUK, STEPHEN
     OKRUHLICA, KATRINA OUTLAND,
23   JESSICA OWEN, SARAH PENDLETON,
     DWAYNE PIRAK, BRIAN REES, BLAIR
24   RUSS, JULIE SALLE, DANIEL
     SCHILLING, TY SELFRIDGE, NATHAN
25

Case No.  2:24-cv-00808-JHC

FIRST AMENDED COMPLAINT

DEMAND FOR TRIAL BY JURY

26   FIRST AMENDED COMPLAINT FOR DAMAGES
     WAWD No. 2:24-cv-00808-JHC

     Page 1 of 255

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

1
2
3
4
5

SHOPAY, STEVEN STONE, MICHAEL TRACY, MELANIE TRATNIK, SARAH TURNER, TREVOR TYLER, MICHAEL VIRGILIO, ANDREW WEST, CHAD ZENTNER, In Their Individual Capacities,
CITY OF SEATTLE, KING COUNTY,

6

Defendants.

7
8

# I.    INTRODUCTION

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Imagine living under the iron fist of a totalitarian theocracy: one which imprisoned you for not wearing a *burqa* in public.  Imagine this theocracy kidnapped your child after you refused to be intimidated by gun-wielding religious extremists into wearing a *burqa*.  Imagine being charged with eighty-nine crimes for texting your child to keep them from committing suicide due to the emotional trauma of years-long separation.  Imagine the extremists put out a quarter million-dollar bounty on your head.  Imagine seeking refuge in your community church, only to have an armored vehicle, a helicopter, and three dozen soldiers detonate flash-bang grenades, blow off the door, and shoot out the windows on your sanctuary with chemical weapons cannisters.  Imagine being brought to trial in chains before a judge after the prosecutor selected the jury in star chamber secrecy.  Imagine the judge denied your right to call any witnesses in your defense.  Imagine you were found guilty and faced eighty-one consecutive year-long sentences for texting your own child.  Imagine the jailers then put you in solitary confinement without access to a telephone or envelopes.  Welcome to the woke theocracy.  No imagination required.

26

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Page 2 of 255

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

Welcome to Seattle.

Welcome to the nightmare in which Plaintiffs Kurt Benshoof ("Benshoof") and his minor son, A.R.W., have been living inside for over three years. Welcome to the illogical conclusion of systemic narcissism and woke policies enforced at gun point.

While Benshoof's ongoing imprisonment can be directly traced back to the perjury and fraud initiated in 2021 in King County Family Court by the mother of Benshoof's minor son, Jessica R. Owen ("Owen"), Benshoof's imprisonment is the predictable, direct, and proximate result of the malfeasance, misfeasance, and nonfeasance by City of Seattle ("City") and King County ("County") officials in joint action with corrupt private attorneys and the perjuring prostitutes who kidnapped Benshoof's minor son, A.R.W.

Instead of arresting and prosecuting the kidnappers of Benshoof's son, City officials retaliated against Benshoof for his efforts as a whistleblower to expose City and County corruption. This led to thirty-five (35) SPD police and SWAT, along with a helicopter, executing a dawn assault on Benshoof's home church on July 3, 2024, predicated upon a facially invalid search warrant, which was itself predicated upon Owen's collateral and extrinsic fraud upon multiple courts.

As Fate would have it, corrupt prosecutors and police were brazen enough to unlawfully arrest Benshoof and then prosecute him in September in the total absence of jurisdiction. Benshoof was finally afforded the opportunity to question Owen on the witness stand on September 24, 2024. Not only was Owen caught in her three

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

years of perjury, but City prosecutor Katrina Outland ("Outland") was exposed suborning Owen's perjury and the perjury of SPD Det. Ryan Ellis.

Benshoof has witnessed repeated attempts to ignore or tautologically deny sufficiently pleaded facts evidencing a prima facie case of: (1) constitutional violations of Plaintiffs' inalienable rights and clearly established laws; (2) practices and widespread customs to violate Plaintiffs' rights and clearly established laws; (3) joint action between private individuals and public officials to perpetrate the aforesaid violations; (4) conspiratorial and parallel acts made in bad faith; and (5) the complete absence of jurisdiction in courts of limited jurisdiction.   In the interest of judicial economy, Plaintiffs shall herein exhaustively detail proof of the foregoing to prevent further attempts by opposing counsel to improperly delay justice with frivolous motions containing unsworn prevarications.

"The existence or nonexistence of a conspiracy is essentially a factual issue that the jury, not the trial judge, should decide. The right to confront, cross-examine and impeach adverse witnesses is one of the most fundamental rights sought to be preserved by the Seventh Amendment provision for jury trials in civil cases." *Adickes v. Kress Co.*, 398 U.S. 144, 176 (1970)

Benshoof acknowledges the Court's decision to dismiss Marshall Ferguson as a defendant because a "judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority, but rather he will be subject to liability only when he has acted in the "clear absence of all jurisdiction," *Bradley* v. *Fisher*, 13 Wall. 335, 351. Pp. 355-357." *Stump v. Sparkman*,

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Page 4 of 255

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

435 U.S. 349 (1978)  However, any judge mentioned by name herein may be called as a witness during depositions and trial, as there is no "privilege immunizing judges from being required to testify about their judicial conduct in third-party litigation" as "the doctrine of judicial immunity" does not "excuse [a judge] from responding as a witness when his co-conspirators are sued." *Dennis v. Sparks*, 449 U.S. 24, 30 (1980)

Plaintiffs' Complaint provides relevant, contextual *background* information, which is added to facilitate the Court's understanding and just adjudication of the *current* matters in controversy regarding Plaintiffs' claims for damages, damages resulting from events ***between January 16, 2024, and January 5, 2025.***

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

# RELATED CASES

## U.S. Court of Appeals for the Ninth Circuit

No. 24-4223
Benshoof, et al., *Appellants,* v. Admon, et al., *Appellees.*

No. 24-5188
Benshoof, et al., *Appellants,* Seattle School District No. 1, Appellees.

## U.S. District Court for the Western District of Washington

WAWD No. 2:24-cv-00343-TL
Benshoof, et al., *Plaintiffs,* v. CITY OF SHORELINE, et al., *Defendants.*

## Washington Supreme Court

No. 103665-5
Kurt Benshoof, *Petitioner,* v. WARDEN, *Respondent.*

No. 103401-6
Kurt Benshoof, *Petitioner,* v. WARDEN, *Respondent.*

No. 103392-3
Kurt Benshoof, *Petitioner,* v. WARDEN, *Respondent.*

## Washington Court of Appeals, Division I

No. 87557-4-I
Kurt Benshoof, *Appellant,* v. Jessica Owen, *Appellee.*

No. 86468-8
Kurt Benshoof, *Appellant,* v. CITY OF SEATTLE, et al., *Appellee.*

No. 86467-0
Kurt Benshoof, *Appellant,* v. CITY OF SEATTLE, et al., *Appellee.*

No. 86465-8-I
Kurt Benshoof, *Appellant,* v. Jessica Owen, *Appellee.*

No. 85092-0-I
Kurt Benshoof, *Appellant,* v. Nathan Cliber, et al., *Appellees.*

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Page 6 of 255

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

## King County Superior Court

No. 24-1-02680-7 SEA
STATE OF WASHINGTON, *Plaintiff,* v. Kurt Benshoof, *Defendant.*

No. 24-2-06359-3 SEA
Kurt A. Benshoof, *Plaintiff,* v. Gregory C. Narver, *Defendant.*

No. 23-2-23752-8 SEA
Kurt Benshoof, *Plaintiff,* v. CITY OF SEATTLE, *Defendant.*

No. 22-2-15958-8 SEA
Kurt A. Benshoof, *Plaintiff,* v. Nathan Cliber, et al., *Defendants.*

No. 21-5-00680-6 SEA
Jessica R. Owen, *Petitioner,* v. Kurt A. Benshoof, *Respondent.*

## Seattle Municipal Court

No. 671384
CITY OF SEATTLE, *Plaintiff,* v. Kurt Benshoof, *Defendant.*

No. 676175
CITY OF SEATTLE, *Plaintiff,* v. Kurt Benshoof, *Defendant.*

No. 676207
CITY OF SEATTLE, *Plaintiff,* v. Kurt Benshoof, *Defendant.*

No. 676216
CITY OF SEATTLE, *Plaintiff,* v. Kurt Benshoof, *Defendant.*

No. 676463
CITY OF SEATTLE, *Plaintiff,* v. Kurt Benshoof, *Defendant.*

No. 676492
CITY OF SEATTLE, *Plaintiff,* v. Kurt Benshoof, *Defendant.*

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

## II.    JURISDICTION & VENUE

Pursuant to Section 35 of the Judiciary Act of 1789 and Fed.R.Civ.P. 17(c)(2), the Court has jurisdiction to hear the claims of A.R.W. through Benshoof acting as assistant of counsel and next friend to A.R.W.

Pursuant to 28 U.S.C. § 1331 this Court has jurisdiction and is required to adjudicate federal questions involving constitutional violations of Petitioner's rights.

Pursuant to 18 U.S.C. § 1362(c)(d) this Court has jurisdiction.

Pursuant to 28 U.S.C. 1367 this Court has supplemental jurisdiction to hear Plaintiffs' state law claims that are part of the same controversies over which this Court already has jurisdiction.

Pursuant to 28 U.S.C. § 1654 this Court has jurisdiction for *pro se* Plaintiffs.

Pursuant to 28 U.S.C. § 2283 this Court has jurisdiction to enjoin proceedings in Seattle Municipal Court and King County Superior Court pursuant to the express authorization of Congress under 42 U.S.C. § 1983.

Pursuant to 42 U.S.C. §§ 1983; 1985; 1986 this Court has jurisdiction.

Pursuant to the 1871 Act to enforce the Provisions of the Fourteenth Amendment to the Constitution of the United States, Session I, Ch. 22, § 6, this Court has jurisdiction of all civil and criminal causes arising under § 2 of said act, including empaneling a grand jury.

Pursuant to 28 U.S.C. § 1391(b)(1) venue is proper in the Western District of Washington because all claims arise out of King County, Washington.

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## III.   PARTIES

Plaintiff Kurt A. Benshoof ("Benshoof") is reverend father of his minor son, A.R.W., and at all times material to the claims herein has lived in Washington.

Plaintiff A.R.W. is the minor son of Kurt A. Benshoof, and citizen of Washington.

Plaintiff Brett Fountain, a man and citizen of Texas.

Plaintiff Urve Maggitti, a woman and citizen of Pennsylvania.

Defendant CITY OF SEATTLE ("City") is a political subdivision of the State of Washington.

Defendant KING COUNTY ("County") is a political subdivision of the State of Washington.

Defendant Andrea Chin, a woman often employed as a judge for the City, is sued in her personal capacity.

Defendant Anthony Belgard, a man employed by the Seattle Police Department ("SPD"), sued in his individual capacity.

Defendant Donovan Broussard, a man employed by the SPD, sued in his individual capacity.

Defendant Nathan Cliber, a family law attorney for defendant Jessica Owen, in his individual capacity.

Defendant Catherine Cornwall, a woman employed as King County Superior Court Clerk, sued in her individual capacity.

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

Defendant Gregg Curtis, a man employed by the King County Department of Adult & Juvenile Services ("DAJD"), sued in his official and individual capacity.

Defendant Jane Doe, a woman employed as a Jail Health Services ("JHC") nurse by the King County DAJD, sued in her official and individual capacity.

Defendant Jenny Durkan, a woman formerly employed as CITY OF SEATTLE Mayor, sued in her individual capacity.

Defendant John Duus, a man employed by the SPD, sued in his individual capacity.

Defendant Nicholas Evans, a man employed by the SPD, sued in his individual capacity.

Defendant Ryan Ellis, a man employed by the SPD, sued in his individual capacity.

Defendant Michael Fox, a man employed by Puget Consumers Co-Op ("PCC"), sued in his individual capacity.

Defendant Tyler Goslin, a man employed by Puget Consumers Co-Op ("PCC"), sued in his individual capacity.

Defendant Pascal Herzer, a man employed by the King County DAJD, sued in his official and individual capacity.

Defendant Ernest Jensen, a man employed by the SPD, sued in his individual capacity.

Defendant Jonathan Kiehn, a man employed by the SPD, sued in his individual capacity.

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Page 10 of 255

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

Defendant Julie Kline, a woman formerly employed as a legal assistant to former Seattle Mayor, Defendant Jenny Durkan, sued in her individual capacity.

Defendant Spencer Kurz, a man employed by the SPD, sued in his individual capacity.

Defendant Magalie Lerman, girlfriend of Defendant Owen, sued in her individual capacity.

Defendant Richard Lima, a man employed by the SPD, sued in his individual capacity.

Defendant Adam Losleben, a man employed by the SPD, sued in his individual capacity.

Defendant Yves Luc, a man employed by the SPD, sued in his individual capacity.

Defendant Sarah MacDonald, a woman formerly employed by the City Attorney's Office, sued in her individual capacity.

Defendant Jacob Masterson, a man employed by the SPD, sued in his individual capacity.

Defendant Grant Mayer, a man employed by the SPD, sued in his individual capacity.

Defendant Steven Mitchell, a man employed by PCC, sued in his individual capacity.

Defendant Johnathan Musseau, a man employed by the SPD, sued in his individual capacity.

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

Defendant Brehon Ness, a man employed by the SPD, sued in his individual capacity.

Defendant Liliya Nesteruk, a woman employed by the SPD, sued in his individual capacity.

Defendant Stephen Okruhlica, a man employed by the SPD, sued in his individual capacity.

Defendant Katrina Outland, a woman employed as a prosecutor for the City, sued in her individual capacity.

Defendant Jessica Owen, mother of A.R.W., sued in her individual capacity.

Sarah Pendleton, Deputy Clerk of the Washington Supreme Court, a woman, sued in her individual capacity.

Defendant Dwayne Pirak, a man employed by the SPD, sued in his individual capacity.

Defendant Brian Rees, a man employed by the SPD, sued in his individual capacity.

Defendant Blair M. Russ ("Russ"), current counsel for Jessica Owen, is sued in his individual capacity, and at all times material to the claims herein has resided in King County Washington.

Defendant Julie Salle, employed as bailiff for King County Superior Court Judge Suzanne Parisien, is sued in her individual capacity.

Defendant Daniel Schilling, a man employed by the City Attorney's Office, sued in his individual capacity.

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

1    Defendant Ty Selfridge, a man employed by the SPD, sued in his individual

2  capacity.

3    Defendant Nathan Shopay, a man employed by the SPD, sued in his individual

4  capacity.

5

6    Defendant Stephen Stone, a man employed by the SPD, sued in his individual

7  capacity.

8    Defendant Michael Tracy ("Tracy"), current co-counsel for Nathan Cliber, is

9  sued in his individual capacity, and at all times material to the claim herein has

10  resided in the western district of Washington.

11

12    Defendant Melanie Tratnik ("Tratnik"), a woman employed as a *pro tem* judge

13  by Seattle Municipal Court, is sued in her individual capacity.

14    Defendant Sarah Turner ("Turner"), current co-counsel for Nathan Cliber, is

15  sued in her individual capacity, and at all times material to the claims herein has

16  lived in the western district of Washington.

17    Defendant Trevor Tyler, a man employed by the SPD, sued in his individual

18  capacity.

19

20    Defendant Michael Virgilio, a man employed by the SPD, sued in his individual

21  capacity.

22    Defendant Andrew West, a man employed by the SPD, sued in his individual

23  capacity.

24    Defendant Chad Zentner, a man employed by the SPD, sued in his individual

25  capacity.

26  FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

# Table of Contents

I.    INTRODUCTION ........................................................................... 2

RELATED CASES ....................................................................... 6

II.   JURISDICTION & VENUE ........................................................ 8

III.  PARTIES .................................................................................... 9

IV.  STATEMENT OF FACTS .......................................................... 19

A.  Benshoof's Religious Beliefs ............................................. 19

B.  CITY OF SEATTLE – Face Coverings ............................... 20

1)  *Ex-Mayor Jenny Durkan* ............................................ 20

2)  *Face Covering Czar – Julie Kline* ............................. 21

3)  *Public Accommodations* ............................................ 21

C.  PUGET CONSUMERS CO-OP ("PCC") ........................... 22

1)  *Civil Rights Act of 1964* ........................................... 22

2)  *EUA Medical Devices* ............................................... 23

3)  *October 18, 2020: Civil Admonishment* ................... 23

4)  *SPD Incident #2020-311598* ..................................... 24

5)  *SPD Incident 2020-314225* ....................................... 27

6)  *SPD Incident 2020-317337* ....................................... 27

7)  *SPD Incident 2020-323700* ....................................... 28

D.  SEATTLE MUNICIPAL COURT ..................................... 29

1)  *Face Covering Policy* ................................................ 29

2)  *SMC No. 656748* ....................................................... 29

E.  Family Background ............................................................ 38

F.  KCSC No. 21-2-11149-8 SEA ........................................... 40

1) *Petition for Order of Protection* ................................. 41

2)  *SPD Incident 2021-003578* ....................................... 42

G.  KCSC No. 21-5-00680-6 SEA ........................................... 44

1)  *SPD Incident 9/24/2021* ............................................ 45

2)  *Temporary Restraining Order* .................................. 47

3)  *Temporary Parenting Plan* ........................................ 47

4)  *Final Restraining Order* ........................................... 47

5)  *GAL Report* ............................................................... 48

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

**H. Seattle Municipal Court – "Domestic Violence"** ........................................... 49

   *1) SMC No. 669329* ........................................................................................ 49

   *2) SMC No 671384* ........................................................................................ 51

   *3) Owen Declaration* .................................................................................... 52

   *4) SMC No. 675405* ....................................................................................... 53

   *5) Additional Malicious Prosecutions* ....................................................... 54

   *6) Legal Challenges Unavailable* ............................................................... 54

**I. Background – KCSC No. 22-2-15958-8 SEA** ............................................... 55

   *1) Abuse of Process Lawsuit* ....................................................................... 55

   *2) Face Covering Discrimination* ............................................................... 56

   *3) Ferguson's Ex Parte Communication* ..................................................... 57

   *4) Benshoof's Claims Dismissed* ................................................................ 58

   *5) Declaration of A.R.W. – Power of Attorney* .......................................... 59

   *6) Denying Right to Petition for Redress* ................................................... 60

   *7) Punitive Retaliation* ............................................................................... 61

   *8) No Jurisdiction – Temporary ORAL* ..................................................... 62

   *9) ORAL* ...................................................................................................... 64

**J. Contempt Order** ........................................................................................... 65

   *1) U.S. District Court* .................................................................................. 65

   *2) KCSC No. 22-2-15958-8 SEA* ................................................................. 65

   *3) Threat of Arrest and Sanctions* ............................................................. 67

   *4) Judgment Awarded* ................................................................................. 68

**K. Gorden Rees Scully Mansukhani ("GRSM")** ........................................... 69

**L. Mandamus Against SPS Counsel Narver** .................................................. 70

   *1) Background* .............................................................................................. 70

   *2) Parisien Court* ........................................................................................ 72

**M. Search Warrant** ............................................................................................ 73

   *1) Application for Search Warrant* ............................................................. 73

   *2) SPD Policy Manual* ................................................................................. 79

   *3) Ellis Absent Probable Cause* .................................................................. 79

   *4) Facially Invalid Warrant* ........................................................................ 81

**N. Raid of Benshoof's Home Church** .............................................................. 82

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

**O.  King County Jail** ........................................................................................ 84

    *1)  Religious Discrimination – Hate Crimes* ......................................... 84

    *2)  Denied Supplies* ............................................................................... 85

    *3)  Denied Pro Se Equipment* ............................................................... 86

    *4)  ADA Violations* ............................................................................... 87

    *5)  Denied Telephone Access* ................................................................ 89

    *6)  Denied Ability to Mail Court Documents* ...................................... 90

    *7) Bail Issues - EHD* ............................................................................ 91

    *8)   Face Covering Retaliation* ............................................................. 91

    *9)   Denied Hearing* ............................................................................. 92

**P.  Seattle Municipal Court - Constitutional Violations** ................................ 94

    *1)  Bail Hearing* .................................................................................... 94

    *2)  Motions to Dismiss not Heard* ....................................................... 94

    *3)  Denied Discovery* ............................................................................ 97

    *4)  Voi Dire* ........................................................................................... 97

    *5)  Pre-trial Motions* ............................................................................ 98

    *6)  Denied Frank's Hearing* .................................................................. 99

    *7)  Denied Counsel* ............................................................................... 99

    *8)  Denied Witnesses* ............................................................................ 99

    *9)  Trial in absentia* ........................................................................... 100

**Q.  SMC 671384 – Owen Perjury** ................................................................ 100

    *1)  Parenting Covenant* ...................................................................... 101

    *2)  Withholding of A.R.W.* ................................................................. 101

    *3)  Child Abuse* .................................................................................. 102

    *4)  Biological Father* .......................................................................... 103

    *5)  Presumption of Fatherhood* .......................................................... 104

    *6)  Acknowledgement of Fatherhood* ................................................. 104

    *7)  Father's Rights* ............................................................................. 106

    *8)  Prostitution* .................................................................................. 107

**R.  SMC No. 671384 - Ellis Perjury** ........................................................... 108

    *1)  Witness Interview* ......................................................................... 108

    *2)  Trial Testimony* ............................................................................ 108

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

**S. Family Court Vacatur** ................................................................................. 109

**T. Lerman Perjury and False Statements** ...................................................... 110

   *1) 911 Call – January 23, 2023* .................................................................. 110

   *2) Ellis Interview – July 10, 2024* ............................................................. 112

**U. SMC No. 671384 – House Fraud** ................................................................. 114

   *1) Background – KCSC 22-2-03826-8* ....................................................... 114

   *2) Arraignment Hearing* ............................................................................ 116

   *3) Bail Revocation Motion* ......................................................................... 117

   *7) Owen Burglary* ....................................................................................... 118

**V. KCSC No. 24-1-02680-7** .............................................................................. 118

   *1) Denied Franks Hearing* .......................................................................... 119

   *2) Right to Call Witnesses* .......................................................................... 119

**W. Suspension of Habeas Corpus** ................................................................. 121

   *1) KCSC Case No. 22-2-11112-7 SEA* ...................................................... 121

   *2) Ferguson's Denial of Habeas Relief* ..................................................... 122

   *3) King County Superior Court* .................................................................. 123

   *4) Washington Supreme Court* .................................................................. 125

   *5) Suspension of Mandamus* ...................................................................... 126

**X. Federal Court Habeas Suspension** ........................................................... 128

   *1) WAWD No. 2:23-cv-751-RAJ* ............................................................... 128

   *2) WAWD No. 2:24-cv-1110-JNW* ............................................................ 129

**Y. Prosecutorial Misconduct** ........................................................................ 130

**Z. Policies, Practices & Widespread Customs** ............................................ 131

**V.    AUTHORITY** .......................................................................................... 135

**VI.    CAUSES OF ACTION** ........................................................................... 137

VIOLATION OF FOURTH AMENDMENT ...................................................... 137

   **Malicious Prosecution** ................................................................................ 137

VIOLATION OF SECOND AMENDMENT ....................................................... 144

NEGLIGENCE ..................................................................................................... 148

VIOLATIONS OF FIRST AMENDMENT ......................................................... 153

   **Free Exercise of Religion Retaliation** ....................................................... 153

   **Right of Association** .................................................................................... 161

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**Right to Petition for Redress of Grievances** ...................................................... 165

**Right to Petition for Redress of Grievances** ...................................................... 172

VIOLATIONS OF FOURTH AMENDMENT ........................................................ 175

**False Arrest** ........................................................................................................ 175

**General Search Warrant** ................................................................................... 185

**Excessive Use of Force** ..................................................................................... 190

TRESPASS .............................................................................................................. 197

VIOLATIONS OF SIXTH AMENDMENT .......................................................... 200

**Right to Counsel** ............................................................................................... 200

VIOLATIONS OF EIGHTH AMENDMENT ....................................................... 205

**Excessive Fines & Cruel Punishments** ........................................................... 205

VIOLATIONS OF FOURTEENTH AMENDMENT ............................................. 212

**Due Process Clause - Right to Life & Liberty** ............................................... 212

**Procedural Due Process – Liberty Oppression** ............................................... 217

**Procedural Due Process – Liberty Oppression** ............................................... 222

**Procedural Due Process – No Administrative Hearing** ................................... 228

COMMON LAW FRAUD ....................................................................................... 230

**Denial of Due Process *re* House** ................................................................... 236

**Equal Protection Clause** .................................................................................. 242

CONSPIRACY ........................................................................................................ 244

**Obstruction of Justice** ...................................................................................... 244

**Deprivation of Rights or Privileges** ................................................................ 248

NEGLECT TO PREVENT ....................................................................................... 251

**VERIFICATION** ................................................................................................. 255

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Page 18 of 255

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

# IV.  STATEMENT OF FACTS

## A.  Benshoof's Religious Beliefs

1.      Benshoof's firmly held religious beliefs are a spiritual Covenant with God.  ("spiritual Covenant").  Benshoof's spiritual Covenant requires him to speak the truth and proscribes him being coerced to wear a face covering as a condition of entrance into public accommodations and courtrooms.

2.      Benshoof's spiritual Covenant requires him to confront, expose, and seek redress against liars and their lies, particularly when those liars seek to violate the First Amendment by denying others their right, endowed by their Creator, to: (1) free exercise of religion; (2) petition for redress of grievances; and (3) familial association.

3.      Benshoof's spiritual Covenant requires him to confront, expose, and seek redress against liars and their lies, particularly when those liars seek to violate the Fourteenth Amendment by denying others the right to due process and equal protection under the law.

4.      Benshoof's spiritual Covenant holds that "an individual who breaks a[n] [order] that conscience tells him is un[lawful], and who willingly accepts the penalty of imprisonment in order to arouse the conscience of the community over its injustice, *is in reality expressing the highest respect for law*." —*Rev. Martin Luther King, Jr.*, Letter from Birmingham Jail, April 16, 1963.

5.      Benshoof's spiritual Covenant holds that the "U.S. Constitution and Washington Constitution are sacred documents embodying the teachings of Christ,

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

enshrining the natural law of Creation as enforceable contracts binding upon all duly sworn thereto; both *malum in se* and *malum prohibitum*.  A violation of a public official's oath constitutes a fraudulent violation of the contract between a public servant and every citizen, a contract to which Benshoof is a third-party beneficiary.

6.    Benshoof's firmly held spiritual beliefs constitute a class of one for the purposes of this petition.  *Village of Willowbrook v. Olech*, 528 U.S. 562, at 566 (2000) Benshoof's firmly held beliefs constitute a protected class, prohibited from disparate treatment, discrimination, and invidious discriminatory retaliation by government officials or private individuals in joint action with state actors, regardless of whether Benshoof's beliefs are deemed orthodox. *Griffin v. Breckenridge,* 403 U.S. 88 (1971)

7.    When corrupt public officials, corrupt attorneys, or corrupt private individuals, violate the foregoing tenets of Benshoof's beliefs, Benshoof is presented with a Faustian bargain, either: (1) violate his spiritual Covenant to comply with the unlawful demands of criminals; or (2) uphold his spiritual Covenant and be subjected to threats of unlawful imprisonment and retaliatory financial sanctions and prosecutions.   "In times of universal deceit, speaking the truth becomes a revolutionary act." —*George Orwell.*

## B.  CITY OF SEATTLE – Face Coverings

### 1) *Ex-Mayor Jenny Durkan*

8.    While U.S. Attorney for the Western District of Washington, Jenny Durkan ("Durkan") created an office of Civil Rights.  Durkan knew, or should have known, that the Civil Rights Acts of 1871 and 1964 prohibited retaliating against the

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

rights of, and discriminating against, Benshoof's class for shopping at public accommodations.

> "In addition, it is critical to note that ***there are valid reasons why some people can't wear face coverings – please do not discriminate***. If you experience or witness harassment or an act of bias, report it to the Seattle Office for Civil Rights Anti-Bias hotline at 206-233-7100. You can also report online at seattle.gov/reportbias. If it is an emergency, please call 9-1-1 immediately." *See* https://durkan.seattle.gov/2020/05

9.      Face covering policies enforced under the authority of the City allowed for anyone to wear a face shield in lieu of a disposable mask.  On November 24, 2020, doh.wa.gov stated, "the ***use of face shields alone is currently viewed as serving no purpose or providing any protection*** from the transmission of COVID-19 in the courtroom work environment."  (Exhibit 0859 ¶3)

### 2)  Face Covering Czar – Julie Kline

10.      July Kline, as advisor to Seattle Mayor Junny Durkan during 2020-2021, developed and implemented face covering policies for Seattle, including the Seattle Police Department, Seattle Fire Department, and courts.  (Exhibit #0948 ¶4)

11.      Upon Benshoof's information and belief, Durkan and Kline knew or should have known that the City's face covering practice was arbitrary and capricious.

### 3)  Public Accommodations

12.      City officials have not provided Benshoof evidence that City officials could allow, enable, facilitate, or perpetrate discrimination against Benshoof's class

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

in places of public accommodation without violating Title II of the Civil Rights Act of 1964, Pub. L. 88-352, §§ 201-205.

13.     Upon Benshoof's information and belief, if not for Benshoof belonging to a class of people whose beliefs precluded Benshoof from being coerced to wear a face covering, store employees in joint action with SPD officers and City officials would not have acted with intent to silence, restrain, seize, or confine Benshoof.

14.     On or about September 14, 2020, Benshoof emailed City Attorney Peter Holmes ("Holmes"), informing Holmes of Benshoof's intent to sue Holmes if SPD continued to threaten and arrest Benshoof while shopping sans face covering at public accommodation.  Upon Benshoof's information and belief, Holmes then initiated a four-year conspiracy to retaliate against Benshoof under color of law.

## C.  PUGET CONSUMERS CO-OP ("PCC")

### 1)  Civil Rights Act of 1964

15.     PCC sells food snacks and beverages and are therefore public accommodations under Title II of the Civil Rights Act of 1964, Pub. L. 88-352, §§ 201-205, ("Civil Right Act").

16.     Upon Benshoof's information and belief, if not for Benshoof's class, PCC employees: (1) would have served Benshoof at the deli; (2) would have served Benshoof at the checkout stand; (3) would not have set in motion a series of events which would foreseeably lead to the unlawful imprisonment[1] of Benshoof; and (4)

---

[1] See RCW 9A.40.040 Unlawful imprisonment; RCW 9A.40.010(6) "Restrain"

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Page 22 of 255

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

would have allowed Benshoof to use their credit cards and thereupon engage in interstate commerce;

17.    The Civil Rights Act states, "***All persons*** shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations in places of public accommodations…without discrimination or segregation on the ground of race, color, ***religion***, or national origin."

### 2)  EUA Medical Devices

18.    On, or around, September 6, 2020, PCC instituted a "No Mask, No Entry" policy and employees thereupon asserted the authority to deny Benshoof in-store services pursuant to Governor Inslee's covid-19 proclamations, Washington state guidelines, and Durkan's face covering polices implemented by Kline.

19.    PCC employees allowed the wearing of a face shield in lieu of a face mask.

20.    PCC employees and SPD officers stated their belief that Benshoof was protesting face covering policies which Benshoof believed violated his right to exercise his religion.

21.    PCC employees asserted their demands that Benshoof wear a face covering to buy groceries were consistent with Washington state and CDC guidelines.

### 3)  October 18, 2020: Civil Admonishment

22.    On October 18, 2020, Benshoof entered PCC Aurora sans face covering and shopped for groceries.

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Page 23 of 255

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

23.    PCC manager Steve Mitchell, ("Mitchell") approached Benshoof, violating PCC's six-foot distancing policy, to hand Benshoof a *civil* trespass admonishment document. (Ex. #0865)

24.    On November 3, 2020, Mitchell emailed Benshoof, asserting that Benshoof was trespassed from PCC and subject to *criminal* arrest. (Ex. #0866)

25.    On November 3, 2020, Benshoof informed Mitchell by email that PCC employees were violating RCW 9.91.010 Denial of civil rights by denying Benshoof "full enjoyment of any of the accommodations, advantages, privileges, or facilities of" PCC, a public accommodation. (Ex. #0867)

26.    Benshoof would have to be violating a law to be subject to arrest, and that Benshoof was not violating any law by shopping without a face covering; that is, a *civil* trespass admonishment could not confer *criminal* jurisdiction upon the SPD.

### 4) *SPD Incident #2020-311598*

27.    On November 4, 2020, Benshoof called 911 while standing outside Aurora PCC to report that PCC employees had been engaging in months of discrimination and harassment against him because Benshoof's beliefs proscribed being coerced to wear a face covering as a condition of entering a public accommodation, such as PCC.

28.    Benshoof alleged the denial of his civil rights by employees of PCC, and prima facie evidence of an ongoing criminal conspiracy between PCC employees and City officials.  Benshoof cited RCW 9.91.010 and 18 U.S.C. §§ 241; 242.

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

29.     SPD Officers Defendant Jonathan Kiehn #5849 ("Kiehn") and Michael Cruzan #5849 ("Cruzan") responded, meeting Benshoof in the parking lot to discuss Benshoof's complaints.

30.     Benshoof informed Kiehn that he had a disability precluding him from being coerced to wear a face covering.  Benshoof informed Kiehn and Cruzan that RCW 49.60.030 prevented PCC from discriminating against Benshoof due to his disability by denying Benshoof his right to the full enjoyment of any public accommodation open to the public.

31.     Benshoof informed Kiehn and Cruzan that RCW 9.91.010 criminalized the denial of Benshoof's rights by PCC employees and prohibited discrimination against Benshoof's creed.

32.     Benshoof provided Kiehn with printed copies of RCW 49.60.030, .040, RCW 9A.52.070, and RCW 9A.52.090, explaining that criminal trespass required *mens rea* to enter or remain unlawfully.

33.     Benshoof informed Kiehn that PCC's entrance sign stating, "No Mask, No Entry," was not a law, and that the conditions for entry discriminated against Benshoof's religious beliefs as a reverend of a church.

34.     Benshoof informed Kiehn and Cruzan that it was a crime pursuant to RCW 9.91.010 for PCC employees to deny Benshoof's civil rights by discriminating against Benshoof's creed.

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

35.     Benshoof informed Kiehn and Cruzan that there was prima facie evidence that City officials were engaged in a criminal conspiracy, in joint action with businesses such as Sprouts and PCC, to deny Benshoof's civil rights.

36.     After speaking with Kiehn for approximately twenty minutes, Kiehn stated that he would not be arresting *anyone,* which gave Benshoof good cause to believe that Kiehn understood the law and would not accuse Benshoof of criminal trespass.

37.     Benshoof shopped for groceries, was denied deli service, was denied check-out service, was unable to use his credit card and engage in interstate commerce, and thereupon left cash payment for his groceries inside the store but received no change.

38.     When Benshoof exited PCC with his groceries, Kiehn and Goslin were conversing in the parking lot; thereupon, Benshoof had good cause to believe that Kiehn was explaining to Goslin that PCC could not discriminate against Benshoof for not wearing a face mask.

39.     In the subsequent SPD incident report, Kiehn recounted being informed by Benshoof that he is a pastor for a small home church, primarily serving the underprivileged and homeless.  (Ex. #0872-0877)

40.     Kiehn recounted that Benshoof stated that allowing public accommodations to arbitrarily discriminate was a "slippery slope" that could easily lead to a public accommodation denying service to *anyone* who looks like a homeless person by arguing that homeless people are dirty and have more germs. (Ex. #0874)

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Page 26 of 255

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

41.     Kiehn **consulted a Webster's dictionary** to conclude that PCC's sign stating, "No Mask, No Entry" met the definition of a "lawful" order requiring Benshoof's compliance; thereupon, Kiehn forward a criminal trespass complaint against Benshoof to the CITY Attorney's Office. (Ex. #0874)

42.     On November 13, 2020, the City Attorney's Office filed a criminal complaint in SMC No. 656748, charging Benshoof with violating 12A.08.040(A).

### 5) *SPD Incident 2020-314225*

43.     On November 7, 2020, Benshoof entered PCC Aurora to buy groceries without a face covering and Mitchell demanded that Benshoof put on a face covering or leave.

44.     Benshoof shopped for groceries, was denied check-out service, and left cash payment for his groceries inside the store but received no change.

45.     After Benshoof left PCC Aurora and drove home, SPD Officers Richard Lima #7760 ("Lima") and Nathan Shopay #7470 ("Shopay") responded to the 911 call by Mitchell.

46.     Lima wrote the offense report and on March 25, 2021, the City Attorney's Office filed a criminal complaint in case no. 656748, charging Benshoof with violating 12A.08.040(A).

### 6) *SPD Incident 2020-317337*

47.     On November 11, 2020, Benshoof entered PCC Aurora to buy groceries without a mask and Mitchell demanded that Benshoof put on a face covering or leave.

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

48.     Benshoof provided Mitchell with written Notice of Violation informing Mitchell that he, and other PCC employees, were violating Benshoof's rights under color of law, and may be subject to civil or criminal liability. (Ex. #0869) Benshoof shopped for groceries, was denied deli service, was denied check-out service, was unable to use his credit card and engage in interstate commerce, and thereupon left cash payment for his groceries inside the store but received no change.

49.     After Benshoof left PCC Aurora, SPD Officers Richard Lima #7760 ("Lima") and Jacob Masterson #8350 ("Masterson") responded to the 911 call by Mitchell.  Lima wrote the offense report, alleging that Benshoof committed criminal trespass.

50.     On March 25, 2021, the CITY Attorney's Office filed a criminal complaint in case no. 656748, charging Benshoof with violating 12A.08.040(A).

### 7) *SPD Incident 2020-323700*

51.     On November 19, 2020, Benshoof entered PCC Aurora to buy groceries without a mask and Goslin demanded that Benshoof put on a face covering or leave.

52.     Benshoof provided a store supervisor with a Notice of Violation to inform PCC employees they were violating Benshoof's rights in joint action with SPD officers.

53.     Benshoof shopped for groceries, was denied deli service, was denied check-out service, was unable to use his credit card and engage in interstate commerce, and thereupon left cash payment for his groceries inside the store but received no change.

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Page 28 of 255

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

54.    After Benshoof left PCC Aurora, SPD officers Richard Lima #7760 ("Lima") responded to the 911 call by Goslin.  Lima completed an offense report alleging Benshoof violated Seattle Municipal Code 12A.08.040(A).

## D. SEATTLE MUNICIPAL COURT

### 1) Face Covering Policy

55.    Seattle Municipal Court ("SMC") implemented face covering requirements to enter the courthouse on, or around, March 9, 2020, under GAO 2020-02; face covering requirements continued through October 2022.

56.    On June 17, 2020, Presiding Judge Willie Gregory issued GAO No. 2020-08 regarding Covid-19 emergency court operations. (Ex. #0852-0858)  GAO No. 2020-08 stated that "all persons entering the courthouse are required to wear a protective face covering when interacting with others… This requirement is consistent with Mayor **Durkan's guidance** for public buildings in the City of Seattle and Washington Department of Health guidelines." (Ex. #0855)

57.    On November 23, 2020, Presiding Judge Willie Gregory issued GAO No. 2020-13 regarding Covid-19 emergency court operations. (Ex. #0862-0864)

58.    SMC judges, and security personnel under the direction of SMC judges, denied Benshoof entrance to courtrooms, the records office, and the full enjoyment of the courthouse services between November 2020 and October 2022 because Benshoof's beliefs proscribed him being coerced to wear a face covering.

### 2) SMC No. 656748

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

59.    On November 13, 2020, City prosecutor Daniel O'Brien (O'Brien) filed a criminal complaint related to SPD Incident no. 2020-311598 alleging that on November 4, 2020, Benshoof violated SMC 12A.08.040(A) criminal trespass at PCC Natural Markets Aurora.

60.    O'Brien did not provide evidence of the City's compliance with legal service of criminal process upon Benshoof pursuant to RCW 35.20.270(1) in Seattle Municipal Court No. 656748 by which the City could obtain personal jurisdiction.

> **RCW 35.20.270(1)** states, "All criminal and civil process issuing out of courts created under this title shall be directed to the chief of police of the city served by the court and/or to the sheriff of the county in which the court is held and/or the warrant officers and be by them executed according to law in any county of this state."

61.    On November 24, 2020, the docket stated, "Speedy trial rule waiver filed" and that a new commencement date of March 1, 2021, was set. Neither Benshoof nor the City prosecutors motioned for a continuance of case no. 656748. (Ex. #0964)

62.    Armed marshals of SMC forced Benshoof to remain in the lobby and use WebEx to appear by video on a computer set up in the courthouse lobby by the marshals.

63.    Benshoof requested that the marshal cite the lawful authority by which Lynch denied Benshoof's right to physically appear in courtroom 1102.

64.    The marshal returned to provide Benshoof with several pages of documents from Lynch, alleging that Mayor Jenny Durkan ("Durkan") granted Lynch the power to deny Benshoof's right to enter the courtroom. (Ex. #0855 ¶3)

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

65.    Benshoof informed the marshal that as an executive officer of a municipal corporation, Durkan could not delegate power that Durkan did not possess: Benshoof requested the marshal obtain a lawful substantiation from Lynch for her denial of Benshoof's courtroom access.

66.    Benshoof pointed out Gregory's GAO No. 2020-08 stated that Seattle Municipal Court requirements are "consistent with mayor Durkan's guidance….and Washington Department of Health ("DoH") recommendations" yet the state government's website stated that face shields serve *no purpose*.  (Ex. #0859 ¶3)

67.    The marshal informed Benshoof that Lynch would allow Benshoof to enter courtroom 1102 if Benshoof would agree to wear a face shield.

68.    Benshoof informed the marshal that Washington state guidelines explicitly stated that a face shield ***serves no purpose*** in mitigating the transmission of viruses.  The marshal smiled and shrugged.

69.    The marshal later returned with more photocopies.  Pursuant to these documents, Lynch asserted her authority to deny Benshoof's maskless entrance to the courtroom as ***consistent with*** the holdings of *State v. Bone Club*, 906 P.2d 325, Wash (1995), and *Seattle Times Co. v. Ishikawa,* 97 Wn.2d 30 (1982).

70.    Benshoof read *State v. Bone Club* and *Seattle Time v. Ishakawa* and concluded that neither case authorized Lynch to violate Wash. Const. art I, § 22: both cases related to whether the press and members of the public could be prohibited under specific conditions from entering a courtroom to watch a trial.

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

71.    A second marshal set up a computer in the lobby for Benshoof to appear for the hearing in courtroom 1102 by WebEx video and Benshoof logged into the hearing.

72.    Benshoof informed Lynch that he wished to immediately dismiss his public defender, Krystal White.  Lynch appeared visibly angry to Benshoof and declared that if Benshoof said another word for the rest of the hearing that he would face contempt of court.  Lynch then muted Benshoof until the conclusion of the hearing.  The City then claimed that SMC No. 656748 had been continued until March 1, 2021, despite no waiver of continuance being filed for SMC No. 656748, and without Benshoof agreeing to a waiver of his right to speedy trial. (Ex. #0964)

73.    On March 1, 2021, Benshoof was denied entrance to courtroom 1102 before Judge Faye Chess because Benshoof was not wearing a face covering.

74.    On March 25, 2021, O'Brien filed an amended criminal complaint with two additional counts alleging Benshoof violated SMC 12A.08.040(A) at PCC Aurora.

75.    On April 5, 2021, O'Brien filed his 2nd amended criminal complaint with a fourth count alleging Benshoof violated SMC 12A.08.040(A) at PCC Aurora on November 19, 2020.

76.    On April 6, 2021, Benshoof was denied entrance to the courtroom and appeared via WebEx video to argue for the dismissal of case no. 656748 due to lack of subject matter jurisdiction.  City prosecutor Sarah MacDonald ("MacDonald") stated in court that PCC management and the City Attorney's Office were in regular discussion about "how to keep Mr. Benshoof out of [PCC] stores."

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

77.    On the morning of July 21, 2021, Benshoof appeared by WebEx before Gregory because armed court marshals continued to deny Benshoof entrance to courtrooms.

78.    Gregory ordered Benshoof to appear in person in Seattle Municipal Court wearing covering, or by providing an exemption letter from a medical professional proving that Benshoof had a disability precluding him from wearing a face covering.

79.    Benshoof reminded Gregory of RCW 49.60.040(7)(d) "Only for the purposes of qualifying for reasonable accommodation in employment, an impairment must be known or shown through an interactive process to exist in fact."

80.    Benshoof reminded Gregory that Wash. Const. art. I § 22 prohibited a public servant from denying a named defendant the right to appear in court.

81.    On the afternoon of July 21, 2021, Benshoof appeared by WebEx before Crawford-Willis.

82.    Crawford-Willis reiterated her demand that Benshoof comply with Gregory's demand that Benshoof wear a face covering to enter court or provide an exemption letter.

83.    Benshoof stated his belief that the City prosecutors and municipal judges were setting Benshoof up to be accused of "failure to appear" so that a failure to appear bench warrant could be issued for Benshoof's arrest.

84.    Crawford-Harris asserted she could hold a trial *in absentia* if Benshoof did not comply with her and Gregory's demands.

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Page 33 of 255

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

85.     On July 22, 2021, prior to SMC opening, Benshoof faxed documents to SMC to ensure that the record evidenced Benshoof's attempts to appear in court and comply with all laws, (Ex. #0965-0972).

86.     July 22, 2021, Crawford-Harris again denied Benshoof's right to appear in person in courtroom 1002 without a face covering; therefore, Benshoof appeared by WebEx video.

87.     Crawford-Harris then prompted prosecutor MacDonald by saying, "Don't you have something for me?"  Benshoof noticed MacDonald appeared startled at the question from Crawford-Willis.  MacDonald then proposed a $20,000 bench warrant which MacDonald moved the court to enter against Benshoof for "failure to appear".

88.     Benshoof then informed MacDonald and Crawford-Willis that they were doing exactly what he predicted the previous day.

89.     Upon Benshoof's information and belief, prior to the court permitting Benshoof to connect via WebEx video to the courtroom at approximately 900am, MacDonald and Crawford-Willis engaged in *ex parte* communication regarding the intention of MacDonald to motion for a "failure to appear" bench warrant against Benshoof.

90.     Upon Benshoof's information and belief, *Ex parte* communications are prohibited under Washington Code of Judicial Conduct Rule 2.9.

91.     Upon the motion of MacDonald for a $20,000 "failure to appear" bench warrant, Crawford-Willis issued bench warrant #990429244 in the amount of $10,000.

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Page 34 of 255

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

92.    The worksheet stamped by the bailiff and filed in the record shows that the box for "Defendant Appeared" was checked yet the docket entry stated, "DEFENDANT NOT PRESENT." (Ex. #0973-0974)

93.    On January 19, 2022, Benshoof was denied access to courtroom 1002 before Crawford-Willis.  Crawford-Willis stated that Benshoof's face covering exemption letter had been invalidated by "Omicron."  Benshoof appeared via WebEx video.

94.    Upon the motion of MacDonald for a $15,000 "failure to appear" bench warrant, bench warrant #990430984 in the amount of $10,000 was issued for Benshoof's arrest by Judge Crawford-Willis.

95.    On August 29, 2022, Benshoof was denied access to courtroom 1001 before Judge Gregory due to Benshoof's spiritual <u>Covenant</u>. Benshoof appeared by telephone.

96.    After oral arguments concluded, and after Gregory denied Benshoof's motions, Benshoof disconnected from his telephone appearance, Judge Gregory issued bench warrant #990433484 in the amount of $15,000 for Benshoof's arrest for allegedly "exiting the hearing early."  The bailiff did not attempt to call Benshoof's telephone to verify if there had been a technical issue with Benshoof's phone or connection.

97.    On July 28, 2023, Kelly motioned Chess for a $50,000 bench warrant because Benshoof was not physically present in the courtroom, despite Benshoof's public defender, Faiz Pirani being present.  Chess issued bench warrant #990437507 in the amount of $25,000 for the arrest of Benshoof.

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

98.     On October 13, 2023, Benshoof sought to dismiss his public defender, Faiz Pirani ("Pirani"), by filing a Marsden motion (Ex. #0979-0982) because Pirani refused to file any motion challenging the personal or subject matter jurisdiction of Seattle Municipal Court, and Pirani refused to withdraw.   Seattle Municipal Court ("SMC") judges refused to adjudicate Benshoof's Marsden motion.

99.     On October 19, 2023, Benshoof filed a motion to dismiss SMC No. 656748 (Ex. #1001-1025), yet SMC judges refused to hear Benshoof's motion because Pirani remained Benshoof's counsel of record.

100.    On July 3, 2024, Benshoof was arrested at his home and imprisoned pursuant to bench warrant #990437507.  Benshoof was unable to post the $25,000 due to his financial indigency.

101.    On or around August 5, 2024, Benshoof made oral motion before Judge Chin to set a hearing for Benshoof's motions to dismiss: one motion for SMC Nos. 656748 and 656749, and one motion for the cases related to allegations of domestic violence: 669329, 671384, 675405, 676207, 676216, 676175, 676463, 676492.

102.    On August 5, 2024, Judge Chin initially set the following filing deadlines and hearing date: August 13, 2024, as the date that Benshoof's motions to dismiss were to be filed; the City's Responses were due August 26, 2024; and oral argument was set for hearing at Readiness on September 13, 2024. Outland signed the agreed order. (Ex. #0498)  Chin informed Benshoof that he could be imprisoned on eighty-one successive sentences, effectively a life sentence.

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

103.    Because Benshoof was denied sufficient envelopes and postage, he was unable to file his motions to dismiss SMC Nos. 656748; 656749 and his motion to dismiss SMC Nos. 669329, 671384, 676175, 676207, 676216, 676463, 676492 to be recorded with the court.

104.    Before Chin on September 3, 2024, Benshoof objected to the fact that, because the King County Department of Adult and Juvenile Detention ("DAJD") had denied him access to envelopes and stamps, he had been unable to file his motions to dismiss.    Judge Chin reset the following filing deadlines and hearing date for Benshoof motions to Dismiss: September 13, 2024, for filing Benshoof's motions to dismiss, and September 17, 2024, for the City's Response briefs and for oral arguments.

105.    Benshoof filed his motions with the court prior to September 13, 2024, handing them to Judge Chin's bailiff in open court on September 9, 2024.    Benshoof also left several voicemail messages to Schilling, reminding him of the due date for the response to Benshoof's motions to dismiss.

106.    Upon Benshoof's information and Belief, Chin directed her bailiff to not record either of Benshoof's motions to dismiss.    To date, neither of Benshoof's motions have been recorded on the Seattle Municipal Court web portal.

107.    Schilling did not file any responsive brief to Benshoof's motion to dismiss SMC Nos. 656748, 656749.    Upon Benshoof's information and belief, Schilling knew in advance of September 17, 2024, that Judge Chin would prevent Benshoof from having his motions to dismiss heard.

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

108.    Upon arriving in SMC courtroom 1003 before Judge Chin on the morning of September 17, 2024, Benshoof demanded to have his motions to dismiss heard.  Judge Chin stated that she would not hear Benshoof's motion to dismiss for SMC Nos. 656748; 656749 because September 17, 2024, was the start of the trial for SMC Nos. 671384, 676175, 676207, 676216, 676463, 676492.

109.    On September 30, 2024, the City dismissed all charges related to SMC No. 656748 with prejudice.  Benshoof spent nearly three months in pre-trial detention pursuant to $25,000 bench warrant #990437507 due to his financial indigency.

**E.  Family Background**

110.    Benshoof and Owen discovered she was pregnant with Benshoof's son, A.R.W., in August 2008; thereupon, Benshoof and Owen entered a verbal parenting contract at common law ("Covenant") after notice, consideration, and accord; thereby exercising their unlimited right to contract as private individuals.

111.    Under their Covenant, they would henceforth have full, equal and inalienable rights as parents of their son-to-be, sharing all significant decisions regarding A.R.W.'s care and upbringing, such as education, family scheduling, medical care, and living arrangements.

112.    Though Benshoof and Owen never married, they raised A.R.W. amicably for the following twelve years, prioritizing their son's well-being and sharing equally in all significant decisions regarding their son.  Benshoof had good cause to believe that Owen would never violate their Covenant: doing so would negatively impact the well-being of A.R.W., and Benshoof did not believe Owen would ever be that selfish.

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Page 38 of 255

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

113.    Benshoof and Owen have never been parties to a marriage, domestic partnership, legal separation, or a declaration of invalidity.  Benshoof has never yelled at A.R.W., nor threatened corporal punishment, let alone spanked his son.

114.    In September 2020, Owen moved out of the family home, located at 1716 N 128th Street, Seattle, WA 98133, to buy a house with her prostitute girlfriend, Magalie E. Lerman ("Lerman"), located at 849 NE 130th Street, Seattle, WA 98125.

115.    In August 2021 relations between Benshoof and Owen deteriorated when Benshoof discovered that Owen had violated their Covenant by secretly making unilateral medical decisions, injecting A.R.W. with an experimental Pfizer BioNTech 162b2 gene therapy treatment for a disease that A.R.W. did not have.

116.    Benshoof showed A.R.W. the Vaccine Adverse Event Reporting System data at cdc.gov and showed A.R.W. that the Pfizer treatment was still in Phase Three of its clinical trial. (*See* https://clinicaltrials.gov/ct2/show/NCT04368728)  To date, Pfizer has not completed Phase Three.

117.    A.R.W. realized that Owen had lied that the gene therapy treatment was "safe" and "approved."  A.R.W. was shocked that Owen *coerced* him with lies by telling A.R.W. that he would not be able to attend school, nor play with any of his friends, unless he received the "safe" and "approved" Pfizer BioNTech gene therapy.

118.    A.R.W. chose not to go back over to Owen's house, stopped returning Owen's texts, and hung up the phone on Owen when she called him.  Owen, instead of accepting Benshoof's invitation to come over to Benshoof's house for a family discussion with their son, threatened Benshoof that she would "bring a police escort

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Page 39 of 255

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

to pick [A.R.W.] up, repossess the FJ and evict you.  Fucking put [A.R.W.] on the phone now.  All these things are within my power."  Benshoof texted Owen, "Did you just threaten me?" Owen responded, "Definitely." (Ex. #0398)

119.    On August 15, 2021, Owen, knowing that the City had issued a $10,000 "failure to appear" warrant for Benshoof's arrest in SMC No. 656748. threatened to call the police to "repossess" Benshoof's FJ Cruiser.

120.    Benshoof told Owen that if she continued to withhold the title to his FJ Cruiser, he would take the matter to court.  Owen responded, "You have a warrant out for your arrest.  Go right ahead to the courthouse to press charges and see how that goes."  (Ex. #0396)

121.    Under threat, duress, and coercion of bench warrant #990429244 and Owen's threats, Benshoof paid the $10,000 bail to prevent Owen from using the police to arrest Benshoof under the City's practice of issuing fraudulent warrants to unlawfully arrest Benshoof. (Ex. #0978)

122.    When Owen's threats, including her threat to have Benshoof unlawfully imprisoned under the City's practice of retaliating against Benshoof for not wearing a face covering to enter municipal courtrooms didn't browbeat Benshoof, Owen attempted to cut off all contact between father and son by seeking an immediate restraining order against Benshoof five days later in KCSC No. 21-2-11149-8 SEA.

**F.  KCSC No. 21-2-11149-8 SEA**

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

### 1) Petition for Order of Protection

123.    Owen truthfully declared on August 23, 2021, in her TRO petition that: (1) Owen and Benshoof are the parents of A.R.W. (Ex. #0021); (2) A.R.W. is related to Benshoof as his child (Ex. #0022); and (3) Benshoof had raised A.R.W. his entire life. (Ex. #0027) In her TRO petition, Owen also sought to unlawfully seize possession of Benshoof's 2011 Toyota FJ Cruiser (Ex. #0023) despite the fact Benshoof had paid Owen in full for his FJ Cruiser in June 2018.  (Ex. #0777)

124.    Benshoof had paid Owen in full for his FJ Cruiser in June 2018.  (Ex. #0777)  On August 15, 2021, Benshoof had demanded that Owen relinquish the title to his FJ Cruiser.  (Ex. #0745)  Owen refused to relinquish the title to Benshoof's FJ Cruiser.

125.    In her petition, Owen claimed that *six years prior* Benshoof grabbed her arm and left a tiny bruise on her right bicep and accused Benshoof of "***hitting*** our child's head on the wall."  (Ex. #0025) However, in her 2015 report to the police, Owen stated that Benshoof "***bumped*** A.R.W. into a wall." (Ex. #0038)

126.    As Benshoof's testimony recounted the events of December 7, 2015, Owen was screaming at Benshoof, trying to grab A.R.W. from Benshoof's arms, and blocking Benshoof's ability to leave the house.  When Benshoof sought to escape by running down the hallway, A.R.W.'s head accidentally bumped against the doorway to the hall.  Benshoof testified that he "had [AR.W. in his left arm, and with my right hand, I grabbed her---it would be her upper *left* arm simply to hold her at enough distance so she couldn't pull [A.R.W.] from my hands." (Ex. #0077 no. 5; #0357)  It

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

wasn't until 2022 that Benshoof realized that Owen had claimed her *right* arm was bruised, not her *left.*

127.    A.R.W.'s sworn declaration confirmed Benshoof's testimony that Benshoof had: (1) grabbed Owen's "upper *left* bicep to keep her away"; (2) accidentally "bumped [A.R.W.'s] head against the wall or door frame because [Benshoof] was running from [Owen] to get out of the house"; and (3) Owen "lied to police that [Benshoof] grabbed [Owen] on her right arm and bruised it." (Ex. #0077 nos. 6-8)

128.    In Owen's accompanying declaration filed on August 21, 2021, she admitted that *she* had retaliated against Benshoof "by slapping [Benshoof] repeatedly on the arm" on November 10, 2015. (Ex. #0034; #0052)  Owen did not dispute Benshoof's testimony that Owen *first hit Benshoof in the face* repeatedly, and then hit Benshoof in the arms when Benshoof covered his face in defense. (Ex. #0034; #0052; #0360 ¶1)

129.    On September 3, 2021, at 10:32am a full denial order was issued after Benshoof testified that he had never hit nor threatened anyone, and that Owen had physically attacked Benshoof on multiple occasions. "The court found [Benshoof's] testimony to be credible regarding incidents alleged by [Owen] in 2015." (Ex. #0305) Benshoof obtained a copy of the denial order from the King County Superior Court several minutes later. (Ex. #0305-0308)

### 2) *SPD Incident 2021-003578*

130.    Around 12:00pm on September 3, 2021, Lerman stated to SPD officers that: (1) Benshoof had no rights as the father of A.R.W.; (2) Benshoof's 2011 Toyota

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

FJ Cruiser ("FJ Cruiser") belonged to Owen; (3) Benshoof is a criminal and danger to society because Benshoof does not wear a face mask.

131.     At approximately 330pm, SPD Officers Gabriel Ladd #8461 ("Ladd") and Trevor Willenberg #8661 arrested Benshoof for being in violation of the TRO, yet the TRO stated in bold lettering on the first page, **TERMS OF THIS ORDER EFFECTIVE UNTIL: End of the hearing, date noted above."** (Ex. #0389)

132.     Benshoof provided Ladd the denial order, explaining that Benshoof had testified that Owen had committed perjury to steal Benshoof's 2011 Toyota FJ Cruiser and seize custody of A.R.W. Benshoof informed Ladd that the denial order stated, "The court found [Benshoof's] testimony to be credible." (Ex. #0305)

133.     Benshoof offered to show Ladd text message evidence in Benshoof's cell phone that Benshoof had paid for his FJ Cruiser in full.  (Ex. #0395) Benshoof also offered to show Ladd text messages from August 15, 2021, when Owen had attempted to extort Benshoof by explicitly threatening to: (1) steal Plaintiff's FJ Cruiser; (2) kidnap A.R.W.; and (3) evict Benshoof from his home if Benshoof did not give Owen thousands of dollars  (Ex. #0398)

134.     Ladd refused to look at Benshoof's evidence and physically restrained Benshoof while Lerman stole Benshoof's FJ Cruiser and kidnapped A.R.W. by carrying him away in Benshoof's 2011 Toyota FJ Cruiser.  Ladd did not have a warrant to arrest Benshoof, nor was there a protection order authorizing Ladd to arrest Benshoof without a warrant, pursuant to RCW 10.31.100.

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

135.    SPD Policy Manual 5.001.12 states that every officer "must report any information they discover that may exonerate a person who is under investigation or has been charged with or convicted of a crime."

136.    Owen's and Lerman's conspiracy thereafter employed their friend, Defendant Owen Hermsen ("Hermsen"), in the furtherance of additional attempts to extort Benshoof via text messages, conditional for Benshoof regaining possession of his FJ Cruiser and Benshoof seeing A.R.W.  Hermsen threatened that Owen would sell Benshoof's FJ Cruiser if Benshoof didn't pay Owen $19,107.80.  (Ex. #0437)

137.    On September 14, 2021, Benshoof tried to speak with A.R.W. on the public street outside Owen's home.  Owen called 911 and stated to Seattle police Department officers that Benshoof and Owen "share custody of [A.R.W.]...*their son."* (Ex. #0039) Simultaneously, Owen claimed that she was the sole "legal guardian" of A.R.W.  RCW 26.33.020(11) defines "legal guardian" as "a person *other than a parent."*

## G.  KCSC No. 21-5-00680-6 SEA

138.    On September 20, 2021, Owen and her family law attorney, Defendant Nathan Cliber ("Cliber"), filed a Petition to Decide Parentage ("parentage petition"), King County Superior Court Case No. 21-5-00680-6 SEA.  Owen and Cliber did not provide family court evidence that Benshoof and Owen had ever been married, divorced, nor in a state domestic partnership pursuant to RCW Title 26 *Domestic Relations.*

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

139.    In her September 22, 2021, declaration, Owen acknowledged, "I know that [A.R.W.] loves his dad and that he'll be devastated if he never sees Kurt again." (Ex. #0053)

140.    Owen's parentage petition averred under penalty of perjury that Benshoof: (1) was ***not*** the biological father of A.R.W.; (2) had ***never*** lived with A.R.W., and (3) had ***never*** held out A.R.W. as his son.  All three sworn statements evidenced Owen's inconsistent material statements of fact under penalty of perjury between her TRO and parentage petition in King County Superior Court a month apart.

141.    Among Owen's exhibits she included three Seattle Police Department incident reports spanning November ***2015*** to September 14, 2020, which all affirmed that Owen acknowledged that A.R.W. is Benshoof's son. (Ex. #0037-0039) Benshoof is listed on the birth certificate of A.R.W. as "father." (Ex. #0264)

142.    On September 22, 2021, Owen again reversed course, contradicting herself by declaring under penalty of perjury, "Kurt...acted as [A.R.W.'s] father for [A.R.W.'s] entire life." (Ex. #0041) Owen also stated, "We moved in together in July of 2008.  [A.R.W.] was born nine months later…" (Ex. #0042) "[Benshoof] always insisted on being treated as A.R.W.'s father and that A.R.W. was his." (Ex. #0042) "[In September of 2020] I finally moved out of our shared residence…" (Ex. #0043)

143.    Keenan repeatedly denied Benshoof's right to enter the courtroom unless Benshoof wore a face covering.

### 1) SPD Incident 9/24/2021

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

144. On the morning of Friday September 24, 2021, Benshoof drove to the street of Owen's house to take A.R.W. to school and speak with his son: Benshoof was unable to reach A.R.W. by phone or text.

145. Benshoof called 911 for a wellness check on A.R.W. and SPD Officers Kieran Barton #8747 ("Barton") and Adam Beatty #7453 ("Beatty") responded to Owen's home.  Owen stated to Seattle Police Department officers that A.R.W. was related to Benshoof as his "child" yet Owen claimed she was sole "legal guardian" of A.R.W.

146. Barton and Beatty claimed that Benshoof had no parental rights as the father of A.R.W. because Owen was the sole "legal guardian" of A.R.W., a legal impossibility under RCW 26.33.020(11), as only a person "other than a parent" may be appointed a "legal guardian" by court order.

147. Benshoof attempted to provide Barton and Beatty with verified documentation evidencing that: (1) Benshoof had full parental rights; (2) Owen and Lerman were unlawfully withholding A.R.W. from Benshoof; and (3) Owen had made false and misleading statements to Barton and Beatty. *See* RCW 9A.76.175)

148. Barton and Beatty refused to take, or even look at, the evidentiary documents presented by Benshoof. Beatty articulated a practice and widespread custom of the SPD regarding Benshoof, "We're not taking anything from you.  We know you're trying to set us up." Beatty and Barton threatened Benshoof with arrest if Benshoof returned to the public street bordering Owen's home under the City's

practice of rendering criminal assistance to Owen by threatening Benshoof with retaliation.

### 2) Temporary Restraining Order

149.    Owen obtained a restraining order against Benshoof on September 28, 2021, by making inconsistent material statements of fact under oath.    Cliber suborned Owen's perjury in Owen's sworn Declaration and Petition to Decide Parentage. (Ex. #0062; #0069)

### 3) Temporary Parenting Plan

150.    Judge David Keenan ("Keenan") issued a temporary parenting plan, despite having no evidence of "dissolution of marriage or domestic partnership, declaration of invalidity, or legal separation."    RCW 26.09.004(3)(4) states that temporary and permanent parenting plans are for "an action for dissolution of marriage or domestic partnership, declaration of invalidity, or legal separation."

151.    Benshoof objected to family court's absence of jurisdiction, as Benshoof and Owen have never been party to "domestic relations." Benshoof's objections were ignored.

### 4) Final Restraining Order

152.    On October 21, 2022, Owen and Cliber obtained a Final Restraining Order from Keenan, issued pursuant to RCW 26.09.060, which threatened Benshoof with arrest under RCW 7.105. (Ex. #0071)

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

153.    Keenan did not have evidence of a "dissolution of marriage or domestic partnership, legal separation, or declaration of invalidity" between Benshoof and Owen to issue a restraining order pursuant to RCW 26.09.050(1); 26.09.060(1)(a)(b),

154.    RCW 7.105.310 (5) states an "order *shall* specify the date the order expires."  The Final Restraining Order stated that it ended on two dates: *either* October 21, 2023, or September 28, 2027. (Ex. #0071)

155.    Benshoof was denied his right to enter the courtroom without a face covering to testify on October 21, 2022, to expose that Cliber suborned Owen's perjury.

156.    Under the terms of the Final Restraining Order, Keenan subjected Benshoof to immediate arrest for effecting Fed.R.Civ.P. 4 service of process upon Owen, *unless* Benshoof hired Pegasus Process Servers or ABC Legal Services.  (Ex. #0073)

### 5)  GAL Report

157.    Owen hired Amy Franklin-Bihary ("Bihary"), the Guardian ad Litem, paying her approximately $8,000.  According to Bihary, she was only directed to *only* investigate allegations of *Benshoof's* domestic violence history, and allegations that *Benshoof* engaged in "abusive use of conflict and withholding of [A.R.W.] (Ex. #0168)

158.    Amy Franklin-Bihary ("Bihary"), the Guardian ad Litem, reported from her interview of Owen that "[Benshoof] and [Owen] went in on a house so that they could raise [A.R.W.] together" and that "[Benshoof's house] was put in [Owen's] name

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Page 48 of 255

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

because [Benshoof] does not pay taxes and has no driver's license or passport." (Ex. #0173)

159.    Bihary reported that A.R.W. disclosed on August 16, 2022, that he "contemplate[ed] jumping off a balcony at summer camp to kill himself" and that "[A.R.W.] has said that he misses" his dad and "feels that he needs to see" his dad. (Ex. #0178)

160.    A.R.W. told Bihary that he "wants to be able to go back and forth between his parents' houses freely" and that he "would prefer that his days with his father are weekdays."  In other words, A.R.W. stated his wish to spend five days per week with Benshoof, and two with Owen. (Ex. #0203)

161.    Bihary concluded that Benshoof should be prohibited from any contact with A.R.W. for five years (Ex. #0215) unless Benshoof "complete[s] a full psychological evaluation with a Ph.D-level psychologist or psychiatrist" and "follow[s] all recommendations for treatment, therapy and/or mediation use."   (Ex. #0216)

## H.  Seattle Municipal Court – "Domestic Violence"

### 1)  SMC No. 669329

162.    On July 6, 2022, A.R.W. ran away from Owen's home to return to Benshoof.  SPD forced A.R.W. to return to Owen's.  In early August 2022, A.R.W. considered suicide because he didn't know if he would be forced to stay at Owen's until he turned eighteen years old.  (Ex. #0078 ¶40)

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

163.    On November 15, 2022, Benshoof received a letter from the City in his mailbox alleging he was charged with violating RCW 7.105.450.  The letter stated a hearing was scheduled for November 16, 2022.  Prior to the hearing on November 16, 2022, Benshoof filed a motion to dismiss for lack of personal jurisdiction, citing the City's violation of RCW 35.20.270(1) and failure to serve legal process. (Ex. #0461-0466) Benshoof filed a motion for change of venue on the grounds that municipal judges had repeatedly denied Benshoof's right to appear in person for the previous two years. (Ex. #0468-0471)

164.    On November 16, 2022, at 230pm, Benshoof appeared by Special Appearance via WebEx before Judge Willie Gregory ("Gregory").   Benshoof challenged personal jurisdiction, citing RCW 35.20.270(1).  The City failed to provide evidence that the City had legally served Benshoof pursuant to RCW 35.20.270(1).

165.    The City claimed that Benshoof had violated the Final Restraining Order in King County Superior Court case no. 21-5-00680-6.  RCW 7.105.050(1)(a) states that a protection order violation allegation "must be transferred" to superior court when a "superior court has exercised jurisdiction over a proceeding involving the parties" or (d) "when the victim [A.R.W.] to the petition is under 18 years of age."

166.    Gregory tautologically stated, "the court has jurisdiction" and set bail at $10,000 and issued a restraining order against Benshoof, OCA223037.

167.    On June 21, 2023, Benshoof appeared by WebEx before Judge Jerome Roache.  City prosecutor, Defendant Katrina Outland ("Outland"), motion to issue a $100,000 warrant for Benshoof's arrest.  Judge Roache issued warrant #990437083

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

in the amount of $50,000 for Benshoof's "failure to appear."  The worksheet stated that Benshoof **had** appeared.  (Ex. #0476)

### 2) SMC No 671384

168.    Between September 2022 and January 23, 2023, Benshoof and A.R.W. used the Discord messaging app to secretly communicate with each other.  Benshoof sent his son funny memes to keep A.R.W. from killing himself due to the mental and emotional abuse of being isolated from his father, *supra* at 159.

169.    On January 23, 2023, A.R.W. again ran away from Owen's house to return to Benshoof.  When the police arrived at Benshoof's home, Ofc. Nicholas Hughes refused to look at Benshoof's evidence of Owen's perjury, fraud, threats, kidnapping, extortion, and theft.  Police again forced A.R.W. to return to Owen's.

170.    On March 13, 2023, Owen signed her declaration under penalty of perjury for SMC No. 671384, *infra* at ¶175-181. (Ex. #0218-0243)

171.    On March 14, 2023, the City filed eighty-nine (89) charges of "domestic violence" because Benshoof exercised his First Amendment protected right of association and free speech by texting with A.R.W. to continue their father-son companionship.

172.    On March 14, 2021, Judge Faye Chess issued $250,000 warrant #990435958 for Benshoof's arrest.  Outland did not provide Judge Chess with evidence of personal or subject matter jurisdiction, nor did Outland inform Chess that Ellis had filed a fraudulent proof of service.

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

173.    Upon Benshoof's information and belief, Outland helped prepare and file Owen's declaration (Ex. #0218-0243) to obtain the $250,000 warrant for Benshoof's arrest.

174.    This arrest warrant was used by Ellis to obtain a general warrant, in violation of the Fourth Amendment, enabling SPD SWAT to break into Benshoof's home church on July 3, 2024, based upon Owen's perjury and false statements to police, prosecutors, and judges. (Ex. #0265-290)

### 3) *Owen Declaration*

175.    Owen's declaration claimed that Benshoof's attempts to arrest the kidnapping of A.R.W. constituted "abusive acts" that "intentionally inflicted tremendous stress, fear and pain on [A.R.W.]" by informing A.R.W. that Owen is "a liar." (Ex. #0220) Owen is not simply "a liar." Owen has unrepentantly committed class B felony perjury in multiple court proceedings for over previous three years.

176.    Owen's declaration claimed that "Benshoof had kept [A.R.W.] away from [Owen] for nearly three weeks" between August 15, 2021, and September 3, 2021. Not only did this contradict Owen's statements to the Guardian ad Litem, Amy Franklin-Bihary, made previously in 2022, Owen also admitted under oath on September 24, 2024, that she had communicated with A.RW. during those three weeks and that Benshoof had welcomed Owen to come visit A.R.W. at Benshoof's home.

177.    In her declaration, Owen admitted to the twelve-year Parenting Covenant, while lying that she had been unable to communicate with A.R.W. "This

22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

act was an abrupt departure from our long-standing unwritten agreement to share custody of [A.R.W.] on an alternate-weeks basis. Mr. Benshoof's violation of that understanding resulted in *a total absence of communications* between [A.R.W.] and me during that nearly three-week period." (Ex. #0222 ¶2)

178.    Owen's declaration claimed that on August 15, 2022, Benshoof "followed me home in his car and then pulled into my driveway behind me, parked so as to block my car, and exited his car.  He placed himself just a few yards from me."  (Ex. #0226 ¶2) Upon Benshoof's information and belief, either Russ or Outland wrote or significantly edited this passage of falsehoods, which intermixes Owen's falsehoods regarding an incident on September 14, 2021, and the incident on August 15, 2022.

179.    Owen's declaration stated, "In fact, I do not hit my son or believe in corporal punishment."  This was later proven to be a lie when Owen testified on September 24, 2024.

180.    Owen's declaration falsely claimed that Benshoof entered Hermsen's house without being welcomed in by Hermsen's friend, Ivan (Ex. #0231 ¶2), and falsely claimed that Benshoof took photos of Hermsen's roommate. (Ex. #0232 ¶1)

181.    On September 26, 2023, City attorneys were served with further proof of A.R.W.'s statements, all of which corroborated Benshoof's sworn statements and exposed Owen as a perjurer.  A.R.W.'s declaration was signed before three adult witnesses on February 10, 2023.  (Ex. ##0077-0083)

### 4)  SMC No. 675405

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

182.    On August 27, 2023, Seattle police saw Benshoof's car driving on the 12500 block of Aurora Avenue North. Multiple SPD cruisers pursued Benshoof's car on Interstate 5 nearly twenty (20) miles outside of Seattle city limits.  According to Incident Report #2023-246823, police "requested the assistance of King County's Guardian 1 helicopter, Snohomish County's helicopter, Washington State Patrol's helicopter, and any agency with Star Chase."  Benshoof was not served summons in SMC No. 675405 pursuant to RCW 35.20.270(1).

### 5) *Additional Malicious Prosecutions*

183.    The City subsequently filed more "domestic violence" charges against Benshoof in SMC Case Nos. 675317, 676175, 676207, 676216, 676463, and 676492, including six additional warrants.  Benshoof was not served summons in these foregoing cases for the City to obtain personal jurisdiction over Benshoof, pursuant to the requirement of RCW 35.20.270(1)

### 6) *Legal Challenges Unavailable*

184.    For nearly two years, Benshoof could not bring motions before Seattle Municipal Court.  Benshoof tried repeatedly, and numerous Catch-22 barriers were erected: (1) Benshoof's public defender, Mr. Pirani, refused to file any motions raising constitutional, statutory, or jurisdictional challenges; (2) Mr. Pirani refused to withdraw as counsel; (3) judges refused to hear Benshoof's *pro se* Marsden motion (Ex. #0586-0589) to dismiss Mr. Pirani so long as Mr. Pirani  remained counsel of record; (4) judges refused to hear Benshoof's motion to dismiss (Ex. #0590-0618) *unless* Benshoof first subjected himself to indefinite unlawful imprisonment.

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Page 54 of 255

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

# I. Background – KCSC No. 22-2-15958-8 SEA

## 1) Abuse of Process Lawsuit

185.    In October 2022, Benshoof sued Cliber, Owen Hermsen ("Hermsen"), Lerman, and Owen, for Abuse of Process and Defamation arising from the kidnapping of A.R.W., the theft of Benshoof's FJ Cruiser, and the subsequent conspiracy by the four defendants to extort Benshoof for $19,000 as conditional for the return of Benshoof's FJ Cruiser and allowing Benshoof to have A.R.W. eight days per month.

186.    Owen retained attorney Blair Russ ("Russ"). Hermsen and Lerman retained attorney Defendant Moshe Admon ("Admon"). Cliber initially retained Gordon Rees Scully Mansukhani ("GRSM") attorney Kyle Rekofke ("Rekofke").

187.    On October 11, 2022, Benshoof's Amended Complaint statement of facts incorporated by reference his seven affidavits documenting criminal law violations perpetrated by Cliber, Hermsen, Lerman, and Owen: Exhibits A-G (Ex. #0779-0835)

188.    Exhibit C (Ex. 0794-0802) averred that on October 25, 2021, in KCSC No. 21-5-00680-6 SEA, before Commissioner Jason Holloway, Cliber falsely alleged, "Mr. Benshoof has a long history of violence against Ms. Owen and [A.R.W.]."

189.    Nowhere in any of Owen's perjury-riddled declarations did Owen allege that Benshoof ever yelled at or spanked A.R.W., let alone engaged in "violence."

190.    Commissioner Holloway corrected Cliber by stating, "that would have been something that would have been ordered *if* Mr. Benshoof had been found to be a domestic violence perpetrator, which *he is not*."

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

191.    Cliber also claimed that Benshoof perpetrated **"assault causing grievous physical harm"** against Owen. (Ex. #0798 ¶32) Owen has only ever claimed that Benshoof caused a tiny bruise on her right bicep, which was a lie, *supra* at ¶125-127.

192.    Benshoof's First Amended Counterclaim documented Magalie Lerman's ("Lerman") kidnapping of A.R.W., and stealing Benshoof's FJ Cruiser. Benshoof documented Owen Hermsen's ("Hermsen") coercive attempts to extort Benshoof on behalf of Owen.    Benshoof cited text messages from Hermsen which explicitly threatened to sell Benshoof's FJ Cruiser if Benshoof did not pay Owen $19,107.80. (Ex. #0437)

193.    Benshoof documented Cliber's conspiratorial acts, in joint action with Hermsen, Owen, and Lerman under the City's practices related to the kidnapping of A.R.W., the theft of Benshoof's 2011 Toyota FJ Cruiser, and the attempted extortion of Benshoof.    Benshoof cited the coercive emails from Cliber. (Ex. #0796-0797)

### 2) *Face Covering Discrimination*

194.    On January 27, 2023, King County Superior Court Judge Marshall Ferguson ("Ferguson") denied Benshoof's right to appear in court in person because Benshoof's beliefs proscribed wearing a face covering to enter the courtroom.

195.    At the time, the King County Court website stated that "You will not be required to wear a mask if you need to keep your mouth or nose clear for medical or mental health reasons." (Ex. #1047)

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

196.    King County Superior Court offered Benshoof a face shield in lieu of a face mask, despite the fact the Washington state informed the public in 2020 that "[t]he use of face shields alone is currently viewed as *serving no purpose or providing any protection* from the transmission of COVID-19." (Ex. #0859) Washington Department of Labor & Industries stated, "Face shields alone *do not prevent the spread of COVID-19* and do not meet the face covering requirement." (Ex. #0861)

197.    On February 7, 2023, Benshoof motioned Judge Ferguson to change venue to Snohomish County Superior Court, where Benshoof would be able to appear in person without a face covering in courtrooms, free of discrimination against Benshoof's beliefs, expression, or petitions for redress.

198.    After Russ's law firm derisively mocked Benshoof's disability and religious beliefs regarding face coverings in Owen's Response to the motion to change venue, Judge Ferguson denied Benshoof's motion to change venue to Snohomish County Superior Court on February 22, 2023.

### 3) *Ferguson's Ex Parte Communication*

199.    On January 27, 2023, because Benshoof was denied his right to enter the courtroom sans face covering, he attempted to appear by Zoom video and was unable to join the hearing. After thirty minutes of repeated attempts to log on via Zoom, Benshoof had to appear by telephone. Benshoof did not discover until months later, upon obtaining the transcription of the hearing (Ex. #1048-1202) that Ferguson and defense counsel had discussed legal arguments in Benshoof's absence.

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Page 57 of 255

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

200.    Ferguson not only initiated *ex parte* communication with defense counsel while Benshoof was still attempting to log on via Zoom, Ferguson suggested that defense counsel move for an Order Restricting Abusive Litigation ("ORAL") against Benshoof under RCW 26.51. (Ex. #1066 ¶1)

201.    Rekofke expressed his concern that RCW 26.51 requires "some sort of intimate relationship." (Ex. #1066 ¶3)

202.    Ferguson also provided defense counsel with supporting case law by which to seek an ORAL against Benshoof: *Kuhlmeyer v. Latour, et al.,* Wn. App. No. 82828-2-I (2022). (Ex. #1067-1068)

### 4) Benshoof's Claims Dismissed

203.    On January 27, 2023, Ferguson claimed that he didn't have evidence before him of any crimes perpetrated by Cliber, Hermsen, Lerman, or Owen against Benshoof, even though Benshoof's Amended Complaint incorporated by reference Benshoof's sworn affidavits as a crime victim witness in Exhibits A-G (Ex. #0779-0835) and the Affidavit of Kurt Benshoof (Ex. #0836-0851).

204.    Exhibit A detailed crimes perpetrated by Jessica Owen against Benshoof. (Ex. #0779-0786)

205.    Exhibit B detailed crimes perpetrated by Magalie Lerman against Benshoof. (Ex. #0787-0793)

206.    Exhibit C detailed crimes perpetrated by Nathan Cliber against Benshoof. (Ex. #0794-0802)

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

207.    Exhibit D detailed crimes perpetrated by Jessica Owen against Benshoof. (Ex. #0803-0807)

208.    Exhibit E detailed crimes perpetrated by Nathan Cliber against Benshoof. (Ex. #0813-0821)

209.    Exhibit F detailed crimes perpetrated by Jessica Owen against Benshoof. (Ex. #0822-0829)

210.    Exhibit G detailed crimes perpetrated by Owen Hermsen against Benshoof. (Ex. #0830-0835)

211.    Neither Owen, Lerman, Cliber, Hermsen, nor their attorneys refuted Benshoof's sworn allegations as a victim witness. (Ex. #0779-0851).

212.    On February 2, 2023, Ferguson dismissed Benshoof's claims with prejudice. (KCSC No. 22-2-15958-8; Docket 113)

### 5) *Declaration of A.R.W. – Power of Attorney*

213.    On February 10, 2023, three non-party adults witnessed A.R.W. signed a declaration, including a power-of-attorney designating Benshoof with authority to act on his son's behalf. (Ex. #0077-0079)

214.    In the declaration, A.R.W. attested that Owen: (1) "got a temporary restraining order to try to take me and my dad's car." (Ex. #0077 ¶19)

215.    In the declaration, A.R.W. attested that "My mom said in her declaration that if she took me from my dad that it would devastate me." (Ex. #0078 ¶20)

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

216.    In the declaration, A.R.W. attested that "My mom lied and said that my dad wasn't my presumed dad in her Petition to Decide Parentage.  Everyone knows my dad is my dad, and always has been. (Ex. #0078 ¶30)

217.    In the declaration, A.R.W. attested that "it is my express wish that my dad act as a "Next Friend" pursuant to FrCP 17(c)(2), or as my "guardian" or "fiduciary" pursuant to FrCP 17(1)(A)(D), or pursuant to RCW 11.125 Uniform Power of Attorney Act, so that my Dad can bring claims on my behalf, either in Equity or in law, so I can go home to him." (Ex. #0079 ¶50)

218.    On or around February 11, 2023, Benshoof informed Admon, Cliber, and Russ by email that A.R.W. had granted power-of-attorney to Benshoof, and that A.R.W. had confirmed under oath that Lerman and Owen had lied to kidnap A.R.W.

219.    On February 15, 2023, Benshoof filed into the record a copy of the Affidavit of A.R.W. (KCSC No. 22-2-15958-8; Document 131)

220.    Neither Owen, Lerman, Cliber, Hermsen, nor their attorneys refuted the sworn statements of A.R.W.  (Ex. #0077-0079)

### 6)  *Denying Right to Petition for Redress*

221.    On *February 17,* 2023, Defendants Cliber and Owen, and attorney Russ filed a joint motion to declare Benshoof a vexatious litigant, *three days after* the e-filing of the Affidavit of A.R.W. (KCSC No. 22-2-15958-8; Docket 142)

222.    The [proposed] order stipulated, "[Benshoof] is hereby ENJOINED AND RESTRAINED, in both an individual and *representative capacity*…"

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

223.    Upon Benshoof's information and belief, Cliber, Owen, Lerman, Hermsen, and their counsel, knew at that time that everything declared as true by Benshoof and A.R.W. *was true.*

224.    Defendants knew that Benshoof is not a licensed attorney who could act in a "representative capacity" for anyone—*except A.R.W.*

225.    A.R.W. did pose, and still poses, a direct and immediate threat of exposure of the crimes perpetrated by Cliber, Hermsen Owen, and Lerman, *if* Benshoof represents his son through the signed power-of-attorney (Ex. #0079-0083) and/or pursuant to Section 35 of the Judiciary Act of 1789.

### 7) *Punitive Retaliation*

226.    Admon, Rekofke, and Russ asserted UPEPA to legally immunize their clients' criminal conduct and deny Benshoof redress of his grievances, despite RCW 4.105.010(3)(a)(iv) precluding UPEPA protection for Cliber, Hermsen, Lerman, and Owen because Benshoof's claims were "in a civil suit brought by a victim of a crime against a perpetrator."

227.    Under the County's practice of retaliating against the beliefs of Benshoof's class, Ferguson sanctioned Benshoof a total of $78,118.39 because Benshoof exercised his First Amendment protected right to petition for redress of Benshoof's grievances against Cliber, Hermsen, Lerman, and Owen, for the *crimes* abuse of process, and fraud perpetrated against Benshoof.

228.    On February 27, 2023, Ferguson decreed that Hermsen and Lerman were each granted judgment against Benshoof for $15,008.74.

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

229.    On February 27, 2023, Ferguson decreed that Owen was granted judgment against Benshoof for $32,049.41.

230.    On April 3, 2023, Ferguson decreed that Cliber was granted judgment against Benshoof for $16,051.50.

### 8) No Jurisdiction – Temporary ORAL

231.    On March 3, 2023, Ferguson granted a joint motion and temporary Order Restricting the Abusive Litigation by Kurt Benshoof ("ORAL"), threatening Benshoof with possible arrest if Benshoof attempted to exercise his First Amendment right to seek redress against Admon, Cliber, Hermsen, Lerman, Owen, Rekofke, or Russ—through *any* state or federal court—without first obtaining permission from Ferguson or another judge.

232.    The temporary ORAL allegedly protected not just Owen, but Admon, Cliber, Hermsen Lerman, Owen, Rekofke, Russ. (Ex. #1203-1209)

233.    Ferguson was without evidence of "domestic relations" between Benshoof and Owen: Benshoof and Owen have never been parties to "domestic relations." Under RCW Title 26, "domestic relations" are limited to "marriage, divorce, domestic partnership, legal separation, or declaration of invalidity." *See* RCW 26.09.004(3)(4); RCW 26.09.050(1); RCW 26.09.060(1)(a)

234.    Among the defendants and their attorneys, Owen was the only person Benshoof had "intimate relations" with, pursuant to RCW 7.105.010(20).

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

235.    RCW 26.51.020(1)(a)(ii) defines "abusive litigation" as where the party who is "filing, initiating, advancing, or continuing litigation *has been found by a court to have committed domestic violence* against the other party."

236.    RCW 26.51.030(1) states that a "party to a case may request from the court an order restricting abusive litigation *if* the parties *are current or former intimate partners* and one party *has been found by the court to have committed domestic violence* against the other party."

237.    Benshoof had never found by any court to have committed domestic violence against Owen, nor any other person.

238.    The temporary ORAL preemptively denied A.R.W.'s ability to have Benshoof hire an attorney to represent A.R.W.   The temporary ORAL also preemptively prevented Benshoof from acting with power-of-attorney for his son and/or as his assistant of counsel pursuant to Section 35 of the Judiciary Act of 1789.

239.    Neither Owen, Lerman, Cliber, Hermsen, nor their attorneys provided evidence that "abusive litigation" occurred pursuant to RCW 26.51.020(1)(a)(ii).

240.    Neither Lerman, Cliber, Hermsen, nor their attorneys provided evidence that Benshoof had been "intimate partners" with Admon, Cliber, Hermsen, Lerman, Rekofke, nor Russ, pursuant to RCW 7.105.010; 26.51.020(1)(a)(i).

241.    Neither Owen, Lerman, Cliber, Hermsen, nor their attorneys provided evidence that any court had ever found Benshoof to have committed domestic violence against any person pursuant to RCW 26.51.030(1)

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Page 63 of 255

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

242.    Despite Judge Ferguson having no evidence of: (1) "domestic relations," (2) "abusive litigation";  nor (3) evidence that any court had found Benshoof to have ever committed "domestic violence' against any person, Judge Ferguson also did not "attempt to verify that… the party raising the claim of abusive litigation has been found to be a victim of domestic violence by [Benshoof]" pursuant to RCW 26.51.040(1).

243.    RCW 26.51.040(1) states, "If the court verified both elements are true, or is unable to verify that they are not true, the court *shall* set a hearing to determine whether the litigation meets the definition of abusive litigation."

244.    RCW 26.51.040(2) states, "At the time set for the hearing on the alleged abusive civil action, the court *shall* hear all relevant testimony and may require any affidavits, documentary evidence, or other records the court deems necessary."

245.    Ferguson did not set a hearing pursuant to RCW 26.51.040(1), therefore, Benshoof could not provide testimony, affidavits, or documentary evidence, pursuant to RCW 26.51.040(2), to prove that RCW 26.51 could not apply to Benshoof.

### 9)  ORAL

246.    Admon, Rekofke, and Russ filed a joint motion seeking an Order Restricting Abusive Litigation of Kurt Benshoof under RCW Title 26.

247.    For the court to hear consideration of the joint motion, it was first required by RCW 26.51.030(1) that Benshoof "has been found by the court to have committed domestic violence against [Owen]."  Ferguson lacked such evidence.

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

248.    The Washington BAR Rules of Professional Conduct 3.3(a)(3) prohibits attorneys from failing to disclose to the tribunal legal authority known to be directly adverse to the position of the client and not disclosed by the opposing party."

249.    On March 31, 2023, Ferguson granted the ORAL upon motion presented by Admon and Russ, joined by Rekofke. (Ex. #1210-1218)

250.    The ORAL not only restricted Benshoof's right to petition for redress of Plaintiffs' grievances, the ORAL transmuted Benshoof's right into a privilege which could be suspended at any time by any state or federal judge in the country.

## J. Contempt Order

### 1) U.S. District Court

251.    On January 16, 2024, current Gorden Rees Scully Mansukhani ("GRSM") counsel for Cliber, Michael Tracy ("Tracy") and Sarah Turner ("Turner"), motioned for sanctions under the ORAL against Benshoof in WAWD No. 2:23-cv-1392-JNW. (Dkt. #57, pg. 18)

252.    On February 6, 2024, Tracy and Turner motioned for sanctions under the ORAL against Benshoof in WAWD No. 2:23-1829-JNW. (Dkt. #36, pg. 19)

### 2) KCSC No. 22-2-15958-8 SEA

253.    On behalf of Cliber, Tracy and Turner sought sanctions against Benshoof before Judge Ferguson on January 24, 2024. (KCSC No. 22-2-15958-8, Document 263)

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

254. On behalf of Owen, Russ sought sanctions against Benshoof before Judge Ferguson on February 15, 2024. (KCSC No. 22-2-15958-8, Document 298)

255. Benshoof filed responses, evidencing that Russ, Tracy, and Turner knew that the ORAL was fraudulent and were continuing their fraud to violate Benshoof's First Amendment protected right to petition for redress, in order to render criminal assistance to Owen's and Lerman's kidnapping of A.R.W., which they knew had been perpetrated by Cliber suborning the perjury of Owen in KCSC No. 21-5-00680-8.

256. Benshoof filed cross-motions against Cliber and Owen seeking a finding of contempt and sanctions for Cliber's subornation of Owen's perjury and the ongoing fraud.

257. Judge Ferguson heard oral argument February 29, 2024. Benshoof objected that Ferguson never had jurisdiction under RCW 26.51 to issue the Order Restricting Abusive Litigation by Kurt Benshoof ("ORAL").

258. Tracy stated that Cliber's attorneys considered subjecting Benshoof to "jail time." (Ex. #1234 ¶3)

259. Russ suggested "jail time" to punish Benshoof, (Ex. #1237 ¶7) claiming that "folks that are in jail do still have access to the federal court. So I do believe that, given the propensity to willfully violate orders, putting Mr. Benshoof in custody until he complies is -- would -- would, in fact, be an appropriate exercise of the Court's discretion." (Ex. #1238 ¶4)

260. Benshoof summarized the fraud, reprimanding "this laughable kangaroo-court action that's been going on for more than a year where counsel were

allowed to assert that I had engaged in abusive litigation. I'll read for the record, RCW 26.51.020, subsection (1)(a)(2). It says that the "party who is filing -- and, in that case, it was initially Ms. Owen, and there was a joinder -- has -- that I, as the alleged vexatious litigant, has been found by a Court to have committed domestic violence [against Owen]. That's what the statute says. My understanding is that lawyers and courts are required to follow the law… [yet] no one has ever presented evidence that a Court found me to have committed domestic violence." (Ex. #1239)

261.    Judge Ferguson refused to consider whether the court had jurisdiction to have issued the ORAL or whether he had jurisdiction to hold Benshoof in contempt of the ORAL.

262.    On March 1, 2024, Ferguson signed the Contempt Order, claiming that Benshoof "is in contempt of court for violating the Abusive Litigation Order." (Ex. #1221 no. 5)

263.    The Contempt Order not only restricted Benshoof's right to petition for redress of Plaintiffs' grievances, the Contempt Order also effectively transformed Benshoof's right to petition for redress into a privilege which could be suspended at any time by any state or federal judge in the country: this is precisely what occurred when Benshoof petitioned for a writ of habeas corpus.

### 3)  Threat of Arrest and Sanctions

264.    The terms of the Contempt Order include but are not limited to: (1) threatening Benshoof with imprisonment (Ex. #1221 no. 9); (2) Benshoof must pay attorneys' fees and costs to Cliber, Hermsen, Lerman, and Owen (Ex. #1222 ¶A); (3)

Benshoof must pay costs incurred by Cliber having Tracy and Turner motion for sanctions against Benshoof in WAWD Nos. 2:23-cv-1392-JNW and 2:23-cv-1829-JNW (Ex. #1222 ¶B); (4) the ORAL expiration date is extended to March 31, 2029 (Ex. #1222 ¶C); (5) threatening financial sanctions of **$2,000 per day** if Benshoof does not Motion for Leave to File in WAWD Nos. 2:23-cv-1392-JNW and 2:23-cv-1829-JNW (Ex. #1223 ¶F); (6) threatening penalties of $250-$1250 per day for any new legal proceeding filed by Benshoof.

### 4) *Judgment Awarded*

265.    On March 29, 2024, Ferguson awarded Cliber, Tracy, and Turner $11,825 for "the hours spent to bring Nathan Cliber's Motion for Finding of Contempt and Sanctions Against Plaintiff Kurt Benshoof (Document. 263)." (KCSC No. 22-2-15958-8 SEA, Document 352)

266.    On March 29, 2024, Ferguson awarded Owen and Russ $11,014.92 for "the hours spent to bring Nathan Cliber's Motion for Finding of Contempt and Sanctions Against Plaintiff Kurt Benshoof (Dkt. 263)." (KCSC No. 22-2-15958-8 SEA, Document 352)

267.    The Entry of Findings of Facts and Conclusions of Law state that Ferguson awarded fees to Owen and Russ pursuant to RCW 4.84.185.

268.    RCW 4.84.185 states that if a court has jurisdiction, it may require the non-prevailing party to pay reasonable expenses incurred by the prevailing party if upon the judge's written findings that the non-prevailing party's pleading or defense "was frivolous and advanced without reasonable cause."

22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

269.    Upon Benshoof's information and belief, in order for Ferguson to have authority to order Benshoof to pay Cliber, Owen, Russ, Tracy, or Turner, Owen expenses under RCW 4.84.185, it was required that Ferguson find that an action *before* Ferguson, brought by Benshoof, "was frivolous and advanced without reasonable cause."

270.    The motions for sanctions against Benshoof regarded claims brought by Benshoof in U.S. District Court.

## K.  Gorden Rees Scully Mansukhani ("GRSM")

271.    On January 16, 2024, Tracy and Turner filed notices of appearance and a Motion to Dismiss claims against Cliber. (WAWD No. 2:23-cv-1392-JNW, Dkt. #55)

272.    On or before January 16, 2024, Tracy and Turner were in possession of irrefutable evidence that Cliber suborned Owen's perjury in KCSC No. 21-5-00680-6.

273.    On or before January 16, 2024, Tracy and Turner were in possession of evidence that their former associate at GRSM, attorney Kyle Rekofke, conspired with Russ to fraudulently obtain the ORAL.

274.    On or before January 16, 2024, Tracy and Turner were in possession of evidence that Judge Ferguson did not have statutory authority to grant the joint motion for the ORAL presented by Rekofke and Russ, *supra* at ¶260.

275.    On or before January 16, 2024, Tracy and Turner were in possession of evidence that A.R.W. confirmed that Owen had committed perjury to kidnap A.R.W. (Ex. #0078 ¶21-34)

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

276.    On or before January 16, 2024, Tracy and Turner were in possession of evidence that A.R.W. had considered suicide and had repeatedly run away from Owen's to come home to Benshoof (Ex. #0078 ¶39-44)

277.    On or before January 16, 2024, Tracy and Turner were in possession of evidence that A.R.W. granted Benshoof power-of-attorney to sue Cliber and Owen because "they lied to take me away from my dad." (Ex. #0079 ¶47-50).

278.    On March 5, 2024, Benshoof filed his Fifth Motion for Temporary Restraining Order. ((WAWD No. 2:23-cv-1392-JNW, Dkt. #129)

279.    On March 7, 2024, Tracy and Turner filed Response to Benshoof's Fifth TRO (*Id.,* Dkt. #133) but did not refute that Cliber suborned Owen's perjury in extrinsic and collateral fraud.

280.    Upon Benshoof's information and belief, the doctrine of estoppel by silence and acquiescence bars Tracy and Turner from henceforth attempting to refute their knowledge of the fraud perpetrated by Cliber, Owen, and Rekofke, as Tracy and Turner were silent throughout 2024 when they should have spoken.

## L.  Mandamus Against SPS Counsel Narver

### 1)  Background

281.    From September 2021 to present, Seattle Public Schools general counsel Gregory Narver ("Narver") has denied Benshoof "the right to review all education records of" A.R.W., as required by RCW 28A.605.030.

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

282.    On December 7, 2023, Benshoof filed Motion for Leave to File Petition for Writ of Mandamus, as Benshoof mistakenly believed that the ORAL required Benshoof to seek leave from Ferguson for *any action* brought against *anyone* by Benshoof in King County Superior Court. (KCSC No. 22-2-15958-8, Document 234)

283.    On March 4, 2024, Ferguson denied Benshoof's Motion for Leave to File Petition for Writ of Mandamus. (*Id.,* Document 320)

284.    On March 22, 2024, Benshoof filed Petition for Writ of Mandamus in King County Superior Court, initiating Case No. 24-2-06539-3 SEA.

285.    Benshoof noted his application before King County Superior Court Chief Civil Judge, the Honorable Michael Scott, for Thursday, April 18, 2024, pursuant to King County LCR 98.40(d).

286.    On April 18, 2024, Judge Michael Scott ordered the transfer Benshoof's mandamus to Ferguson for Ferguson to review for compliance with the ORAL. (KCSC No. 24-2-06539-3, Document 19)

287.    On April 18, 2024, Benshoof filed a Notice of Appeal for discretionary review by the Washington Court of Appeals, Division I, to challenge the transfer of his mandamus to Judge Ferguson. (KCSC No. 24-2-06539-3, Document 20)

288.    On April 26, 2024, Benshoof e-filed Notice of Disqualification of Judge Marshall Ferguson. (KCSC No. 24-2-06539-3, Document 28)

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

### 2) *Parisien Court*

289.    On May 8, 2024, the KCSC No. 24-2-06539-3 was assigned to Judge Suzanne Parisien by Chief Civil Judge Michael Scott, stating, "The case schedule remains unchanged. All pending motions shall be set before Judge Suzanne Parisien."

290.    On May 17, 2024, Benshoof e-filed a notice of hearing for his mandamus petition for May 30, 2024, before Judge Parisien.  Judge Parisien struck the hearing, stating that she would not hear the mandamus while Benshoof had a discretionary appeal to the Washing Court of Appeals No. 86581-1-I.

291.    On June 26, 2024, Benshoof filed a Motion for Withdrawal of Appeal, Washington Court of Appeals No. 86581-1-I.

292.    On August 6, 2024, a Certificate of Finality was issued by the Washington Court of Appeals, docketed into KCSC No. 24-2-06539-3 as Document 38, thereby terminating the Washington Court of Appeal's jurisdiction over Benshoof's mandamus.

293.    On December 3, 2024, Benshoof emailed Judge Parisien's bailiff, Julie Salle ("Salle"), requesting the next available court date for oral argument adjudication of Benshoof petition for writ of mandamus against Narver.  Salle emailed in reply that the "Court will not hear a motion in this matter until or unless ordered to do so by the Court of Appeals."

294.    To date, Judge Parisien has refused to adjudicate Benshoof's mandamus petition.  Upon Benshoof's information and belief, Judge Parisien, by and through

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

Salle and under the County's practices, is knowingly and maliciously preventing the

adjudication of Benshoof's mandamus under color of law.

## M. Search Warrant

### 1) Application for Search Warrant

295.    The Application for Search Warrant ("Application") was completed by

SPD Det. Ryan Ellis ("Ellis"), who stated: "I completed the basic law enforcement

academy at the Washington State Criminal Justice Training Center. I have

completed the basic Seattle Police Department Detective School. In doing so, I have

written and executed *over two hundred search warrant affidavits.*" (Ex. #0293)

296.    Page 1 of the Application (Ex. #0292) stated:

> "*On the basis of the following, I believe there is probable cause that Kurt A BENSHOOF, date of birth 7/18/1969, has committed the crime(s) of Stalking, RCW 9A.46.110, and Violation of a Court Order, RCW 26.50.110 in King County, and that:*
> ☒ *Evidence of those crimes;*
> ☒ *Contraband, the fruits of a crime, or things otherwise criminally possessed.*
> ☒ *Weapons or other things by means of which a crime has been committed or reasonably appears about to be committed;*
> ☒ *A person for whose arrest there is probable cause, or who is unlawfully restrained.*
> *is located in, on, at, or about the following described premises, vehicle or person:*
> *1716 N 128th ST, Seattle, Washington 98133 occupied by BENSHOOF*"

297.    The application quoted verbatim from RCW 10.79.035(1)(a)(b)(c)(d):

**RCRCW 10.79 0.035  - Issuance of search warrants by magistrates.**
(1) Any magistrate as defined by RCW 2.20.010, when satisfied that there is probable cause, may[,] upon application supported by oath or affirmation, issue a search warrant to search for and seize any:
(a) Evidence of a crime;

(b) contraband, the fruits of crime, or things otherwise criminally possessed;

(c) weapons or other things by means of which a crime has been committed or reasonably appears about to be committed; or

(d) person for whose arrest there is probable cause or who is unlawfully restrained

298.    Page 2 of the Application (Ex. #0293) claimed: "Owen obtained a Seattle Municipal No Contact Order, OCA223037 which was served on Benshoof on 11/16/2022 and expires on 11/16/2027. In addition, Owen obtained a Restraining Order, OCA215006806, which was served on 11/15/2022 and expires on 9/28/2027."

299.    It was Ellis himself who allegedly served Restraining Order OCA215006806, including an Order to Surrender Weapons, on November 15, 2022. The Proof of Service (Ex. #0326) filed by Ellis on November 15, 2022, stated the following in boxed text:

> **Important!** *Do not use electronic service if your case involves the surrender of firearms, transfer of child custody, removing the respondent from the parties shared residence… After two unsuccessful attempts at personal service, you can ask the court to authorize electronic service…*

300.    Page 2 of the Application (Ex. #0293) stated: *"Since that time, law enforcement officials have been unable to arrest Benshoof. See **Exhibit 1, attached**."* The Application provided to Benshoof in Discovery did not contain "Exhibit 1" and record requests by Benshoof's "next friend(s)" and his "assistance of counsel(s)"[2] under Judiciary Act of 1789, 1 Stat. 73, 92, have not been provided the "Exhibit 1" referenced in the Application. SEC. 35 of The Judiciary Act, approved September 24,

---

[2] *Faretta v. California*, 422 U.S. 806, 812–13, 95 S. Ct. 2525, 2530, 45 L. Ed. 2d 562 (1975)

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

1789, states, "And be it further enacted, that *in all courts* of the United States**,** the parties may plead and manage their own causes personally *or by assistance of such counsel* or attorneys at law."

301.    Page 3 of the Application (Ex. #0294) stated: "When asked about the nature of the text messages, Owen stated that Benshoof has messaged about several different topics. Some of his messages tell her that she "is toast" and that he is coming for his son. Others tell her that "shit is going to hit the fan" and asks her what side of the fan she wants to be on. Other messages talk about random topics about Jesus and other non-relevant topics."

302.    Page 4 of the Application (Ex. #0295 ¶1) stated: "When asked about the content of his emails, Owen stated that they *mainly concern lawsuits and other legal proceedings*. Owen went on to explain that the court system has marked Benshoof as a "vexatious litigant." Benshoof has apparently tried to sue too many people too many times over nothing lawsuits and now the court system has flagged him as an abuser of the legal system.  However, despite the court fining him for his overuse of the system, Benshoof continues to email her lawsuits. Some of these lawsuits' she is named in and others she was simply forwarded the information."

303.    Page 4 of the Application (Ex. #0295 ¶2) stated: "Owen also informed officers that this week she received a manila envelope in the mail, from Benshoof, containing more court paperwork."

304.    Page 4 of the Application (Ex. #0295) stated: "The actual paperwork itself was more than a couple hundred pages so neither officer nor did Owen read

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

through that. The front of the paperwork reads that it was a Petition for Writ of Habeas Corpus in which Benshoof is the petitioner and Owen is the respondent."

305.    The actual voice mails, emails, text messages sent by Benshoof to Owen repeatedly referred to the fact that Jessica R. Owen and Magalie E. Lerman had kidnapped Benshoof's son A.R.W. [on September 3, 2021], had committed perjury, had stolen Benshoof's 2011 Toyota FJ Cruiser, and extorted Benshoof of $19,000 for the return of Benshoof's FJ Cruiser and to see his son A.R.W. again.    Benshoof repeatedly asked Owen Lerman to stop kidnapping and abusing A.R.W.

306.    Page 5 of the Application (Ex. #0296 ¶5) stated: "Owen stated she avoids being at home and sometimes stays out of town in an attempt to keep herself and her son safe."    Owen makes her living by receiving payment for sexual intercourse and other sexual acts. The legal definition of her chosen profession is prostitute. [3]

> **RCW** 9A.88.030 Prostitution.
> (1) A person age eighteen or older is guilty of prostitution if such person engages or agrees or offers to engage in sexual conduct with another person in return for a fee.
> (2) For purposes of this section, "sexual conduct" means "sexual intercourse" or "sexual contact," both as defined in chapter 9A.44 RCW.
> (3) Prostitution is a misdemeanor.

---

[3] Prostitute Law and Legal Definition: "Prostitute is a person who receives payment for sexual intercourse or other sexual acts. This is generally taken as a regular occupation. Although usually a prostitute refers to a woman offering sexual favors to men, there are male prostitutes who may perform homosexual acts for money or receive payment from women for sexual services.    Prostitution **is held illegal** in all states except Nevada, where it is strictly regulated. Some state statutes punish the act of prostitution, and other state statutes criminalize the acts of soliciting prostitution, arranging for prostitution, and operating a house of prostitution. Pursuant to **18 USCS § 2421**, on federal level **it is a crime to transport a person in interstate** or foreign commerce for the purpose of prostitution or for any other immoral purpose." https://definitions.uslegal.com/p/prostitute/

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Page 76 of 255

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

307.    Page 5 of the Application (Ex.#0296 ¶5) stated that she "sometimes stays out of town" is reference to  "Fly Me to You" ("FMTY"), a service Owen and Lerman offer to out-of-state clients (Ex.#0259) which Benshoof has reason to believe violates the Mann Act,[4] a federal law that criminalizes the transportation of "any woman or girl for the purpose of prostitution or debauchery, or for any other immoral purpose."

308.    Owen's statement that she leaves town "in an attempt to keep herself and her son safe" is unsupported by any record before the court.  Owen has never made any accusations of actual violence by Benshoof against A.R.W. or herself.

309.    Page 5 of the Application (Ex. #0296 ¶6) stated: "Owen said Benshoof never leaves the residence and she's too afraid to confront him about the residence. In addition, during their last hearing in Superior Court related to the ownership of the residence, Benshoof filed an appeal in Superior Court, which was denied." The statement that the appeal to the Washington Court of Appeals, Division I, was "denied" was false. The appeal in the lawsuit related to the ownership of Benshoof's home to the Washington Court of Appeals, Case No. 85465-8-I was ongoing during the submission for the search warrant.

310.    Page 5 of the Application (Ex. #0296 ¶7) stated: "It should be noted to the Court, as referenced in Exhibit 1, Benshoof has a history of non-compliance with Court Orders and law enforcement officials. As noted in the January 23, 2023, incident, Benshoof convinced his son to leave Owen's residence and come to his house,

---

[4] https://www.law.cornell.edu/wex/mann_act

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Page 77 of 255

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

1

2

which was a direct violation of the protection orders. Subsequently, officers responded

3

and were able to obtain short-term custody of the child and return him to Owens from

4

Benshoof's residence."

5

    311.    January 23, 2023, was the last time that Benshoof's son A.R.W. tried

6

running away from Owen to his father's [Kurt Benshoof] house.  When the officers

7

showed up on Benshoof's front porch, Benshoof literally had in his hands documents

8

which he attempted to hand to the officers as proof that Detective Ellis had never

9

served the restraining order upon Benshoof.  The officers were there to arrest

10

Benshoof for supposedly violating the restraining order which was never served upon

11

Kurt Benshoof.  The body footage video supports Benshoof's statement and the fact

12

that the officers declined to look at or take the documentary evidence offered by

13

Benshoof.

14

    312.    Page 6 of the Application (Ex. #0297 ¶2) stated: "Benshoof has remained

15

within the Target residence" and "attempts to conduct surveillance on Benshoof

16

and/or his residence have been unsuccessful."  Benshoof saw police SWAT drive up

17

his alleyway once in an unmarked van into Benshoof's driveway despite the multiple

18

no trespassing signs on the property, including on the street, constituting trespass.

19

This is not adequate basis for probable cause to say that Benshoof has been living in

20

the house.  It is not possible to "observe" "Benshoof's Toyota FJ Cruiser" because it is

21

not visible from the street.  The police SWAT drove their van down Benshoof's private

22

driveway, turned around and drove out, constituting trespass on private property.

23

24

25

26

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

*2) SPD Policy Manual*

313.    SPD Policy Manual 6.140.4 states, "'Pinging' the cell phone generates prospective information. This requires an action on the part of the cell service provider to locate the cell phone. This information is available to law enforcement with an existing pen register and/or trap and trace order or a qualifying pen/trap emergency. Even with a qualifying emergency, a pen register and/or trap and trace court order is ***required.***

314.    Upon Benshoof's information and belief, SPD Policy Manual 6.185.1 required that Ellis first screen the Search Warrant with a sergeant or above and obtain ultimate approval from a lieutenant or above.

315.    Upon Benshoof's information and belief, SPD Policy Manual 6.185.4 required that a sergeant or above evaluate the warrant, consult with a SWAT lieutenant or sergeant, and go through screening, evaluation, consultation, review, and re-screening by a sergeant—with ultimate approval from a lieutenant or above.

316.    SPD Policy Manual 6.180-POL-6 states, "Officers may not search digital information on a cell phone or other device without the owner's consent or a search warrant."

*3) Ellis Absent Probable Cause*

317.    Page 6 of the Application (Ex. #0297 ¶3) stated: "Based on all the foregoing information, I believe that evidence of the above-listed crime(s) exists at the above-described location, and that there is probable cause to search that location for evidence of the above-listed crimes, including:

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

• *Handgun(s) within the residence and/or BENSHOOF persons.*
• *Bills, receipts, mail and other items that evidence dominion and control of the premises, places, property, and/or person searched.*
• *Electronic communication device(s), computers and cell phones device(s), computers and cell phones*
• *KURT A BENSHOOF'"*

### • *Handgun(s) within the residence and/or BENSHOOF persons*

318.    Nowhere in the Application did Detective Ellis explain why he had cause to believe that Benshoof possessed a handgun.  Upon Benshoof's information and belief, Ellis did not have cause to believe that Benshoof possessed any weapons.

319.    Between March 2021 and April 2022, Ellis had personally served multiple Orders to Surrender Weapons to Benshoof and Benshoof had repeatedly stated under penalty of perjury that Benshoof did not have any weapons to surrender.

320.    In March 2021, Ellis had asked Benshoof about the Glock handgun that Benshoof had purchased circa 2005.  Benshoof had informed Ellis that he surrendered that to the SPD in or around 2006 and had never retrieved it from SPD.  Benshoof suggested at the time that Ellis ask his fellow SPD officers where the handgun was.

321.    The only other weapon associated with Benshoof was a shotgun.  The shotgun was seized by SPD on September 15, 2020, in relation to SMC No. 656927.  Although that case was dismissed with prejudice in February 2023, the shotgun is still held the SPD Evidence Unit located at 730 S Lacy ST, Seattle, WA 98134.

322.    Ellis's Application did not articulate any nexus between an allegation of an alleged crime and possession and/or ownership of a handgun.

### • *Bills, receipts, mail and other items that evidence dominion and control of the premises, places, property, and/or person searched.*

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Page 80 of 255

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

323.    Ellis's Application did not articulate any nexus between any allegation of a crime and bills, receipts, mail, or other items that evidenced dominion or control over the premises, places, property, and/or persons to be searched.

### • *Electronic communication device(s), computers and cell phones, device(s), computers and cell phones*

324.    The Application listed: electronic communication device(s), computers and cell phones, device(s), computers and cell phones. (Ex. #0297)

### 4)  *Facially Invalid Warrant*

325.    Upon Benshoof's information and belief, the Search Warrant lacked particularity and was therefore facially invalid.  The Search Warrant itself was less specific than the Application, failing to **identify any of the items that Ellis intended to seize.**  In the portion of the form (Ex. #0322) that called for a description it stated:

> *"YOU ARE COMMANDED to:*
> *1. Search, within 10 Days, the premises, vehicle or person described as follows: RESIDENCE:*
> *1716 N 128th ST, Seattle, WA 98133 occupied by Kurt A BENSHOOF.*
> *2. Seize, if located, evidence of the above-listed crimes, including:"* to be seized, petitioner typed:
> *"☒ Evidence of those crimes; to include Kurt A BENSHOOF*
> *☒ Contraband, the fruits of a crime, or things otherwise criminally possessed;*
> *☒ Weapons or other things by means of which a crime has been committed or reasonably appears about to be committed;"*

326.    The Search Warrant quoted verbatim from RCW 10.79.035(1) (a), (b), (c) to search for (a) Evidence; (b) Contraband; and (c) Weapons:

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Page 81 of 255

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

**RCW 10.79.035  - Issuance of search warrants by magistrates.**
(1) Any magistrate as defined by RCW 2.20.010, when satisfied that there is probable cause, may[,] upon application supported by oath or affirmation, issue a search warrant to search for and seize any:
(a) Evidence of a crime;
(b) contraband, the fruits of crime, or things otherwise criminally possessed;
(c) weapons or other things by means of which a crime has been committed or reasonably appears about to be committed; or
(d) person for whose arrest there is probable cause or who is unlawfully restrained.

327.    **Evidence.**  The Search Warrant did not list: electronic communication device(s), computers and cell phones, device(s), computers and cell phones that Ellis intended to search for or seize. (Ex. #0322-0323)  The only "evidence" listed with particularity that Ellis intended to seize was "KURT BENSHOOF."   Upon his information and belief, Benshoof could not be "evidence of a crime" under RCW 10.79.035(1)(a), unless Benshoof were deceased, and his body was evidence of murder or another crime related to Benshoof's death.

328.    **Contraband, the Fruits of a Crime.**  The Search Warrant did not list with particularity any contraband or fruits of a crime that Ellis intended to search for or seize.

329.    **Weapons.**   The Search Warrant did not list with particularity any weapons or other things by which a crime had been committed, or appeared imminent to be committed, that Ellis intended to search for or seize.

## N.  Raid of Benshoof's Home Church

330.    On July 3, 2024, SWAT positioned themselves on all four sides of Benshoof's home church, including Anthony Belgard, Donovan Broussard, John Duus, Nicholas Evans, Jose Jimenez, Spencer Kurz, Earnest Jensen, Adam Losleben,

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

1
2
3
4

Yves Luc, Grant Mayer, Johnathan Musseau, Brehon Ness, Liliya Nesteruk, Stephen

Okruhlica, Dwayne Pirak, Brian Rees, Ty Selfridge, Steven Stone, Trevor Tyler,

Michael Virgilio, Andrew West, Chad Zentner, (collectively "SWAT officers").

5
6

331.    Ellis and other officers set up a command center two blocks west of

Benshoof's home, located in the parking lot of City's Haller Lake Maintenance Center.

7
8
9

332.    SPD had a key to open the front door of Benshoof's home church. (Ex.

#0477-0478) Benshoof has reason to believe, and does believe, that Owen gave this

key to Ellis for SPD to enter Benshoof's home.

10
11
12
13

333.    SWAT did not knock on Benshoof's front door.  Instead, SWAT officers

announced themselves with flash-bang grenades and proceeded to shoot *Oleoresin*

*Capsicum* ("OC") cannisters through windows on both floors of Benshoof's home.

14
15
16
17
18
19

334.    A female SPD officer, sitting in a patrol car at the command center,

stated, "You can break the [basement] door.  So, [Owen's] game for anything.  I think

[Owen] just wants her house back."  Upon Benshoof's information and belief, Owen

communicated to SPD officers on July 3, 2024, that Owen supported using excessive

force against Benshoof and his home church.

20
21
22
23

335.    After SWAT officers entered Benshoof's home, they proceeded to throw

additional OC cannisters into each room they entered.  SWAT officers stated that

they were using OC to "get a response" from Benshoof.  SWAT officers also discussed

head shots while they waited to "get a response."  Benshoof did not respond.

24
25
26

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

336.     Fearing for his life, Benshoof waited six hours, sitting curled up in a closet so that he would not present any pretext by which he would be executed by SWAT officers.

337.     Benshoof believed he had good cause to fear being murdered by SPD officers: on December 16, 2020, SPD Ofc. Corey Foy ("Foy")  told Benshoof, "You're lucky I didn't pop you" because Benshoof was standing in an empty parking lot attempting to report felony crimes to Foy as a victim witness.  On January 4, 2022, City Judge Mary Lynch ("Lynch"), referring to Foy nearly shooting Benshoof in December 2020, told Benshoof, "You're lucky you weren't killed."

338.     Benshoof considered the foregoing statements from Foy and Lynch indicative of City's practice of threatening Benshoof for his attempts to report felony crimes perpetrated by City officials.

339.     SWAT officers opened Benshoof's mail during their search.  (Ex. #0479-0480) SWAT officers did not have a search warrant authorizing them to open Benshoof's mail.  18 U.S.C. §1702 states, in part, "Whoever takes…package [and] opens… the same, shall be fined under this title or imprisoned not more than five years, or both."

## O. King County Jail

### 1) Religious Discrimination – Hate Crimes

340.     Benshoof was removed in handcuffs from his home church without his religious head covering or his reading glasses.  Once housed in King County Jail,

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

Benshoof consecrated a towel to serve as his religious head covering. However, King County Department of Adult and Juvenile Detention ("DAJD") personnel threatened Benshoof with punishment if he didn't remove his head covering.

341.    DAJD personnel stated that Benshoof must submit a "kite" to request head covering approval from a jail pastor. After more than a month of submitting numerous kites, requesting a religious head covering, Benshoof met with DAJD Classification personnel who gave Benshoof a Muslim Koufi—without consulting a jail pastor.

342.    Benshoof is not Muslim and had never worn a Koufi prior to August 2024. As a Caucasian non-Muslim, other inmates subsequently accused Benshoof of mocking the Muslim faith by wearing a Koufi. Inmates threatened Benshoof with physical violence and threatened to tear the Koufi from Benshoof's head.

343.    When Benshoof reported these hate crime violations of RCW 9A.36.080, jail personnel transferred Benshoof to solitary confinement. When Benshoof called 911 to report the hate crimes, DAJD personnel punished Benshoof by relocating him to solitary confinement on November 8, 2024, where DAJD personnel eventually denied Benshoof any access to the phone.

### 2) Denied Supplies

344.    From July 3, 2024, to August 13, 2024, Benshoof was denied access to paper, envelopes, and postage. On or about August 14, 2024, DAJD provided Benshoof a one-time supply of 500 sheets of printing paper and several envelopes.

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

345.     On September 6, 2024, inmates stole Benshoof's printing paper, pencils, eraser, reading glasses, and legal documents.  Jail personnel refused to retrieve Benshoof's stolen property and moved Benshoof to a higher security unit. (Ex. #0483; #0488)

346.     On September 14, inmates, including Cameron Buchanan, stole Benshoof's papers and effects, including phone numbers of Benshoof's assistants of counsel.  Buchanan also stole the copy of Washington Pattern Jury Instructions which Benshoof had obtained from DAJD for use at trial.  DAJD personnel again refused to retrieve Benshoof's stolen property. (Ex. #0485)

### 3)  Denied Pro Se Equipment

347.     According to the County's Inmate Handbook, Benshoof could use the pro se computer and printer two days per week.  Between July 3, 2024, and August 13, 2024, Benshoof was denied access to the pro se workstations in the King County Jail. (Ex. #0491-0493; #0496)

348.     On August 14, 2024, Benshoof was transferred from the King County Jail to the Regional Justice Center ("RJC") in Kent, Washington.  The RJC had two pro se workstations.  One pro se workstation was located in E-Unit and one was located in H-Unit.  Benshoof attempted to use the pro se computer and printer at the RJC.

349.     Both RJC unit's computers froze every time Benshoof attempted to print copies of the Washington State Constitution.  When Benshoof was finally successful in printing the twelve pages of *Groh v. Ramirez,* 540 U.S. 551 (2004), the printer ran

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

out of ink and jail personnel would not provide Benshoof with a replacement ink cartridge.

350.    On September 4, 2024, Benshoof spoke directly to the woman in charge of pro se supplies at the RJC.  Benshoof attempted to purchase more printer paper and envelopes to litigate more than twenty (20) ongoing state and federal court cases. The woman denied Benshoof's request, claiming that Benshoof's request was "unreasonable." (Ex. #0489)

351.    After Benshoof was transferred back to King County Jail from the RJC on September 6, 2024, Benshoof again attempted to use the pro se workstations. Because had inmates stolen Benshoof's remaining pages of printer paper, and because DAJD personnel repeatedly denied Benshoof's attempts to purchase more printer paper (Ex. #0487), Benshoof could not print any document for any of his City, state, or federal court cases.

### 4) ADA Violations

352.    Benshoof repeatedly requested ADA accommodations related to his bi-lateral carpal tunnel syndrome.  Upon Benshoof's oral motion, SMC Judge Andrea Chin issued an Order ("ADA Order") on September 3, 2024, stated, "Defendant, who is representing himself, shall be granted a reasonable access to the RJC law room, a working computer and printer & paper (or a typewriter & paper), for research and brief writing. Defendant shall have reasonable access to all pro se materials including current WPIC.  Defendant shall have access to digital discovery with regard to the

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

above cases.  Defendant shall also be allowed to purchase envelopes with postage."
Outland signed the Order, as well as Judge Andrea Chin.  (Ex. #0497)

353.    Pascal Herzer ("Herzer"), DAJD attorney, moved for a hearing before
Judge Chin on September 9, 2024.  At the hearing Herzer admitted that DAJD had
previously granted an inmate's ADA request to provide a computer with word
processing software so that an inmate could type and print their court pleadings.
Despite this admission, Herzer claimed that it was unreasonable for DAJD to comply
with Chin's order to accommodate Benshoof with the same.

354.    Judge Chin then claimed that she did not have the legal authority to
order DAJD to provide Benshoof with paper, envelopes, postage, a typewriter, or a
computer with word processing software, nor a printer with an ink cartridge.

355.    On November 13, 2024, DAJD supervisor Gregg Curtis ("Curtis") stated
in his sworn declaration that "Every KCCF resident is provided a copy of the Inmate
Handbook, which provides information about jail rules and privileges." (Ex. #0511)

356.    During nearly five months in jail, Benshoof only met one inmate who
had been provided a copy of the Inmate Handbook.  Benshoof was not provided an
Inmate Handbook for the first three weeks of imprisonment and was only provided
one after submitting a kite request for an Inmate Handbook.

357.    Curtis averred that "All KCCF residents have the ability to send and
receive mail."  Curtis also averred that "Indigent inmates are provided a packet that
contains three postage-paid envelopes, three pencils, and three sheets of paper.
Additional pre-stamped envelopes may be purchased."  (Ex. #0512 no. 7)

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

358.    Benshoof was an indigent inmate upon arriving at King County Jail on July 3, 2024.  Benshoof was not provided any sheets of paper or envelopes until August 13, 2024, and then only because he was a pro se defendant.  After arriving at KCCF on September 6, 2024, DAJD refused to provide Benshoof any envelopes or sheets of paper, despite Benshoof's repeated kite requests and sufficient inmate funds in his account.

359.    Curtis averred that "Residents who are pro se…are provided a one-time provision of supplies free of charge.  If more supplies are needed, residents may purchase them through the commissary.  KCCF has placed no restrictions on Benshoof's right to be issued pro se supplies or his ability to purchase additional supplies" (Ex. #0513)

360.    Printer paper is not listed for sale from the commissary.  Between August and November 2024, Benshoof repeatedly called Curtis and Herzer, leaving voicemail messages to inform them that Benshoof was being denied access to envelopes, postage and printer paper.  Curtis and Herzer never responded to Benshoof and Benshoof was unable to ever purchase printer paper during his nearly five months of jail incarceration.

### 5) *Denied Telephone Access*

361.    Curtis averred that "All KCCF residents have access to telephones located in dayrooms during the hours they are out of their cells.  KCCF has placed no restrictions on Benshoof's ability to use the telephone in the dayroom to make calls." (Ex. #0511)

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

362.    The reason DAJD transferred Benshoof to solitary confinement in the East Wing of the 11th floor was because Benshoof used the telephone to call 911 to report felony crimes as a victim witness to the SPD.  On November 22, 2024, DAJD personnel cut off all access to the telephone and informed Benshoof that he wouldn't be released on bail until 2025 because "there is a six week wait list for EHD" ankle monitors. (Ex. #0495)

### 6) Denied Ability to Mail Court Documents

363.    By denying Benshoof's kite requests, denying his reasonable accommodation requests, denying his attempts to purchase printer paper and mailing supplies, Benshoof was denied the ability to file documents in more than twenty (20) state and federal court cases for most of his five months of imprisonment.

364.    Curtis also averred that "KCCF has placed no restrictions on Benshoof's ability to send or receive mail." (Ex. #0512 no. 7)

365.    Without envelopes or postage, Benshoof was unable to send any mail whatsoever for the majority of his nearly five months of imprisonment.

366.    Curtis made the foregoing statements under penalty of perjury under the laws of the State of Washington. (Ex. #0513)

367.    RCW 9A.72.080 states, "Every unqualified statement of that which one does not know to be true is equivalent to a statement of that which he or she knows to be false."  RCW 9A.72.020(1) states, "A person is guilty of perjury in the first degree if in any official proceeding he or she makes a materially false statement which he or she knows to be false under an oath required or authorized by law."

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Page 90 of 255

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

**RCW 9.72.090** states, "Whenever it shall appear probable to a judge, magistrate, or other officer lawfully authorized to conduct any hearing, proceeding or investigation, that a person who has testified before such judge, magistrate, or officer has committed perjury in any testimony so given, or offered any false evidence, he or she may, by order or process for that purpose, immediately commit such person to jail or take a recognizance for such person's appearance to answer such charge. In such case such judge, magistrate, or officer may detain any book, paper, document, record or other instrument produced before him or her or direct it to be delivered to the prosecuting attorney."

### 7) Bail Issues - EHD

368.    On November 10, 2024, a member of Benshoof's church, Urve Maggitti ("Plaintiff Maggitti") paid the $420,000 bail amount related to the City and County criminal cases against Benshoof.

369.    When Benshoof sent a kite on November 15, 2024, requesting his release date to Electronic Home Detention ("EHD"), he received a response that it would take approximately *six weeks.* (Ex. #0494-0495) Then, on November 22, 2024, jail personnel cut off all access for Benshoof to make phone calls to his legal counsel, rendering Benshoof imprisoned *incommunicado.*

### 8) Face Covering Retaliation

370.    On or around August 3, 2024, a female DAJD employee named Nicola Burke ("Burke") delivered breakfast to approximately seventeen prisoners, including Benshoof, located in S9LB.  After Benshoof was handed his breakfast tray by the masked Burke, Benshoof stated for the edification of his fellow prisoners that "wearing a face mask increases the chance of contracting bacterial pneumonia."

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

371.    Before Benshoof had seated himself, Burke appeared outraged and immediately handcuffed Benshoof and took him to a tiny holding cell without his breakfast.  After approximately two hours of being in the tiny holding cell, Burke and a sergeant transferred Benshoof to the 7th floor "psych ward" under the direction of a DAJD Jail Health Services ("JHC") Nurse, Defendant Jane Doe ("Nurse Doe").

372.    According to previous County statements in federal court, there are three categories for psychiatric housing of prisoners.  "Within the umbrella of psychiatric housing, there are three sub-categories: (1) Red, for inmates expressing an immediate potential for self-harm or suicide; (2) Yellow, for inmates with active symptoms and severe functional impairment; and (3) Green (for inmates with a major mental illness and moderate functional impairment)." *Meagher v. King Cnty.*, No. C19-0259JLR, at *3 (W.D. Wash. July 9, 2020)

373.    Nurse Doe had no evidence to support a claim that Benshoof: (1) expressed an immediate potential for self-harm; (2) exhibited active symptoms and sever functional impairment; nor (3) exhibited a major mental illness.  Upon Benshoof's information and belief, Nurse Doe had Burke transfer Benshoof to the psych ward as retaliatory punishment because of Nurse Doe's and Burke's discriminatory animus against Benshoof's beliefs.

### 9)  Denied Hearing

374.    On November 8, 2024, Benshoof was transferred from E9LB cell no. 6 to solitary confinement in cell no. 1 of E11UB without advanced written notice of the charges against Benshoof.

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Page 92 of 255

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

375.    The reason given by DAJD personnel was that Benshoof violated jail rules and orders by calling 911 to make victim reports of felony and gross misdemeanor crimes perpetrated by City and County officials against Benshoof.

376.    On November 9, a female DAJD classification officer provided Benshoof with an Inmate Disciplinary Statement form on which Benshoof could explain why he should not be punished by solitary confinement.

377.    The classification officer stated that she would return in an hour to retrieve Benshoof's completed Inmate Disciplinary Statement.

378.    Benshoof immediately completed the Inmate Disciplinary Statement (Ex. #1319) and noted that the back of the form enumerated the rights of the accused, which included #3: the right to submit evidence documents.  Benshoof immediately compiled a set of exhibits which would exonerate Benshoof of any wrongdoing.

379.    When the classification officer returned, Benshoof informed her that he had completed the Inmate Disciplinary Statement and was exercising his right to submit accompanying evidence documents pursuant to inmate right #3.  Benshoof slid the evidence documents under the door first, to ensure that the classification officer would take Benshoof's evidence.

380.    The classification officer stated that she was "not authorized to take any of [Benshoof's evidence documents]" and refused to look at or touch the documents which Benshoof had slid under the door.

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

381.    The classification officer then claimed that Benshoof had waived his right to a hearing and walked away without taking either Benshoof's evidence documents or his Inmate Disciplinary Statement.

382.    Between November 10, 2024, and November 27, 2024, classification officers refused to even acknowledge Benshoof's verbal requests for a hearing whenever the classification officers entered E11UB to speak with other inmates.

## P.  Seattle Municipal Court - Constitutional Violations

### 1)  *Bail Hearing*

383.    Benshoof was denied his right to summon witnesses to a constitutionally sufficient bail hearing.

384.    Without paper, envelopes, or stamps, the indigent Benshoof was denied the ability to file any motion seeking a constitutionally sufficient bail hearing to challenge the City's violations of Wash. Const. art I § 20.  "[a]ll persons charged with crimes shall be bailable by sufficient sureties, except for capital offenses when the proof is evident, or the presumption great."

### 2)  *Motions to Dismiss not Heard*

385.    Between April and October of 2023, Benshoof's public defender, Faiz Pirani ("Pirani"), refused to file any motion to dismiss SMC Nos. 656748; 669329; or 671384.

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

386.    Between August and October 2023, Benshoof repeatedly demanded that Pirani file a notice of withdrawal due to ineffective counsel.    Despite Benshoof repeatedly contacting Pirani's supervisor, Pirani refused to withdraw.

387.    On October 18, 2023, Benshoof filed a *Marsden* motion to compel Pirani to withdraw. (Ex. #0586-0589)

388.    On October 19, 2023, Benshoof filed a motion to dismiss (Ex. #0590-0618) SMC No. 671384 regarding: (1) the perjury and fraud perpetrated by Owen in KCSC No. 21-5-00680-6; (2) the City's absence of personal jurisdiction; and (3) the City's absence of subject matter jurisdiction.

389.    Judge Faye Chess refused to hear either Benshoof's *Marsden* motion or his motion to dismiss.  To date, Seattle Municipal Court judges have refused to hear Benshoof's motion to dismiss filed on October 18, 2023. (Ex. #0590-0618)

390.    On or around August 5, 2024, Benshoof made oral motion before Judge Chin to set a hearing for Benshoof's two motions to dismiss, one for SMC Nos. 656748 and 656749, and one for all of the cases related to allegations of domestic violence: 671384, 676175, 676207, 676216, 676463, 676492. (Ex. #0623-0640)

391.    On August 5, 2024, Judge Chin initially set the following filing deadlines and hearing date: August 13, 2024, as the date that Benshoof's motions to dismiss were to be filed; the City's Responses were due August 26, 2024; and oral argument was set for hearing at Readiness on September 13, 2024. Outland signed the agreed order. (Ex. #0498)

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Page 95 of 255

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

392.    On August 5, 2024, Chin informed Benshoof that he could be imprisoned on eighty-one successive sentences, effectively a life sentence.

393.    Because Benshoof was denied sufficient envelopes and postage, he was unable to file his motions to dismiss.  In open court on September 3, 2024, Benshoof objected to the fact that, because DAJD had denied him access to envelopes and stamps, he had been unable to file his motions to dismiss.  Judge Chin reset the following filing deadlines and hearing date for Benshoof motions to Dismiss: September 13, 2024, for filing Benshoof's motions to dismiss, and September 17, 2024, for the City's Response briefs and for oral arguments.

394.    Benshoof filed his motions with the court prior to September 13, 2024, handing them to Judge Chin's bailiff in open court on September 9, 2024.  Benshoof also left several voicemail messages to Katrina Outland and Dan Schilling, reminding them of the due date for the responses to Benshoof's motions to dismiss.

395.    Outland did not file any responsive brief to Benshoof's motion to dismiss SMC Nos. 671384, 676175, 676207, 676216, 676463, 676492.  Schilling did not file any responsive brief to Benshoof's motion to dismiss SMC Nos. 656748, 656749.  Upon Benshoof's information and belief, Outland and Schilling knew in advance of September 17, 2024, that Judge Chin would prevent Benshoof from having his motions to dismiss heard.

396.    Upon arriving in SMC courtroom 1003 before Judge Chin on the morning of September 17, 2024, Benshoof demanded to have his motions to dismiss heard.  Judge Chin stated that she would not hear Benshoof's motions to dismiss

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

because September 17, 2024, was the start of the trial for SMC Nos. 671384, 676175, 676207, 676216, 676463, 676492.

397.    On September 27, 2024, after the conclusion of the trial in SMC No. 671384, Benshoof again requested that Chin hear his motions to dismiss.  Chin refused to adjudicate Benshoof's motions to dismiss.  Between October 18, 2023, and present, Benshoof has been denied his right to have any of his motions to dismiss filed over the previous fifteen months adjudicated.  (Ex. #0590-0618; #0623-0640)

### 3) Denied Discovery

398.    Outland printed clearly legible color copies for the prosecution to use at trial (Ex. #0481), yet in providing Benshoof his discovery requests, Outland gave Benshoof copies that were impossible to read, even if Benshoof had been provided reading glasses. (Ex. #0482)

### 4) Voi Dire

399.    Prior to jury selection, Benshoof objected to the absence of evidence before the court showing that: (1) the City had obtained personal jurisdiction over Benshoof in compliance with RCW 35.20.270(1); and (2) Seattle Municipal Court, a court of limited jurisdiction, was legally empowered to ignore the statutory requirement of RCW 7.105.050(1)(a)(d) that prosecution of Benshoof for alleged violations of family court involving his minor son must be heard by King County Superior Court.

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

400.    When Benshoof asked Judge Chin whether Outland had provided evidence before the court of the City's compliance with RCW 35.20.270(1) and RCW 7.105.050(1)(a)(d), Judge Chin refused to answer and ordered the marshals to remove Benshoof the courtroom.

401.    While Benshoof was held *incommunicado* in a cell in the basement of the Seattle Municipal Court, Outland selected the entire jury.

### 5) *Pre-trial Motions*

402.    On or around September 18, 2024, Benshoof again demanded that Judge Chin hear oral argument regarding his Motion to Dismiss SMC Nos. 671384, 676175, 676207, 676216, 676463, 676492.    Judge Chin again refused to hear Benshoof's Motion to Dismiss as a pre-trial motion. (Ex. #0590-0618; #0623-0640)

403.    When Benshoof asked Judge Chin whether Outland had provided evidence before the court of the City's compliance with RCW 35.20.270(1) and RCW 7.105.050(1)(a)(d),, Judge Chin refused to answer and ordered the marshals to remove Benshoof from the courtroom.

404.    While Benshoof was held *incommunicado* in a cell, Judge Chin heard and granted all of Outland's pre-trial motions.

405.    On January 6, 2025, at the sentencing hearing for SMC Nos. 656749; 671384; 676175, 676207, 676216, 676463, 676492, Benshoof again challenged the City's lack of personal and subject matter jurisdiction to proceed and requested that the motion to dismiss (Ex. #0590-0618) he filed on October 19, 2023, be immediately heard.

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Page 98 of 255

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

406.    Chin again refused to acknowledge the City's absence of jurisdiction and refused to adjudicate Benshoof's motion to dismiss and continued sentencing until February 24, 2025.

### 6) Denied Frank's Hearing

407.    Between July and the end of September 2024, Benshoof repeatedly made oral motion for a *Franks* hearing.  Judge Chin repeatedly ignored Benshoof's oral motions.

408.    Because Benshoof was denied sufficient envelopes and postage, Benshoof's assistance of counsel, Urve Maggitti ("Maggitti"), filed a *Franks* motion in SMC Nos. 669329, 671384, 675405, 676207, 676216, 676175, 676463, 676492.  Judge Chin ignored the *Frank's* motion filed into the record by Plaintiff Maggitti. (Ex. #0265-0336)

### 7) Denied Counsel

409.    Benshoof repeatedly moved for a continuance so that attorney Robert Barnes could appear as his counsel and have adequate time to prepare Benshoof's defense.  Judge Chin repeatedly denied Benshoof's requests for a continuance.

### 8) Denied Witnesses

410.    After Benshoof mailed Outland his discovery requests and list of witnesses that Benshoof intended to call, Plaintiff Maggitti, acting as Benshoof's assistant of counsel pursuant to Section 35 of the Judiciary Act of 1789, also filed

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

with the court Benshoof's discovery requests and list of defense witnesses being subpoenaed to testify.

411.    At trial Judge Chin prohibited Benshoof from calling any witnesses to testify. Judge Chin claimed that it was sufficient that Judge Chin allowed Benshoof to cross-examine the prosecution's witnesses.

### 9) Trial in absentia

412.    When Benshoof asked Judge Chin whether Outland had provided evidence before the court of the City's compliance with RCW 35.20.270(1) and RCW 7.105.050(1)(a)(d), Judge Chin refused to answer and ordered the marshals to remove Benshoof from the courtroom.

413.    On or around September 18, 2024, while Benshoof was held *incommunicado* in a cell, Judge Chin heard and granted all of Outland's pre-trial motions.

414.    On or around September 19, 2024, while Benshoof was held *incommunicado* in a cell, Outland called Owen to testify for several hours during the afternoon.

415.    On or around September 20, 2024, Benshoof was allowed back into the courtroom. When Benshoof asked Judge Chin to provide a transcript or summary of Owen's testimony from the previous afternoon, Judge Chin refused to do so. To date, Benshoof still does not know what Owen testified to on the witness stand.

## Q. SMC 671384 – Owen Perjury

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

### 1) Parenting Covenant

416.    Owen repeatedly admitted (Ex. #0038) the existence of the 12-year parenting agreement at Common Law between Owen and Benshoof in multiple court proceedings, yet claimed she needed to file a petition to decide parentage in order to establish a parenting agreement.

417.    On August 21, 2021, Owen stated under penalty of perjury that "I have had a verbal agreement with Kurt that we split time with my son 50/50." (Ex. #0024).

418.    On March 13, 2024, Owen stated under penalty of perjury in her declaration in SMC Case No. 671384 that she and Benshoof had a "long-standing unwritten agreement to share custody of [A.R.W.] on an alternate-weeks basis." (Ex. #0222 ¶2).

### 2) Withholding of A.R.W.

419.    In her August 21, 2021, Petition for Order of Protection, Owen claimed that Benshoof was "preventing my son from talking to me or coming home." (Ex. 0024)

420.    In her March 13, 2023, declaration, Owen claimed that she "had not been able to have any contact at all with [A.R.W.] for almost three weeks" between August 15, 2021, and September 3, 2021, and that Benshoof violated the twelve-year parenting agreement by causing "a total absence of communication between A.R.W. and me during that nearly three-week period…" (Ex. #0225 ¶1)

421.    During the prosecution's questioning of Owen on September 24, 2024, in SMC Case No. 671384 Owen testified that after Benshoof picked A.R.W. up from

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

Owen's house on August 15, 2021, that Owen "didn't hear from [A.R.W.] for…you know…nineteen days."

422.    Under cross examination by Benshoof on September 24, 2024, Owen admitted that she repeatedly communicated with A.R.W. between August 15, 2021, and September 3, 2021.  Owen testified that Benshoof "offered for me to come to [Benshoof's] house to…and explain…have a family meeting and explain why it was that I had been lying to our son and had chosen to harm him by getting him vaccinated.  And that's when I decided to go to the courts to get help."

423.    Under cross examination by Benshoof on September 24, 2024, Benshoof asked, "Earlier today, Ms. Owen, you acknowledged in testimony that you spoke to [A.R.W.] on or around August 21, [2021].  Do you recall that Ms. Owen?"  Owen replied, "I do."  Owen also admitted to the Guardian ad Litem that "she had one call with [A.R.W.] during that time" between August 15, 2021, and September 3, 2021. (Ex. 0175 ¶3)

### 3) *Child Abuse*

424.    In her March 13, 2023, declaration, Owen claimed, "I do not hit my son or believe in corporal punishment." (Ex. 0228 ¶1)

425.    Under cross examination by Benshoof on September 24, 2024, in SMC Case No. 671384, Owen was asked, "Did you ever spank our son?"  Owen testified, "Yes."

426.    Under cross examination by Benshoof on September 24, 2024, Benshoof asked Owen, "Did I ever spank our son?"  Owen replied, "No."

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

427.    Under cross examination by Benshoof on September 24, 2024, Owen was asked, "Did I ever yell at our son?"  Owen replied, "Yes."  Benshoof followed up by asking, "What time?  Name once, please."  Owen testified, "I don't recall the specific dates that you have yelled at our son."  Benshoof then asked Owen, "When did I ever yell at our son?  Please give one example."  Owen testified, "I can't recall a specific time where you yelled at him."

## 4) Biological Father

428.    Under cross examination by Benshoof on September 24, 2024, Owen was asked, "Have you ever had any doubt since you discovered that you were pregnant in August of 2008 that our son was conceived in your bedroom on my birthday, July 18, 2008?"  Owen replied, "Not really, no."  Benshoof asked for clarification, "What was that?"  Owen testified, "Unfortunately, no."

429.    Under cross examination by Benshoof on September 24, 2024, Owen was asked if after the first restraining order was denied on September 3, 2021, "Do you recall that you sought a petition to decide parentage, case number 21-5-00680-6 on or around September twenty-third [2021] in which you claimed you didn't know who the father was?"  Owen responded, "I don't recall that, no."

430.    Owen's petition to decide parentage listed Benshoof as a "**possible** genetic parent." (Ex. #0058)

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

### 5) *Presumption of Fatherhood*

431.    In her September 2021 petition to decide parentage Owen averred, "To my knowledge, no one is already presumed to be a parent by...***holding out***." (Ex. #0059 ¶8) RCW 26.26A.115 states that a person is presumed to be the parent of a child if "the individual resided in the same household with the child the first four years of the life of the child, including any period of temporary absence, and openly held out the child as the individual's child."

432.    Owen has never disputed the fact that she lived with Benshoof during her entire pregnancy and that they lived together during the first four years of A.R.W.'s life.  On August 21, 2021, Owen's declaration stated that Benshoof "has been acting in the role of father for 12 years." (Ex. #0027) On September 2021, Owen's sworn declaration stated that Benshoof had "acted as [A.R.W.'s] father for [A.R.W.s] whole life" (Ex. #0041) and that Benshoof "has always insisted on being treated as [A.R.W.'s] father and that [A.R.W.] was his [son]." (Ex. #0042)

### 6) *Acknowledgement of Fatherhood*

433.    Under cross examination by Benshoof on September 24, 2024, Owen was asked, "Do you understand what a petition to decide parentage is?"  Owen testified, "Yes, I do.  We needed you to sign the birth certificate so that...it was as far as my lawyer understood it, it was a very ambiguous grey area where I acknowledged that you were the only person that I could have had a baby with at that time."  Benshoof then asked, "How do you reconcile that with the fact that in your declaration in your

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

petition to decide parentage you stated that you weren't sure if I was the father?"
Owen testified, "I don't."

434.    In her September 2021 declaration and petition to decide parentage
Owen stated under penalty of perjury that Benshoof "has, at all times, refused to sign
an Acknowledgement of Parentage or otherwise agree to legal recognition as a parent
of [A.R.W.]" (Ex. #0059) and that many times since A.R.W. was born "Kurt has
refused my requests that he sign an acknowledgement of parentage." (Ex. #0042)

435.    Under cross examination by Benshoof on September 24, 2024, Owen was
asked, "Did I text you on or about September 14, 2021, stating 'put me on [A.R.W.'s]
birth certificate'?"  Owen testified, "Yes, you did."

436.    On September 18, 2021, Benshoof texted Owen, "The fact that you refuse
to amend [A.R.W.'s] birth certificate to reflect my legal name is prima facie evidence
of your current and ongoing attempt to fraudulently assert sole legal custody of our
child and deny me my parental rights to our son."  Owen then blocked Benshoof's
phone number. (Ex. #0752)

437.    On September 19, 2021, Benshoof had texted Owen, "Are you still
refusing to amend [A.R.W.'s] birth certificate to show my legal name (as I have
previously and repeatedly requested)?" (Ex. #0752)

438.    Under cross examination by Benshoof on September 24, 2024, Owen was
asked, "You spoke of an acknowledgment of parentage, alleging that I refused to sign
an acknowledgement of parentage.  Can you tell me when you ever presented me with

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

an acknowledgement of parentage to sign---ever?" Owen replied, "Multiple times. I don't have the exact dates.

439.    "Can you state a year that you presented an acknowledgement of parentage that I allegedly refused to sign?" Owen testified, "I know for sure that I presented it in the year our son was born [2009]." Benshoof then asked Owen, "Can you name a year after the year our son was born [2009] that you presented an acknowledgement of parentage to me that I refused to sign?" Owen testified, "No."

### 7) Father's Rights

440.    Owen and Magalie Lerman ("Lerman") repeatedly claimed that Benshoof had no parental rights as the father of A.R.W. In her Facebook post on September 6, 2021, Lerman stated that Benshoof had no "rights to my stepson even though he isn't on the birth certificate or any other legal documents." (Ex. #0256 ¶1)

441.    Lerman and Owen are not married or in a legal domestic partnership. Benshoof is listed as the father on the birth certificate of A.R.W. (Ex. #0264)

442.    Under cross examination by Benshoof on September 24, 2024, Owen was asked, "Were you the only one who thought that I had no rights to my son? Did your partner, Magalie Lerman, also believe that I had no rights to my son?" Owen testified, "I never believed that you had no rights to our son. I still don't."

443.    Benshoof then stated, "For the record, you just stated under that that you've never said that I didn't have rights to my son. Interestingly, you said exactly that---under oath---which I would like to present evidence [of] to the court." Benshoof then presented Owen's September 2021 sworn statements from KCSC No. 21-5-

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

00680-6 and asked Owen, "Can you read what it says?" Owen read aloud, "Kurt currently has no legal right to any tie with my son whatsoever…his parenting rights do not exist and cannot be affected by a restraining order." (Ex. #0065 no. 3)

### 8) Prostitution

444.    On or around January 25, 2023, Owen stated under penalty of perjury during deposition by attorney Ann LoGerfo in KCSC No. 22-2-03826-8 that she had not worked as a prostitute "since 2018 or 2019." On September 24, 2024, Owen testified that she has worked as a prostitute for the previous twenty years. (Ex. #0720)

445.    Owen and Lerman claimed to Amy Franklin-Bihary ("Franklin-Bihary") that they were no longer prostitutes, as recounted in the GAL report, despite Benshoof providing Franklin-Bihary evidence of: Owen's and Lerman's active prostitution advertising; Owen's 2021 interview as "Sacred Whore Isobella" on the prostitution podcast on *Heaux in the Kneaux*; social media posts; and their prostitution websites, solanasparks.com and alwaysisobella.com.

446.    Instead of Franklin-Bihary acknowledging that Owen paid her thousands of dollars for her services as a GAL from the proceeds of prostitution, Franklin-Bihary claimed that Benshoof was "very anti-trans" because Benshoof's religious beliefs hold that there are only two biological sexes. Upon Benshoof's information and belief, this had the intended effect of severely prejudicing Judge Keean against Benshoof, as Keenan has a trans child.

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Page 107 of 255

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

## R.  SMC No. 671384 - Ellis Perjury

### 1) Witness Interview

447.    On September 3, 2024, Benshoof conducted a witness interview with SPD Det. Ryan Ellis at the Regional Justice Center with Outland and King County prosecutor Stephanie Brennan ("Brennan") present.

448.    Benshoof asked Ellis to cite the statute or court order which authorized Ellis to ignore the requirement to personally serve Benshoof the Final Orders and Weapons Surrender.  Ellis stated that he could not recall that statute or court order. When Benshoof asked Outland and Brennan to cite the authorizing statute or court order, they refused to answer.

### 2) Trial Testimony

449.    Under direct examination by Outland, Ellis claimed that on November 15, 2022, he legally served Benshoof the Final Restraining Order and Order to Surrender and Prohibit Weapons *by email*, and that Ellis was authorized to ignore the explicit personal service requirement because the courts authorized him to serve Benshoof by email due to Covid.

450.    The Proof of Service filed by Ellis into KSCS No 21-5-00680-6 on November 15, 2022, stated: "***Important!*** *Do not use electronic service if your case involves the surrender of firearms…*" (Ex. #0244)  Ellis checked the box stating that he served an Order to Surrender and Prohibit Weapons. (Ex. #0245),

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Page 108 of 255

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

451.    On cross-examination, Benshoof asked Ellis to cite the court order which authorized Ellis to ignore the personal service requirement.  Ellis could not cite any such court order.

452.    Even at the height of the pandemic fear in April 2020, Washington Supreme Court Order No. 25700-B-615 stated that personal service was **not** suspended for restraining orders "directing the surrender of weapons" and "courts should still require personal service by law enforcement." (Ex. #0157 no. 4a)

453.    King County Superior Court Emergency Order #36, issued on March 8, 2022, stated that it was "based upon" the Washington Supreme Court's February 19, 2021, Order."  Emergency Order #36 did not contain any language authorizing Ellis to forego the requirement to personally serve Benshoof the final orders.  (Ex. #1280-1282)

## S.  Family Court Vacatur

454.    Upon his release on bail from King County jail, Benshoof filed a Motion to Vacate all final orders in KCSC No. 21-5-00680-6 pursuant to CR 60(b)(3)(4) due to Benshoof having newly discovered proof that Cliber suborned the perjury of Owen in their extrinsic fraud to kidnap A.R.W. under color of law.  (Ex. #1283-1302)

455.    Owen's Reply did not even attempt to deny her perjury on September 24, 2024, which further evidence Owen's perjury and extrinsic fraud perpetrated with Cliber in September 2021.

456.    Owen claimed that the ORAL prevented Benshoof from filing his motion to vacate the family court orders. (Ex. #1306 ¶3)

22701 42ⁿᵈ Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

457.    The Contempt Order clarified the filing restrictions stipulated in the ORAL, stating, "Although the Abusive Litigation Order is clear and unambiguous, the Court now clarifies, as guidance for Mr. Benshoof, that terms like "any and all future litigation" and "new action" in the Abusive Litigation Order include all claims, counterclaims, crossclaims, third party actions, and any other claims whatsoever brought by Mr. Benshoof in any court against the "Persons Covered by This Order" as defined in the Abusive Litigation Order." (Ex. #1221 no. 8)

458.    Benshoof did not commence a "new action."  Benshoof's *motion* to vacate was filed into KCSC No. 21-5-00680-6, a case initiated in 2021.  It was not a "claim, counterclaim, crossclaim, third party action" nor "any other claim."

459.    Owen requested that the court imprison Benshoof for filing his motion. (Ex. #1307 ¶2)

460.    At the hearing on December 30, 2024, Judge Aimee Sutton claimed that the ORAL required Benshoof to first seek leave from Judge Ferguson.  Judge Sutton dismissed Benshoof's motion without prejudice.

## T.  Lerman Perjury and False Statements

### 1)  911 Call – January 23, 2023

461.    On January 23, 2023, Lerman called 911 and made numerous absurdly false claims about Benshoof.  In reference to a front-page story in the Seattle Weekly from 2005 about Benshoof, his daughter, and the Reverend of the New Gnostic Church, James King, Lerman claimed, "Kurt tried to kill [James King]."  Lerman

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

stated, "I've seen [Benshoof] deal pounds—and I mean pounds—of cocaine, mushrooms, DMT, acid, you name it."

462.    During this 911 call, Lerman claimed Benshoof is a racist cult leader. She stated that Benshoof "has a current cult, which he calls a church, and it is a white supremacist group.  And, he has these white supremacist types going in and out of his house all day long doing drug transactions."

463.    During this 911 call, Lerman claimed that Benshoof "is a white man who preys upon women of color.  He tries to connect them with clients…and then he just takes and pockets all the money.  I've seen him do that with three women."  One of the women Lerman was referencing is Briana Gage, Benshoof's co-plaintiff in two federal lawsuits: WAWD Nos. 2:23-cv-1392-JNW; 2:24-cv-00343-TL.

464.    During this 911 call, Lerman claimed that Benshoof has "taken this strategy where he has been trying to call me and [Owen] prostitutes—which we are not."

465.    Lerman **is** a prostitute and actively promotes her prostitution under the pseudonym "Solana Sparks" via website is solanasparks.com.  Her Twitter account is @solanasparks, where she advertises FMTY ("Fly Me To You"), which promotes violations of the Mann Act for Lerman's and Owen's financial profit. (Ex. #0259)

466.    Owen stated under oath on September 24, 2024, that Owen has been a prostitute for the previous twenty years.  Owen's prostitution website is alwaysisobella.com

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Page 111 of 255

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

467.    Lerman claimed that Benshoof "has emailed our lawyers saying that he has our [prostitution] client lists—which they—I—you know—we are not sex workers.  We don't have client lists, but he has women's client lists because he's a trafficker."  Benshoof has never been involved in trafficking and has never possessed any prostitute's client list.

### 2)  *Ellis Interview – July 10, 2024*

468.    On July 10, 2024, Ellis interviewed Lerman.  Lerman avowed her statements under penalty of perjury, also stating her willingness to testify at trial regarding her interview statements.  The interview was recorded on audio and video with two cameras.

469.    During the interview, Lerman admitted the existence of the Parenting Covenant between Benshoof and Owen yet stated that Benshoof "is convinced of things that just aren't true."  When Ellis asked for examples, Lerman responded, "This all goes back to… [clears throat]… the Summer of 2021, when Kurt kidnapped my stepson.  Um, my stepson is his son.  So, um, but at the time there was a, um, verbal parenting agreement between [Owen] and [Benshoof] that [Benshoof] never really upheld…um, that they were supposed to have a week on week off…"

470.    Lerman admitted that she has mental health issues, claiming that state and federal lawsuits in which she is a named defendant are "fake."  Lerman said, "I'm spending so much money fighting these fake lawsuits…I'm not able to get ahead in my mental health already as a survivor of trafficking.  I have immense amounts of PTSD.  I just don't do okay."

22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

471.    Nationally renowned attorney Robert E. Barnes, of Barnes Law LLC has taken over Benshoof's appeal of WAWD No. 2:23-cv-1392-JNW, 9th Circuit No. 24-4223.  Upon Benshoof's information and belief, Mr. Barnes would not take a "fake" case to the 9th Circuit Court of Appeals.

472.    Lerman stated in documents she provided to County prosecutor Stephanie Brennan that she has been in weekly therapy sessions for three years and couples counseling for two years, claiming that Benshoof "belongs in the mental health wing of prison."  Upon Benshoof's information and belief, Lerman is projecting her own criminal pathology and mental health problems as a narcissistic borderline onto Benshoof: DARVO: deny, accuse, reverse, victim, and offender.

473.    At the end of the interview, Ellis asked Lerman, "Do you declare under penalty of perjury under the laws of the State of Washington that what you have stated in these statements is true?"  Lerman replied, "Yes."

474.    Lerman's sworn statements and social media posts over the previous four years reveal her extreme discriminatory animus towards Benshoof's religious beliefs and race, repeatedly referring to Benshoof's skin color and calling his church a "white man's house" (Ex. #0256 ¶1) whose members are "white supremacists" (Ex. #0262) and "minions" (Ex. #0261) of Benshoof's "cult." (Ex. #1034 no. 12(d))

475.    Benshoof's spiritual beliefs absolutely prohibits racism, ableism, misogyny, misandry, and violence.  Rev. Dr. Martin Luther King, Jr. is one of Benshoof's spiritual heroes:  Lerman calling Benshoof "racist" is as insulting as if someone slandered Lerman with antisemitic slurs.

22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

476.    Lerman publicly advocating for "sterilizing" (Ex. #0254 ¶1) Benshoof's class of "white men" (Ex. #0255 ¶2) is disturbingly similar to the darkest annals of eugenics-driven fascist ideology.

477.    Lerman openly predicated her happiness on Benshoof being dead or imprisoned for life.  On January 23, 2023, within two hours of learning that A.R.W. had again run away to go home to Benshoof, Lerman posted on Twitter, "I really thought everything was going to be okay.  But it isn't.  It won't be along as [Benshoof's] alive and free." (Ex. #0258)

478.    Upon Benshoof's information and belief, over the previous three years, Lerman, Outland, and Owen have repeatedly, falsely, and with utmost malice, portrayed Benshoof as violent, dangerous, and armed so that either: (1) police would shoot and kill Benshoof while executing the search warrant; or (2) the City would condemn Benshoof to de fact life imprisonment by sentencing him to eighty-one (81) successive one year sentences.

479.    Upon Benshoof's information and belief, the practice of the City and County has been to encourage Lerman's hate speech against Benshoof's class by treating Lerman as the victim in order to perpetrate malicious prosecutions of Benshoof under color of law.

## U. SMC No. 671384 – House Fraud

### 1) Background – KCSC 22-2-03826-8

480.    In KCSC No. 21-2-11149-8 and KCSC No. 21-5-00680-6 Owen's own

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

exhibits included her 2015 statements to SPD that Owen and Benshoof co-owned their house, located at 1716 N 12th Street, Seattle, WA 98133 (interchangeably "house" or Benshoof's "home church"). According to the report filed by SPD Ofc. Ryan Kennard, #7555 on December 7, 2015, "Owen stated that she and [Benshoof] **both own the house** that she lives in at 1716 N 128th St." (Ex. #0038)

481.    On August 20, 2020, Benshoof asked if Owen was "finally taking care of adding my name to our house title." To this, Owen texted in response, "I cannot add your name to the title until you pay taxes and show enough income for the mortgage company to feel comfortable with you having a legal claim on the house." (Ex. #0740-0741)

482.    After Benshoof filed suit against Owen for constructive fraud, alleging Owen was attempting to defraud Benshoof of his equity ownership in their house, Russ claimed that Benshoof was only a renter, producing a "Lease Agreement" which Benshoof had never seen before. (Ex. #0737-0739) Subsequently, Russ then claimed that Benshoof was not a renter, and was squatting in the house.

483.    During deposition of Owen on January 25, 2023, Owen was asked if she witnessed Benshoof signing the alleged Lease Agreement, to which Owen said, "I don't remember." (Ex. #0728)

484.    Prior to the house fraud trial on May 9, 2023, Russ repeatedly informed presiding Judge Sandra Widlan ("Judge Widlan") that Outland had obtained a $250,000 warrant #990435958 for Benshoof's arrest.

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Page 115 of 255

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

485.    On or around April 8, 2022, Russ was served by Daniel Heller at the law office of Tomlinson Bomsztyk Russ with Benshoof's sworn criminal complaints, which detailed some of the crimes perpetrated by Owen, Lerman, and Cliber. (Ex. #0779-0807)

486.    Russ neglected to inform Judge Widlan that Russ had knowledge that: (1) Cliber suborned Owen's perjury to kidnap A.R.W. (Ex. #0078 nos. 29-34); (2) Lerman had stolen Benshoof's FJ Cruiser (Ex. #0078 no. 24); (3) Owen and Lerman had attempted to <u>extort</u> Benshoof of $19,000 for the return of Benshoof's FJ Cruiser (Ex. #0437); and (4) Owen and Lerman were attempting to evict Benshoof from his home unless Benshoof paid Owen and Lerman at least $100,000. (Ex. #0078 no. 38)

487.    On January 18, 2023, Judge Widlan refused to allow Benshoof into the courtroom without a face covering, requiring that Benshoof appear via WebEx. (Ex. #0746)

488.    At trial on May 9, 2023, there were two King County Sheriff deputies standing outside the courtroom.  Upon Benshoof's information and belief, he would have been immediately arrested if he had tried to enter the courtroom.

489.    In 2023, a $118,000 supersedeas bond was paid to stay any attempt by Owen to evict Benshoof from his home church while the lawsuit, KCSC No. 22-2-03826-8, was being appealed in Washington State Court of Appeals, No. 85465-8-I.

### 2) *Arraignment Hearing*

490.    During July 2024, the Washington Court of Appeals was still deliberating house fraud appeal No. 85465-8-I.  On July 5, 2024, City prosecutor

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

Katrina Outland ("Outland") moved the court for conditions of release which prohibited Benshoof from returning to his home church, stating that Benshoof should "be excluded from [his home] due to a civil order that he vacate the home." (Exhibit #0643, no. 6(a))

491.    Outland's false statements were: (1) material to Owen's ongoing house fraud; (2) Outland knew her representation to be false; (3) Outland intended for Benshoof and the court to act upon Outland's false representation; (4) Benshoof did not know at that time that Outland was lying because Benshoof was in jail, unable to verify Outland's claim.

### 3) Bail Revocation Motion

492.    After bail was paid on November 10, 2024, to release Benshoof on Electronic Home Detention ("EHD"), Outland motioned Chin on November 15, 2024, to keep Benshoof indefinitely imprisoned.  In her Motion and Declaration to Revoke Bail and Remand to Custody, Outland made false statements **under penalty of perjury** regarding the ongoing house fraud, stating that Benshoof should be prevented from returning to his home "due to a civil order that he vacate the home," (Exhibit #0643) and that Benshoof "has been ordered to vacate the house where had had been living" (Ex. #00646).

493.    On or around November 25, 2024, Outland obtained a condition of release from Judge Andrea Chin ("Chin") which prohibited Benshoof from going within 1000 feet of his home church under the pretense of Outland's claim that

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Page 117 of 255

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

Benshoof had been evicted from his home church. Outland intended for Chin to act upon Outland's claim that Benshoof had been evicted from his home church.

494. To date, the supersedeas bond continues to prohibit evicting Benshoof from his home church during Benshoof's appeals, yet Benshoof has been unable to return to his home church for nearly six months and has been unable to recover his belongings.

### 7) *Owen Burglary*

495. On January 6, 2025, Owen and an unknown John Doe removed the front door lock on Benshoof's home church and entered the house around noon.

496. Benshoof's brother, Eric Benshoof, arrived on scene at Benshoof's home and called 911 to report Owen's burglary.

497. Owen and John Doe left the scene before SPD Ofc. Nathan Lemberg responded to Eric Benshoof's 911 call, SPD Incident #2025-004988.

498. After Lemberg left the house, Eric Benshoof noticed that several boxes had been removed from the house.

499. As no one else besides Eric Benshoof had been in the house, prior to the break-in by Owen and John Doe, Eric Benshoof called SPD to request that officers be dispatched to Owen's home at 849 NE 130th Street, Seattle, WA 98125 to retrieve Benshoof's personal property. SPD Incident #2025-006124.

## V. KCSC No. 24-1-02680-7

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

### 1) *Denied Franks Hearing*

500.    On August 6, 2024, before Judge Melinda Young, Benshoof moved to set a hearing date for Benshoof's *Frank's* motion.  Judge Young stated that Benshoof would need to move for a Frank's hearing at the next hearing on August 15, 2024, as the August 6, 2024, hearing was only a preliminary hearing to allow the withdrawal of public defender James Coatsworth and to grant Benshoof *pro se* status.

501.    On August 15, 2024, Judge Suzanne Parisien refused to set a hearing for Benshoof's *Franks* Motion, claiming that Judge Young had already denied his *Franks* Motion on August 6, 2024.

### 2) *Right to Call Witnesses*

502.    On or around October 16, 2024, Judge Parisien stated in open court that she had reviewed the City's prosecution of Benshoof in SMC No. 671384 and that she, like Judge Andrea Chin, would not allow Benshoof to call witnesses in his behalf.

503.    When Benshoof objected to being denied the right to call witnesses in violation of Wash. Const. art I § 22, which explicitly guarantees an accused's right to compel witnesses to appear in one's defense, Judge Parisien stated that Benshoof didn't need to call his own witnesses because she would allow Benshoof to cross examine the County's witnesses.

504.    Upon the foregoing Benshoof believes that Judge Parisien and Judge Andrea Chin were actively conspiring to retaliate against Benshoof under the practice of the City and County to violate Wash. Const. art. I § 22 and the Sixth Amendment to the U.S. Constitution through the Fourteenth Amendment.

22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

### 3) *Threats Against Maggitti*

505.    Under the County's <u>practice</u> of threatening the assistants of counsel to Benshoof's class in <u>retaliation</u> against Benshoof's religious <u>beliefs</u>, County officials made thinly veiled threats against Pltf. Maggitti when Plft. Maggitti filed documents on Benshoof's behalf, pursuant to Section 35 of the Judiciary Act of 1789.

506.    On or around September 12, 2024, Benshoof received a letter from King County Chief Criminal Judge Melinda Young.   The letter demanded that Pltf. Maggitti stops filing documents on Benshoof's behalf and stated that Pltf. Maggitti may be perpetrating "unauthorized practice of law."

507.    Unauthorized practice of law is a class C felony for every offense after the first, pursuant to RCW 2.48.180(3)(b).   Upon the information and belief of Pltf. Maggitti and Benshoof, Judge young threateningly and malicious inferred that Pltf. Maggitti perpetrated unauthorized practice of law.

508.    Upon the information and belief of Pltf. Maggitti and Benshoof, Ann Summers ("Summers"), a civil attorney employed at the King County Office of the Prosecuting Attorney, also threateningly and maliciously inferred that Pltf. Maggitti perpetrated unauthorized practice of law.

509.    On October 16, 2024, Summers stated, "While the new pleading purports to contain Benshoof's signature, it also purports to have been drafted and is signed by a person named Urve Maggitti, who does not appear to be a licensed attorney and apparently lives in Pennsylvania. Washington law prohibits the unauthorized practice of law. Rev. Code of Wash. § 2.48.180. A person that prepares

22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

legal forms is practicing law. *State v. Hunt*, 75 Wash. App. 795, 802, 880 P.2d 96 (1994)." (Ex. #1316 ¶2)

510.    Upon the information and belief of Benshoof and Pltf. Maggitti, Judge Young and Summers knew or should have known that Plft. Maggitti is neither a "legal provider" nor a "nonlawyer" and therefore not subject to RCW 2.48.180.

511.    Upon the information and belief of Benshoof and Pltf. Maggitti, Judge Young and Summers maliciously inferred the possibility that the King County Office of the Prosecuting Attorney would maliciously prosecute Pltf. Maggitti under the County's <u>practice</u> if she continued to file documents as Benshoof's assistant of counsel, pursuant to Section 35 of the Judiciary Act of 1789.

512.    Upon the information and belief of Benshoof and Pltf. Maggitti, the threats by Judge Young and Summers were an attempt to prevent Benshoof from litigating any of his state and federal cases, as Benshoof and Pltf. Maggitti believe that Judge Youn and Summers knew that Benshoof was being denied envelopes and postage by DAJD personnel under the direction of Herzer and Curtis.

## W.  Suspension of Habeas Corpus

### 1)  KCSC Case No. 22-2-11112-7 SEA

513.    On July 18, 2022, Benshoof petitioned for writ of habeas corpus to stop the unlawful imprisonment of Plaintiffs under color of law of the family court restraining order.

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

514.    RCW 7.36.040 states that "upon application the writ ***shall*** be granted without delay." Wash. Const. Art. I §13 states that the "privilege of the writ of habeas corpus ***shall not*** be suspended, unless incase of rebellion or invasion the public safety requires it." No rebellion or invasion occurred during the matters in controversy.

515.    King County Superior Court Judge Steve Rosen did not issue a writ of habeas corpus and denied Benshoof's petition. (Ex. #0567)

### 2) *Ferguson's Denial of Habeas Relief*

516.    Under the terms of the void *ab initio* ORAL, Benshoof could not file a petition for writ of habeas corpus in any superior court in the state of Washington without seeking leave to file from Ferguson. (Ex. #1210-1218).

517.    On January 31, 2024, Benshoof filed Petition for Habeas Corpus, (Ex. #0004-0019) which sought to arrest the ongoing kidnapping of A.R.W. and the violation of Plaintiffs' right of familial association and provided proof of Owen's perjury (Ex. #0020-0079) and text messages from A.R.W., which evidenced the ongoing abuse of A.R.W. by Owen and Lerman, (Ex. #0084-0087)

518.    On January February 1, 2024, Benshoof filed Motion for Leave to File Petition for Writ of Habeas Corpus, under threat of the ORAL. (Ex. #0001-0002)

519.    On February 7, 2024, Russ filed response in opposition to Benshoof's motion for leave, claiming that Benshoof violated the ORAL because Benshoof's summary motion was "not a one-page document" and that the "three-page summary" claimed "that Ms. Owen, who has been previously awarded full decision-making authority for her son, somehow kidnapped her own son." (Ex. #0757 ¶2) "The Court

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

should also impose a sanction on Benshoof for filing anything other than the one-page summary and should summarily deny his request to file this ridiculous petition." (Ex. #0758 ¶3)

520.    On February 8, 2024, Benshoof filed reply to Russ's response, noting that Russ had not refuted that Cliber suborned the perjury of Owen in their extrinsic fraud to kidnap A.R.W. under color of law. (Ex. #0760-0765)

521.    On March 4, 2024, Judge Fergson issued an Order denying Benshoof leave to file his petition for writ of habeas corpus, claiming that Benshoof's sworn statements and evidence were "frivolous and without merit." (Ex. #0560 ¶2) and that Benshoof "clearly intends to use his proposed *habeas* petition as a substitute for appeal of those [family court proceedings]." (Ex. #0560 ¶2)

522.    Upon Benshoof's information and belief, KING COUNTY has a practice or widespread of denying habeas relief to Benshoof's class.

523.    Upon Benshoof's information and belief, KING COUNTY failed to properly train its officials, including Judges Ferguson and Rosen, regarding Wash. Const. art I §13 and the requirement of RCW 7.36.040 to issue a writ upon application.

### 3) King County Superior Court

524.    Beginning in July 2024, Benshoof's assistants of counsel, Plaintiffs Brett Fountain ("Pltf. Fountain") and Urve Maggitti ("Pltf. Maggitti"), attempted to file multiple state court habeas petitions while Benshoof was incarcerated in King County jail without access to envelopes or postage for six weeks.  The King County

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Page 123 of 255

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

Superior Court Clerk, Defendant Catherine Cornwall ("Cornwall"), refused to docket Pltf. Fountain's habeas petition.

525.    On August 15, 2024, Judge Suzanne Parisien claimed in court that Benshoof's friends did not have the right to file a habeas petition on Benshoof's behalf. Thereupon, Benshoof informed Judge Parisien that she was lying. Wash. Const. art IV § 6 states that the Superior Courts "and their judges shall have power to issue writs of mandamus, quo warranto, review, certiorari, prohibition, and writs of habeas corpus, on petition by *or on behalf of any person* in actual custody in their respective counties."

526.    On or around September 13, 2024, in courtroom W355, Benshoof informed Judge Parisien that Clerk Cornwall had denied Pltf. Fountain's attempt to petition for habeas relief on Benshoof's behalf. Benshoof also informed Judge Parisien that he was unable to file his own habeas petition because DAJD personnel were denying him access to envelopes and postage.

527.    Benshoof demanded that Judge Parisien immediately hear Benshoof's habeas petition, pursuant to Wash. Const. art. IV § 6, which states that the superior courts "shall always be open, except on nonjudicial days" and that superior "courts and their judges shall have power to issue writs of mandamus, quo warranto, review, certiorari, prohibition, and writs of habeas corpus, on petition by or on behalf of any person in actual custody in their respective counties."

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

528.    Judge Parisien refused to hear Benshoof's habeas petition and bailiff Julie Salle refused to accept Benshoof's written habeas petition when Benshoof attempted to file it with the court.

### 4) Washington Supreme Court

529.    In May 2023, Benshoof filed a habeas petition, Washington Supreme Court No. 101964-5.  It was summarily dismissed, falsely claiming that Benshoof had not provided the court with sworn affidavits supporting his petition. (Ex. #0555-0558)

530.    Benshoof's assistant of counsel, Pltf. Fountain, filed a habeas petition on Benshoof's behalf in July 2024, Washington Supreme Court No. 103392-3.  Despite clearly stating that the petition was under the court's *original* jurisdiction, the clerk transferred the petition to the Washington Court of Appeals, Division I, transmuted into an *appellate* review Personal Restraint Petition, No. 87100-5.

531.    After DAJD provided Benshoof with several envelopes, he also tried filing a habeas petition from the Regional Justice Center in August 2024, Washington Supreme Court No. 103401-6.  Despite clearly stating that the petition was brought under the court's *original* jurisdiction, the clerk claimed the habeas petition was filed under the court's *appellate* jurisdiction and transferred the petition to the Washington Court of Appeals, Division I, transmuted into an appellate review Personal Restraint Petition, No. 87112-9.

532.    Because DAJD denied Benshoof further access to envelopes and postage, Benshoof could not subsequently respond to either the Washington Supreme Court or the Washington Court of Appeals.

22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

533.    In November 2024, Benshoof received notice that DAJD attorney Pascal Herzer ("Herzer") responded to Personal Restraint Petition No. (Ex. #0502-0510)

534.    Herzer's Response included a sworn declaration from DAJD employee Gregg Curtis (Ex. #0511-0513), which included numerous false statements which Benshoof has reason to believe, and does believe, were intended to deceive the Washington Court of Appeals by concealing the violations of Benshoof's rights.

535.    Because Herzer and Curtis, and DAJD personnel under their authority, prevented Benshoof from purchasing envelopes, or postage, Benshoof was unable to file a reply to Herzer's Response.

536.    On November 26, 2024, Pltf. Maggitti filed an original jurisdiction habeas petition (Ex. #1366-1387) with the Washington Supreme Court to challenge the County's ongoing unlawful pretrial detainment of Benshoof, pursuant to Wash. Const. art. IV § 4.

537.    Washington Supreme Court Deputy Clerk Sarah Pendleton again transformed Pltf. Maggitti's habeas petition into an appellate jurisdiction "personal restraint petition" despite the fact that Benshoof was in pretrial detention related to KCSC No. 24-1-02680-7 SEA. (Ex. #1365)

### 5) Suspension of Mandamus

538.    On March 22, 2024, Benshoof filed Petition for Writ of Mandamus in King County Superior Court, initiating Case No. 24-2-06539-3 SEA. Benshoof petition sought to compel Seattle Public Schools general counsel Defendant Gregory

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

Narver's compliance with RCW 28A.605.030 so that Benshoof would be able to review all of the school records of A.R.W.

539.    Benshoof noted his application before King County Superior Court Chief Civil Judge, the Honorable Michael Scott, for Thursday, April 18, 2024, pursuant to King County LCR 98.40(d).

540.    On April 18, 2024, Judge Michael Scott ordered the transfer Benshoof's mandamus to Ferguson for Ferguson to review for compliance with the ORAL. (KCSC No. 24-2-06539-3, Document 19)

541.    On April 18, 2024, Benshoof filed a Notice of Appeal for discretionary review by the Washington Court of Appeals, Division I, to challenge the transfer of his mandamus to Judge Ferguson. (KCSC No. 24-2-06539-3, Document 20)

542.    On April 26, 2024, Benshoof e-filed Notice of Disqualification of Judge Marshall Ferguson. (KCSC No. 24-2-06539-3, Document 28)

543.    On May 8, 2024, the KCSC No. 24-2-06539-3 was assigned to Judge Suzanne Parisien by Chief Civil Judge Michael Scott, stating, "The case schedule remains unchanged. All pending motions shall be set before Judge Suzanne Parisien."

544.    On May 17, 2024, Benshoof e-filed a notice of hearing for his mandamus petition for May 30, 2024, before Judge Parisien.  Judge Parisien struck the hearing, stating that she would not hear the mandamus while Benshoof had a discretionary appeal to the Washing Court of Appeals No. 86581-1-I.

545.    On June 26, 2024, Benshoof filed a Motion for Withdrawal of Appeal, Washington Court of Appeals No. 86581-1-I.

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

546.    On August 6, 2024, a Certificate of Finality was issued by the Washington Court of Appeals, docketed into KCSC No. 24-2-06539-3 as Document 38, thereby terminating the Washington Court of Appeal's jurisdiction over Benshoof's mandamus.

547.    On December 3, 2024, Benshoof emailed Judge Parisien's bailiff, Julie Salle ("Salle"), requesting the next available court date for oral argument adjudication of Benshoof petition for writ of mandamus against Narver.

548.    Salle emailed in reply to Benshoof that the "Court will not hear a motion in this matter until or unless ordered to do so by the Court of Appeals."

549.    To date, Judge Parisien has refused to adjudicate Benshoof's mandamus petition.  Upon Benshoof's information and belief, Judge Parisien, by and through Salle and under the County's practices, is knowingly and maliciously preventing the adjudication of Benshoof's mandamus under color of law.

# X.    Federal Court Habeas Suspension

550.    When Benshoof's initial state court habeas petitions were dismissed in July 2022 and May 2023, Benshoof turned to the federal courts to redress the unlawful restraints imposed upon himself and A.R.W.

## 1)    WAWD No. 2:23-cv-751-RAJ

551.    District court claimed "domestic relations exception" to deny Benshoof's petition for habeas corpus.  This was a blatant error of law.  First, Benshoof and Owen were never parties to "domestic relations" by which a "child custody" proceeding could

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

have ever occurred.  Second, *Ankenbrandt v. Richards,* 504 U.S. 689 (1992) held "the Court of Appeals erred by affirming the district court's invocation of the domestic relations exception" in an action which "in no way seeks a divorce, alimony, or child custody decree." *Ankenbrandt* at 690.

552.    Benshoof's habeas petition "in no way [sought] a divorce, alimony or child custody decree."  Rather, Benshoof's habeas petition sought a ***jurisdictional inquiry*** contesting the unlawful imprisonment of both Benshoof and A.R.W., perpetrated under color of law.  Third, district court claimed that *Ankenbrandt* precluded federal jurisdiction.  *Ankenbrandt* was a *diversity* case:  Benshoof and Owen have lived in Seattle for their son's entire life, and his habeas petition was not filed as a diversity case.

### 2)  WAWD No. 2:24-cv-1110-JNW

553.    On August 6, 2024, Molly Anderson filed Benshoof's handwritten habeas petition with the U.S. District Court for the Western District of Washington. (Ex. #1319-1335) and a LCR 73 Notice of Magistrate Refusal. (Ex. #1336-1337)

554.    Despite the LCR Refusal, Magistrate Sarah Kate Vaughn proceeded to adjudicate the case in Judge Whitehead's *de facto* absence for the next three months, issuing orders which Benshoof could not respond to from jail without envelopes and postage, despite Benshoof notifying Judge Whitehead and Magistrate Vaughn that DAJD was denying Benshoof access to envelopes and postage. (Ex. #1327 no. 27)

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

555.    On December 15, 2024, Benshoof filed his Amended Petition for Habeas Corpus (WAWD No. 2:24-cv-1110-JNW, Dkt. #23), which was also attached as an exhibit before this Court. (Dkt. #57)

556.    To date, Judge Whitehead has ignored the requirement of 28 U.S.C. § 2243 as part of his pattern of nonfeasance to prevent Benshoof from obtaining habeas relief from the unlawful imprisonment by the City and County.

557.    To enjoin Judge Whitehead from his continued **administrative** nonfeasance, on December 26, 2024, Benshoof filed an Emergency Peremptory Writ of Injunction in 9th Circuit Court of Appeals. (Ex. #1338-1363) To date, Judge Whitehead refuses to adjudicate Benshoof's Amended Petition for Writ of Habeas Corpus.

## Y.  Prosecutorial Misconduct

558.    Upon Benshoof's information and belief, neither Outland nor Brennan ensured that a thorough factual investigation was conducted before a decision to prosecute was made.  Ellis did not conduct any interview of Benshoof, despite Benshoof repeatedly requesting that Ellis conduct an interview.

**RCW 9.94.411(2)(b)(i):**

The prosecuting attorney shall ensure that a thorough factual investigation has been conducted before a decision to prosecute is made. In ordinary circumstances the investigation should include the following:

(A) The interviewing of all material witnesses, together with the obtaining of written statements whenever possible;
(B) The completion of necessary laboratory tests; and
(C) The obtaining, in accordance with constitutional requirements, of the suspect's version of the events.

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Page 130 of 255

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

559.    While in jail between July 2024 and November 2024, Benshoof repeatedly left voicemail messages for Ellis, Brennan, and Outland.  In these voicemail messages, Benshoof repeatedly discussed the information detailed in the foregoing paragraphs.  Typical of the practice and widespread customs of the Seattle Police Department, Ellis ignored Benshoof's reminder that SPD Policy Manual 5.001.12 required Ellis to report Benshoof's exonerating evidence.

## Z.  Policies, Practices & Widespread Customs

560.    City officials had a policy, practice, or widespread custom of prosecuting Benshoof's class without jurisdiction for shopping sans face covering ("Practice No. 1").

561.    City and County officials had a policy, practice, or widespread custom of denying Benshoof's class entrance to courtrooms and public accommodations sans face covering, and of threatening to hold trials, and of holding trials, *in absentia* ("Practice No. 2").

562.    City officials had a policy, practice, or widespread custom of issuing warrants for the arrest of Benshoof's class without jurisdiction and of arresting and imprisoning Benshoof's class without probable cause ("Practice No. 3").

563.    City and County officials had a policy, practice, or widespread custom of suborning the perjury of individuals to maliciously prosecute Benshoof's class, and a practice of allowing perjuring prostitutes and their co-conspirators to commit fraud upon our courts ("Practice No. 4").

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

564.    City and County officials had a policy, practice, or widespread custom of denying Benshoof's class the equal protection of the law by refusing to report felony crimes against Benshoof's class ("Practice No. 5").

565.    City police had a policy, practice, or widespread custom of violating SPD Policy Manual 5.000.12 by refusing to report information that would exonerate Benshoof's class ("Practice No. 6").

566.    City and County officials had a policy, practice, or widespread custom of denying Benshoof's class the due process right have his motions and petitions adjudicated ("Practice No. 7").

567.    City and County officials had a policy, practice, or widespread custom of denying Benshoof's class the right to file habeas corpus petitions in state courts ("Practice No. 8").

568.    City officials had a policy, practice, or widespread custom of denying Benshoof's class the due process right to participate in *voi dire* ("Practice No. 9").

569.    City and County officials had a policy, practice, or widespread custom of denying Benshoof's class the due process right to call witnesses in his defense ("Practice No. 10").

570.    City and County officials had a policy, practice, or widespread custom of denying Benshoof's class the right to be represented by counsel of his choosing ("Practice No. 11").

571.    City and County officials had a policy, practice, or widespread custom of denying Benshoof's class the due process right to a *Franks* hearing ("Practice No. 12").

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

572.    City and County officials had a policy, practice, or widespread custom of subjecting Benshoof's class to excessive bail ("Practice No. 13").

573.    City and County officials had a policy, practice, or widespread custom of denying Benshoof's class the due process right to paper, envelopes, and postage while under pretrial imprisonment ("Practice No. 14").

574.    County officials had a policy, practice, or widespread custom of denying Benshoof's class the right to use telephone while imprisoned ("Practice No. 15").

575.    City and County officials had a policy, practice, or widespread custom of retaliating against Benshoof's class for attempting to report felonies as a victim witness ("Practice No. 16").

576.    City officials had a policy, practice, or widespread custom of subjecting Benshoof's to threats of violence and to excessive use of force ("Practice No. 17").

577.    City and County officials had a policy, practice, or widespread custom of rendering criminal assistance to the kidnapping of children of Benshoof's class ("Practice No. 18").

578.    City and County officials had a policy, practice, or widespread custom of retaliating against Benshoof's class for the free exercise of religious beliefs ("Practice No. 19").

579.    City and County officials had a policy, practice, or widespread custom of retaliating against Benshoof's class for petitioning for redress of grievances ("Practice No. 20").

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

580.    City and County officials had a policy, practice, or widespread custom of neglecting to prevent crimes against, and violations of the rights of, Benshoof's class ("Practice No. 21").

581.    City and County officials had a policy, practice, or widespread custom of enforcing fraudulent, void *ab initio* restraining orders against Benshoof's class which had not been legally served ("Practice No. 22").

582.    City and County officials had a policy, practice, or widespread custom of denying Benshoof's class the right to keep and bear arms in the absence of personal and subject matter jurisdiction by issuing restraining orders ("Practice No. 23").

583.    City and County officials had a policy, practice, or widespread custom of claiming that Maggitti was "practicing law without a license" by filing documents on Benshoof's behalf, in order to implicitly threaten Maggitti with potential criminal prosecution for acting as Benshoof's "assistance of counsel" under Section 35 of the Judiciary Act of 1789 ("Practice No. 24").

584.    City and County officials had a policy, practice, or widespread custom of denying Benshoof's class the right to exculpatory evidence ("Practice No. 25")

585.    City and County officials had a policy, practice, or widespread custom of denying Benshoof's class the right to testify or to make objections by denying Benshoof access to courtrooms ("Practice No. 26")

586.    City officials had a policy, practice, or widespread custom of threatening to execute Benshoof's class for attempting to report felony crimes as a victim witness. ("Practice No. 27")

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Page 134 of 255

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

# V.    AUTHORITY

## Federal Rights Violations

587.    The Court must treat the complaint's factual matter as true and construe Plaintiff's complaint in the light most favorable to Plaintiff "even if doubtful in fact." See *Erickson vs. Pardus*, 551 U.S. 89 (2007); *Scheuer vs. Rhodes,* 416 U.S. 232, 236 (1974).

588.    To establish a prima facie case under 42 U.S.C. § 1983, plaintiffs must allege two elements: (1) the action occurred "under color of law" and (2) the action is a deprivation of a constitutional right or a federal statutory right. *Parratt vs. Taylor,* 451 U.S. 527, 535 (1981), *Gomez vs. Toledo,* 446 U.S. 635, 640 (1980); 22 see also, e.g., *Groman vs. Township of Manalapan,* 47 F.3d 628, 633 (3rd Cir. 1995).

589.    Plaintiff is not an attorney; this pleading, "however unartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Also, a *pro se* petitioner's pleadings should be "liberally construed to do substantial justice." *Haines v. Kerner*, 404 U.S. 519 (1972).

590.    Constitutional prohibitions including, but not limited to, the Eighth Amendment would be meaningless without legal remedy for their violation: *ubi jus ibi remedium*.   "It is a settled and invariable principle, that every right, when withheld, ***must have a remedy***, and every injury its proper redress." *Marbury v. Madison*, 5 U.S. 137, 147 (1803) (***emphasis*** added)

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

591.    Just as Plaintiffs alleged in "*Keates v. Koile* , 883 F.3d 1228, 1242 (9th Cir. 2018) th[is] complaint adequately allege[s] defendants were integral participants in a violation of the right to familial association because defendants "were aware of [A.R.W.'s] situation ... and participated in a meaningful way in a collective decision" to remove the child from [Benshoof's] custody." *Hernandez v. Skinner*, 969 F.3d 930, 941 (9th Cir. 2020)

592.    Economical allocation of judicial resources is a primary reason for the extensive facts presented herein: Plaintiffs pre-emptively foreclose the wasting of public or private resources by defense counsel seeking to dismiss this Complaint under Fed.R.Civ.P. 56 or 12. ""[T]he plaintiff need only present [affirmative] evidence from which a jury might return a verdict in his favor." *Id.* at 257, 106 S.Ct. at 2514. If from the evidence presented a jury could "reasonably find *either* that the plaintiff proved his case *or* that he did not," *id.* at 254, 106 S.Ct. at 2513 (emphasis in original), summary judgment must be denied." *United Steelworkers of Am. v. Phelps Dodge*, 865 F.2d 1539, 1542 (9th Cir. 1989)

> "The existence or nonexistence of a conspiracy is essentially a factual issue that the jury, not the trial judge, should decide… The right to confront, cross-examine and impeach adverse witnesses is one of the most fundamental rights sought to be preserved by the Seventh Amendment provision for jury trials in civil cases. The advantages of trial before a live jury with live witnesses, and all the possibilities of considering the human factors, should not be eliminated by substituting trial by affidavit and the sterile bareness of summary judgment. "It is only when the witnesses are present and subject to cross-examination that their credibility and the weight to be given their testimony can be appraised. Trial by affidavit is no substitute for trial by jury which so long has been the hallmark of 'even handed justice.'" *Poller v. Columbia Broadcasting,* 368 U.S. 464, 473 (1962)."
>
> *Adickes v. Kress Co.*, 398 U.S. 144, 176 (1970)

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

593.    A common tactic of defense counsel is to feign ignorance of any conspiracy, no matter how egregious, no matter how obvious.  This Court should not entertain such prevarications: intolerance of deceit ensures equitable outcomes and promotes inclusive judicial integrity for a diverse range of litigants.

594.    KING COUNTY and CITY OF SEATTLE are each a "person" for the purposes of liability under 42 U.S.C. § 1983.

# VI.   CAUSES OF ACTION

## FIRST CAUSE OF ACTION
### VIOLATION OF FOURTH AMENDMENT
### Malicious Prosecution
### 42 U.S.C. § 1983

_____

595.    Benshoof realleges and incorporates by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

596.    In this first cause of action, defendants named herein include CITY OF SEATTLE ("City"), Andrea Chin, Jenny Durkan, Michael Fox, Tyler Goslin, Jonathan Kiehn, Julie Kline, Richard Lima, Sarah MacDonald, Jacob Masterson, Steve Mitchell, Dan Schilling, and Nathan Shopay, ("Defendants").

597.    "American courts described the elements of the malicious prosecution tort as follows: (i) the suit or proceeding was "instituted without any probable cause"; (ii) the "motive in instituting" the suit "was malicious," which was often defined in this context as without probable cause and for a purpose other than bringing the

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

defendant to justice; and (iii) the prosecution "terminated in the acquittal or discharge of the accused."" *Thompson v. Clark*, 142 S. Ct. 1332, 1338 (2022)

598.    The City and PCC claimed their face covering policies followed Washington Department of Health ("DoH") guidelines.

599.    The City and PCC permitted interchangeability between a face mask and a face shield, yet DoH guidelines stated a face shield does <u>nothing</u> to prevent transmission of SARS CoV-2.

600.    Upon the foregoing, City and PCC face covering policies were arbitrary and <u>capricious</u> on their face: there was no compelling government interest in enforcing arbitrary, capricious, and discriminatory face covering policies.  "Nor can a State enforce such a law requiring discrimination through either convictions of proprietors who refuse to discriminate, or trespass prosecutions of patrons who, after being denied service pursuant to such a law, refuse to honor a request to leave the premises." *Adickes v. Kress Co.*, 398 U.S. 144, 170 (1970)

601.    According to the Office of Inspector General report, the Seattle Police Department allowed officers to work without a face covering, including inside hospitals, without punishment.  (Exhibit #0433-0441)

602.    Not only was there was no probable cause for prosecuting Benshoof for exercising his firmly held religious beliefs to not wear a face covering as a condition of entering PCC, a public accommodation, federal law ***prohibited*** prosecuting Benshoof's "peaceful attempts to obtain service at places of public accommodation." *Georgia v. Rachel*, 384 U.S. 780, 793-94 (1966)

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

"The Civil Rights Act of 1964 endow[ed] [Benshoof] with a right not to be prosecuted for such conduct. As noted, § 201(a) guarantees to the defendants the equal access they sought. Section 203 then provides that, "No person shall . . . (c) punish or *attempt to punish* any person for exercising or attempting to exercise any right or privilege secured by section 201 or 202." (Emphasis supplied.) 78 Stat. 244. In *Hamm* v. *City of Rock Hill*, 379 U.S. 306, 311, the Court held that this section of the Act "prohibits prosecution of any person for seeking service in a covered establishment, because of his [religion]." Hence, [as] the facts alleged in the petition are true, [Benshoof is] not only [ ] immune from conviction under [Seattle's] trespass statute, but [Benshoof] ha[s] a "right under" the Civil Rights Act of 1964 not even to be brought to trial on these charges in the [Seattle] courts."                                    .
*Georgia v. Rachel*, 384 U.S. 780, 793-94 (1966)

603.    City police, prosecutors, and judges had a policy, practice, or widespread custom ("practice") of retaliating against Benshoof's class for not wearing a face covering inside public accommodations.  Fox, Goslin, and Mitchell engaged in joint action with Chin, Lima, Kiehn, Masterson, MacDonald, Schilling, and Shopay, under the City's practice to violate Title II of the Civil Rights Act of 1964 by acting in concert to arrest, imprison, and prosecute Benshoof.

604.    PCC's trespass admonishment was a ***civil*** notice which did not, and could not, confer ***criminal*** jurisdiction to the SPD.  Despite this, Fox, Goslin, and Mitchell asked Lima, Kiehn and Masterson to arrest Benshoof in an effort to violate Benshoof's right to be free from discrimination in public accommodations.  The City Attorney's Office then conspired with PCC management to "keep Mr. Benshoof out of [PCC] stores."

605.    Administrative agencies, such as the CDC, WADoH, and FDA, cannot delegate authority which they were not legislatively granted. Like the CDC and WADoH, the "FDA is not a physician. It has authority to inform, announce, and

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

apprise—but not to endorse, denounce, or advise." *Apter, et al., v Dept. of Health and Human Services,* No. 22-40802, at 24 (5th Cir. Sept. 1, 2023)

606.    Fox, Goslin, Mitchell, Lima, Kiehn, Masterson, MacDonald, and Schilling did ""know[ ] about and acquiesce[d] in the constitutionally defective conduct as part of a common plan" to keep Benshoof out of PCC and "set in motion a series of acts by others which [the defendants] reasonably should [have] know[n] would cause others to inflict the constitutional injury" by prosecuting, arresting, and imprisoning Benshoof without jurisdiction or probable cause. *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)" *Peck v. Montoya*, No. 20-56413, at *21 (9th Cir. Oct. 18, 2022)

607.    "When [PCC employees, police, and prosecutors] conspired to construct a false story about the events that took place...they deliberately set in motion a series of events that they anticipated (or should have anticipated) would lead to [Benshoof's] arrest, imprisonment, and trial... Not only did [PCC employees, police and prosecutors] set the events in motion but, according to the complaint, they voluntarily provided crucial information, false though it was, at every step of the proceeding." *Harris v. Roderick,* 126 F.3d 1189, 1199 (9th Cir. 1997)

608.    For private individuals such as Fox, Goslin, and Mitchell "to act "under color of" state law for § 1983 purposes does not require that the defendant be an officer of the State. It is enough that he is a willful participant in joint action with the State or its agents. Private persons, jointly engaged with state officials in the challenged action, are acting "under color" of law for purposes of §1983 action.

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

*Adickes v. S.H. Kress Co.,* 398 U.S. 144, 152 (1970); *United States* v. *Price*, 383 U.S. 787, 794 (1966)." *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980)

609.    As the Civil Rights Act of 1964 was clearly established law during the controversies in question which prohibited Defendants from discriminating against Benshoof's class in joint action for entering PCC without a face covering, Fox, Goslin and Mitchell engaged with police in the prohibited action of threatening Benshoof with arrest for entering PCC without a face covering.

> "Private persons, jointly engaged with state officials in the prohibited action, are acting "under color" of law for purposes of the statute. To act "under color" of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents." *United States v. Price*, 383 U.S. 787, 794 (1966)."

610.    Durkan acted as final policymaker for the City regarding the malicious prosecution of Benshoof's class, and Kline implemented Durkan's face covering policies.

611.    Defendants engaged in parallel acts to enforce a practice of maliciously prosecuting Benshoof's class despite the lack of jurisdiction or probable cause. Thus, because of the above-described practice, Benshoof was maliciously prosecuted even though he had committed no violation of the law.

612.    Defendants acted under color of state law and deprived Benshoof of his liberty rights secured to him under the Fourth and Fourteenth Amendments of the United States Constitution ("rights") pursuant to the City's practice of maliciously prosecuting Benshoof's class.

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

613.    Defendants acted pursuant to the City's practices, which caused the deprivation of Benshoof's rights; that is, the City's practices were so closely related to the malicious prosecution of Benshoof as to be the moving force that caused Benshoof irreparable harm.

614.    In 2020, Kline's role as senior advisor and general counsel to then-mayor Jenny Durkan included developing and implementing the City's nationally recognized COVID-19 pandemic public health response" and was "the primary liaison with the Seattle Police Department [and] courts."  (Exhibit #0431)

615.    Durkan acted under color of state law as final policymaker for the City's face covering practice, and by so doing deprived Benshoof of his rights by and through the acts of Kline, police, prosecutors, and judges acting under Durkan's final policymaking regarding Benshoof's class.

616.    City police, prosecutors and judges acted under color of state law as a proximate result of the failure of the City to properly train its prosecutors and judges, which thereby deprived Benshoof of his rights pursuant to the practice or customs of the City regarding Benshoof's class.

617.    The City's training of police, prosecutors and judges regarding Benshoof's class was not adequate to prevent malicious prosecution by police, prosecutors and judges, nor to handle the usual and recurring situations with which police, prosecutors and judges must deal.

618.    The City was deliberately indifferent to the substantial risk that its training posed regarding malicious prosecution of Benshoof's class, and the training

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Page 142 of 255

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

was inadequate to prevent the known and foreseeable consequences of malicious prosecution by Defendants.

619.    The failure of the City to provide adequate training to prevent malicious prosecution of Benshoof's class by police, prosecutors and judges caused the deprivation of Benshoof's rights by Defendants; that is, the City's failure to train police, prosecutors, and judges to prevent malicious prosecution of Benshoof's class by Defendants played a substantial part in bringing about or causing Benshoof irreparable harm and damages for nearly four years.

620.    Even though Andrea Chin, Julie Kline, Sarah MacDonald, and Dan Schilling attended law school and were charged with knowing the law, the malicious prosecution of Benshoof reflected a deliberate or conscious choice to countenance the possibility of a constitutional violation of Benshoof's rights.

621.    The *ultra vires* acts of Chin to deny Benshoof's right to move for the dismissal of SMC No. 656748, absent jurisdiction, was not immunized by the doctrine of absolute judicial immunity.  The *ultra vires* acts of MacDonald and Schilling, absent jurisdiction, were not immunized by the doctrine of absolute prosecutorial immunity.  It is not the prerogative of this Court to *sua sponte* claim immunity for Defendants, as "the burden is on the official claiming immunity to demonstrate his entitlement." *Dennis v. Sparks*, 449 U.S. 24, 29 (1980)

622.    The City dismissed SMC No. 656748 charges with prejudice on September 30, 2024.  "To maintain that Fourth Amendment claim under § 1983, a plaintiff such as [Benshoof] must demonstrate, among other things, that he obtained

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

a *favorable termination* of the underlying criminal prosecution." *Thompson v. Clark*, 142 S. Ct. 1332, 1335 (2022) "To demonstrate a favorable termination of a criminal prosecution for purposes of the Fourth Amendment claim under § 1983 for malicious prosecution, a plaintiff need only show that his prosecution ended without a conviction." (*Id.*)

623.    By reason of the foregoing, Benshoof suffered irreparable harm: physical and psychological injuries, traumatic stress, post-traumatic stress, mental anguish, economic damages including litigation costs, damage to reputation, shame, humiliation, and indignity.  All of said injuries may be permanent.

624.    As a direct, proximate, and foreseeable result of Defendants' acts and failures to act, the City's policy, widespread customs, or practices, the acts as final policymaker by Durkan, and the City's failure to train, Benshoof suffered irreparable harm and damages for which he is entitled to recover.

## SECOND CAUSE OF ACTION
### VIOLATION OF SECOND AMENDMENT

**Right to Keep and Bear Arms**
42 U.S.C. § 1983

_____

625.    Benshoof realleges and incorporates by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

626.    In this second cause of action, defendants named herein include CITY OF SEATTLE ("City") Andrea Chin, Ryan Ellis, Magalie Lerman, Katrina Outland, and Jessica Owen, ("Defendants"), each sued in their individual capacity.

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

627.    The Second Amendment was clearly established during the controversies in question, stating that "the right of the people to keep and bear Arms, shall not be infringed."

628.    Under the City's practice of falsely claiming that Seattle Municipal Court had personal and subject matter jurisdiction over Benshoof, Defendants engaged in parallel or concerted acts to deny Benshoof's right to possess any gun by and through restraining orders OCA223037  and OCA215006806, as well as Benshoof's conditions of release.

629.    Ellis knew that Benshoof had never been legally served, yet refused to report this exonerating information under the City's practices and customs.

### 1) Joint Action Fraud

630.    Cliber suborned Owen's perjury in their extrinsic fraud to obtain the Final Restraining Order to criminalize any contact between Benshoof and A.R.W. "When [Cliber, Ellis, Lerman, Outland, and Owen] conspired to construct a false story about the events that took place...they deliberately set in motion a series of events that they anticipated (or should have anticipated) would lead to [violating Benshoof's Second Amendment rights]. Not only did [Cliber, Ellis, Lerman, Outland, Owen] set the events in motion but, according to the complaint, they voluntarily provided crucial information, false though it was, at every step of the proceeding." *Harris v. Roderick,* 126 F.3d 1189, 1199 (9th Cir. 1997)

631.    "[Cliber's, Ellis's, and Outland's] failure to report the [perjury of Owen] "is the actual cause of [the] injury only if the injury would not have occurred `but for'

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Page 145 of 255

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

that conduct." *White v. Roper*, 901 F.2d 1501, 1505 (9th Cir. 1990) (citing W. Prosser

W. Keeton, *The Law of Torts* [hereinafter "Prosser Keeton"] § 41, at 266 (5th ed.

1984)). "The requisite causal connection can be established not only by some kind of

direct personal participation in the deprivation, but also by setting in motion a series

of acts by others which the actor knows or reasonably should know would cause others

to inflict the constitutional injury." *Johnson v. Duffy,* 588 F.2d 740, 743-44 (9th Cir.

1978)." *Conn v. City of Reno*, 572 F.3d 1047, 1058 (9th Cir. 2009)

632.    Cliber and Owen acted with malicious intent to obtain the Final

Restraining Order through perjury and extrinsic fraud, and they reasonably expected

Benshoof to be prohibited from possessing any weapon.

633.    Chin, Cliber, Ellis, Ladd, Outland, and Owen did ""know[ ] about and

acquiesce[d] in the constitutionally defective conduct as part of a common plan" to

violate Benshoof's Second Amendment rights and "set in motion a series of acts by

others which [the defendants] reasonably should [have] know[n] would cause others

to inflict the constitutional injury" by prohibiting Benshoof from possessing any

weapon without jurisdiction or probable cause. *Johnson v. Duffy*, 588 F.2d 740, 743-

44 (9th Cir. 1978)" *Peck v. Montoya*, No. 20-56413, at *21 (9th Cir. Oct. 18, 2022)

634.    "When [Cliber, Ellis, Lerman, Outland, and Owen] conspired to

construct a false story about the events that took place...they deliberately set in

motion a series of events that they anticipated (or should have anticipated) would

lead to [Benshoof's] arrest, imprisonment, and trial... Not only did [Cliber, Ellis,

Lerman, Outland, and Owen] set the events in motion but, according to the

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

complaint, they voluntarily provided crucial information, false though it was, at every step of the proceeding." *Harris v. Roderick,* 126 F.3d 1189, 1199 (9th Cir. 1997)

635.    Predicated upon Cliber's and Owen's fraud to obtain OCA215006806, Ellis, Lerman, Outland, and Owen set in motion a series of events by which OCA223037 would also deny Benshoof the right to possess weapons.

636.    For private individuals such as Cliber, Lerman, and Owen "to act "under color of" state law for § 1983 purposes does not require that the defendant be an officer of the State. It is enough that he is a willful participant in joint action with the State or its agents. Private persons, jointly engaged with state officials in the challenged action, are acting "under color" of law for purposes of § 1983 actions. *Adickes v. S.H. Kress Co,* 398 U.S. 144, 15 (1970); *United States* v. *Price*, 383 U.S. 787, 794 (1966)." *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980)

## 2)  *Failure to Train*

637.    The widespread practice or custom of City officials such as Chin, Ellis, and Outland, to violate the Second Amendment rights of Benshoof's class without personal or subject matter jurisdiction is prima facie evidence that the City failed to properly train its officials regarding the Second Amendment.

## 3)  *No Immunity*

638.    The doctrines of absolute judicial and prosecutorial immunity do not apply to Chin and Outland because the City never obtained personal or subject matter jurisdiction.

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Page 147 of 255

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

639.     Neither Chin, Ellis, nor Outland can claim qualified immunity due to their knowingly, or with reckless indifference to the law, acting in the absence of personal and subject matter jurisdiction: without jurisdiction, probable cause cannot exist.

640.     As a direct, proximate, and foreseeable result of Defendants' acts and failures to act, the City's widespread customs or practices regarding the Second Amendment rights of Benshoof's class, and the City's failure to train, Benshoof suffered irreparable harm and damages for which he is entitled to recover.

## THIRD CAUSE OF ACTION
### NEGLIGENCE

---

641.     Benshoof realleges and incorporates by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

642.     In this third cause of action, defendants named herein include Andrea Chin, Nathan Cliber, Catherine Cornwall, Ryan Ellis, Magalie Lerman, Katrina Outland, Jessica Owen, Blair Russ, Julie Salle, Michael Tracy, and Sarah Turner, ("Defendants"), each sued in their individual capacity.

### 1) *Rendering Criminal Assistance - Extortion*

643.     It is a class C felony under RCW 9A.76.080 when a person acts to prevent, hinder or delay the apprehension of another person, and in so doing, prevents or **obstructs**, by use of **deception** or threat, anyone from performing an act that might aid in the discovery or apprehension of such person.

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Page 148 of 255

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

644.    Lerman, Owen, Russ, Tracy, and Turner had a duty to refrain, under the terms of the fraudulent Order Restricting Abusive Litigation by Kurt Benshoof ("ORAL"), from rendering criminal assistance to RCW 9A.56.120 Extortion in the first degree, a class B felony.

645.    Between January 16, 2024, and December 31, 2024, Lerman, Owen, Russ, Tracy, and Turner acted to prevent or obstruct, by use of deception or threat, Benshoof from seeking legal redress that might aid in the discovery or apprehension of Lerman, Owen, Russ, Tracy, or Turner, for their extortion of Benshoof. These acts constituted negligence as a matter of law, and such negligence has the same effect as any other act of negligence.

646.    Defendants rendered criminal assistance to the extortion of Benshoof, under color of law of the March 31, 2023, ORAL.

647.    RCW 9A.56.120 states that "(1) A person is guilty of extortion in the first degree if he or she commits extortion by means of a threat as defined in RCW 9A.04.110." RCW 9A.04.110 (28) "Threat" means to communicate, directly or indirectly the intent: (c) to subject the person threatened or any other person to physical confinement or restraint." The ORAL and Contempt Order threatened Benshoof with financial penalties and physical confinement.

648.    In order for Judge Ferguson to possess authority to order Benshoof to pay Cliber, Owen, Russ, Tracy, or Turner expenses under RCW 4.84.185, it was required that Ferguson have jurisdiction, yet Ferguson acted in excess of his jurisdiction under the void *ab initio* ORAL.

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

### 2) *Rendering Criminal Assistance - Kidnapping*

649.    Between January 16, 2024, and December 31, 2024, Chin, Cornwall, Ellis, Lerman, Outland, Owen, Russ, Salle Tracy, and Turner acted to prevent or obstruct, by use of deception or threat, Benshoof from seeking legal redress that might aid in the discovery or apprehension of Lerman or Owen for the kidnapping of A.R.W.  These acts constituted negligence as a matter of law, and such negligence has the same effect as any other act of negligence.

### 3) *Defendant Liability*

650.    The doctrines of absolute judicial immunity and prosecutorial immunity do not protect Chin nor Outland, as they acted in complete absence of jurisdiction.

651.    The doctrine of prosecutorial immunity does not protect Outland, as her negligence involved directing and failing to direct Ellis's investigations, which is an exception to prosecutorial immunity.  "We have held that absolute immunity does not apply when a prosecutor gives advice to police during a criminal investigation… This case, unlike these earlier cases, requires us to consider how immunity applies where a prosecutor is engaged in certain administrative activities." *Kamp v. Goldstein,* 555 U.S. 335, 343 (2009)

652.    On September 3, 2024, when Benshoof demanded that Outland provide the legal authority by which Ellis could violate the requirement to personally serve Benshoof the Final Restraining Order, Outland refused to provide such evidence. "[T]he obligation of the government to disclose exculpatory evidence is an exception to the normal operation of an adversary system of justice, imposed on state prosecutors

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Page 150 of 255

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

a constitutional obligation to turn over such evidence." *Imbler v. Pachtman*, 424 U.S. 409, 446-47 (1976)

653.    Ellis is not entitled to qualified immunity as he knowingly ignored the requirement to personally serve Benshoof the Final Restraining Order and falsely claimed under oath on September 26, 2024, that he was authorized by Washington courts to serve Benshoof by email.  In so doing, Ellis violated the clearly established prohibition of RCW 9A.76.070.

654.    Defendants' acts and failures to act violated the duty imposed upon them by RCW 9A.76.070 and 9A.76.080; therefore, Defendants are liable for damages in their individual capacities.

655.    RCW 9A.76.070 and RCW 9A.76.080 are admissible on the issue of negligence pursuant to the test set forth in Restatement (Second) of Torts section 286 (1965). *See Schooley v. Pinch's Deli Mkt., Inc.,* 134 Wn.2d 468, 474–75, 951 P.2d 749 (1998), as the purpose of the legislative enactment of RCW 9A.76.070 and RCW 9A.76.080 was exclusively or in part to protect the public, including Plaintiffs, from lending criminal assistance to kidnapping and extortion.

656.    RCW 9A.76.070 and RCW 9A.76.080 were enacted to protect the aforementioned interest against the kind of harm which has resulted to Plaintiffs by the acts, and failures to act, by Defendants.

657.    RCW 9A.76.070 and RCW 9A.76.080 were enacted to protect against the hazard of public officials engaging in acts, or failures to act, to lend criminal assistance to the kidnapping of A.R.W. and the extortion of Benshoof.

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Page 151 of 255

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

658.    The negligence was not due to some cause beyond the control of Defendants that ordinary care could not have guarded against.

659.    The violations of RCW 9A.76.070 and RCW 9A.76.080 by Defendants, or those acting under their direction, advice, or counsel, constitutes negligence as a matter of law, and the violations are ongoing.

660.    The violations of RCW 9A.76.070 and RCW 9A.76.080 by Defendants and those acting under their direction, advice, or counsel, was and is the proximate cause of irreparable harm to , as the violations have concealed the whereabouts of A.R.W. from Benshoof and thereby denied Benshoof the ability to contact A.R.W. to petition for redress of Plaintiffs' grievances to arrest the extortion of Benshoof and the kidnapping of A.R.W. *See Ward v. Zeugner,* 64 Wn.2d 570, 392 P.2d 811 (1964)

661.    As there is a prima facie causal connection between the violations of RCW 9A.76.070 and RCW 9A.76.080 and the irreparable harms to Benshoof, and the requirements of Restatement (Second) of torts section 286 (1965) are met, the proximate cause question is for the jury to decide at trial. *See Kness v. Truck Trailer Equip. Co.,* 81 Wn.2d 251, 501 P.2d 285 (1972)

662.    Defendants acted, or failed to act, with callous indifference to the direct, proximate, and foreseeable consequences that a reasonable person would know, or should know, that such conduct would, in a high degree of probability, violate RCW 9A.76.070 or RCW 9A.76.080, and thereby result in substantial harm to Plaintiffs.

663.    By reason of the foregoing, and as a direct, proximate, and foreseeable result of Defendants' negligence, Benshoof suffered,  and continues to suffer,

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

irreparable harm and damages; therefore, Benshoof is entitled to recover compensatory damages, equitable, injunctive, and declaratory relief, court costs, and reasonable fees.

# FOURTH CAUSE OF ACTION
## VIOLATIONS OF FIRST AMENDMENT

### Free Exercise of Religion Retaliation

42 U.S.C. § 1983

---

664.    Benshoof realleges and incorporate by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

665.    In this fourth cause of action, defendants named herein include CITY OF SEATTLE ("City"), KING COUNTY ("County"), Andrea Chin, Nathan Cliber, Gregg Curtis, Nurse Jane Doe, Ryan Ellis, Michael Fox, Tyler Goslin, Pascal Herzer, Jonathan Kiehn, Richard Lima, Magalie Lerman, Sarah MacDonald, Jacob Masterson, Steve Mitchell, Katrina Outland, Jessica Owen, Blair Russ, Daniel Schilling, Nathan Shopay, Michael Tracy, and Sarah Turner, ("Defendants").

666.    At all times relevant herein to this fourth cause of action Defendants were state actors, or private individuals as integral participants in joint action with state actors, acting under color of law, and their conduct was subject to 42 U.S.C. § 1983.

667.    Through the equal protection clause of the Fourteenth Amendment, Defendants were prohibited from violating the clearly established First Amendment

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

prohibition against retaliating against Benshoof's class for the free exercise of religious beliefs.

### 1) Beliefs Regarding Face Coverings

668.    If not but for Benshoof exercising his religious beliefs to not wear a face covering, Chin, Fox, Goslin, Mitchell, Lima, Kiehn, Masterson, MacDonald, and Schilling would not have acted in concert under color of law to retaliate against Benshoof's class by having him arrested, imprisoned and prosecuted.

669.    Chin, Fox, Goslin, Mitchell, Lima, Kiehn, Masterson, MacDonald, and Schilling did ""know[ ] about and acquiesce[d] in the constitutionally defective conduct as part of a common plan" to keep Benshoof out of PCC and "set in motion a series of acts by others which [Chin, Fox, Goslin, Mitchell, Lima, Kiehn, Masterson, MacDonald, and Schilling] reasonably should [have] know[n] would cause others to inflict the constitutional injury" by prosecuting, arresting, and imprisoning Benshoof without jurisdiction or probable cause. *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)" *Peck v. Montoya*, No. 20-56413, at *21 (9th Cir. Oct. 18, 2022)

670.    "When [Chin, Fox, Goslin, Mitchell, Lima, Kiehn, Masterson, MacDonald, and Schilling] conspired to construct a false story about the events that took place...they deliberately set in motion a series of events that they anticipated (or should have anticipated) would lead to [Benshoof's] arrest, imprisonment, and trial... Not only did [Chin, Fox, Goslin, Mitchell, Lima, Kiehn, Masterson, MacDonald, and Schilling] set the events in motion but, according to the complaint, they voluntarily

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

provided crucial information, false though it was, at every step of the proceeding."
*Harris v. Roderick,* 126 F.3d 1189, 1199 (9th Cir. 1997)

671.    For private individuals such as Fox, Goslin, and Mitchell "to act "under color of" state law for § 1983 purposes does not require that the defendant be an officer of the State. It is enough that he is a willful participant in joint action with the State or its agents. Private persons, jointly engaged with state officials in the challenged action, are acting "under color" of law for purposes of § 1983 action. Adickes v. S.H. Kress Co., 398 U.S. 144, 152 (1970); *United States* v. *Price*, 383 U.S. 787, 794 (1966)." *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980)

672.    As the Civil Rights Act of 1964 was clearly established law during the controversies in question which prohibited Defendants from discriminating against Benshoof's class in joint action for entering PCC without a face covering, Fox, Goslin and Mitchell engaged with police in the prohibited action of threatening Benshoof with arrest for entering PCC without a face covering.

> "Private persons, jointly engaged with state officials in the prohibited action, are acting "under color" of law for purposes of the statute. To act "under color" of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents." *United States v. Price*, 383 U.S. 787, 794 (1966)."

### 2) *Parenting Beliefs*

673.    If not but for Benshoof exercising his beliefs regarding A.R.W. being coerced to wear a face covering and be injected with an experimental Pfizer gene therapy treatment for a disease which A.R.W. did not have, Chin, Cliber, Ellis,

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

Lerman, Outland, and Owen would not have acted in concert to set in motion a series of events to retaliate against Benshoof's class.

674.    Chin, Cliber, Ellis, Lerman, Outland, and Owen did ""know[ ] about and acquiesce[d] in the constitutionally defective conduct as part of a common plan" to criminalize all contact between Benshoof and A.R.W. and "set in motion a series of acts by others which [Chin, Cliber, Ellis, Lerman, Outland, and Owen] reasonably should [have] know[n] would cause others to inflict the constitutional injury" by prosecuting, arresting, and imprisoning Benshoof without jurisdiction or probable cause. *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)" *Peck v. Montoya*, No. 20-56413, at *21 (9th Cir. Oct. 18, 2022)

675.    "When [Chin, Cliber, Ellis, Lerman, Outland, and Owen] conspired to construct a false story about the events that took place...they deliberately set in motion a series of events that they anticipated (or should have anticipated) would lead to [Benshoof's] arrest, imprisonment, and trial... Not only did [Chin, Cliber, Ellis, Lerman, Outland, and Owen] set the events in motion but, according to the complaint, they voluntarily provided crucial information, false though it was, at every step of the proceeding." *Harris v. Roderick,* 126 F.3d 1189, 1199 (9th Cir. 1997)

676.    For private individuals such as Cliber, Lerman, and Owen "to act "under color of" state law for § 1983 purposes does not require that the defendant be an officer of the State. It is enough that he is a willful participant in joint action with the State or its agents. Private persons, jointly engaged with state officials in the challenged action, are acting "under color" of law for purposes of § 1983 action.

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

*Adickes v. S.H. Kress Co.*, 398 U.S. 144, 152 (1970); *United States* v. *Price*, 383 U.S. 787, 794 (1966)." *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980)

### 3) Beliefs Regarding Justice

677.    If not but for Benshoof exercising his religious beliefs, Cliber, Lerman, Owen, Russ, Tracy, and Turner would not have acted in concert under the ORAL and Contempt Order to set in motion a series of events to retaliate against Benshoof's class under the County's practice and custom by punishing and threatening to punish Benshoof via the ORAL and Contempt Order for exercising his sincerely held religious beliefs, thereby violating the First Amendment and Benshoof's right to free exercise of religion.

678.    Cliber, Lerman, Owen, Russ, Tracy, and Turner did ""know[ ] about and acquiesce[d] in the constitutionally defective conduct as part of a common plan" to criminalize all contact between Benshoof and A.R.W. and "set in motion a series of acts by others which [Cliber, Lerman, Owen, Russ, Tracy, and Turner] reasonably should [have] know[n] would cause [Judge Ferguson] to inflict the constitutional injury" by financially sanctioning or imprisoning Benshoof under the ORAL. *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)" *Peck v. Montoya*, No. 20-56413, at *21 (9th Cir. Oct. 18, 2022)

679.    "When [Cliber, Lerman, Owen, Russ, Tracy, and Turner] conspired to construct a false story about the events that took place...they deliberately set in motion a series of events that they anticipated (or should have anticipated) would lead to [Judge Ferguson sanctioning or imprisoning Benshoof]... Not only did [Cliber,

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

Lerman, Owen, Russ, Tracy, and Turner set the events in motion but, according to the complaint, they voluntarily provided crucial information, false though it was, at every step of the proceeding." *Harris v. Roderick,* 126 F.3d 1189, 1199 (9th Cir. 1997)

680.    For private individuals such as Cliber, Lerman, Owen, Russ, Tracy, and Turner "to act "under color of" state law for § 1983 purposes does not require that the defendant be an officer of the State. It is enough that he is a willful participant in joint action with the State or its agents. Private persons, jointly engaged with state officials in the challenged action, are acting "under color" of law for purposes of § 1983 action. *Adickes v. S.H. Kress Co.*, 398 U.S. 144, 152 (1970); *United States* v. *Price*, 383 U.S. 787, 794 (1966)." *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980)

### 4)  *DAJD Religious Retaliation*

681.    Curtis, Nurse Doe, and Herzer refused to exercise due care to prevent retaliations against Benshoof's free exercise of his religious beliefs by DAJD personnel and inmates.  "Under the Constitution, 'reasonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendments.' *Cruz v. Beto,* 405, U.S. 319, 322 (1972)" *Pierce v. County of Orange*, 526 F.3d 1190, 1209 (9th Cir. 2008)

682.    By denying Benshoof the right to wear his own consecrated head covering, and forcing Benshoof to wear a Muslim *koufi,* Curtis, and Herzer denied Benshoof his right to exercise his religious freedom without a legitimate government interest under the County's practice.  Benshoof's consecrated head covering was a

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

ready alternative to the *koufi* and the accommodation did not significantly impact guards or other inmates.

683.     By transferring Benshoof to the psych ward, Nurse Doe retaliated against Benshoof for expressing his firmly held belief that face masks increase the chance of contracting bacterial pneumonia.    In so doing, Nurse Doe violated Benshoof's First Amendment right to freely exercise his religious beliefs during pretrial detainment without any legitimate government interest.

### 5)  *Liability*

684.     As the City did not have personal or subject matter jurisdiction, Chin is not protected by absolute judicial immunity and MacDonald, Outland, and Schilling are not protected by prosecutorial immunity.

685.     As the City did not have personal or subject matter jurisdiction, and because Chin, Ellis, Kiehn, Lima, MacDonald, Masterson, Outland, Schilling, and Shopay acted knowingly, they cannot claim qualified immunity.

686.     Defendants' acts and failures to act are prima facie evidence that they possessed a class-based invidious discriminatory animus towards Benshoof.

687.     Benshoof's views and expression related to honesty, due process, equality under the law, and redress of grievances, were motivated by his sincerely held religious beliefs, are ways through which he exercised his religious faith, and constituted a central component of his sincerely held religious beliefs.

688.     This persistently widespread custom or practice of discriminating against Benshoof for the free exercise of his religious beliefs was the moving force

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

behind the retaliations against Benshoof's class for Benshoof's free exercise of his religious beliefs.

689.    Under color of law of the City's and County's practices or widespread customs, Cliber, Fox, Goslin, Lerman, Mitchell, Owen, Russ, Tracy, and Turner acted as integral participants in joint action to discriminate against Benshoof for the free exercise of his religious beliefs, and thereby retaliated against Benshoof's petition for redress of grievances.

690.    The practice and widespread customs to discriminate against Benshoof for the free exercise of his religious beliefs was arbitrary and capricious; therefore, there was no compelling government interest.

691.    The practice and widespread customs to knowingly discriminate against Benshoof for the free exercise of his religious beliefs were neither neutral nor generally applicable but allowed Defendants to target religious expression and activities specifically, and to express hostility to such expression by Benshoof.

692.    The practices and widespread customs were neither neutral nor generally applicable because they represent a system of denying Benshoof's class due process and denying Benshoof the equal protection of the law.

693.    The practices and widespread customs were underinclusive, prohibiting some expression while leaving unprohibited other expression equally harmful to Defendants' asserted interests of upholding the law.

694.    Defendants violated Benshoof's right to free exercise of religion when they acted, or threatened to act, to sanction or imprison Benshoof for exercising his

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

religious beliefs, and they continue to do so by threatening to retaliate or punish Benshoof if he continues to communicate and act according to his beliefs by Benshoof petitioning for injunctive relief, for a writ of habeas corpus, or for bringing claims for the violations of Plaintiffs' rights.

695.    By reason of the foregoing, and as a direct, proximate, and foreseeable result of the widespread practices or customs of the City and County, Defendants' acts and failures to act, Benshoof has suffered, and continues to suffer, irreparable harm and damages; therefore, Benshoof is entitled to recover compensatory damages, equitable, injunctive and declaratory relief, court costs, and reasonable fees.

## FIFTH CAUSE OF ACTION
### VIOLATION OF FIRST AMENDMENT
### Right of Association
42 U.S.C. § 1983

---

696.    Benshoof and A.R.W. ("Plaintiffs") reallege and incorporate by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

697.    In this fifth cause of action, defendants named herein include KING COUNTY ("County"), CITY OF SEATTLE ("City"), Andrea Chin, Nathan Cliber, Ryan Ellis, Magalie Lerman, Katrina Outland, Jessica Owen, Blair Russ, Michael Tracy, and Sarah Turner ("Defendants").

698.    At all times relevant herein to this fifth cause of action Defendants were state actors, or individuals acting as integral participants in joint action with state actors under color of law, and their conduct was subject to 42 U.S.C. § 1983.

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Page 161 of 255

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

699.    Through the Equal Protection Clause of the Fourteenth Amendment, Counterclaim Defendants were prohibited from violating First Amendment prohibitions against restricting or denying Plaintiffs' right of familial association.

### 1) Integral Participation

700.    The right of association was clearly established during the controversies in question and Plaintiff's right of familial association was completely abrogated during the controversies in question.

701.    If not but for their desire to violate Plaintiffs' right of familial association, which included Benshoof acting as assistant of counsel to A.R.W. under Section 35 of the Judiciary Act of 1789, or the power of attorney (Ex. #0079-0083) Defendants would not have acted in concert to set in motion a series of events to retaliate against Benshoof's class.

702.    Defendants did ""know[ ] about and acquiesce[d] in the constitutionally defective conduct as part of a common plan" to criminalize all contact between Benshoof and A.R.W. and "set in motion a series of acts by others which [Defendants] reasonably should [have] know[n] would cause others to inflict the constitutional injury" by prosecuting, arresting, and imprisoning Benshoof without jurisdiction or probable cause to deny Plaintiffs' right of familial association. *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)" *Peck v. Montoya*, No. 20-56413, at *21 (9th Cir. Oct. 18, 2022)

703.    "When [Defendants] conspired to construct a false story about the events that took place...they deliberately set in motion a series of events that they

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

anticipated (or should have anticipated) would lead to [Benshoof's] arrest, imprisonment, and trial... Not only did [Defendants] set the events in motion but, according to the complaint, they voluntarily provided crucial information, false though it was, at every step of the proceeding." *Harris v. Roderick,* 126 F.3d 1189, 1199 (9th Cir. 1997)

704.    For private individuals such as Cliber, Lerman, Owen, Russ, Tracy, and Turner "to act "under color of" state law for § 1983 purposes does not require that the defendant be an officer of the State. It is enough that he is a willful participant in joint action with the State or its agents. Private persons, jointly engaged with state officials in the challenged action, are acting "under color" of law for purposes of § 1983 action. *Adickes v. S.H. Kress Co.*, 398 U.S. 144, 152 (1970); *United States* v. *Price*, 383 U.S. 787, 794 (1966)." *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980)

### 1) *Habeas Corpus – Owen & Russ*

705.    Wash. Const. Art. I §13 states that the "privilege of the writ of habeas corpus *shall not* be suspended, unless incase of rebellion or invasion the public safety requires it."  No rebellion or invasion has occurred during the matters in controversy.

706.    RCW 7.36.040 states that "upon application the writ *shall* be granted without delay."

707.    Upon Russ's pleadings on behalf of Owen, Ferguson acted *ultra vires* to preempt the mandate of RCW 7.36.040, claiming that the void *ab initio* ORAL authorized Ferguson to effectively suspend Wash. Const. Art. I §13 and to deny Benshoof' right to petition for redress pursuant to RCW 7.36.040.

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Page 163 of 255

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

708.    Benshoof's petition for writ of habeas corpus sought to arrest the ongoing kidnapping of A.R.W. and the violation of Plaintiffs' right of familial association.

709.    Under color of law of the void *ab initio* ORAL, Russ acted to violate Plaintiffs' right of familial association and rendered criminal assistance to the kidnapping of A.R.W. by Owen and Lerman by acting to deny Benshoof's Motion for Leave to File Petition for Writ of Habeas Corpus.

### 2)  *City Prosecution*

710.    Without personal or subject matter jurisdiction, Chin, Ellis, Outland, and Owen acted in concert to deny Plaintiffs' right of familial association by arresting, imprisoning and prosecuting Benshoof, predicated upon Cliber's subornation of Owen's perjury and extrinsic fraud to obtain the Final Restraining Order and City restraining order OCA223037.

711.    As the City did not have personal or subject matter jurisdiction, Chin is not protected by absolute judicial immunity and Outland is not protected by prosecutorial immunity.

712.    As the City did not have personal or subject matter jurisdiction, and because Chin, Ellis, and Outland acted knowingly, they are not protected by qualified immunity.

### 3)  *Custom and Practice*

713.    The practice of King County judges to grant Orders Restricting Abusive Litigation against Benshoof's class without statutory authority was the direct,

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

proximate, and foreseeable cause of violations of the First Amendment, and Plaintiffs'

right of familial association.

714.    Defendants, because of their invidious discriminatory animus towards

Benshoof's class, willfully, maliciously, recklessly, and with callous indifference,

acted for the purpose of depriving, either directly or indirectly, Plaintiffs' right of

familial association.

715.    First Amendment violations of Plaintiffs' right of familial association,

even for a brief period of time, constituted irreparable harm. *See Elrod v. Burns,* 427

U.S. 347 (1976)

716.    As a direct, proximate, and foreseeable result of the City's failure to

trains its police, prosecutors, and judges, the widespread practices or customs of the

City, and as a result of the acts of Chin, Cliber, Ellis, Lerman, Outland, Owen, Russ,

Tracy, and Turner, Plaintiffs have suffered cruel and inhumane conditions and

treatment and continue to suffer from such cruel and inhumane acts, irreparable

harm and damages for which they are entitled to recover.

## SIXTH CAUSE OF ACTION
### VIOLATION OF FIRST AMENDMENT

**Right to Petition for Redress of Grievances**
42 U.S.C. § 1983

717.    Kurt Benshoof and A.R.W. ("Plaintiffs" herein this sixth cause of action)

repeat and reallege each of the allegations contained in the foregoing paragraphs of

this Complaint as if fully set forth herein.

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

718.    In this sixth cause of action, defendants named herein include KING COUNTY, Gregg Curtis, Pascal Herzer, Magalie Lerman, Jessica Owen, Sarah Pendleton, Blair Russ, Julie Salle, Michael Tracy, and Sarah Turner ("Defendants").

719.    Through the equal protection clause of the Fourteenth Amendment, Defendants were prohibited from violating the First Amendment prohibitions against discriminating against Benshoof for exercising his right to petition for redress of grievances.

720.    The First Amendment clearly established the prohibition against denying Americans the right to petition for redress of their grievances, and petitioning our courts for redress is the most directly immediate method of petitioning for redress.

721.    Under Section 35 of the Judiciary Act of 1789, Benshoof is authorized to act as "assistance of counsel" to A.R.W.  Furthermore, A.R.W. signed a power-of-attorney requesting that Benshoof litigate his son's claims to arrest the kidnapping of A.R.W. (Ex. #0079-0083)

A.  **King County Superior Court**

722.    KING COUNTY failed to properly train its judges and clerks regarding retaliation against Benshoof's class for exercising his right to petition for redress.

723.    KING COUNTY officials have displayed a practice or widespread practice of retaliating against Benshoof for exercising his right to petition for redress of grievances by denying Benshoof's right to seek redress.

1) *ORAL & Contempt Order*

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Page 166 of 255

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

724.     The Ninth Circuit has held that a sentence is "illegal" if it "violates the Constitution." *United States v. Torres*, 828 F.3d 1113, 1125 (9th Cir. 2016), quoting *United States v. Bibler,* 495 F.3d 621, 624 (9th Cir. 2007).

725.     Cliber, Lerman, Owen, Russ, Tracy, and Turner acted, or threatened to act, to perpetrate retaliatory punishment of Benshoof for exercising his right to seek redress of Plaintiffs' grievances, secured by the First Amendment, by or through the fraudulent ORAL.

726.     Judge Ferguson granted the *ultra vires* ORAL without subject matter jurisdiction pursuant to RCW 26.51.030(1) and without setting a hearing and hearing all relevant testimony, as required by RCW 26.51.040.

727.     As Judge Ferguson did not have jurisdiction to grant the ORAL, the ORAL was a nullity; therefore, Cliber, Lerman, Russ, Owen, Tracy, and Turner were absent any lawful basis to claim that Benshoof violated the void *ab initio* ORAL.

728.     Upon the foregoing, the Contempt Order was void *ab initio,* and the sanctions against Benshoof, obtained by Cliber, Lerman, Russ, Owen, Tracy, and Turner, constituted a violation of RCW 9A.56.120, extortion in the first degree, a class B felony.

729.     The ORAL and Contempt Order were not narrowly tailored; pre-filing restrictions must be narrowly tailored to closely fit the specific vice encountered.

730.     In order for Judge Ferguson to have authority to order Benshoof to pay Cliber, Owen, Russ, Tracy, or Turner expenses under RCW 4.84.185, it was required

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Page 167 of 255

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

that Ferguson have jurisdiction, yet Judge Ferguson was absent jurisdiction under the void *ab initio* ORAL and Contempt Order.

731.    The void *ab initio* ORAL and Contempt Order not only restricted Benshoof's right to petition for redress of Plaintiffs' grievances under color of law, they transmuted Benshoof's right into a privilege which could be suspended at any time by any state or federal judge in the country.

## 2) *Habeas Corpus Petition*

732.    Under the terms of the void *ab initio* ORAL, Benshoof could not file a petition for writ of habeas corpus in any superior court in the state of Washington without seeking leave to file from Ferguson.

733.    Wash. Const. Art. I §13 states that the "privilege of the writ of habeas corpus ***shall not*** be suspended, unless incase of rebellion or invasion the public safety requires it." No rebellion or invasion occurred during the matters in controversy.

734.    RCW 7.36.040 states that "upon application the writ ***shall*** be granted without delay."

735.    Ferguson acted *ultra vires* to preempt the mandate of RCW 7.36.040, claiming that the void *ab initio* ORAL authorized Ferguson to effectively suspend Wash. Const. Art. I §13 and to violate RCW 7.36.040.

736.    Benshoof's petition for writ of habeas corpus sought to arrest the ongoing kidnapping of A.R.W. and the violation of Plaintiffs' right of familial association.

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

737.    Under color of law of the void *ab initio* ORAL, Cliber, Lerman, Owen, Russ, Tracy, and Turner obtained a denial of Benshoof's Motion for Leave to File Petition for Writ of Habeas Corpus, thereby violating Plaintiffs' right to petition for redress to violate Plaintiffs' right of familial association and render criminal assistance to the kidnapping of A.R.W. by Owen and Lerman.

738.    RCW 2.32.050 states that "it is the duty of the clerk of…each county clerk for each of the courts for which he or she is clerk: (4) To *file all papers* delivered to him or her for that purpose in any action or proceeding in the court as directed by court rule or statute." (*emphasis* added)

739.    As a clerk of King County Superior Court, Salle was required to accept file Benshoof's habeas when Benshoof attempted to deliver it to Salle in open court, but Salle refused to accept Benshoof's habeas petition.

740.    RCW 9A.80.010 states that "(1) A public servant is guilty of official misconduct if, with intent to obtain a benefit or to *deprive another person* of a lawful right or privilege: (b) He or she intentionally refrains from performing a duty imposed upon him or her by law."

## 3) *Mandamus Petition*

741.    Wash. Const. art. IV § 6 states, "The superior court shall also have original jurisdiction in all cases and of all proceedings in which jurisdiction shall not have been by law vested exclusively in some other court" and the superior courts "shall always be open, except on nonjudicial days, and their process shall extend to

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

all parts of the state. Said courts and their judges shall have power to issue writs of mandamus…"

742.    RCW 7.16.250 states that "[i]f the answer raises only questions of law, or puts in issue immaterial statements not affecting the substantial rights of the party, the court **must** proceed to hear or fix a day for hearing the argument of the case."

743.    As Defendant Gregory Narver's "answer raised only questions of law" and did not dispute Benshoof's sworn statement of facts, Salle, with the intent to deprive Benshoof of his lawful right or privilege to have his mandamus adjudicated, Salle intentionally refrained from performing a duty imposed upon her by RCW 7.16.250.

744.    Under the widespread custom or practice of King County officials to deny Benshoof's class the right to petition for redress of his grievances, Salle refused to allow Benshoof to note his mandamus petition for hearing.

745.    RCW 9A.80.010 state that "(1) A public servant is guilty of official misconduct if, with intent to obtain a benefit or to **deprive another person** of a lawful right or privilege: (b) He or she intentionally refrains from performing a duty imposed upon him or her by law."

746.    Salle, by refusing to note Benshoof's mandamus petition for hearing, violated the First Amendment prohibition against denying Benshoof's class the right to petition for redress of grievances.

## B. Washington Supreme Court

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

747.    The habeas petition filed by Benshoof, with the Washington Supreme Court during Benshoof's **pretrial** detainment was transmuted into "Personal Restraint Petitions" and transferred to the Washington Court of Appeals under that court's appellate jurisdiction.

748.    RCW 2.32.050 states that "it is the duty of the clerk of the supreme court: (4) To **file all papers** delivered to him or her for that purpose in any action or proceeding in the court as directed by court rule or statute." (**emphasis** added)

749.    Personal Restraint Petitions effectively suspended habeas corpus by relegating Benshof's petition for habeas relief to months-long appellate review.

750.    Pendleton, by refusing to file Benshoof habeas petitions under the original jurisdiction of the Washington Supreme Court, pursuant to Wash. Const. art. IV § 4, violated First Amendment prohibitions against denying Benshoof the right to petition for redress of grievances to forthwith challenge the County's unlawful pretrial detention of Benshoof.

## C. King County DAJD

751.    For nearly five months of imprisonment, Gregg Curtis and Pascal Herzer acted pursuant to the County's practice of denying Benshoof's class access to paper, envelopes, postage ("office supplies").

752.    Without envelopes and postage, Benshoof was unable to file documents in more than twenty municipal, state and federal court cases for the majority of his approximately five-month imprisonment.

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Page 171 of 255

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

753.    Curtis and Herzer knowingly denied Benshoof's class access to office supplies with the intent of preventing Benshoof from litigating any of Benshoof's numerous municipal, state, and federal court cases.  The acts and failures to act by Curtis and Herzer violated the First Amendment prohibition against denying Benshoof's class the ability to petition for redress.

754.    By infringing upon or denying Benshoof right to petition for redress, Plaintiffs have been unable to communicate in any way since January 23, 2023. Without means of communication between Plaintiffs, Benshoof's ability to seek redress of Plaintiffs' grievances has been irreparably harmed.

755.    As a direct, proximate, and foreseeable result of the failure to trains its judges by KING COUNTY, the widespread practice or custom of KING COUNTY to deny Benshoof's right to petition for redress, and as a result of individual defendants' acts and failures to act, Plaintiffs suffered cruel and inhumane conditions and treatment, irreparable harm and damages for which they are entitled to recover.

## SEVENTH CAUSE OF ACTION
VIOLATION OF FIRST AMENDMENT

### Right to Petition for Redress of Grievances
42 U.S.C. § 1983

_____

756.    Brett Fountain ("Fountian") and Urve Maggitti ("Maggitti") repeat and reallege each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

757.    In this seventh cause of action, defendants named herein include KING COUNTY, Catherine Cornwall and Sarah Pendleton ("Defendants").    KING COUNTY is a "person" for the purposes of liability under 42 U.S.C. § 1983.

758.    U.S. Constitution art I § 9 Cl. 2 and Wash. Const. art. I § 13 state that "the privilege of the writ of habeas corpus *shall not* be suspended, unless incase of rebellion or invasion the public safety requires it."  No rebellion or invasion occurred during the matters in controversy.  (*emphasis* added)

759.    28 U.S.C. § 2243 states that a "court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto."

760.    RCW 7.36.040 states that "upon application the writ *shall* be granted *without delay*." (*emphasis* added)

### 1) King County Superior Court

761.    Wash. Const. art. IV § 6 states, "The superior court shall also have original jurisdiction in all cases and of all proceedings in which jurisdiction shall not have been by law vested exclusively in some other court."  As Benshoof was unlawfully held in pretrial detention in King County jail, King County Superior Cour had original jurisdiction to adjudicate Fountain's petition for writ of habeas corpus, filed on behalf of Benshoof.

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

762.    Under the widespread custom or practice of King County officials to deny Benshoof's class the right to petition for redress and the right to seek habeas relief, Cornwall refused to file Fountain's petition for writ of habeas corpus.

763.    RCW 2.32.050 states that "it is the duty of the clerk of…each county clerk for each of the courts for which he or she is clerk: (4) To *file all papers* delivered to him or her for that purpose in any action or proceeding in the court as directed by court rule or statute." (*emphasis* added)

764.    RCW 9A.80.010 states that "(1) A public servant is guilty of official misconduct if, with intent to obtain a benefit or to *deprive another person* of a lawful right or privilege: (b) He or she intentionally refrains from performing a duty imposed upon him or her by law."

765.    Cornwall, by refusing to file Fountain's habeas petition delivered to her office, violated the First Amendment prohibition against denying Fountain the right to petition for redress of grievances.

### 2) *Washington Supreme Court*

766.    RCW 2.32.050 states that "it is the duty of the clerk of the supreme court: (4) To *file all papers* delivered to him or her for that purpose in any action or proceeding in the court as directed by court rule or statute." (*emphasis* added)

767.    Habeas petitions filed by Fountain and Maggitti with the Washington Supreme Court during Benshoof's *pretrial* detainment were all transmuted into "Personal Restraint Petitions" and transferred to the Washington Court of Appeals under that court's appellate jurisdiction.

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

768.    Personal Restraint Petitions effectively suspended habeas corpus by relegating Plaintiffs' petitions for habeas relief to months-long appellate review.

769.    Pendleton, by refusing file Fountain's and Maggitti's habeas petitions under the original jurisdiction of the Washington Supreme Court, pursuant to Wash. Const. art. IV § 4, violated First Amendment prohibitions against denying Fountain and Maggitti the right to petition for redress of grievances to forthwith challenge the unlawful pretrial detention of Benshoof.

770.    As a direct, proximate, and foreseeable result of the failure to trains its clerks by KING COUNTY, the widespread practice or custom of KING COUNTY to deny Benshoof's and his friends the right to petition for redress, and as a result of Cornwall's and Pendleton's acts and failures to act, Brett Fountain and Urve Maggitti suffered irreparable harm and damages for which they are entitled to recover.

# EIGHTH CAUSE OF ACTION
## VIOLATIONS OF FOURTH AMENDMENT

### False Arrest
42 U.S.C. § 1983

_____

771.    Benshoof repeats and realleges each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

772.    In this eighth cause of action, defendants named herein include CITY OF SEATTLE ("City"), Nathan Cliber, Ryan Ellis, Katrina Outland, and Jessica Owen ("Defendants").

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

773.    At all times relevant herein to this seventh cause of action Defendants were state actors, or individuals in joint action with state actors, retaliating against Benshoof under color of law, and their conduct was subject to 42 U.S.C. § 1983.

### 1) Joint Action Fraud

774.    Cliber suborned Owen's perjury in their extrinsic fraud to obtain the Final Restraining Order to criminalize any contact between Benshoof and A.R.W. "When [Cliber] and [Owen] conspired to construct a false story about the events that took place...they deliberately set in motion a series of events that they anticipated (or should have anticipated) would lead to [Benshoof's] arrest, and [ ] trial [ ]. Not only did [Cliber] and [Owen] set the events in motion but, according to the complaint, they voluntarily provided crucial information, false though it was, at every step of the proceeding." *Harris v. Roderick,* 126 F.3d 1189, 1199 (9th Cir. 1997)

775.    "[Cliber's, Ellis's and Outland's] failure to report the [perjury of Owen] "is the actual cause of [the] injury only if the injury would not have occurred `but for' that conduct." *White v. Roper*, 901 F.2d 1501, 1505 (9th Cir. 1990) (citing W. Prosser W. Keeton, *The Law of Torts* [hereinafter "Prosser Keeton"] § 41, at 266 (5th ed. 1984)). "The requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Johnson v. Duffy,* 588 F.2d 740, 743-44 (9th Cir. 1978)." *Conn v. City of Reno*, 572 F.3d 1047, 1058 (9th Cir. 2009)

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

776.    Cliber and Owen acted with malicious intent to obtain the Final Restraining Order through perjury and extrinsic fraud, and they reasonably expected Benshoof to be unlawfully imprisoned when Benshoof communicated with A.R.W.

777.    Cliber, Ellis, Outland, and Owen did ""know[ ] about and acquiesce[d] in the constitutionally defective conduct as part of a common plan" to imprison Benshoof for communicating with A.R.W. and "set in motion a series of acts by others which [the defendants] reasonably should [have] know[n] would cause others to inflict the constitutional injury" by prosecuting, arresting, and imprisoning Benshoof without jurisdiction or probable cause. *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)" *Peck v. Montoya*, No. 20-56413, at *21 (9th Cir. Oct. 18, 2022)

778.    "When [Cliber, Ellis, Outland, and Owen] conspired to construct a false story about the events that took place...they deliberately set in motion a series of events that they anticipated (or should have anticipated) would lead to [Benshoof's] arrest, imprisonment, and trial... Not only did [Cliber, Ellis, Outland, and Owen] set the events in motion but, according to the complaint, they voluntarily provided crucial information, false though it was, at every step of the proceeding." *Harris v. Roderick,* 126 F.3d 1189, 1199 (9th Cir. 1997)

779.    For private individuals such as Cliber and Owen "to act "under color of" state law for § 1983 purposes does not require that the defendant be an officer of the State. It is enough that he is a willful participant in joint action with the State or its agents. Private persons, jointly engaged with state officials in the challenged action, are acting "under color" of law for purposes of § 1983 actions. *Adickes* v. *S. H. Kress*

*Co.*, 398 U.S. 144, 152 (1970); *United States* v. *Price*, 383 U.S. 787, 794 (1966)." *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980)

### 2) SMC Arrest Warrant Void

780.    Just as Judge Willie Gregory was without evidence of personal or subject matter jurisdiction on November 16, 2022, Judge Faye Chess was similarly without evidence of jurisdiction on March 14, 2023, to issue the $250,000 warrant for Benshoof's arrest.    A magistrate "should not accept without question the complainant's mere conclusion that the person whose arrest is sought has committed a crime." *Giordenello v. United States,* 357 U.S. 480, 486 (1958)

781.    RCW 7.105.050(1)(a)(d) proscribed Seattle Municipal Court from claiming jurisdiction to prosecute Benshoof for an alleged restraining order violation. Without jurisdiction, there can be no probable cause to prosecute.    "An arrest warrant issued without the magistrate being given such particular information is void. *Whiteley v. Warden, supra; Aguilar v. Texas, supra* at 112 n. 3; *Giordenello v. United States, supra* at 485-86; *Bacon v. United States, supra* at 943." *State v. Klinker*, 85 Wn. 2d 509, 517 (Wash. 1975)

782.    Judge Chess acted as a rubber stamp for Outland's fraud upon the court. "The Fourth Amendment warrant clause requires more than the signature of a judicial officer at the bottom of the arrest order.    It mandates that the magistrate perform his 'neutral and detached' function and not serve merely as a rubber stamp…" *Aguilar v. Texas,* 378 U.S. 108, 111 (1964)

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

783.    The arrest warrant obtained by Outland without jurisdiction was predicated upon Ellis filing a fraudulent proof of service (Ex. #0326) for the fraudulent Final Restraining Order OCA215006806, obtained through Cliber's subornation of Owen's perjury and extrinsic fraud: an egregious violation of the Fruits of the Poisonous Tree Doctrine. Cliber and Owen engaged in joint action under the City's color of law practices.

784.    Outland herself suborned the perjury of Owen contained in Owen's March 13, 2023, declaration.

> "[A]n officer who seeks a [ ] warrant by submitting a complaint and supporting affidavit to a judge is not entitled to immunity unless the officer has an objectively reasonable basis for believing that the facts alleged in his affidavit are sufficient to establish probable cause."
> *Malley v. Briggs,* 475 U.S. 335, 339 (1986)

785.    As no evidence before any court has shown that any person effectuated legal notice to Benshoof pursuant to RCW 26.09.300(2)(a-d) or RCW 7.105.465, Ellis was without probable cause to believe that $250,000 arrest warrant #990435958 was valid on its face.

786.    Judge Chess was required to act within the limited jurisdiction of the statutory authority prescribed to Seattle Municipal Court, yet she did not question Outland's application for an arrest warrant. "A complaint under oath alleging that the person to be arrested has committed a crime is not enough to establish probable cause. *See Whiteley v. Warden,* 401 U.S. 560, at 563 (1971); *Giordenello v. United States*, 357 U.S. 480, at 481 (1958) Even an information sworn out by a prosecutor is an inadequate substitute for independent judicial judgment based on evidence

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

establishing probable cause. *Gerstein v. Pugh*, 420 U.S. 103 43 L.Ed.2d. 54, 95 S.Ct. 854 (1975)" *State v. Klinker*, 85 Wn. 2d 509, 517-18 (Wash. 1975)

### 3) *False Arrest*

787.    Owen, Outland, and Chess acted in concert to fabricate a false pretense by which Ellis would effectuate the unlawful arrest and imprisonment of Benshoof. "The warrant requirement is designed to prevent unjustified intrusions on liberty by officers and prosecutors interested and involved in the adversary process of law enforcement (*Coolidge v. New Hampshire*, 403 U.S. 443, 29 L.Ed.2d. 564, 91 S.Ct. 2022 (1971)), and the purpose of the requirement that particular facts be presented to the judicial officer is to retain this safeguard in fact as well as theory. *Gerstein v. Pugh, supra* at 112;" *State v. Klinker*, 85 Wn. 2d 509, 518 (Wash. 1975)

788.    Without proof that any person had given Benshoof legal notice of the Final Restraining Order pursuant to RCW 26.09.300(2)(a-d), Chess and Outland were absent authority to "subject [Benshoof] to the penalties set forth in [RCW 7.105]."

789.    Upon the foregoing, Ellis did not legally serve Benshoof the final orders in KCSC No. 21-5-00680-6 on November 15, 2022, including protection order OCA215006806.  Seattle Municipal Court did not have personal or subject matter jurisdiction to issue a warrant for Benshoof's arrest.  Therefore, the absence of probable cause and the Fourth Amendment prohibited Ellis from seizing Benshoof on July 3, 2024, and from imprisoning Benshoof in King County jail.

"The Fourth Amendment prohibits "unreasonable searches and seizures." And a Fourth Amendment claim based on an unreasonable seizure has two indispensable elements: (i) there must have been a "seizure," *i.e.* , an arrest or

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

some other use of " 'physical force' or a 'show of authority' that 'in some way restrain[s] the liberty' of [a] person," *Torres* v. *Madrid* , 592 U.S. ——, —— , 141 S.Ct. 989, 995, 209 L.Ed.2d 190 (2021), and (ii) the seizure must have been "unreasonable," which means, in the case of a full-blown arrest, that the officers making the arrest must have lacked probable cause. *District of Columbia* v. *Wesby* , 583 U.S. ——, ——, 138 S.Ct. 577, 585-586, 199 L.Ed.2d 453 (2018)."

*Thompson v. Clark*, 142 S. Ct. 1332, 1341-42 (2022)

790.    While Benshoof believes that Ellis acted with malicious intent to silence Benshoof indefinitely inside jail in retaliation for Benshoof's federal lawsuits against SPD officers, "[a]n unreasonable seizure claim also does not require "malice." The Court has "almost uniformly rejected invitations to probe subjective intent" in Fourth Amendment cases. *Ashcroft v. al-Kidd* , 563 U.S. 731, 737, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011)." *Thompson v. Clark*, 142 S. Ct. 1332, 1342 (2022)

791.    The outcome of the City's prosecution in SMC No. 671384 is irrelevant, as "the validity of an unreasonable-seizure claim is not dependent on the outcome of any prosecution that happens to follow a seizure. A person who is arrested without probable cause but then convicted based on evidence discovered after the arrest is not barred from recovering simply because he or she cannot show a favorable termination to the proceeding. See *Wallace v. Kato* , 549 U.S. 384, 389–392, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007) ; cf. *Heck v. Humphrey* , 512 U.S. 477, 487, n. 7, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) (a person may bring "a suit for damages attributable to an allegedly unreasonable search" even if he or she was convicted)." *Thompson v. Clark*, 142 S. Ct. 1332, 1342-43 (2022)

### 4)  *No Immunity*

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

792.     Cliber and Owen are liable under § 1983 for the joint action participation in the City's aforesaid practices to violate Benshoof's rights under color of law.

793.     Ellis and Outland are not entitled to qualified immunity according to the 9th Circuit's "two-step inquiry. *Tolan v. Cotton* , 572 U.S. 650, 655, 134 S.Ct. 1861, 188 L.Ed.2d 895 (2014) (per curiam)…[T]he facts, viewed in the light most favorable to the plaintiff, demonstrate that [Ellis and Outland] violated a constitutional right. *Id.* at 655–56, 134 S.Ct. 1861…[and] that right was "clearly established" at the time of the alleged constitutional violation. *Id." Peck v. Montoya*, 51 F.4th 877, 887 (9th Cir. 2022)

794.     While courts have held that prosecutors are absolutely immune from Section 1983 actions when performing functions "intimately associated with the **judicial phase** of the criminal process." *Imbler v. Pachtman,* 424 U.S. 409, 430 (1976). (Ex. #0531 ¶2) (emphasis added) *Imbler* and related cases state that—even if the City had jurisdiction—there are  established exceptions to the general rule that prosecutors are absolutely immune when the prosecutor: (1) acts as a complaining witness to obtain a warrant; (2) participates in the investigative phase of the prosecution; or (3) aids in the preparation of a witness affidavit.   Furthermore, the conspiracy by Outland and Chin to deny Benshoof access to exculpatory evidence presents yet another exception to a defense of absolute immunity.

"In the years since *Imbler,* we have held that absolute immunity applies when a prosecutor prepares to initiate a judicial proceeding, *Burns, supra,* at 492, 111 S.Ct. 1934, or appears in court to present evidence in support of a search warrant application, [*Kalina v. Fletcher*, 522 U.S. 118, at126 (1997)]. We have held that absolute immunity does not apply when a prosecutor gives

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Page 182 of 255

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

advice to police during a criminal investigation, see *Burns, supra,* at 496, 111 S.Ct. 1934, when the prosecutor makes statements to the press, *Buckley v. Fitzsimmons,* 509 U.S. 259, 277, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993), or when a prosecutor acts as a complaining witness in support of a warrant application, *Kalina, supra,* at 132, 118 S.Ct. 502 (SCALIA, J., concurring). This case, unlike these earlier cases, requires us to consider how immunity applies where a prosecutor is engaged in certain administrative activities."
<u>Kamp v. Goldstein,</u> 555 U.S. 335, 343 (2009)

795.    On or around September 25, 2024, Ellis admitted at trial that he had been listening to Benshoof's telephone calls from jail.  At trial, Outland had Ellis read aloud the transcription of one of Benshoof's telephone calls.  Benshoof's telephone calls repeatedly discussed Owen's perjury, Outland's conspiracy to render criminal assistance to Owen's kidnapping of A.R.W., and Ellis's facially invalid search warrant.  Outland selectively advised Ellis on which of Benshoof's phone calls to transcribe for trial to hide evidence from the jury which would expose the City's conspiracy to maliciously prosecute Benshoof under color of law.  "The function of a criminal trial is to discover the truth, and to that end it is the prosecutor's duty to reveal pertinent information, not to hide it. *Brady v. Maryland, supra,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)." *Hilliard v. Williams*, 516 F.2d 1344, 1350 (6th Cir. 1975)

796.    **Affidavit Preparation.**  Benshoof has reason to believe and does believe that Outland assisted in the writing of the declaration signed by Owen on March 13, 2023, which was presented as evidence to claim probable cause before Judge Chess on March 14, 2023.  Having lived with Owen for many years, and read numerous declarations previously written by Owen, Benshoof is familiar with Owen's

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

writing style and legal acumen and is certain that Outland edited or was a ghost-writer of significant portions of Owen's twenty-six-page declaration. (Ex. #0218-0243)

797.  **Exculpatory Evidence.**  Outland and Chin, by conspiring to prevent Benshoof from exercising his right to call any witnesses on his behalf, violated the government's obligation to disclose exculpatory evidence.  "The Court has in the past, having due regard for the fact that the obligation of the government to disclose exculpatory evidence is an exception to the normal operation of an adversary system of justice, imposed on state prosecutors a constitutional obligation to turn over such evidence." *Imbler v. Pachtman*, 424 U.S. 409, 446-47 (1976)

> "The general rule is that malicious prosecution does not constitute a deprivation of life, liberty or property without due process of law and, therefore, is not cognizable under 42 U.S.C. § 1983. *Paskaly v. Seale,* 506 F.2d 1209 (9th Cir. 1974). However, an exception to this rule exists for malicious prosecutions conducted with the intent of denying a person equal protection or which otherwise subject a person to a denial of constitutional rights. *Norton v. Liddel*, 620 F.2d 1375 (10th Cir. 1980); *Beker Phosphate Corporation v. Muirhead,*581 F.2d 1187 (5th Cir. 1978). In this case an interest in liberty was impaired under circumstances in which appellant's allegations strongly suggest that a post-deprivation hearing."
> <u>*Cline v. Brusett*</u>, 661 F.2d 108, 112 (9th Cir. 1981)

798.  Chin and Outland denied Benshoof's right to a *Franks* hearing to prevent Benshoof from exposing Ellis's facially invalid search warrant.

> "We have held that malicious prosecution generally does not constitute a deprivation of liberty without due process of law and is not a federal constitutional tort if process is available within the state judicial systems to remedy such wrongs. *Cline v. Brusett,*661 F.2d 108, 112 (9th Cir. 1981). But, we have also held that an exception exists to the general rule when a malicious prosecution is conducted with the intent to deprive a person of equal protection of the laws or is otherwise intended to subject a person to a denial of constitutional rights. *Id.* In *Cline,* we reversed the dismissal of Cline's

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

complaint which had alleged facts in many important respects similar to those in the case at bar.
*Bretz v. Kelman,* 773 F.2d 1026, 1031 (9th Cir. 1985)

799.    As a direct, proximate, and foreseeable result of the failure to trains its police, prosecutors, and judges by CITY OF SEATTLE, the widespread practices of CITY OF SEATTLE against Benshoof's class, and as a result of individual defendants' joint acts violating the Fourth Amendment, Benshoof was unlawfully arrested and imprisoned, suffered cruel and inhumane conditions and treatment, causing irreparable harm and damages to Benshoof for which he is entitled to recover.

# NINTH CAUSE OF ACTION
## VIOLATION OF FOURTH AMENDMENT

### General Search Warrant
42 U.S.C. § 1983

_____

800.    Benshoof repeats and realleges each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

801.    In this ninth cause of action, defendants named herein include CITY OF SEATTLE ("City"), Anthony Belgard, Donovan Broussard, John Duus, Nicholas Evans, Earnest Jensen, Spencer Kurz, Adam Losleben, Yves Luc, Grant Mayer, Johnathan Musseau, Brehon Ness, Liliya Nesteruk, Stephen Okruhlica, Dwayne Pirak, Brian Rees, Ty Selfridge, Steven Stone, Trevor Tyler, Michael Virgilio, Andrew West, Chad Zentner, (collectively "SWAT officers"), Ryan Ellis, Magalie Lerman, and Jessica Owen, (all foregoing people collectively "Defendants"). CITY OF SEATTLE is a "person" for the purposes of liability under 42 U.S.C. § 1983.

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

### 1) Application for Search Warrant

802.    Ellis lacked probable cause to file the Application for Search Warrant ("Application") to authorize the raid of Benshoof's home church, not to search for evidence of crimes, but to arrest and imprison Benshoof as retaliation for the lawsuits Benshoof was litigating which exposed widespread corruption.  The flimsy pretext for these machinations was Outland's malicious prosecutions of Benshoof, prosecutions predicated upon Cliber's subornation of Owen's perjury, and Lerman's false and misleading statements to police.  However, Ellis cannot feign ignorance of the fact that—even if the Final Restraining Order was not fraudulent and void *ab initio*— Ellis knew that he had never legally served Benshoof the restraining order that Ellis and Outland alleged Benshoof had violated.

803.    The Search Warrant was predicated upon Ellis filing a fraudulent proof of service (Ex. #0326) for the fraudulent Final Restraining Order OCA215006806, obtained through Cliber's subornation of Owen's perjury and extrinsic fraud: an egregious violation of the Fruits of the Poisonous Tree Doctrine.  Owen engaged in joint action under the City's color of law practices.

804.    On top of the foregoing fraud, the search warrant was facially invalid: it violated the particularity requirement of the Fourth Amendment, which was clearly established.  ""`the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion'" stands "`[a]t the very core' of the Fourth Amendment," *Kyllo v. United States,* 533 U. S. 27, 31 (2001) (quoting *Silverman v. United States,* 365 U.S. 505, 511 (1961))" *Groh v. Ramirez,* 650 U.S. 551, 559 (2004)

805.    The items set forth in the Application were not set forth in the Search Warrant itself.  "But unless the particular items described in the affidavit are also set forth in the warrant itself (or at least incorporated by reference, and the affidavit present at the search), there can be no written assurance that the Magistrate actually found probable cause to search for, and to seize, every item mentioned in the affidavit." *Groh v. Ramirez*, 540 U.S. 551, 560 (2004)

806.    Owen was in direct communication with Ellis and the SPD on the morning of July 3, 2024, during the execution of the unlawful search of Benshoof's home church.

807.    Ellis, Lerman, and Owen did ""know[ ] about and acquiesce[d] in the constitutionally defective conduct as part of a common plan" to arrest and imprison Benshoof, effectively evicting Benshoof from his home, and "set in motion a series of acts by others which [the defendants] reasonably should [have] know[n] would cause others to inflict the constitutional injury" by prosecuting, arresting, and imprisoning Benshoof without jurisdiction or probable cause. *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)" *Peck v. Montoya*, No. 20-56413, at *21 (9th Cir. Oct. 18, 2022)

808.    "When [Ellis, Lerman, and Owen] conspired to construct a false story about the events that took place...they deliberately set in motion a series of events that they anticipated (or should have anticipated) would lead to [Benshoof's] arrest, imprisonment, and trial... Not only did [Ellis, Lerman, and Owen] set the events in motion but, according to the complaint, they voluntarily provided crucial information,

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

false though it was, at every step of the proceeding." *Harris v. Roderick,* 126 F.3d 1189, 1199 (9th Cir. 1997)

809.    For private individuals such as Owen "to act "under color of" state law for § 1983 purposes does not require that the defendant be an officer of the State. It is enough that he is a willful participant in joint action with the State or its agents. Private persons, jointly engaged with state officials in the challenged action, are acting "under color" of law for purposes of § 1983 actions. *Adickes* v. *S. H. Kress Co.*, 398 U.S. 144, 152 (1970); *United States* v. *Price*, 383 U.S. 787, 794 (1966)." *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980)

### 2) *Facially Invalid Search Warrant*

810.    The Search Warrant lacked particularity.  "We have clearly stated that the presumptive rule against warrantless searches applies with equal force to searches whose only defect is a lack of particularity in the warrant." *Groh v. Ramirez*, 540 U.S. 551, 559 (2004)

811.    Absent particularity, the Search Warrant violated the Fourth Amendment.  In *Massachusetts v. Sheppard,* 468 U.S. 981 (1984*)* the U.S. Supreme Court explained that "[t]he uniformly applied rule is that a search conducted pursuant to a warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional.  *Stanford v. Texas,* 379 U.S. 476 (1965); *United States v. Cardwell,* 680 F.2d 75, 77-78 (CA9 1982); *United States v. Crozier,* 674 F.2d 1293, 1299 (CA9 1982)." *Groh v. Ramirez,* 540 U.S. 551, 559 (2004)

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

812.    After Ellis applied for the Search Warrant on June 26, 2024, he oversaw its execution on July 3, 2024.  "It is incumbent on the officer executing a search warrant to ensure the search is lawfully authorized and lawfully conducted. Because petitioner did not have in his possession a warrant particularly describing the things he intended to seize, proceeding with the search was clearly "unreasonable" under the Fourth Amendment." *Groh v. Ramirez*, 540 U.S. 551, 563 (2004)

### 3) *Integral Participants*

813.    Neither Ellis, nor the SPD sergeant, nor the SPD lieutenant, nor the SWAT officers who attended the planning meeting and executed the search could reasonably believe that the warrant was facially valid.  "Given that the particularity requirement is set forth in the text of the Constitution, no reasonable officer could believe that a warrant that plainly did not comply with that requirement was valid. See *Harlow* v. *Fitzgerald*, 457 U.S. 800, 818-819 (1982)." *Groh v. Ramirez*, 540 U.S. 551, 563 (2004)

814.    "Moreover, because [Ellis] himself prepared the invalid warrant, he may not argue that he reasonably relied on the Magistrate's assurance that the warrant contained an adequate description of the things to be seized and was therefore valid. Cf. *Sheppard,* 468 U.S. at 989-990." *Groh v. Ramirez*, 540 U.S. 551, 564 (2004)

815.    The SWAT officers did ""know[ ] about and acquiesce[d] in the constitutionally defective conduct as part of a common plan" to execute a general warrant and "set in motion a series of acts by others which [the defendants] reasonably should [have] know[n] would cause others to inflict the constitutional

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

injury" by raiding Benshoof's home without personal or subject matter jurisdiction, nor a valid search warrant. *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)" *Peck v. Montoya*, No. 20-56413, at *21 (9th Cir. Oct. 18, 2022)

### 4) *No Qualified Immunity*

816.    Neither Ellis nor any of the SWAT officers can claim qualified immunity. "No reasonable officer could claim to be unaware of the basic rule, well established by our cases, that, absent consent or exigency, a warrantless search of the home is presumptively unconstitutional. See *Payton*, 445 U.S., at 586-588. Indeed, as we noted nearly 20 years ago in *Sheppard:* "The uniformly applied rule is that a search conducted pursuant to a warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional." 468 U.S., at 998, n. 5." *Groh v. Ramirez*, 540 U.S. 551, 564-65 (2004)

817.    As a direct, proximate, and foreseeable result Defendants' violations of the Fourth Amendment's particularity requirement prohibiting general warrants, Benshoof suffered, and continues to suffer, irreparable harm and damages for which he is entitled to recover.

## TENTH CAUSE OF ACTION
### VIOLATION OF FOURTH AMENDMENT

#### Excessive Use of Force
42 U.S.C. § 1983

_____

818.    Benshoof repeats and realleges each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

819.     In this tenth cause of action, defendants named herein include CITY OF SEATTLE ("City"), Anthony Belgard, Donovan Broussard, John Duus, Nicholas Evans, Ernest Jensen Spencer Kurz, , Adam Losleben, Yves Luc, Grant Mayer, Johnathan Musseau, Brehon Ness, Liliya Nesteruk, Stephen Okruhlica, Dwayne Pirak, Brian Rees, Ty Selfridge, Steven Stone, Trevor Tyler, Michael Virgilio, Andrew West, Chad Zentner, (collectively "SWAT officers") Ryan Ellis, Magalie Lerman, Katrina Outland, Jessica Owen, (all foregoing people collectively "Defendants").

820.     **Constitutional Violation.**  ""Taken in the light most favorable to the party asserting the injury . . . the facts alleged show [each SWAT] officer's conduct violated a constitutional right." *Saucier,* 121 S.Ct. at 2156." *Headwaters Forest Defense v. Cty. of Humboldt*, 276 F.3d 1125, 1129 (9th Cir. 2002)

821.     **Clearly Established.**  The Fourth Amendment prohibition against excessive force and deploying *Oleoresin Capsicum* ("OC" aka "pepper spray") against pacifists was clearly established by federal case law prior to SWAT officers shooting out the windows on Benshoof's home.  Furthermore, as the search warrant was facially invalid, ***any*** use of force was prohibited.  "[I]t would be clear to a reasonable officer that using pepper spray against the protestors was excessive under the circumstances. The Fourth Amendment permits law enforcement officers to use only such force to effect an arrest as is "objectively reasonable" under the circumstances. *Graham v. Connor,* 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)" *Headwaters* at 1130

### 1)  *Joint Action*

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

822.     Despite Lerman and Owen repeatedly making false and misleading statement to SPD that Benshoof was a violent man with weapons, Ellis and other SPD officers had repeatedly been given proof from Benshoof that Lerman and Owen had committed perjury and made false and misleading statements to public officials for nearly three years.

823.     Lerman and Owen knowingly acted under the City's practice of pretending Lerman and Owen weren't lying in order to retaliate against Benshoof for his honest efforts to report the felony law violations of Lerman, Owen, and City officials, crimes which SPD officers were required to report.

### 2)  *No Probable Cause*

824.     Ellis and SWAT officers were without probable cause to believe that Benshoof posed any threat.  Benshoof had repeatedly stated under penalty of perjury on documents provided to Ellis that he did not possess any weapons and had repeatedly stated under penalty of perjury in numerous City, County, and federal court proceedings that he is an absolute pacifist.

825.     Despite repeatedly being unlawfully arrested by SPD and thrown to the ground over the last four years for trying to buy groceries, Benshoof had never once cursed or yelled at any officer in response, let alone threatened violence.  In other words, as Ellis had in his possession Owen's copy of the front door key to Benshoof's home, Ellis could have executed the search warrant *by himself* without any risk of harm and without unnecessarily causing $80,000 to $100,000 in estimated damages to Benshoof's home church.

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

826.    Ellis <u>knew</u> he lacked <u>personal</u> jurisdiction, <u>subject</u> matter jurisdiction, and probable cause to portray Benshoof as a violent threat to justify the SWAT Dynamic or High-Risk Seach Warrant Procedure, pursuant to SPD Policy Manual 6.185-PRO-2.  Ellis did so to facilitate excessive use of force.

### 3) Facially Invalid Warrant

827.    The Search Warrant <u>lacked particularity</u> and was therefore facially invalid, violating the Fourth Amendment.  Without a valid search warrant, entering Benshoof's home, shooting out the windows, blowing off the basement door, and covering all of Benshoof's personal belongings with OC spray were all acts taken in excess of the SWAT officers' authority.

> The Fourth Amendment permits law enforcement officers to use only such force to effect an arrest as is "objectively reasonable" under the circumstances. *Graham v. Connor,* 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (citations omitted). "[T]he essence of the *Graham* objective reasonableness analysis" is that "`[t]he force which was applied must be balanced against the *need* for that force: it is the need for force which is at the heart of the *Graham* factors.'" *Liston v. County of Riverside,* 120 F.3d 965, 976 (9th Cir. 1997) (quoting *Alexander v. City and County of San Francisco,* 29 F.3d 1355, 1367 (9th Cir. 1994))
> *Headwaters v. Cty. of Humboldt*, 276 F.3d 1125, 1130 (9th Cir. 2002)

828.    No "objectively reasonable" use of force exists pursuant to a facially invalid search warrant, without probably cause, and in the complete absence of jurisdiction.

### 4) Integral Participant Doctrine

829.    Cliber suborned Owen's perjury in their extrinsic fraud to obtain the Final Restraining Order to criminalize any contact between Benshoof and A.R.W.

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

"When [Ellis, Lerman, Outland, and Owen] conspired to construct a false story about the events that took place...they deliberately set in motion a series of events that they anticipated (or should have anticipated) would lead to [Benshoof's] arrest, and [ ] trial [ ]. Not only did [Ellis, Outland, and Owen] set the events in motion but, according to the complaint, they voluntarily provided crucial information, false though it was, at every step of the proceeding." *Harris v. Roderick,* 126 F.3d 1189, 1199 (9th Cir. 1997)

830.    "[Ellis's and Outland's] failure to report the [perjury of Owen] "is the actual cause of [the] injury only if the injury would not have occurred `but for' that conduct." *White v. Roper*, 901 F.2d 1501, 1505 (9th Cir. 1990) (citing W. Prosser W. Keeton, *The Law of Torts* [hereinafter "Prosser Keeton"] § 41, at 266 (5th ed. 1984)). "The requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Johnson v. Duffy,* 588 F.2d 740, 743-44 (9th Cir. 1978)." *Conn v. City of Reno*, 572 F.3d 1047, 1058 (9th Cir. 2009)

831.    Owen acted with malicious intent to obtain the Final Restraining Order through perjury and extrinsic fraud, and they reasonably expected Benshoof to be unlawfully imprisoned when Benshoof communicated with A.R.W.

832.    Ellis, Lerman, Outland, and Owen did ""know[ ] about and acquiesce[d] in the constitutionally defective conduct as part of a common plan" to falsely arrest, maliciously prosecute, and unlawfully imprison Benshoof and "set in motion a series of acts by others which [the defendants] reasonably should [have] know[n] would

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

cause others to inflict the constitutional injury" by using excessive force against Benshoof's home and personal property without jurisdiction, a valid search warrant, or probable cause. *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)" *Peck v. Montoya*, No. 20-56413, at *21 (9th Cir. Oct. 18, 2022)

833.    "When [Ellis, Lerman, Outland, and Owen] conspired to construct a false story about the events that took place...they deliberately set in motion a series of events that they anticipated (or should have anticipated) would lead to [excessive use of force at Benshoof's home]. Not only did [Ellis, Lerman, Outland, and Owen] set the events in motion but, according to the complaint, they voluntarily provided crucial information, false though it was, at every step of the proceeding." *Harris v. Roderick,* 126 F.3d 1189, 1199 (9th Cir. 1997)

834.    For private individuals such as Lerman and Owen "to act "under color of" state law for § 1983 purposes does not require that the defendant be an officer of the State. It is enough that he is a willful participant in joint action with the State or its agents. Private persons, jointly engaged with state officials in the challenged action, are acting "under color" of law for purposes of § 1983 actions. *Adickes* v. *S. H. Kress Co.*, 398 U.S. 144, 152 (1970); *United States* v. *Price*, 383 U.S. 787, 794 (1966)." *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980)

835.    "Following the Fifth Circuit's analysis in *Melear v. Spears,* 862 F.2d 1177 (5th Cir. 1989), we required "integral participation" by each officer as a predicate to liability. *See Chuman,* 76 F.3d at 294." *Boyd v. Benton County*, 374 F.3d 773, 780 (9th Cir. 2004)

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

836.    Nearly two dozen SWAT officers were positioned on all four sides of Benshoof's home, providing armed backup to the SWAT officers who entered Benshoof's home, acting as "integral participants" to the excessive use of force, "and were therefore participants rather than mere bystanders." *Boyd v. Benton County*, 374 F.3d 773, 780 (9th Cir. 2004) An officer's ""integral participation" does not require that each officer's actions themselves rise to the level of a constitutional violation…an officer who does not enter an apartment, but stands at the door, armed with his gun, while other officers conduct the search, can nevertheless be a "full, active participant" in the search. *See Melear,*862 F.2d at 1186." *Id.*

### 5) *No Qualified Immunity*

837.    SWAT officers are liable under the integral participant doctrine for the use of OC cannisters at Benshoof's home church on July 3, 2024. "In order to decide whether state officers are entitled to qualified immunity, *Saucier* instructs that we must first determine whether, "[t]aken in the light most favorable to the party asserting the injury . . . the facts alleged show the officer's conduct violated a constitutional right." *Saucier,* 121 S.Ct. at 2156. "[I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established . . . in light of the specific context of the case" such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* (citing *Wilson v. Layne,* 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d. 818 (1999))." *Headwaters v. Cty. of Humboldt,* 276 F.3d 1125, 1129, (9th Cir. 2002)

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

838.    Benshoof's right to be secure in his home from SWAT officers' use of excessive force was clearly established . . . in light of the specific context of the case" such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Headwaters*, at 1129.

> "The law regarding a police officer's use of force against a passive individual was sufficiently clear at the time of the events at issue in this case that the defendants cannot claim qualified immunity on the ground that they made a reasonable mistake of law. *See Saucier,*121 S.Ct. at 2158."
> *Headwaters v. Cty. of Humboldt*, 276 F.3d 1125, 1131 (9th Cir. 2002)

839.    "The facts reflect that: (1) the pepper spray was unnecessary to subdue, remove, or arrest [Benshoof];" (2) Benshoof was "sitting peacefully, was "easily moved by the police, and did not threaten or harm the officers. In sum, it would be clear to a reasonable officer that it was excessive to use pepper spray against [Benshoof] under these circumstances." *Headwaters* at1130.

840.    As a direct, proximate, and foreseeable result of the acts by Defendants to use excessive force in violation of the Fourth Amendment, the City's practices and widespread customs regarding Benshoof's class, and the City's failure to train its police officers regarding the excessive use of force, Benshoof suffered, and continues to suffer, irreparable harm and damages for which he is entitled to recover.

## ELEVENTH CAUSE OF ACTION
### TRESPASS

_____

841.    Benshoof repeats and realleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Page 197 of 255

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

842.    In this eleventh cause of action, defendants named herein include Anthony Belgard, Donovan Broussard, John Duus, Nicholas Evans, Earnest Jensen, Spencer Kurz, Adam Losleben, Yves Luc, Grant Mayer, Johnathan Musseau, Brehon Ness, Liliya Nesteruk, Stephen Okruhlica, Dwayne Pirak, Brian Rees, Ty Selfridge, Steven Stone, Trevor Tyler, Michael Virgilio, Andrew West, Chad Zentner, (collectively "SWAT officers"), Ryan Ellis, Katrina Outland, and Jessica Owen ("Defendants").

843.    Ellis and SWAT officers owed a duty of care to not unreasonably damage Benshoof personal property, or his home, during the execution of the search warrant.

844.    Whether the search warrant was valid was irrelevant. As "under the *Restatement (Second) of Torts* § 210, section 214(1) applies even if the entry onto the property is initially lawful for purposes of a search pursuant to a valid warrant. The fact that a valid warrant exists is not an automatic bar to a trespass claim." *Brutsche v. City of Kent*, 164 Wn. 2d 664, 675 (Wash. 2008)

845.    "Some federal courts have also recognized a duty to exercise reasonable care in the execution of a search warrant. *See, e.g.* , *Alonzo v. United States* , 2017 WL 1483366 at *6 (D.N.H. 2017) " *Mancini v. City of Tacoma*, 196 Wash. 2d 864, 883 n.10 (Wash. 2021)

846.    Owen knew about and acquiesced to the plan to use excessive force against Benshoof and his home church.  She provided Ellis a key to the front door and expressly authorized SWAT to blow off the basement door.

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

847.    Ellis, Outland, and Owen, in joint action under the City's retaliatory practices against Benshoof's class, set in motion a series of events by which SWAT officers acted in an unreasonable manner under the City's practice of using excessive force to damage Benshoof's home church under a facially invalid search warrant.

848.    SWAT officers' negligence was not due to some cause beyond the control of Defendants that ordinary care could not have guarded against.  Ellis, Owen, and SWAT officers "desire[d] to cause consequences of their act[s]." *Bradley*, 104 Wn.2d at 682 (quoting RESTATEMENT (SECOND) OF TORTS § 8A (1965)" *Brutsche v. City of Kent*, 164 Wn. 2d 664, 674 n.7 (Wash. 2008)

849.    "[T]he conduct giving rise to the injury to Mr. [Benshoof's] property was intentional because the law enforcement officers intentionally and deliberately used [a] battering ram [or explosives] to breach [the basement] door" and shot out windows with OC cannisters. *Brutsche v. City of Kent*, 164 Wn. 2d 664, 674-75 (Wash. 2008)

850.    "Under *Goldsby v. Stewart*, 158 Wash. 39, 290 P. 422 (1930), which has never been overruled, and the *Restatement (Second) of Torts* (1965), a city may be liable in trespass for unnecessary damage to property caused by its law enforcement officers executing a search warrant, on the theory that unreasonable damage to the property exceeds the privilege to be present on the property and search." *Brutsche v. City of Kent*, 164 Wn. 2d 664, 671-72 (Wash. 2008)

851.    "[U]nder *Goldsby*, if officers executing a search warrant unnecessarily damage the property while conducting their search, that is, if they damage the property to a greater extent than is consistent with a thorough investigation, they

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

exceed the privilege to be on the land and liability in trespass can result" *Brutsche v. City of Kent*, 164 Wn. 2d 664, 673 (Wash. 2008)

852.    SPD officers "lack discretionary governmental immunity for their investigative and other "everyday operational level" acts." *Mancini v. City of Tacoma*, 196 Wash. 2d 864, 884 (Wash. 2021)

853.    SWAT officers were "bound by" a "specific duty enforceable by [Benshoof] in a tort," a "duty to [Benshoof] to exercise reasonable care—including when they invade[d] [Benshoof's] property." *Mancini v. City of Tacoma*, 196 Wash. 2d 864, 885-86 (Wash. 2021)

854.    As there is a prima facie causal connection between the trespass caused by Defendants and the damages caused to Benshoof's personal property and home, the requirements of Restatement (Second) of torts section 286 (1965) are met, the proximate cause question is for the jury to decide at trial.  *See Kness v. Truck Trailer Equip. Co.,* 81 Wn.2d 251, 501 P.2d 285 (1972)

855.    As a direct, proximate, and foreseeable result of Defendants' acts and failures to exercise a duty of care, Benshoof has suffered harm and damages for which he is entitled to recover.

## TWELFTH CAUSE OF ACTION
### VIOLATIONS OF SIXTH AMENDMENT

**Right to Counsel**
42 U.S.C. § 1983

_____

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

856.    Benshoof repeats and realleges each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

857.    In this twelfth cause of action, defendants named herein include CITY OF SEATTLE ("City"), Andrea Chin, and Katrina Outland ("Defendants").

858.    Prior to the matters in controversy, the Sixth Amendment and controlling federal case law clearly established that Defendants were prohibited from violating Benshoof's right to counsel.

### 1)  *Right to Counsel*

859.    Judge Chin claimed that Benshoof, by refusing to be represented by a public defender, waived his right to counsel.  In fact, Benshoof explicitly stated that he was exercising his Sixth Amendment right to counsel *of his choosing*, including his right to assistance of counsel under Section 35 of the Judiciary Act of 1789, which authorized Urve Maggitti to file documents on behalf of Benshoof.

> "But a waiver is an intentional relinquishment or abandonment of a known right or privilege… Moreover, courts indulge every reasonable presumption against the waiver of fundamental constitutional rights. Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461."
> *Griffith v. Rhay*, 282 F.2d 711, 717 (9th Cir. 1960)

860.    Because King County Department of Adult and Juvenile Detention ("DAJD") officials had a practice of denying Benshoof access to paper, envelopes, and postage, and of denying Benshoof the right to speak privately with attorney Robert E. Barnes ("Barnes") from a jail telephone, Benshoof represented himself *pro se* until Benshoof's friends were able to contact Barnes on Benshoof's behalf.

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Page 201 of 255

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

861.  Despite acknowledging that standby counsel Reagan Roy must withdraw because he could not "be available to represent the accused on a moment's notice," Judge Chin reversed course under the City's practice and granted Outland's motion *in limine*, claiming that Benshoof's motion for a continuance should not be granted to allow Barnes time to obtain discovery and prepare Benshoof's defense.

862.  Thus, Chin and Outland conspired to violated Benshoof's Sixth Amendment right to counsel.  "[T]he constraint laid by the [Sixth] Amendment upon the national courts expresses a rule so fundamental and essential to a fair trial, and so, to due process of law, that it is made obligatory upon the States by the Fourteenth Amendment."" *Gideon v. Wainwright*, 372 U.S. 335, 340 (1963)

863.  ""We concluded that certain fundamental rights, safeguarded by the first eight amendments against federal action, were also safeguarded against state action by the due process of law clause of the Fourteenth Amendment, and among them the fundamental right of the accused to the aid of counsel in a criminal prosecution." *Grosjean v. American Press Co.,* 297 U.S. 233, 243-244 (1936)." *Gideon v. Wainwright,* 372 U.S. 335, 343 (1963)

864.  ""[The assistance of counsel] is one of the safeguards of the Sixth Amendment deemed necessary to insure fundamental human rights of life and liberty… The Sixth Amendment stands as a constant admonition that if the constitutional safeguards it provides be lost, justice will not `still be done.'" *Johnson v. Zerbst,* 304 U.S. 458, 462 (1938).  To the same effect*, see Avery v.*

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

*Alabama,* 308 U.S. 444 (1940), and *Smith v. O'Grady*, 312 U.S. 329 (1941)." *Gideon v. Wainright,* 372 U.S. 335, 343 (1963)

865.   By acting in concert to repeatedly deny Benshoof's requests for a continuance to afford attorney Robert Barnes time to obtain discovery, speak with Benshoof, and prepare Benshoof's defense, Chin and Outland prevented Barnes from preparing Benshoof's defense. "The Sixth Amendment requires not just that counsel show up on the day of a critical stage but prepare for it too. See *Id.; McMann v. Richardson*, 397 U.S. 759, 771 n.14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)" *Betschart v. Oregon*, 103 F.4th 607, 620 (9th Cir. 2024)

866.   By denying Benshoof the ability to privately communicate with his counsel for nearly five months, the Chin and Outland violated the Sixth Amendment. ""It is of course true that the right conferred by the Sixth Amendment to effective assistance of counsel implicitly embraces adequate opportunity for the accused and his counsel to consult, advise and make such preparation for arraignment and trial as the facts of the case fairly demand." *De Roche v. United States*, 337 F.2d 606, 607 (9th Cir. 1964)" *Betschart v. Oregon*, 103 F.4th 607, 621 (9th Cir. 2024)

### 2) Right to Self-Representation

867.   Along with the right to counsel and the right to be represented by an attorney, the right to represent oneself was enacted in Section 35 of the Judiciary Act of 1789.  By Judge Chin repeatedly ordering marshals to remove Benshoof from court during trial, Chin violated the Sixth Amendment by preventing Benshoof *pro se* from

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

being present during jury selection, the hearing of pre-trial motions, and hours of testimony by the City's primary witness, Jessica Owen.

### 3) Assistance of Counsel

868.    Under Section 35 of the Judiciary Act of 1789, and pursuant to Benshoof's affidavit (Exhibit #0288), Maggitti was authorized to act as Benshoof's assistant of counsel.

869.    Under the County's practice of violating Benshoof's right to counsel, King County Chief Criminal Judge Young ("Young") sent a letter to Benshoof in which Young claimed that Maggitti was perpetrating "unauthorized practice of law" with the intent of denying Benshoof's class the right to assistance of counsel after Maggitti filed documents into KCSC No. 24-1-02680-7 on Benshoof's behalf.

870.    Under the County's practice of violating Benshoof's right to counsel, King County attorney Ann Summers alleged Maggitti was perpetrating "unauthorized practice of law" (Exhibit #1316 ¶2) with the intent of denying Benshoof's class the right to assistance of counsel after Maggitti filed documents on Benshoof's behalf into WAWD No. 2:24-cv-00343-TL.

871.    Under the City's practice of violating Benshoof's right to counsel, Chin and Outland claimed that Maggitti was perpetrating "unauthorized practice of law" with the intent of denying Benshoof's class the right to assistance of counsel after Maggitti filed documents on Benshoof's behalf into SMC No. 671384.

### 4) Liability

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

872.    The doctrines of absolute judicial and prosecutorial immunity do not apply to Chin and Outland because they acted under the City's practice of not obtaining personal or subject matter jurisdiction.

873.    Neither Chin nor Outland can claim qualified immunity due to their malice and total absence of jurisdiction: without jurisdiction, probable cause cannot exist.

874.    The foregoing constitutes prima facie evidence that the City failed to properly train its prosecutors and judges regarding Sixth Amendment prohibitions against denying Benshoof's class the right to counsel.

875.    As a direct, proximate, and foreseeable result of the City's practices and customs regarding Benshoof's class, the City's failure to train its prosecutors and judges regarding Sixth Amendment prohibitions, and the *ultra vires* acts by Chin and Outland to violate the Sixth Amendment, Benshoof suffered irreparable harm and damages for which he is entitled to recover.

# THIRTEENTH CAUSE OF ACTION
## VIOLATIONS OF EIGHTH AMENDMENT
### Excessive Fines & Cruel Punishments
42 U.S.C. § 1983

_____

876.    Benshoof repeats and realleges each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

877.    In this thirteenth cause of action, defendants named herein include CITY OF SEATTLE ("City"), KING COUNTY ("County"), Andrea Chin, Nicola Nathan Cliber, Gregg Curtis, Pascal Herzer, Jane Doe, Magalie Lerman, Sarah MacDonald, Katrina Outland, Jessica Owen, Blair Russ, Daniel Schilling, Michael Tracy, and Sarah Turner, ("Defendants").

878.    At all times relevant herein to this thirteenth cause of action individual Defendants were state actors, or individuals acting as integral participants in joint action with state actors, acting under color of law, and their conduct was subject to 42 U.S.C. § 1983.

879.    Through the equal protection clause of the Fourteenth Amendment, Defendants were prohibited from violating Eighth Amendment prohibitions against subjecting Benshoof to excessive fines or cruel punishments.

880.    The Eighth Amendment's categorical prohibition upon the infliction of cruel and unusual punishment applies to practices condemned by the common law at the time the Bill of Rights was adopted, as well as to punishments which offend our society's evolving standards of decency as expressed in objective evidence of legislative enactments and the conduct of sentencing juries. See *Penry v. Lynaugh,* 492 U.S. 302, 305 (1989)

### 1) *ORAL & Contempt Order*

881.    Defendants were without evidence of "domestic relations" between Benshoof and Owen and Defendants were without evidence that a court had found that Benshoof ever committed domestic violence against anyone.

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Page 206 of 255

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

882.    Ferguson did not have statutory authority under RCW 26.51 to grant an Order Restricting Abusive Litigation by Kurt Benshoof ("ORAL").

883.    Ferguson knowingly and willfully acted *ultra vires* in the absence of jurisdiction to grant the ORAL and fine Benshoof $78,118.39.

884.    During oral arguments on February 29, 2024, Benshoof again reminded (Exhibit #1048-1202) Ferguson, Russ, Tracy, and Turner, that the Ferguson Court was acting *ultra vires* to sanction and threaten Benshoof with fines and unlawful imprisonment.

885.    On March 1, 2024, Ferguson granted an Order Finding of Contempt and Imposing Sanctions Against Plaintiff Kurt Benshoof.

886.    On March 29, 2024, Ferguson ordered sanctions against Benshoof $11,825 for Cliber, Tracy, and Turner.

887.    On March 29, 2024, Ferguson ordered sanctions against Benshoof $11,014.92 for Owen and Russ.

888.    Upon their foregoing fraud upon the court, Cliber, Hermsen, Lerman, and Owen, through and with attorneys Russ, Tracy, and Turner, knowingly and maliciously subjected Benshoof to cruel and unusual punishments by: (1) threatening Benshoof with unlawful imprisonment; (2) threatening the indigent Benshoof with devastating financial sanctions, and (3) obtaining devastating financial sanctions against Benshoof in retaliation for Benshoof seeking redress of Plaintiffs' grievances.

### 2)  *Seattle Municipal Court – Cruel Punishments*

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Page 207 of 255

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

889.    Chin owed Benshoof a duty of care not to violate the Eighth Amendment by allowing Benshoof to be punished during Benshoof's pretrial detainment.

890.    After Chin granted Benshoof's motion on September 3, 2024, to order DAJD employees to provide Benshoof with reasonable access to a "working computer and printer & paper (or a typewriter & paper) for research and brief writing" and for Benshoof to "be allowed to purchase envelopes with postage" (Exhibit #0497) Chin then claimed on September 9, 2024, that she did not have the authority to issue an order directing DAJD to provide Benshoof any pro se materials to defend himself with against the City's prosecutions during Benshoof's pretrial imprisonment.

891.    Without envelopes and postage, Benshoof was unable to file documents in more than twenty municipal, state and federal court cases for the majority of his approximately five-month imprisonment.

892.    Under the City's practice, Chin knowingly conspired with Herzer to deny Benshoof's class access to office supplies with the intent of preventing Benshoof from litigating any of Benshoof's numerous municipal, state, and federal court cases.  The acts and failures to act by Chin violated the Eighth Amendment prohibition against subjecting Benshoof's class to cruel punishments during pretrial detention.

893.    Even "[a]bsent evidence of express punitive intent, it may be possible to infer a given restriction's punitive status "from the nature of the restriction." *Valdez v. Rosenbaum*, 302 F.3d 1039, 1045 (9th Cir. 2002); *see Demery v. Arpaio*, 378 F.3d 1020, 1030 (9th Cir. 2004) (noting that "to constitute punishment, the harm or disability caused by the government's action must either significantly exceed, or be

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

independent of, the inherent discomforts of confinement"). *Pierce v. County of Orange*, 526 F.3d 1190, 1205 (9th Cir. 2008) Andrea Chin, Gregg Curtis, and Pascal Herzer acted in concert to punish Benshoof by denying him office materials and equipment necessary for Benshoof to participate in pro se litigation.

894.     Chin and Outland, by threatening Benshoof with eighty-one consecutive sentences of one year, conspired to subject Benshoof to a *de facto* life sentence because Benshoof texted his son.

### 3)  *Seattle Municipal Court - Bail*

895.     By and through the City's malicious prosecutions of Benshoof in SMC Nos. 656748, 669329, 671384, etc. Chin, MacDonald, Outland, and other City judges ordered over $400,000 in bail and warrants because Benshoof shopped at PCC sans face covering and texted A.R.W.

896.     When Owen threatened (Ex. #396) to have Benshoof arrested pursuant to the City's practice by MacDonald of extorting Benshoof for $10,000, Benshoof was forced to pay the $10,000 warrant to avoid being unlawfully arrested, a violation of the Eighth Amendment.

897.     When Chin and Outland acted in concert to force the indigent Benshoof to pay the City's $170,000 in bail to effectuate his release from jail on November 27, 2024, Chin and Outland violated the Eighth Amendment.

898.     When Chin and Schilling acted in concert to unlawfully imprison Benshoof between July 3, 2024, and September 30, 2024, pursuant to the $25,000 bail for SMC No. 656748, Chin and Schilling violated the Eighth Amendment.

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

### 4) *King County Jail*

899.    Curtis and Herzer owed Benshoof a duty of care not to punish Benshoof during his pretrial confinement.

900.    For nearly five months of Benshoof's pretrial imprisonment, DAJD personnel Gregg Curtis ("Curtis") and Pascal Herzer ("Herzer") acted pursuant to the County's practice of denying Benshoof's class access to paper, envelopes, postage ("office supplies"), and a functioning "pro se" computer and printer.

901.    Without envelopes and postage, Benshoof was unable to file documents in more than twenty municipal, state and federal court cases for the majority of his approximately five-month imprisonment.

902.    Under the County's practice, Curtis and Herzer knowingly denied Benshoof's class access to office supplies with the intent of preventing Benshoof from litigating any of Benshoof's numerous municipal, state, and federal court cases.  The acts and failures to act by Curtis and Herzer violated the Eighth Amendment prohibition against denying Benshoof's class to cruel punishments.

903.    On or around August 3, 2024, Evil Nurse transferred Benshoof into the "psych ward" of King County jail in retaliation for Benshoof expressing his religious beliefs and exercising his right to speak freely.

904.    "King County Jail maintains an inmate classification system that it developed with the assistance of the National Institute of Corrections ("NIC"). (1st Zeldenrust Decl. (Dkt. # 65) ¶ 7, Ex. 6.) When an inmate is booked into King County Jail, he or she is initially screened by a Jail Health Services ("JHS") nurse, who

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

determines whether the // // // inmate is placed in psychiatric or non-psychiatric housing." *Meagher v. King Cnty.*, No. C19-0259JLR, at *2-3 (W.D. Wash. July 9, 2020) "Within the umbrella of psychiatric housing, there are three sub-categories: (1) Red, for inmates expressing an immediate potential for self-harm or suicide; (2) Yellow, for inmates with active symptoms and severe functional impairment; and (3) Green (for **inmates with a major mental illness** and moderate functional impairment)." *Id.,* at *3. (**emphasis** added)

905.    Nurse Doe intended to punish Benshoof during his pretrial detention in violation of the Eighth Amendment, despite Evil Nurse having no evidence that Benshoof was suffering from a "major mental illness" or ***any*** mental illness.

### 5) Liability

906.    As the City was without personal or subject matter jurisdiction, Chin is not protected by the doctrine of absolute judicial immunity, and MacDonald, Outland, and Schilling were not protected by prosecutorial immunity.

907.    As Chin, Curtis, Herzer, Nurse Doe, MacDonald, Outland, and Schilling acted knowingly and maliciously, they are not protected by qualified immunity.

908.    The foregoing constitutes prima facie evidence that the City and County failed to train its employees not to violate the Eighth Amendment regarding subjecting Benshoof's class to cruel or unusual punishments during pretrial detention.

909.    As a direct, proximate, and foreseeable result of the City's and County's failure to trains its officials, and as a result of the widespread practice of City and

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

County officials to subject Benshoof to excessive fines or cruel punishments, and as a result of individual defendants' *ultra vires* and fraudulent acts or failures to act, Benshoof suffered irreparable harm and damages for which he is entitled to recover.

## FOURTEENTH CAUSE OF ACTION
VIOLATIONS OF FOURTEENTH AMENDMENT

**Due Process Clause - Right to Life & Liberty**
42 U.S.C. § 1983

---

910.    Kurt Benshoof ("Benshoof") repeats and realleges each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

911.    In this fourteenth cause of action, defendants named herein include KING COUNTY ("County"), CITY OF SEATTLE ("City"), Andrea Chin, Catherine Cornwall, Sarah MacDonald, Katrina Outland, Jessica Owen, Blair Russ, Julie Salle, Daniel Schilling ("Defendants").

912.    At all times relevant herein to this thirteenth cause of action Defendants were state actors, or individuals acting as integral participants in joint action with state actors, acting under color of law, and their conduct was subject to 42 U.S.C. § 1983.

913.    The Fourteenth Amendment §1 states that no State shall "deprive any person of life, liberty, or property, without due process of law;" therefore, it was clearly established that Defendants were prohibited from denying Plaintiffs' right to life and liberty without due process under color of law.

### 1)  *Habeas Corpus - ORAL*

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Page 212 of 255

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

914.    KING COUNTY failed to properly train its employees, including Judge Marshall Ferguson, regarding the right to due process of law before Ferguson acted *ultra vires* to grant the ORAL and Contempt Order in violation of the Fourteenth Amendment, predicated upon the fraud of Cliber, Owen and Russ.

915.    The widespread custom or practice of KING COUNTY officials was the moving force behind the denial of Benshoof's right to due process of law and was both causation-in-fact and proximate causation of the violations of the Fourteenth Amendment and Benshoof's right to due process.

916.    As a result of the fraud by Cliber, Lerman, Owen, Russ, Tracy, and Turner, Ferguson issued the *ultra vires* Contempt Order without subject matter jurisdiction pursuant to RCW 26.51.030(1).  There was no inquiry nor finding by any court that Benshoof had ever been found to be a domestic violence perpetrator, nor did Russ, Tracy, nor Turner provide evidence of "domestic relations" between Benshoof and Owen; therefore, Cliber, Lerman, Owen, Russ, Tracy, and Turner acted to deny Benshoof due process of law.

917.    Cliber, Lerman, Owen, Russ, Tracy, and Turner acted as integral participants in joint action to set in motion a series of events by which the fraudulent ORAL and Contempt Order would be granted or enforced, which Cliber, Lerman, Owen, Russ, Tracy, and Turner knew or should have known would be used to violate Benshoof's due process right to petition for habeas relief under the County's practice of petitioning for habeas relief.

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

918.     Under the terms of the void *ab initio* ORAL, there was a <u>practice</u> of denying Benshoof the right file a petition for writ of habeas corpus in any superior court in the state of Washington without seeking leave, effectively transforming Benshoof's right into a privilege subject to the whim of Judge Marshall Ferguson.

919.     Under the terms of the void *ab initio* ORAL, Benshoof could not file a petition for writ of habeas corpus in any superior court in the state of Washington without seeking leave to file from Judge Ferguson.

920.     U.S. Constitution Art. I § 9 Cl. 2 and Wash. Const. Art. I § 13 state that the "privilege of the writ of habeas corpus ***shall not*** be suspended, unless incase of rebellion or invasion the public safety requires it." No rebellion or invasion occurred during the matters in controversy. RCW 7.36.040 states that "upon application the writ ***shall*** be granted without delay."

921.     Benshoof had a due process right to petition for writ of habeas corpus to arrest the ongoing kidnapping of A.R.W. and the violation of Plaintiffs' right of familial association.

922.     As a direct and proximate result of Cliber, Lerman, Owen, Russ, Tracy, and Turner obtaining the ORAL to deny Benshoof due process, Judge Ferguson acted *ultra vires* to preempt the mandate of RCW 7.36.040, claiming that the ORAL authorized Judge Ferguson to effectively suspend Wash. Const. Art. I §13 and to violate RCW 7.36.040.

### 2) *Extraordinary Writs – King County Clerks*

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Page 214 of 255

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

923.    Wash. Const. Art. I § 13 states that the "privilege of the writ of habeas corpus ***shall not*** be suspended, unless incase of rebellion or invasion the public safety requires it."  No rebellion or invasion occurred during the matters in controversy.

924.    Wash. Const. Art. IV § 6 states that the superior courts "and their judges shall have power to issue writs of mandamus, quo warranto, review, certiorari, prohibition, and writs of habeas corpus, on petition by or ***on behalf of any person*** in actual custody in their respective counties."

925.    Despite RCW 2.32.050(4) stating that it is a duty of the King County Superior Court Clerk to "file all papers delivered to him or her for that purpose in any action or proceeding in the court as directed by court rule or statute," Clerk Catherine Cornwall ("Cornwall") refused to file the petition for writ of habeas corpus filed on behalf of Benshoof by Brett Fountain ("Fountain").

926.    By and through Cornwall's nonfeasance in refusing to file Fountain's habeas petition, Benshoof's right to due process was abrogated.

927.    By and through Salle's administrative nonfeasance in refusing to accept and file Benshoof's habeas petition for adjudication, Benshoof's right to due process was abrogated.

928.    By and through Salle's administrative nonfeasance in refusing to note Benshoof's mandamus petition for adjudication, Benshoof's right to due process was abrogated.

### 3)  *Seattle Municipal Court*

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

929.    The City's practice of prosecuting Benshoof's class without personal or subject matter jurisdiction underpinned the City's practice of maliciously prosecuting Benshoof by denying him his right to be present during *voi dire*, his right to be present during trial, his right to make objections during trial, his right to call witnesses, his right to exculpatory evidence, his right to a *Franks* hearing, and his right to have his motions adjudicated.

930.    By violating RCW 35.20.270(1) and ignoring the express statutory limitation imposed upon courts of limited jurisdiction by RCW 7.105.050(1)(a)(d), Chin and Outland violated the Due Process Clause.  It is most "significant that there was [a Washington] statute…prohibiting a [Seattle Municipal] court, a court of [limited] jurisdiction, from considering" Outland's criminal complaints against Benshoof. *Stump v. Sparkman*, 435 U.S. 349, 358 (1978)

931.    By and through the City's malicious prosecution of Benshoof in SMC No. 656748 Chin, MacDonald, and Schilling violated the Fourteenth Amendment through the City's practices of violating Benshoof's right to due process under color of law.

932.    By and through the City's malicious prosecutions of Benshoof in SMC Nos. 669329, 671384, etc. Chin and Outland violated the Fourteenth Amendment through the City's practices of violating Benshoof's right to due process under color of law.

### 4)  Liability

933.    As the City was without personal or subject matter jurisdiction, Chin was not protected by the doctrine of absolute judicial immunity, and MacDonald,

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

Outland, and Schilling were not protected by prosecutorial immunity.

934.    As Chin, Cornwall, Herzer, MacDonald, Outland, and Schilling acted knowingly and maliciously, they are not protected by qualified immunity.

935.    The foregoing constitutes prima facie evidence that the City and County failed to train its employees not to violate the Fourteenth Amendment regarding denying Benshoof's class due process under color law.

936.    As a direct, proximate, and foreseeable result of the failure to trains its officials by the City and County, the widespread practice of City and County officials to deny Benshoof due process of law, and as a result of individual defendants' *ultra vires* acts and failures to act, Benshoof suffered irreparable harm and damages for which he is entitled to recover.

## FIFTEENTH CAUSE OF ACTION
VIOLATIONS OF FOURTEENTH AMENDMENT

**Procedural Due Process – Liberty Oppression**
42 U.S.C. § 1983

_____

937.    Benshoof repeats and realleges each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

938.    In this fifteenth cause of action, defendants named herein include CITY OF SEATTLE ("City"), Andrea Chin, Katrina Outland, Jessica Owen, and Melanie Tratnik, ("Defendants").

### 1) Established Relationship

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

939.    From conception on July 18, 2008, until Lerman kidnapped A.R.W. on September 3, 2021, Benshoof demonstrated "consistent involvement in [A.R.W.'s] life and participation in child-rearing activities." *Wheeler v. City of Santa Clara,* 894 F.3d 1046, 1058 (9th Cir. 2018).  Every day since then Benshoof has sought redress to end the kidnapping of A.R.W.

### 2)  Clearly Established Right

940.    The Fourteenth Amendment Due Process clause prohibits state actors, and private individuals in joint action with state actors, from depriving the liberty right of Benshoof to A.R.W.'s companionship without due process of law.  Parents and children possess a constitutionally protected liberty interest in companionship and society with each other. *Smith v. City of Fontana*, 818 F.2d 1411, 1418 (9th Cir. 1987).

941.    State interference with these protected liberty interests may give rise to a Fourteenth Amendment due process claim that is cognizable under 42 U.S.C. § 1983. *Kelson v. City of Springfield,* 767 F.2d 651, 654 (9th Cir. 1985)

942.    A parent's right includes a custodial interest and a companionship interest*, Smith v. City of Fontana*, 818 F.2d 1411, 1419 (9th Cir. 1987); see, *e.g., Strandberg v. City of Helena,* 791 F.2d 744, 748 n.1 (9th Cir. 1986)

### 3)  Procedural Due Process Violations

943.    Tratnik acted without personal or subject matter jurisdiction, denying Benshoof's right of association with, and care for, A.R.W. until July 5, 2029. (Ex. #0583) "The Fourteenth Amendment guarantees that parents will not be separated from their children without due process of law except in emergencies*." Rogers v.*

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

*County of San Joaquin,* 487 F.3d 1288, 1294 (9th Cir. 2007) (quoting *Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1107 (9th Cir. 2001)).

944.    Removing a child from a parent's custody violates the Fourteenth Amendment unless the removal (1) is authorized by a court order (typically a warrant); or (2) is supported by "reasonable cause to believe that the child is in imminent danger of serious bodily injury," and the scope of intrusion does not extend beyond that which is reasonably necessary. *Id.* (quoting *Mabe*, 237 F.3d at 1106).

945.    **Void Court Orders.**  Even if the removal is pursuant to a court order, the right may be violated if the court order was obtained through judicial deception, that is, if a plaintiff alleges "(1) a misrepresentation or omission (2) made deliberately or with a reckless disregard for the truth, that was (3) material to the judicial decision." *David v. Kaulukukui*, 38 F.4th 792, 801 (9th Cir. 2022) "A misrepresentation or omission is material if a court would have declined to issue the order had [the defendant] been truthful." *Id.* Judicial deception can arise when true observations are made misleading by omission of facts "that are not themselves material [, but] may result in an affidavit that, considered as a whole, is materially misleading." *Scanlon v. County of Los Angeles,* 92 F.4th 781, 799 (9th Cir. 2024)

946.    **No Imminent Danger.**  There must be "specific, articulable evidence that provides reasonable cause to believe that a child is in imminent danger of abuse." *Wallis v. Spencer,* 202 F.3d 1126, 1138 (9th Cir. 2000).; see also *Sjurset v. Button*, 810 F.3d 609, 622 (9th Cir. 2015) As an absolute pacificist Benshoof has never posed any danger to A.R.W., nor anyone else, *supra* at 113.

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

947.    **No Reasonable Cause**.    Serious allegations of abuse must be investigated and corroborated before they will give rise to "a reasonable inference of imminent danger sufficient to justify taking children into temporary custody." *Demaree v. Pederson,* 887 F.3d 870, 879 (9th Cir. 2018) Owen admitted under oath that Benshoof has never spanked A.R.W.

948.    **Judicial Deception.**    Even if the removal is pursuant to a court order, the right may be violated if the court order was obtained through judicial deception, that is, if a plaintiff alleges "(1) a misrepresentation or omission (2) made deliberately or with a reckless disregard for the truth, that was (3) material to the judicial action.

949.    The Final Restraining Order was obtained by Cliber suborning Owen's perjury.  The City's restraining order was predicated upon Ellis's fraudulent Proof of Service and Cliber suborning Owen's perjury.

### 4) Deliberate Indifference

950.    When officials have "time to make unhurried judgments," and "extended opportunities to do better," but unreasonably allow harm to occur, then their "protracted failure even to care" can shock the conscience, thus giving rise to a substantive due process claim. *County of Sacramento v. Lewis,* 523 U.S. 833, at 851 (1998)

951.    Chin and Outland had months and years to make unhurried judgments, and Benshoof repeatedly extended Chin and Outland opportunities to follow the law and follow the facts.  Unfortunately, chin and Outland chose to render criminal

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

assistance to Owen's perjury and kidnapping of A.R.W. by maliciously prosecuting Benshoof without personal or subject matter jurisdiction.

### 5) Joint Action

952.    Defendants did ""know[ ] about and acquiesce[d] in the constitutionally defective conduct as part of a common plan" to criminalize all contact between Benshoof and A.R.W. and "set in motion a series of acts by others which [Defendants] reasonably should [have] know[n] would cause others to inflict the constitutional injury" by prosecuting, arresting, and imprisoning Benshoof without jurisdiction or probable cause to deny Plaintiffs' right of familial association. *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)" *Peck v. Montoya*, No. 20-56413, at *21 (9th Cir. Oct. 18, 2022)

953.    "When [Defendants] conspired to construct a false story about the events that took place...they deliberately set in motion a series of events that they anticipated (or should have anticipated) would lead to" violating Benshoof's right of companionship with A.R.W. without procedural due process.    "Not only did [Defendants] set the events in motion but, according to the complaint, they voluntarily provided crucial information, false though it was, at every step of the proceeding." *Harris v. Roderick,* 126 F.3d 1189, 1199 (9th Cir. 1997)

954.    For private individuals such as Owen "to act "under color of" state law for § 1983 purposes does not require that [Owen] be an officer of the State. It is enough that [s]he is a willful participant in joint action with the State or its agents. Private persons, jointly engaged with state officials in the challenged action, are

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Page 221 of 255

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

acting "under color" of law for purposes of § 1983 action. *Adickes v. S.H. Kress Co.*, 398 U.S. 144, 152 (1970); *United States* v. *Price*, 383 U.S. 787, 794 (1966)." *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980)

### 6) Liability

955.    As the City was without <u>personal</u> or <u>subject matter</u> jurisdiction, Tratnik and Chin were not protected by the doctrine of absolute judicial immunity, and Outland was not protected by prosecutorial immunity.

956.    As Outland, and Tratnik acted knowingly and maliciously, they are not protected by qualified immunity.

957.    The foregoing constitutes prima facie evidence that the City failed to train its employees not to violate the Fourteenth Amendment regarding denying Benshoof's class due process under color law.

958.    As a direct, proximate, and foreseeable result of the failure to trains its prosecutors and judges by the City, the widespread practice of City officials to deny Benshoof due process of law, and as a result of individual defendants' *ultra vires* acts and failures to act, Benshoof suffered irreparable harm and damages for which he is entitled to recover.

## SIXTEENTH CAUSE OF ACTION
### VIOLATIONS OF FOURTEENTH AMENDMENT

**Procedural Due Process – Liberty Oppression**
42 U.S.C. § 1983

---

959.    A.R.W. repeats and realleges each of the allegations contained in the

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

foregoing paragraphs of this Complaint as if fully set forth herein.

960.    In this sixteenth cause of action, defendants named herein include KING COUNTY ("County"), CITY OF SEATTLE ("City"), Andrea Chin, Katrina Outland, Jessica Owen, and Blair Russ, ("Defendants").

### 1) Established Relationship

961.    From conception on July 18, 2008, until Lerman kidnapped A.R.W. on September 3, 2021, Benshoof demonstrated "consistent involvement in [A.R.W.'s] life and participation in child-rearing activities." *Wheeler v. City of Santa Clara,* 894 F.3d 1046, 1058 (9th Cir. 2018).  Every day since then Benshoof has sought redress to end the kidnapping of A.R.W.

### 2) Clearly Established Right

962.    The Fourteenth Amendment Due Process clause prohibits state actors, and private individuals in joint action with state actors, from depriving the liberty right of A.R.W. to Benshoof's companionship without due process of law.  Parents and children possess a constitutionally protected liberty interest in companionship and society with each other. *Smith v. City of Fontana*, 818 F.2d 1411, 1418 (9th Cir. 1987).

963.    State interference with these liberty interests may give rise to a Fourteenth Amendment due process claim that is cognizable under 42 U.S.C. § 1983. *Kelson v. City of Springfield,* 767 F.2d 651, 654 (9th Cir. 1985)

964.    The protected liberty interest is independently held by both parent and child. *City of Fontana,* 818 F.2d at 1418. Children may claim a violation of their right

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

to familial association, including a companionship interest. *City of Fontana,* 818 F.2d at 1419; *Moreland v. Las Vegas Metro. Police Dep't,* 159 F.3d 365, 371 (9th Cir. 1998).

### 3) Procedural Due Process Violations

965.    Tratnik acted without personal or subject matter jurisdiction, denying A.R.W.'s right of association with his father until July 5, 2029. (Ex. #0583) "The Fourteenth Amendment guarantees that parents will not be separated from their children without due process of law except in emergencies.*" Rogers v. County of San Joaquin,* 487 F.3d 1288, 1294 (9th Cir. 2007) (quoting *Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1107 (9th Cir. 2001)).

966.    Procedural due process claims typically arise when a state official removes a child from a parent's care. For such claims, "[t]he Fourteenth Amendment guarantees that parents will not be separated from their children without due process of law except in emergencies.*" Rogers v. County of San Joaquin,* 487 F.3d 1288, 1294 (9th Cir. 2007) (quoting *Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1107 (9th Cir. 2001)).

967.    Removing a child from a parent's custody violates the Fourteenth Amendment unless the removal (1) is authorized by a court order (typically a warrant); or (2) is supported by "reasonable cause to believe that the child is in imminent danger of serious bodily injury," and the scope of intrusion does not extend beyond that which is reasonably necessary. *Id.* (quoting *Mabe*, 237 F.3d at 1106).

968.    **Void Court Orders.**  Even if the removal is pursuant to a court order, the right may be violated if the court order was obtained through judicial deception,

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

that is, if a plaintiff alleges "(1) a misrepresentation or omission (2) made deliberately or with a reckless disregard for the truth, that was (3) material to the judicial decision." *David v. Kaulukukui,* 38 F.4th 792, 801 (9th Cir. 2022). "A misrepresentation or omission is material if a court would have declined to issue the order had [the defendant] been truthful." *Id.* Judicial deception can arise when true observations are made misleading by omission of facts "that are not themselves material [, but] may result in an affidavit that, considered as a whole, is materially misleading." *Scanlon v. County of Los Angeles,* 92 F.4th 781, 799 (9th Cir. 2024)

969.    **No Imminent Danger.**  There must be "specific, articulable evidence that provides reasonable cause to believe that a child is in imminent danger of abuse." *Wallis,* 202 F.3d at 1138; see also *Sjurset v. Button*, 810 F.3d 609, 622 (9th Cir. 2015) As an absolute pacifist Benshoof has never posed any danger to A.R.W., nor anyone else, *supra* at 113.

970.    **No Reasonable Cause**.   Serious allegations of abuse must be investigated and corroborated before they will give rise to "a reasonable inference of imminent danger sufficient to justify taking children into temporary custody." *Demaree v. Pederson,* 887 F.3d 870, 879 (9th Cir. 2018) Owen admitted under oath that Benshoof has never spanked A.R.W.

971.    **Judicial Deception.**  Even if the removal is pursuant to a court order, the right may be violated if the court order was obtained through judicial deception, that is, if a plaintiff alleges "(1) a misrepresentation or omission (2) made deliberately or with a reckless disregard for the truth, that was (3) material to the judicial action.

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

972.    The Final Restraining <u>Order</u> was obtained by Cliber suborning Owen's perjury.  The City's restraining <u>order</u> was predicated upon Ellis's fraudulent Proof of Service and Cliber suborning Owen's perjury.

### 4) Deliberate Indifference

973.    When officials have "time to make unhurried judgments," and "extended opportunities to do better," but unreasonably allow harm to occur, then their "protracted failure even to care" can shock the conscience, thus giving rise to a substantive due process claim. *County of Sacramento v. Lewis,* 523 U.S. 833, at 851 (1998)

974.    Chin and Outland had months and years to make unhurried judgments, and Benshoof repeatedly extended Chin and Outland opportunities to follow the law and follow the facts.  Unfortunately, chin and Outland chose to render criminal assistance to Owen's perjury and kidnapping of A.R.W. by maliciously prosecuting Benshoof without <u>personal</u> or <u>subject</u> matter jurisdiction.

### 5) Joint Action

975.    Defendants did ""know[ ] about and acquiesce[d] in the constitutionally defective conduct as part of a common plan" to criminalize all contact between Benshoof and A.R.W. and "set in motion a series of acts by others which [Defendants] reasonably should [have] know[n] would cause others to inflict the constitutional injury" by prosecuting, arresting, and imprisoning Benshoof without jurisdiction or probable cause to deny Plaintiffs' right of familial association. *Johnson v. Duffy*, 588

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

F.2d 740, 743-44 (9th Cir. 1978)" *Peck v. Montoya*, No. 20-56413, at *21 (9th Cir. Oct. 18, 2022)

976.    "When [Defendants] conspired to construct a false story about the events that took place...they deliberately set in motion a series of events that they anticipated (or should have anticipated) would lead to" violating Benshoof's right of companionship with A.R.W. without procedural due process.    "Not only did [Defendants] set the events in motion but, according to the complaint, they voluntarily provided crucial information, false though it was, at every step of the proceeding." *Harris v. Roderick,* 126 F.3d 1189, 1199 (9th Cir. 1997)

977.    For private individuals such as Owen "to act "under color of" state law for § 1983 purposes does not require that [Owen] be an officer of the State. It is enough that [s]he is a willful participant in joint action with the State or its agents. Private persons, jointly engaged with state officials in the challenged action, are acting "under color" of law for purposes of § 1983 action. *Adickes v. S.H. Kress Co.*, 398 U.S. 144, 152 (1970); *United States* v. *Price*, 383 U.S. 787, 794 (1966)." *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980)

### 6) Liability

978.    As the City was without personal or subject matter jurisdiction, Tratnik and Chin were not protected by the doctrine of absolute judicial immunity, and Outland was not protected by prosecutorial immunity.

979.    As Outland, and Tratnik acted knowingly and maliciously, they are not protected by qualified immunity.

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Page 227 of 255

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

980.    The foregoing constitutes prima facie evidence that the City failed to train its employees not to violate the Fourteenth Amendment regarding denying A.R.W. due process under color law.

981.    As a direct, proximate, and foreseeable result of the failure to trains its prosecutors and judges by the City and County, the widespread practice of City and County officials to deny A.R.W. due process of law while Benshoof petitioned on behalf of A.R.W, and as a result of individual defendants' *ultra vires* acts and failures to act, A.R.W. suffered irreparable harm and damages for which he is entitled to recover.

## SEVENTEENTH CAUSE OF ACTION
### VIOLATIONS OF FOURTEENTH AMENDMENT

**Procedural Due Process – No Administrative Hearing**
42 U.S.C. § 1983

_____

982.    Benshoof repeats and realleges each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

983.    In this seventeenth cause of action, defendants named herein include KING COUNTY ("County") and Pascal Herzer.

984.    Beginning on November 8, 2024, Benshoof spent seventeen days in solitary confinement, and would have likely remined in solitary confinement without access to a phone until 2025 if Pltf. Maggitti had not posted Benshoof's bail and, with the help of Benshoof's other friends, worked tirelessly to effectuate Benshoof's release to electronic home detention.

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

985.    Before being transferred to solitary confinement, Benshoof was not afforded advance written notice of the charges against him.  After being transferred to solitary confinement, Benshoof was denied the opportunity to call witnesses or provide documentary evidence before an impartial hearing board.

> "The Supreme Court has delineated the standard to be applied in determining whether a prisoner has been afforded his minimum due process rights. *Wolff v. McDonnell*, 418 U.S. 539 . . . (1974). The prisoner is entitled to (1) advance written notice of the charges against him or her; (2) an opportunity to call witnesses and present documentary evidence, provided that to do so will not jeopardize institutional safety or correctional goals, before a sufficiently impartial hearing board; (3) a written statement by the fact finder of `the evidence relied upon and reasons for the disciplinary action taken.'"

> *Hughes v. Rowe*, 449 U.S. 5, 9 n.6 (1980)

986.    At no time was Benshoof accused of presenting a clear and present danger to himself or others.  Therefore, "segregation was unnecessary in petitioner's case because his offense did not involve violence and he did not present a "clear and present danger." *Id.,* at 11.

987.    "Segregation of a prisoner without a prior hearing may violate due process if the postponement of procedural protections is not justified by apprehended emergency conditions. See *Hayes* v. *Walker*, 555 F.2d 625, 633 (CA7), cert. denied, 434 U.S. 959 (1977)." *Hughes v. Rowe*, 449 U.S. 5, 11 (1980)

988.    Herzer and DAJD personnel were without evidence that Benshoof caused any concern for institutional security or safety.  "In the absence of any showing that concern for institutional security and safety was the basis for immediate segregation of petitioner without a prior hearing," *Id.,* at 12

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

989.    As a direct, proximate, and foreseeable result of the County's failure to trains its officials, the widespread practice of County officials to deny Benshoof procedural due process, and as a result of individual Herzer's acts and failures to act, Benshoof suffered irreparable harm and damages for which he is entitled to recover.

## EIGHTEENTH CAUSE OF ACTION
### COMMON LAW FRAUD

990.    Benshoof repeats and realleges each of the facts and allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

991.    In this eighteenth cause of action, defendants named herein include KING COUNTY ("County"), CITY OF SEATTLE ("City"), Katrina Outland, Jessica Owen, and Blair Russ ("Defendants").

992.    "Who is asked, or volunteers' information **must be truthful**, and the telling of a half-truth calculated to **deceive is fraud**;" *Pumphrey v. K. W. Thompson Tool Co.,* 62 F.3d 1128 (9th Cir. 1995)

993.    Benshoof's equitable ownership in his home church is a personal right as well as property right which cannot be abrogated without due process. The Supreme Court held in *Dennis v. Higgins*, 498 U.S. 439 (1991) that "we have given full effect to its broad language, recognizing that §1983 'provide[s] a remedy, to be broadly construed, against all forms of official violation of federally protected rights' and 'we refused to limit the phrase to 'personal' rights, as opposed to 'property' rights.'" (citing *Lynch v. Household Finance Corp.,* 405 U.S. 538 (1972)). *Dennis* also held:

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

"The right to enjoy property without unlawful deprivation, no less than the right to speak or the right to travel, is, in truth, a 'personal' right, whether the 'property' in question be a welfare check, a home, or a savings account." (*Dennis v. Higgins, supra.*)

994.    Under the City's practice of maliciously prosecuting Benshoof by rendering criminal assistance to Owen and Lerman without personal or subject matter jurisdiction, Owen, Outland, and Russ acted in parallel with each other to deny Benshoof's due process right to appear at trial to expose Owen's and Russ's fraudulent attempts to deny Benshoof's equitable ownership in his home church.

995.    Because of the $250,000 arrest warrant obtained by Outland in SMC No. 671384, Benshoof could not appear at trial in May 2023 to refute Owen's perjury. Presented with the Faustian bargain of choosing to either: (1) appear in court to testify and be indefinitely, unlawfully imprisoned; or (2) retain his liberty but forego his due process right to testify, Benshoof was forced to choose his liberty, thereby having his right to due process violated by Outland, Owen and Russ.

996.    Owen perpetrated her fraud through the representations of Russ and Outland under the City's and County's practice, preventing Benshoof from testifying to evidence that Owen repeatedly admitted Benshoof's equity ownership in his home church in writing. (Ex. #0748-0753)

997.    **Representation of Existing Facts.**    Prior to being unlawfully arrested on July 3, 2024, Benshoof's former attorney, Ann LoGerfo, informed Benshoof that Russ had repeatedly acknowledged to LoGerfo in their private

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Page 231 of 255

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

communications that Owen and Russ did not dispute Benshoof's equity ownership in his home church.

998.    Benshoof engaged in mediation with Owen, through Russ and LoGerfo, to facilitate a pretrial settlement regarding Benshoof's home church.  Owen initially acknowledged Benshoof's equity ownership in his home church by agreeing to pay Benshoof $375,000 to buy Benshoof out of his equity ownership.

999.    By and through their oaths to abide by the Washington BAR Rules of Professional Conduct ("BAR RPC") and the state and federal constitutions, Outland and Russ represented that they would comply with their provisions and prohibitions, as well as comply with Washington laws.

1000.  **Materiality of the Representation.**  The representations of Owen, by and through Russ, was material to Benshoof believing that Owen acknowledged Benshoof's equity ownership in his home church.

1001.  Outland's representations were material to her conduct as a City prosecutor for SMC No. 671384, as Outland was required to provide evidence of personal and subject matter jurisdiction.

1002.  Outland's representations in court, including her false statements under penalty of perjury, were material to the fraud.

1003.  **Falsity of the Representation.**  The representations by Owen and Russ were false, as their subsequent attempts to deny Benshoof's equity ownership and to evict Benshoof revealed.

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Page 232 of 255

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

1004.   Outland's representations were perjurious, and she continued to maliciously prosecute and unlawfully imprison Benshoof without evidence of personal and subject matter jurisdiction.

1005.   **Speaker's Knowledge of its Falsity.**  Owen and Russ knew that their representations that they acknowledged Benshoof's equity ownership were false, as their subsequent actions to deny Benshoof's equity ownership and to evict Benshoof have evidenced.

1006.   Outland knew that her representation that she would comply with state law, abide by the BAR RPC, and uphold the state and federal constitutions were false, as her malicious prosecution of Benshoof has evidenced.

1007.   Outland knew that her statements, including her perjury were false, as RCW 9A.72.080 states that "Every unqualified statement of that which one does not know to be true is equivalent to a statement of that which he or she knows to be false."

1008.   **Speaker's Intended Action.**  Owen and Russ intended for Benshoof to believe their representations so that Benshoof would agree to a pretrial settlement and withdraw the *lis pendens* Benshoof had filed with the County.

1009.   Outland intended for Benshoof to believe Outland's representations so that Benshoof would turn himself in on the $250,000 warrant so that Outland could unlawfully imprison Benshoof indefinitely and prevent Benshoof from suing Outland in federal court.

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

1010.   Outland intended for Benshoof to act, or fail to act, upon her false statements on Jul 5, 2024, and Outland intended for Chin to act upon Outland's perjury with the intent of preventing Benshoof from ever returning to his home.

1011.   **Ignorance of Representative Falsity.**  Benshoof did not know that Owen and Russ were falsely representing that they acknowledged Benshoof's equity ownership.

1012.   Benshoof did not know that Outland would act in violation of state laws to commit perjury and to maliciously prosecute and unlawfully imprison Benshoof.

1013.   Chin did not know that Outland perjured herself to prevent Benshoof from returning to his home.

1014.   **Reliance on Representative Veracity**.  Benshoof relied upon the false representations from Owen and Russ and thereupon engaged in ongoing negotiations by which Owen would buy Benshoof out of his equity ownership.

1015.   Benshoof relied upon Outland's false representations, and in so doing, believed that Outland would not violate Benshoof's right to due process at trial.

1016.   Chin relied upon Outland perjurious statements to grant conditions of release to prevent Benshoof from returning to his home.

1017.   **Right of Reliance.**  As Russ was oathbound to abide by the BAR RPC and state and federal constitutions as a practicing attorney, Benshoof had a right to rely on Russ's false representations in good faith.

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

1018.   As Outland was oathbound to abide by the BAR RPC, state laws, and state and federal constitutions as a practicing attorney, Benshoof and Chin had a right to rely on Outland's false representations.

1019.   **Resulting damage.**   On July 5, 2024, Outland falsely claimed at Benshoof's arraignment hearing that Benshoof had been evicted by court order; therefore, according to Outland, Benshoof should not be permitted to return to his home.  As a condition of his release on November 27, 2024, Outland obtained an order from Chin subjecting Benshoof to immediate and indefinite imprisonment if Benshoof travelled within 1000 feet of his home church.

1020.   "Not only did [Outland, Owen, and Russ] set the events in motion but… they voluntarily provided crucial information, false though it was, at every step of the proceeding." *Harris v. Roderick,* 126 F.3d 1189, 1199 (9th Cir. 1997)

1021.   During Benshoof's nearly five months of unlawful imprisonment, resulting from Outland's malicious prosecution of Benshoof in SMC No. 671384, Benshoof was denied paper, envelopes, and postage with which to file motions, petitions, or briefs related to Benshoof's ongoing litigation of the house fraud in King County Superior Court, the Washington Court of Appeals, and the Washington Supreme Court.

1022.   To date, Benshoof has been unable to return to his home church, unable to access his car, and unable to access nearly all his worldly possessions.

1023.   As Outland acted in absence of personal and subject matter jurisdiction, she is not protected by prosecutorial immunity.  Even if Outland did not act in the

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Page 235 of 255

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

complete absence of jurisdiction, "absolute immunity does not apply "when a prosecutor acts as a complaining witness in support of a warrant application." *Van de Kamp v. Goldstein,* 555 U.S. 335, 343 (2009)  *Price v. Montgomery Cnty., Ky.*, No. 23-649, at *2 (July 2, 2024)

1024.  Because Outland and Russ knowingly acted in bad faith, they cannot claim qualified immunity.

1025.  As a direct, proximate, and foreseeable result of Defendants' fraud, Benshoof suffered irreparable harm and damages for which he is entitled to recover.

## NINETEENTH CAUSE OF ACTION
VIOLATIONS OF FOURTEENTH AMENDMENT

### Denial of Due Process *re* House

42 U.S.C. § 1983

_____

1026.  Benshoof repeats and realleges each of the facts and allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

1027.  In this nineteenth cause of action, defendants named herein include CITY OF SEATTLE ("City"), Andrea Chin, Ryan Ellis, Katrina Outland, Jessica Owen, and Blair Russ ("Defendants").

1028.  The Fourteenth Amendment Due Process Clause prohibited Defendants from violating Benshoof's liberty to live in and enjoy his home, and from denying Benshoof's liberty to access to his personal property located at and within his home without due process of law.

### 1) KCSC No. 22-2-03836-8

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Page 236 of 255

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

1029.   Under the City's practice of maliciously prosecuting Benshoof by rendering criminal assistance to Owen without personal or subject matter jurisdiction, Owen, Outland, and Russ acted in parallel to deny Benshoof's due process right to appear at trial in KCSC No. 22-2-03826-8 preventing Benshoof from exposing Owen's and Russ's fraudulent attempts to deny Benshoof's equitable ownership in his home church.

1030.   Outland suborned Owen's perjury in their extrinsic fraud to obtain a warrant for Benshoof's arrest.   Thereafter, Ellis obtained a facially invalid search warrant to break into Benshoof's home church and unlawfully imprison Benshoof. "Not only did [Ellis, Outland, and Owen] set the events in motion but... they voluntarily provided crucial information, false though it was, at every step of the proceeding." *Harris v. Roderick,* 126 F.3d 1189, 1199 (9th Cir. 1997)

1031.   Because of the $250,000 arrest warrant obtained by Outland in SMC No. 671384, Benshoof could not appear at trial in May 2023 to refute Owen's perjury. Presented with the Faustian bargain of choosing to either: (1) appear in court to testify and be indefinitely, unlawfully imprisoned; or (2) retain his liberty but forego his due process right to testify, Benshoof was forced to choose his liberty, thereby having his right to due process violated by Outland, Owen, and Russ.

1032.   At the house trial, Russ objected to Benshoof's attempts to testify by Zoom video.  Outland, Owen and Russ did ""know[ ] about and acquiesce[d] in the constitutionally defective conduct as part of a common plan" to keep Benshoof from testifying at trial and "set in motion a series of acts by others which [the defendants]

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

reasonably should [have] know[n] would cause others to inflict the constitutional injury" by preventing Benshoof from appearing to testify under color of law. *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)" *Peck v. Montoya*, No. 20-56413, at *21 (9th Cir. Oct. 18, 2022)

1033.   "When [Outland, Owen, and Russ] conspired to construct a false story about the events that took place...they deliberately set in motion a series of events that they anticipated (or should have anticipated) would lead to [Benshoof] being prevented from testifying at the house trial... Not only did [Outland, Owen, and Russ] set the events in motion but, according to the complaint, they voluntarily provided crucial information, false though it was, at every step of the proceeding." *Harris v. Roderick,* 126 F.3d 1189, 1199 (9th Cir. 1997)

1034.   For private individuals such as Owen and Russ "to act "under color of" state law for § 1983 purposes does not require that the defendant be an officer of the State. It is enough that he is a willful participant in joint action with the State or its agents. Private persons, jointly engaged with state officials in the challenged action, are acting "under color" of law for purposes of § 1983 actions. *Adickes* v. *S. H. Kress Co.*, 398 U.S. 144, 152 (1970); *United States* v. *Price*, 383 U.S. 787, 794 (1966)." *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980)

> "Private persons, jointly engaged with state officials in the prohibited action, are acting "under color" of law for purposes of the statute. To act "under color" of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents." *United States v. Price*, 383 U.S. 787, 794 (1966)."

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Page 238 of 255

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

1035.   As the Due Process right to testify at trail and RCW 35.20.270(10 and RCW 7.105.050(1)(a)(d) were clearly established during the controversies in question, prohibiting Defendants from denying Benshoof's class the right to due process in joint action under the City's and County's practices and customs, Owen and Russ engaged with Outland in the prohibited action of threatening Benshoof if he appeared to testify at trial.

1036.   The Supreme Court held in *Dennis v. Higgins*, 498 U.S. 439 (1991) that "we have given full effect to its broad language, recognizing that §1983 'provide[s] a remedy, to be broadly construed, against all forms of official violation of federally protected rights' and 'we refused to limit the phrase to 'personal' rights, as opposed to 'property' rights.'" (citing *Lynch v. Household Finance Corp.,* 405 U.S. 538 (1972)). *Dennis* also held: "The right to enjoy property without unlawful deprivation, no less than the right to speak or the right to travel, is, in truth, a 'personal' right, whether the 'property' in question be a welfare check, a home, or a savings account."

### 2)   *SMC No. 671384*

1037.   Predicated upon Outland obtaining a warrant for Benshoof's arrest, Ellis obtained a facially invalid search warrant, directly causing nearly two dozen SWAT officers to enter Benshoof's home, acting as "integral participants" to abrogate Benshoof's liberty to live in his home church, "and were therefore participants rather than mere bystanders." *Boyd v. Benton County*, 374 F.3d 773, 780 (9th Cir. 2004)

1038.   Ellis's and Outland's "failure to report the [perjury of Owen]" and their obtaining fraudulent warrants without probable cause or jurisdiction "was the actual

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

cause of [the] injury [because] the injury would not have occurred `but for' that conduct." *White v. Roper*, 901 F.2d 1501, 1505 (9th Cir. 1990) (citing W. Prosser W. Keeton, *The Law of Torts* [hereinafter "Prosser Keeton"] § 41, at 266 (5th ed. 1984)).

1039.  On July 5, 2024, Outland falsely claimed that Benshoof had been evicted from his home church and moved the court for conditions of release which prohibited Benshoof from returning to his home church.  Outland's November perjury was material to Owen's fraud attempts to evict Benshoof, and Outland knew her representation to be false.  Outland intended for Chin to act upon Outland's false representation without jurisdiction.

1040.  In 2023, a $118,000 supersedeas bond had previously been paid to stay any attempt by Owen to evict Benshoof from his home church while the lawsuit, KCSC No. 22-2-03826-8, and on July 5, 2024, the case was under appeal to the Washington State Court of Appeals, No. 85465-8.

1041.  After bail was paid on November 10, 2024, to release Benshoof on Electronic Home Detention ("EHD"), Outland obtained a condition of release from Chin which prohibited Benshoof from going within 1000 feet of his home church under the pretense of Outland's claim that Benshoof had been evicted from his home church.  This violated Benshoof's liberty interest in entering his real property, and his liberty interest in accessing and enjoying his personal property contained within his home church.

1042.  To date, the supersedeas bond continues to prohibit evicting Benshoof from his home church, and Benshoof has been unable to return to his home church

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

for nearly six months and unable to recover his belongings under color of law of the City's prosecution of Benshoof.

### 3) Liability

1043.   As Chin and Outland acted in absence of personal and subject matter jurisdiction, Chin is not protected by absolute judicial immunity and Outland is not protected by prosecutorial immunity.

1044.   Even if Outland did not act in the complete absence of jurisdiction, "absolute immunity does not apply "when a prosecutor acts as a complaining witness in support of a warrant application." *Van de Kamp v. Goldstein,* 555 U.S. 335, 343 (2009*)" Price v. Montgomery Cnty., Ky.*, No. 23-649, at *2 (July 2, 2024)

1045.   Because Chin, Ellis, and Outland knowingly acted in bad faith, they cannot claim qualified immunity.

1046.   To date, Benshoof has been unable to return to his home church, unable to access his car, and unable to access nearly all of his worldly possessions, thereby violating his right not to be deprived of life or liberty without due process of law.

1047.   Upon the foregoing, the City failed to train its officials, including Chin, Ellis, and Outland regarding the Fourteenth Amendment prohibition against denying due process to Benshoof's class.

1048.   As a direct, proximate, and foreseeable result of the City's practices and failure to trains its officials, Defendants' foregoing violations of Benshoof's liberty to

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Page 241 of 255

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

live in his home and access his personal property, Benshoof suffered irreparable harm and damages for which he is entitled to recover.

## TWENTIETH CAUSE OF ACTION
VIOLATION OF FOURTEENTH AMENDMENT

### Equal Protection Clause

42 U.S.C. § 1983

_____

1049.   Benshoof repeats and realleges each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

1050.   In this twentieth cause of action, defendants named herein include CITY OF SEATTLE ("City), KING COUNTY ("County, Anthony Belgard, Donovan Broussard, John Duus, Nicholas Evans, Ernest Jensen Spencer Kurz, Adam Losleben, Yves Luc, Grant Mayer, Johnathan Musseau, Brehon Ness, Liliya Nesteruk, Stephen Okruhlica, Dwayne Pirak, Brian Rees, Ty Selfridge, Steven Stone, Trevor Tyler, Michael Virgilio, Andrew West, Chad Zentner, (foregoing people collectively "SWAT officers"), Andrea Chin, Catherine Cornwall, Gregg Curtis, Ryan Ellis, Michael Fox, Tyler Goslin, Pascal Herzer, Jonathan Kiehn, Julie Kline, Richard Lima, Sarah MacDonald, Jacob Masterson, Steven Mitchell, Katrina Outland, Jessica Owen, Blair Russ, Julie Salle, Daniel Schilling, Nathan Shopay, Michael Tracy, and Sarah Turner (all foregoing people collectively "Defendants").

1051.   At all times relevant herein to this cause of action Defendants were state actors, or individuals acting as integral participants in joint action with state actors under color of law, and their conduct was subject to 42 U.S.C. § 1983.

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

1052.   Defendants acted, or failed to act, willfully, maliciously, recklessly, and with callous indifference, conspiring for the purpose of depriving, either directly or indirectly, Plaintiffs of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of Washington from giving or securing to all persons within Washington the equal protection of the laws.

1053.   The County failed to properly train its officials, including Cornwall and Salle, regarding the filing of petitions, and the County failed to properly train its officials regarding the County's practice of denying Benshoof's class the equal protection of the law.

1054.   The County failed to train its officials, including Burke, Curtis, Nurse Doe, and Herzer, regarding Eighth Amendment prohibitions against cruel punishments of pretrial detainees and in so doing, the County failed to train its officials regarding the County's practice of denying Benshoof's class the equal protection of the law.

1055.   The County's practice and failure to train Burke, Cornwall, Curtis, Nurse Doe, Herzer, and Salle was a moving force behind the denial of Benshoof's right to equal protection and was both causation-in-fact and proximate causation of the denying Benshoof's class equal protection of the law.

1056.   The City failed to properly train its officials, including Anthony Belgard, Donovan Broussard, John Duus, Nicholas Evans, Ernest Jensen Spencer Kurz, Adam Losleben, Yves Luc, Grant Mayer, Johnathan Musseau, Brehon Ness, Liliya

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

Nesteruk, Stephen Okruhlica, Dwayne Pirak, Brian Rees, Ty Selfridge, Steven Stone, Trevor Tyler, Michael Virgilio, Andrew West, Chad Zentner,  Andrea Chin, Ryan Ellis, Jonathan Kiehn, Julie Kline, Richard Lima, Sarah MacDonald, Jacob Masterson, Steven Mitchell, Katrina Outland, Daniel Schilling, and Nathan Shopay, regarding denying Benshoof's class the equal protection of the law by or through the following City practices: Practice No. 1; Practice No. 2; Practice No. 3; Practice No. 4; Practice No. 5; Practice No. 6; Practice No. 7; Practice No. 8; Practice No. 9; Practice No. 10; Practice No. 11; Practice No. 12; Practice No. 13; Practice No. 14; Practice No. 16; Practice No. 17; Practice No. 18; Practice No. 19; Practice No. 20; Practice No. 21; Practice No. 22; Practice No. 23; Practice No. 24; Practice No.25; and Practice No. 26.

1057.  The City's practice and failure to train its officials was a moving force behind denying Benshoof's class the equal protection and was both causation-in-fact and proximate causation of the denying Benshoof's class equal protection of the law.

1058.  As a direct, proximate, and foreseeable result of the failure to trains its officials by CITY OF SEATTLE and KING COUNTY, the widespread practice or custom of CITY OF SEATTLE and KING COUNTY officials to deny Benshoof's class the equal protection of the law, and as a result of individual defendants' *ultra vires* acts and failures to act, Benshoof suffered irreparable harm and damages for which he is entitled to recover.

## TWENTY-FIRST CAUSE OF ACTION
### CONSPIRACY

### Obstruction of Justice

42 U.S.C. § 1985(2)

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Page 244 of 255

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

1059.   Benshoof repeats and realleges each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

1060.   In this twenty-first cause of action, defendants named herein include CITY OF SEATTLE ("City), KING COUNTY ("County"), Anthony Belgard, Donovan Broussard, John Duus, Nicholas Evans, Ernest Jensen Spencer Kurz, Adam Losleben, Yves Luc, Grant Mayer, Johnathan Musseau, Brehon Ness, Liliya Nesteruk, Stephen Okruhlica, Dwayne Pirak, Brian Rees, Ty Selfridge, Steven Stone, Trevor Tyler, Michael Virgilio, Andrew West, Chad Zentner, (foregoing people collectively "SWAT officers"), Andrea Chin, Catherine Cornwall, Gregg Curtis, Jane Doe, Jenny Durkan, Ryan Ellis, Michael Fox, Tyler Goslin, Pascal Herzer, Jonathan Kiehn, Julie Kline, Richard Lima, Sarah MacDonald, Jacob Masterson, Steven Mitchell, Katrina Outland, Jessica Owen, Sarah Pendleton, Blair Russ, Julie Salle, Daniel Schilling, Nathan Shopay, Michael Tracy, and Sarah Turner, (all foregoing people collectively "Defendants").

1061.   At all times relevant herein to this cause of action Defendants were state actors, or individuals acting as integral participants in joint action with state actors under color of law, and their conduct was subject to 42 U.S.C. § 1983.

1062.   Individual Defendants acted in concerted or parallel acts with the purpose of impeding, hindering, obstructing, or defeating, in any manner, the laws of Washington and the due course of justice, with intent to deny Benshoof the equal

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

protection of the laws, or to injure Benshoof or his property for lawfully enforcing, or attempting to enforce, the right of Benshoof to the equal protection of the laws.

1063.   A conspiracy between the State and a private party to violate another's constitutional rights may satisfy the "joint action" test for finding the private party liable as a "state actor" under § 1983. 42 U.S.C.A. § 1983.  *Brunette v. Humane Soc'y of Ventura Cnty.,* 294 F.3d 1205 (9th Cir. 2002), as amended on denial of reh'g and reh'g en banc (Aug. 23, 2002)

1064.   Defendants' acts or refusals to act constituted a widespread conspiracy under the practices of the County and City.  "Well-pleaded, nonconclusory factual allegations of parallel behavior" gives "rise to a 'plausible suggestion of conspiracy." *Ashcroft v. Iqbal,* 556 U.S. 662, 680 (2009) Given a prima facie case of a conspiracy, "[t]he existence or nonexistence of a conspiracy is essentially a factual issue that the jury, not the trial judge, should decide." *Adickes v. Kress Co.*, 398 U.S. 144, 176 (1970)

1065.   The County failed to properly train its officials, including Cornwall, regarding the filing of petitions, and the County failed to properly train its officials regarding the County's practice of denying Benshoof's class the equal protection of the law.

1066.   The County failed to train its officials, including Curtis, Nurse Doe, and Herzer, regarding Eighth Amendment prohibitions against cruel punishments of pretrial detainees and in so doing, the County failed to train its officials regarding the County's practice obstructing justice to deny Benshoof the equal protection of the

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Page 246 of 255

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

law, or to injure Benshoof or his property for attempting to enforce the right of Benshoof to the equal protection of the laws.

1067.   The County's practices and failure to train Burke, Cornwall, Curtis, Nurse Doe, and Herzer was a moving force behind the denial of Benshoof's right to equal protection and was both causation-in-fact and proximate causation of obstructing justice to deny Benshoof the equal protection of the law, or to injure Benshoof or his property for attempting to enforce the right of Plaintiffs to the equal protection of the laws.

1068.   The City failed to properly train its officials, including Anthony Belgard, Donovan Broussard, John Duus, Nicholas Evans, Ernest Jensen Spencer Kurz, Adam Losleben, Yves Luc, Grant Mayer, Johnathan Musseau, Brehon Ness, Liliya Nesteruk, Stephen Okruhlica, Dwayne Pirak, Brian Rees, Ty Selfridge, Steven Stone, Trevor Tyler, Michael Virgilio, Andrew West, Chad Zentner,  Andrea Chin, Jenny Durkan, Ryan Ellis, Nicholas Hughes, Jonathan Kiehn, Julie Kline, Richard Lima, Sarah MacDonald, Jacob Masterson, Steven Mitchell, Katrina Outland, Daniel Schilling, and Nathan Shopay, regarding denying Benshoof's class the equal protection of the law by or through the following City practices: Practice No. 1; Practice No. 2; Practice No. 3; Practice No. 4; Practice No. 5; Practice No. 6; Practice No. 7; Practice No. 8; Practice No. 9; Practice No. 10; Practice No. 11; Practice No. 12; Practice No. 13; Practice No. 14; Practice No. 16; Practice No. 17; Practice No. 18; Practice No. 19; Practice No. 20; Practice No. 21; Practice No. 22; Practice No. 23; Practice No. 24; Practice No.25; and Practice No. 26.

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

1069.   The City's practice and failure to train its officials was a moving force behind denying Benshoof's class the equal protection and was both causation-in-fact and proximate causation of the denying Benshoof's class equal protection of the law.

1070.   As a direct, proximate, and foreseeable result of the failure to trains its judges by KING COUNTY, the widespread practice or custom of KING COUNTY officials to deny Plaintiffs the equal protection of the law, and as a result of individual Defendants' *ultra vires* acts and failures to act, Plaintiffs have suffered cruel and inhumane conditions and treatment and continue to suffer from such cruel and inhumane acts, irreparable harm and damages for which they are entitled to recover.

## TWENTY-SECOND CAUSE OF ACTION
### CONSPIRACY

### Deprivation of Rights or Privileges
42 U.S.C. § 1985(3)

_____

1071.   Kurt Benshoof, A.R.W., Brett Fountain, and Urve Maggitti ("Plaintiffs" herein) repeat and reallege each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

1072.   In this twenty-second cause of action, defendants named herein include CITY OF SEATTLE ("City), KING COUNTY ("County"), Anthony Belgard, Donovan Broussard, John Duus, Nicholas Evans, Ernest Jensen Spencer Kurz, Adam Losleben, Yves Luc, Grant Mayer, Johnathan Musseau, Brehon Ness, Liliya Nesteruk, Stephen Okruhlica, Dwayne Pirak, Brian Rees, Ty Selfridge, Steven Stone, Trevor Tyler, Michael Virgilio, Andrew West, Chad Zentner, (foregoing people

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

collectively "SWAT officers"), Andrea Chin, Nathan Cliber, Catherine Cornwall, Gregg Curtis, Jenny Durkan, Ryan Ellis, Michael Fox, Tyler Goslin, Pascal Herzer, Jonathan Kiehn, Julie Kline, Richard Lima, Sarah MacDonald, Jacob Masterson, Steven Mitchell, Katrina Outland, Jessica Owen, Sarah Pendleton, Blair Russ, Julie Salle, Daniel Schilling, Nathan Shopay, Michael Tracy, and Sarah Turner (all foregoing people collectively "Defendants").

1073.   At all times relevant herein to this cause of action Defendants were state actors, or individuals acting as integral participants in joint action with state actors, acting under color of law, and their conduct was subject to 42 U.S.C. § 1985(3).

1074.   Defendants hold a class-based invidious discriminatory animus toward Benshoof in accordance with the City's and County's practices of retaliating against Benshoof for the exercise of his religious beliefs and his petitions for redress.

1075.   Defendants' acts under color of law aimed to deprive Benshoof of the equal enjoyment of constitutional or federal statutory rights secured by the law to all. *Parratt vs. Taylor,* 451 U.S. 527, 535 (1981), *Gomez vs. Toledo,* 446 U.S. 635, 640 (1980)

1076.   42 U.S.C. § 1985(3) covers private conspiracies. *Griffin v. Breckenridge,* 403 U.S. 88 (1971).  See also *Life Ins. Co. of N. Am. v. Reichardt,* 591 F.2d 499 (9th Cir. 1979), *Marlowe v. Fisher Body,* 489 F.2d 1057 (6th Cir. 1973), *Richardson v. Miller,* 446 F.2d 1247 (3rd Cir. 1971)

1077.   Defendants' acts, or willful failures to act, were intended to deny Fountain and Maggitti the privilege of seeking habeas relief on Benshoof's behalf.

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Page 249 of 255

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

1078.   Defendants' acts, or willful failures to act, were intended to deter the attendance or testimony in federal court of Benshoof, as well as numerous defendants named by Benshoof.

1079.   Defendants' acts, or willful failures to act, constituted retaliation against Benshoof for recording documents of Benshoof's sworn testimonial statements in federal court.

1080.   Defendants' parallel acts constituted a conspiracy.   "Well-pleaded, nonconclusory factual allegations of parallel behavior" gives "rise to a 'plausible suggestion of conspiracy." *Ashcroft v. Iqbal,* 556 U.S. 662, 680 (2009)  A conspiracy between the State and a private party to violate another's constitutional rights may satisfy the "joint action" test for finding the private party liable as a "state actor" under § 1983. 42 U.S.C.A. § 1983.  *Brunette v. Humane Soc'y of Ventura Cnty.,* 294 F.3d 1205 (9th Cir. 2002), as amended on denial of reh'g and reh'g en banc (Aug. 23, 2002)

1081.   Defendants, because of their invidious discriminatory animus towards Benshoof's class, willfully, maliciously, recklessly, and with callous indifference, conspired under the City's and County's Practices Nos. 1-26 for the purpose of depriving, either directly or indirectly, Benshoof's right to be free of discrimination in public accommodations, Benshoof's free exercise of his religious beliefs, Plaintiffs' right to petition for redress, Plaintiffs' right of association, Benshoof's right to bear arms, Plaintiffs' right to life and liberty, Benshoof's right to counsel, Benshoof's right

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

to be free from excessive bail or cruel punishments, Benshoof's right to due process, and Plaintiffs' right to equal protection under the law.

1082.   Defendants acted to deny Plaintiffs of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of Washington from giving or securing to all persons within Washington the equal protection of the laws.

1083.   Defendants conspired to deprive Plaintiffs of rights or privileges using misrepresentation, coercion, harassment, intimidation, extortion, malicious prosecutions, and threats of theft, robbery, and unlawful imprisonment.

1084.   As a direct, proximate, and foreseeable result of the failure to trains its officials by the County and City, the widespread practices of County and City officials to deprive Plaintiffs of their rights, and as a result of individual Defendants' *ultra vires* acts and failures to act, Plaintiffs suffered irreparable harm and damages for which they are entitled to recover.

## TWENTY-THIRD CAUSE OF ACTION
### NEGLECT TO PREVENT
### 42 U.S.C. § 1986

1085.   Benshoof and A.R.W. ("Plaintiffs" herein) repeat and reallege each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

1086.   In this twenty-third cause of action, defendants named herein include Anthony Belgard, Donovan Broussard, John Duus, Nicholas Evans, Ernest Jensen

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

Spencer Kurz, Adam Losleben, Yves Luc, Grant Mayer, Johnathan Musseau, Brehon Ness, Liliya Nesteruk, Stephen Okruhlica, Dwayne Pirak, Brian Rees, Ty Selfridge, Steven Stone, Trevor Tyler, Michael Virgilio, Andrew West, Chad Zentner, (foregoing people collectively "SWAT officers"), Andrea Chin, Catherine Cornwall, Gregg Curtis, Jane Doe, Ryan Ellis, Pascal Herzer, Katrina Outland, Julie Salle, Daniel Schilling, (all foregoing people collectively "Defendants").

### Neglect to Prevent § 1983

1087. SWAT officers, Ellis, Lerman, Outland, and Owen knowingly acted as integral participants in the damage to Benshoof's home and personal property, thereby neglecting to prevent the excessive use of force, trespass, and unlawful arrest and imprisonment of Benshoof under a facially invalid search warrant.

1088. Chin, Ellis, Hughes, Outland, and Owen knowingly acted as integral participants in the malicious prosecution of Benshoof without personal or subject matter jurisdiction, thereby neglecting to prevent malicious prosecution and unlawful imprisonment of Benshoof.

1089. Curtis, Nurse Doe, and Herzer knowingly acted as integral participants to subject Benshoof to cruel and unusual punishments, thereby neglecting to prevent such cruelties.

1090. Chin, Curtis, Herzer, and Outland knowingly acted to deny Benshoof access to office supplies and equipment to prevent Benshoof from litigating his municipal, state and federal cases, thereby denying Benshoof due process and neglecting to prevent such denials.

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

1091.   Cornwall and Salle knowingly acted to deny Benshoof's class the right to file petitions or have such petitions adjudicated, thereby neglecting to prevent such denials of due process.

1092.   Chin and Schilling knowingly acted to violate the Civil Rights Act of 1964 by maliciously prosecuting Benshoof for shopping without a face covering, thereby neglecting to prevent the malicious prosecution of Benshoof.

1093.   By and through the fraudulent ORAL, Cliber, Lerman, Owen, Russ, Tracy, and Turner knowingly acted to extort Benshoof of thousands of dollars, threaten Benshoof with unlawful imprisonment, and violate Benshoof's right to petition for redress, thereby neglecting to prevent the aforesaid violations.

1094.   Chin, Cliber, Ellis, Lerman, Outland, Owen, Russ, Tracy, and Turner, having knowledge that Cliber suborned Owen's perjury in their extrinsic fraud which enabled Lerman and Owen to kidnap A.R.W. under color of law, neglected to act to prevent the ongoing kidnapping of A.R.W. and neglected to prevent Benshoof from being unlawfully arrested and imprisoned for attempting to arrest the kidnapping of A.R.W.

### Neglect to Prevent § 1985(2)

1095.   Defendants had actual knowledge of the § 1985(2) conspiracy and, despite having power to prevent or aid the preventing of the commission of the same, refused or neglected to act to prevent acts impeding, hindering, obstructing, or defeating the due course of justice in Washington; that is, the acts intended to deny Plaintiffs the equal protection of the laws, or to injure them or Benshoof's property

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

for Benshoof attempting to enforce the rights Benshoof's class and of A.R.W. to the equal protection of the laws.

### Neglect to Prevent § 1985(3)

1096.  Defendants had actual knowledge of the § 1985(3) conspiracy and, despite having power to prevent or aid the preventing of the commission of the same, refused or neglected to do so; that is, the acts intended to deprive, either directly or indirectly, Plaintiffs of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of Washington from giving or securing to all persons within such State or Territory the equal protection of the laws.

1097.  By reason of the foregoing, and as a direct, proximate, and foreseeable result of Defendants' neglect to prevent wrongs which were conspired to be done, and were done, Plaintiffs suffered irreparable harm and damages.

## V.   DEMAND FOR RELIEF

*WHEREFORE*, Plaintiffs demand judgment as follows:

A. An order declaring that Defendants' acts or omissions, described herein, violated the First, Second, Fourth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution;

B. Compensatory damages against CITY OF SEATTLE and KING COUNTY, in an amount to be determined at trial;

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com

C. Compensatory damages against all individual Defendants jointly and severally, in their individual capacities, in an amount to be determined at trial;

D. Punitive damages against all individual Defendants, in their individual capacities in an amount to be determined at trial;

E. Reasonable costs and fees, including fees in accordance with RCW 4.84; 42 U.S.C. § 2000a-3(b); 28 U.S.C. § 1927; 28 U.S.C. § 2412(d)(1)(A); Fed.R.Civ.P. 11(1); Fed.R.Civ.P. 54(d); and any other applicable law.

F. Pre- and post-judgment interest as allowed by law;

G. Any other relief this Court deems just and proper.

## VI.    DEMAND FOR TRIAL BY JURY

Plaintiffs demand a trial by jury pursuant to the Seventh Amendment to the United States Constitution and pursuant to Federal Rule of Civil Procedure 38(b).

## VERIFICATION

I, Plaintiff Kurt A. Benshoof, do hereby declare that the foregoing facts are true and correct to the best of my knowledge, under penalty of perjury of the laws of the United States.  Executed this tenth day of January in the year 2025, in the city of Mountlake Terrace, in the county of Snohomish, in the state of Washington.


By: _____

Kurt Benshoof, Co-Plaintiff

FIRST AMENDED COMPLAINT FOR DAMAGES
WAWD No. 2:24-cv-00808-JHC

Page 255 of 255

Kurt Benshoof, Co-Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
Phone: (425) 553-8112
Email: kurtbenshoof@gmail.com