UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

Mr. Kurt A. Benshoof,
A.R.W. By and Through His Father, Mr.
Kurt A. Benshoof, Brett Fountain, Urve
Maggitti,

              Plaintiffs,

v.                                     Case No. 2:24-cv-00808-JHC

ANDREA CHIN, et al.
              Defendants.

## JUDICIAL NOTICE
### Fed. R. Evid. 201

### AFFIDAVIT of URVE MAGGITTI Ref: Co-Plaintiff KURT BENSHOOF

**Co-Plaintiff Urve Maggitti hereby states the following facts:**

Co-Plaintiff Kurt Benshoof is currently incarcerated at the King County Correctional Facility in Seattle.

    1. On February 24, 2025, Plaintiff Kurt Benshoof was sentenced by the City of Seattle Municipal Court, located in King County and taken into immediate custody before the completion of his sentencing hearing.

    2. Plaintiff Kurt Benshoof was immediately and inexplicably placed into maximum security confinement, on Floor 11 and continues to be held in solitary confinement without access to legal resources, including writing materials, a computer/tablet, internet.

    3. The plain language of Rule 201( c)(2), (f) is mandatory.

    4. Court may must judicial notice as per Rule 201( c)(2), (f) of "matters of public record", pertinent to the case at hand - including other state or federal court proceedings. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001) (citation omitted); *Duckett v. Godinez*, 67 F.3d 734, 741 (9th Cir. 1995) ("We may take notice of proceedings in other courts whether in the federal or state systems.").

1

5. Court is hereby moved to take Judicial Notice of " DEFENDANT'S SENTENCING MEMORANDUM" - see attached EXHIBIT A

6. Court is hereby moved to take Judicial Notice of "ORDER OF COMMITMENT"  - see attached EXHIBIT B

7. Plaintiff Benshoof continues to be held in solitary confinement since February 24, 2025.

8. To date Plaintiff Benshoof is without any access to legal resources, including paper, pen envelopes, a computer/tablet, access to law library, and he has been unable to communicate with his attorney, Robert E. Barnes.

9. The Defendants City of Seattle and King County are actively violating Plaintiff Benshoos's right to access court for redress of grievances under First Amendment.

10. Petition Clause of the First Amendment guarantees "the right of the people... to petition the Government for a redress of grievances." U.S. CONST. amend. I. The Supreme Court has affirmed that this right includes meaningful access to the courts (Marbury v. Madison, 5 U.S. 137, 147 (1803).

11. Plaintiff Kurt Benshoof is unable to litigate the instant case, to submit any responsive motions due to the ongoing constitutional violations against him.

## **VERIFICATION**

Pursuant to 28 U.S. Code § 1746 (1) 1, Urve Maggiti, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct

Respectfully submitted on this day of April 7, 2025, by

Urve Maggitti, Plaintiff
244 Blackburn Drive, Berwyn, PA 19312
urve.maggitti@gmail.com

**ACKNOWLEDGMENT**
**AFFIDAVIT**
**(Verification)**

STATE OF PENNSYLVANIA   )
COUNTY OF CHESTER   )

I, Urve Maggitti, the undersigned Affiant hereto, do hereby declare under penalties of perjury under the laws of the Commonwealth of Pennsylvania and the United States of America, that the foregoing accounting of facts are true and correct to the best of my current knowledge and belief.

I am over the age of 18 years of age, am a resident of the Commonwealth of Pennsylvania, have personal knowledge of the matters of this affidavit, and am capable of making such affidavit.

Pursuant to 28 U.S. Code § 1746 (1) I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on _____April_____, _7___, /2025/

Signed:_____
          Urve Maggitti

Notary as JURAT CERTIFICATE

State of Washington_____
BEFORE ME personally appeared Urve Maggitti who, being by me first duly sworn, executed the foregoing in my presence and stated to me that the facts alleged therein are true and correct according to her own personal knowledge.

