UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF
WASHINGTON AT SEATTLE

Mr. Kurt A. Benshoof,
A.R.W. By and Through His Father,
Mr. Kurt A. Benshoof, Brett
Fountain, Urve Maggitti
               Plaintiffs,

v.

ANDREA CHIN, et al.
               Defendants.

Case No. 2:24-cv-00808-JHC

NOTE ON MOTION CALENDAR: June 30, 2025
ORAL ARGUMENT

**RULE 59(e) MOTION TO ALTER OR AMEND JUDGMENT; ALTERNATIVE MOTION FOR RECONSIDERATION UNDER LCR 7(h) AND FOR RELIEF UNDER FED. R. CIV. P. 60(b)**

## INTRODUCTION

Plaintiffs Urve Maggitti and Brett Fountain move under and Local Civil Rule 7(h) to vacate or amend the Court's Order (ECF 145) and Judgment (ECF 146). Those rulings rest on a clear *factual mistake*: they recite that an "Emergency Habeas Petition" was filed *"on behalf of Kurt Benshoof,"* when in truth Plaintiff Maggitti filed that petition on her own behalf. This misstatement is a manifest error of fact warranting relief. Correction is necessary both to accurately reflect the record and to prevent manifest injustice. In the alternative, Plaintiffs seek relief under Rule 60(b)(1) and 60(b)(6) on the grounds of mistake and extraordinary circumstances. As detailed below, Plaintiff Kurt Benshoof – who remains an inmate – has been held *incommunicado* for the duration of this case, denied all access to legal research, legal library, writing materials, and envelopes. This condition, documented in six certified transcript exhibits (T-1 through T-6) and multiple verified filings (e.g. ECF 122, 125, 138, 140, 142), prevented Mr. Benshoof from participating in this litigation or meeting court deadlines. He was unable to respond to Defendants'

Rule 12(b)(6) motion or even review and respond to any motion and/or replies filed by defendant or by his co-plaintiffs, resulting in critical deadlines passing with no input from him. Benshoof has also been prevented to access his own original filings prior to his incarceration, including those needed to serve legal summons and complaint to all defendants, or access the court clerk issued summons' that were sealed by the court and to which his co-plaintiff's had no access to.

In short, Plaintiffs ask the Court to correct its factual error and to *remedy the severe prejudice* caused by Mr. Benshoof's inability to access the Court.

Plaintiffs respectfully request that the Order and Judgment be vacated or amended to reflect the truth, that all deadlines missed due to Mr. Benshoof's isolation be reopened, and that measures be put in place to ensure Mr. Benshoof can meaningfully exercise his rights going forward. Specifically, Plaintiffs seek an order (1) vacating Order 145 and Judgment 146; (2) amending the Order to correct the reference to the Emergency Habeas Petition as filed by Ms. Maggitti (not on Mr. Benshoof's behalf); (3) directing the Clerk to correct the docket accordingly; (4) reopening or extending all deadlines that passed without Mr. Benshoof's participation (including the deadline to respond to Defendants' motion to dismiss and any other court deadlines he missed while incommunicado); (5) issuing a temporary order under 28 U.S.C. § 1651 (All Writs Act) requiring Mr. Benshoof's custodians to provide him with reasonable access to legal materials and legal library, paper, writing instruments, envelopes/postage; and (6) setting this matter for telephonic oral argument. A proposed order is submitted herewith. For reasons stated herein and in the concurrently filed Motion to Shorten Time (LCR 7(d)(2)), Plaintiffs further request that this Motion be heard on an expedited basis, and they formally **request oral argument** on the Motion pursuant to LCR 7(b)(4).