_____
Notary Public,
My commission expires: 06-25-2028

ABNER GUERRERO
NOTARY PUBLIC
STATE OF WASHINGTON
LICENSE NUMBER 24021151
MY COMMISSION EXPIRES
06/25/2028

Page 3

## <u>CERTIFICATE OF SERVICE</u>

**Aric S Bomsztyk**
TOMLINSON BOMSZTYK RUSS
1000 SECOND AVENUE
STE 3660                                    representing        **Jessica Owen**
SEATTLE, WA 98104                                               *(Defendant)*
206-621-1871
asb@tbr-law.com


**Carson Welsh Canonie**
SEATTLE CITY ATTORNEY'S OFFICE
701 FIFTH AVENUE
SUITE 2050                                   representing       **City of Seattle**
SEATTLE, WA 98104-7097                                          *(Defendant)*
206-733-9239
carson.canonie@seattle.gov


**Darren Anthony Feider**
SEBRIS BUSTO JAMES
15375 SE 30TH PL
STE 310                                      representing       **Michael Fox**
BELLEVUE, WA 98007                                              *(Defendant)*
425-450-3388
dfeider@sbj.law


                                                               **Steven Mitchell**
                                                               *(Defendant)*


                                                               **Tyler Goslin**
                                                               *(Defendant)*


**Monica Ghosh**
SEBRIS BUSTO JAMES
15375 SE 30TH PL                             representing       **Michael Fox**
STE 310                                                         *(Defendant)*

**Sarah N Turner**
GORDON REES SCULLY MANSUKHANI
LLP (SEATTLE)
701 FIFTH AVE STE 2100
SEATTLE, WA 98104
206-695-5100
sturner@grsm.com

representing

**Blair Russ**
*(Defendant)*

**Nathan Cliber**
*(Defendant)*

**Peggy C Wu**
KING COUNTY PROSECUTING
ATTORNEY'S OFFICE (FIFTH AVE)
701 FIFTH AVE
STE 600
SEATTLE, WA 98104
206-263-4008
pwu@kingcounty.gov

representing

**Marshall Ferguson**
*TERMINATED: 11/15/2024*
*(Defendant)*

**King County**
*(Defendant)*

**Catherine Cornwall**
*(Defendant)*

**Julie Salle**
*(Defendant)*

**Pascal Herzer**
*(Defendant)*

# EXHIBIT A

**IN THE MUNICIPAL COURT FOR THE CITY OF SEATTLE**

CITY OF SEATTLE,                    )
                                    )    Nos. 671384, 676175, 676207,
                                    )    676216, 676463, 676492
                                    )
                                    )
                    Plaintiff,      )
                                    )    **DEFENDANT'S SENTENCING**
                                    )    **MEMORANDUM**
            v.                      )
                                    )
KURT BENSHOOF,                      )
                                    )
                    Defendant       )

COMES NOW the Defendant Kurt Benshoof, by and through counsel of record, Robert E. Barnes, and hereby respectfully files this sentencing memorandum for the Court's consideration at sentencing. Defense seeks a time-served sentence.

## I.    RESPONSE TO CITY'S RECOMMENDATION

How much is enough? Mr. Benshoof has lost his car, lost his home, lost the right to contact his son, and lost his liberty for months in jail. He faces another trial on related charges. The Prosecution now seeks an unprecedented, harsh, punitive six-year prison sentence with de facto termination of parental rights in a 5-year no contact order with his own son – for what?  A father texting his teenage son, often at his son's initiative and

DEFENDANT'S SENTENCING MEMORANDUM

request. The son often sought out the contact, and never complained about the contacts. Instead of the facts of this case, the government focuses on everything but this case, while ignoring the punishment that has already been imposed on the defendant. A just sentence conforming to Constitutional principles calls for a time served sentence, not a sentence longer than what some rapists get.

The defendant is a middle-aged man with little criminal history. Imprisoning him at state expense for the next half-decade or more will not serve the state's interest in rehabilitative justice, but increase the risk to the people as an incarceration-focused system of cancerous, carceral justice distorts options and alternatives for the individual imprisoned without increasing the security or reducing the expense incurred by the people. The eager mass imprisonment of non-violent defendants proved over the last several decades to undermine justice more than empower it. The sentence the government seeks exceeds any they can cite, demanding consecutive sentencing rather than concurrent despite the conduct all concerning the same court order at issue in a compressed time frame. That is the first legal error they invite, but not the last.