## PROCEDURAL BACKGROUND

On June 2, 2025, [141], Plaintiff **Urve Maggitti** (a non-prisoner co-plaintiff) filed an Emergency Petition for Habeas Corpus in this civil rights action seeking urgent relief related to Mr. Benshoof's confinement. Importantly, Ms. Maggitti filed that petition *on her own behalf* as a directly interested party on behalf of herself because Plaintiff URVE MAGGITTI is unable to fully litigate her instant action due to the fact that the necessary party to this litigation, Co-Plaintiff Kurt

Benshoof is incarcerated, **not** as an attorney or representative "on behalf of" Mr. Benshoof. Throughout the ensuing months, Plaintiffs repeatedly put the Court and Defendants on notice that Mr. Benshoof was being held under conditions that effectively **barred all communication**. In a series of emergency motions and judicial notice filings (ECF 122, 125, 138, 140, 142), Plaintiffs presented sworn declarations and hereby present six certified transcripts (Exhibits T-1–T-6) detailing Mr. Benshoof's status. These records show that prison officials refused Mr. Benshoof any writing paper, envelopes, or access to legal phone calls, thereby *preventing him from corresponding with this Court or his counsel in the criminal matter, and with his assistant of counsel as defined under Section 35 of the Judiciary Act of 1789, 1 Stat. 73, 92.*

For example, on May 19, 2025, Plaintiffs filed [ECF 122] - EMERGENCY MOTION FOR TELEPHONIC MOTION WITH CHAMBERS under Local Civil Rule 7(i) and 7(j) IN REF- Plaintiff Benshoof's Participation in ORDER TO SHOW CAUSE MOTION DUE May 19, 2025- attesting to the fact that Benshoof called Urve Maggitti on May 19, 2025, stating that chambers denied his telephonic motion made under Local Civil Rule 7 (i), despite being informed that telephone is the only available communication method from prison with chambers/court.

Between Mat 19, 2025, to June 6, 2025, Benshoof made six calls to Chambers' attesting to the fact that he can not litigate his case due to nature of his confinement, see Transcripts Exhibit T-1-T-6.

Plaintiffs also filed verified motions seeking extensions and relief given these extraordinary barriers. In short, the Court was apprised that **Mr. Benshoof was in effect being held incommunicado**, unable to review court filings, assist in drafting pleadings, or meet deadlines.

Despite these warnings, Defendants moved to dismiss the operative complaint under Rule 12(b)(6). Mr. Benshoof, cut off from communication, **missed the deadline to respond** to the motion. (His co-plaintiffs Maggitti and Fountain, proceeding pro se, did respond on their own behalf, but could not include Mr. Benshoof's input.)

Given Mr. Benshoof's non-response, the Court proceeded to rule. On June 10, 2025, the Court entered Order ECF 145 (apparently granting Defendants' motion to dismiss) and Final Judgment ECF 146 closing the case. In that Order, the Court's background section erroneously stated that an

Emergency Habeas Petition had been filed "on behalf of Kurt Benshoof." This factual premise is mistaken: the docket and the petition itself confirm Ms. Maggitti filed it *on her own behalf*, as an interested party who's access to court was compromised by the fact that her co-plaintiff Benshoof was held incarcerated, without ability to litigate, which denied Maggitti the right to association with the necessary party to the action.

Plaintiffs now bring this Motion within the requisite time to correct that manifest error of fact and to obtain relief from the resulting judgment, which – if left intact – would reward the very denial of access that kept Mr. Benshoof silent.

## LEGAL STANDARD

**Motions for Reconsideration (Rule 59(e) and LCR 7(h)).** A Rule 59(e) motion to alter or amend a judgment is an *"extraordinary remedy, to be used sparingly in the interest of finality and conservation of judicial resources."*.

"Since specific grounds for a motion to amend or alter are not listed in the rule, the district court enjoys considerable discretion in granting or denying the motion." McDowell v. Calderon, 197 F.3d 1253, 1255 n. 1 (9th Cir. 1999) (en banc) (per curiam) (internal quotation marks omitted). "<u>ALLSTATE INSURANCE COMPANY, Plaintiff-Appellee, v. Charles HERRON</u>, Defendant-Appellant., 634 F.3d 1101, 1111 (Mar 10, 2011)

Under Ninth Circuit law, such a motion may be granted on four narrow grounds: *"(1) if necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if necessary to present newly discovered evidence; (3) to prevent manifest injustice; or (4) if there is an intervening change in controlling law."* (quoting **Allstate Ins. Co. v. Herron**, 634 F.3d 1101, 1111 (9th Cir. 2011)). Motions for reconsideration are **disfavored** and will ordinarily be denied absent a showing of a manifest error or new facts/legal authority that could not have been presented earlier with reasonable diligence (LCR 7(h)(1)). They are to be granted only in *"highly unusual circumstances"*. A Rule 59(e)/LCR 7(h) motion is *not* an occasion to reargue the case or present evidence that was available previously; its role is to correct clear error or prevent a manifest injustice.