While the government objects to the defendant constantly seeking out the courts for remedy, the government ignores his Constitutional right to do so, including the defendant challenging the service of process of the no-contact order at issue in this case, and challenged its constitutionality and jurisdictional authority as well. No one – until now – has sought to imprison someone for petitioning the court for redress of

DEFENDANT'S SENTENCING MEMORANDUM

grievances, a First Amendment protected right. Indeed, the entire case is predicated on a serious Constitutional offense – punishing a defendant for asserting his fundamental right to parent. A court cannot circumvent the Constitutional and statutory processes for terminating parental rights with "no contact" orders. The government's sentence, if imposed, raises additional Constitutional questions, including terminating parental rights without due process of law and punishing defendants based on the individual interest of prosecutors and courts because the defendant brought legal complaints against them. Aside from the Constitutional concerns, the government's complaints about the defendant's pro se litigation ignores that this case doesn't concern those matters and that the defendant had already been punished. Mr. Benshoof has already been penalized with denial of the right to sue without advance court permission, dismissal of his petitions, denial of his complaints and appeals, and financial fines.

The government asks this court to commit the very abuses of power that led to standardizing sentencing in the first place: the need to treat similarly situated people similarly. The government's punitive sentencing request invites yet another legal error: it demands punishment because the defendant has brought legal action against prosecutors and judges. This demand violates the defendant's right to petition the government for redress of grievances, a Constitutional policy that prevents people seeking extra-legal remedies. A time served sentence conforms to other comparable cases, Constitutional principles, and just sentencing.

DEFENDANT'S SENTENCING MEMORANDUM

3

## II.   SENTENCING STANDARDS

Article I, section 14 of the Washington Constitution provides that "[e]xcessive bail shall not be required, excessive fines imposed, nor cruel punishment inflicted." The question is whether the punishment is grossly disproportionate to the offense committed. *State v. Thorne*, 129 Wash.2d 736, 776, 921 P.2d 514. In this inquiry, what is considered is (1) the nature of the offense; (2) the legislative purpose behind the sentencing statute; (3) the punishment the defendant would have received in other jurisdictions for the same offense; and (4) the punishment meted out for other offenses in Washington. *State v. Fain*, 94 Wash. 2d 387, 397, 617 P.2d 720 (1980). No single factor is dispositive. *State v. Gimarelli*, 105 Wash.App. 370, 380-81, 20 P.3d 430 (2001). This incorporates Constitutional standards governing due process of law, and this case impacts the right to petition the government for redress of grievances as well as the fundamental right to parental contact. Substantive due process serves as the source of an array of these constitutional rights, safeguarding individual rights listed in the Bill of Rights, including fundamental right for a parent to contact their child and the right against punishment based on Constitutionally protected activity. *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997) (quoting *Moore v. City of E. Cleveland*, 431 U.S. 494, 503 (1977) (plurality opinion); *Palko v. Connecticut*, 302 U.S. 319, 325, 326 (1937)).

A defendant can also challenge a sentence imposed on grounds that the sentence violates the First Amendment. *Dawson v. Delaware*, 503 U.S. 159, 163 (1992). "The

DEFENDANT'S SENTENCING MEMORANDUM

1    government may not prohibit the expression of an idea simply because society finds the

2    idea itself offensive or disagreeable." *Texas v. Johnson*, 491 U.S. 397, 414 (1989). As the

3    Dawson Court noted, the First Amendment: "prevents the State from criminalizing

4    certain conduct in the first instance. But it goes further than that . . . it similarly prevents

5    Delaware here from employing evidence of a defendant's abstract beliefs at a sentencing

6    hearing when those beliefs have no bearing on the issue being tried." *Dawson v.*

7    *Delaware*, 503 U.S. 159, 168 (1992).

8    **III.    ARGUMENT**

9    　　　The Prosecution fails to cite a single analogous case to support its extraordinary

10   punitive sentencing requests. It cannot find a single case where a Washington citizen lost

11   his parental rights and was sent to prison (let alone for six years) for texting his own

12   teenage son when the son never protested, but often sought out the contact.

13   　　**A.    The Sentencing Standards Do Not Call For An Unprecedently Harsh,
   Punitive Prison Sentence.**

14   　　　First, the nature of the offense does not demand a six-year prison sentence, and the

15   prosecution cannot cite a single case in the state or even the country that is similarly

16   situated for such a sentence. The offense is a father answering the texts of his teenage

17   son. The teenage son has never complained about his father's contacts, never supported

18   the no-contact order, and often sought out his father's responses. The order itself is

19   Constitutionally questionable and the actual service of it in dispute. This factor does not

20   call for a six-year prison sentence.