4

**Relief from Judgment (Rule 60(b)(1) & (6)).** Separately, Rule 60(b) provides that a party may be relieved from a final judgment or order due to reasons including "mistake, inadvertence, surprise, or excusable neglect" (Rule 60(b)(1)) or **"any other reason that justifies relief"** (Rule 60(b)(6)). Rule 60(b)(6), the catchall provision, is reserved for *extraordinary circumstances* and is applied sparingly to prevent manifest injustice. The moving party bears the burden of showing truly exceptional circumstances beyond their control. Courts have emphasized that *"to justify relief under Rule 60(b)(6), a party must show 'extraordinary circumstances' suggesting that the party is faultless in the delay."* (quoting Pioneer Inv. Servs. Co. v. Brunswick Assocs., 507 U.S. 380, 393 (1993)). In other words, the party must demonstrate circumstances so extreme that they "prevented or rendered him unable to prosecute his case." (quoting Lal v. California, 610 F.3d 518, 524 (9th Cir. 2010)).

Relief under "Rule 60(b)(6) relief normally will not be granted unless the moving party is able to show *both* **injury** and that **circumstances beyond its control** prevented timely action to protect its interests." Id." Navajo Nation v. Dep't of the Interior United States Court of Appeals, Ninth Circuit. Dec 4, 2017; see Alpine Land Reservoir, 984 F.2d at 1049.

Notably, a court may consider equitable factors such as prejudice: if the non-movant will suffer no legitimate prejudice from reopening the case, but the movant would suffer severe prejudice (losing a claim) absent relief, these circumstances weigh in favor of Rule 60(b) relief. Finally, Rule 60(b)(1) allows relief for mistakes – including factual mistakes by the court or parties – if brought within a reasonable time (and, for 60(b)(1), not more than one year).

## ARGUMENT

### I. The Order Contains a Manifest Factual Error That Merits Amendment under Rule 59(e) and LCR 7(h).

The Court's Order (ECF 145) rests on a crucial but incorrect factual premise: it states that an emergency habeas petition was filed on Mr. Benshoof's behalf. This is **plainly erroneous**. The record is unequivocal that Plaintiff **Maggitti** filed that petition *on her own behalf*. Treating the habeas petition as one filed "on behalf of Benshoof" is a misunderstanding of the filing's nature

and the parties before the Court.

This misstatement matters. It potentially influenced the Court's view of the case and the disposition of Plaintiffs' claims. It also misidentifies who was seeking what relief, creating confusion on the docket and in any appeal record. Because this is a manifest error of fact appearing on the face of the Order, Rule 59(e) provides a proper avenue to correct it. Courts have consistently held that a 59(e) motion is appropriate to correct *"manifest errors of ... fact upon which the judgment rests."* Here, the error is not a minor typo; it strikes at the accuracy of the Court's findings. Leaving the error uncorrected would work a *"manifest injustice"*, as it suggests Plaintiffs' emergency filings were improper or unauthorized (when they were not), and it obscures the very problem at hand – that Mr. Benshoof was effectively silenced.

Local Rule 7(h) likewise permits reconsideration on this basis. Plaintiffs raised this issue at the earliest opportunity post-judgment, and it involves no new evidence or law, only the Court's own inadvertent factual mistake. This is precisely the scenario in which reconsideration, although disfavored, is warranted to prevent an obvious miscarriage of justice. The Court can correct the record without undermining the finality principle that makes reconsideration extraordinary, because doing so *supports* the integrity of the proceedings rather than rehashing matters already decided on their merits.

Moreover, to the extent the Court's misunderstanding of who filed the habeas petition may have affected its analysis of Plaintiffs' claims (for example, perhaps the Court believed Mr. Benshoof was litigating when in fact he was not), correcting this fact is essential. The Ninth Circuit recognizes that Rule 59(e) exists to rectify clear factual errors and to ensure the judgment is not predicated on a *"manifest error in the prior ruling."* (LCR 7(h)(1)). Here the error is clear: the Order attributes a filing to Mr. Benshoof that he did not make. Correcting this will align the judgment with the true record.