21   DEFENDANT'S SENTENCING MEMORANDUM

Second, the legislative purpose of the sentencing discourages using prison as the one-size-fits-all method of justice, as it undermines restorative justice, comes at a high cost to the people, and, generally, doesn't achieve public interest, as it often locks people into a lifetime of crime. The legislative purpose of the no-contact orders was for cases other than parents with a teenage son who sought the contact, given the unique Constitutional issues implicated thereby. Indeed, the prosecution makes clear their purpose by demanding a harsh sentence because the Defendant asserted his right to petition the courts for redress of grievances, but that would undermine, not aid, the legislative purpose here. The purpose of the statute isn't to scare people from coming to the courts to seek remedy to their social conflicts, but to keep courts open.

The third factor disfavors a harsh sentence, as the prosecution's sentencing requests are clearly punitive and do not match "the punishment meted out for other offenses in Washington." *Fain,* 94 Wash.2d at 397. A simple comparison to felony sentencing guidelines makes this clear: the Prosecution's proposed sentence *exceeds* the five year mandatory minimum for first degree rape, RCW § 9.94A.540(c), and is more than half of the the ten-year statutory maximum for *attempted first degree rape*. RCW 9A.20.021. Indeed, counsel could find no example of any court in the country using no-contact orders to circumvent the necessary procedures required to terminate a father's parental rights over his teenage son, least of all criminally prosecuting someone for it. Generally, any contempt case is prosecuted as a single case, not 80+ separate charges.

DEFENDANT'S SENTENCING MEMORANDUM

1   By choosing to bring more than 80 different counts of criminal contempt with the same

2   underlying factual pattern, the Prosecution engages in textbook overcharging for the

3   purposes of maximizing incarceration rather than achieving restorative justice or doing

4   what's best for Mr. Benshoof's son or the community. Despite this, the Prosecution

5   attempts to look reasonable by claiming that "this Court has authority to sentence him to

6   the maximum term on this case—81 consecutive years in jail" but that they're *only*

7   requesting six years of jail time and a host of penalties. Prosecution's Sentencing Memo

8   at 20. The punishment that the defendant would receive in other jurisdictions–like others

9   similarly situated in Washington– is Mr. Benshoof's time served or less, and the

10  government doesn't credibly claim otherwise.

11          Critically, the prosecution's core legal error is the demand for rare, consecutive

12  sentencing. The Prosecution refuses to acknowledge that these offenses should be treated

13  as "encompass[ing] the same criminal conduct" and thus "those current offenses shall be

14  counted as one crime." RCW § 9.94A.589(1)(a). In every meaningful way these charges

15  are fundamentally based on the same factual predicates: they all are all based on Mr.

16  Benshoof's violation of the contested no-contact order through his texts to his own son.

17  Indeed, the Washington Supreme Court has held that there is "there is one clear category

18  of cases where two crimes will encompass the same criminal conduct-'the repeated

19  commission of the same crime against the same victim over a short period of time.'"

20  *State v. Porter*, 133 Wash. 2d 177, 181, 942 P.2d 974, 976 (1997) (en banc) (quoting 13A

21  DEFENDANT'S SENTENCING MEMORANDUM

Seth Aaron Fine, Washington Practice § 2810 at 112 (Supp.1996)). Mr. Benshoof's intent to communicate with his son was the same, his conduct (communicating with his son in violation of a court order) was the same, and these communications took place over a short period of time. This is precisely the sort of case where the law states that sentences "*shall be served concurrently*." RCW § 9.94A.589(1)(a) (emphasis added).

Finally, middle aged men with little criminal history make prison a self-defeating, recidivist camp for a life of crime at the public expense; it could have no deterrent impact on what the prosecution complains about – the defendant filing suits or complaints in the legal system. By contrast, the punishment the state calls for would forever cut off a parent from his teenage son during his teenage years without the opportunity for reconciliation (a son who wants to have a relationship with his father), remove a productive member of society into a costly burden on society, and send a very counter-productive message to the pro se community that the courts are closed (at risk of imprisonment) and the message will be that they should seek extra-legal remedies instead. By contrast, a time served sentence that maintains court control through probation more equitably suffices as a just, balanced sentence.