In sum, Plaintiffs have identified a "manifest error" of fact, and this Court *"must [thus] carefully consider"* correcting it to uphold the accuracy and fairness of its rulings. Plaintiffs are not asking the Court to change its mind on a disputed issue or to consider new evidence – only to fix a plain mistake. Therefore, relief under Rule 59(e) and LCR 7(h) is appropriate. The Court should amend

Order 145 and Judgment 146 to clarify that the Emergency Habeas Petition was filed by Plaintiff Maggitti **on her own behalf**, not on behalf of Mr. Benshoof, and adjust any related factual statements or conclusions in the Order that relied on the incorrect premise.

## II. In the Alternative, Relief from Judgment is Warranted Under Rule 60(b)(1) and 60(b)(6) Due to Mistake and Extraordinary Circumstances.

Even if the Court were to view the above-described error as outside the scope of Rule 59(e), Plaintiffs are entitled to relief under Rule 60. The Court's misidentification of the habeas filer constitutes a "mistake" for purposes of Rule 60(b)(1). And more broadly, the *extraordinary circumstances* surrounding Mr. Benshoof's inability to participate in this case justify relief under Rule 60(b)(6).

**A. Relief is Justified Under Rule 60(b)(1) to Correct the Factual Mistake in the Order.** Rule 60(b)(1) permits a court to correct mistakes in orders or judgments, including factual mistakes and inadvertence. The mistaken attribution of the habeas petition in Order 145 is precisely such a mistake. It was no fault of the Plaintiffs – they consistently described the petition accurately – but rather an understandable oversight in a complex record. The Court has authority to remedy *"mistake[s]"* in its judgment, especially when promptly brought to its attention (here, within the same month of the judgment). Correcting this error under 60(b)(1) aligns with the purpose of that rule: to ensure that judgments are not unjustly upheld when they are based on mistakes of fact. Indeed, a district court abuses its discretion if it refuses to correct a clear factual error once notified, as leaving it uncorrected would be arbitrary or unfair (and invite needless appeal or reversal). Thus, independently of Rule 59(e), the Court can and should grant relief by amending its Order via Rule 60(b)(1).

**B. Mr. Benshoof's Incommunicado Detention is an Extraordinary Circumstance Warranting Relief Under Rule 60(b)(6).** Rule 60(b)(6) exists as a grand reservoir of equitable power to vacate judgments in order to achieve justice. Courts may vacate a judgment for "any other reason" that justifies relief – but only in *extraordinary* situations that could not have been addressed by earlier motion or appeal. The situation of Plaintiff Benshoof is nothing short of extraordinary. Through no fault of his own, he was prevented from taking any action in his own

action. He was, in effect, civilly dead to this litigation during the critical period. The undisputed evidence (transcripts and sworn statements) shows that Mr. Benshoof had no ability to write to the Court, no ability to contact his co-plaintiffs or any attorney except by phone, for short periods of time, and no access to mail beyond possibly sending word through third parties. This was not a short or sporadic hindrance – it persisted throughout the motion-to-dismiss briefing schedule and the window for amending pleadings.

The Ninth Circuit has held that Rule 60(b)(6) relief is warranted where a party has been effectively prevented from participating in the case. For example, in *Lal v. California,* the court granted 60(b)(6) relief to a plaintiff who failed to timely prosecute his case due to *"extraordinary circumstances which prevented or rendered him unable to prosecute his case."*. Likewise, in *Klapprott v. United States*, 335 U.S. 601 (1949), the Supreme Court famously allowed relief from a default judgment revoking citizenship where the defendant was imprisoned and ill during the response period – circumstances beyond his control that left him, as here, effectively unable to defend himself. The Supreme Court in *Klapprott* emphasized that such a scenario *"cannot fairly or logically be classified as mere 'neglect'"*; it was an *"extraordinary situation"* justifying invocation of the Rule 60(b) catchall. The petitioner in *Klapprott* had been **"no more able to defend himself ... than if he had never received notice of the charges."*. Here, Mr. Benshoof was no more able to contribute to his litigation than if he had never been a party to the case – indeed, in practical terms he *was not* a participating party, due solely to external constraints.