**B.    Punishing the Defendant for Contact with His Son Violates His Fundamental Constitutional Right of Parenting.**

The no-contact order with Mr. Benshoof's son violates the fundamental right to parenthood under both Washington state and federal law. The prosecution seeks to compound this Constitutional error by demanding this court issue a no contact order for

DEFENDANT'S SENTENCING MEMORANDUM

talking to his own son as punishment for a prior unconstitutional order that prohibited contact with his son.

Few fundamental rights are more important than the parental right to contact, control and custody of their minor children. Indeed, "[a] parent's right to control and to have the custody of his children is a fundamental civil right which may not be interfered with without the complete protection of due process safeguards." *In re Dependency of K.N.J.*, 171 Wash. 2d 568, 574, 257 P.3d 522, 526 (2011) (quoting *Halsted v. Sallee*, 31 Wash. App. 193, 195, 639 P.2d 877 (1982)). Mr. Benshoof, as a "natural parent, has a fundamental liberty interest in his custody and care of" his son. *Id.* (quoting *In re Custody of C.C.M.*, 149 Wash.App. 184, 203, 202 P.3d 971 (2009)). "Procedures used to terminate the relationship between parent and child must meet the requisites of the due process clause of the Fourteenth Amendment to the United States Constitution." *Id.* at 574 (quoting *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 24–32 (1981)). Indeed, the Court of Appeals has previously noted that relocation and dependency proceedings are distinguishable from termination proceedings because they do not "sever all contact between the nonresidential parent and child." *In re Marriage of Wehr*, 165 Wash. App. 610, 615, 267 P.3d 1045, 1048 (2011).

Here, however, the no-contact order at issue in the case, and the no contact order recommended by the prosecution *would* sever all contact between Mr. Benshoof and his son: without Due Process or the required statutory termination procedures.

DEFENDANT'S SENTENCING MEMORANDUM

"Maintaining the family unit should be the first consideration in all cases of state intervention into children' lives." *In re Dependency of K.N.J.*, 171 Wash. 2d 568, 575, 257 P.3d 522, 526 (2011) (quoting Comm. on Soc. and Health Servs., Substitute H. Concurrent Res. 46, at 1, 44th Leg., 2d Ex.Sess. (Wash. Feb. 6, 1976)). As a result, Washington requires an extensive, multi-step process before severing parental rights. *Id.* at 576-578. At every step of the process, the State bears the full burden of proof: to protect the "vital right" of parental custody, requiring that every fact at issue be shown to "by evidence to be 'highly probable.'" *In re M.A.S.C.*, 197 Wash. 2d 685, 698, 486 P.3d 886, 893 (2021) (quoting *In re Welfare of Sego*, 82 Wash. 2d 736, 739, 513 P.2d 831 (1973)). Indeed, before terminating parental rights, the State must hold a hearing to determine whether the child is a dependent. *Id.* at 576. The Court must determine whether there should be court supervision and hold hearings every six months "to review the progress of the parties and determine whether court supervision should continue." *Id*; RCW 13.34.138(1). Only once the Court determines that "remedial measures to preserve and mend family ties" are unsuccessful can the Court even consider terminating the parental relationship. *K.N.J.*, 171 Wash. 2d at 576.

Before terminating the parental relationship, the government must satisfy a two-prong test. *Id.* The State must demonstrate by "clear, cogent, and convincing evidence" that all six elements of RCW 13.34.180(1) are met:

>     (a) That the child has been found to be a dependent child;

DEFENDANT'S SENTENCING MEMORANDUM

(b) That the court has entered a dispositional order pursuant to RCW 13.34.130;

(c) That the child has been removed or will, at the time of the hearing, have been removed from the custody of the parent for a period of at least six months pursuant to a finding of dependency;

(d) That the services ordered under RCW 13.34.136 have been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided;

(e) That there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future . . . ;

(f) That continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home.

*Id.* Only after the State proves that "the first prong is satisfied may the court reach the second" prong and determine whether termination is in the best interest of the child. *Id.* at 577.