The record demonstrates both "injury" and circumstances beyond [Plaintiffs'] control," satisfying the Ninth Circuit's requirement for Rule 60(b)(6) relief. The injury is evident: Mr. Benshoof's meritorious claims have been (at least temporarily) extinguished without ever being heard on the merits, and his inability to oppose the motion to dismiss undoubtedly affected the outcome. The prejudice to Plaintiffs is that their case was decided in a one-sided vacuum. On the other hand, the *reason* for this outcome – Mr. Benshoof's inability to act – was entirely beyond his control (and beyond his co-plaintiffs' control as well). These facts closely parallel those in *Gardner v. Martino*, where the Ninth Circuit noted that Rule 60(b)(6) requires a showing that *"circumstances beyond [the party's] control prevented timely action to protect [his] interest."*. That is exactly our case: Mr. Benshoof was physically and administratively prevented from protecting his own interests in court.

Furthermore, granting relief here would prevent a grave manifest injustice, consistent with Rule 60(b)(6)'s purpose. Fundamental fairness dictates that a litigant should not lose his day in court because he was denied a pencil and paper. The right of access to the courts is one of the most basic constitutional rights for anyone, including a prisoner. As the Supreme Court held in *Lewis v. Casey*, inmates must be afforded the tools necessary to challenge their sentences or conditions; an inmate demonstrates *actual injury* when official action *"hindered his efforts to pursue a nonfrivolous legal claim."*. Here, Mr. Benshoof's jailers hindered – indeed completely foreclosed – his efforts to pursue very nonfrivolous civil rights claims. In *Christopher v. Harbury*, the Court described "forward-looking" access-to-courts claims where *"systemic official action frustrates a plaintiff in preparing and filing suits at the present time, where the suits could be pursued once the frustrating condition has been removed."*. Mr. Benshoof's circumstance is precisely that: a *systemic frustration* of his ability to litigate, which can be cured by removing the barriers (providing pen, paper, envelopes, access to legal resources, mail). *Harbury* teaches that the right of access is *"ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court."* Here, the underlying claims are serious civil rights grievances; being "shut out" of pursuing them due to external restraints is itself a profound injury. Equity cannot countenance dismissing those claims with prejudice under such conditions.

## III. Court Overlooked Plaintiffs' Diligent Service Efforts And Extraordinary Impediments To Service

Plaintiffs respectfully submit that the dismissal order failed to account for their substantial compliance with service requirements and the exceptional circumstances that impeded service on a few remaining defendants. In their Response to the Order to Show Cause (ECF No. 125), Plaintiffs documented that by the extended deadline of May 12, 2025, they had served 35 out of the 50 defendants, including key parties such as Defendant Jessica Owen (ECF No. 125).

This record demonstrates that Plaintiffs diligently effectuated service on the vast majority of defendants within the time allowed. Any suggestion that Plaintiffs were inattentive to service is refuted by the fact that most defendants – including Jessica Owen – were timely served (ECF No. 125),  Critically, Plaintiff Kurt Benshoof's periods of incarceration made it virtually impossible for him to complete service on the remaining few defendants. ECF No. 125 explains that from July

9

3, 2024 until November 27, 2024, Mr. Benshoof was jailed and "prevented [from] access to papers, pencils, stamps, and envelopes", leaving him "unable to serve nor litigate against any defendants" during that time. In other words, Mr. Benshoof had no access to basic writing materials, mail supplies, or legal communication tools while in custody, and "all documents purportedly filed and signed by Mr. Benshoof during this timeframe were drafted on his behalf" by a co-plaintiff.

Even after his release on bail, Mr. Benshoof remained under severe restrictions, and he was later placed in solitary confinement where he could make only limited phone calls but was "physically prevented from any written communication" with the outside world.

Indeed, a subsequent filing (ECF No. 138) noted that Mr. Benshoof was "incarcerated incommunicado, without access to his computer" during the relevant period. These uncontrollable conditions meant that Mr. Benshoof could not personally prepare, mail, or coordinate service documents for a significant time. As ECF No. 125 recounted, because Mr. Benshoof was imprisoned "without the financial ability to contract process servers" or obtain necessary paperwork, "it was an impossible task" for him to effect service by the normal deadline. He had "no ability to contract with third parties" to serve process and was "held incommunicado" during his confinement.