None of these steps ever occurred: the prior court order stripped the Defendant of his fundamental rights without conforming to Constitutional or statutory process, and punishing him for asserting that right is as problematic as now seeking to create a new no contact order stripping him of those fundamental rights. The Prosecution seeks to skip right over all of the Due Process protections built into a termination procedure and skip directly to the *results* of the termination: preventing Mr. Benshoof from seeing or contacting his son ever again. The Prosecution is essentially demanding a constructive termination of the parental relationship. Worse still, they demand this *against* the wishes

DEFENDANT'S SENTENCING MEMORANDUM

11

of Mr. Benshoof's son – who has the legal right to choose which parent he wishes to

retain custody.

### C.    The Prosecution Demands a Statutorily and Constitutionally Inappropriate Sentence to Punish Mr. Benshoof for "Vexatiously" Asserting His Constitutional Right to Parent and His Right to Petition the Government for the Redress of Grievances.

Not only does the Prosecution demand a disproportionate sentence, it argues for

improper bases for sentencing. The implicit message throughout the government's

sentencing brief is to punish the defendant because he has filed suits and complaints

concerning prosecutors and judges. The First Amendment forbids the Prosecution from

"employing evidence of a defendant's abstract beliefs at a sentencing hearing when those

beliefs have no bearing on the issue being tried." *Dawson*, 503 U.S. at 168. The

Prosecution fails to act as "minister of justice" but instead behaves as "an advocate."

*State v. Craven*, 15 Wash. App. 2d 380, 385, 475 P.3d 1038, 1041 (2020). The

Prosecution's sentencing arguments completely abandon its role as "a quasi-judicial

officer, representing the People of the state." *Stout v. Felix*, 198 Wash. 2d 180, 206, 493

P.3d 1170, 1182 (2021) (quoting *State v. Monday*, 171 Wash. 2d 667, 676 n.2, 257 P.3d

551 (2011)). In fact, the Prosecution essentially calls for the Court to act in a way that is,

if not improper, creates an "appearance of impropriety." WA R CJC 1.

The Prosecution improperly blames Mr. Benshoof for "re-initiat[ing] his attempts

to vacate the original parentage case." Prosecution's Sentencing Memo p. 15. Mr.

Benshoof's attempt to exercise his legal rights is not a proper basis for a sentencing - he

DEFENDANT'S SENTENCING MEMORANDUM

12

is already forbidden from initiating lawsuits without judicial permission, and has been

punished in numerous other ways. Indeed, the Prosecution spends much of its

Sentencing Memo harping on improper and irrelevant details. As part of its strategy to

improperly tar Mr. Benshoof with irrelevant and misleading epithets, the Prosecution

repeatedly brands Mr. Benshoof a "vexatious litigant" in its Sentencing Memo, as

though that is a proper consideration for this Court. Indeed, the Prosecution is actively

demanding that Mr. Benshoof receive a *harsher sentence* because he filed ethics

complaints against *them* and against judges. This raises dual Constitutional concerns –

First Amendment selective and retaliatory punishment and the due process concerns that

those with a personal interest bias against the defendant are those seeking and

controlling his punishment. This is the epitome of a conflict of interest: yet another

demonstration of how the punitive, unprecedented sentence offends core Constitutional

first principles.

## CONCLUSION

How much is enough? It is apparent the legal authorities of the Seattle area dislike

Benshoof's pro se litigant and Covid policy protest past, but that is not the basis for

imposing the harshest punishment ever imposed on a middle aged defendant with very

little criminal history, who has already lost his ability to seek judicial redress without

advance judicial permission, lost his car, lost his residence, and lost custody of his son,

DEFENDANT'S SENTENCING MEMORANDUM

1    when that sentence will undermine confidence in the legal system and not be a truly just

2    sentence. Time served and probation suffice for that purpose.

3

4       DATED this 21st day of February 2025

5

6                                              Respectfully submitted,

7                                              /s/ Robert E. Barnes

8                                              Robert E. Barnes, Esq.
                                               *Pro Hac Vice*
9                                              Attorney for Defendant Kurt Benshoof
                                               700 S. Flower St., Ste. 1000
10                                             Los Angeles, CA 90017