In short, any failure to formally serve a handful of defendants by the deadline was not due to neglect or inaction, but due to Mr. Benshoof's extraordinary lack of access and the harsh constraints imposed on him by his incarceration.

Moreover, Plaintiffs did everything in their power to overcome these impediments once circumstances allowed. Immediately after the Court permitted an amended complaint in February 2025, Mr. Benshoof (now assisted by co-plaintiffs Urve Maggitti and Brett Fountain) hired a professional process server and successfully served dozens of new defendants.

Only a limited number of individuals remained unserved, and Plaintiffs detailed repeated good-faith attempts on those defendants. Many of the "remaining [defendants]" proved difficult to locate or were actively evasive – for example, one had provided a bad address and another's family "refused to grant access" to a gated residence, affirmatively avoiding service. In sum, Plaintiffs "have shown good faith and served [the] majority of Defendants, and have attempted [process] upon all Defendants," but were "obstructed by factors beyond their control."

These circumstances – incarceration, lack of basic materials, and defendants concealing themselves – are precisely the type of "outside factor" causing delay that courts recognize as good

10

cause to excuse a Rule 4 deadline. Far from demonstrating any willful delay, the record shows Plaintiffs exercised reasonable diligence under exceptional conditions beyond their control.

By failing to consider this context, the Court's dismissal amounted to a manifest error. The dismissal order did not acknowledge that Plaintiffs had already served the majority of defendants (including Ms. Owen) or that Mr. Benshoof's ability to effect service was severely curtailed by incarceration and denial of writing materials. This oversight gave the impression of "delay" where Plaintiffs in fact faced insurmountable obstacles despite diligent efforts. Under Rule 59(e), reconsideration is warranted to correct the Court's clear factual and legal error in overlooking these critical facts. Additionally, relief is justified under Rule 60(b). To the extent the Court's omission stemmed from inadvertence or mistake in assessing the service record, Rule 60(b)(1) applies. To the extent the situation reflects the "exceptional" and unjust impact of external forces on Plaintiffs' case – namely, Mr. Benshoof's incommunicado detention – Rule 60(b)(6)'s catch-all provision for extraordinary circumstances should be invoked.

Plaintiffs respectfully urge the Court to reconsider and vacate the dismissal in light of the substantial good-faith service efforts and the unavoidable conditions that hindered full compliance through no fault of their own.

**Several additional equitable factors favor relief:**

- **Good Faith:** Plaintiffs (including Mr. Benshoof to the extent possible) have acted in good faith. They repeatedly alerted the Court to the problem and diligently tried to keep the case moving without defaulting. There is no hint of bad faith or tactical delay on Plaintiffs' part – the delays and failures to act were forced upon them by Mr. Benshoof's situation. Once he could not respond, Ms. Maggitti and Mr. Fountain made every effort to fill the gap by notifying the Court.
- **Lack of Prejudice to Defendants:** Undoing the dismissal and adjudicating this case on the merits will not unfairly prejudice Defendants. The only "prejudice" Defendants could claim is that they must continue to defend the lawsuit – but the Ninth Circuit has made clear that merely having to litigate a case is not legal prejudice. Defendants cannot claim to have relied on a final judgment to their detriment in the brief time since its entry. In fact, any "reliance" interest is minimal because this motion was filed promptly. By contrast, the

...

- **prejudice to Plaintiffs if relief is denied is extreme**: they would permanently lose the opportunity to have their claims heard. In <u>Lemoge v. United States</u>, the Ninth Circuit recognized that when a claim would be time-barred if dismissed, that *"ultimate prejudice"* to the plaintiff must be weighed and can justify relief. Here, while an appeal might be possible, in practical terms denying reconsideration would lock in a judgment that was achieved without one party's participation. That is the epitome of an unjust result.
- **Prompt Action:** Plaintiffs have moved with alacrity. This motion comes within 14-days of the Judgment – well within the 28-day Rule 59(e) window and the "reasonable time" for Rule 60(b). Plaintiffs did not sleep on their rights; they are raising these issues at the first chance after judgment.