11

12

13

14

15

16

17

18

19

20

21   DEFENDANT'S SENTENCING MEMORANDUM

                                          14

# EXHIBIT B


**Seattle**
Municipal Court

**The City of Seattle**, Plaintiff

vs

**BENSHOOF, KURT A**, Defendant

DOB: 07-18-1969

**Order of Commitment**

☐ Amended

Case: **671384**

Police Report Number – 23-021770

UCN: 10518097

BA Number: 2024008067

**Charge(s):**

| # | Statute | Descriptions |
|---|---------|--------------|
| 1 | R9A.46.110 | STALKING    (DM) |
| 2 | R9A.46.110 | STALKING    (DM) |
| 3 | 12A.06.300 | CUSTODIAL INTERFERENCE   **(364/0)** |
| 4 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER (DM) |
| 5 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER (DM) |
| 6 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER (DM) |
| 7 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER (DM) |
| 8 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER (DM) |
| 9 | R07.105.450 | Violation of a Vulnerable Adult Protection Order - Invalid **(364/156)** |
| 10 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER **(364/156)** |
| 11 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER **(364/156)** |
| 12 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER **(364/156)** |
| 13 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER **(364/156)** |
| 14 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER **(364/156)** |
| 15 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER (DM) |
| 16 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER (DM) |
| 17 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER (DM) |
| 18 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER  (DM) |
| 19 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER (DM) |
| 20 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER (DM) |
| 21 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER (DM) |
| 22 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER (DM) |
| 23 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER (DM) |
| 24 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER (DM) |
| 25 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER (DM) |
| 26 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER (DM) |
| 27 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER (DM) |
| 28 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER (DM) |
| 29 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER (DM) |
| 30 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER (DM) |
| 31 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER (DM) |
| 32 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER (DM) |
| 33 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER (DM) |
| 34 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER (DM) |
| 35 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER (DM) |



| 36 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER (DM) |
| 37 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER  (DM) |
| 38 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER (DM) |
| 39 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER (DM) |
| 40 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER (DM) |
| 41 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER  (DM) |
| 42 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER (DM) |
| 43 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER (DM) |
| 44 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER (DM) |
| 45 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER (DM) |
| 46 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER (DM) |
| 47 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER (DM) |
| 48 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER  (DM) |
| 49 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER  (DM) |
| 50 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER (DM) |
| 51 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER (DM) |
| 52 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER (DM) |
| 53 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER (DM) |
| 54 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER  (DM) |
| 55 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER (DM) |
| 56 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER  (DM) |
| 57 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER (DM) |
| 58 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER (DM) |
| 59 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER (DM) |
| 60 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER (DM) |
| 61 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER(DM) |
| 62 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER (DM) |
| 63 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER (DM) |
| 64 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER  (DM) |
| 65 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER(DM) |
| 66 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER  (DM) |
| 67 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER (DM) |
| 68 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER (DM) |
| 69 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER (DM) |
| 70 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER  (DM) |
| 71 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER  (DM) |
| 72 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER  (DM) |
| 73 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER (DM) |
| 74 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER  (DM) |
| 75 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER (DM) |
| 76 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER  (DM) |
| 77 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER  (DM) |
| 78 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER (DM) |
| 79 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER  (DM) |
| 80 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER (DM) |
| 81 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER (DM) |
| 82 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER (DM) |
| 83 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER (DM) |

**Seattle**
Municipal Court

| 84 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER(DM) |
| 85 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER(DM) |
| 86 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER(DM) |
| 87 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER (DM) |
| 88 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER (DM) |
| 89 | R7.105.450 | VIOLATION OF A VULNERABLE ADULT PROTECTION ORDER(DM) |

It is hereby ordered that the defendant is:

[X] **Committed to King County Jail:**

☒ Sentenced to **724** days with credit for time served.

☒ To run **consecutively** with **each count**

☒ No Contact with: **A.R.W. DOB: 04/22/2009;  Jessica Owen DOB: 11/23/1975; Magalie Lerhman DOB: 01/31/1986**.

☒ Other: **To be given credit from 07/03/2024-11/27/2024 on BA 2024008067, 148 days**

**Next Hearing Date:** – in .

**This order supersedes all prior Orders of Release/Orders Setting Bail/Commitments on this case.**

**February 24, 2025**
Court Staff: **AA**

*Andrea Chin*
_____

Courtroom: **10th Floor - 1003**        Judge: **Andrea Chin**