Because Mr. Benshoof's complete inability to exercise his rights was the reason for the adverse judgment, this case presents *"highly unusual circumstances"* justifying relief. Rule 60(b)(6) exists for scenarios like this, "to accomplish justice" when normal procedural rules would not. Indeed, failing to reopen the case would reward the denial of constitutional rights (access to courts) that Mr. Benshoof endured. The Court's intervention under Rule 60(b)(6) is needed to prevent the **"**court doors [from] being actually shut on [his] complaint." (as the Seventh Circuit described prejudice in access-to-courts cases). In this regard, granting relief not only serves the Plaintiffs' interests but upholds the judiciary's integrity in ensuring every litigant a fair chance to be heard. As Justice Black observed in *Klapprott*, Rule 60(b)'s broad language empowers courts to vacate judgments whenever necessary *"to accomplish justice."* This is such a moment.

## SPECIFIC RELIEF REQUESTED

To remedy the issues above, Plaintiffs request that the Court enter an Order providing the following relief:

1. **Vacatur of Order and Judgment:** Vacate the Order (ECF 145) and Judgment (ECF 146) entered on June 10, 2025, which dismissed the case, thereby reopening the case.
2. **Amendment/Correction of Factual Error:** Alternatively (or in addition), amend the Court's Order at ECF 145 to correct the factual mistake regarding the Emergency Habeas Petition – specifically, clarifying that the petition was filed by Plaintiff Urve Maggitti on

her own behalf, *not* on behalf of Plaintiff Benshoof – and make any other corresponding corrections in the text of the Order or Judgment to accurately reflect the record.

3. **Docket Correction:** Direct the Clerk of Court to update the docket or case caption if necessary to reflect that the Emergency Habeas Petition was filed by Ms. Maggitti on her own behalf, rather than by Mr. Benshoof, so that the docket is accurate for future proceedings or appeal.

4. **Reopening of Deadlines:** Reopen and/or extend any lapsed deadlines that Mr. Benshoof missed due to his inability to communicate. It also includes allowing amendment or supplement of pleadings if needed to incorporate input from Mr. Benshoof that was previously missing. In essence, restore the procedural posture to where it was before Mr. Benshoof's rights were thwarted, so that the case may be decided on its merits with all parties' participation.

5. **All Writs Act Order for Communication Access:** Enter a temporary order, pursuant to the All Writs Act, 28 U.S.C. § 1651(a), directed to the authorities detaining Mr. Benshoof (e.g. the warden or sheriff of the Coyote Ridge Corrections Center (CRCC)) requiring that Mr. Benshoof be provided with the basic tools to communicate with the Court and his co-plaintiffs. At a minimum, the order should mandate that Mr. Benshoof be given writing materials (paper, pen/pencil), envelopes and postage or institutional mailing privileges, and access to legal library and access to place reasonable legal phone calls to Ms. Maggitti and Mr. Fountain until this litigation is concluded. The All Writs Act grants this Court authority to issue orders "in aid of its jurisdiction" and to prevent frustratation of its judgments – here, such an order is needed to *ensure this Court's jurisdiction is not again thwarted by Mr. Benshoof's inability to be heard*. Without some affirmative relief, any re-opened proceedings could be rendered meaningless by the continuation of Mr. Benshoof's incommunicado status. This Court should therefore direct the necessary officials to remove the barriers to Mr. Benshoof's access to this Court.

6. **Oral Argument (Telephonic):** Set this Motion, and any related re-opened motions (such as the motion to dismiss, and execute process of service), for oral argument via telephone with Mr. Benshoof on the line. Plaintiffs specifically request oral argument under LCR 7(b)(4). In light of Mr. Benshoof's incarceration, Plaintiffs ask that the Court arrange for his telephonic appearance (or video, if available) so that he may finally directly participate.

    Telephonic oral argument will allow Mr. Benshoof to speak to the Court in real time, overcoming the communication restrictions that prompted this Motion. Given the complexity and importance of the issues, Plaintiffs believe oral argument would significantly aid the Court.

7. **Validate Completed Service and Extend Time for Any Remaining Defendants.**

   a. **Deem service complete** as to the thirty-five defendants for whom proofs of service are already filed (including Jessica Owen, see ECF 125-4).

   b. **Extend the Rule 4(m) deadline by an additional 60 days**—or such shorter period as the Court deems proper—for Plaintiffs to perfect service on the handful of defendants not yet served.

   c. **Authorize alternative service methods** under Rule 4(e)(1) and the Court's equitable powers (e.g., certified mail, email, or service on counsel of record) where personal service is impracticable, in light of the documented evasive conduct and Mr. Benshoof's prior inability to prepare mailings.

   d. Clarify that no defendant may assert insufficiency of process or insufficiency of service of process as a basis for dismissal unless, after issuance of this Order and the All-Writs access directive, Plaintiffs still fail to complete service within the extended period.

Plaintiffs are mindful that court resources are limited and that reconsideration is unusual. However, each of the above items is tailored to undo the specific prejudice and errors that have occurred, without unduly burdening the Court or Defendants. Plaintiffs seek only what is necessary to have their case decided fairly: a correct record, deadlines that accommodate a once-silenced party, the minimal tools for that party to participate, and a chance to be heard.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs Maggitti and Fountain (joined by Plaintiff Benshoof in spirit and by necessity) respectfully request that the Court grant this Motion. Under Rule 59(e) and LCR 7(h), the Court should alter or amend its prior Order and Judgment to correct the manifest factual error regarding the habeas petition. Under Rule 60(b)(1) and 60(b)(6), the Court should vacate the judgment and reopen the case due to mistake and extraordinary, injustice-causing

circumstances. In doing so, the Court should implement the specific relief outlined above to ensure that the case proceeds with all parties on equal footing and with Mr. Benshoof afforded his constitutional right to be heard.

Plaintiffs submit that the integrity of the judicial process in this matter depends on acknowledging and remedying the unique situation at hand. They have shown a clear factual error, and a profound unfairness, in the current disposition. The relief requested will simply place the parties back where they should have been – litigating the merits, with Mr. Benshoof able to contribute. No party should win by default caused by silencing the opponent. Equity and precedent strongly favor granting this Motion. Plaintiffs therefore pray that the Court grant the Motion in its entirety and issue an amended order as justice requires.

Respectfully submitted this 14th day of June, 2025.

Brett Fountain, Co-Plaintiff
kb407@exposelegalcorruption.com

Urve Maggitti, Co-Plaintiff
urve.maggitti@gmail.com

**CERTIFICATE OF SERVICE**

KURT BENSHOOF
Coyote Ridge Corrections Center (CRCC)
ID Number448305
PO Box 769
Connell, WA 99326

Brett Fountain
2100 West Northwest Highway
114 #1115
Grapevine, TX 76051-7808
kb407@exposelegalcorruption.com

Matthew Coughlan
Darren Anthony Feider
SEBRIS BUSTO JAMES
15375 SE 30TH Pl, Ste 310
Bellevue, WA 98007
425-450-3382
[Attorney for Fox, Goslin, Mitchell]
mcoughlan@sbj.law

Peggy C. Wu
King County Prosecuting Attorney's Office
701 Fifth Avenue, Suite 600
Seattle, WA 98104
206-263-4008
[King County, Catherine Cornwall, and Pascal Herzer]
pwu@kingcounty.gov

Arick S. Bonsztyk
1000 Second Avenue, Suite 3660
Seattle, WA 98104
206-621-1871
asb@tbr-law.com
[Jessica Owen]

Howard Brown
1003 West Michigan Street
Hammon, LA 70401

Sarah Spierling Mack
PACIFICA LAW GROUP LLP
1191 SECOND AVENUE

SUITE 2000
SEATTLE, WA 98101
206-245-1700
sarah.mack@pacificalawgroup.com

Catherine E Riedo
SEATTLE CITY ATTORNEY'S OFFICE
701 FIFTH AVENUE
SUITE 2050
SEATTLE, WA 98104-7097
206-684-7782
catherine.riedo@seattle.go

Sarah N Turner
GORDON REES SCULLY MANSUKHANI LLP (SEATTLE)
701 FIFTH AVE STE 2100
SEATTLE, WA 98104
206-695-5100
sturner@grsm.com

Peggy C Wu
KING COUNTY PROSECUTING ATTORNEY'S OFFICE (FIFTH AVE)
701 FIFTH AVE
STE 600
SEATTLE, WA 98104
206-263-4008
pwu@kingcounty.gov

Urve Maggitti
244 Blackburn drive
Berwyn, PA 19312
urve.maggitti@gmail.com
917-340-0561